United States District Court
Southern District of Texas
FILED

SEP 1 0 2003

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

VERONICA RAMIREZ, Individually and as
Next Friend of JEREMIAH S. RAMIREZ, a
minor,

               Plaintiffs,

    v.

AMERICAN HOME PRODUCTS
CORPORATION, et al.,

               Defendants.

C.A. No. **B-03-155**

**DEFENDANT ELI LILLY AND COMPANY'S
MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT THEREOF**

## I.    INTRODUCTION

        Plaintiffs' Original Petition ("Petition") must be dismissed pursuant to Fed. R.

Civ. Pr. 12(b)(1) because initial jurisdiction over this matter lies in the U.S. Court of Federal

Claims. Furthermore, Plaintiffs' Petition must be dismissed pursuant to Fed. R. Civ. Pr. 12(b)(6)

for failure to state a claim under Texas law. Plaintiffs have sued Defendant Eli Lilly and

Company ("Lilly") for injuries allegedly received from the administration of childhood vaccines

which contained thimerosal as a component part. However, vaccine-related claims must first be

brought pursuant to the National Childhood Vaccine Injury Act (42 U.S.C. § 300aa-1, *et seq.*),

and despite Plaintiffs' claims to the contrary, Plaintiffs have not yet exhausted the administrative

remedies set forth by that statute. Therefore, as the U.S. Court of Federal Claims has exclusive

initial jurisdiction over Plaintiffs' vaccine-related claims, Plaintiffs' Petition must be dismissed

for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pr. 12(b)(1). In further support of

its Motion to Dismiss, Lilly adopts, incorporates, and hereby joins in the Vaccine Defendants' Motion to Dismiss.

Should the Court determine that it has jurisdiction over any of Plaintiffs' claims, the Court should dismiss those claims on substantive grounds. Plaintiffs have failed to allege any set facts under which Lilly can be held liable for the minor Plaintiff's alleged vaccine-related injuries under Texas law. Specifically, Plaintiffs have not alleged that Lilly is the manufacturer of any particular vaccine (or the thimerosal component thereof) which allegedly injured the minor Plaintiff. It is clear, therefore, that Plaintiffs' claims fail as a matter of law because no product made or sold by Lilly is alleged to have caused any injury to the minor Plaintiff. As such, should the Court determine it has jurisdiction over Plaintiffs' claims, the Court should dismiss Plaintiffs' Petition for failure to state a claim under Texas law pursuant Fed. R. Civ. Pr. 12(b)(6).

## II.    ALL VACCINE-RELATED CLAIMS MUST BE DISMISSED PURSUANT TO THE VACCINE ACT

### A.    The Vaccine Act Bars This Civil Action

Plaintiffs' Petition alleges that Lilly was responsible for manufacturing or marketing vaccines which allegedly injured the minor Plaintiff due to the inclusion of thimerosal as a preservative. *See* Petition, ¶¶ 3.11 (alleging that Lilly "was engaged in the business of manufacturing and/or marketing vaccines and/or products that contained thimerosal"), 5.01 (alleging risks associated with thimerosal used "in connection with his childhood vaccinations"), 6.01(g) ("Thimerosal was used in connection with the vaccination of the minor Plaintiff"), 7.02 ("The minor Plaintiff was administered [thimerosal] in his childhood vaccinations"), 9.01 (same).

- 2 -

1306840v1

The National Childhood Vaccine Injury Act (the "Vaccine Act" or "the Act") prohibits the filing of this type of civil lawsuit for "vaccine-related" claims prior to filing a petition in a specially-designated court of the U.S. Court of Federal Claims ("Vaccine Court"). 42 U.S.C. §§ 300aa-1 *et seq.* Where a plaintiff files a civil action in state or federal court against a manufacturer in violation of this prohibition, "the court **shall dismiss the action**." 42 U.S.C. § 300aa-11(a)(2)(B) (emphasis added).[1]  As Plaintiffs have failed to file their vaccine-related claims in Vaccine Court prior to bringing this suit, the Court must dismiss the action.

Plaintiffs make three attempts to avoid this result. The first is to claim simply that "there is no claim for personal injuries arising from or associated with the administration of a vaccine." Petition, ¶ 2.01. Plaintiffs' unsupported bold allegation is demonstrably wrong. As noted above, the Petition itself alleges that it was the inclusion of thimerosal in vaccines which allegedly caused the injuries. Furthermore, as discussed below, every court to rule on the issue, including the Vaccine Court, has held that claims for alleged injuries from thimerosal in vaccines are "vaccine-related." Plaintiffs' second attempt to avoid the application of the Act is to represent to the Court that they have already exhausted "all administrative remedies" under the Act. Petition, ¶ 2.02. Again, Plaintiffs' allegation is simply wrong. Upon information and belief, minor Plaintiff Jeremiah S. Ramirez has **never filed** a petition under the Vaccine Act. Plaintiffs' final attempt to avoid the application of the Vaccine Act to their claims is to use the phrase "products that contained thimerosal" in place of "vaccines" at various points in their

---

[1]  The Vaccine Act "is jurisdictional in nature because it defines the jurisdiction of state and federal courts with respect to civil actions against a vaccine administrator or manufacturer for vaccine-related injuries." *Gilbert v. Secretary of HHS*, 31 Fed. Cl. 379, 381 (Fed. Cl. 1994). *See also Brown v. Secretary of HHS*, 874 F. Supp. 238, 241 (S.D. Ind. 1994) ("[t]his Court's jurisdiction over a claim for compensation for a vaccine-related injury or death is determined by the [Vaccine Act]."). This Court need only recognize that the Vaccine Act applies to this case to determine that dismissal of Plaintiffs' vaccine-related claims is appropriate.

Petition. *See, e.g.*, Petition, ¶¶ 4.05-4.09. But it is apparent on the face of the Petition that this phrase is clearly code for "vaccines." Plaintiffs undeniably allege that Defendants have manufactured "vaccines," not any other unidentified "over-the-counter products." Petition, ¶ 4.02. Therefore, as Plaintiffs' Petition claims injuries as an alleged result from the use of thimerosal in childhood vaccines, all vaccine-related claims must be dismissed to proceed in Vaccine Court, as mandated by the Vaccine Act.

> **B.    The Chief Special Master of the Vaccine Court Has Recognized That Claims for Injuries Resulting From Thimerosal in Vaccines are Covered by the Vaccine Act**

The Chief Special Master of the Vaccine Court has concluded that claims for alleged injuries from thimerosal are vaccine-related and are covered by the Vaccine Act. *See Leroy v. Secretary of HHS,* No. 02-392V, 2002 WL 31730680 (Fed. Cl. Oct. 11, 2002). In *Leroy,* petitioners alleged that thimerosal-containing vaccines caused developmental problems within the diagnosis of autistic spectrum disorder. At issue was whether the Vaccine Court had jurisdiction over these claims. *Id.* The Chief Special Master conclusively held that "petitioners alleging injury from the thimerosal preservative in vaccines are statutorily obligated to file their claim . . . in the Court of Federal Claims, *in the first instance.*" *Id.* at \*17 (emphasis in original). The Chief Special Master held that "an injury or death arising from the thimerosal component is encompassed within the statutory definition of 'vaccine-related injury or death,' thereby granting jurisdiction over such claims" to the Vaccine Court. *Id.* at \*17. As noted above, Plaintiffs have brought suit against Lilly for "engag[ing] in the business of manufacturing and/or marketing vaccines and/or products that contained thimerosal" which allegedly caused Plaintiffs' injuries.[2]

---

[2]    While Lilly has been named as an alleged vaccine manufacturer (*See* Petition, ¶ 3.11), this reasoning would apply to alleged manufacturers of the vaccine component thimerosal as well. The Chief Special Master observed that "the plain meaning of the term 'vaccine' allows for the composition of different ingredients

- 4 -

Petition, ¶ 3.11. Thus, the claims stated in Plaintiffs' Petition against Lilly are vaccine-related as defined by the Act, and therefore must be first brought in Vaccine Court.

### C.    Multiple Courts Across the Country, Including The Southern District of Texas, Have Dismissed Similar Claims Against Lilly Pursuant to the Vaccine Act

A wealth of decisions across the country have demonstrated that Plaintiffs' claims for thimerosal-related injuries allegedly caused by childhood vaccinations are precisely the type of "vaccine-related" claims that must first be adjudicated by the Vaccine Court. The question of whether claims regarding the use of thimerosal as a preservative in vaccines are "vaccine-related" for the purposes of the Vaccine Act is well-settled. The majority of courts have extended the protections of the Vaccine Act to claims against Lilly, providing a national consensus that claims such as those pled by Plaintiffs must first be brought in the Vaccine Court.

Significantly, courts in the Southern District of Texas have repeatedly dismissed similar vaccine-related claims to proceed in Vaccine Court, stating that alleged injuries "cannot be 'thimerosal-related' without being 'vaccine-related' as well." *Blackmon v. American Home Products Corp.*, Civil Action No. G-02-179 (S.D. Tex. May 8, 2002), *Owens v. American Home Products Corp.*, 203 F. Supp. 2d 748, 756 (S.D. Tex. 2002), and *O'Connell v. American Home Products Corp.*, Civil Action No. G-02-184 (S. D. Tex. May 7, 2002) (unreported opinions attached as **Exhibit A**). While these cases predate the Vaccine Court's decision in *Leroy*, which eliminated the distinction drawn in these cases between the manufacturers of vaccines and

---

in the vaccine product, including a preservative such as thimerosal; therefore, a vaccine preservative is a constituent part of the vaccine." *Id.* at * 5. "It is reasonable to construe the plain meaning of 'vaccine' to encompass the thimerosal *component. . . .*" *Id.* at * 7 (emphasis in the original). Therefore, it is reasonable to construe the plain meaning of "vaccine manufacturer" to encompass "the thimerosal component manufacturer." Based on the Vaccine Court's interpretation that the definition of "vaccine" includes the thimerosal component, it logically follows that a component part of a vaccine, and its manufacturer and supplier, are entitled to the Act's protections for "vaccine-related" claims. Thus, any claims made by Plaintiffs against the manufacturer of any component of a vaccine should also be dismissed in favor of the exclusive initial jurisdiction of the Vaccine Court.

vaccine components[3], they are still good law for the proposition that vaccine-related claims against manufacturers must first be brought in Vaccine Court. Other Texas courts have agreed. In five separate cases, the Western District of Texas dismissed vaccine-related claims against Lilly and all other manufacturers "to be presented in the Court of Federal Claims." *See Liu v. Aventis Pasteur, Inc.,* 219 F. Supp. 2d 762, 768-769 (W.D. Tex. 2002); *Russak v. Aventis Pasteur, Inc.,* Civil Action No. A-02-CA-480-SS (W.D. Tex. Sept. 9, 2002); *Carabine v. Aventis Pasteur, Inc.,* Civil Action No. A-02-501-SS (W.D. Tex. Oct. 8, 2002); *Young v. Aventis Pasteur, Inc.,* Civil Action No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003); *Swafford v. Aventis Pasteur, Inc.,* Civil Action No. A-03-CA-055-SS (W.D. Tex. Mar. 7, 2003) (unpublished opinions attached as **Exhibit B**). The same result was reached by the U.S. District Court for the Eastern District of Texas. In *Botter v. Aventis Pasteur, Inc.,* the court dismissed the child's claims against Lilly along with all the other manufacturer defendants so that those claims could first be presented in the Vaccine Court. *Botter v. Aventis Pasteur, Inc.,* Civil Action No. 9:02 CV 181 (E.D. Tex. Jan. 15, 2003) (**Exhibit C**).

Very recently, the U.S. District Court for the Western District of Louisiana dismissed claims against Lilly when it also dismissed other claims against vaccine manufacturers pursuant to the Vaccine Act. *Moss v. Merck & Co.,* Civil Action No. 03-0334 (W.D. La. June 19, 2003) (**Exhibit D**). The U.S. District Court for the Northern District of Georgia similarly dismissed claims against the manufacturers of vaccines and vaccine components pursuant to the Act. *Mann v. Glaxo Smithkline Beecham Corp.,* No. 1:02-CV-2660-CAP (N.D. Ga. July 8, 2003) (**Exhibit E**). Similarly, Judge Weinstein of the U.S. District Court for the Eastern District

---

[3]    This distinction drawn by the Court between these two groups of manufacturers is no longer good law in light of the Vaccine Court's ruling which defined the term "vaccine" to include the vaccine's components. *See* discussion, *supra*, at n. 2.

of New York dismissed all claims against manufacturers of vaccines and the vaccine component thimerosal to be first pursued in Vaccine Court. *See Wax v. Aventis Pasteur, Inc.,* 240 F. Supp. 2d 191 (E.D.N.Y. 2002).

The U.S. District Court for the Southern District of Mississippi has repeatedly dismissed all vaccine-related claims against manufacturers of vaccines and thimerosal. The Court has held that "in keeping with the explicit directive of the Vaccine Act," such claims must be dismissed to proceed before the Vaccine Court. *See Collins v. American Home Products. Corp.,* Civil Action No. 3:01CV979LM (S.D. Miss. Aug. 2, 2002); *McDonald v. Abbott Laboratories, Inc.,* Civil Action No. 3:02CV77:LN (S.D. Miss. Sept. 6, 2002); *McDonald v. Abbott Laboratories, Inc.,* Civil Action No. 3:02CV77:LN (S.D. Miss. Aug. 2, 2002); *Stewart v. American Home Products. Corp.,* Civil Action No. 3:02CV427LN (S.D. Miss. Aug. 2, 2002); *Holder v. Abbott Laboratories, Inc.,* Civil Action No. 4:02CV148LN (S.D. Miss. Oct. 15, 2002) (all attached as **Exhibit F**).

Courts in other states have reached similar conclusions. On June 19, 2003, a Maryland state court dismissed vaccine-related claims against all Defendants in **53** separate cases, ruling that such claims must first proceed in Vaccine Court. *Agbebaku v. Sigma Aldrich, Inc.*, No. 24-C-02-004243 (Cir. Court for Baltimore County, Md. June 19, 2003) **(Exhibit G)**. The *Agbebaku* court rejected plaintiffs' attempt to distinguish claims against alleged thimerosal manufacturers from those against vaccine manufacturers, holding that "thimerosal-related injuries fall within the ambit of vaccine-related injuries." *Agbebaku*, No. 24-C-02-004242, at 15. The Court then dismissed **all** vaccine-related claims against **all** defendants, requiring plaintiffs to "first exhaust all administrative remedies in Vaccine Court before filing a civil action in this Court." *Id. See also Daigle v. Aventis Pasteur, Inc.,* Civil Action No. 02-CV-11664-RGS (D.

- 7 -

Mass. June 13, 2003) **(Exhibit H)** (applying correct analysis in dismissing all vaccine-related claims against all Defendants pursuant to the Act but mistakenly citing to previously-repealed provisions of the Homeland Security Act); *Bertrand v. American Home Products*, CV 2001-019657 (Super. Ct. Az. Mar. 7, 2003) **(Exhibit I)** (same).

Two judges in Pennsylvania have ruled the same way. *See Ashton v. Aventis Pasteur*, July Term, 2002, No. 04026, at 11 (Ct. of Common Pleas of Phila County, Pa. May 22, 2003)[4] (dismissing all clams against all defendants due to "the exclusive jurisdiction of the Vaccine Act") **(Exhibit J)**.; *Cheskiewicz v. Aventis Pasteur,* May Term 2002, No. 0952 (Ct. of Common Pleas of Phila. County, Pa. Dec. 16, 2002) (noting that "where the harm arises from an allergic reaction to non-foreign substances contained in the vaccine itself, the claim should first be heard in Vaccine Court," and dismissing claims against all defendants) **(Exhibit K)**. Two circuit courts in Florida held that the Vaccine Court maintains initial jurisdiction over plaintiffs' "vaccine-related" claims and dismissed thimerosal claims against Lilly and other defendants. *See Radulovic v. American Home Products,* Case No. 02-05033 (Fla. Cir. Ct. Mar. 5, 2003) **(Exhibit L)**; *Shanaughy v. Wyeth Co.,* No. 02-1517 CAWS (Fla. Cir. Ct. Jan. 17, 2003) **(Exhibit M)**. As the *Shanaughy* court pointed out, dismissal was appropriate because of the "Court's lack of initial jurisdiction over such claims." *Shanaughy,* No. 02-1517 CAWS at 2.

The rulings from the multiple courts referenced above, as well as the instructive opinions issued by the Vaccine Court[5] dispel any doubt that claims against a manufacturer of vaccines or thimerosal for alleged injuries from the administration of vaccines are indeed

---

[4]   The court "specifically reject[ed] as **without authority** the plaintiffs' claim that the suppliers of thimerosal occupy a separate class apart from that of vaccine manufacturers." *Ashton*, No. 040256, at 10.

[5]   *See* Autism General Order # 1, *In re: Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder or a Similar Neurodevelopmental Disorder*, 2002 WL 31696785 (Fed. Cl. July 3, 2002) **(Exhibit N)**; *Leroy*, 2002 WL 31730680; *Stewart v. Secretary of HHS*, No. 02-819V (Office of Special Masters, Dec. 30, 2002) **(Exhibit O)**.

"vaccine-related" claims. Because Plaintiffs are suing Lilly and the other Defendants for their alleged roles in manufacturing and distributing vaccines which contained thimerosal, such claims must be dismissed to be pursued in Vaccine Court. The plain language of the Vaccine Act precludes this Court from exercising jurisdiction over claims for vaccine-related injuries until Plaintiffs have exhausted their administrative remedies in Vaccine Court.

### D.    Multiple Provisions of the Vaccine Act Require Dismissal

As noted above, if a civil action is filed in state or federal court against a manufacturer in violation of § 300aa-11(a)(2)(A), "the court shall dismiss **the action**." *See* § 300aa-11(a)(2)(B) (emphasis added); *see also Nolan v. Boeing Co.* 919 F.2d 1058, 1066 (5th Cir. 1990) (defining an action as "the entirety of a civil proceeding"). Dismissal of "the action" would require the dismissal of all vaccine-related claims against all parties so that plaintiffs can file in Vaccine Court. Dismissal of Lilly is also mandated by § 300aa-11(a)(5)(B), which states that a plaintiff cannot maintain a civil suit for vaccine-related damages in state or federal court and at the same time pursue vaccine-related claims in Vaccine Court.

Specifically, § 300aa-11(a)(5)(B) provides that "[i]f a Plaintiff has pending a **civil action** for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death." (emphasis added). Section 300aa-11(a)(5)(B) mandates that Plaintiffs cannot maintain a civil suit for vaccine-related damages in state or federal court and at the same time pursue vaccine-related claims in Vaccine Court. Section 300aa-11(a)(5)(B) furthers Congress's intent that claims be pursued first in Vaccine Court. According to § 300aa-11(a)(5)(B), Plaintiffs are not entitled to have two actions pending for vaccine-related injuries, regardless of the types of claims alleged. Nor may Plaintiffs elect to bypass Vaccine Court to proceed first in state or federal court. Instead, the Vaccine Act requires

- 9 -

that plaintiffs first bring their claims in Vaccine Court, free of co-pending litigation in another forum. This case must be dismissed so Plaintiffs can file a petition in Vaccine Court and exhaust their administrative remedies.

### E. The Act Requires Dismissal Of The Parent's Claim Brought On Behalf Of The Minor Plaintiff for Medical Expenses Incurred, Pain And Suffering And Lost Wages

As noted above, the minor Plaintiff cannot pursue his civil claims because he has not exhausted his remedies under the Vaccine Act. To the extent the Plaintiff parent's alleged damages can also be recovered under the Vaccine Act, she too must exhaust administrative remedies before pursuing their civil claims.

The Plaintiff parent seeks "medical expenses in the past and future," "loss of earning capacity in the past and future" and "mental anguish in the past and future." Petition, ¶12.01. These alleged damages are brought on behalf of the minor Plaintiff. Therefore, they are undeniably recoverable under the Act. 42 U.S.C. § 300aa-15(a)(1)(A) provides that a petitioner under § 300aa-11 for a vaccine-related injury is entitled to compensation for expenses that "have been or will be incurred by or on behalf of the person who suffered such injury." Furthermore, §300aa-15(3)(A) provides for compensation for impaired earning capacity, and § 300aa-15(4) provides for "actual and projected pain and suffering." As these damages for vaccine-related injuries are specifically recoverable under the Act, Plaintiffs must first proceed with these claims in Vaccine Court. *See Blackmon*, Civil Action No. G-02-179, at 15; *Owens*, 203 F. Supp. 2d at 748; *O'Connell*, Civil Action No. G-02-184, at 15 (dismissing all parents' representative claims against vaccine manufacturers except for loss of consortium to proceed in Vaccine Court[6]). Indeed, as the United States District Court of the Northern District of Alabama noted in a similar

---

[6]  As discussed in the subsequent section, loss of consortium claims have since been rejected by the Texas Supreme Court.

- 10 -

case, Plaintiffs' effort "to recover medical expenses through this action is nothing more than an attempt to circumvent the bar put in place by the Vaccine Act requiring a child to first seek recovery from the Vaccine Court for injuries related to a vaccine." *Carr v. Aventis Pasteur, Inc.*, CV 02-J-3096-NE at 4 (N.D. Al. Feb. 27, 2003) (**Exhibit P**). *See also Cheskiewicz*, May Term, 2003, No. 0952 at 4 (the "Act permits reimbursement for medical bills incurred by or on behalf of a minor."); *Cyr v. Aventis Pasteur*, No. 01-C-663 at 6-7 (N.H. Sup. Ct. Aug. 8, 2003) (dismissing claims brought by parents due to the failure of their child to proceed through Vaccine Court) (**Exhibit Q**).   Plaintiffs' claims for expenses, loss of earnings and mental anguish brought by or on behalf of the minor Plaintiff must be dismissed and pursued in Vaccine Court.

**F.     Texas Law Requires Dismissal Of The Parent's Claims for Loss of Consortium**

The Plaintiff parent seeks damages for "loss of companionship and society in the past and future" and "loss of consortium in the past and future." Petition, ¶ 12.01.  Very recently, the Texas Supreme Court "decline[d] to extend a claim for loss of consortium to parents of children who have been seriously injured" in *Roberts v. Williamson*, Nos. 01-0765, __ S.W.3d __, 01-0766, 2002 WL 32126137, at *5 (Tex. July 3, 2003).  The court determined that "no compelling social policy impels us to recognize a parent's right to damages for the loss of filial consortium," and held that "the common law is best served" by denying such claims. *Id.*, at *6. Therefore, the parent's claims for loss of consortium due to the alleged injuries to the minor Plaintiff must be denied for failing to state a claim as a matter of Texas law.

- 11 -

**III.   SHOULD THE COURT DETERMINE THAT IT HAS JURISDICTION OVER ANY OF PLAINTIFFS' CLAIMS, THE COURT SHOULD DISMISS PLAINTIFFS' PETITION FOR FAILURE TO STATE A CLAIM UNDER TEXAS LAW**

Plaintiffs have failed to state a claim against Lilly as a matter of law. When deciding a motion to dismiss under Rule 12(b)(6), a petition should be dismissed if it appears "beyond a doubt" that a plaintiff, based on the allegations in the petition, can demonstrate no "set of facts in support of his claim which would entitle him to relief." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001). In the present case, Plaintiffs have not alleged that any specific product manufactured or sold by Lilly caused any injury to the minor Plaintiff. Therefore, as Plaintiffs have failed to state a claim against Lilly as a matter of Texas law, all claims against Lilly should be dismissed.

**A.   Plaintiffs Fail To Allege That Any Product Sold Or Manufactured By Lilly Caused The Minor Plaintiff's Alleged Injuries**

Plaintiffs appear to have had difficulty determining which manufacturers were responsible for the minor Plaintiff's alleged injuries. Their solution was to adopt a scattergun approach to pleading, dispensing with individualized claims in favor of general allegations against an ambiguous group of "Defendants." For example, while Plaintiffs assert that the minor's alleged injuries were caused by the "Defendants' decision to manufacture, market, promote, design, distribute and/or sell these unreasonably dangerous and defective Thimerosal-containing products," they do not allege which vaccines (or other "products") the minor actually received, which of those vaccines actually contained thimerosal, and which Defendants were allegedly responsible. (Petition, ¶ 4.09). The best Plaintiffs can do is allege that "[m]ost **vaccines** routinely administered to **children** contained Thimerosal" (Petition, ¶ 4.02) (emphasis added), but they never allege **which vaccines** were administered to **this child**. Plaintiffs also

- 12 -

assert that the ambiguous group of "Defendants" collectively "designed, manufactured, produced, labeled, advertised, tested, inspected, shipped, distributed, and/or sold" thimerosal (*See, e.g.,* Petition, ¶ 7.01) but do not allege **which Defendant** in particular performed what function in this exhaustive list with regard to **which vaccines** the minor Plaintiff received. Most importantly, Plaintiffs never allege they received any Lilly product, let alone that they were injured by the same. Without a specific claim against Lilly, but only a claim against "Defendants" generally for their involvement (in an undetermined capacity) with vaccines, "most" of which contained thimerosal, Plaintiffs' claims against Lilly fail as a matter of law.

Plaintiffs seek in effect some sort of watered-down market share liability. They seek the benefit of a market-share theory to avoid having to allege which of the Defendants' products the minor was allegedly exposed to, but do not want to be burdened with determining whether each of the Defendants they seek to hold liable even manufactured the product of which they complain. However, under Texas law, it is a "fundamental principle of traditional products liability law . . . that the plaintiffs must prove that the defendant supplied the product which caused the injury." *In re Fibreboard Corp.*, 893 F.2d 706, 711 (5th Cir. 1990) (quoting *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 77 (Tex. 1989)). This proof must "focus on individuals, not groups." *Id.* Texas does not recognize market share liability, but rather requires an individualized showing of causation and damages as to each defendant. *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 313-314 (5th Cir. 1998) (applying Texas law). Under Texas law, a manufacturer has no duty to injured consumers if it did not design, manufacture or sell the particular product "in question." *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 615 (Tex. 1996). Therefore, Plaintiffs' allegations against a general group of "Defendants" are insufficient as a matter of law. As Plaintiffs have failed to alleged they received a Lilly product,

- 13 -

they have failed to state a claim under Texas law. *See Block v. Wyeth, Inc.*, No. 3:02-CV-1077, 2003 WL 20307, *2 (N.D. Tex. Jan. 28, 2003) (noting that if a defendant did not manufacture the product which allegedly caused the injury, the *Barajas* case indicates Texas would find no duty under any "common law tort theory").

**B.    Plaintiffs' Claims For Strict Liability – Design And Marketing Defects Fail As A Matter Of Law**

To succeed on a claim of strict liability, a plaintiff "must prove the defendant supplied the product that caused the injury." *Firestone Steel*, 927 S.W.2d at 614. Furthermore, section 402A of the Restatement (Second) of Torts, which has been adopted in Texas, only subjects a party to liability if the party "is **engaged in the business of selling such a product**, and . . . [the product] is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." *Id.* at 613 (quoting R.2d Torts § 402A (1965)) (emphasis added). While Plaintiffs' Petition alleges that the "thimerosal" of which they complain was "in a defective condition" when sold, nowhere is it alleged that Lilly actually manufactured or sold said thimerosal, in which vaccines it was a component, and whether the minor Plaintiff received those vaccines. Plaintiffs' Petition, ¶¶ 5.01, 6.01. Rather Lilly is lumped together with all other Defendants which **collectively** are allegedly responsible for the minor's alleged injuries. The claims against Lilly as to strict liability fail as a matter of law, as there are no allegations that Lilly manufactured or distributed the product which allegedly was defective.

**C.    Plaintiffs' Claims For Breach of Common Law Implied Warranties Fail As A Matter Of Law**

A plaintiff cannot recover for a breach of implied warranty unless that plaintiff demonstrates "that the good complained of was defective at the time it left the manufacturer's or

- 14 -

1306840v1

seller's possession." *Rodriguez v. Hyundai Motor Co.*, 944 S.W.2d 757, 771 (Tex. App. 1997). Plaintiffs do not allege that the good by which they were allegedly injured was defective when it left any Defendant's possession. In fact, they do not even allege that any particular Defendant ever had possession of a product which allegedly caused them injury. Therefore, without some connection with the alleged injury-producing product, Lilly cannot be held liable for breach of implied warranties as to that product's uses or fitness.

**D.    Plaintiffs' Claims For Negligence Fail As A Matter Of Law**

Under Texas law, to succeed on a claim of negligence, a plaintiff must show "(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Firestone Steel*, 927 S.W.2d at 613. There is no duty to take action to prevent harm to others absent certain special relationships or circumstances. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (noting that a broad-form negligence instruction is insufficient in cases where a plaintiff seeks to "impose a duty on another to take protective action based special circumstances or the relationship between the parties"). While Plaintiffs allege the legal conclusion that all Defendants, including Lilly, had a "legal responsibility and duty" to Plaintiffs, they fail to allege the basis for the imposition of such a duty on Lilly or any other particular Defendant. Petition, ¶ 8.01. Once again, Plaintiffs fail to adequately plead that the minor Plaintiff received any product manufactured by Lilly. In fact, the only allegations regarding negligence are that the "Defendants" breached their duty "to conform to pharmaceutical industry standards" and as a result of that breach the minor Plaintiffs were injured. Petition, ¶¶ 8.01-8.02. However, simply alleging that the Defendants collectively failed to "conform" to some unspecified industry standard is not sufficient to plead negligence as a matter of law. Plaintiffs do not even allege that they received a product manufactured by any

- 15 -

particular Defendant. Regardless of how negligent Plaintiffs claim the Defendants are, Plaintiffs do not have a claim if the Defendants did not manufacture the product which allegedly caused the harm – the product "in question." *Firestone Steel*, 927 S.W.2d at 615; *Block*, 2003 WL 203067 at *2. Therefore, Plaintiffs' negligence claims against Lilly fail as a matter of law, as Plaintiffs have failed to plead any duty as to Lilly with regard to the minor Plaintiff's alleged injuries.

### E.    Plaintiffs' Claims For Deceptive Trade Practices Fail As A Matter Of Law

Under Texas' Deceptive Trade Practices Act, a plaintiff may bring a claim against the seller of a good or service for alleged violations of certain enumerated offenses if that plaintiff has first provided proper notice of the alleged violation to the seller. *See* Tex. Bus. & Com. Code §§ 17.46, 17.505. Plaintiffs' Petition fails to properly allege a DTPA claim against Lilly for two reasons. First, Plaintiffs fail to specify exactly which Defendants are responsible for which specific violations of the Act. To make out a proper claim under the DTPA, Plaintiffs must demonstrate that the Defendants' alleged failures to disclose information regarding the products which allegedly injured Plaintiffs was intended to induce them to enter into a transaction which they would not otherwise have entered into. *Parker v. Carnahan*, 772 S.W.2d 151, 159 (Tex. App. 1989). Plaintiffs do not plead this to be the case. Moreover, as Plaintiffs do not even allege that they entered into a transaction with regard to any particular Defendant's product, it stands contrary to reason that a Defendant would seek to induce Plaintiffs to purchase products manufactured by others.

The second reason why Plaintiffs' DTPA claim fails against Lilly is because Plaintiffs have failed to provide Lilly with any notice of any alleged violations prior to filing suit. Prior to filing a civil suit, Plaintiffs are required to provide notice to a defendant to allow the

- 16 -

defendant the opportunity to avoid litigation altogether. Tex. Bus. & Com. Code § 17.505. The burden is on Plaintiffs to plead proper notice. *Hines v. Hash*, 843 S.W.2d 464, 467 (Tex. 1992). As they have not done so, their claim fails against Lilly as a matter of law.

**F.    Plaintiffs' Claims For Assault Fail As A Matter Of Law**

Under Texas law, the common law elements of assault and battery are combined in the Tex. Pen. Code § 22.01. The elements of a civil tort for assault and battery are the same as outlined in the elements outlined in the penal code. *Baribeau v. Gustafson*, 107 S.W.3d 52, 60-61 (Tex. App. 2003). As a matter of law, a party can not be held liable for assault based on the "sale" and "distribution" of a product, as Plaintiffs' allege. Petition, ¶ 10.01. When a tort is based on intentional harm caused by another, the proper tort theory is that of battery. The tort of battery "is premised upon an injurious contact between the parties." *Baribeau*, 107 S.W.3d at 61. Here, Plaintiffs do not, and can not plead any contact occurred between any Defendant and the Plaintiffs. As such, Plaintiffs have failed to make out a claim for assault and battery as a matter of Texas law.

**IV.    CONCLUSION**

For the foregoing reasons, and for the reasons expressed in the Vaccine Defendants' Motion to Dismiss, Lilly respectfully requests that the Court dismiss Plaintiffs' vaccine-related claims to proceed first in Court of Federal Claims as provided by the Vaccine Act. Should the Court determine that any of Plaintiffs' claims survive such a dismissal, Lilly requests the same be dismissed for failure to state a claim under Texas law.

1306840v1

Respectfully submitted,

M. SCOTT MICHELMAN
Attorney-in-Charge
SBN: 00797075
Southern District of TX ID No. 20802
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis, Suite 1600
Houston, TX   77002-2911
Telephone:     713/227-8008
Telefax:        713/227-9508

**ATTORNEYS FOR DEFENDANT,
ELI LILLY AND COMPANY**

**OF COUNSEL:**

**SHOOK, HARDY & BACON L.L.P.**

DEBORAH A. MOELLER
JEFFERY A. KRUSE
One Kansas City Place
1200 Main Street
Kansas City, MO   64105-2118
Telephone:     816/474-6550
Telefax:        816/421-5547

- 18 -

1306840v1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served on all counsel of record listed below in accordance with the Federal Rules of Civil Procedure on the 9th day of September, 2003. Due to the voluminous nature of the exhibits, a copy of the exhibits is being provided only to the Court and to Plaintiffs' counsel. Should other counsel require a copy of the exhibits, Lilly will provide them upon request.

Ben C. Martin
Law Office of Ben C. Martin
2100 McKinney Avenue, Suite 1975
Dallas, TX 75201
*Attorneys for Plaintiffs*

Tim K. Goss
Capshaw, Goss & Bowers
3031 Allen Street, Suite 200
Dallas, TX 75204
*Attorneys for Plaintiffs*

Peter C. Neger
Bingham McCutchen
399 Park Avenue
New York, NY 10022
*Attorneys for Defendant, Evans Medical Limited*

Mitchell C. Chaney
Rodriguez, Colvin & Chaney
1201 E. Van Buren Street
Brownsville, TX 78520
*Attorneys for Defendant,*
*B.F. Ascher & Company, Inc.*

Michael R. Klatt
Clark, Thomas & Winters
Post Office Box 1148
Austin, TX 78767-1148
*Attorneys for Defendant Wyeth*
*(f/k/a American Home Products)*

James L. Ray
Daw & Ray
5718 Westheimer, Suite 1750
Houston, TX 77057
*Authorized Representative for Defendant,*
*American International Chemical, Inc.*

Bradley S. Wolff
Swift, Currie, McGhee & Hiers
1355 Peachtree Street, NE, Site 300
Atlanta, GA 30309-3238
*Attorneys for Defendant Aventis Pasteur Inc., f/k/a*
*Connaught Laboratories, Inc. f/d/b/a Pasteur Merieux*
*Connaught*

R. Jo Reser
Davidson & Troilo
7550 IH-10 West, Suite 800
San Antonio, TX 78229-5818
*Attorneys for Defendant Aventis Pasteur Inc., f/k/a*
*Connaught Laboratories, Inc. f/d/b/a Pasteur Merieux*
*Connaught*

Dr. Robert Koller
Dolder
Immengasse 9
400 Basel Switzerland
*Authorized Representative for Defendant, Dolder*

Jeffrey S. Wolff
Fulbright & Jaworski LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095
*Attorneys for Defendant, Smithkline Beecham*
*Corporation d/b/a Glazosmithkline*

Richard L. Josephson
Baker Botts LLP
910 Louisiana, Suite 3000
Houston, TX 77002
*Attorneys for Defendant, Abbott Laboratories*

Michael Losasso
3001 Aloma Avenue, Suite 220
Winter Park, FL 32792
*Authorized Representative for Defendant,*
*RPK Pharmaceuticals, Inc.*

Edmundo O. Ramirez
Ellis Koeneke & Ramirez
1101 Chicago
McAllen, TX 78501-4822
*Attorneys for Defendant, Merck & Co., Inc.*

Paul R. Elliott/Douglas B. Roberson
Baker Botts LLP
910 Louisiana, Suite 3000
Houston, TX 77002
*Of Counsel*

*Defendant,* Oralia T. Wells, M.D.
825 Lakeside Drive
Brownsville, TX 78520

- 19 -

*Defendant*, Eloisa T. Gonzalez, M.D.
825 Lakeside Drive
Brownsville, TX   78520

_____
M. SCOTT MICHELMAN

157901v1



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAY BLACKMON and KENDEL | § | |
| BLACKMON, individually and as next | § | |
| friends to TODD CHRISTOPHER | § | |
| BLACKMON; NORMAN KUEHN and | § | |
| MELISSA KUEHN, individually and as next | § | |
| friends to BRANDON HILTON KUEHN; and | § | |
| TIM SCOTT and SHARON SCOTT, | § | |
| individually and as next friends to COLBY | § | |
| BRENNAN SCOTT | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-02-179 |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION, *et al.* | § | |
| Defendants. | § | |

United States Courts
Southern District of Texas
ENTERED
MAY 0 8 2002
Michael N. Milby, Clerk of Court

**ORDER GRANTING IN PART AND DENYING IN PART WYETH, AVENTIS, MERCK AND SMITH KLINE'S MOTION TO DISMISS, DENYING SIGMA'S MOTION TO DISMISS, GRANTING PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT DISCOVERY AND TO EXTEND THE RESPONSE DATE TO GDL'S AMENDED MOTION TO DISMISS AND DENYING DEFENDANTS' REQUEST FOR ORAL ARGUMENT AS MOOT**

Plaintiffs Jay Blackmon and Kendel Blackmon, individually and as legal representatives of their minor child Todd Christopher Blackmon ("Todd"); Norman Kuehn and Melissa Kuehn, individually and as legal representatives of their minor child Brandon Hilton Kuehn ("Brandon"); and Tim Scott and Sharon Scott, individually and as legal representatives of their minor child Colby Brennan Scott ("Colby"); bring this products liability lawsuit against Defendants Sigma Aldrich Corporation ("Sigma Corp."); Sigma Aldrich, Inc. ("Sigma Inc."); Eli Lilly and Company ("Eli Lilly"); The Dow Chemical Company ("Dow"); EM Industries, Inc. ("EM"); Wyeth ("Wyeth") f/k/a American Home Products, Corp.; Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories f/d/b/a Pasteur Merieux Connaught; Merck and Company, Inc. ("Merck"); Smith Kline Beecham

Corporation ("Smith Kline") d/b/a GlaxoSmithKline; Spectrum Laboratory Products, Inc. ("Spectrum"); and GDL International, Inc. ("GDL") pursuant to the state laws of Texas. Now before the Court are three Motions to Dismiss filed by various Defendants: (1) a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) and the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. §§ 300aa-1-300aa-34, filed by Wyeth, Aventis, Merck and Smith Kline; (2) a Motion to Dismiss pursuant to the Vaccine Act and Fed. R. Civ. P. 19 filed by Sigma Corp. and Sigma Inc. (collectively, "Sigma"); and (3) a Motion to Dismiss for Lack of Personal Jurisdiction filed by GDL. For the reasons articulated below, Wyeth, Aventis, Merck and Smith Kline's Motion to Dismiss pursuant to the Vaccine Act is **GRANTED IN PART** and **DENIED IN PART**, Sigma's Motion to Dismiss pursuant to the Vaccine Act is **DENIED** and Plaintiffs are hereby **ORDERED** to conduct jurisdictional discovery before responding to the Motion to Dismiss filed by GDL.

## I. Background

While they were infants, Todd, Brandon and Colby were allegedly exposed to harmful levels of mercury via routine childhood vaccinations administered to them by their pediatricians. All or some of the vaccines contained thimerosal, a mercury laden preservative. At that time, vaccine manufacturers routinely added thimerosal to multiple-use vials of vaccines to extend each vial's shelf life. The thimerosal (and thus, mercury) introduced into the children's bodies by way of vaccination allegedly afflicted them with serious and lasting neurological injuries. Plaintiffs filed this action in a Texas state court seeking damages for the children's personal injuries both individually and on behalf of their children (as legal representatives). In their Original Petition, Plaintiffs assert four causes of action (strict liability, negligence, gross negligence and conspiracy) against two distinct

2

categories of Defendants: (1) the manufacturers of thimerosal containing vaccines–Wyeth, Aventis, Merck and Smith Kline ("Vaccine Manufacturers"); and (2) the manufacturers of thimerosal itself–Eli Lilly, EM, Sigma, Dow, Spectrum and GDL ("Chemical Manufacturers").[1]  Defendants subsequently removed the action pursuant to this Court's diversity jurisdiction.

## II.  The Vaccine Act

The "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken. Use of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. However, while most children enjoy measurable benefit from immunization programs, "a small but significant number of have been gravely injured." Id. Two significant concerns accompany these vaccine-related injuries: the inconsistency, expense, delay and unpredictability of the tort system in compensating claims of vaccine-injured children; and the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort-litigation. See id. at 7, 1986 U.S.C.C.A.N. at 6348. Fortunately, the National Vaccine Injury Compensation Program ("Program") ameliorates these concerns. The Program provides an avenue of recovery for injuries and deaths traceable to vaccinations that works with greater ease and on a faster timetable than the civil tort system.[2] See Shalala v. Whitecotton, 514 U.S. 268, 269, 115 S.

---

[1] In their Original Petition Plaintiffs do not distinguish between the Vaccine Manufacturers and the Thimerosal Manufacturers. The Court finds, however, that making such a distinction is essential.

[2] The Program became effective on October 1, 1988.

3

Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). In effect, it "ensure[s] that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345-6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby . . . keep[s] manufacturers in the market." Schafer v. Am. Cyanamid Co., 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires that vaccine-related claims are initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. See Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; Haggerty v. Wyeth Ayerst Pharm., 79 F. Supp. 2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[3] See 42 U.S.C. § 300aa-11(2)(A); Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures . . .before filing any *de novo* civil action in state or federal court"). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. See 42 U.S.C. § 300aa-11(a)(2)(B). Simply put, individuals who qualify as Program claimants must file petitions in the

---

[3] A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

whether Plaintiffs are required to file a Program petition for: (1) the claims they have filed on behalf of their children ("Representative Claims"); or (2) their individual claims that are derivative of the children's injuries ("Individual Claims").

<u>Representative Claims Filed Against the Vaccine Manufacturers</u>

A proper claimant under the Vaccine Act is "any person who has sustained a vaccine-related injury" <u>or</u> the legal representative of that person. 42 U.S.C. § 300aa-11(b)(1)(A). Therefore, if the children sustained "vaccine-related injuries," Plaintiffs are proper claimants under the Vaccine Act with respect to the Representative Claims. The Vaccine Act defines "vaccine-related injury" as "an illness, injury, condition or death associated with one or more of the vaccines set forth in the Vaccine Injury Table [42 C.F.R. § 100.3], except that term does not include an illness, injury, condition, or death associated with an adulterant or a contaminant intentionally added to such a vaccine."[7] 42 U.S.C. § 300aa-33(5). Plaintiffs maintain that because thimerosal is an "adulterant or contaminant intentionally added to . . .a vaccine," this lawsuit does not involve a "vaccine-related" injury as defined by the Vaccine Act.[8] Conversely, the Vaccine Manufacturers contend that thimerosal is not

---

[7] The vaccines currently listed in the Vaccine Injury Table are diptheria, tetanus, pertussis, measles, mumps, rubella, poliovirus, hepatitis B, haemophilil influenzae type b, varicella zoster virus, rotavirus and streptococcus pneumoniae. <u>See</u> 42 C.F.R. § 100.3 (Vaccine Injury Table). In addition to listing eligible vaccines, the Vaccine Injury Table also lists types of injuries associated with each vaccine. <u>See id.</u> Individuals who suffer a listed injury after being dosed with the corresponding vaccine make out a *prima facie* case for compensation that may be rebutted only by proof that such injury was caused by factors unrelated to the vaccine. <u>See</u> 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1)(B). Individuals who suffer injuries not listed in the Vaccine Injury Table may still obtain compensation, but they must prove by a preponderance of the evidence that the injury was in fact caused by a listed vaccine. <u>See id.</u>

[8] The Court notes that Plaintiffs' Original Petition does not specify which thimerosal containing vaccines were administered to the children. Rather, the Petition generally refers to vaccines that _e "routinely administered to children" according to the "typical immunization schedule during the first 18 months of life." The Recommended Childhood Immunization Schedule published by the Centers for Disease Control and Prevention ("CDC") specifies that the routine vaccinations for American children within their first eighteen months are (1) hepatitis B vaccine; (2) diphtheria, tetanus and pertussis vaccine; (3)

an "adulterant or contaminant," but rather, a "constituent material" of vaccines. The Court agrees with the Vaccine Manufacturers.

When attempting to discern a statute's meaning, a court must initially look to the plain meaning of the statute's language. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Here, because "adulterant" and "contaminant" are not specifically defined by the Vaccine Act, dictionary definitions provided the Court with guidance as to the plain meaning of these terms. The definition of an "adulterant" is "a substance which makes an item impure, spurious, or inferior by adding extraneous or improper ingredients." The American Heritage Dictionary 58 (2d ed. 1992). A medical dictionary similarly defines adulterant as "[a]n impurity; an additive that is considered to have an undesirable effect or to dilute the active material so as to reduce its therapeutic or monetary value." Stedman's Medical Dictionary 30 (27th ed. 2000). And a contaminant is "[s]omething that makes impure or corrupt by contact or mixture." Webster's 9th New Collegiate Dictionary 283 (9th ed. 1991).

Thimerosal, when used in vaccines, fails to correspond with any of these definitions. Vaccine manufacturers intentionally add thimerosal to vaccine formulas because it deters microbial and fungal growth, thereby maintaining the safety, purity and potency of vaccines. In fact, thimerosal has been widely used as a vaccine preservative since the 1930s, see Statement by William Egan, Ph.D.,

---

haemophilus influenzae type b vaccine; (4) poliovirus vaccine; (5) measles-mumps-rubella vaccine; and (6) varicella zoster virus vaccine. See Morbidity and Mortality Weekly Report (Centers for Disease Control and Prevention) Vol. 44 Nos. 52 & 52, January 5, 1996, at 942 (Figure 1). Thus, the Court presumes that the reference to vaccines "routinely administered to children" in Plaintiffs' Original Petition refers to the six CDC-recommended vaccines. And because all six of these vaccines are covered by the Vaccine Injury Table, see 42 C.F.R. § 100.3, the Court further assumes that the children's injuries are "table injuries" within the scope of the Vaccine Act. This assumption is supported by the fact that Plaintiffs do not assert that the children were injured by an unlisted vaccine in response to the Vaccine Manufacturers' Motion to Dismiss.

FDA, before the Committee on Government Reform, U.S. House of Representatives, July 18, 2000, and its use satisfies the FDA's requirement that preservatives be added to vaccines distributed in multi-use vials. See 21 C.F.R. § 610.15(a) ("Products in multiple-dose containers shall contain a preservative"). As such, thimerosal cannot be said to "make impure or corrupt" a vaccine or to reduce a vaccine's therapeutic value. Furthermore, thimerosal cannot be characterized as having an undesirable effect or diluting the active material found within a vaccine. In fact, the precise opposite is true. As a preservative, thimerosal prevents a vaccine's corruption. Hence, neither the plain meaning of "adulterant" nor "contaminant" applies to thimerosal when, as here, it is purposefully used as an ingredient in the approved formulation of a vaccine.

The remainder of the language used by Congress to define "vaccine-related injury" (i.e. "associated with one or more . . . vaccines") likewise requires a finding that the Representative Claims are covered by the Program. A "vaccine" is defined as a "suspension of attenuated or killed microorganisms," Dorland's Medical Dictionary 1799 (27th ed. 1988), and "a preparation of killed microorganisms, living attenuated organisms, or living fully virulent organisms." Webster's 9th New Collegiate Dictionary 1301 (9th ed. 1991). Neither of these definitions indicate that a vaccine is comprised of microorganisms alone. On the contrary, they indicate that a vaccine is a "suspension" or "preparation" composed of both microorganisms and additional ingredients.[9] And, as explained above, manufacturers of vaccines add thimerosal to the "preparation" or "suspension" of vaccines.[10]

_____

[9] A suspension is "a class of pharmacopeial preparations of finely divided undissolved drugs [or in this case, microorganisms] . . . dispersed in liquid vehicles for oral or parenteral use." Stedman's Medical Dictionary 1713 (26th ed. 1995). A preparation is "a medicinal substance made ready for use." Webster's 9th New Collegiate Dictionary 929 (9th ed. 1991).

[10] The FDA has long recognized that preservatives (i.e. thimerosal) are "constituent materials" of vaccines. See 21 C.F.R. § 610.15 (indicating that constituents of biological materials include ingredients,

Therefore, because the children's injuries are allegedly linked to a vaccine ingredient, their injuries are definitely "vaccine-related." See, e.g., Brausewetter v. Sec'y of Health and Human Servs., No.99-278V, 1999 WL 562700, at *3 (Fed. Cl. July 16, 1999) (stating that claims fall under the Vaccine Act when a claimant is exposed to the "chemical/biological components of the tetanus vaccine"); Pannell v. Sec'y of Health and Human Servs., No. 94-658V, 1995 WL 432643, at *2 (Fed. Cl. July 7, 1995) (referring to "vaccine-related injury" as one "caused by the vaccine or by something contained therein"); see also Grant v. Sec'y of Health and Human Servs., No. 956 F.2d 1144, 1149-50 (Fed. Cir. 1992) (affirming award where vaccine's preservative was an alleged cause of claimant's injury). Clearly, the plain language of the Vaccine Act indicates that the children's injuries cannot be "thimerosal-related" without being "vaccine-related" as well.[11] Therefore, Plaintiffs are required to file a Program petition as a pre-requisite to filing any civil action seeking damages from the Vaccine Manufacturers for injuries to their children. Accordingly, the Vaccine Manufacturers' Motion to Dismiss is **GRANTED** with respect to the Representative Claims asserted

---

preservatives, diluents and adjuvants).

[11] In this case, because the language of the Vaccine Act unambiguously and specifically indicates that injuries caused by vaccine preservatives (i.e. thimerosal) are within its scope, it is clear that Congress has spoken to the precise question at issue. And the Court has given effect to such Congressional intent. However, the Court's decision would remain the same even if Congressional intent was not clearly expressed. In that event, the Court would have adopted the position taken by the Secretary of the Department of Health and Human Services ("Secretary"). See Chevron U.S.A. v. Nat'l Resources Def. Council, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (explaining that when Congress has not directly spoken to an issue, courts must adopt the interpretation of the administrative agency charged with the duty of enacting the regulation in question "unless they are arbitrary, capricious, or manifestly contrary to the statute"). The Secretary, who is charged with the responsibility of administering the Program, see 42 U.S.C. §§ 300aa-10-300aa34, maintains that any injury claims allegedly caused by thimerosal in covered vaccines are "vaccine related" and therefore, thimerosal-related claims against vaccine manufacturers require adjudication by the Vaccine Court. See, e.g., The National Vaccine Injury Compensation Program web-page, *available at* <http://www.hrsa.gov/osp/vicp/quanda.htm> ("Because thimerosal is not an adulterant or contaminant, individuals who have claims relating to thimerosal in vaccines covered under the [Vaccine Act] . . . must first file the claim with the [Program] before pursuing any other civil litigation").

9

against them. These claims are hereby **DISMISSED WITHOUT PREJUDICE** and Plaintiffs are urged to re-file such claims in the Vaccine Court if they so desire.

<u>Individual Claims Against the Vaccine Manufacturers</u>

Having dismissed the Representative Claims against the Vaccine Manufacturers, the Court now turns to Plaintiffs' Individual Claims for loss of consortium, emotional distress and loss of services. In their Motion to Dismiss, the Vaccine Manufacturers argue that Plaintiffs are also required to file a Program petition as a pre-requisite to asserting the Individual Claims. Moreover, the Vaccine Manufacturers assert that even if the Individual Claims are not barred by the Vaccine Act, Plaintiffs' causes of action for loss of consortium, loss of services and emotional distress cannot be maintained in accordance with Texas law. The Court will address each of these contentions in turn.

<u>Vaccine Act Petition</u>

By its own terms, the Vaccine Act's proscription against bringing a civil action for damages prior to the filing of a Program petition "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). As such, Plaintiffs are not barred from bringing their Individual Claims against the Vaccine Manufacturers unless they are "qualified to file a petition." An individual becomes eligible to file a petition if he or she suffers a specified injury after receiving a vaccine. <u>See</u> 42 U.S.C. §§ 300aa-11(b)(1)(A), 300aa-11(c)(1)(A). Thus, unless an individual received a vaccine (or is the legal representative of such an individual), that individual cannot file a petition in the Vaccine Court. <u>See</u> <u>Schafer</u>, 20 F.3d at 7; <u>Head v. Sec'y of Health and Human Servs.</u>, 26 Cl. Ct. 546, 547 n.1 (1992), <i>aff'd</i>, 996 F.2d 318 (Fed. Cir. 1993). In this case, none of the Plaintiffs allege to have

"suffered a relevant injury. . . after he or she received a vaccine." Accordingly, Plaintiffs need not (and cannot, for that matter) file a Program petition with respect to their Individual Claims, and are consequently permitted to file such claims in this forum. See Schafer, 20 F.3d at 5 (explaining that the Vaccine Act's tort suit ban does not apply to individuals who cannot file petition in the Vaccine Court except in a representative capacity); Head, 26 Cl. Ct. at 550 (holding that an award to a mother in her individual capacity in an action arising from vaccine-related injuries received by her daughter did not bar the daughter's subsequent action under the Vaccine Act); McDonald v. Lederle Labs., 775 A.2d 528, 535 (N.J. 2001) ("The [Vaccine] Act does not preclude parents from filing an individual civil action for losses incurred by them."). Having determined that Plaintiffs' Individual Claims are not barred by the Vaccine Act, the Court now considers the merits of these claims under Texas law.

### Loss of Consortium

In Sanchez v. Schindler, 651 S.W.2d 249 (Tex. 1983), the Texas Supreme Court recognized that injuries to the familial relationship are significant injuries worthy of compensation. See id. at 251. Accordingly, parents may recover for loss of companionship for the wrongful death of a child. See id. At least two Texas courts have extended the Sanchez holding to cover situations involving a non-fatally injured child. See Roberts v. Williamson, 52 S.W.3d 343, 352 (Tex. App.–Texarkana 2001) ("To hold that a parent cannot recover [for the loss of consortium of a non-fatally injured child] would ignore the basic idea behind recovery for loss of consortium: to attempt to compensate for the loss of love and companionship"), petition for review filed (August 20, 2001); Enochs v. Brown, 872 S.W.2d 312, 322 (Tex. App.–Austin 1994, no writ) ("Within the [Texas] Supreme Court's express recognition of a common law cause of action for a serious injury to a spouse or

11

parent lies the implicit recognition of a parent's claims for loss of companionship for a similar injury to a child"); Cf. Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex. 1990) ("[T]he two relationships likely to be most severely affected by a negligent injury to a person are the husband and wife relationship and that of parent and child[.]") Therefore, in light of these decisions, the Court concludes that Plaintiffs have stated a viable claim for loss of consortium under Texas law.

### Loss of Services

On the other hand, the Texas Supreme Court rejected the "antiquated concept of the child as an economic asset," when it explained that "[t]he real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort, companionship and society." Sanchez, 752 S.W.2d at 251. Therefore, the Court concludes that, as a matter of Texas law, Plaintiffs cannot maintain a cause of action for loss of services based upon the children's alleged injuries.

### Emotional Distress

Similarly, Plaintiffs cannot recover on their derivative claims of emotional distress. In Texas, emotional distress damages are recoverable in a very limited set of circumstances: (1) as the foreseeable result of a breach of a duty arising out of certain special relationships; (2) for common law torts involving intentional or malicious conduct; (3) for wrongful death; (4) in personal injury cases where the defendant's conduct causes the plaintiff serious bodily injury; and (5) in bystander actions. See Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90, 95 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). In this case, Plaintiffs have not alleged any facts signaling a special relationship, intentional or malicious conduct or wrongful death. And the only personal injuries alleged were incurred by the children–not by Plaintiffs. Thus, the only possible avenue by which Plaintiffs may

attempt to recover emotional distress damages is the bystander action. However, given the facts of this case, this method proves similarly inapplicable.

In Texas, bystanders may recover damages for mental anguish suffered as a result of witnessing a serious or fatal accident involving a close family member. See City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997). In order to successfully recover emotional distress damages, a bystander plaintiff must establish that: (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the plaintiff and victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. See United Servs. Auto Ass'n v. Keith, 970 S.W.2d 540, 541-42 (Tex. 1998). Texas law requires the bystanders's presence when the accident occurred and the contemporaneous perception of the accident. See id. at 542.

Here, Plaintiffs clearly did not witness and perceive the type of shocking accident contemplated by the bystander theory of recovery. Rather, Plaintiffs witnessed the routine vaccination of their children and the children's subsequent medical problems that are allegedly linked to thimerosal. Moreover, Plaintiffs did not even learn of the children's alleged mercury poisoning until the children's neurological problems were diagnosed by a physician, well after the suspect vaccines were administered. However anguishing these belated circumstances may have been, the bystander theory is inapplicable to the facts of this case, as a matter of Texas law.

As stated above, although none of the Individual Claims are barred by the Vaccine Act, Plaintiffs' derivative claims for loss of services and emotional distress cannot be maintained in

13

conformity with Texas law. On the other hand, Plaintiffs' cause of action for loss consortium remains viable. As such, the Vaccine Manufacturers' Motion to Dismiss is hereby **GRANTED IN PART** with respect to Plaintiffs' Individual Claims for loss of services and emotional distress; and hereby **DENIED IN PART** with respect to Plaintiffs' Individual Claims for loss of consortium. The Court further **ORDERS** that Plaintiffs' Individual Claims for loss of services and emotional distress against the Vaccine Manufacturers are **DISMISSED WITH PREJUDICE.**

## IV.  Sigma's Motion to Dismiss

The Court now turns to the Motion to Dismiss filed by Sigma on March 22, 2002.[12] In that Motion, Sigma contends that the Vaccine Act requires dismissal of the Representative Claims and Individual Claims brought against itself and the other Chemical Manufacturers. This argument contains a fatal flaw, however, because the Vaccine Act only prohibits the filing of any civil action against a "vaccine *manufacturer* or *administrator*" prior to the filing of a Program petition. 42 U.S.C. § 300aa-11(2)(A) (emphasis added). Because Sigma allegedly supplies thimerosal (a raw material) to the Vaccine Manufacturers, but does not manufacture or administer vaccines itself, Plaintiffs' claims against Sigma are not subject to the Vaccine Act's tort suit bar. Nevertheless, for the reasons discussed previously in conjunction with the Individual Claims against the Vaccine Manufacturers, Sigma's Motion to Dismiss is hereby **GRANTED IN PART** with respect to Plaintiffs' derivative claims for loss of services and emotional distress. Those claims are hereby **DISMISSED WITH**

---

[12] On April 29, 2002, Sigma filed a second Motion to Dismiss and alternatively, a Motion to Stay. The Court is not making any ruling on Sigma's second Motion to Dismiss at this time. The Court will address that Motion, along with Sigma's request for a stay, after Plaintiffs have responded thereto.

**PREJUDICE.** Regarding all other claims asserted by Plaintiffs against Sigma, its Motion to Dismiss is hereby **DENIED.**[13]

## V.  GDL's Motion to Dismiss

GDL (a Chemical Manufacturer) filed its Amended 12(b) Motion to Dismiss for Lack of Personal Jurisdiction on March 20, 2002. In response, Plaintiffs filed a Motion for Leave to Conduct Jurisdictional Discovery of GDL. The Court finds that such jurisdictional discovery is indeed warranted. Accordingly, the Court hereby **ORDERS** that Plaintiffs have sixty (60) days from the date of this Order to conduct discovery pertaining solely to whether this Court may validly exercise personal jurisdiction over GDL. At the end of that time period, Plaintiffs are **ORDERED** to file their Response to GDL's Motion to Dismiss. The Court will rule on that Motion as soon as it can be reached.

In conclusion, the Court reiterates that all Representative Claims asserted against the Vaccine Manufacturers fall squarely within the jurisdiction of the Vaccine Court and are hereby **DISMISSED WITHOUT PREJUDICE.** Hence, the only claims against the Vaccine Manufacturers that Plaintiffs may properly assert in this forum are those seeking compensation for their individual loss of consortium. On the other hand, Plaintiffs' Representative Claims and Individual Claims against the Chemical Manufacturers are subject to adjudication in this forum, with the exception of Plaintiffs' derivative claims for emotional distress and loss of services. GDL's Motion to Dismiss remains pending. Finally, this Order renders the Vaccine Manufacturers' Request for Oral Argument on their

---

[13] Sigma's Motion to Dismiss also argues for a dismissal pursuant to Fed. R. Civ. P. 19 in the event that the Court dismisses "any other Defendant or other Defendants." Because the Court has not dismissed any Defendants (only certain claims), the Court does not need to address Sigma's Rule 19 request.

Motion to Dismiss **MOOT**. The Court will address all other pending concerns as soon as they are ripe for consideration.

**IT IS SO ORDERED.**

**DONE** this _2__ day of May, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

16



No Transmission Information Available   in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 18/32
05/10/2002    11:20      FULBRIGHT HO → 00340100202241512536459@                              NO. 137    P018

Received 05/07/2002 15:42 in 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 2/16

# FILE COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MICHAEL O'CONNELL and EILEEN O'CONNELL, individually and as next friends to MICHAEL JOSEPH O'CONNELL Plaintiffs, §§§§§ | United States Courts Southern District of Texas ENTERED MAY 7 - 2002 Michael N. Milby, Clerk |
| v. §§ | CIVIL ACTION NO. G-02-184 |
| AMERICAN HOME PRODUCTS CORPORATION, et al. Defendants. §§§ | |

## ORDER GRANTING IN PART AND DENYING IN PART WYETH, AVENTIS, MERCK AND SMITH KLINE'S MOTION TO DISMISS, DENYING SIGMA AND EM'S MOTION TO DISMISS, ORDERING PLAINTIFFS TO CONDUCT JURISDICTIONAL DISCOVERY OF GDL AND DENYING DEFENDANTS' REQUEST FOR ORAL ARGUMENT AS MOOT

Plaintiffs Michael O'Connell and Eileen O'Connell, individually and as legal representatives of their minor child Michael Joseph O'Connell ("Michael"), bring this products liability lawsuit against Defendants Sigma Aldrich Corporation ("Sigma Corp."); Sigma Aldrich, Inc. ("Sigma Inc."); Eli Lilly and Company ("Eli Lilly"); The Dow Chemical Company ("Dow"); EM Industries, Inc. ("EM"); Wyeth ("Wyeth") f/k/a American Home Products, Corp.; Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories f/d/b/a Pasteur Merieux Connaught; Merck and Company, Inc. ("Merck"); Smith Kline Beecham Corporation ("Smith Kline") d/b/a GlaxoSmithKline; Spectrum Laboratory Products, Inc. ("Spectrum"); and GDL International, Inc. ("GDL") pursuant to the state laws of Texas. Now before the Court are three Motions to Dismiss filed by various Defendants: (1) a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) and the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. §§ 300aa-1-300aa-34, filed by Wyeth, Aventis, Merck and Smith Kline; (2) a Motion to Dismiss pursuant to the Vaccine Act and Fed. R. Civ. P. 19 filed by Sigma

Gorman Aff., Exhibit 12
Page 1 of 15

No Transmission Information Available   in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 19/32
05/10/2002    11:20    FULBRIGHT HO → 00340102028241512536459B                                    NO. 137    P019

Received 05/07/2002 15:42 in 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 3/16

Corp. and Sigma Inc. (collectively, "Sigma") and subsequently joined by EM; and (3) a Motion to

Dismiss for Lack of Personal Jurisdiction filed by GDL. For the reasons articulated below, Wyeth,

Aventis, Merck and Smith Kline's Motion to Dismiss pursuant to the Vaccine Act is **GRANTED**

**IN PART** and **DENIED IN PART**, Sigma and EM's Motion to Dismiss pursuant to the Vaccine

Act is **DENIED** and Plaintiffs are hereby **ORDERED** to conduct jurisdictional discovery before

responding to the Motion to Dismiss filed by GDL.

## I.  Background

During the first eighteen months of his life, Michael was allegedly exposed to harmful levels

of mercury via routine childhood vaccinations administered to him by his pediatrician. All or some

of the vaccines contained thimerosal, a mercury laden preservative. At that time, vaccine

manufacturers routinely added thimerosal to multiple-use vials of vaccines to extend each vial's shelf

life. The thimerosal (and thus, mercury) introduced into Michael's body by way of vaccination

allegedly afflicted him with serious and lasting neurological injuries. Plaintiffs filed this action in

a Texas state court seeking damages for Michael's personal injuries both individually and on

Michael's behalf (as his legal representatives). In their Original Petition, Plaintiffs assert four causes

of action (strict liability, negligence, gross negligence and conspiracy) against two distinct categories

of Defendants: (1) the manufacturers of thimerosal containing vaccines–Wyeth, Aventis, Merck and

Smith Kline ("Vaccine Manufacturers"); and (2) the manufacturers of thimerosal itself–Eli Lilly,

EM, Sigma, Dow, Spectrum and GDL ("Chemical Manufacturers").[1]  Defendants subsequently

removed the action pursuant to this Court's diversity jurisdiction.

---

[1] In their Original Petition Plaintiffs do not distinguish between the Vaccine Manufacturers and the
Thimerosal Manufacturers. The Court finds, however, that making such a distinction is essential.

2

Gorman Aff., Exhibit 12
Page 2 of 15

No Transmission Information Available  in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 21/32
05/10/2002   11:20   FULBRIGHT HO → 003401020202415125364598                    NO. 137   P021

Received 05/07/2002 15:42 in 09:52 on line [B] for BW00340 Printed 05/07/2002 15:54 * Pg 5/16

1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; Haggerty v. Wyeth Ayerst Pharm., 79 F. Supp. 2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[3] See 42 U.S.C. § 300aa-11(2)(A); Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures ...before filing any de novo civil action in state or federal court"). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. See 42 U.S.C. § 300aa-11(a)(2)(B). Simply put, individuals who qualify as Program claimants must file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all.[4] If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program award, that individual may reject the award and pursue a traditional tort action in any forum.[5] See 42 U.S.C. § 300aa-21(a).

---

[3] A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

[4] There are a few exceptions. De minimis claims for less than $1,000 may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(a)(2)(A). However, the Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages (such as the instant lawsuit) be filed under the Program. See id.

[5] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith

4

---

 

No Transmission Information Available   in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 22/32
05/10/2002    11:28     FULBRIGHT HO → 00340102028241512536459B                           NO.137    P022

Received 05/07/2002 15:42 in 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 6/16

### III.  Vaccine Manufacturers' Motion to Dismiss

In this case, it is undisputed that Plaintiffs have not filed a petition in the Vaccine Court in accordance with the Program. In their Motion to Dismiss, filed March 28, 2002, the Vaccine Manufacturers highlight this fact and argue that Plaintiffs' failure to file a Program petition requires the Court to dismiss all claims filed against them pursuant to Fed. R. Civ. P. 12(b).[6] In response, Plaintiffs contend that they are not required to file a petition in the Vaccine Court because Michael's injuries fall outside the scope of the Vaccine Act. Thus, the Court must initially determine whether Plaintiffs are required to file a Program petition for: (1) the claims they have filed on Michael's behalf ("Representative Claims"); or (2) their individual claims that are derivative of Michael's injuries ("Individual Claims").

#### Representative Claims Filed Against the Vaccine Manufacturers

A proper claimant under the Vaccine Act is "any person who has sustained a vaccine-related injury" or the legal representative of that person. 42 U.S.C. § 300aa-11(b)(1)(A). Therefore, if Michael sustained a "vaccine-related injury," Plaintiffs are proper claimants under the Vaccine Act with respect to the Representative Claims. The Vaccine Act defines "vaccine-related injury" as "an illness, injury, condition or death associated with one or more of the vaccines set forth in the Vaccine

---

and that a reasonable basis for asserting the claim existed. See 42 U.S.C. § 300aa-15(e). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, see 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). See 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. See 42 U.S.C. § 300aa-23(d).

[6] Although the Vaccine Manufacturers do not specify which provision of Rule 12(b) they are moving for dismissal under, the Court assumes that they are seeking a dismissal under Rule 12(b)(3) for improper venue, or in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(3); Fed. R. Civ. P. 12(b)(3).

5

No Transmission Information Available  in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 23/32
05/10/2002   11:28    FULBRIGHT HO → 003401020282415125364598                              NO.137   0023

Received 05/07/2002 15:42 In 09:52 on line [B] for BW00340 Printed 05/07/2002  15:54 * Pg 7/16

Injury Table [42 C.F.R. § 100.3], except that term does not include an illness, injury, condition, or death associated with an adulterant or a contaminant intentionally added to such a vaccine."[7] 42 U.S.C. § 300aa-33(5). Plaintiffs maintain that because thimerosal is an "adulterant or contaminant intentionally added to . . .a vaccine," this lawsuit does not involve a "vaccine-related" injury as defined by the Vaccine Act.[8] Conversely, the Vaccine Manufacturers contend that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines. The Court agrees with the Vaccine Manufacturers.

When attempting to discern a statute's meaning, a court must initially look to the plain meaning of the statute's language. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Here, because "adulterant" and "contaminant" are not specifically defined by the Vaccine Act,

---

[7] The vaccines currently listed in the Vaccine Injury Table are diptheria, tetanus, pertussis, measles, mumps, rubella, poliovirus, hepatitis B, haemophilil influenzae type b, varicella zoster virus, rotavirus and streptococcus pneumoniae. See 42 C.F.R. § 100.3 (Vaccine Injury Table). In addition to listing eligible vaccines, the Vaccine Injury Table also lists types of injuries associated with each vaccine. See id. Individuals who suffer a listed injury after being dosed with the corresponding vaccine make out a *prima facie* case for compensation that may be rebutted only by proof that such injury was caused by factors unrelated to the vaccine. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(I), 300aa-13(a)(1)(B). Individuals who suffer injuries not listed in the Vaccine Injury Table may still obtain compensation, but they must prove by a preponderance of the evidence that the injury was in fact caused by a listed vaccine. See id.

[8] The Court notes that Plaintiffs' Original Petition does not specify which thimerosal containing vaccines were administered to Michael. Rather, the Petition generally refers to vaccines that are "routinely administered to children" according to the "typical immunization schedule during the first 18 months of life." The Recommended Childhood Immunization Schedule published by the Centers for Disease Control and Prevention ("CDC") specifies that the routine vaccinations for American children within their first eighteen months are (1) hepatitis B vaccine; (2) diphtheria, tetanus and pertussis vaccine; (3) haemophilus influenzae type b vaccine; (4) poliovirus vaccine; (5) measles-mumps-rubella vaccine; and (6) varicella zoster virus vaccine. See Morbidity and Mortality Weekly Report (Centers for Disease Control and Prevention) Vol. 44 Nos. 52 & 52, January 5, 1996, at 942 (Figure 1). Thus, the Court presumes that the reference to vaccines "routinely administered to children" in Plaintiffs' Original Petition refers to the six CDC-recommended vaccines. And because all six of these vaccines are covered by the Vaccine Injury Table, see 42 C.F.R. § 100.3, the Court further assumes that Michael's injuries are "table injuries" within the scope of the Vaccine Act. This assumption is supported by the fact that Plaintiffs do not assert that Michael was injured by an unlisted vaccine in response to the Vaccine Manufacturers' Motion to Dismiss.

6

No Transmission Information Available   in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 24/32
05/10/2002   11:28    FULBRIGHT HO → 00340100020241512536458                    NO.137   P024

Received 05/07/2002 15:42 in 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 8/16

dictionary definitions provided the Court with guidance as to the plain meaning of these terms. The definition of an "adulterant" is "a substance which makes an item impure, spurious, or inferior by adding extraneous or improper ingredients." The American Heritage Dictionary 58 (2d ed. 1992). A medical dictionary similarly defines adulterant as "[a]n impurity; an additive that is considered to have an undesirable effect or to dilute the active material so as to reduce its therapeutic or monetary value." Stedman's Medical Dictionary 30 (27th ed. 2000). And a contaminant is "[s]omething that makes impure or corrupt by contact or mixture." Webster's 9th New Collegiate Dictionary 283 (9th ed. 1991).

Thimerosal, when used in vaccines, fails to correspond with any of these definitions. Vaccine manufacturers intentionally add thimerosal to vaccine formulas because it deters microbial and fungal growth, thereby maintaining the safety, purity and potency of vaccines. In fact, Thimerosal has been widely used as a vaccine preservative since the 1930s, see Statement by William Egan, Ph.D., FDA, before the Committee on Government Reform, U.S. House of Representatives, July 18, 2000, and its use satisfies the FDA's requirement that preservatives be added to vaccines distributed in multi-use vials. See 21 C.F.R. § 610.15(a) ("Products in multiple-dose containers shall contain a preservative"). As such, thimerosal cannot be said to "make impure or corrupt" a vaccine or to reduce a vaccine's therapeutic value. Furthermore, thimerosal cannot be characterized as having an undesirable effect or diluting the active material found within a vaccine. In fact, the precise opposite is true. As a preservative, thimerosal prevents a vaccine's corruption. Hence, neither the plain meaning of "adulterant" nor "contaminant" applies to thimerosal when, as here, it is purposefully used as an ingredient in the approved formulation of a vaccine.

7

Gorman Aff., Exhibit 12
Page 7 of 15

No Transmission Information Available    in  on line [0] for BW10301 printed 05/10/2002    11:48 * Pg 25/32
05/10/2002    11:28    FULBRIGHT HO → 00340102028241512536459 0                    NO.137    0025

Received 05/07/2002 15:42 in 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 9/16

The remainder of the language used by Congress to define "vaccine-related injury" (i.e. "associated with one or more . . . vaccines") likewise requires a finding that the Representative Claims are covered by the Program. A "vaccine" is defined as a "suspension of attenuated or killed microorganisms," Dorland's Medical Dictionary 1799 (27th ed. 1988), and "a preparation of killed microorganisms, living attenuated organisms, or living fully virulent organisms." Webster's 9th New Collegiate Dictionary 1301 (9th ed. 1991). Neither of these definitions indicate that a vaccine is comprised of microorganisms alone. On the contrary, they indicate that a vaccine is a "suspension" or "preparation" composed of both microorganisms and additional ingredients.[9] And, as explained above, manufacturers of vaccines add thimerosal to the "preparation" or "suspension" of vaccines.[10]

Therefore, because Michael's injuries are allegedly linked to a vaccine ingredient, his injuries are definitely "vaccine-related." See, e.g., Brautwetter v. Sec'y of Health and Human Servs., No.99-278V, 1999 WL 562700, at *3 (Fed. Cl. July 16, 1999) (stating that claims fall under the Vaccine Act when a claimant is exposed to the "chemical/biological components of the tetanus vaccine"); Pannell v. Sec'y of Health and Human Servs., No. 94-658V, 1995 WL 432643, at *2 (Fed. Cl. July 7, 1995) (referring to "vaccine-related injury" as one "caused by the vaccine or by something contained therein"); see also Grant v. Sec'y of Health and Human Servs., No. 956 F.2d 1144, 1149-50 (Fed. Cir. 1992) (affirming award where vaccine's preservative was an alleged cause of

---

[9] A suspension is "a class of pharmaceopeial preparations of finely divided undissolved drugs [or in this case, microorganisms] . . . dispersed in liquid vehicles for oral or parenteral use." Stedman's Medical Dictionary 1713 (26th ed. 1995). A preparation is "a medicinal substance made ready for use." Webster's 9th New Collegiate Dictionary 929 (9th ed. 1991).

[10] The FDA has long recognized that preservatives (i.e. thimerosal) are "constituent materials" of vaccines. See 21 C.F.R. § 610.15 (indicating that constituents of biological materials include ingredients, preservatives, diluents and adjuvants).

8

No Transmission Information Available   in  on line [0] for BW10301 printed 05/10/2002   11:48 * Pg 26/32
     05/10/2002    11:28    FULBRIGHT HO → 00340100028241512536458        NO.137    P026

Received 05/07/2002 15:42 in 09:52 on line (8) for BN00340 Printed 05/07/2002  15:54 * Pg 10/16

claimant's injury). Clearly, the plain language of the Vaccine Act indicates that Michael's injuries cannot be "thimerosal-related" without being "vaccine-related" as well.[11] Therefore, Plaintiffs are required to file a Program petition as a pre-requisite to filing any civil action seeking damages from the Vaccine Manufacturers for Michael's injuries. Accordingly, the Vaccine Manufacturers' Motion to Dismiss is GRANTED with respect to the Representative Claims asserted against them. These claims are hereby DISMISSED WITHOUT PREJUDICE and Plaintiffs are urged to re-file such claims in the Vaccine Court if they so desire.

<u>Individual Claims Against the Vaccine Manufacturers</u>

Having dismissed the Representative Claims against the Vaccine Manufacturers, the Court now turns to Plaintiffs' Individual Claims for loss of consortium, emotional distress and loss of services. In their Motion to Dismiss, the Vaccine Manufacturers argue that Plaintiffs are also required to file a Program petition as a pre-requisite to asserting the Individual Claims. Moreover, the Vaccine Manufacturers assert that even if the Individual Claims are not barred by the Vaccine Act, Plaintiffs' causes of action for loss of consortium, loss of services and emotional distress cannot

---

[11] In this case, because the language of the Vaccine Act unambiguously and specifically indicates that injuries caused by vaccine preservatives (i.e. thimerosal) are within its scope, it is clear that Congress has spoken to the precise question at issue. And the Court has given effect to such Congressional intent. However, the Court's decision would remain the same even if Congressional intent was not clearly expressed. In that event, the Court would have adopted the position taken by the Secretary of the Department of Health and Human Services ("Secretary"). See Chevron U.S.A. v. Nat'l Resources Def. Council, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (explaining that when Congress has not directly spoken to an issue, courts must adopt the interpretation of the administrative agency charged with the duty of enacting the regulation in question "unless they are arbitrary, capricious, or manifestly contrary to the statute"). The Secretary, who is charged with the responsibility of administering the Program, see 42 U.S.C. §§ 300aa-10-300aa34, maintains that any injury claims allegedly caused by thimerosal in covered vaccines are "vaccine related" and therefore, thimerosal-related claims against vaccine manufacturers require adjudication by the Vaccine Court. See, e.g., The National Vaccine Injury Compensation Program web-page, available at <http://www.hrsa.gov/osp/vicp/quanda.htm> ("Because thimerosal is not an adulterant or contaminant, individuals who have claims relating to thimerosal in vaccines covered under the [Vaccine Act] . . . must first file the claim with the [Program] before pursuing any other civil litigation").

9.

No Transmission Information Available   in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 27/32
05/10/2002    11:28    FULBRIGHT HO → 0034010202B2415125364598                      NO.137    P027

Received 05/07/2002 15:42 in 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 11/16

be maintained in accordance with Texas law. The Court will address each of these contentions in turn.

Vaccine Act Petition

By its own terms, the Vaccine Act's proscription against bringing a civil action for damages prior to the filing of a Program petition "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). As such, Plaintiffs are not barred from bringing their Individual Claims against the Vaccine Manufacturers unless they are "qualified to file a petition." An individual becomes eligible to file a petition if he or she suffers a specified injury after he or she receiving a vaccine. See  42 U.S.C. §§ 300aa-11(b)(1)(A), 300aa-11(e)(1)(A). Thus, unless an individual received a vaccine (or is the legal representative of such an individual), that individual cannot file a petition in the Vaccine Court. See Schafer, 20 F.3d at 7; Head v. Sec'y of Health and Human Servs., 26 Cl. Ct. 546, 547 n.1 (1992), aff'd, 996 F.2d 318 (Fed. Cir. 1993). In this case, neither Plaintiff alleges to have "suffered a relevant injury. . . after he or she received a vaccine." Accordingly, Plaintiffs need not (and cannot, for that matter) file a Program petition with respect to their Individual Claims, and are consequently permitted to file such claims in this forum. See Schafer, 20 F.3d at 5 (explaining that the Vaccine Act's tort suit ban does not apply to individuals who cannot file petition in the Vaccine Court except in a representative capacity); Head, 26 Cl. Ct. at 550 (holding that an award to a mother in her individual capacity in an action arising from vaccine-related injuries received by her daughter did not bar the daughter's subsequent action under the Vaccine Act); McDonald v. Lederle Labs., 775 A.2d 528, 535 (N.J. 2001) ("The [Vaccine] Act does not preclude parents from filing an  individual civil action for losses incurred by them.").

10



No Transmission Information Available   in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 28/32
05/10/2002   11:28   FULBRIGHT HO → 00340100020824151253645950   NO.137   0028

Received 05/07/2002 15:42 in 09:52 on line (8) for BH00340 Printed 05/07/2002  15:54 * Pg 12/16

Having determined that Plaintiffs' Individual Claims are not barred by the Vaccine Act, the Court now considers the merits of these claims under Texas law.

### Loss of Consortium

In *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex. 1983), the Texas Supreme Court recognized that injuries to the familial relationship are significant injuries worthy of compensation. *See id.* at 251. Accordingly, parents may recover for loss of companionship for the wrongful death of a child. *See id.* At least two Texas courts have extended the *Sanchez* holding to cover situations involving a non-fatally injured child. *See Roberts v. Williamson*, 52 S.W.3d 343, 352 (Tex. App.–Texarkana 2001) ("To hold that a parent cannot recover [for the loss of consortium of a non-fatally injured child] would ignore the basic idea behind recovery for loss of consortium: to attempt to compensate for the loss of love and companionship"), *petition for review filed* (August 20, 2001); *Enochs v. Brown*, 872 S.W.2d 312, 322 (Tex. App.–Austin 1994, no writ) ("Within the [Texas] Supreme Court's express recognition of a common law cause of action for a serious injury to a spouse or parent lies the implicit recognition of a parent's claims for loss of companionship for a similar injury to a child"); *Cf. Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex. 1990) ("[T]he two relationships likely to be most severely affected by a negligent injury to a person are the husband and wife relationship and that of parent and child[.]") Therefore, in light of these decisions, the Court concludes that Plaintiffs have stated a viable claim for loss of consortium under Texas law.

### Loss of Services

On the other hand, the Texas Supreme Court rejected the "antiquated concept of the child as an economic asset," when it explained that "[t]he real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort,

11



No Transmission Information Available   in  on line [0]  for BW10301 printed 05/10/2002   11:48 * Pg 29/32
05/10/2002    11:28    FULBRIGHT HO → 0034010202824151253645599                                 NO. 137    D029

Received 05/07/2002 15:42 In 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 13/16

companionship and society." Sanchez, 752 S.W.2d at 251. Therefore, the Court concludes that, as a matter of Texas law, Plaintiffs cannot maintain a cause of action for loss of services based upon Michael's alleged injuries.

### Emotional Distress

Similarly, Plaintiffs cannot recover on their derivative claims of emotional distress. In Texas, emotional distress damages are recoverable in a very limited set of circumstances: (1) as the foreseeable result of a breach of a duty arising out of certain special relationships; (2) for common law torts involving intentional or malicious conduct; (3) for wrongful death; (4) in personal injury cases where the defendant's conduct causes the plaintiff serious bodily injury; and (5) in bystander actions. See Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90, 95 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). In this case, Plaintiffs have not alleged any facts signaling a special relationship, intentional or malicious conduct or wrongful death. And the only personal injuries alleged were incurred by Michael–not by Plaintiffs. Thus, the only possible avenue by which Plaintiffs may attempt to recover emotional distress damages is the bystander action. However, this method proves similarly inapplicable.

In Texas, bystanders may recover damages for mental anguish suffered as a result of witnessing a serious or fatal accident involving a close family member. See City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997). In order to successfully recover emotional distress damages, a bystander plaintiff must establish that: (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the

12



No Transmission Information Available   in  on line [0] for BW10301 printed 05/10/2002   11:48 * Pg 30/32
05/10/2002    11:28     FULBRIGHT HO → 003401020282415125364598                        NO.137    D030

Received 05/07/2002 15:42 in 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 14/16

plaintiff and victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. See United Servs. Auto Ass'n v. Keith, 970 S.W.2d 540, 541-42 (Tex. 1998) (per curiam). Texas law requires the bystander's presence when the accident occurred and the contemporaneous perception of the accident. See Id. at 542.

Here, Plaintiffs clearly did not witness and perceive the type of shocking accident contemplated by the bystander theory of recovery. Rather, Plaintiffs witnessed Michael's routine vaccination and his subsequent physical deterioration that is allegedly linked to thimerosal. Moreover, Plaintiffs did not learn of Michael's alleged mercury poisoning until Michael's neurological problems were diagnosed by a physician, well after his vaccinations were administered. However anguishing these belated circumstances may have been, the bystander theory is inapplicable to the facts of this case, as a matter of Texas law.

As stated above, although none of the Individual Claims are barred by the Vaccine Act, Plaintiffs' derivative claims for loss of services and emotional distress cannot be maintained in conformity with Texas law. However, Plaintiffs' cause of action for loss consortium remains viable. As such, the Vaccine Manufacturers' Motion to Dismiss is hereby GRANTED IN PART with respect to Plaintiffs' Individual Claims for loss of services and emotional distress; and hereby DENIED IN PART with respect to Plaintiffs' Individual Claims for loss of consortium. Plaintiffs' Individual Claims for loss of services and emotional distress against the Vaccine Manufacturers are hereby DISMISSED WITH PREJUDICE.

13

No Transmission Information Available  in  on line (0) for BW10301 printed 05/10/2002  11:48 * Pg 31/32
05/10/2002    11:28    FULBRIGHT HO → 00340102028241512536459B                    NO.137    P031

Received 05/07/2002 15:42 in 09:52 on line (8) for BW00340 Printed 05/07/2002  15:54 * Pg 15/16

## IV.  Sigma and EM's Motion to Dismiss

The Court now turns to the Motion to Dismiss filed by Sigma on March 22, 2002 and joined by EM on March 27, 2002 (both Sigma and EM are Chemical Manufacturer Defendants).[12] Sigma and EM contend that the Vaccine Act requires dismissal of the Representative Claims and Individual Claims brought against them. This argument contains a fatal flaw, however, because the Vaccine Act only prohibits the filing of any civil action against a "vaccine *manufacturer* or *administrator*" prior to the filing of a Program petition. 42 U.S.C. § 300aa-11(2)(A) (emphasis added). Because Sigma and EM allegedly supply thimerosal (a raw material) to the Vaccine Manufacturers, but do not manufacture or administer vaccines themselves, Plaintiffs' claims against Sigma and EM are not subject to the Vaccine Act's tort suit bar. Nevertheless, for the reasons discussed previously in conjunction with the Individual Claims against the Vaccine Manufacturers, Sigma and EM's Motion to Dismiss is hereby GRANTED IN PART with respect to Plaintiffs' derivative claims for loss of services and emotional distress. Regarding all other claims asserted by Plaintiffs against Sigma and EM, their Motion to Dismiss is hereby DENIED.[13]

## V.  GDL's Motion to Dismiss

The Court recently issued an Order denying Plaintiffs leave to conduct jurisdictional discovery of GDL pending further Order of the Court. Having determined that Plaintiffs' claims

---

[12] On May 1, 2002, Sigma filed a second Motion to Dismiss and alternatively, a Motion to Stay. The Court is not making any ruling on Sigma's second Motion to Dismiss at this time. The Court will address that Motion, along with Sigma's request for a stay, after Plaintiffs have responded thereto.

[13] Sigma and EM's Motion to Dismiss also argues for a dismissal pursuant to Fed. R. Civ. P. 19 in the event that the Court dismisses "any other Defendant or other Defendants." Because the Court has not dismissed any Defendants (only certain claims), the Court does not need to address Sigma and EM's Rule 19 request.

14

Gorman Aff., Exhibit 12
Page 14 of 15

No Transmission Information Available  in  on line [0] for BW10301 printed 05/10/2002  11:48 * Pg 32/32
05/10/2002    11:28    FULBRIGHT HO → 00340102028241512536459B                    NO.137    P032

Received 05/07/2002 15:42 in 09:52 on line [8] for BW00340 Printed 05/07/2002  15:54 * Pg 16/16

against the Chemical Manufacturers are not barred by the Vaccine Act, the Court finds that such discovery is indeed warranted. As such, the Court hereby ORDERS that Plaintiffs have sixty (60) days from the date of this Order to conduct discovery pertaining solely to whether this Court may validly exercise personal jurisdiction over GDL. At the end of that time period, Plaintiffs are ORDERED to file their Response to GDL's Motion to Dismiss for Lack of Personal Jurisdiction. The Court will rule on that Motion as soon as it can be reached.

In conclusion, the Court reiterates that all Representative Claims asserted against the Vaccine Manufacturers fall squarely within the jurisdiction of the Vaccine Court and are hereby DISMISSED WITHOUT PREJUDICE. The only claims against the Vaccine Manufacturers that Plaintiffs may properly assert in this forum are those seeking compensation for loss of consortium. On the other hand, Plaintiffs' Representative Claims and Individual Claims against the Chemical Manufacturers are subject to adjudication in this forum. GDL's Motion to Dismiss remains pending. Finally, this Order renders the Vaccine Manufacturers' Request for Oral Argument on their Motion to Dismiss MOOT. The Court will address all other pending concerns as soon as they are ripe for consideration.

IT IS SO ORDERED.

DONE this _____ day of May, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

15

Gorman Aff., Exhibit 12
Page 15 of 15



219 F.Supp.2d 762                                                          Page 1
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

C

United States District Court,
W.D. Texas,
Austin Division.

Kevin LIU, Individually and as next friend of
Nicholas Liu; and Mache Liu,
Individually and as next friend of Nicholas Liu,
Plaintiffs,
v.
AVENTIS PASTEUR, INC., Individually and as
successor-in-interest to Connaught
Laboratories, Inc., Pasteur Merieux, and Pasteur
Merieux Connaught; et al.,
Defendants.

No. A-02-CA-395-SS.

Aug. 23, 2002.

Parents of minor who allegedly suffered injuries
from preservative used in the vaccines administered
to him during first two years of his life brought
product liability action, both as individuals and on
behalf of minor, against various vaccine
manufacturers. Vaccine manufacturers moved to
dismiss, and alternatively to stay action. The
District Court, Sparks, J., held that: (1) injuries
were vaccine-related, and thus, action was required
to be filed initially in the Court of Federal Claims;
(2) discovery was barred pending determination of
action in the Court of Federal Claims; and (3) stay
of parents' individual tort claims was warranted.

Motions granted in part, and denied in part.

West Headnotes

[1] Health ☞389
198Hk389 Most Cited Cases
(Formerly 198Hk402)

The purpose of the National Childhood Vaccine
Injury Act, which sets forth a scheme for
compensation for vaccine-related injuries, is to
streamline the process of seeking compensation for
vaccine-related injuries and to avoid the
inconsistency, expense and unpredictability of the
tort system. Public Health Service Act, § 2111, as
amended, 42 U.S.C.A. § 300aa-11.

[2] Federal Courts ☞1141
170Bk1141 Most Cited Cases

[2] Health ☞389
198Hk389 Most Cited Cases
(Formerly 198Hk402)

Minor child's injuries allegedly resulting from
preservative used in vaccines administered to him
were "vaccine-related," and thus, parents' action
against vaccine manufacturers to recover for child's
injuries was required to be filed initially in the
Court of Federal Claims, pursuant to the National
Childhood Vaccine Injury Act; preservative was
component of vaccines, rather than adulterant or
contaminant, as it was impossible to get the
vaccines without preservative. Public Health
Service Act, § 2111, as amended, 42 U.S.C.A. §
300aa-11.

[3] Courts ☞96(1)
106k96(1) Most Cited Cases

The Court of Federal Claims' acceptance of
jurisdiction and creation of procedures to handle
similar vaccine-related tort claims was not binding
on the district court when determining whether it
had jurisdiction over action brought to recover for
injuries allegedly caused by preservative used in
vaccines administered to minor child. Public
Health Service Act, § 2111, as amended, 42
U.S.C.A. § 300aa-11.

[4] Federal Civil Procedure ☞1264
170Ak1264 Most Cited Cases

Discovery was barred, in products liability action
brought by parents of minor child, who was
allegedly injured due to preservative in vaccines
administered to him, against vaccine manufacturers,
pending initial determination of action in the Court
of Federal Claims, as required by the National
Childhood Vaccine Injury Act. Public Health
Service Act, § 2111, as amended, 42 U.S.C.A. §
300aa-11.

[5] Health ☞389
198Hk389 Most Cited Cases
(Formerly 198Hk402)

Parents of minor child who allegedly suffered
injuries from preservative used in vaccines
administered to him during the first two years of his

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

219 F.Supp.2d 762
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

life could only pursue action on behalf of minor child, and were barred from bringing individual claims for their costs, lost wages and income, emotional distress, and loss of consortium and services, under the National Childhood Vaccine Injury Act. Public Health Service Act, § 2111, as amended, 42 U.S.C.A. § 300aa-11.

**[6] Action ⚖ 69(5)**
13k69(5) Most Cited Cases

District Court's stay of parents' individual state law tort claims for damages, arising from minor child's injuries allegedly caused by preservative used in vaccines administered to him, was warranted, where minor's claim was required to be dismissed without prejudice and filed in the Court of Federal Claims, pursuant to the National Childhood Vaccine Injury Act, and dismissal of parents' individual claims during pendency of the Court of Federal Claims jurisdiction could preclude parents from bringing their individual claims in any forum, due to statute of limitations. Public Health Service Act, § 2111, as amended, 42 U.S.C.A. § 300aa-11.

**[7] Limitation of Actions ⚖ 105(2)**
241k105(2) Most Cited Cases

The National Childhood Vaccine Injury Act does not toll the statute of limitations for the parents' individual state law tort claims while they are representing their child in the Court of Federal Claims. Public Health Service Act, § 2111, as amended, 42 U.S.C.A. § 300aa-11.
*764 Charles S. Siegel, Waters & Kraus, LLP, Dallas, TX, Scott M. Hendler, Lowell Brickman, The Hendler Law Firm, P.C., Austin, TX, for Kevin Liu, Mache Liu, Individually and as Next Friend of Nicholas Liu, plaintiffs.

Rebecca Jo Reser, Ray, McChristian & Jeans, San Antonio, TX, Brian D. Metcalf, Ray, McChristian & Jeans, San Antonio, TX, Catherine A. Lemon, Faegre & Benson, LLP, Denver, CO, Marsha M. Piccone, Kimberley P. Cronin, Faegre & Benson, LLP, Denver, CO, for Aventis Pasteur, Inc., defendant.

John R. Gilbert, Gilbert & Gilbert, P.C., Angleton, TX, Laurence E. Boyd, Angleton, TX, Lawrence P. Hampton, Angleton, TX, for Dow Chemical Co., defendant.

Erik V. Larson, Sandra L. Phillips, Diana L. Panian , Shook Hardy & Bacon, LLP, Houston, TX, Deborah A. Moeller, Jeffery A. Kruse, Shook Hardy & Bacon, LLP, Kansas City, MI, for Eli Lilly & Co., defendant.

Marc A. Sheiness, Sheiness, Scott, Grossman & Cohn, LLP, Houston, TX, for RM Industries, Inc., defendant.

Maurice Delaney, GDL International, Inc., St. Joseph, MO, for GDL Intern., Inc.

Stephanie A. Smith, Fulbright & Jaworski, Austin, TX, Barclay A. Manley, Fulbright & Jaworsky, LLP, Houston, TX, for GlaxoSmithKline, defendant.

Richard L. Josephson, Baker & Botts, LLP, Houston, TX, Paul R. Elliott, Houston, TX, Douglas B. Roberson, Baker Botts LLP, Houston, TX, for Merck & Co., Inc., defendant.

David M. MacDonald, McCauley, MacDonald et al., Dallas, TX, Jennifer Liebhauser, Sudie Thompson, McCauley MacDonald & Devin, Dallas, TX, for Sigma-Aldrich Corp., defendant.

John A. Scully, Cooper & Scully, Dallas, TX, Marcos A. Adrogue, Cooper & Scully, PC, Houston, TX, for Spectrum Chemical Mfg., defendant.

Michael R. Klatt, Randall L. Christian, Susan E. Burnett, Clark, Thomas & Winters, Austin, TX, Daniel J. Thomasch, Orrick, Herrington & Sutcliffe, L.L.P., New York, NY, for Wyeth, defendant.

*ORDER*

SPARKS, District Judge.

**1 BE IT REMEMBERED on the 16th day of August 2002 the Court called the above-styled cause for hearing, and the parties appeared through counsel of record. Before the Court are the Vaccine Manufacturers' 12(b) Motion to Dismiss and Alternative Motion to Stay [# 8], Plaintiffs' response in opposition thereto [# 16] and the Vaccine Manufacturers' reply [# 22]; Dow Chemical Company's Motion to Dismiss and Motion for Summary Judgment [# 41]; Spectrum Laboratory Product, Inc's Motion to Dismiss [# 10];

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



219 F.Supp.2d 762
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

Page 3

Sigma-Aldrich Corporation's Motion to Dismiss [# 3] and memorandum in support thereof [# 30] and Plaintiffs' response in opposition thereto [# 14]; Sigma-Aldrich's Alternative Motion to Stay [# 31], and Eli Lilly's Amended Motion to Dismiss [# 49] and Plaintiffs' response [# 15]. Having considered the motions and responses, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

**Factual and Procedural Background**

The plaintiffs, Kevin Liu and Mache Liu, are Texas residents and the parents of Nicholas Liu, who is approximately four *765 years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear in this lawsuit as individuals and as next friend of Nicholas Liu. *Id.* at ¶ 5. The plaintiffs contend their son suffered neurological damage when he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him during the first two years of his life. *Id.* at ¶¶ 24-26. Nicholas received the vaccines between May 20, 1998 and July 23, 1999. *Id.* at ¶ 24.

On May 30, 2002, the plaintiffs filed this lawsuit in the 353rd Judicial District Court of Travis County, Texas. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *See* First Amended Petition. As an alternative theory of liability and causation, the plaintiffs allege Merck & Co., Inc's Measles, Mumps & Rubella ("MMR") vaccine caused their injuries. *Id.* at ¶ 72. The plaintiffs seek compensatory damages for expenditures necessitated by Nicholas Liu's injuries, Nicholas' pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress, the parents' loss of consortium, and the plaintiffs' lost services. *Id.* at 17. Defendant Aventis Pasteur Inc., having obtained consent of all other served defendants, [FN1] removed the case to this Court on June 21, 2002 on the basis of diversity and federal question jurisdiction. *See* Notice of Removal [# 1].

FN1. The record does not include a consent form signed by defendant Taylor Medical. However, the record does not establish Taylor Medical was ever served,

and it has not filed an answer.

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Defendants Spectrum Laboratory Products, Inc. ("Spectrum") has filed a motion to dismiss on the same basis. Defendants Eli Lilly and Company ("Eli Lilly"), Dow Chemical Company ("Dow"), Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. have filed motions to dismiss and for summary judgment arguing they did not manufacture the vaccines or thimerosal that caused Nicholas Liu's injuries and, therefore, cannot be held liable.

**Analysis**
**I. The Vaccine Act's Requirements**

**2** [1] The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R.Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against *766 vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. §

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

219 F.Supp.2d 762                                                   Page 4
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

300aa- 11(a)(2)(A); *see also Shalala,* 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa- 12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa- 11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Nicholas Liu's injuries are not vaccine-related. The Vaccine Act defines a "vaccine- related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Nicholas Liu's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth--an "adulterant ... intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). [FN2] The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

> FN2. The plaintiffs alternative theory of liability and causation, that Merck's Measles, Mumps and Rubella ("MMR") vaccine caused Nicholas Liu's injuries, does not involve thimerosal and is blatantly a vaccine- related claim that must first be filed in Vaccine Court.

[2] The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. [FN3] On the contrary, it appears every federal court to have ruled on the issue has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al.,* 208 F.Supp.2d 711 (S.D.Tex.2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D.Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203 F.Supp.2d 748 (S.D.Tex.2002) (same).

Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines. [FN4] Indeed, the HHS's determination that thimerosal is a component of vaccines, [FN5] not an adulterant, comports with common sense, since at *767 the time Nicholas Liu received the vaccines it was impossible to get the vaccines without thimerosal.

> FN3. The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B. As the plaintiffs note, this order was later withdrawn.

> FN4. While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, the HHS's official position holds persuasive authority.

> FN5. The HHS regulations for general biological products standards, it includes "preservatives" in the category of "constituent materials," indicating its view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

**3 [3] Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines or the MMR vaccination, or a combination of the two, caused neurodevelopmental disorders such as autism. *See* Vaccine

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

219 F.Supp.2d 762
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

Page 5

Manufacturers' Reply, Ex. 1 ("Autism General Order # 1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins v. American Home Prod. Corp.,* Cause No. 3:01-CV-979LN (S.D.Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order # 1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Nicholas Liu's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Nicholas Liu without prejudice to refiling after they have exhausted the requirements under the Vaccine Act.

**II. Claims against Non-Vaccine-Manufacturers**

Eli Lilly and Dow move to dismiss the plaintiffs' claims against them or, in the alternative, for summary judgment because they did not manufacture or distribute the thimerosal or vaccines that allegedly caused Nicholas Liu's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Affidavit of Scott Fishman [# 9], at 1-2. Dow states it has not manufactured vaccines since 1978 and its licenses to manufacture vaccines were revoked by that time. *See* Dow's Motion to Dismiss, at 3-4. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. also move to dismiss or, in the alternative, to stay, claiming they did not manufacture the vaccines or thimerosal at issue in this case.

[4] These defendants ask this Court to enter a no-liability judgment in their favor despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they follow the exhaustion requirements of the Vaccine Act.

The plaintiffs raise many of the same claims against these defendants as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of some defendants' substantive defenses would require a period of discovery allowing the plaintiffs to investigate the defendants' contentions. The Court will not allow the plaintiffs to conduct discovery on some defendants during the pendency of the minor's claims under the Vaccine Act against other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs *768 have complied with the Vaccine Act. *See* H.R.Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs--including attorneys' fees and court payments--are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Nicholas Liu's claims against all defendants rather than allow discovery on some defendants.

**III. Kevin Liu and Mache Liu's Individual Claims**

**\*\*4 [5]** Kevin and Mache Liu bring claims individually and as next friend of Nicholas Liu. Individually, they seek recovery for all past and future costs associated with Nicholas' injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Kevin and Mache Liu can only bring their claims as next friend of Nicholas, not their individual claims, in the Court of Federal Claims.

[6][7] The defendants move to dismiss Kevin and Mache Liu's individual claims for damages because they are derivative of Nicholas Liu's claims, are

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

219 F.Supp.2d 762
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Nicholas' claims in the Court of Federal Claims. [FN6] Tex. Civ. Prac. & Rem. Code § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.,* 204 F.3d 647, 649 (5th Cir.2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728-29 (5th Cir.1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Kevin and Mache Liu's individual causes of action against all defendants until Nicholas' claims have been administered in the Court of Federal Claims under the Vaccine Act.

> FN6. The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* Tex. Civ. Prac. & Rem. Code § 16.001.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [# 8] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [# 8] is *769

GRANTED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [# 3] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [# 31] is GRANTED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

**5 IT IS FURTHER ORDERED that Spectrum Laboratories' Motion to Dismiss [# 10] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss [# 49] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that The Dow Chemical Company's Motion to Dismiss [# 41] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that the Defendants' Unopposed Motion for Stay of Scheduling Order, Initial Disclosures, and Discovery Pending Resolution of Defendants' Motion to Dismiss [# 40] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Nicholas Liu against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on April 23, 2003 informing the Court of the status of their petition, if any, filed on behalf of Nicholas Liu in the Court of Federal Claims.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Page 8 of 8

219 F.Supp.2d 762                                                    Page 7
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

219    F.Supp.2d    762,    2002    WL    31007709
(W.D.Tex.)

**END OF DOCUMENT**

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

FILED
FIRST DIVISION

2002 SEP -9 AM 9: 54

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY: _____
                    DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

RON RUSSAK and KARLA RUSSAK,
Individually and as Next Friend of JORDAN
RUSSAK,

        **Plaintiffs,**

-vs-

AVENTIS PASTEUR, INC., Individually and as
Successor-in-Interest to Connaught Laboratories,
Inc., Pasteur Merieux, and Pasteur Merieux
Connaught; *et al.,*

        **Defendants.**

Case No. A-02-CA-480-SS

## ORDER

BE IT REMEMBERED on the __7th__ day of September 2002 the Court reviewed the file in

the above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#5] and

Plaintiffs' response thereto [#15]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s

Motion to Dismiss [#3] and Plaintiffs' response thereto [#8]; the Vaccine Manufacturers' 12(b)

Motion to Dismiss and Alternative Motion to Stay [#6] and Plaintiffs' response (attached to #24];

and Defendant Austin Energy's Motion to Dismiss [#9], which was filed on August 13, 2002 and

to which the Plaintiffs have not responded. Having considered the motions, responses, the case file

as a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Ron Russak and Karla Russak, are Texas residents and the parents of Jordan

Russak, who is approximately five years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear

32

in this lawsuit as individuals and as next friend of Jordan Russak. *Id.* at ¶ 5. The plaintiffs contend their son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 24-26. Jordan received the vaccines between October 2, 1996 and August 2, 2001. *Id.* at ¶ 24. The plaintiffs further contend Jordan's neurological damage was exacerbated by Austin Energy's emission of air toxins such as mercury from fossil-fuel-burning utilities near his residence. *Id.* at ¶¶ 33-34.

On May 30, 2002, the plaintiffs filed this lawsuit in the 53rd Judicial District Court of Travis County, Texas, Cause No. GN201793. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil fuels. *See* First Amended Petition. The plaintiffs seek compensatory damages for expenditures necessitated by Jordan's injuries, Ron and Karla Russak's lost wages and income, Ron and Karla Russak's emotional distress and loss of consortium, and the lost services Ron and Karla Russak could have provided to each other and Jordan could have provided to them. *Id.* at 19. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on July 29, 2002 after having obtained consent of all other served defendants except Austin Energy.[1] *See* Notice of Removal [#1].

---

[1] In its motion to dismiss, Austin Energy states it did not learn of the removal until after the fact. In the notice of removal, Wyeth argues it did not need Austin Energy's consent because the plaintiffs' addition of Austin Energy as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction. The removing party bears the burden of proving fraudulent joinder. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990). The plaintiffs' claims against Austin Energy are based on different facts than their vaccine-related claims against the other defendants. However, because this Court has no jurisdiction over Jordan

-2-

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Jordan Russak's injuries and, therefore, cannot be held liable. Austin Energy moves to dismiss for lack of subject matter jurisdiction and failure to state a claim.

### Analysis

**I.    The Vaccine Act's Requirements**

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of

---

Russak's primary causes of action, the plaintiffs have not moved to remand the case for improper removal, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Austin Energy the same as the other defendants. This ruling is without prejudice to any party raising the issue after the stay in the case is lifted.

-3-



recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No.

99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines,

"the opportunities for redress and restitution are limited, time-consuming, expensive, and often

unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine

administrators or manufacturers in state or federal court for unspecified amounts of damages

resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal

Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*,

514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a

special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The

statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal

Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

   The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the

Vaccine Act does not require them to do so, because Jordan Russak's injuries are not vaccine-

related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death

associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the

term does not include an illness, injury, condition, or death associated with an adulterant or

contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend

Jordan's injuries are not "vaccine-related" because they were caused not by the vaccines themselves

but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—

an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms

"adulterant" and "contaminant" are not defined in the Vaccine Act.

-4-

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal.[2] On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an adulterant, comports with common sense, since at the time Jordan Russak received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental

---

[2] The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B. As the plaintiffs note, this order was later withdrawn.

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.



disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"),

at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal

Claims. The Office of Special Masters within that court recently established procedures to

accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal

Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it

indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within

the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases.

*See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1,

2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable

possibility that the plaintiffs have stated a currently cognizable claim against the resident

defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act

and, thus, Jordan Russak's alleged injuries are vaccine-related. Accordingly, the Vaccine Act

requires the Court to dismiss the parents' claims brought on behalf of Jordan Russak without

prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

**II.    Claims against Non-Vaccine-Manufacturers**

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon

which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines

that allegedly caused Jordan Russak's injuries. Eli Lilly contends it stopped distributing childhood

vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See*

Eli Lilly's Motion to Dismiss [#5], Ex. A ("Fishman Affidavit"), at 1-2.

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the

Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they

follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Jordan Russak's claims against all defendants rather than allow discovery on Eli Lilly.

**III.    Ron Russak and Karla Russak's Individual Claims**

Ron and Karla Russak bring claims individually and as next friend of Jordan Russak. Individually, they seek recovery for all past and future costs associated with Jordan's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42

-7-

U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Ron and Karla Russak can only bring their claims as next friend of Jordan, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Ron and Karla Russak's individual claims for damages because they are derivative of Jordan's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Jordan's claims in the Court of Federal Claims.[5] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Ron and Karla Russak's individual causes of action against all defendants until Jordan's claims have been administered in the Court of Federal Claims under the Vaccine Act.

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#9] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion for Leave to File its Amended Motion to Dismiss [#28] is DENIED;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#5] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Jordan Russak against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on May 9, 2003 informing the Court of the status of their petition, if any, filed on behalf of Jordan Russak in the Court of Federal Claims.

SIGNED this the 7th day of September 2002.


SAM SPARKS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION

2002 OC -8  AM 11: 52

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
DEPUTY

PETE CARABINE and HEIDI CARABINE,
Individually and as Next Friend of Collin
Carabine,

Plaintiffs,

-vs-

AVENTIS PASTEUR, INC., et al.,

Defendants.

Case No. A-02-CA-501-SS

## O R D E R

BE IT REMEMBERED on the _8th_ day of October 2002 the Court reviewed the file in the

above-styled cause, specifically Defendant Eli Lilly & Company's Amended Motion to Dismiss

[#30], Plaintiffs' Response [#28] and Defendant's reply [#32]; Defendants Sigma-Aldrich

Corporation's and Sigma-Aldrich, Inc's Motion to Dismiss [#11] and Plaintiffs' Response [#21];

Defendants' Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Alternative Motion to Stay

Proceedings [#23]; Vaccine Defendants' Motion to Dismiss or Alternatively to Stay Proceedings

[#25] and Plaintiffs' Response [#33]; and Defendant Reliant Energy's Motion for Summary

Judgment [#31]. Having considered the motions and responses, the case file as a whole and the

applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Pete Carabine and Heidi Carabine, are Texas residents and the parents of

Collin Carabine, who is approximately six years old. *See* Petition, at ¶¶ 5; 25. They appear in this

lawsuit as individuals and as next friend of Collin Carabine. *Id.* at ¶ 5. The plaintiffs contend their

*file*

son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 25-27. Collin received the vaccines between November 6, 1995 and October 25, 1999.[1] *Id.* at ¶ 25. The plaintiffs further contend Collin's neurological damage was exacerbated by Defendant Houston Lighting and Power Company's ("Reliant") emission of air toxins such as mercury from power plants that burn fossil fuels near his residence. *Id.* at ¶¶ 31-38.

On July 3, 2002, the plaintiffs filed this lawsuit in the 201st Judicial District Court of Travis County, Texas, Cause No. GN202160. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil fuels. *See* Petition. The plaintiffs seek compensatory damages for expenditures necessitated by Collin's injuries, Collin's pain and suffering, Pete and Heidi Carabine's lost wages and income, Pete and Heidi Carabine's emotional distress and loss of consortium, and the lost services Pete and Heidi Carabine could have provided to each other and Collin could have provided to them. *Id.* at 20. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, ("SmithKline") removed the case to this Court on

---

[1] The petition states Collin received the vaccines through October 25, "199." Because this typographical error prevents the Court from discerning the relevant date, the Court uses the year 1999 merely as a potential correct date.

-2-

August 9, 2002 after having obtained consent of all other served defendants.[2]   *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline, and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A).   Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Collin Carabine's injuries and, therefore, cannot be held liable.   Reliant moves for summary judgment on the merits.

## Analysis

### I.   The Vaccine Act's Requirements

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-

---

[2] Defendant Reliant consented to the removal. Reliant appears to be a Texas corporation, which would defeat diversity jurisdiction. In the notice of removal, SmithKline argues the plaintiffs' addition of Reliant as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction. The removing party bears the burden of proving fraudulent joinder. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990). The plaintiffs' claims against Reliant are based on different facts than their vaccine-related claims against the other defendants. However, because this Court has no jurisdiction over Collin Carabine's primary causes of action, the plaintiffs have not moved to remand, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Reliant the same as the other defendants. This ruling is without prejudice to any party raising the issue or challenging this Court's jurisdiction after the stay in the case is lifted.

related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Collin Carabine's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Collin's injuries are not "vaccine-related" because they were caused not by the vaccines themselves

-4-



but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth– an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an adulterant, comports with common sense, since at the time Collin received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been

---

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

-5-

inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Collin Carabine's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Collin Carabine without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

## II.   Claims against Non-Vaccine-Manufacturers

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines that allegedly caused Collin Carabine's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Eli Lilly's Amended Motion to Dismiss [#30], Ex. A ("Fishman Affidavit"), at 1.

-6-

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the Vaccine Manufacturers until they follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available.").

The same reasoning holds true for Reliant's motion for summary judgment, to which the plaintiffs have not responded. Reliant contends it owed no duty to Collin preventing it from exposing him to normal power plant emissions because the risk of mercury poisoning to Collin was not foreseeable. *See* Reliant's Motion for Summary Judgment [#31], at 3-6. Reliant also argues the plaintiffs cannot establish Reliant's power plants caused Collin's injuries because the power plant emissions contain very low levels of mercury and no scientific studies have linked autism to power plant emissions. *Id.* at 7-10. These arguments on the merits obviously involve complicated factual determinations that this Court cannot make before allowing the plaintiffs a period of discovery

-7-



(despite the plaintiffs' failure to respond to Reliant's motion which, under the Local Rules, entitles the Court to grant the motion as unopposed).  Additionally, the Court will not rule on the merits of the plaintiffs' claims against Reliant before determining if the claims are properly before this Court as an appendage to this cause of action.  Accordingly, the Court will dismiss Collin Carabine's claims against all defendants rather than allow discovery on Eli Lilly and Reliant.

### III.   Pete and Heidi Carabine's Individual Claims

Pete and Heidi Carabine bring claims individually and as next friend of Collin Carabine. Individually, they seek recovery for all past and future costs associated with Collin's injuries, lost wages and income, emotional distress, loss of consortium and loss of services.  *See* Petition, at 20. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims.  42 U.S.C. § 300aa-11(b)(1)(A).  An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury.  42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A).  Thus, Pete and Heidi Carabine can only bring their claims as next friend of Collin, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Pete and Heidi Carabine's individual claims for damages because they are derivative of Collin's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law.  However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Collin's claims in the Court of Federal Claims.[5]  TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court.

limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Pete and Heidi Carabine's individual causes of action against all defendants until Collin's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that Eli Lilly and Company's Motion to Dismiss [#4] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#25] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#25] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

_____

42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

-9-



IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#11] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#23] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss [#30] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and DENIED IN PART as to Pete and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Defendant Reliant Energy, Inc's Motion for Summary Judgment [#31] is DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Collin Carabine against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on June 7, 2003 informing the Court of the status of their petition, if any, filed on behalf of Collin Carabine in the Court of Federal Claims.

SIGNED this the _8th_ day of October 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION

2003 JAN -6 PM 4: 07

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
DEPUTY

LESLIE YOUNG and LAURIE YOUNG,
Individually and Next Friend of Leslie Martin
Young,

            **Plaintiffs,**

-vs-

Case No. A-02-CA-734-SS

AVENTIS PASTEUR, INC., et al.,
            **Defendants.**

## O R D E R

BE IT REMEMBERED on the 6th day of January 2003, the Court reviewed the file in the

above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#14] and

Plaintiffs' response thereto [#20]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s

Motion to Dismiss [#4] and Alternative Motion to Stay [#5] and Plaintiffs' response thereto [#9];

the Vaccine Manufacturers' Motion to Dismiss or Alternatively to Stay [#6], Plaintiffs' response

[#13] and Defendants' reply [#19]; Defendant Spectrum Laboratory Products, Inc.'s Motion to

Dismiss [#7] and Plaintiffs' response thereto [#10]; and Defendant The Dow Chemical Company's

Rule 12(b)(6) Motion to Dismiss and for Summary Judgment [#11] and Motion to Dismiss or,

Alternatively, to Stay [#12] and Plaintiffs' Response thereto [#18]. Having considered the motions,

responses, the case file as a whole and the applicable law, the Court enters the following opinion and

orders.

23



### Factual and Procedural Background

The plaintiffs, Leslie and Laurie Young, are Texas residents and the parents of Leslie Martin Young, who is approximately four years old. *See* Petition, at ¶¶ 5, 23. They appear in this lawsuit as individuals and as next friend of Leslie Martin Young. *Id.* at ¶ 5. The plaintiffs contend their son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 23-25. Leslie received the vaccines between September 15, 1998 and approximately September 10, 1999. *Id.* at ¶ 23.

On October 22, 2002, the plaintiffs filed this lawsuit in the 345th Judicial District Court of Travis County, Texas, Cause No. GN203822. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *Id.* at ¶¶ 29-69. The plaintiffs seek compensatory damages for expenditures necessitated by Leslie Martin Young's injuries, Leslie Martin Young's pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress and loss of consortium, and the lost services the plaintiffs could have provided to each other. *Id.* at 17. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on November 15, 2002 after having obtained consent of all other defendants. *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C.

-2-



§ 300aa-11(a)(2)(A).    Defendants Sigma-Aldrich Corporation, Sigma-Aldrich, Inc., Spectrum Laboratory Products, Inc. ("Spectrum") and Eli Lilly and Company ("Eli Lilly") move to dismiss or alternatively to stay on the same basis. The Dow Chemical Company ("Dow") moves to dismiss and for summary judgment arguing it did not manufacture or sell the vaccines or thimerosal that caused Leslie Martin Young's injuries and, therefore, cannot be held liable. Dow has also filed a motion to dismiss or, alternatively, to stay based on the plaintiffs' failure to raise their claims first in the Court of Federal Claims.

Analysis

I.    **The Vaccine Act's Requirements**

The defendants move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal

-3-

Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Leslie Martin Young's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Leslie's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth-- an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203

-4-

F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[1] Indeed, the HHS's determination that thimerosal is a component of vaccines,[2] not an adulterant, comports with common sense, since at the time Leslie Martin Young received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. See Vaccine Manufacturers' Motion to Dismiss, Ex. 3 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. Id. While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. See also Collins vs. American Home Prod. Corp., Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any

---

[1] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[2] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

-5-



reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Leslie Martin Young's alleged injuries are vaccine-related.[3] Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Leslie Martin Young without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

**II.    Claims against Non-Vaccine-Manufacturers**

Dow moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted and moves for summary judgment because it did not manufacture or sell the thimerosal or vaccines that allegedly caused Leslie Martin Young's injuries. Dow contends it has not had a license to manufacture vaccines since 1978.

Dow asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until the plaintiffs follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise the same claims against Dow as against the vaccine manufacturer defendants. To rule on the merits of Dow's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. In fact, the plaintiffs have moved for a continuance to allow them to conduct discovery

---

[3] Eli Lilly also relies on the Homeland Security Act of 2002 Congress recently passed, which amends the definition of "manufacturer" in the Vaccine Act to include manufacturers of "any component or ingredient" of any vaccine, and the definition of "vaccine" to include "a preparation or suspension containing an attenuated or inactive microorganism or subunit thereof or toxin" and "all components and ingredients listed in the vaccines's [sic] product license application and product label." H.R. 5005 (attached as Ex. D to Eli Lilly's Motion to Dismiss). The Homeland Security Act states it applies to all actions pending on the date of its adoption on November 19, 2002. Because these amendments are quite new and the Court has relied in its previous thimerosal rulings on more established authorities, the Court need not interpret these amendments in this Order. However, the Court does not preclude the defendants from raising the Homeland Security Act in future motions.



before the Court rules on the summary judgment motion. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Leslie Martin Young's claims against all defendants rather than allow discovery on Dow.

**III.    Leslie Young and Laurie Young's Individual Claims**

Leslie and Laurie Young bring claims individually and as next friend of Leslie Martin Young. Individually, they seek recovery for all past and future costs associated with their son's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Leslie and Laurie Young can only bring their claims as next friend of Leslie, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Leslie and Laurie Young's individual claims for damages because they are derivative of Leslie's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents'

-7-



claims, their statutes of limitations could expire while the parents are representing their son's claims in the Court of Federal Claims.[4] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Leslie and Laurie Young's individual causes of action against all defendants until their son's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and

---

[4] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

their Alternative Motion to Stay [#6] is GRANTED IN PART as to Leslie and Laurie Young's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#4] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#5] is GRANTED IN PART as to Leslie and Laurie Young's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#14] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and DENIED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and DENIED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Defendant The Dow Chemical Company's Motion to Dismiss [#12] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and its Alternative Motion to Stay [#12] is GRANTED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Defendant The Dow Chemical Company's 12(b)(6) Motion to Dismiss and Motion for Summary Judgment [#11] are DENIED without prejudice to refiling;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Continuance [#18] is DENIED;

-9-

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation's Motion for Leave to File Supplemental Memorandum in Support of Their Motion to Dismiss [#16] is GRANTED;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Leslie Martin Young against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on September 8, 2003 informing the Court of the status of their petition, if any, filed on behalf of Leslie Martin Young in the Court of Federal Claims.

SIGNED this the _6th_ day of January 2003.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2002 MAR 10  AM 9: 48

U.S. CLERK OFFICE

BY: _____

DARON SWAFFORD AND TINA SWAFFORD,
Individually and as Next Friend of JOEY
SWAFFORD,

    Plaintiffs,

-vs-                                        Case No. A-03-CA-055-SS

AVENTIS PASTEUR, INC., et al.,

    Defendants.

## ORDER

BE IT REMEMBERED on the _7th_ day of March 2003 the Court reviewed the file in the

above-styled cause, specifically Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Motion to

Dismiss [#4] and alternative Motion to Stay [#5], the response [#21] and reply [#30]; the Vaccine

Defendants' Motion to Dismiss or Alternatively to Stay [#6] (to which no response has been filed);

Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] and the response thereto [#22]; and

Eli Lilly and Company's Motion to Dismiss and/or to Stay [#23] and supplemental memorandum

thereto [#24] and Plaintiffs' response [#26]. Having considered the motions, responses, case file as

a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Daron and Tina Swafford, are Texas residents and the parents of Joey

Swafford, who is approximately three years old. *See* Petition, at ¶¶ 5, 23. They appear in this

lawsuit as individuals and as next friend of Joey Swafford. *Id.* at ¶ 5. The plaintiffs contend their

son suffered and continues to suffer neurological damage because he was poisoned by mercury

34

contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 23-25. Joey received the vaccines between September 1, 1999 and approximately January 5, 2001. *Id.* at ¶ 5.

On December 31, 2002, the plaintiffs filed this lawsuit in the 345th Judicial District Court of Travis County, Texas, Cause No. GN204657. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *Id.* at ¶¶ 29-69. The plaintiffs seek compensatory damages for expenditures necessitated by Joey Swafford's injuries, Joey Swafford's pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress and loss of consortium, and the lost services the plaintiffs could have provided to each other. *Id.* at 16. The plaintiffs also seek punitive damages for certain causes of action. *Id.* at 17. Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on January 30, 2003 after having obtained consent of all other defendants. *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Defendants Sigma-Aldrich Corporation, Sigma-Aldrich, Inc., Spectrum Laboratory Products, Inc. ("Spectrum") and Eli Lilly and Company ("Eli Lilly") move to dismiss or alternatively to stay on the same basis.

-2-

### Analysis

**I.    The Vaccine Act's Requirements**

The defendants move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Joey Swafford's injuries are not vaccine-related.

-3-

The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Joey's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth– an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act. Similarly, the plaintiffs argue their claims are not against "vaccine administrators" or "vaccine manufacturers" as defined under the Vaccine Act, because the defendants are manufacturers, distributors, designers and/or promoters of thimerosal itself, not a vaccine. 42 U.S.C. § 300aa-11(a)(2)(A).

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g.*, *Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of

-4-

vaccines.[1]  Indeed, the HHS's determination that thimerosal is a component of vaccines,[2] not an

adulterant, comports with common sense, since at the time Joey Swafford received the vaccines it

was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act

claims and are better equipped to handle thimerosal cases.  The Court of Federal Claims has been

inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental

disorders such as autism.  *See* Vaccine Manufacturers' Motion to Dismiss, Ex. 3 ("Autism General

Order #1"), at 1-2; Ex. 1 ("Ruling on Jurisdiction").  The plaintiffs' claims are identical to hundreds

of those already before the Court of Federal Claims.  The Office of Special Masters within that court

recently established procedures to accommodate the thousands of thimerosal cases it expects to

receive.  *See* Autism General Order #1.  While the Court of Federal Claims' acceptance of

jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the

most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of

a "vaccine-related injury" and is prepared and willing to handle such cases.  *See also Collins vs.*

*American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing

thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the

plaintiffs have stated a currently cognizable claim against the resident defendants.").  The Court

---

[1] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine.  *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984).  However, the HHS's official position holds persuasive authority.

[2] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants.  21 C.F.R. § 610.15.

-5-

holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Joey
Swafford's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to
dismiss the parents' claims brought on behalf of Joey Swafford without prejudice to refiling after
they have exhausted the requirements of the Vaccine Act.[3]

## II.    Daron Swafford and Tina Swafford's Individual Claims

Daron and Tina Swafford bring claims individually and as next friend of their son, Joey
Swafford. Individually, they seek recovery for all past and future costs associated with their son's
injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See*
Petition, at 16. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or
"the legal representative of such person if such person is a minor or is disabled" may file a petition
for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual
may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42
U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Daron and Tina Swafford can only bring
their claims as next friend of Joey, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Daron and Tina Swafford's individual claims for damages
because they are derivative of Joey's claims, are duplicative of damages available under the Vaccine
Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims,
their statutes of limitations could expire while they are representing their son's claims in the Court

---

[3] To the extent the plaintiffs sued defendants that allegedly did not manufacture the
thimerosal at issue in this case, the Court dismisses their claims on behalf of Joey Swafford against
those defendants as well in the interest of judicial economy.

of Federal Claims.[4] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Daron and Tina Swafford's individual causes of action against all defendants until their son's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

---

[4] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#4] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#5] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#23] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and its Alternative Motion to Stay [#23] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and DENIED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Joey Swafford against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on November 7, 2003 informing the Court of the status of their petition, if any, filed on behalf of Joey Swafford in the Court of Federal Claims.

SIGNED this the 7th day of March 2003.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-8-

C

EOD
1-15-03

IN THE UNITED STATES DISTRICT COURT

FILED - CLERK
U.S. DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

2003 JAN 15 AM 8: 04

TX EASTERN - LUFKIN

LUFKIN DIVISION          BY_____ DH

KIRK BOTTER and DARLA BOTTER §
Individually and as Next Friend of
CODY WYATT BOTTER          §

VS.                               § CIVIL ACTION NO. 9:02 CV 181

AVENTIS PASTEUR, INC.,          §
Individually and as Successor-in-Interest
to CONNAUGHT LABORATORIES,  §
INC., et. al.

## ORDER

Plaintiffs Kirk Botter and Darla Botter bring this suit, individually and as legal

representative of their minor child, Cody Wyatt Botter, pursuant to Texas state law,

against Defendants Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories

f/d/b/a Pasteur Merieux Connaught; Sigma Aldrich, Inc. and Sigma Aldrich

Corporation ("Sigma Inc."); the Dow Chemical Company ("Dow"); Eli Lilly and

Company ("Eli Lilly"); GDL International, Inc. ("GDL"); GlaxoSmithKline,

Individually and as Successor-in-Interest to  Smith Kline Beecham Corporation

("Smith Kline"); Merck and Company, Inc. ("Merck"); EM Industries, Inc. ("EM");[1]

Taylor Medical;  and Wyeth ("Wyeth") d/b/a Wyeth, Inc., Wyeth Laboratories,

---

[1]Plaintiffs have dismissed their claims against EM Industries, Inc.

1

Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines, and Lederle Laboratories, and f/k/a American Home Products, Corp. Plaintiffs' complaint alleges the following causes of action: strict liability, negligence, gross negligence, fraud & conspiracy, and negligence in marketing. In their prayer for relief, the parents seek damages for loss of consortium of their child, Cody Wyatt.

Before the Court are the Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. # 12) brought by Aventis Pasteur, Merck, Wyeth, and Smith Kline; Eli Lilly and Co.'s Motion to Dismiss or Stay Proceedings (doc. # 4) and its Amended Motion to Dismiss (doc. # 31); Sigma-Aldrich Inc.'s Motion to Dismiss (doc. # 6), its Alternative Motion to Stay Proceedings (doc. #33), its Supplemental Motion to Dismiss (doc. # 34), and its second Supplemental Motion to Dismiss (doc. # 60); Aventis Pasteur Inc.'s Motion to Dismiss (doc. # 12); and Dow Chemical's Motion to Dismiss or Stay Proceedings and for Summary Judgment (docs. # 38 and # 39). After due consideration of the briefing and oral arguments of the parties and the relevant law, the Court finds that the motions are well taken in part and should be GRANTED IN PART.

## BACKGROUND

Plaintiffs claim their son, Cody Wyatt, was exposed to harmful levels of mercury received through injections of routine childhood vaccinations administered

to him by his pediatrician during the first eighteen months of his life, from April 16, 1998 through December 10, 1999. Plaintiffs allege that Cody now suffers, and in the future will continue to suffer, the toxic neurological effects of mercury poisoning as a result of certain Defendants'[2] negligent use of thimerosal preservative, containing mercury, in their vaccines. The Complaint, filed originally in the District Court of Angelina County, Texas, states that in the 1980's, the FDA proposed a regulation requiring the removal of thimerosal from all over-the-counter products and that in July of 1999 the American Academy of Pediatrics advised its members to use thimerosal-free vaccines due to concern regarding mercury poisoning.

Defendants removed the case from Angelina County claiming this Court has diversity and federal question jurisdiction under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1, *et seq*.

Defendants assert the affirmative defense that the National Childhood Vaccine Injury Act ("The Act") prohibits a civil suit against a vaccine manufacturer or administrator for damages greater than $1,000 if the damages arise from a vaccine related injury or death and urge the Court to dismiss the case because Plaintiffs have not filed first with the U.S. Court of Federal Claims ("Vaccine Court") as required by the Act. In the alternative, Defendants request that we stay proceedings pending the

---

[2]The Complaint does not specify which of the Defendants to which it refers.

3

outcome of the suit before the Vaccine Court.[3]

## DISCUSSION

<u>Claims Against Vaccine Manufacturers:</u>

The National Childhood Vaccine Injury Act of 1986 sets forth a scheme for

compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11

(1988 ed., as amended 2002) . Congress recognized that the "[v]accination of

children against deadly, disabling, but preventable infectious diseases has been one

of the most spectacularly effective public health initiatives this country has ever

undertaken. Use of vaccines has prevented thousands of children's deaths each year

and has substantially reduced the effects resulting from disease." H.R. Rep. No.

99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. However, while

most children enjoy measurable benefit from immunization programs, "a small but

significant number of have been gravely injured." *Knudsen v. Secretary of HHS*,

35 F.3d 543, 549 (Fed. Cir. 1994) (quoting H.R.Rep. No. 99-908, at 3, *reprinted in*

1986 U.S.C.C.A.N. 6344).

Congress, therefore, enacted the Act to streamline the process of seeking

compensation for vaccine-related injuries and to avoid the inconsistency, expense,

and unpredictability of the tort system. *Shalala v. Whitecotton,* 514 U.S. 268, 269,

---

[3]While some Defendants state additional grounds for their motions to dismiss, pending motions use the Vaccine Act provisions as a main basis for their motions to dismiss or to stay.

115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). The program established by the Act is designed to "ensure that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345- 6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby ... keep[s] manufacturers in the market." *Schafer v. Am. Cyanamid Co.*, 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires vaccine-related claims to be initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. *See Whitecotton*, 514 U.S. at 270, 115 S.Ct. at 1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; *Haggerty v. Wyeth Ayerst Pharm.*, 79 F.Supp.2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[4] *See* 42 U.S.C.

---

[4] A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

5 .

§ 300aa-11(2)(A); *Whitecotton*, 514 U.S. at 270, 115 S.Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures ...before filing any de novo civil action in state or federal court."). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. *See* 42 U.S.C. § 300aa-11(a)(2)(B). Simply put, individuals who qualify as Program claimants must file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all.[5] If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program award, that individual may reject the award and pursue a traditional tort action in any forum[6]. *See* 42 U.S.C. § 300aa-21(a).

---

[5] De minimis claims for less than $1,000, however, may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(a)(2)(A). The Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages be filed under the Program. *Id.*

[6] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith and that a reasonable basis for asserting the claim existed. See 42 U.S.C. § 300aa-15(c). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, see 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). See 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. See 42 U.S.C. § 300aa-23(d).

6

At the time of institution of this lawsuit the Plaintiffs had not filed a petition in the Court of Federal Claims. Plaintiffs' initial position was that they were not required to file originally in the Vaccine Court because the Vaccine Act does not require such a filing when the injury involved is not "vaccine-related." Plaintiffs have since informed the Court that they have filed a claim before the Vaccine Court in mid-December, 2002.

The term vaccine-related injury "does not include an illness, injury, condition or death associated with an adulterant or contaminant intentionally added to a vaccine." 42 U.S.C. § 300aa-33(5). Plaintiffs asserted that Cody's injuries were cause by thimerosal, which they claim is an "adulterant or contaminant" intentionally added to a vaccine and that, therefore, this lawsuit does not involve a "vaccine-related" injury as defined by the Vaccine Act. The Defendants, however, contend that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines. In the face of overwhelming authority holding that thimerosal is a constituent material of the vaccines in question and is not an

7

adulterant or contaminant, Plaintiffs have all but abandoned their position.[7] The following cases have found injuries from thimerosal are "vaccine-related" under the Vaccine Act: *Liu v. Aventis Pasteur*, 219 F.Supp.2d 762 (W.D.Tex. 2002); *Owens v. Am. Home Prods. Corp.*, 203 F.Supp.2d 748 (S.D.Tex. 2002); *McDonald v. Abbott Labs*, 02-77 (S.D.Miss. Aug. 1, 2002); *Collins v. Am. Home Prods. Corp.*, 01-979 (S.D.Miss. Aug. 1, 2002); *Stewart v. Am. Home Prods. Corp.*, 02-427 (S.D.Miss. Aug. 1, 2002); *Strauss v. American Home Prod. Corp.*, 208 F.Supp.2d 711 (S.D.Tex. 2002); *Blackmon v. American Home Prod. Corp.*, Cause No. G-02- 179 (S.D.Tex. May 8, 2002); *O'Connell v. American Home Products Corp.*, 2002 WL 31455729 (S.D. Tex. May 7, 2002); *Wax v. Aventis Pasteur Inc.*, ___ F. Supp.2d ___, 2002 WL 31444878 (E.D.N.Y. Oct. 30, 2002); *Bertrand v. Aventis Pasteur Laboratories, Inc.*, 226 F.Supp.2d 1206 (D. Ariz. 2002); *Leroy v. Secretary of Dept. of Health and Human Services*, 2002 WL 31730680 (Fed. Cl. Oct. 11, 2002).

Additionally, the Department of Health and Human Services has taken the position that thimerosal is not an adulterant or contaminant of vaccines. See "Statement of Interest" in *King ex rel King v. Aventis Pasteur, Inc.*, 210 F. Supp.2d 1201 (D. Or. 2002).

---

[7] See statement of Plaintiffs' counsel at the October 28, 2002 hearing held on motions, transcript of hearing at page 24.

Since the institution of this lawsuit and the filing of the motions under consideration here, Congress passed the Homeland Security Act of 2002 ("HSA"), which was enacted on November 25, 2002. The Homeland Security Act contains certain clarifying amendments to the Vaccine Act. According to § 1717 of the its provisions, the clarifying provisions became effective on the date of enactment and govern this case.[8]

The first amendment which directly affects this case is the clarification of the term "vaccine." This term is amended to include "all components and ingredients listed in the vaccine's product license application and product label." 42 U.S.C. §300aa-33(7) as clarified by § 1716 of the HSA.[9] It is clear that this definition would include thimerosal, if it was a component or ingredient listed in the vaccine's product application and product label. While the Court has no

---

[8] "The amendments made by sections 1714, 1715, and 1716 shall apply to all actions or proceedings pending on or after the date of enactment of this Act, unless a court of competent jurisdiction has entered judgment (regardless of whether the time for appeal has expired) in such action or proceeding disposing of the entire action or proceeding."

[9] § 1716. CLARIFICATION OF DEFINITION OF VACCINE.

Section 2133 of the Public Health Service Act (42 U.S.C.§ 300aa-33) is amended by adding at the end the following:

"(7) The term 'vaccine' means any preparation or suspension, including but not limited to a preparation or suspension containing an attenuated or inactive microorganism or subunit thereof or toxin, developed or administered to produce or enhance the body's immune response to a disease or diseases and includes all components and ingredients listed in the vaccines's product license application and product label."

9

evidence of what was listed on the product application or label, given the fact that the FDA had apparently widely approved the use of thimerosal as a vaccine preservative since the 1930's, and required that preservatives be added to vaccines distributed in multi-use vials,[10] it seems logical to assume that thimerosal was listed on either the product application or label of the vaccines used in this case.

Even if this is not the case, in light of the overwhelming case law and the HHS's interpretation holding that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines, the Court finds that the claims of Cody Wyatt Botter against the Vaccine Manufacturers[11] concern a "vaccine related injury" and are covered by the provisions of the Vaccine Act.

Claims Against Non-Manufacturers:

Because of the recent enactment of the Homeland Security Act of 2002, Defendants Sigma-Aldrich and Eli Lilly join in the motion of the Vaccine Manufacturers. They do so based upon the second amendment to the Vaccine Act

---

[10] See C.F.R. § 610.15(a) and C.F.R. § 610.15.

[11] While Plaintiffs' Complaint does not specify which of the Defendants are "Vaccine Manufacturers," the following Defendants have identified themselves as such by their motion "Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. 12)":Merck and Company, Inc. ("Merck"); Wyeth ("Wyeth") f/k/a American Home Products, Corp.;Aventis Pasteur, Inc. ("Aventis"); Smith Kline Beecham Corporation ("Smith Kline").



which clarifies the term "manufacturer."[12] This amendment shows that it is Congress' intention that the protections of the Vaccine Act cover distributors of components of vaccines. Section 1714 amends 42 U.S.C. §300aa-33(3) to define "manufacturer" to include any corporation, organization, or institution which manufactures, imports, processes, or distributes any vaccine set forth in the Vaccine Injury table, including any component or ingredient of any such vaccine.... The term "manufacture" means to manufacture, import, process or distribute a vaccine, including any component or ingredient of any such vaccine.

In addition Eli Lilly and Dow move to dismiss the Plaintiffs' claims against them, or in the alternative, for stay of the proceedings until the termination of the action before the Vaccine Court.[13] Dow also moves for summary Judgment. Both Lilly and Dow claim they did not manufacture or distribute the thimerosal or vaccines that allegedly caused Cody Botter's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and

---

[12]SEC. 1714. CLARIFICATION OF DEFINITION OF MANUFACTURER.
Section 2133(3) of the Public Health Service Act (42 U.S.C. 300aa-33(3)) is amended--
(1) in the first sentence, by striking "under its label any vaccine set forth in the Vaccine Injury Table" and inserting "any vaccine set forth in the Vaccine Injury table, including any component or ingredient of any such vaccine"; and
(2) in the second sentence, by inserting "including any component or ingredient of any such vaccine" before the period.

[13]While Lilly's motion is titled a Motion to Dismiss, it is converted to a motion for summary judgment under Rule 56 by the addition of evidence beyond the pleadings. Fed. R. Civ. P. 12(c).

11



stopped distributing thimerosal by 1992. *See* Affidavit of Scott Fishman, Exhibit "A" to Lilly's motion. Dow states it has not manufactured vaccines or been licensed to do so since 1978. See Dow's Motion to Dismiss, at page 3.

Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. also move to dismiss or, in the alternative, to stay, claiming they did not manufacture the vaccines or thimerosal at issue in this case.

These Defendants ask this Court to enter a no-liability judgment in their favor despite the Court's need to dismiss or stay the Plaintiffs' claims against the vaccine manufacturers until the Plaintiffs follow the exhaustion requirements of the Vaccine Act. In the alternative, these Defendants seek a dismissal of the claims against them or a stay of proceedings under the same posture as the vaccine manufacturers. Plaintiffs raise many of the same claims against these Defendants as against the vaccine manufacturer Defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy, and loss of consortium. To rule on the merits of some Defendants' substantive defenses would require a period of discovery allowing the Plaintiffs to investigate the Defendants' contentions. To allow the Plaintiffs to conduct discovery on some Defendants during the pendency of the minor's claims under the Vaccine Act against other

12

Defendants is inconsistent with Congress's goal of minimizing litigation costs.

Therefore, the Court will stay any discovery until the termination of Plaintiffs'

action before the Vaccine Court rather than allow discovery on some Defendants.

<u>Kirk and Darla Botters' Individual Claims:</u>

Kirk and Darla Botter bring claims individually and as next friend of their

son. Individually, they seek recovery for all past and future costs associated with

Cody's injuries, lost wages and income, emotional distress, loss of consortium and

loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any

person who has sustained a vaccine-related injury" or "the legal representative of

such person if such person is a minor or is disabled," may file a petition for

compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An

individual may only file a petition on his own behalf if he received a vaccine and

alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A).

Thus, Kirk and Darla Botter can only bring their claims as next friend of Cody, not

their individual claims, in the Court of Federal Claims.

The Defendants move to dismiss the Botter's individual claims for damages

because they are derivative of Cody's claims, are duplicative of damages available

under the Vaccine Act, or are not cognizable under Texas law. However, if the

Court dismissed the parents' claims, their statutes of limitations could expire while

13

the parents are representing Cody's' claims in the Court of Federal Claims.[14]

The Plaintiffs seek to proceed upon their individual claims during the pendency of their case before the Vaccine Court. It is clear that all of the individual claims of Kirk and Darla Botter, including the loss of consortium claim, are derivative of the claim of Cody Wyatt Botter. *Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex. 1990); *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978); *Harris County v. White*, 823 S.W.2d 385, 388 (Tex.App.--Texarkana 1992, *no writ*); *Nash v. Selinko*, 14 S.W.3d 315, 317 (Tex.App.--Houston [14th Dist.] 1999, *pet. denied*). Since the underlying claim must proceed first in the Vaccine Court, judicial economy and concern for consistent results suggests the prudent course of action would be to allow the underlying cause before the Vaccine Court to terminate before proceeding with these individual claims.

The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751

---

[14]Tex. Civ. Prac. & Rem. Code § 16.003 (two-year statute of limitations in personal injury cases). The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the Defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. Tex. Civ. Prac. & Rem. Code § 16.001.

14



F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Kirk and Darla Botters' individual causes of action against all Defendants until Cody Wyatt Botter's claims have been administered in the Court of Federal Claims under the Vaccine Act.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that

the Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. # 12) brought by Aventis Pasteur, Merck, Wyeth, and Smith Kline is GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Eli Lilly and Co.'s Motion to Dismiss (doc. # 4) and its Amended Motion to Dismiss (doc. # 31) are GRANTED IN PART as to the claims of Cody Wyatt

15

Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Sigma-Aldrich Inc.'s Motion to Dismiss (doc. # 6), its Supplemental Motion to Dismiss (doc. # 34), and its second Supplemental Motion to Dismiss (doc. # 60) are GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and its Alternative Motion to Stay Proceedings (doc. #33) is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Dow Chemical's Motion to Dismiss or Stay Proceedings (docs. # 38) is GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action. Dow's Motion for Summary Judgment (doc. # 39) is DENIED without prejudice to refiling upon a change of status of the case.

IT IS FURTHER ORDERED that Cody Wyatt Botter's claims against all Defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that Plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

16

IT IS FURTHER ORDERED that the Plaintiffs shall file a status report with this Court every six months from the date of this Order, informing the Court of the status of their petition filed on behalf of Cody Wyatt Botter in the Court of Federal Claims.

IT IS FURTHER ORDERED that this case be administratively closed pending the outcome of the Vaccine Court proceedings.

IT IS FINALLY ORDERED that any party may move for a lifting of the stay or other relief upon a change of circumstances.

SIGNED this ___13th___ day of January, 2003.

JOHN HANNAH, JR.
UNITED STATES DISTRICT JUDGE

17

D

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

FILED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _____
BY _____

| | |
|---|---|
| SCOTT MOSS, INDIVIDUALLY AND ON BEHALF OF AMBER MOSS, AND JANICE MOSS | CIVIL ACTION NUMBER: 03-0334 |
| | JUDGE DOHERTY |
| VERSUS | MAGISTRATE JUDGE HILL |
| MERCK & CO., ET AL | |

### O R D E R

Considering the foregoing Memorandum Ruling;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss [doc. #21] filed on behalf of Eli Lilly and the Motion to Dismiss [doc. #24] filed on behalf of Merck & Co., Aventis Pasteur, Inc. and Wyeth, is GRANTED. This Court GRANTS defendants' Motion to Dismiss the Parent Plaintiffs', Scott and Janice Moss's, cause of action under the Louisiana Products Liability Act as against the Vaccine Defendants and "negligent and/or fraudulent misrepresentation" against Lilly, the Thimerosal Defendant, pending ruling by the Vaccine Court. All other relief sought in the Motions to Dismiss by Lilly and Merck, Aventis Pasteur and Wyeth, has been rendered MOOT by actions of

11



the parties.

Lafayette, Louisiana this ___ day of _____, 2003.


_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

COPY SENT:
DATE:_____
BY:_____
TO:_____

12

FILED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _6_19_2003_
BY_____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

| | |
|---|---|
| SCOTT MOSS, INDIVIDUALLY AND ON BEHALF OF AMBER MOSS, AND JANICE MOSS | CIVIL ACTION NUMBER: 03-0334 |
| | JUDGE DOHERTY |
| VERSUS | MAGISTRATE JUDGE HILL |
| MERCK & CO., ET AL | |

## MEMORANDUM RULING

This matter comes before the Court on a Motion to Dismiss
filed on behalf of Merck & Co., Aventis Pasteur, Inc. and Wyeth
(formerly known as American Home Products), (the "Vaccine
Defendants"), and Eli Lilly & Co. ("Lilly"), (the "Thimerosal
Defendant") seeking to dismiss the parent plaintiffs, Scott and
Janice Moss ("Parent Plaintiffs") vaccine related claims on the
basis all vaccine related claims must first be brought pursuant
to the National Childhood Vaccine Injury Act ("Vaccine Act"),
which requires the claims for injuries and expenses associated
with thimerosal containing vaccines to first be adjudicated in
the Court of Federal Claims (the "Vaccine Court"). 42 U.S.C.
§ 300aa-1, et seq.

The Vaccine Defendants, also, seek dismissal of the Parent
Plaintiffs' claims for "specific damages" flowing from the
Louisiana Products Liability Act as follows: (1) hedonic damages,
on the basis that said damages under Louisiana law are part of
the general damage award available to the minor daughter, Amber

Moss; (2) punitive damages, on the basis such damages are not allowed under Louisiana law without a statutory basis, and the Louisiana Products Liability Act does not allow the award of punitive damages.

Lilly, also, seeks dismissal of the Parent Plaintiffs' claims for both hedonic and punitive damages on the same basis as argued by the Vaccine Defendants; however, plaintiffs' Complaint reads: **"THIRD CAUSE OF ACTION AS THE THIMEROSAL MANUFACTURER."** Thus, the Third Cause of Action alleged by plaintiffs as against Lilly, is couched against a *manufacturer*; however, alleges "negligent and/or fraudulent misrepresentation of the safety of thimerosal which caused plaintiffs' injuries." Plaintiffs' Complaint. Thus, plaintiffs claims against Lilly have not been couched under the Louisiana Products Liability Act; however, plaintiffs' petition identified Lilly as a manufacturer. Consequently, this Court has confusion as to whether the Louisiana Products Liability Act would govern plaintiffs' claim made against Lilly as the "Thimerosal Manufacturer." However, plaintiffs have couched their claim against Lilly under La. Civ. Code art. 2315. Nonetheless, this is of no moment at this juncture, as the same threshold analysis would apply for either basis under the law. Thus, Lilly has adopted the arguments of the Vaccine Defendants as to Lilly's Motion to Dismiss plaintiffs' claims. This Court notes, however, plaintiffs have

2

pled the application of La. Civ. Code art. 2315 as to Lilly,
couched in negligence.

All plaintiffs have dismissed all state law claims based
upon conspiracy as originally pled against the Vaccine
Defendants. All plaintiffs have dismissed all claims "for
damages for emotional distress" as against all defendants.

Additionally, both the Vaccine Defendants and Lilly seek
dismissal and/or stay of the Parent Plaintiff's loss of
consortium claim as pled.[1] Both the Vaccine Defendants and
Lilly, argue in support of dismissal/stay of the Parent
Plaintiffs' loss of consortium claim arguing the loss of
consortium claim is a derivative of the claim now filed in the
Vaccine Court on behalf of the minor child, Amber Moss, and,
therefore, is not subject to determination before this Court.

### Procedural History

Plaintiffs' Memorandum at page 2 states plaintiffs initially
filed the instant lawsuit on October 18, 2002, against three
classes of defendants: (1) the "Vaccine Defendants," Merck &
Co., Aventis Pasteur, Inc. and Wyeth, which manufactured various
vaccines; (2) the "Thimerosal Defendant," Eli Lilly & Co., which
developed and marketed thimerosal, a preservative for vaccines;
and (3) the Medical Defendant, which administered the vaccines.

―――――――――――

[1]A claim for loss of consortium is incorporated into the
Louisiana Products Liability Act by way of incorporation of La.
Civ. Code art. 2315, et seq.

3

Plaintiffs have since voluntarily dismissed the Medical Defendant from this litigation.

Plaintiffs have withdrawn their claim for civil conspiracy against the Vaccine Defendants, as well as their claim for damages for emotional distress against both the Vaccine Defendants and Lilly.

Further, plaintiffs have filed no opposition to the Motion to Dismiss filed on behalf of both the Vaccine Defendants and Lilly, plaintiffs' claim for punitive damages. Therefore, this Court DISMISSES plaintiffs' claim for punitive damages as against all defendants, finding no basis for same under applicable Louisiana law.

Additionally, counsel for plaintiff has advised the Court that all claims asserted on behalf of the minor child, Amber Moss by the Parent Plaintiffs, against both Vaccine Defendants and Lilly, will be pursued by the parents on behalf of Amber Moss by way of the recent filing of the claim by the Parent Plaintiffs on behalf of their minor daughter in the "Vaccine Court."

By way of the pending motions, this Court has been asked to determine, considering the suit filed with the "Vaccine Court," whether or not the Parent Plaintiffs' claim for loss of consortium flowing as a defined "damage" from the Louisiana Products Liability Act, as to the Vaccine Defendants, and as to plaintiffs' claim for loss of consortium pursuant to La. Civ.

4

Code art. 2315, based on "negligent and/or fraudulent misrepresentation of the safety of Thimerosal," as against Lilly, can stand. Defendants suggest the Parent Plaintiffs' claim either should be dismissed or stayed pending resolution of the vaccine related claims of their daughter, Amber Moss, now filed before the Vaccine Court.

Both the Vaccine Defendants and Lilly, argue the source of the Parent Plaintiffs' claim for loss of consortium and the damages sought thereby, is merely a derivative claim flowing from the injury of their minor daughter and the claims pled on her behalf. Thus, the defendants make several arguments urging dismissal of the Parent Plaintiffs' claims, or in the alternative, stay of the Parent Plaintiffs' claims pending resolution of the minor's claim presently pending before the "Vaccine Court." In support of their argument for dismissal, or in the alternative, stay of the Parent Plaintiffs' claims, the Vaccine Defendants argue:

> A stay of the derivative proceedings in this Court pending the outcome of the minor's petition in Vaccine Court is both necessary and appropriate because:
>
>> 1. The parents' derivative claims are dependent upon the minor plaintiff's primary-injury claims and, these claims should not be tried until the Vaccine-Court remedies have been exhausted;
>>
>> 2. Neither discovery nor any sort of pre-trial procedures can go forward against the vaccine manufacturers until the Vaccine-Court proceedings are completed; and

3.  The Vaccine Act's mandatory substantive and procedural limitations on a vaccine related lawsuit will govern any trial and pre-trial preparation.

After a reading of the Vaccine Act, as cited below, this Court finds the Vaccine Act, itself, mandates the dismissal of the Parent Plaintiffs' claims, until the claim now filed in the Vaccine Court on behalf of the minor child, Amber Moss, has been resolved.

The Vaccine Act, more particularly 42 § 300aa-11(2)(A) states (emphasis added):

(a) General rule

(2)(A)  No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and -

(i)(I) the United States Court of Federal Claims has issued a judgment under section 300aa-12 of this title on such petition, and

(II) such person elects under section 300aa-21(a) of this title to file such an action, or

(ii) such person elects to withdraw such petition under section 300aa-21(b) of this title or such petition is considered withdrawn under such section.

(b) Petitioners

. . . any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a

6

minor or is disabled, or the legal representative of any person who dies as the result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.

Additionally, the statue provides in 42 § 300aa-16(c):

**(c) State limitations of actions**

If a petition is filed under section 300aa-11 of this title for a vaccine-related injury or death, limitations of actions under State law shall be stayed with respect to a civil action brought for such injury or death for the period beginning on the date the petition is filed and ending on the date (1) an election is made under section 300aa-21(a) of this title to file the civil action or (2) an election is made under section 300aa-21(b) of this title to withdraw the petition.

Therefore, all state statutes of limitations are stayed until, as stated under 42 § 300aa-21(a)(1) and (2):

**(a) Election**

After judgment has been entered by the United States Court of Federal Claims or, if an appeal is taken under § 300aa-12(f) of this title, after the appellate court's mandate is issued, the petitioner who filed the petition under section 300aa-11 of this title shall file with the clerk of the United States Court of Federal Claims -

(1) if the judgment awarded compensation, an election in writing to receive the compensation or to file a civil action for damages for such injury or death, or

(2) if the judgment did not award compensation, an election in writing to accept the judgment or to file a civil action for damages for such injury or death.

The Act also allows a petitioner to file a civil action for damages for such injury or death, if the petition is withdrawn as per 42 § 300aa-21(b) due to the failure of the Special Master to rule on petitioner's claims within 240 days, 42 300aa-21(b)(1) or

7

if the Court fails to enter a judgment on petitioner's claims within 420 days, 42 § 300aa-21(b)(2).

Additionally, this Court notes that § 300aa-15, "Compensation," lists the basis for compensation should the Vaccine Court find compensation due and said compensation includes expenses which will be incurred by or on behalf of the person who suffered such injury.  § 300aa-15(a)(1)(A)(ii). Therefore, compensation is available to Parent Plaintiffs for expenses which "have been or will be incurred by or on behalf of the person," in this case, Amber Moss, who allegedly suffered such injury.

The statute further provides for loss of earning capacity and in § (4), for actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00.  Accordingly, the Vaccine Act defines damages which may be recovered under the Act.

Therefore, the Vaccine Statute addresses the rights of a petitioner to recover on behalf of the minor child expenses incurred by the parents on behalf of the minor child.  The Parent Plaintiffs may chose either to accept compensation or a decision awarding no compensation, from the Vaccine Court and not to proceed further or thereafter, to file a civil action for damages under 42 § 300aa-16(c).  Additionally, the petitioner is, also, allowed to withdraw his petition, as stated above, for failure of

8

the Special Master or the Court to rule within a specific amount
of time. Accordingly, the petitioner may then seek to file a
civil action for claimed injury and damages. Regardless of
whether judgment is given or the petition is withdrawn, the
statute of limitations for any state law claim, in this case, the
urged claim of the parents of the minor child, Amber Moss, under
the Louisiana Product Liability Act against the Vaccine
Defendants, and negligence claim under La. Civ. Code art. 2315
against Lilly, are tolled.

Parent Plaintiffs admit that proof of their claims under the
Louisiana Products Liability Act and "negligent
misrepresentation" would involve proof of the same facts and
involve the same legal issues as their child's claims for alleged
injury caused by the vaccine. Plaintiffs' Opp., p. 6. Thus,
defendants argue the Parent Plaintiffs' claims are merely
derivative claims flowing from the minor child's claim. However,
the Parent Plaintiffs have made claims against the two
defendants, which the Parent Plaintiffs argue are sufficiently
separate and independent as to allow them to exist in tandem with
or separately from the claims made on behalf of the minor child
before the "Vaccine Court." Whether the claims made by the
Parent Plaintiffs are merely claims for damages which are solely
derivative of the minor child's cause of action, and thus, must
be addressed within the minor child's cause of action or are

9

causes of action owned by the parents themselves, and thus, can
stand alone, is a question this Court need not address at this
time.  Rather, the language of the statute is clear, either such
type of claim should be dismissed at this juncture; the
prescription period will be tolled until resolution of the claim
now before the "Vaccine Court."  Thus, this Court GRANTS
defendants', Lilly, Merck & Co., Aventis Pasteur and Wyeth,
Motion to Dismiss without prejudice the Parent Plaintiffs' claims
as against Lilly, Merck & Co., Aventis Pasteur and Wyeth pending
resolution of the minor child's claim in a fashion as
contemplated by the statute.

THUS DONE AND SIGNED this ___ day of _____, 2003.

COPY SENT:
DATE: 6-23-03
BY: ___
TO: Bichford
Miyagi
Clauton
Owens
Chassaignac
Krause
Manning

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

10



JUL 14 2003 14:16 F... NALL MILLER OWENS ATL404 522 2208 TO 18164212708    P.02/07

JUL 14 2003

JUL -8 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUGLAS BRIAN MANN and LESLIE
ANN MANN,

        Plaintiffs,

    v.

GLAXO SMITHKLINE BEECHAM
CORPORATION; WYETH
CORPORATION; LEDERLE
LABORATORIES, INC.; ESI
LEDERLE, INC.; ELI LILLY
COMPANY, INC.; GALLIPOT, INC.;
INTEGRA BIOSCIENCES, INC.;
MEDISCA, INC.; MERIDAN
CHEMICAL AND EQUIPMENT, INC.;
SIGMA-ALDRICH, INC.; AMERICAN
INTERNATIONAL CHEMICAL;
SPECTRUM LABORATORY PRODUCTS;
UNIVERSITY HEALTH CARE SYSTEM;
UNIVERSITY HEALTH SERVICES,
INC.; JOHN DAVID ALLEN, M.D.;
MILDRED COOPER; and REBEKAH
THORPE,

        Defendants.

CIVIL ACTION

NO. 1:02-CV-2660-CAP

## O R D E R

    This matter is currently before this court on a number of
motions including the plaintiffs' motion for remand and several
motions to dismiss. For the reasons set forth below, the
defendants' motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(1) [Doc. No. 3-1] is GRANTED. This action is
dismissed as against all remaining defendants without prejudice.

Accordingly, all other pending motions [Doc. No. 6-1, 8-1, 9-1, 11-1, 14-1, 14-2, 17-1, 17-2, 19-1, 19-2, 20-1, and 30-1] are rendered MOOT.

## LEGAL ANALYSIS

The plaintiffs brought this civil suit, alleging that their children suffer from the effects of heavy metal poisoning, specifically mercury poisoning, due to the conduct of the defendants. The plaintiffs did not bring this suit on behalf of their children. Instead, they have asserted a cause of action in their own personal capacities. This action was originally filed in state court. The defendants removed the action to this court invoking both the diversity of citizenship jurisdiction and the federal question jurisdiction of this court. The plaintiffs have challenged the defendants' assertions of jurisdiction with a motion to remand. Generally, a court may not hear or decide a case when it lacks subject matter jurisdiction. Accordingly, federal courts usually address the question of whether the action was properly removed before assessing other matters. Where, however, dismissal would be inevitable, a district court may pass directly to a procedurally dispositive issue without addressing the merits of the underlying action or a motion to remand. See generally Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 119 S.Ct. 1563 (1999).

2

The court's decision to dismiss this action without addressing the plaintiffs' motion to remand is the result of the careful consideration by this court of the legal standards and principles involved.   The court bases the decision on the relatively straightforward subject matter jurisdictional question which would apply with equal force in the state court.   Further, such a disposition obviates a more complex fraudulent joinder analysis. Moreover, the court finds the interests of judicial economy and the expedition of the resolution of this matter to weigh in favor of addressing the motion to dismiss.

The National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. § 300aa-1, *et seq.*, states:

> No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death . . . unless a petition has been filed in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and . . . .

42 U.S.C. § 300aa-11(a)(2)(A).   Whenever a civil action is brought in violation of the above provision, the presiding court "shall dismiss the action."   42 U.S.C. § 300aa-11(2)(B).

The plaintiffs' allegations and claims arise out of the injuries allegedly sustained by their children as a result of

3

receiving vaccinations.[1]   The parties do not dispute that the plaintiffs' seek damages in excess of $1,000.  Moreover, this court has previously held that claims like the plaintiffs' are "vaccine-related" as contemplated in the Vaccine Act.  See Murphy v. Aventis Pasteur, Inc., et al., No. 1:02-CV-2258-CAP (N.D. Ga. Feb. 25, 2003); and see Murphy v. Aventis Pasteur, Inc., et al., No. 1:02-CV-2257-CAP (N.D. Ga. Feb. 25, 2003).  Additionally, the complaint reveals that the plaintiffs allege each of the defendants to be either manufacturer/distributors or administrators of the vaccines, or constituent components of the vaccines, administered to their children.  Further, the record shows that the plaintiffs had not filed a petition in accordance with § 300aa-16 at the time they filed this action.  Therefore, since their claims arise from a "vaccine-related" injury, this court and all state courts lack subject matter jurisdiction to entertain their complaint.  Thus, this court must dismiss those claims for failure to comply with the mandatory provisions of the Vaccine Act.[2]

---

[1]Legal representatives may petition the Court of Federal Claims and may recover for expenses incurred on behalf of the injured person.  See 42 U.S.C. §§ 300aa-11(b)1)(A) and 300aa-15(a).

[2]The court notes that the plaintiffs filed petitions in the Federal Court of Claims on behalf of their children.  Presumably, the plaintiffs view those claims as separate and distinct from the claims asserted here own their own behalf.  Thus, the filing of those petitions had no effect on the plaintiffs' claims in their own capacities.  As the childrens' petitions have now been lawfully

4

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) [Doc. No. 3-1] is GRANTED.  This action is dismissed as against all remaining defendants without prejudice.  Accordingly, all other pending motions [Doc. No. 6-1, 8-1, 9-1, 11-1, 14-1, 14-2, 17-1, 17-2, 19-1, 19-2, 20-1, and 30-1] are rendered MOOT.

SO ORDERED, this ___ day of July, 2003.

_____
CHARLES A. PANNELL, JR.
United States District Judge

---

withdrawn, the claims of the plaintiffs' children may now be brought in any state or federal court where jurisdiction is otherwise proper.

5

JUL 14 2003 14:17   KALL MILLER OWENS ATL404 522 2208 TO   164212708      P.07/07

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DOUGLAS BRIAN MANN and LESLIE
ANN MANN,

        Plaintiffs,

vs.

GLAXO SMITHKLINE BEECHAM, et al

        Defendants.

CIVIL ACTION FILE

NO. 1:02-cv-2660-CAP

## J U D G M E N T

    This action having come before the court, Honorable Charles A. Pannell, Jr., United

States District Judge, for consideration of defendants' motion to dismiss pursuant to F.R.C.P.

12(b)(1), and the court having granted said motion, it is

    **Ordered and Adjudged** that the plaintiff take nothing; that the defendants recover its

costs of this action, and the action be, and the same hereby, is **dismissed without prejudice.**

    Dated at Atlanta, Georgia, this 8th day of July, 2003.

LUTHER D. THOMAS
CLERK OF COURT

By: _____

Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
  July 9, 2003
Luther D. Thomas
Clerk of Court
By:_____
    Deputy Clerk

** TOTAL PAGE.07 **



08/02/0  FRI 11:33 FAX 601866438                 JUDGE TOM LEE



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

BRYAN D. COLLINS AND ALLYSON M.
COLLINS, PARENTS AND NEXT FRIEND
OF ZACHARY W. COLLINS, ET AL.

                                                    PLAINTIFF

VS.                                 CIVIL ACTION NO. 3:01CV979LI

AMERICAN HOME PRODUCTS CORPORATION
D/B/A WYETH, ET AL.

                                                    DEFENDANT

ORDER

This cause is before the court on the motions of several

defendants to dismiss. The court has considered the motions and

concludes that they are well taken and should be granted. By their

complaint in this cause, each plaintiff herein seeks recovery for

more than $75,000 in damages on account of "vaccine-related

injuries" and yet none has first filed a petition for compensation

with the Court of Federal Claims, as required by the National

Childhood Vaccine Injury Act. Accordingly, in keeping with the

explicit directive of the Vaccine Act, 42 U.S.C. §§ 300aa-1, this

cause must be dismissed. See 42 U.S.C. § 300aa-11(a)(2)(A)

(providing that "[n]o person may bring a civil action . . . against

a vaccine administrator or manufacturer in a state or federal court

for damages arising from a vaccine-related injury or death . . .

unless a petition has been filed" first in the Court of Federal

Claims); 42 U.S.C. § 300aa-11(a)(2)(B) (stating that if a claimant

files such a suit "in a State or Federal court" prior to

petitioning the Court of Federal Claims, such state or federal

court "shall dismiss the action"). See also Shalala v.



Whitecotton, 514 U.S. 268, 270, 115 S. Ct. 1477, 1478, 131 L. Ed. 2d 374 (1995). (A claimant alleging that more than $1,000 in damages resulted from a vaccination after the Act's effective date in 1988 must exhaust the Act's procedures and refuse to accept the resulting judgment before filing any de novo civil action in state or federal court.)

Based on the foregoing, it is ordered that the motions of the intervenors to dismiss are granted, and it is therefore ordered that this cause is dismissed without prejudice.

Signed this ___ day of _____, 2002.

_____
UNITED STATES DISTRICT JUDGE

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

SEP - 6 2012

J.T. NOBLIN, CLERK
BY_____ DEPUTY

JAMIELEE HUGHES MCDONALD, ET AL.                          PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:01CV77LN

ABBOTT LABORATORIES, INC., ET AL.                        DEFENDANTS

<u>ORDER</u>

By order dated August 1, 2002, this court undertook to dismiss
this case on the basis that plaintiffs' claims are subject to the
National Childhood Vaccine Injury Act, and its directive that "[n]o
person may bring a civil action . . . against a vaccine
administrator or manufacturer in a state or federal court for
damages arising from a vaccine-related injury or death . . . unless
a petition has been filed" first in the Court of Federal Claims, 42
U.S.C. § 300aa-11(a)(2)(A), and its further directive that in the
event a claimant files such a suit "in a State or Federal court"
prior to petitioning the Court of Federal Claims, such state or
federal court "shall dismiss the action," 42 U.S.C. § 300aa-
11(a)(2)(B). The court's order incorrectly recited that the
dismissal was prompted by the motion of several defendants. In
fact, however, the court undertook to dismiss the case sua sponte,
and enters this order to make this clear.

SO ORDERED this 6th day of September, 2002.

_____
UNITED STATES DISTRICT JUDGE

FEB. 6. 2003   4:06PM                                          NO. 4745   P. 21/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JAMIELER HUGHES MCDONALD, ET AL.                    PLAINTIFF

VS.                                  CIVIL ACTION NO. 3:02CV771N

ABBOTT LABORATORIES, INC., ET AL.                   DEFENDANTS

ORDER

This cause is before the court on the motions of several
defendants to dismiss. The court has considered the motions and
concludes that they are well taken and should be granted. By their
complaint in this cause, each plaintiff herein seeks recovery for
more than $1,000 in damages on account of "vaccine-related
injuries" and yet none has first filed a petition for compensation
with the Court of Federal Claims, as required by the National
Childhood Vaccine Injury Act. Accordingly, in keeping with the
explicit directive of the Vaccine Act, 42 U.S.C. §§ 300aa-1, this
cause must be dismissed. See 42 U.S.C. § 300aa-11(a)(2)(A)
(providing that "[n]o person may bring a civil action . . . against
a vaccine administrator or manufacturer in a state or federal court
for damages arising from a vaccine-related injury or death . . .
unless a petition has been filed" first in the Court of Federal
Claims); 42 U.S.C. § 300aa-11(a)(2)(B) (stating that if a claimant
files such a suit "in a State or Federal court" prior to
petitioning the Court of Federal Claims, such state or federal
court "shall dismiss the action"). See also Shalala v.
Whitecotton, 514 U.S. 268, 270, 115 S. Ct. 1477, 1478, 131 L. Ed.
2d 374 (1995) ("A claimant alleging that more than $1,000 in

damages resulted from a vaccination after the Act's effective date
in 1988 must exhaust the Act's procedures and refuse to accept the
resulting judgment before filing any de novo civil action in state
or federal court.").

Based on the foregoing, it is ordered that the motions of the
defendants to dismiss are granted, and it is therefore ordered that
this cause is dismissed without prejudice.

SO ORDERED this 2nd day of August, 2002.

UNITED STATES DISTRICT JUDGE

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN W. STEWART III AND
ANNETTE C. STEWART, ET AL.                                    PLAINTIFFS

VS.                                    CIVIL ACTION NO. 3:02CV427LN

AMERICAN HOME PRODUCTS CORPORATION
D/B/A WYETH, WYETH LABORATORIES,
ET AL.                                                        DEFENDANTS

ORDER

This cause is before the court on the motions of several
defendants to dismiss.  The court has considered the motions and
concludes that they are well taken and should be granted.  By their
complaint in this cause, each plaintiff herein seeks recovery for
more than $1,000 in damages on account of "vaccine-related
injuries" and yet none has first filed a petition for compensation
with the Court of Federal Claims, as required by the National
Childhood Vaccine Injury Act.  Accordingly, in keeping with the
explicit directive of the Vaccine Act, 42 U.S.C. §§ 300aa-1, this
cause must be dismissed.  See 42 U.S.C. § 300aa-11(a)(2)(A)
(providing that "[n]o person may bring a civil action . . . against
a vaccine administrator or manufacturer in a state or federal court
for damages arising from a vaccine-related injury or death . . .
unless a petition has been filed" first in the Court of Federal
Claims); 42 U.S.C. § 300aa-11(a)(2)(B) (stating that if a claimant
files such a suit "in a State or Federal court" prior to
petitioning the Court of Federal Claims, such state or federal

court "shall dismiss the action"); See also Shalala v. Whitecotton, 514 U.S. 268, 270, 115 S. Ct. 1477, 1479, 131 L. Ed. 2d 374 (1995) ("A claimant alleging that more than $1,000 in damages resulted from a vaccination after the Act's effective date in 1988 must exhaust the Act's procedures and refuse to accept the resulting judgment before filing any de novo civil action in state or federal court.").

Based on the foregoing, it is ordered that the motions of the defendants to dismiss are granted, and it is therefore ordered that this cause is dismissed without prejudice.

SO ORDERED this 2nd day of August, 2002.

UNITED STATES DISTRICT JUDGE

2

OCT 08. 2003  4:05PM       BRADLEY ARANT LLP       NO. 4745   P. 19/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**FILED**

OCT 15 2002

J.T. NOBLIN, CLERK
BY_____DEPUTY

ROBERT EDGAR HOLDER AND MATTHEW
CLAYTON HOLDER, BY AND THROUGH
THEIR NATURAL PARENTS AND GENERAL
GUARDIANS, VALLEY HOLDER AND
BRENDA HOLDER                                                    PLAINTIFFS

VS.                                            CIVIL ACTION NO. 4:02CV148LN

ABBOTT LABORATORIES, INC.,
AMERICAN HOME PRODUCTS D/B/A
WYETH, WYETH LABORATORIES, WYETH-
AYERST, WYETH-AYERES LABORATORIES,
WYETH LEDERLE, WYETH LEDERLE, WYETH
LEDERLE VACCINES, AND LEDERLE
LABORATORIES; AVENTIS PASTEUR, INC.,
INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO CONNAUGHT; BAXTER
INTERNATIONAL, INC.; ELI LILLY AND
COMPANY; GDL INTERNATIONAL, INC.;
GLAXOSMITHKLINE, INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST TO SMITHKLINE
BEECHAM CORP.; KINGPHARMACEUTICALS,
INC.; MEDEVA PHARMACEUTICALS, INC.;
MERCK & CO., INC.; SIGMA ALDRICH,
INC.; SPECTRUM CHEMICAL MANUFACTURING
CORP.; GREGORY S. MARANTO, M.D.; RUSH
MEDICAL GROUP, P.A., AND JANE/JOHN DOES          DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on plaintiffs' motion to

remand this case to the Circuit Court of Hinds County,

Mississippi, and on the motion of several defendants to dismiss.

Briefing on the motion to remand has been completed, and the

court, having considered the parties' arguments, concludes that

for the same reasons assigned by the court in <u>Collins v. American</u>

<u>Home Products Corp.</u>, Civil Action No. 3:01CV979LN (S.D. Miss  Aug.

1, 2002), and <u>McDonald v. American Home Products Corp.</u>, Civil

Action No. 3:02CV77LN (S.D. Miss. Aug. 1, 2002), the motion to remand should be denied. The court further concludes, also for the reasons explained in Collins and McDonald, namely that the case is not cognizable unless plaintiffs shall first present their claim in the Vaccine Court, that this case is due to be dismissed.[1]

Based on the foregoing, it is ordered that plaintiffs' motion to remand is denied, and it is further ordered that this case is dismissed without prejudice.

SO ORDERED this 15th day of October, 2002.

_____
UNITED STATES DISTRICT JUDGE

---

[1]    The court is aware that while defendants have moved to dismiss, plaintiffs have not yet filed their response in opposition. They have, however, made their position known, and the court is well familiar with their arguments.

2



JUN-20-2003 FRI 12:22 PM          FAX NO.          P. 02

## Circuit Court
### for
## Baltimore City

111 NORTH CALVERT STREET
BALTIMORE, MARYLAND 21202

STUART R. BERGER
JUDGE

(410) 396-5008
FAX: (410) 545-7331
City Deaf TTY (410) 396-4830

June 19, 2003

SEE ATTACHED SERVICE LIST

Re:   Ambrose Agbebaku and Mary Gilbert, et al. v. Sigma-Aldrich, Inc., et al.
      Circuit Court for Baltimore City Consolidated Case No. 24-C-0004243

Dear Counsel:

    Enclosed please find a copy of the Memorandum Opinion and Order regarding the above captioned case. The original Memorandum Opinion and Order was filed with the Clerk of the Court today.

    Thank you for your attention to this matter.

Very truly yours,

Stuart R. Berger

JUN 2 0 2003

JACKSON & CAMPBELL

JUN-20-2003 FRI 12:22 PM          FAX NO.                    P. 03

| | | |
|---|---|---|
| AMBROSE AGBEBAKU and MARY GILBERT, Individually, and as Parents and Next Friends of ALLEN AGBEBAKU, a Minor | * | IN THE |
| | | CIRCUIT COURT |
| Plaintiffs | * | FOR |
| | * | BALTIMORE CITY |
| v. | * | Case No: 24-C-02-004243* |
| SIGMA ALDRICH, INC., et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER

*RELATED THIMEROSAL CASE NUMBERS:

| | | |
|---|---|---|
| 24-C-02-004175 | 24-C-02-004238 | 24-C-02-004321 |
| 24-C-02-004176 | 24-C-02-004239 | 24-C-02-004322 |
| 24-C-02-004178 | 24-C-02-004240 | 24-C-02-004323 |
| 24-C-02-004179 | 24-C-02-004241 | 24-C-02-004324 |
| 24-C-02-004180 | 24-C-02-004242 | 24-C-02-004328 |
| 24-C-02-004181 | 24-C-02-004245 | 24-C-02-004935 |
| 24-C-02-004182 | 24-C-02-004246 | 24-C-02-005122 |
| 24-C-02-004183 | 24-C-02-004247 | 24-C-02-005868 |
| 24-C-02-004184 | 24-C-02-004249 | 24-C-02-005869 |
| 24-C-02-004185 | 24-C-02-004251 | 24-C-02-005870 |
| 24-C-02-004186 | 24-C-02-004252 | 24-C-02-005871 |
| 24-C-02-004188 | 24-C-02-004253 | 24-C-02-005872 |
| 24-C-02-004189 | 24-C-02-004254 | 24-C-02-005873 |
| 24-C-02-004190 | 24-C-02-004255 | 24-C-02-005936 |
| 24-C-02-004191 | 24-C-02-004256 | 24-C-02-007224 |
| 24-C-02-004192 | 24-C-02-004257 | 24-C-02-007231 |
| 24-C-02-004194 | 24-C-02-004320 | 24-C-02-007234 |
| | | 24-C-02-007235 |

Upon consideration of the preliminary motions filed on behalf of all Defendants, as well as the Plaintiffs' Oppositions filed thereto, and the reply memoranda submitted on behalf of the Defendants, and after oral argument having been held on April 21 - 22, 2003, it is this 19th day of June 2003, by the Circuit Court for Baltimore City hereby ORDERED that, for the reasons stated in this Court's Memorandum Opinion:

1.  All claims brought by or on behalf of the minor plaintiffs and all claims brought by the parents of the minors for costs and expenses arising from the minors' alleged vaccine-related injuries against Aventis Pasteur, Inc., Baxter Healthcare Corporation, Merck & Co., Inc., SmithKline Beecham Corporation d/b/a GlaxoSmithKline and Wyeth f/k/a American Home Products Corporation (collectively the "Vaccine Defendants") and Sigma-Aldrich, Inc., American International Chemical, Inc. Spectrum Laboratory Products, Inc. and Eli Lilly and Company (collectively the "Thimerosal Defendants") and Ortho-Clinical Diagnostics, Inc. and Johnson & Johnson (collectively the "Other Defendants") be, and the same is, hereby DISMISSED without prejudice for lack of subject matter jurisdiction pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300 aa-10 et seq.; and it is further ORDERED that:

2.  Defendants' Motion to Dismiss Count 11 (Fraud) be, and the same is, hereby DENIED; and it is further ORDERED that:

3.  Defendants' Motion to Dismiss Count 13 (Fraud on the Marketplace - Fraudulent Misrepresentation/Fraudulent

2

Concealment) be, and the same is, hereby GRANTED; and it is further ORDERED that:

4.   Defendants' Motion to Dismiss Count 14 (Maryland Consumer Protection Act) be, and the same is, hereby GRANTED; and it is further ORDERED that:

5.   Defendant Constellation Energy Group's Motion to Dismiss be, and the same, is hereby GRANTED; and it is further ORDERED that:

6.   Plaintiffs' Amended Complaint be, and the same is, hereby DISMISSED with PREJUDICE as to Defendant Constellation Energy Group; and it is further ORDERED that:

7.   Defendant Baltimore Gas & Electric Company's Motion to Dismiss be, and the same is, hereby GRANTED; and it is further ORDERED that:

8.   Plaintiffs' Amended Complaint be, and the same is, hereby DISMISSED with PREJUDICE; and it is further ORDERED that:

9.   The Clerk shall forward a copy of this Order to all Counsel of Record in this proceeding.

The Honorable Stuart R. Berger
The Judge's Signature Appears
on the Original Document Only

:y

cc:  All Counsel of Record

3

SERVICE LIST

Thomas F. Yost, Jr., Esq.
Michael A. Pulver, Esq.
341 North Calvert Street, Suite 100
Baltimore, MD 21202

D'Ana E. Johnson, Esq.
Keith M. Bonner, Esq.
Carolyn Israel Stein, Esquire
Bonner, Kiernan, Trebach & Crociata
1250 Eye Street, N.W., Suite 600
Washington, DC 20005

M. Diane Owens, Esq.
Bradley S. Wolff, Esq.
Swift, Currie, McGee & Hiers, LLP
The Peachtree
1355 Peachtree Street, N.E., Suite 300
Atlanta, GA 30309-3231

Kenneth Scott, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
The Curtis Center, Suite 1130 East
Independence Square Est
Sixth & Walnut Streets
Philadelphia, PA 19106

Warren Lutz, Esq.
Jennifer R. Kantor, Esq.
Jackson & Campbell, P.C.
1120 20th Street, N.W.
Suite 300 South
Washington, DC 20036

Paul F. Strain, Esq.
Dino S. Sangiamo, Esq.
Stephen E. Marshall, Esq.
Venable, Baetjer and Howard, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201

Deborah M. Russell, Esq.
Janet Selph Moyers, Esq.
McGuireWoods, LLP
One James Center, 901 East Cary Street
Richmond, VA 23219-4030

JUN-20-2003 FRI 12:23 PM                    FAX NO.                    P. 07___

Jonathan T. Blank, Esq.
Maguire Woods, LLP
7 St. Paul Street, Suite 1000
Baltimore, MD 21202-1671

Winston D. Carter, Jr., Esq.
Charles Jason Rother, Esq.
Fulbright & Jaworski, LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095

Stephanie A. Smith, Esq.
Stacey A. Martinez, Esq.
Fulbright & Jaworski, LLP
600 Congress Avenue, Suite 2400
Austin, TX 78701

Raymond G. Mullady, Jr., Esq.
Kenneth Y. Turnbull, Esq.
Orrick, Herrington & Sutcliffe, LLP
Washington Harbour
3050 K Street, N.W.
Washington, DC 20007

Daniel J. Thomasch, Esq.
Lauren J. Elliot, Esq.
Orrick, Herrington & Sutcliffe, LLP
665 Fifth Avenue
New York, NY 10103-0001

Paul J. Maloney, Esq.
William J. Carter, Esq.
Carr Maloney, PC
1667 K Street, N.W.
Suite 1100
Washington, DC 20006-1605

Brian S. Goodman, Esq.
Fedder and Garten, P.A.
2300 Charles Center South
36 S. Charles Street
Baltimore, MD 21201

Thomas J. Cullen, Jr., Esq.
Ericka L. Kleiman, Esq.
Goodell, Devries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202

Michelle R. Mangrum, Esq.
John H. Hsu, Esq.
Shook, Hardy & Bacon, LLP
Hamilton Square
600 14th Street, N.W.
Washington, DC 20005-2004

Deborah A. Moeller, Esq.
David W. Smith, Esq.
Chris Murphy, Esq.
Marie Woodbury, Esq.
Shook, Hardy & Bacon, LLP
One Kansas City Place
1200 Main Street
Kansas City, MO 64104-2118

Deborah E. Jennings, Esq.
Damon L. Krieger, Esq.
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, MD 21209-3600

Jonathan D. Smith, Esq.
Jennifer Wright Burke, Esq.
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, MD 21209-3600

Richard M. Barnes, Esq.
Bonnie J. Beavan, Esq.
Goodell, Devries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202

Robert C. Tucker, Esq.
Arter & Hadden, LLP
1100 Huntington Building
925 Euclid Avenue
Cleveland, OH 44115

JUN-20-2003 FRI 12:24 PM                    FAX NO.                        P. 09

AMBROSE AGBEBAKU and MARY          *      IN THE
    GILBERT, Individually, and
as Parents and Next Friends of     *      CIRCUIT COURT
ALLEN AGBEBAKU, a Minor
                                   *      FOR
        Plaintiffs
                                   *      BALTIMORE CITY
v.
                                   *      Case No: 24-C-02-004243*
SIGMA ALDRICH, INC., et al.
                                   *
        Defendants
     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

*RELATED THIMEROSAL CASE NUMBERS:

| | | |
|---|---|---|
| 24-C-02-004175 | 24-C-02-004238 | 24-C-02-004321 |
| 24-C-02-004176 | 24-C-02-004239 | 24-C-02-004322 |
| 24-C-02-004178 | 24-C-02-004240 | 24-C-02-004323 |
| 24-C-02-004179 | 24-C-02-004241 | 24-C-02-004324 |
| 24-C-02-004180 | 24-C-02-004242 | 24-C-02-004328 |
| 24-C-02-004181 | 24-C-02-004245 | 24-C-02-004935 |
| 24-C-02-004182 | 24-C-02-004246 | 24-C-02-005122 |
| 24-C-02-004183 | 24-C-02-004247 | 24-C-02-005868 |
| 24-C-02-004184 | 24-C-02-004249 | 24-C-02-005869 |
| 24-C-02-004185 | 24-C-02-004251 | 24-C-02-005870 |
| 24-C-02-004186 | 24-C-02-004252 | 24-C-02-005871 |
| 24-C-02-004188 | 24-C-02-004253 | 24-C-02-005872 |
| 24-C-02-004189 | 24-C-02-004254 | 24-C-02-005873 |
| 24-C-02-004190 | 24-C-02-004255 | 24-C-02-005936 |
| 24-C-02-004191 | 24-C-02-004256 | 24-C-02-007224 |
| 24-C-02-004192 | 24-C-02-004257 | 24-C-02-007231 |
| 24-C-02-004194 | 24-C-02-004320 | 24-C-02-007234 |
| | | 24-C-02-007235 |

### INTRODUCTION

Plaintiffs allege that their minor children suffered an increase risk of developmental harm and specifically, autism, which were proximately caused by the administration of various childhood vaccines containing the preservative thimerosal, the composition of which contains mercury. The Plaintiffs allege that their children suffered injuries resulting from repeated exposure to thimerosal, a mercury containing preservative added to some vaccines and other pharmaceutical products. Plaintiffs further allege that their children's injuries were exacerbated by coal burning power plants owned and operated by Baltimore Gas & Electric Company and Constellation Energy Group. Plaintiffs seek relief, including compensatory and punitive damages on numerous statutory and common law theories.

### PROCEDURAL HISTORY

On January 30, 2003, Judge Carol E. Smith (Judge-in-Charge of the Civil Docket for the Circuit Court for Baltimore City) issued "Maryland Thimerosal Litigation"[1] Order Number 1 in the above-captioned cases. These cases include 49 cases that were remanded to this Court from the United States District Court for the District of Maryland by Order of Judge Andre M. Davis dated December 18, 2002. Judge Smith's Order dated January 30, 2003

---

[1] For ease of reference, these cases will be described as the Maryland Thimerosal Litigation.

established a briefing schedule for the filing of "Master Briefs" as well as other preliminary motions, oppositions and replies supporting or opposing the Master Briefs.

Thereafter, four (4) additional cases were filed in the Circuit Court for Baltimore City (case numbers: 24-C-02-007224, 24-C-02-007231, 24-C-02-007234, and 24-C-02-002735). On March 21, 2003, Judge Smith executed an Order scheduling those cases along with the 49 other cases remanded from the United States District Court before this Court for a hearing on all preliminary motions on April 21 - 22, 2003.

Several preliminary motions were filed including:

1.   Vaccine Defendants'[2] Motion to Dismiss and Request for Stay (filed January 31, 2003);

2.   Thimerosal Defendants'[3] Motion to Dismiss (filed January 31, 2003);

---

[2] There are several categories of Defendants who, for ease of reference, are described as the "Vaccine Defendants," the "Thimerosal Defendants", the "Power Plant Defendants", and "Other Defendants". The Vaccine Defendants include: (1) Aventis Pasteur, Inc. (hereinafter "Aventis"); (2) Baxter Healthcare Corporation (hereinafter "Baxter"); (3) Merck & Co., Inc. (hereinafter "Merck"); (4) SmithKline Beecham Corporation d/b/a GlaxoSmithKline (hereinafter "GSK"); (5) Wyeth (formerly known as American Home Products Corporation); and (6) Antex Biologics. On April 16, 2003, this Court granted a Stay as to Defendant Antex Biologics, Inc., and the proceedings against Antex Biologics were deferred to the Bankruptcy Court in accordance with Section 362 of Title 11 of the United States Code.

[3] The "Thimerosal Defendants" include: (1) Sigma-Aldrich, Inc.; (2) American International Chemical, Inc.; (3) Spectrum Laboratory Products, Inc. and (4) Eli Lilly and Company. For reasons unrelated to the merits of these Motions, Eli Lilly and Company filed its Motion to Dismiss separate and distinct from the Thimerosal Defendants' Motion. Nevertheless, Eli Lilly and Company will be considered with the "Thimerosal Defendants" for the purpose of the determination of all preliminary motions.

-3-

> 3.    Power Plant Defendants'[4] Motion to Dismiss (filed January
>        31, 2003);
>
> 4.    Other Defendants'[5] Motion to Dismiss and/or for Stay of
>        All Claims and Proceedings.

The Plaintiff filed its Opposition to all preliminary Motions
on February 20, 2003 and requested a hearing on the preliminary
Motions.   On April 21 and 22, 2003, this Court (Berger, J.)
conducted a hearing on the extant Motions and held its decision on
all motions sub curia.   This Memorandum Opinion addresses all of
the outstanding Motions that were ripe at the time of the hearing
on April 21, 2003.[6]

### STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a
cause of action pursuant to Md. R. 322 (b)(2), a trial court must
assume the truth of all well-pleaded relevant material facts in the

---

[4] The "Power Plant Defendants" include: (1) Baltimore Gas & Electric,
Co. (hereinafter "BG&E"); and (2) Constellation Energy Group, Inc.
(hereinafter "CEG").

[5] The "Other Defendants" include: (1) Ortho-Clinical Diagnostics, Inc.
(hereinafter "OCD"); (2) Johnson and Johnson; and (3) Human Genome Sciences,
Inc. (hereinafter "HGS").   Prior to the hearing on April 21, 2003, counsel for
the Plaintiff and Human Genome Sciences, Inc. agreed to dismiss this action
against HGS without prejudice.   This Court granted the dismissal of HGS
without prejudice by Order dated April 25, 2003.

[6] On the first day of the hearing, Plaintiffs' counsel presented the
Court with an additional pleading captioned as "Supplemental Memorandum of Law
in support of Maryland Thimerosal Plaintiffs' Opposition to Thimerosal-Laden
Product Defendants (aka Vaccine Defendants) Motion to Dismiss and Request for
Stay."   Inasmuch as said filing was not authorized by the Scheduling Orders
signed by Judge Smith, this Court neither considered the filing nor allowed
oral argument on the contents of this filing at the hearing on April 21 - 22,
2003.

-4-

Complaint and all inferences reasonably drawn therefrom.  Bobo v. State, 346 Md. 706, 708 (1997); Bd. of Education of Montgomery County v. Browning, 333 Md. 281, 286 (1994)("[the court] must accept as true all well-pleaded facts and allegations in the complaint"); Stone v. Chicago Title Ins. Co., 330 Md. 329, 333 (1993); Bennett Heating & Air Conditioning v. Nations Bank, 103 Md. App. 749, 757 (1995), rev'd on other grounds, 342 Md. 169 (1996). Additionally, in the context of a motion to dismiss, it would be improper to ask a judge to make any findings of fact.  Morris v. Osmore, 99 Md. App. 646, 658 (1994).

It is well settled that the facts comprising the cause of action must be pleaded with sufficient specificity.  Bobo v. State, supra, 346 Md. at 708.  Indeed, the Maryland Rules expressly provide that "a pleading that sets forth a claim for relief ... shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for relief sought ..."  Md. Rule 2-305.  "Bald assertions and conclusory statements by the pleader will not suffice."  Id.; Professional Staff Nurses Assoc. v. Dimensions Health Corp., 110 Md. App. 270, 285 (1996).  Thus, the "grant of a motion to dismiss is proper if the complaint does not disclose on its face a legally sufficient cause of action."  Lubore v. RPM Assoc., 109 Md. App. 312, 322 (1996), cert. denied, 343 Md. 565 (1996).

Alternatively, the motion to dismiss must be denied when the

-5-

facts, if proven, would entitle Plaintiff to relief. Morris v. Osmose Wood Preserving, 99 Md. App. 646, 653 (1991)(citing Stone v. Chicago Title Ins. Co. of Md., 330 Md. 329 (1993)). When moving to dismiss, a Defendant is asserting that even if the allegations of the Complaint are true, Plaintiff is not entitled to relief as a matter of law. Lubore, supra, 109 Md. App. at 322.

### SUBJECT MATTER JURISDICTION

**A.   Vaccine Defendants**

Defendants argue that the Plaintiff's injuries are governed by what is commonly referred to as the Vaccine Act. Specifically, 42 U.S.C.S. § 300aa-11(a)(2)(A), provides that:

> No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with 42 U.S.C.S. § 300aa-16, for compensation under the Program for such injury or death.

Further, Defendants contend that Plaintiff's Complaint must be dismissed because Plaintiffs failed to exhaust any and all remedies provided by the Vaccine Act's no-fault compensation program before they filed a civil Complaint. Defendants maintain that before filing a Complaint against manufacturers and distributors of a vaccine, Plaintiffs must first file a petition for compensation in a specially constituted court of special masters that is part of

-6-

the United States Court of Federal Claims (hereinafter the "Vaccine Court").

Plaintiffs argue that they are exempt from filing a Vaccine Act claim in the Vaccine Court for several reasons, including but not limited to: (1) there is no federal preemption of vaccine-related injury claims; (2) the Homeland Security Act makes it clear that thimerosal claims should not have been and will not in the future be handled by the Vaccine Act; (3) Defendants have not established that Plaintiffs' claims 'qualify' under the Vaccine Act; and (4) Plaintiffs have no outstanding administrative remedy within the Vaccine Act, and therefore, they are not required to exhaust it.

Initially, this Court must determine whether the thimerosal preservative in vaccines is an 'adulterant' or 'contaminant' as defined in the Vaccine Act. If the thimerosal preservative is an 'adulterant' or 'contaminant,' the Plaintiffs are exempt from filing a claim in the Vaccine Court. The Vaccine Act defines broadly the term 'vaccine related injury' as "an illness, injury, condition, or death associated with" vaccines listed in the Act, but not a condition "associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa-33(5).

Numerous courts have ruled on this issue and have held, as a matter of law, that thimerosal is not an adulterant or contaminant and have dismissed claims, identical to those brought here by

-7-

Plaintiff, for lack of subject-matter · jurisdiction.[7] Significantly, a Texas court held recently that the "language of the Vaccine Act unambiguously and specifically indicates that injuries caused by vaccine preservatives (i.e., thimerosal) are within its scope...it is clear that Congress has spoken to the precise question at issue." Owens v. Am. Home Prods. Corp., 203 F. Supp. 2d 748, 756 n. 11 (S.D. Tex. 2002).

Clearly, case law issued after the Vaccine Act and rules of statutory interpretation support the conclusion that injuries allegedly caused by the thimerosal preservative constitute vaccine-related injuries. Accordingly, this Court finds that the Plaintiffs' injuries caused by the thimerosal preservative indeed constitute vaccine-related injuries.[8]

---

[7] See Liu v. Aventis Pasteur, Inc. 219 F. Supp. 2d 762 (W.D. Tex. 2002); Owens v. Am. Home Prods. Corp., 203 F. Supp. 2d 748 (S.D. Tex. 2002); O'Connell v. Am. Home Prods. Corp., No. G-02-184 (S.D. Tex. May 7, 2002); Blackmon v. Am. Home Prods. Corp., No. G-02-179 (S.D. Tex. May 8, 2002); Collins v. Am. Home Prods. Corp., No. 3:01CV979LN (S.D. Miss. Aug. 2, 2002); McDonald v. Abbott Labs, Inc., 3:02CV77LN (S.D. Miss. Aug. 2, 2002); Stewart v. Am. Home Prods. Corp., No. 3:02CV427LN (S.D. Miss. Aug. 2, 2002); Greene v. Aventis Pasteur, Inc., No. L-1228-012 (N.J. Super. Ct. Aug. 8, 2002); Colson v. Aventis Pasteur, Inc., No. L-1351-02 (N.J. Super. Ct. Aug. 8, 2002); Russak v. Aventis Pasteur, Inc., No. A-02-CA-480-SS (W.D. Tex. Sept. 9, 2002); Carabine v. Aventis Pasteur, Inc., No. A-02-CA-501-SS (W.D. Tex. Oct. 8, 2002); Holder v. Abbott Labs., No. 4:02-CV-148LN (S.D. Miss. Oct. 15, 2002); Max v. Aventis Pasteur, Inc., No. CV 02-2018 (JBW)(E.D.N.Y. Oct. 28, 2002); Mead v. Aventis Pasteur, Inc., No. 0107-07136 (Or. Cir. Ct. Nov. 6, 2002); Radulovic v. Am. Home Prods. Corp., No. 02-05033 (Fl. Cir. Ct. Nov. 19, 2002); Cheskiewicz v. Aventis Pasteur, Inc., No. 0952 (Pa. C. Dec. 16, 2002); Young v. Aventis Pasteur, Inc., No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003); Rotter v. Aventis Pasteur, Inc., No. 9:02-CV-181 (E.D. Tex. Jan. 13, 2003); Shanaughy v. Wyeth, No. 02-1517 CAWS (Fl. Cir. Ct. Jan. 17, 2003); Murphy v. Aventis Pasteur, Inc., No. 1:02-CV-2257-CAP (N.D. Ga. Feb. 25, 2003).

[8] Plaintiffs argue that the Act does not apply to their claims because of the adulterant/contaminant exception of 42 U.S.C. § 300aa-33(5). Although the terms 'adulterant' and 'contaminant' are not defined in the Act, established principles of statutory construction mandate the conclusion thimerosal, when used as a preservative in licensed vaccines, is a constituent

The Vaccine Act provides that:

> No person may bring a civil action for damages in an amount greater than $1,000...against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury...unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury...

42 U.S.C. § 300aa-11(a)(2)(A). It is well settled that the Court must look at the plain language of the statute when determining its meaning. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992). As long as the language of the statute is clear, the function of the court is to enforce it according to its terms. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989).

However, if the plain language is ambiguous, the Court must look to the legislative history of the statute. The Vaccine Act expressly provides that: "[n]o person may bring a civil action for damages in an amount greater than $1,000" for damages incurred from a vaccine-related injury unless a petition has been filed in the Vaccine Court. 42 U.S.C. § 300aa-11(a)(2)(A). As virtually all of the Courts interpreting the Vaccine Act have held, this Court finds that the language in the Vaccine Act is clear and unambiguous. See, e.g., Owens v. Am. Home. Prods. Corp., supra, 203 F. Supp. at

---

ingredient of the vaccines and not an adulterant or contaminant. In addition, both the Vaccine Court and the Secretary of the Health and Human Services have determined that thimerosal-related claims are included within the statutory definition of "vaccine related injury" because thimerosal is not an 'adulterant' or 'contaminant.' Amendola v. Secretary of HHS, 989 F.2d 1180, 1186 (Fed. Cir. 1993); Leroy v. Secretary of HHS, No. 02-392V (Fed. Cl. Oct. 11, 2002).

756; O'Connell v. Am. Home Prods. Corp., No. G-02-184 (S.D. Tex.
May 7, 2002); Blackmon v. Am. Home Prods. Corp., No. G-02-179 (S.D.
Tex. May 8, 2002).

Although this Court need not look to the legislative history
in interpreting the Act, a review of the legislative history
solidifies the Act's plain meaning: "All individuals injured by a
vaccine administered after the date of enactment of the legislation
are required to go through the compensation program ... before
other remedies may be pursued." H.R. Rep. No. 99-908, at 3,
reprinted in 1986 U.S.C.C.A.N. at 6344.[9] It is only after a
claimant has exhausted the no-fault compensation system that the
claimant may elect to refuse any award or compensation and file a
civil action. 42 U.S.C. § 300aa-21(a). This Court finds that
Plaintiffs' injuries from the thimerosal preservative constitute
vaccine-related injuries within the contemplation of the Vaccine
Act. Accordingly, Plaintiffs failed to exhaust their remedies in
the Vaccine Court before filing their action in this Court.

Further, the express terms of the Act are instructive.
Section 42 U.S.C. § 300aa-11(a)(2)(B) expressly provides that: "If
a civil action which is barred under [§ 300aa-11(a)(2)] is filed in

_____

[9] The effective date of the Vaccine Act is November 15, 1988. In their
oral argument, Plaintiffs stated that two to three minors of the 53 minor
Plaintiffs included in the Complaint were exposed to thimerosal before October
1, 1988. However, Defendants maintain that according to Plaintiffs'
Complaint, only one minor plaintiff was born before Congress enacted the Act
(one minor plaintiff was born November 8, 1988). However, at oral argument on
April 21, 2003, the Court was advised that the one minor plaintiff did not
receive any vaccinations until six weeks after his birth, thereby making the
plaintiff's exposure to thimerosal a post Vaccine Act case.

a State or Federal court, the court shall dismiss the action." Furthermore, state and federal courts have dismissed such cases for lack of subject-matter jurisdiction to decide the merits of vaccine-related injury claims. See Brown v. Secretary of HHS, 874 F. Supp. 238, 241 (S.D. Ind. 1994)(granting motion to dismiss for lack of subject-matter jurisdiction on this basis), aff'd mem., 61 F.3d 905 (7th Cir. 1995), 1995 WL 395753; Greene v. Aventis Pasteur & Colson v. Aventis Pasteur, Nos. L-1288-02, L-1351-02, slip op. at 5 (N.J. Super. Ct. Aug. 8, 2002)(dismissing thimerosal-related claims because "Plaintiffs' alleged injuries are vaccine-related and this Court lacks jurisdiction in these matters"). Accordingly, inasmuch as Plaintiffs' filed their claim in State court without first exhausting their remedies in the Vaccine Court, this Court must dismiss the vaccine-related injury claims for lack of subject-matter jurisdiction.

Moreover, Plaintiffs contend that the repeal of the Homeland Security Act amendments[16] to the Vaccine Act demonstrate that Congress did not intend to include thimerosal claims within the Vaccine Act. However, the mere fact that Congress clarified specific sections of the Vaccine Act and subsequently repealed

---

[16] Before its repeal, sections the Homeland Security Act ("HSA") clarified the definition of a vaccine-related injury by adding that "an adulterant or contaminant shall not include any component or ingredient listed in a vaccine's product license application or product label." Homeland Security Act of 2002, Pub. L. No. 107-296, § 1715. Section 1716 of the HSA clarified the definition of a vaccine to include "all components and ingredients listed in the vaccine's product license application and product label."

those clarifications does not indicate any intention of Congress to exclude thimerosal-related claims from vaccine-related injuries. On the contrary, the clarifications confirm the holdings of courts that had addressed whether thimerosal-related injuries are covered under the Vaccine Act before Congress enacted the HSA amendments.[11] See, e.g., Owens v. Am. Home Prods. Corp., 203 F. Supp. 2d, 748, 755 (S.D. Tex. 2002)(holding that "because the children's injuries are allegedly linked to a vaccine ingredient, their injuries are definitely 'vaccine-related'").

This Court is not persuaded by Plaintiffs' assertion that the HSA amendments "for the first time include Thimerosal claims within the Vaccine Act." State and federal courts have included thimerosal claims within the Vaccine Act for at least three months before the effective date of the HSA in November, 2002.[12] Indeed, state and federal courts continue to reach the same conclusion that thimerosal claims are within the Vaccine Act after Congress enacted the HSA amendments without regard to those amendments.[13]

---

[11] Prior to the effective date of the HSA (November 15, 2002), numerous courts decided that vaccines include all constituent materials identified in the biological license such as preservatives (i.e. thimerosal), and injuries attributed to any such constituent are "vaccine-related" claims covered by the Vaccine Act and its administrative filing requirement. See supra note 7.

[12] See supra note 7.

[13] See Wax v. Aventis Pasteur, Inc., No. CV 02-2018 (JBW), slip op. at 4 (E.D.N.Y. Dec. 16, 2002)(declining to consider wehther the HSA amendments apply and dismissing complaint "based on the law prior to the effective date of the amendment"); Young v. Aventis Pasteur, Inc., No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003), slip op. at 6 n.3 ("Because these amendments are quite new and the Court has relied in its previous thimerosal rulings on more established authorities, the Court need not interpret these amendments in this Order.").

-12-

The repeal of the HSA amendments is identified as "non-prejudicial." Because the amendments merely clarified existing law, the repeal changes nothing. Significantly, in its repeal, Congress included the following language:

> (a) Repeal. - In accordance with subsection (c), sections 1714-1717 of the [HSA] are repealed.

> (b) Application of the Public health Service Act. - The Public Health Service Act (42 U.S.C. 201 et seq.) shall be applied and administered as if the sections repealed by subsection (a) had never been enacted.

> (c) Rule of construction. - <u>No inference shall be drawn from the enactment of sections 1714 through 1717 of the [HSA], or from this repeal, regarding the law prior to the enactment of sections 1714 through 1717 of the [HSA]. Further, no inference shall be drawn that subsection (a) or (b) affects any change in that prior law, or that Leroy v. Secretary of Health and Human Sevs., Office of Special Master, No. 02-392V (October 11, 2002)[14] was incorrectly decided.</u> (Emphasis added).

H.J. Res. 2, 108th Cong. § 102(a-c). In sum, this Court finds -- as a matter of law -- that injuries related to the preservative thimerosal are encompassed within the definition of "vaccine-related injuries" in the Vaccine Act. This conclusion is based on several independent sources, including: (1) the decisions of state and federal courts before and after Congress enacted the HSA amendments; (2) the plain language of the repeal; (3) the repeal's express language reaffirming the Leroy decision; and (4) the

---

[14] The Vaccine Court in Leroy held that the "thimerosal preservative in vaccines is not an 'adulterant' or 'contaminant' under § 33(5) of the Vaccine Act" and that "petitioners alleging an injury ... from the thimerosal preservative in vaccines are statutorily obligated to file their claims against a manufacturer ... in the Court of Federal Claims, *in the first instance*." Slip op. at 26 (emphasis in original).

-13-

legislative history of the Act. As a result, Plaintiffs must first file their claim with the Vaccine Court. Inasmuch as this Court lacks subject-matter jurisdiction to preside over Plaintiffs' primary claims for vaccine-related injuries against the Vaccine Defendants, it must dismiss such claims for vaccine-related injuries.[15]

## B.    Thimerosal Defendants[16]

The Thimerosal Defendants have adopted and incorporated the Vaccine Defendants' arguments regarding this Court's lack of subject-matter jurisdiction. For reasons stated previously (see discussion at pp. 6 -15), this Court finds that the causes of action arising out of vaccines containing thimerosal are vaccine-related. Further, this Court holds, as the Vaccine Court held in Leroy v. Secretary of the Dept. of Health & Human Servs., No. 02-382V (Fed. Cl. Oct. 11, 2002), that the preservative thimerosal is not an adulterant or contaminant because a "preservative is not an intentionally added ingredient of the vaccine meant to make impure, inferior, or contaminate the vaccine end product." Id. at 7.

---

[15] Plaintiffs also allege that they are exempt from filing their claim in Vaccine Court because they are not qualified to do so, as they are beyond the 36-month statute of limitation time period to file a claim. This Court finds such reasoning illogical. Plaintiffs' argument, if considered valid, would allow all future vaccine-related injured plaintiffs to simply "sit on their hands" and wait for the 36-month statute of limitations to pass in order to bypass the no-fault compensation program in the Vaccine Court and go straight to state or federal court. Such an approach is "counter to the intent of Congress." See McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J. Super. Ct. App. Div. 2001).

[16] In their Complaint, Plaintiffs have alleged that the Thimerosal Defendants manufactured and marketed thimerosal.

-14-

Rather, as a vaccine preservative, thimerosal is a constituent part or component part of the vaccine, thereby further buttressing this Court's decision that thimerosal-related injuries fall within the ambit of vaccine-related injuries. Accordingly, Plaintiffs must first exhaust all administrative remedies in Vaccine Court before filing a civil action in this Court. Because Plaintiffs failed to file their claims in the Vaccine Court "in the first instance", this Court must dismiss the action against the Thimerosal Defendants for lack of subject-matter jurisdiction.

## STATE CAUSES OF ACTION – THIMEROSAL AND VACCINE DEFENDANTS

### A.  Intentional Infliction of Emotional Distress – Count 16

In order to establish a prima facie case for intentional infliction of emotion distress ("IIED"), Plaintiffs must allege and prove facts showing that: 1) the conduct in question was intentional or reckless; 2) the conduct was extreme and outrageous; 3) a causal connection exists between the conduct and the emotional distress; and 4) the emotional distress was severe. Alcalde v. Deaton Specialty Hospital, Inc., 133 F. Supp. 2d 702, 712 (D. Md. 2001). A complaint that fails to allege sufficient facts in support of each element of IIED must be dismissed. Id.

Defendants assert that the Court must dismiss Plaintiffs' claims because Plaintiffs can not establish the intent or extreme and outrageous conduct elements of the tort of IIED. In that context, Defendants maintain that they manufactured and distributed

-15-

FDA-approved vaccines. Defendants further argue that Plaintiffs failed to plead the intent, severe, and extreme and outrageous conduct elements of severe emotional distress with the specificity required by Maryland law. Specifically, Defendants contend that Plaintiffs failed to allege that Defendants either desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from Defendants' conduct, or acted recklessly in deliberate disregard of a high degree of probability that the emotional distress would follow.

Plaintiffs reply that Defendant's failure to include proper warnings with the vaccine about the known adverse side effects of thimerosal, coupled with the fact that the Defendants had actual knowledge at all relevant times that thimerosal is classified as a hazardous material, constitute intentional, extreme and outrageous conduct. Plaintiffs further maintain that by alleging in their Complaint that Defendants intentionally added thimerosal to the vaccine, and widely marketed and distributed the vaccine to the public, they have satisfied the intentional conduct element of the IIED tort.

Further, Defendants assert that Plaintiffs have failed to allege the requisite evidentiary particulars necessary to sustain a claim of IIED. Specifically, Defendants allege that Plaintiffs have not stated any facts describing with specificity the nature and extent of any severe emotional distress the Plaintiffs suffered

-16-

or whether any medical or psychological treatment was needed.

Moreover, Plaintiffs argue that Defendants failure to test the cumulative effects of persons repeated exposure to thimerosal demonstrate a causal connection between the Defendants' conduct and the Plaintiffs' injuries.    Plaintiffs further allege that Defendants knowingly or intentionally exposed Plaintiffs to thimerosal, a mercury poison, which resulted in brain damage.  As a result, Plaintiffs contend that they have satisfied the specificity requirement of pleading the severity element of IIED. Plaintiffs maintain that all that is necessary for them to sustain this cause of action is for them to allege that the parent Plaintiffs must care for their children, the minor Plaintiffs, who now suffer from brain damage due to Defendants' intentional and reckless conduct.

To meet the "intentional or reckless" criterion of the first element, Plaintiffs must allege and show with particularity that Defendants "either *desired* to inflict severe emotional distress, *knew* that such distress was certain or *substantially* certain to result from [their] conduct, or acted recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." Foor v. Juvenile Servs. Admin., 78 Md. App. 151, 175 (1989)(emphasis in original).  This Court finds -- as a matter of law -- that Plaintiffs have failed to demonstrate that Defendants desired to inflict severe emotional distress, or knew that such distress was certain or substantially certain to result

-17-

from their conduct. Further, Plaintiffs have failed to show that Defendants' conduct generated a "high degree of probability" that emotional distress would result.

In their Complaint, Plaintiffs allege that Defendants manufactured, distributed, supplied, promoted, labeled, packaged, licensed, designed, sold and/or profited from the sale of thimerosal-laden products. Plaintiffs also allege that Defendants had actual knowledge of the toxicity of thimerosal. However, Plaintiffs' Complaint is devoid of any allegation that Defendants intended to harm Plaintiffs.

In Walser v. Resthaven Memorial Gardens, Inc., 98 Md. App. 371 (1993), the Court of Special Appeals considered whether, in an IIED cause of action, a Complaint which merely asserted Defendant's conduct but failed to assert any motivation behind that conduct could survive a motion to dismiss. The Court held that although an act may be intentional, the consequence of inflicting emotional distress may not be intentional. In such a case, the infliction of emotional distress may be the result of conduct undertaken for a wholly different purpose. Id. at 395. Simply stated, "An actor is not liable where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Id. (internal citations omitted).

Here, Defendants undisputably intended to add thimerosal into

-18-

the vaccine; without the preservative, the vaccine could not maintain its effectiveness. Further, the Defendants clearly intended to expose minor Plaintiffs to the vaccine. Plaintiffs have not demonstrated that Defendants ever intended to cause severe emotional distress or to cause brain damage. The intent here was to add thimerosal into a vaccine to maintain the effectiveness of the vaccine, a motivation and act clearly "within its legal rights".

As pointed out in <u>Alcade v. Deaton Specialty Hospital Home, Inc.</u>, <u>supra</u>, 133 F. Supp. 2d at 712, a significant issue is whether Defendants desired Plaintiffs to suffer severe emotional distress or acted with the appropriate degree of recklessness. Based on the Complaint and the written submission by the parties, Plaintiffs have failed to satisfy that Defendants' conduct was intentional or reckless. Because Plaintiffs failed to set forth sufficient facts establishing the first element of the tort as identified in <u>Alcade</u>, <u>supra</u>, 133 F. Supp. 2d at 712, this Court need not consider whether the remaining allegations are sufficient to support a cause of action for IIED. For the foregoing reasons, this Court grants Defendants' Motion to Dismiss Count 16 of the Amended Complaint.

B.    Fraud - Counts 11 and 13

1.    Fraud

Defendants assert that Plaintiffs Amended Complaint is grossly deficient in alleging the facts necessary to sustain a cause of

-19-

action for fraud.  Defendants maintain that the Complaint merely contains "broad, general, and conclusory allegations that have been deemed insufficient to sustain a claim of fraud."  Defendants' Initial Memorandum at p. 44.  Specifically, Defendants contend that Plaintiffs failed to plead facts establishing that Defendants made representations or withheld information with the intent to deceive Plaintiffs.

Plaintiffs assert that although there must be sufficient facts and circumstances pled to sustain a claim of fraud, they need not specifically detail the transaction in which the fraud was predicated.

In a cause of action for fraud, the Plaintiffs must set forth the facts constituting fraud with certainty and particularity.  It is well settled that "a general allegation of fraud, however strong in expression, is not sufficient unless there is an allegation of the facts and circumstances relied on as constituting the alleged fraud."  Sims v. Ryland Group, Inc., 37 Md. App. 470, 473 (1977)(internal citations omitted).  Merely because a plaintiff uses the word "fraudulent" does not mean that the facts are sufficiently pled.  Brack v. Evans, 230 Md. 548, 553 (1963). Charges of fraud, without allegations of facts and circumstances which constitute the fraud, does not sustain a sufficient pleading of the fraud.  Id.  There are no strict guidelines for the Court to determine how well facts and circumstances must be pled.  As long as the allegations of fraud are supported by specific facts and circumstances, the Court must deny a motion to dismiss for failure

-20-

to state a claim for the relief granted.

To establish a claim for fraud, Plaintiffs must allege that: 1) Defendants made a false representation to Plaintiffs; 2) Defendants knew of the falsity or made representations with reckless indifference to its truth; 3) Defendants made the misrepresentation for the purpose of defrauding Plaintiffs; 4) Plaintiffs relied on the misrepresentation and had the right to rely on it; and 5) Plaintiffs suffered compensable injury resulting from the misrepresentation. Environmental Trust v. Graynor, 370 Md. 89, 97 (2002); McGraw v. Loyola Ford, Inc., 124 Md. App. 560, 584-85 (1999). Plaintiffs' Amended Complaint is very detailed; indeed its length is forty pages. In their Amended Complaint, Plaintiffs allege that Defendants made a false representation about the vaccines because they failed to:

> properly label, brand and warn about the toxic mercury contained in the [vaccine]. They specifically failed to identify the quantity of mercury in their products. Their products were in violation of the Maryland Food, Drug and Cosmetic Act, Md. Code Ann., Health-General II § 21-218 (2000).

Plaintiffs' Amended Complaint, ¶ 42.

Plaintiffs also allege that Defendants knowingly concealed material facts that Defendants had a duty to disclose, such as the presence of toxic mercury in the vaccines, the risks of mercury exposure, and the amount of mercury in each dose. Plaintiffs' Amended Complaint, ¶ 124. Plaintiffs allege that Defendants concealed such information with the intent to deceive Plaintiffs and that Plaintiffs relied and had a right to rely upon the

assumption that the concealed and undisclosed facts did not exist or were not harmful.  Plaintiffs' Amended Complaint, ¶¶ 125-128. Finally, Plaintiffs allege that the acts or omissions of Defendants were a proximate cause of Plaintiffs' injuries and damages. Plaintiffs' Amended Complaint, ¶ 129.

This Court finds that Plaintiffs' allegations in their Amended Complaint are sufficient to support a claim of fraud.  Plaintiffs specifically allege that Defendants failed to properly label, brand or warn about the toxicity of thimerosal in the vaccines. Plaintiffs allege facts and circumstances which -- if proven -- may constitute common law fraud.  Accordingly, this Court denies Defendants' motion to dismiss Count 11 for failure to state a claim upon which relief can be granted.

> 2.  **Fraud on the Marketplace (Fraudulent Misrepresentation/Fraudulent Concealment)**

Count 13 of Plaintiffs' Complaint alleges fraudulent misrepresentation under Section 310 of the Restatement (Second) of Torts, otherwise known as fraud on the marketplace.  Section 310 provides:

> An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or third person in reliance upon the truth of the representation, if the actor
>
> (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and
>
> (b) knows
>
>> (i) that the statement is false, or

-22-

(ii) that he has not the knowledge which he professes.

The Restatement provides examples of third party liability to illustrate how Section 310 should be interpreted.  One such example is as follows:

> A seller of an automobile who paints over a defective wheel or axle and so conceals its dangerously defective character is liable not only to his immediate buyer who is harmed by the collapse of the wheel or axle, but also to any person to whom the immediate buyer by sale, lease, or license transfers the use of the car, and to other travelers who sustain bodily harm or whose cars are damaged when the defective car gets out of control through the collapse of the wheel or axle.

Simply stated, a plaintiff claiming fraud on the marketplace is relieved of the burden of demonstrating their personal reliance on any alleged misrepresentations.  The theory of fraud on the marketplace presumes reliance, while common law fraud requires proof of actual reliance.  In re Medimmune, Inc. Sec. Litig., 873 F. Supp. 953, 968 (D. Md. 1995).  Maryland courts have consistently held that "under Maryland law, there is no fraudulent misrepresentation cause of action for statements made to third parties."  Estate of White v. R.J. Reynolds Tobacco Co., 109 F. Supp. 2d 424, 430 (D. Md. 2000)(citing Parlette v. Parlette, 88 Md. App. 628, 635 (1991)); see also Strange v. Sofamor Danek Group, Inc., 1999 U.S. Dist. 19717, at *2 (D. Md. 1999); In re Medimmune, supra, 873 F. Supp. at 968; Cofield v. Lead Indus. Assoc., No. MJG-99-3277 (D. Md. Aug. 17, 2000).

This Court finds that Plaintiffs' claim for fraudulent misrepresentation of third parties must fail as a matter of law because such a cause of action is inconsistent with venerable Maryland case law regarding fraud.[17]  A claim for fraudulent misrepresentation of third parties does not require the injured party to have relied upon the alleged misrepresentation.  Maryland law requires the injured person to <u>actually rely</u> on the alleged misrepresentation.  Accordingly, Defendants' motion to dismiss Count 13 is granted.[18]

C.    Maryland Consumer Protection Act - Count 14

The Consumer Protection Act ("CPA") prohibits a person from engaging in any unfair or deceptive trade practice in connection with certain enumerated activities.  MD. CODE ANN., COMM. LAW § 13-101 <u>et seq.</u> (2000 Repl. Vol).  Among the activities subject to the CPA are the "sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services.    MD. CODE ANN., COMM. LAW § 13-303.  The General Assembly enacted the CPA and set minimum standards for the protection of consumers in response to

---

[17] <u>See supra</u> Part B, section 1 for common law fraud under Maryland law.

[18] Further, this Court finds that no confidential or fiduciary relationship existed between the parties which would have incurred a duty on Defendants to disclose to Plaintiffs any potential risks of its product. Plaintiffs argue that such a relationship exists because Defendants, not the physicians and other practitioners, had superior knowledge of the alleged defect in its product.  However, in their Memorandum, Plaintiffs note that FDA panels have conducted studies that have proven the toxic effect of thimerosal. Plaintiffs' Opposition Motion at pp. 57-58.  These studies serve as notice to physicians and other practitioners that indeed, thimerosal may have harmful effects.

-24-

concerns of the lack of "public confidence in merchants offering
goods, services, realty, and credit." MD. CODE ANN., COMM. LAW § 13-
102(b).

In their Complaint, Plaintiffs assert that the thimerosal-
laden vaccine is a consumer good. A consumer good is defined as
goods sold "which are primarily for personal, household, family, or
agricultural purposes." MD. CODE ANN., COMM. LAW § 13-101(d).
Plaintiffs support their argument with reference to the case of T-
Up Inc. v. Consumer Protection Division, 145 Md. App. 27 (2002).
In the T-Up case, defendants were alleged to have marketed
deceptively to the general public an aloe vera extract that would
cure diseases from cancer to AIDS.

Contrary to Plaintiffs' argument, the T-Up, Inc. case is
wholly distinguishable from the issues present in this case. The
defendants in T-Up used the following tactics to deceive potential
victims: 1)Defendants falsely claimed they had Ph.D. degrees and
even carried counterfeit diplomas from Germany; 2) Defendants
mailed audio tapes entitled "There is Hope" to thousands of
potential victims by using a purchase list; 3) the audio tape was
a staged lecture with the Defendant acting as the speaker who held
a question-answer session at the end of the tape; 4) Defendants
gave false hope to the recipients of the audio tapes by including
at the end of the recording "You and you alone can avoid becoming
another statistic;" and 5) Defendants operated their corporation by

-25-

having telephone salespersons answer questions about the aloe vera extract using a desk reference manual. Id., at 39-41. In the present case, Plaintiffs have not alleged that Defendants engaged in any such tactics for the purpose of profiting from the vaccine. Further, in T-Up, the defendants were directly dealing with the consumers and victims. Here, Defendants were never in contact with Plaintiffs, nor did they directly market its products to the Plaintiffs. Defendants are bona fide manufacturers and distributors producing and providing an FDA-approved vaccine to knowledgeable physicians who professionally administer the vaccine. This Court finds that such a claim is not actionable under the Consumer Protection Act.

In addition, section 13-104 of the CPA exempt certain professional services from the Act, including "medical or dental practitioners." MD. CODE ANN., COMM. LAW § 13-104. Vaccines are part of the medical services that physicians and other medical personnel recommend and administer to patients. Under the CPA, the physicians and other medical personnel who actually select, recommend, and administer the vaccine are exempt from liability should any injuries result. Accordingly, the manufacturer or distributor of the vaccine, an entity even more attenuated from the injured person than the medical practitioner who selected, recommended, and administered the vaccine, must also be exempt from liability under the CPA.

-26-

For the above-mentioned reasons, even if vaccines were consumer goods as defined by the CPA, any manufacturer or distributer of the vaccines would be exempt from liability under section 13-104. Accordingly, this Court grants Defendants' motion to dismiss Count 14 of Plaintiffs' Complaint.

### ORTHO-CLINICAL DIAGNOSTICS, INC. and JOHNSON & JOHNSON

During the relevant time periods, Ortho-Clinical Diagnostics, Inc. ("OCD") manufactured and distributed RhoGAM, a hemoglobin product that contains mercury-based Thimerosal. RhoGAM was injected into Rh negative mothers immediately before they gave birth, exposing their fetuses in utero to the thimerosal. RhoGAM is not considered a vaccine under the Vaccine Act.

Plaintiffs argue that they need not file any claims against OCD and Johnson & Johnson (hereinafter "J&J") in the Vaccine Court because OCD and J&J are not vaccine manufacturers within the Vaccine Act and its products are not vaccines. Therefore, according to Plaintiffs, the injuries caused by OCD's and J&J's products are not vaccine-related injures. Defendants argue that the fact that RhoGAM is not listed as a vaccine under the Vaccine Act does not relieve Plaintiffs from first exhausting all remedies against all Defendants in the Vaccine Court. Defendants maintain that all of Plaintiffs' claims are for vaccine-related injuries and expenses that must first be adjudicated in the Vaccine Court.

Plaintiffs contend that their injuries resulted from

-27-

accumulated exposure of RhoGAM and thimerosal. This Court has already established that any thimerosal-related injury must first be addressed in the Vaccine Court. Plaintiffs' Complaint is devoid of any allegation that maternal exposure to RhoGAM caused any minor plaintiff's injury. On the contrary, of the three minor Plaintiffs exposed to RhoGAM, all three were born "perfectly normal and healthy." Plaintiffs' Complaint at ¶¶ 36, 72). Consequently, any injury could only occur from an accumulation of exposure to RhoGAM and thimerosal, thereby making injuries from exposure to RhoGAM vaccine-related injuries. All vaccine-related injuries must first be adjudicated in Vaccine Court before being tried in state or federal court.[19] Further, should this Court entertain Plaintiffs' cause of action against OCD and J&J for their vaccine-related injuries, the Vaccine Act would prohibit Plaintiffs from seeking compensation through the Vaccine Court.[20]

This Court has already held that Plaintiffs must first exhaust their administrative remedies in Vaccine Court before filing any claims in state court. Recently, in Liu v. Aventis Pasteur, Inc., 219 F. Supp. 2d 762 (W.D. Texas 2002), a Texas court dismissed the plaintiff's thimerosal-related injury claims against non-vaccine manufacturers, in addition to vaccine manufacturers, until

---

[19] See supra, pp. 6- 15.

[20] The Vaccine Act states: "If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such a person may not file a petition under subsection (b) for such injury or death." 42 U.S.C. § 300aa-11(a)(5)(B).

Plaintiff first exhausted all remedies in the Vaccine Court. The Texas court stated that entertaining the non-vaccine related injuries "would be wholly inconsistent with Congress' goal of minimizing litigation costs..." Id. at 767-68. Here, Plaintiffs' claim against OCD and J&J is clearly related to their claims against the Thimerosal Defendants and Vaccine Defendants. Therefore, Plaintiffs must first exhaust their remedies against OCD and J&J in the Vaccine Court. Accordingly, this Court grants Defendant OCD's and J&J's motion to dismiss.

<u>POWER PLANT DEFENDANTS</u>

**A.    Constellation Energy Group**

Plaintiffs maintain that Constellation Energy Group ("CEG") owns, operates, maintains and markets energy created in part by fossil-fuel/coal-burning power plants.  To the contrary, CEG is a holding company which "holds" the stock of its various subsidies, one of which is Baltimore Gas and Electric ("BGE").  As a holding company for various subsidies, including BGE, CEG's primary function is to hold their stock.

CEG can only be an appropriate party if Plaintiff convinces this Court that they should be permitted to pierce the corporate veil.  A party may pierce the corporate veil when the corporation or company has committed fraud.  Plaintiffs fail to set forth any allegations in its Complaint that would necessitate piercing the corporate veil.  Further, contrary to Plaintiffs' pursuit of this

-29-

litigation against CEG, this Court cannot - - and will not  - - allow Plaintiffs to "discover" whether they have a viable claim against CEG after filing suit CEG.  Plaintiffs must have a good faith basis for filing suit in the first instance.  Southern Leasing Partners, Ltd. v. McMcullan, 801 F. 2d 783, 788 (5th Cir. 1986) ("Appellants sued Phillips without knowing how he fit into the picture, apparently hoping that later discovery would uncover something").  Accordingly, this Court finds that CEG is an inappropriate party to this litigation and grants CEG's motion to dismiss for failure to state a claim against CEG.

B.    BGE

1. Public Nuisance - Count 19

Public nuisance is defined as "an unreasonable interference with a right common to the general public."  Tadjer v. Montgomery County, 300 Md. 539, 552 (1984), citing Restatement (Second) of Torts § 821B.  Examples of an unreasonable interference with a public right include conduct that significantly interferes with the public health, public safety, public peace, or public convenience. Id.  The individual must suffer "some special or particular damage, different not merely in degree, but different in kind from that experienced in common with other citizens."  Hoffman v. United Iron & Metal Co., 108 Md. App. 117, 135 (1996), citing, Baltimore & O.R. Co. v. Gilmore, 125 Md. 610, 617 (1915). Further, conduct that is prohibited by statute, ordinance, or administrative regulation also

-30-

support a finding of public nuisance.   <u>Id.</u>

Defendants are authorized to manufacture, sell, and furnish electric power in any municipal corporation or county of the State in accordance with directives and licensing proceedings implemented by the Public Service Commission. Defendants maintain that because it operates its power plants in accordance with authorizations from several sources including the Public Service Commission, the Maryland Department of the Environment, and the United States Environmental Agency, Plaintiffs' claim for public nuisance must fail as a matter of law. Defendants assert that the cases Plaintiffs have supplied to support their public nuisance claim are distinguishable in that all of the cited cases involve claims seeking recovery for private nuisance rather than public nuisance. Defendants further argue Plaintiffs' suffered harm different in degree, but not in kind, than the general public. This allegation, Defendants contend, is insufficient, as a matter of law, for a claim against Defendants for public nuisance.

Plaintiffs contend that "[v]irtually any conduct may amount to a nuisance so long as it would be offensive or inconvenient to the normal person." Plaintiffs' Response to Power Plant Defendants' Motion to Dismiss, p. 20. Plaintiffs maintain that neither the legislature nor the Maryland Code would authorize Defendants to poison the public with mercury and then cloak them with immunity for causing or contributing to mercury poisoning. In their oral

-31-

argument, Plaintiffs contended that absent a clause exempting
Defendants from liability where they complied with the statute but
harm nevertheless results, Defendants remain liable for injuries
incurred by the manufacturing of its products. Plaintiffs further
allege that their claim of "debilitating brain damage" satisfies
the public nuisance requirement that the Plaintiffs' injury is
different in kind <u>and</u> degree from that experienced by the general
public.

This Court finds, for the reasons that follow, that
Plaintiffs' claim for public nuisance fails, as a matter of law.
It is uncontradicted that Maryland has authorized Defendants to
produce electricity by power plants that emit mercury.   The
Plaintiffs do not contend that Defendants have operated its power
plants in contravention of such authorization and in derogation
with directives and licensing proceedings implemented by the Public
Service Commission. Pursuant to the Restatement (Second) of Torts
§ 821(B), "[a]lthough it would be a nuisance at common law, conduct
that is fully authorized by statute, ordinance or administrative
regulation does not subject the actor to tort liability."
Restatement (Second) of Torts § 821(B) at Note F (1979). Moreover,
"if there has been established a comprehensive set of legislative
acts or administrative regulations governing the details of a
particular kind of conduct, the courts are slow to declare an
activity to be a public nuisance if it complies with the
regulations." <u>Id.</u>   Further, although this Court is cognizant of

-32-

§ 821(B) of the Restatement (Second), it does not root its decision solely on the Restatement.[21]

This Court is persuaded by Defendants' argument that Plaintiffs suffered injuries different in degree, but not in kind. In a public nuisance action, a plaintiff must allege that he or she has suffered a harm that is different in kind from that shared by the general public; to allege that any harm is different in degree is insufficient to support a public nuisance cause of action. See, e.g., Venuto v. Owens-Corning Fiberglas Corp., 22 Cal. App. 3d 116, 125 (1971)(Court considered an allegation that the public was suffering from a general irritation to the respiratory tract but plaintiffs were suffering a more severe irritation solely indicated that plaintiffs and the public were suffering from the same kind of harm but plaintiffs suffered to a greater degree). In Venuto, the California Appellate Court found that such an allegation did not support an action for public nuisance. See also, Page v. Niagra Chem. Div. of Food Mach. & Chem. Corp. 68 So.2d 382, 384 (Fla. 1953)(holding that plaintiffs failed to allege that their injuries were different in kind, not merely in degree, from the injury to the public and therefore such allegations were insufficient to sustain a public nuisance claim).

Here, Plaintiffs allege that while BGE's emissions affected all people by exposing them to mercury emissions, Plaintiffs'

---

[21] The Court notes that as of the date this Opinion is issued, Maryland has not enacted any specific regulations regarding the emission of mercury.

-33-

children suffered greater harm than the general public because of their "heightened vulnerability." Complaint at ¶ 63. According to case law, if an individual who has an ailment, allergies for example, and files a public nuisance cause of action against a manufacturing plant alleging that pollution emitted aggravates their allergies and injures the health of the public, then the Court must dismiss the action for failing allege a harm different in kind and not degree.[22] This hypothetical is analogous to the case at bar. The same mercury omissions that Plaintiffs allege caused injury to them, allegedly caused injury to the general public in that area. Merely because Plaintiffs might be affected to a greater degree would not, under the case law, support a claim for public nuisance.

Accordingly, for all the reasons set forth, this Court grants Defendants motion to dismiss Count 19 of Plaintiffs' Complaint.[23]

2.   Negligence - Count 20

Defendants contend that Plaintiffs' negligence claim should be dismissed as a matter of law because it owed no duty to Plaintiffs. Specifically, Defendants argue that the United States Environmental

---

[22] On the other hand, if an ordinary person with ordinary sensibilities brings a public nuisance claim against the same manufacturing plant and alleges that pollution emitted has injured his or her respiratory tract and the health of the public, then a cause of action for public nuisance exists.

[23] In their response to Defendants' motion to dismiss, Plaintiffs cite and discuss several cases to support their public nuisance claim. However, the cases cited by the Plaintiffs involve causes of action for private nuisance, not public nuisance. Therefore, this authority is distinguishable from Plaintiffs' public nuisance claim.

Protection Agency studies the emissions of metals and other substances from power plants, regulating the power plants to the extent deemed appropriate. Further, the Maryland Department of the Environment, the Maryland Public Service Commission, and the federal Clean Air Act coexist for many purposes, including to "control the type and level of emissions that Power Plant Defendants may emit from their power generating facilities." Defendants' Motion to Dismiss at p. 14. Defendants maintain that it operated its coal-fired power plant in compliance with all regulations and that it had no duty to self-impose further obligations to avoid a suit for negligence. Further, by complying with the statute and regulations, Defendant maintain that they have satisfied any duty owed to Plaintiffs.

Plaintiffs argue that the duty Defendants owe to them arises from the responsibility each person or entity has to exercise due care to avoid unreasonable risks of harm to others. Plaintiffs' Response at 17. Plaintiffs further argue that an unreasonable risk, such that would give rise to a duty, can be determined by whether a reasonable person would or should know the harm is foreseeable. Id. at 17-18. Plaintiffs maintain the Defendants knew it was emitting dangerous levels of mercury, that Defendants knew of the potential harmful effects of its conduct, and still, Defendants failed to cease such emission or reduce it to safe levels.

-35-

To sustain a cause of action for negligence, Plaintiffs must show that: 1) Defendants owed a duty to Plaintiffs; 2) Defendants breached that duty; 3) Plaintiffs suffered injury; and 4) Plaintiffs' injury was proximately caused by Defendants' breach of its duty. Valentine v. On Target, 353 Md. 544, 549 (1999). Thus, there can be no negligence when no duty is due. In negligence actions, 'duty' is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Grimes v. Kennedy Krieger Institute, Inc., 366 Md. 29, 86 (2001), citing Prosser and Keeton [on Torts] §§ 53 [(W. Keeton 5th ed. 1984)]. In order to determine whether a duty exists, a Court must consider several factors; foreseeability being arguably the most important factor. Grimes, supra, 366 Md. at 82. Whether harm is foreseeable is generally determined by asking if a reasonable person knew or should have known that the alleged conduct would constitute an unreasonable risk of harm to another. B.N. v. K.K., 312 Md. 135, 141 (1988).

The issue of foreseeability is typically a question of fact for the trier of fact to determine. Yonce v. SmithKline Beecham Clinical Lab., 111 Md. App. 124, 141 (1996). However, merely because a result could be or should be foreseeable does not necessitate a finding that a duty exists. Grimes, supra, 366 Md. at 86. A duty is created when policy considerations lead the law to say that a particular plaintiff is entitled to protection. Ashburn v. Anne Arundel County, 306 Md. 617, 627-28 (1986). Such

-36-

policy considerations include "convenience of administration,
capacity of the parties to bear the loss, a policy of preventing
future injuries, [and] the moral blame attached to the wrongdoer."
Id. (internal citations omitted). When determining whether a duty
exists, the Court must also look to the seriousness of the
potential harm along with the probability that harm will result.
Faya v. Almaraz, 329 Md. 435, 449 (1993)(holding that a surgeon
with AIDS had a duty to inform his patients he was infected because
it was foreseeable that the surgeon would transmit the virus to his
patients during surgery). Additionally, the Court must also
consider the relationship that exists between the parties. Bobo v.
State, 346 Md. 706, 715 (1997). Such a relationship can arise in
a number of ways: "(1) by statute or rule; (2) by contractual or
other private relationship; or (3) indirectly or impliedly by
virtue of the relationship between the tortfeasor and the third
party." Id. (internal citations omitted).

There is no relationship between Plaintiffs and Defendants
that arises from statute or rule or by a contractual or other
private relationship. Consequently, the only relationship that
could exist between Plaintiffs and Defendants is one of an indirect
or implied nature. Certain parties have an implied or indirect
relationship: a lifeguard and swimmers on the lifeguard's shift,
parents and children, researchers and human subjects, doctors and
patients, common carriers and passengers, employers and employees,
owners of land and licensees or invitees, innkeepers and their

-37-

guests, and custodians and their wards.  Restatement (Second) of
Torts, §§ 314A-314B (1965).  There is no such relationship between
a coal-fired power plant and the general public, including
Plaintiffs.[24]  Absent some special relationship, Defendants do not
have a duty to act affirmatively for the benefit of Plaintiffs.
See Diane E. Hoffmann & Karen H. Rothenberg, Whose Duty is it
Anyway?: The Kennedy Krieger Opinion and its Implications for
Public Health Research, 6 J. Health Care L. & Pol'y 109, 112
(2002), quoting Dan B. Dobbs, The Law of Torts, § 227, at 579
(2000).

Neurological injury is most certainly a serious harm; however,
this Court finds that it is not probable that such an injury would
result from Defendants' ordinary operation of coal-fired power
plants.  The facts in Faya v. Almaraz, supra, provide an example of
the "seriousness of harm/high probability of resulting harm"
element of a duty.  In Faya, a surgeon infected with the AIDS virus
operated on numerous patients but failed to inform his patients
that he had the virus.  Faya, supra.  Medical literature indicates
the seriousness of potential harm, should one contract AIDS.
Further, it is foreseeable that a surgeon might transmit the AIDS
virus to his patients during invasive surgery.  The seriousness of
the potential harm, coupled with its probability, creates a duty to
prevent it.

---

[24] Moreover, Plaintiffs have never alleged that a special relationship
exists between Defendant Power Plant and Plaintiffs or the general public.

-38-

Here, there is no indication that the emission of mercury caused or was a substantial factor in causing the minor Plaintiffs' neurological disorders. If, in fact, emission of mercury was a cause or a substantial factor in causing the disorders, it would indeed be considered a severe harm. Further, Plaintiffs have failed to allege that there is a high probability that the emission of mercury caused the neurological disorders in the minor Plaintiffs. Accordingly, Plaintiffs have not satisfied the "seriousness of harm/high probability of resulting harm" element of determining whether a duty exists on behalf of Defendants.

Maryland Courts must look to see whether the legislature has proffered various policy considerations that would dictate whether a duty exists. Grimes, supra, 366 Md. at 100. Absent any voice from the legislature, courts must look to case law. Id. Here the legislature has spoken by assigning the United States Environmental Protection Agency the responsibility of regulating and studying mercury emissions from power plants. 42 U.S.C. § 7412.[25] When determining whether a duty exists, policy considerations are taken into account in order to compensate injured parties and deter the alleged wrongdoer from undesirable or risky behavior. Hoffman & Rothenberg, supra, at 113.

These objectives arise from broader societal goals including

---

[25] Section 7412(n) provides for various studies and regulations pertaining to mercury emissions from "electric utility steam generating units, municipal waste combustion units, and other sources, including area sources." 42 U.S.C. § 7412(n).

-39-

"moral responsibility and corrective justice between parties and societal welfare." Hoffman & Rothenberg, at 113. The corrective justice goal stems from the desire to instill "personal and institutional responsibility [within persons and entities] for their harmful actions and to correct wrongs through some form of redress or compensation." Id. at 114. Because the corrective justice goal can sometimes conflict with the goal of societal welfare, courts use a cost-benefit analysis to "take into account the social utility of a particular outcome." Questions arise including whether the result is so beneficial to society as to warrant the alleged tortfeasor to continue its conduct? Id. Further, are the plaintiff's interests entitled to legal protection against the conduct of the defendant? The production of power is patently essential to our everyday lives. The legislature has taken steps to ensure Defendants operation of its power plants complies with regulations. There is no claim that Defendants have not operated their power plants in the manner authorized by the various agencies that supervise them.

Inasmuch as Plaintiffs have failed to successfully allege factors this Court must consider when determining whether a duty exists, this Court finds that the issue of foreseeability is instructive in determining whether a duty exists. Was it foreseeable that Defendants' conduct, which resulted in mercury emissions, would create an unreasonable risk of harm to others?

-40-

The concept of duty and the idea of foreseeability create a
conundrum: to be charged with a duty, one must look to the
foreseeable harm, yet foreseeability is an issue for the trier of
fact and duty is a question of law for the Court to decide.
Nonetheless, when determining whether a duty exists, Courts have
consistently applied the "foreseeability of harm" test. Rosenblatt
v. Exxon Co., 335 Md. 58, 77 (1994); Henley v. Prince George's
County, 305 Md. 320, 333 (1986). This test is based on the concept
that no duty exists for unreasonably remote consequences. The key
word here is "unreasonable."

    In evaluating whether harm is foreseeable, this Court must
again look to the relationship between the parties. There exists
no relationship or privity between Plaintiffs and Defendants which
would have made it reasonably foreseeable that Defendants' acts or
failure to act would result in harm to Plaintiffs.[26]    The
relationship between the parties here is too attenuated to charge
Defendants with foreseeability and duty. To do so would hold
Defendants liable to the entire general public. Plaintiffs provide
no indication that the majority of the general public suffer from
the wholly unfortunate disorders that afflict minor Plaintiffs. As
such, minor Plaintiffs' injuries are unreasonably remote

---

    [26] The Court of Appeals in Rosenblatt, supra, deferred to the
foreseeability test and lack of relationship between the parties when it found
that Exxon, a former occupant of land, owed no duty to Rosenblatt, a
subsequent occupant of same land, when it was found that the land was
contaminated.

consequences from any alleged harm that Defendants may have caused. Defendants cannot be held liable for unreasonably remote consequences.

For the foregoing reasons this Court finds that no duty exists upon Defendants for unreasonably remote consequences. Absent any finding of a duty due to Plaintiffs, Defendants could not have breached a duty to Plaintiffs. Therefore, no cause of action for negligence exists. Accordingly, Defendants' motion to dismiss Count 20 is granted.[37]

### 3.  Punitive Damages - Count 21

Inasmuch as this Court has granted Defendants' motion to dismiss the public nuisance claim, the punitive damages claim of Count 21 is dismissed as it relates to Plaintiffs' claim for public nuisance.

Plaintiffs' claim for punitive damages for Defendants' alleged negligence is also dismissed. This Court has granted Defendants' motion to dismiss Count 20, which in effect eliminates any claim for punitive damages based upon negligence. As a result, Count 21 is dismissed in its entirety.

### 4.  Battery - Count 22

On December 30, 2002, Plaintiffs amended their Complaint, and

---

[37] This Court is cognizant of Judge Andre M. Davis' Remand Order wherein Judge Davis outlined the possibility of a viable negligence claim under Maryland Law. However, after studying the plethora of filings and being fully briefed oral argument, this Court finds that Plaintiffs have failed to successfully allege a claim for negligence against Baltimore Gas & Electric Company.

thereafter, added four more Plaintiffs for a total of 53 Plaintiffs. The Plaintiffs allege that Defendant Power Plant committed a battery through its emission of mercury during the production of energy.

A battery is the intentional touching of a person without that person's consent. McQuiggan v. Boy Scouts of America, 73 Md. App. 705, 714 (1988). Touching includes the intentional putting into motion of anything which touches another person. Id. To establish a claim for battery, Plaintiffs must show that the unwanted touching is harmful or offensive. Ghassemieh v. Schafer, 52 Md. App. 31, 42-43 (1982).

Defendants argue that Plaintiffs cannot infer the requisite general intent. Defendants further argue that there was no offensive touching. Defendants liken Plaintiffs' argument to the average person emitting pollution while driving his car. It would be unreasonable, according to Defendants, to hold each driver liable for battery merely because the pollution emitted from the car 'touches' the general public.

Plaintiffs argue that Defendants need not intend to have harmed them, only that Defendants violated the legally protected interest of another. Plaintiffs further argue that Defendants intended to produce energy, thereby intending to emit mercury, resulting in harm that did not involve the Plaintiffs' consent.

This Court finds that no cause of action for battery exists

-43-

for the activities alleged in the Amended Complaint. Plaintiffs are correct in arguing that it is immaterial whether Defendants intended to do harm.[21] However, Plaintiffs have not inferred the requisite general intent required to sustain a cause of action for battery against the Defendants. Specifically, Defendants must have intended to unlawfully invade Plaintiffs' physical well-being through the emission of mercury from its power plants. See, e.g., Nelson v. Carroll, 355 Md. 593, 602 (1999). This Court finds that Defendants, through its ordinary conduct of producing energy, did not commit a battery on the minor Plaintiffs. As a result, Defendants are not liable to Plaintiffs for battery. See, e.g., Nelson, supra 355 Md. at 603 (recognizing that a defendant would be liable to a plaintiff for harmful contact if the contact resulted from a volitional act where the defendant intended to invade the plaintiff's legally protected interests). Accordingly, this Court grants Defendants' motion to dismiss Count 22 of the Amended Complaint.

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

On April 21, 2003, the morning of the first day of oral argument, Plaintiffs introduced a supplemental memorandum alleging the unconstitutionality of the Vaccine Act. This Court refused to accept or consider the supplemental memorandum at the hearing, as it was introduced clearly at the eleventh hour. At the hearing on

---

[21] For example, horseplay or a prank can be a battery. Ghassemieh v. Schafer, 52 Md. App. 31 (1982).

-44-

April 21, 2003, this Court stated that it will not entertain Plaintiffs' supplemental memorandum as it plainly does not comply with Judge Smith's Order which set forth a briefing schedule with deadlines for Defendants' Motion to Dismiss, Plaintiffs' Opposition, and Defendants' Reply.    Plaintiffs had ample opportunity in their thorough Opposition to expand on any unconstitutionality argument. Additionally, Plaintiffs' attempt to introduce the supplemental memorandum does not comply with the Maryland Rules.

Further, the unconstitutionality issues Plaintiffs raise in the supplemental memorandum are not based on new precedent that was unavailable when Plaintiffs filed their Opposition. Neither case law nor statutory law has changed since the filing of Plaintiffs' Complaint or Opposition that would precipitate raising these issues.

In light of this Court's decision, it is unnecessary to reach the Plaintiffs' argument that the Vaccine Act is unconstitutional. Accordingly, this Court grants Defendants motion to strike Plaintiffs' supplemental memorandum.

## STAY OF REMAINING CLAIMS

The state law claim that survives this Court's ruling on the preliminary motions is Count 11, Plaintiffs' claim of fraud. For the reasons set forth previously, this Court finds that Count 11 is viable under applicable state law.

-45-

Clearly, it is within this Court's discretion whether to grant or deny a stay. Bancroft Info. Group v. Comptroller of the Treas., 91 Md. App. 100, 107 (1992), quoting Dodson v. Temple Hill Baptist Church, Inc., 254 Md. 541, 546 (1969). A court may "stay proceedings before it pending the determination of another proceeding that may affect the issues raised," especially if "many of the factual and legal issues in [one] action are identical to or are interrelated with and dependent on factual and legal issues in the [other] action." Vaughn v. Vaughn, 146 Md. App. 264, 279-81 (2002).

Courts in other thimerosal actions have consistently stayed remaining claims. In Liu v. Aventis Pasteur, Inc., 219 F. Supp. 2d 762 (W.D. Tex. 2002), the court noted that "[c]ourts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication." Id. at 768 (citations omitted). The court stayed all proceedings in the parents' individual causes of action against all defendants until their child's claims were heard in the Vaccine Court. Id.; see also, Carabine v. Aventis Pasteur, Inc., No. A-02-CA-501-SS (W.D. Tex. Oct. 8, 2002); Russak v. Aventis Pasteur, Inc., No. A-02-CA-480-SS (S.D. Tex. Sept. 7, 2002).

Based on this authority, this Court will stay all remaining non-vaccine related claims against Defendants pending resolution of minor Plaintiffs' primary claims in the Vaccine Court. As a

-46-

result, Count 11 will be stayed.  To allow Plaintiffs to conduct discovery on some Defendants during the pendency of Plaintiffs' other claims in the Vaccine Court would be "wholly inconsistent with Congress's goal of minimizing litigation costs." Liu, supra, 219 F. Supp. 2d at 767-68.  Accordingly, this Court will stay Count 11 and not permit discovery until Plaintiffs have satisfied all mandatory requirements of the Vaccine Act.

### Conclusion

Accordingly, all claims brought by or on behalf of the minor plaintiffs, and all claims brought by the parents of the minor plaintiffs for costs and expenses arising from the minors' alleged vaccine-related injuries are dismissed without prejudice for lack of subject matter jurisdiction pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300 aa - 10 et seq.  Further, Defendants' Motion to Dismiss Count 11 is denied.  Moreover, for the reasons stated in this Opinion, this Court grants Defendants' Motion to Dismiss Counts 13, 14, 19, 20, 21 and 22 with prejudice. The remaining non-vaccine related claim against Defendants will be stayed pending a resolution of the minor Plaintiffs' primary claims in the Vaccine Court.

The Honorable Stuart R. Berger
The Judge's Signature Appears
on the Original Document Only

cc:  All Counsel of Record

-47-

*H*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 02-CV-11664-RGS

ALLISON DAIGLE, et al.

v.

AVENTIS PASTEUR, INC. f/k/a
CONNAUGHT LABORATORIES, INC., et al.

MEMORANDUM AND ORDER ON
MOTION TO REMAND AND MOTIONS TO DISMISS

June 13, 2003

STEARNS, D.J.

On May 31, 2002, plaintiff parents filed this Complaint in the Massachusetts Superior Court alleging that their minor children had been injured by exposure to vaccines containing the preservative thimerosal. The defendants consist of most of the vaccine manufacturers in the United States, the New England Medical Center, and two doctors who administered the vaccines. The Complaint asserts claims for breach of warranty, failure to warn, fraud, product defect, violations of Chapter 93A, medical malpractice, "medical monitoring," and loss of consortium. On August 20, 2002, defendants removed the case to the federal district court. On August 27, 2002, defendants Aventis Pasteur, Inc., Wyeth Pharmaceuticals, Inc., Merck & Co., Inc., SmithKline Beecham Corporation, Ayerst Pharmaceuticals, Inc., Baxter International, Inc., and Abbott Laboratories, Inc., (the vaccine manufacturers) moved to dismiss the Complaint on grounds that plaintiffs had failed to comply with the requirement of the National Vaccination Program (the Vaccination Act), 42 U.S.C. §§ 300aa-1 et seq.

that vaccine-related injury claims be filed in the first instance in the Court of Federal Claims, the court designated to oversee the National Vaccine Injury Compensation Program (NVICP).[1]  On September 11, 2002, the plaintiffs moved to remand the case for want of federal jurisdiction.[2]  On December 30, 2002, the New England Medical Center joined the vaccine manufacturers' argument that plaintiffs had failed to exhaust their remedies under the NVICP.  On January 8, 2003, the two defendant doctors moved for dismissal on the same grounds.

The court will first address (as the plaintiffs urge) the motion to remand.  Plaintiffs argue that because their claims are framed exclusively on state law, no substantial federal question is implicated by the Complaint.  Moreover, plaintiffs maintain that diversity jurisdiction is lacking because the two defendant doctors are (like plaintiffs) citizens of Massachusetts.  While conceding the lack of facial diversity, defendants maintain that the doctors were named as defendants solely for the purpose of defeating diversity, and should therefore be considered as fraudulently joined.[3]

> When speaking of jurisdiction, "fraudulent" is a term of art. 14A Charles A. Wright, et al., Federal Practice and Procedure § 3723 at 354 (2d ed. 1985). Although false allegations of jurisdictional fact may make joinder fraudulent, B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir.1981), in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives. Chicago, R.I. & P.R. Co. v. Whiteaker, 239 U.S. 421, 424, 36 S.Ct. 152, 153, 60 L.Ed. 360

---

[1] On October 28, 2002, Eli Lilly & Co., filed a separate motion to dismiss on the same grounds.

[2] Plaintiffs also moved to stay the proceedings pending a decision on the motion to remand.

[3] It is undisputed that the damages alleged in the Complaint exceed $75,000, and that, if the doctors are disregarded as defendants, diversity jurisdiction exists.

(1915); Insinga, 845 F.2d at 254; Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir.1964); Chilton Private Bank v. Norsec-Cook, Inc., 99 B.R. 402, 403 (N.D. Ill.1989); Kocot v. Alliance Machine Co., 651 F. Supp. 226, 227 (S.D. Ill.1986).

Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992). Plaintiffs argue (in the most general terms) that because a state court might theoretically find the doctors liable under one or more of the various state claims, they are not "fraudulent" defendants, and therefore, diversity jurisdiction does not exist. The difficulty with the argument is that while a state court might find liability, to do so, it would have to disregard the clear command of the Vaccination Act, which bars the prosecution of any vaccine-related injury claim, whether state or federal, and regardless of its merits, unless a plaintiff first files a petition under the NVICP. The Vaccination Act provides, in relevant part, that:

> [n]o person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the [NVIC] Program for such injury or death. . . .

42 U.S.C. § 300aa-11(a)(2)(A). Under § 300aa-11(a)(2)(B), "[i]f a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action." (Emphasis added). Defendants argue (correctly) that the claims against the doctors "simply ha[ve] no chance of success" because plaintiffs undisputedly did not file under the NVICP, and that a state court that nonetheless entertained their claims would be acting ultra vires.

Perhaps recognizing that a finding of fraudulent joinder is virtually compelled in this

3

case, plaintiffs argue in the alternative that the children's claims derive from their exposure to thimerosal, which is a vaccine preservative, and not a vaccine. The logic of the argument is that if thimerosal is not a vaccine, the children's alleged injuries cannot be considered "vaccine-related," and the claims are therefore not subject to the exhaustion requirements of the Vaccination Act.

Under § 300aa-33(5), a "vaccine-related injury" is defined as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." Despite overwhelming authority to the contrary,[4] plaintiffs argue that thimerosal falls within the "adulterant or contaminant" exception of the Vaccination Act. Not only have most courts rejected this argument, but so has Congress. In enacting the Homeland Security Act of 2002, Congress amended the definition of a "vaccine-related injury" under § 300aa-33(5), to state that "[f]or purposes of the preceding sentence, an adulterant or contaminant shall not include any component or ingredient listed in a vaccine's product license application or product label." Because it is undisputed that thimerosal is an ingredient listed in the vaccine product license applications at issue, it is clear that Congress' intention is, and was, that all thimerosal-based claims be channeled in the first instance through the NVICP.

Plaintiffs' final argument is that their consortium claims against the doctors have an

------------

[4]The case most often cited is <u>Leroy v. Secretary of Dep't. of Health & Human Services,</u> 2002 WL 31730680 (Fed. Cl. Spec. Mstr., October 11, 2002). In that case, the Special Master, after an exhaustive analysis, held that thimerosal is a not a contaminant or adulterant within the meaning of § 300aa-33(5), and that thimerosal-related claims were therefore within the primary jurisdiction of the Court of Federal Claims.

4

existence independent of the claims of the children, and therefore cannot be said to be

"vaccine-related." While loss of consortium in the abstract is an independent legal claim, the

law is clear that where the child has no viable cause of action, neither does the parent.

> As a general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury. See Agis, supra at 146-147; Diaz v. Eli Lilly & Co., 364 Mass. 153, 161-168 (1973); Mouradian v. General Elec. Co., 23 Mass. App. Ct. 538, 543-544 (1987). See also W.P. Prosser & R.E. Keeton, Torts § 125, at 931-934 (5th ed. 1984). Although we have determined that a claim for loss of consortium is independent of the spouse's cause of action, see, e.g., Feltch v. General Rental Co., 383 Mass. 603, 607-608, (1981), we have not repudiated the implicit prerequisite that the injured spouse have a viable claim.

Sena v. Commonwealth, 417 Mass. 250, 264 (1994). In sum, the court has jurisdiction to

hear the case, and in so doing, is bound by the Vaccination Act to dismiss plaintiffs' claims

pursuant to § 300aa-11(a)(2)(B).

### ORDER

For the foregoing reasons, plaintiffs' motion to remand is <u>DENIED</u>. The vaccine

defendants' motion to dismiss is <u>ALLOWED</u>. Eli Lilly & Co.'s motion to dismiss is

<u>ALLOWED</u>. New England Medical Center's motion to dismiss is <u>ALLOWED</u>. Dr. Eileen

Homcy and Dr. Mark Blumenthal's motion to dismiss is <u>ALLOWED</u>. Plaintiffs' motion to stay

proceedings is <u>DENIED</u>.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

5

$\mathcal{I}$

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2001-019657                                              02/20/2003

                                        CLERK OF THE COURT
THE HONORABLE MICHAEL A. YARNELL              K. Winchell
                                                Deputy

                                        FILED: 03/07/2003

ADAM BERTRAND, et al.                   MICHAEL E MEDINA JR

v.

AMERICAN HOME PRODUCTS, et al.          CRAIG W PHILLIPS


                                        JAMES R BROENING
                                        JEFFREY J CAMPBELL
                                        PAUL F ECKSTEIN
                                        STEPHANIE VITHOULKAS HACKETT
                                        CHARLES S HOVER III
                                        ROGER N MORRIS
                                        DARWIN J NELSON
                                        GINA ROSSANO


## RULING

Various Motions To Dismiss, or in the alternative To Stay, have been under advisement since Oral Argument on January 17, 2003. This minute entry contains the ruling on those motions.

This action was filed November 13, 2001, removed to Federal court on or about December 13, 2001, and remanded to State court by order of September 27, 2002. Plaintiff Adam and Catherine Bertrand bring this action on their behalf and that of their son Benjamin Cole Bertrand for personal injury under theories of negligence, consumer fraud, battery, breach of warranty and strict liability all related to Thimerosal, a mercury based preservative contained in childhood vaccines administered to Benjamin. Toxic metal screening tests show that Benjamin suffers from mercury toxicity.

Defendants include the vaccine manufactures (Wyeth, Aventis, Merck and Glaxsosmithkline) (hereinafter the "Vaccine Defendants"), the Thimerosal Manufacture/supplier/distributors (Eli Lilly and Sigma Aldrich) (hereinafter the "Thimerosal

Docket Code 078                    Form V000A                    Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2001-019657                                      02/20/2003

Defendants"), and the healthcare providers (Arrowhead Pediatrics, Ruiz, Cigna and Houfek) (hereinafter the "Healthcare Defendants").

As an initial procedural matter, on the Court's own motion,

IT IS ORDERED granting Plaintiff's Motion To File First Amended Complaint, which complaint is hereby deemed filed and served. All current answers may stand to the amended complaint, provided however, any Defendant may file a new answer at the Defendant's option.

FURTHER ORDERED all pending Motions To Dismiss shall and do apply to the First Amended Complaint.

All appearing Defendants have either moved to dismiss or joined in other defendants pending motions to dismiss. Some common and some different grounds are asserted by each group of Defendants.

### The Vaccine Defendants

One common ground asserted by all Defendants for dismissal of this action is the affect of the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. § 300aa-11 (the "Vaccine Act"). The Vaccine Act specifically directs courts to dismiss causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. §300aa-11a(2)(B). After proceeding through the Court of Federal Claims, a claimant may pursue a civil tort action in either state or federal court. The parties here dispute which of the claims and/or parties in this action are subject to the mandates of the Vaccine Act. It is undisputed that Plaintiff Benjamin has filed an action under the Vaccine Act that has not been concluded.

The United States District Court for The District Of Arizona in CV-01-2431-PHX-PGR ,in its order of September 27, 2002 remanding this case (the "Remand Order"), has ruled the Vaccine Act supplements and does not entirely preempt state tort remedies "with the requirement that claims first be exhausted in the Court of Claims." Remand Order at p. 6. According to the district court's order, ". . . the state court is the appropriate body to address exhaustion and assess the merits of Plaintiff's claims." Id., at 7.

Plaintiff's argue, in the alternative, that the alleged injury is from the "adulterant or contaminant" Thimerosal, not an integral vaccine component, and that the injuries are not "vaccine-related", thus the injuries are not covered by the Vaccine Act.

### The Thimerosal Defendants

Plaintiffs' argue the Thimerosal Defendants, as manufactures, suppliers or distributors of a licensed and known chemical component of a vaccine are not "vaccine manufacturer or

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2001-019657                                             02/20/2003

administrator" under the Vaccine Act. *See Owens v. American Home Products,* [United States District Court For The Southern District Of Texas, Civil Action No. G-02-185, Order dated May 8, 2002, Tab 5, Vaccine Manufacture's Motion To Dismiss] and 203 F.Supp.2nd 748 (S.D. Tex. 2002). Plaintiffs' assert that if a claim can not be made against the Thimerosal Defendants under the Vaccine Act, then dismissal here is not required. Plaintiffs point out the government has taken such a position in the Vaccine Act proceedings.

The Thimerosal Defendants contend that *Owens* is incorrectly decided pointing out the Vaccine Act's definition of "vaccine related injury" includes injury from a component. The Thimerosal Defendants argue, indeed they judicially concede and admit, they are within the term "manufacture or administrator" of a Vaccine Act because they were a manufacture and distributor of the approved and licensed component Thimerosal. The Thimerosal Defendants contend that unless the claims in this action against them are dismissed, Plaintiffs in fact can not maintain a claim under the Vaccine Act. 42 U.S.C. § 300aa-11a(5)(B).

The Thimerosal Defendants also point to recent rulings by in the Vaccine Court that death or injury from the Thimerosal component of a vaccine is encompassed within the Vaccine Act and the recent amendment by the Homeland Security Act of 2002 to 42 U.S.C. §300aa-33(3) specifically expanding the definition of manufacture to include vaccine component manufactures such as the Thimerosal Defendants.

As to Defendant Eli Lilly, Plaintiff additional alleges liability not from just the manufacture and distribution of Thimerosal, but from activities "in manipulating the medical literature and concealing the dangers of Thimerosal." Plaintiff currently concedes that no claim lies against Eli Lilly on a strict liability theory because "Eli Lilly did not manufacture or distribute the specific Thimerosal that was injected into Benjamin." Response, p 13, ln.18-20.

The Thimerosal Defendants also contend the Vaccine Defendants are necessary parties under Rule 19(b), Rules of Civil Procedure and this action should thus be dismissed against the Thimerosal Defendants on that ground. Plaintiffs respond that the Thimerosal Defendants have not met their burden of showing necessary party.

**The Healthcare Defendants**

The Healthcare Defendants contend that claims of strict liability and breach of warranty as to childhood vaccines are not cognizable under Arizona law by reason of A.R.S. 12-561 et. al. Alternatively, the Healthcare Defendants contend they are not "manufacturers or sellers" of the vaccines in question and thus can not be liable on a products liability claim under A.R.S. 12-681. The Healthcare Defendants contend the only possible viable claim against them is medical negligence.

Docket Code 078                     Form V000A                         Page 3

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2001-019657                                        02/20/2003

### The Parents Claims

Plaintiff parents assert claims for medical expenses for Benjamin and loss of consortium claims. Some of the issues present here were present in the remand proceedings, briefed, argued and ruled upon by the District Court Judge. For instance, the Remand Order concludes that "the claims of Adam and Catherine Bertrand for their own injuries, as parents of the injured child, are not covered by the Vaccine Act." Remand Order, p. 13. The district court ruling does not address, however, the derivative nature of those claims under state law. Without a final verdict on the claim of Benjamin, it is likely under Arizona law there can be a final verdict on the claims of Benjamin's parents as a result of alleged injury to Benjamin. *See Quadrone v. Pasco Petroleum Co., Inc.,* 156 Ariz. 415 (1987).

### The Stay Issues

Plaintiff wishes to proceed to the greatest extent possible in two forums, the Vaccine Court and this Court. Defendants wish to proceed not at all in this Court, either by way of dismissal or stay. All parties assert the alternative position of a stay, artfully arguing separate sides of the same "stay" coin.

Plaintiff may be exposed to statute of limitations problems if claims not otherwise cognizable in the Vaccine Court are dismissed. Defendants contend that the Vaccine Act requires the dismissal of not only claims cognizable in the Vaccine Court, but all claims in this action.

Based on the entire record in this case and the authorities cited by the parties,

IT IS ORDERED finding as a matter of law that Thimerosal is not an "adulterant or contaminant" as those terms are used in the Vaccine Act.

FURTHER ORDERED finding as a matter of law the Thimerosal Defendants, as manufacture/supplier/distributors of a licensed component of a listed childhood vaccine subject to a Vaccine Act claim based on that component, are "vaccine manufacturer[s] or administrator[s]" under the Vaccine Act, particularly as amended by the Homeland Security Act of 2002.

FURTHER ORDERED finding the alleged fraud and direct negligence claims as to Defendant Elli Lilly are not as a practical matter severable and should not proceed to discovery and adjudication without an adjudication of the strict liability and implied warranty claims.

FURTHER ORDERED alternatively finding the Vaccine Defendants are necessary parties under Rule 19(b) Rules of Civil Procedure to any adjudication in this Court of the liability of the Thimerosal Defendants on the strict liability and implied warranty claims.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2001-019657                                              02/20/2003

FURTHER ORDERED finding the parent's claims in this action are derivative, are not as a practical matter severable, and should not proceed to judgment under Arizona law without an adjudication of the child's claims.

FURTHER ORDERED finding as a matter of law that no claim lies under Arizona Law against the Healthcare Providers for strict liability or breach of warranty in the context of the alleged childhood vaccine administration.

FURTHER ORDERED finding as a matter of law the Healthcare Provider Defendants are not "manufacturers or sellers" as those terms are used in A.R.S. 12-681 of either the vaccine or its Thimerosal component.

Accordingly,

IT IS ORDERED ADJUDGED AND DECREED,

IT IS ORDERED dismissing all claims in this action, without prejudice, against the Vaccine Defendants Wyeth, Aventis, Merck and Glaxosmithkline, except as to any loss of consortium claims by the Plaintiff Parents.

FURTHER ORDERED dismissing all claims in this action, without prejudice, against the Thimerosal Defendants Eli Lilly and Sigma Aldrich, except as to any fraud and/or direct negligence claims not included within any strict liability or implied warranty claims and except as to any loss of consortium claims by the Plaintiff Parents.

FURTHER ORDERED dismissing, with prejudice, the strict liability and implied warranty claims only against the Healthcare Defendants Arrowhead Pediatrics, Ruiz, Cigna and Houfek. Any medical negligence claim remains as to these Defendants.

FURTHER ORDERED staying all discovery and adjudication of any and all remaining claims in this action pending further order of this Court or the conclusion of Plaintiff's Vaccine Court proceeding, which ever shall first occur.

FURTHER ORDERED finding no just reason for delay in the entry of final judgment on these issues and directing that final judgment be so entered.

FURTHER ORDERED each party shall currently bear their own costs and attorney's fees that relate to any dismissed claims, subject to later assertion should all or any portion of this or any related litigation proceed.

APR. 25. 2003   2:05PM                                    NO. 5541   P. 7/7

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2001-019657                                    02/20/2003

FURTHER ORDERED Defendants' counsel shall forthwith meet, confer and jointly lodge a single form of judgment, including Rule 54(b) language, provided however, that judgment shall included only the orders of dismissal and stay.

FURTHER ORDERED placing this matter on the Inactive Calendar until December 1, 2003 for dismissal without prejudice, without further notice to the parties, unless the stay has been lifted or the Inactive Calendar date has been extended.

/S/   THE HONORABLE MICHAEL A. YARNELL

JUDICIAL OFFICER OF THE SUPERIOR COURT

Docket Code 078                Form V000A                Page 6

J

05/27/2003 16:56 FAX 12159793899    MCCARTER & ENGLISH    @002

T. DAVIS

| | | |
|---|---|---|
| CHARLES R. ASHTON, III and PENNY STARR-ASHTON, parents and natural guardians of MADIGAN ASHTON and LUCINDA ASHTON, et al. | : : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY COMMERCE PROGRAM |
| vs. | : : | |
| AVENTIS PASTEUR, INC., individually and as successor in interest to CONNAUGHT LABORATORIES, INC., PASTEUR MERIEUX, and PASTEUR MERIEUX CONNAUGHT, et al. | : : : : | JULY TERM, 2002 NO. 04026 Control #011926, #011965, #011982, #012004, #012017, #012035, #012036, #012044, #012045, #020310 |

### ORDER and MEMORANDUM

AND NOW, to wit, this 22 day of May, 2003, upon consideration of the Preliminary Objections of the defendants and the plaintiffs' response thereto, it is hereby ORDERED and DECREED said Preliminary Objections are SUSTAINED. The plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

BY THE COURT:

GENE D. COHEN,                    J.

COPIES SENT PURSUANT TO Pa. R.C.P. 236(b)

MAY 2 2 2003

First Judicial District of Pa. User I.D.: JCY

| | | |
|---|---|---|
| CHARLES R. ASHTON, III and PENNY | : | COURT OF COMMON PLEAS |
| STARR-ASHTON, parents and natural | : | PHILADELPHIA COUNTY |
| guardians of MADIGAN ASHTON and | : | |
| LUCINDA ASHTON, et al. | : | COMMERCE PROGRAM |
| | : | |
| vs. | : | |
| | : | |
| AVENTIS PASTEUR, INC., individually and | : | JULY TERM, 2002 |
| as successor in interest to CONNAUGHT | : | |
| LABORATORIES, INC., PASTEUR MERIEUX, | : | NO. 04026 |
| and PASTEUR MERIEUX CONNAUGHT, et al. | : | |

Control #011926, #011965,
#011982, #012004, #012017,
#012035, #012036, #012044,
#012045, #020310

## MEMORANDUM

*COHEN, GENE D., J.*

### INTRODUCTION:

The instant action is a class action complaint brought by class representatives who seek

actual damages and damages in the form of "medical monitoring" based upon injuries they and

class members either currently have or may develop. The plaintiffs allege that vaccinations

containing the chemical thimerosal were the source of their current and would-be injuries. The

Court now has before it preliminary objections filed by all defendants -- manufacturers of the

vaccines and thimerosal -- urging this Court to dismiss the plaintiffs' complaint and hold that

for several reasons the plaintiffs have no cause of action. The Court hereby sustains said

preliminary objections and dismisses the plaintiffs' complaint.

### BACKGROUND:

The plaintiffs seek damages and "medical monitoring" alleging they were poisoned by

the presence of the ingredient Thimerosal in childhood vaccinations they received.

05/27/2003 16:56 FAX 12159793899          MCCARTER & ENGLISH                    ⓘ004

Within a few years after birth most American children receive a series of vaccinations. The vaccines administered control the virulent consequences of such childhood diseases as measles, pertussis, rubella, polio, whooping cough, hepatitis, diphtheria and tetanus. These vaccines often contain either a killed bacteria or live but weakened viruses and, hence, can cause serious adverse affects. *See* O'Connell v. Shalala, 79 Fed. 3d 170, 172 (1st Cir. 1996) (citing Committee to Review the Adverse Consequences of Pertussis and Rubella Vaccines, Institute of Medicine, Adverse Affects of Pertussis and Rubella Vaccines 1 (1991)). In 1996, responding to the possibility of a socio-medical catastrophe that might arise if the victims of the adverse consequences of childhood vaccinations made use of the tort liability system, Congress enacted the National Childhood Vaccine Injury Act of 1996, Pub. L. No. 99-660, 1986 U.S.C.C.N. (100 Stat.) 3755 (Codified as amended at 42 U.S.C. §§300aa-1 to 34) (1994). The purpose of the Vaccine Act was to establish a vaccine injury compensation program that would allow claimants to petition to receive compensation for vaccine-related injuries or death. Congress in its wisdom believed that to subject such injuries and deaths to the marketplace of the tort liability system would drive up the prices of vaccines and discourage vaccine manufacturers from remaining in the marketplace as well as leaving many sufferers of vaccine-caused injuries uncompensated. To receive compensation the claimant must petition the Court of Federal Claims and demonstrate by a preponderance of the evidence that (1) the vaccinated child suffered an injury listed on a table or a complication or "sequela" thereof, or (2) that the vaccine caused or significantly aggravated the child's injury or condition. *See* §§300aa-11 to 13 and 14. *See also* 42 C.F.R. §100.3 (1996). The Act in pertinent part requires that a person injured directly by a vaccine first bring a Vaccine Court proceeding. Id. §300aa-11(a)(2)(A). Then the statute gives that person the choice either to accept the court's award and abandon his tort rights (which the Act transfers to the federal

government, Id. §§300aa-17), or to reject the judgment and retain his tort rights. Id. §§300aa-21(a);  300aa-11(a)(2)(A)(i).  A claimant can also keep his tort rights by withdrawing the Vaccine Court petition if the court moves too slowly. Id. §§300aa-21(b); 300aa-11(a)(2)(A)(ii).)

This new remedial system further interacts with traditional tort law suits by limiting punitive damage awards and bifurcating trials. The Act establishes a presumption of compliance with Food and Drug Administration requirements meaning the manufacturer provided proper directions and warnings and freeing the manufacturer from liability for not providing direct warnings to an injured person or his representatives. Id. §§300aa-23(a), 23(d), 22(c), 22(b)(1). See Schaeffer v. American Cyanimide Co., 20 Fed. 3d 1, 9 to 12 (1st Cir. 1994).

Further provisions of the Vaccine Act address the real issue of concern in these cases and that is whether the vaccine in question caused injury or death. There are two ways to prove causation under the Act. The Vaccine Injury Table lists certain injuries and conditions which if found to occur within a prescribed period of time following vaccination, create a rebuttable presumption of causation. In such "on table" cases petitioners do not need to show proof of actual causation. For instance, if a petitioner proves that her child received a DPT vaccine on July 20, 1998 and that she suffered an encephalopathy within three days thereafter or anaphylactic shock within 24 hours thereafter, causation is presumed. The Act's Qualifications and Aids to Interpretation further define the compensable conditions. A petitioner is no longer burdened with the onerous task of proving that the vaccine actually caused the condition in question. In the vast majority of cases the presumption of causation does not, however, obviate expert medical testimony. A qualified witness must still attest that the victim suffered the particular medical condition for which the compensation is being sought.

- 3 -

05/27/2003 16:56 FAX 12159793899         MCCARTER & ENGLISH                    ☒006

Where the symptoms fall outside the statutory time frames the petitioner must present evidence of causation and fact. The legislative history instructs that "simple similarity to conditions or time periods listed in the table is not sufficient evidence of causation; evidence in the form of scientific studies or expert medical testimony is necessary to demonstrate causation for such a petitioner. Petitioner need not, however, prove causation to a scientific certainty. Rather the petitioner must show a "logical sequence of cause and affect".

Once the petitioner establishes a *prima facie* case, the burden then shifts to the respondent who must prove by a preponderance of the evidence that the claimed injury is attributable to some factor unrelated to the vaccine. Such factors may not include "any idiopathic, unexplained, unknown, hypothetical or undocumentable cause, factor, injury, illness, or condition". In part because of belated participation by the respondent, the precise scope of the alternate cause injury has yet to be defined. Although the alternate cause determination is usually fact specific, the claims court has held as a matter of fact that proof of Sudden Infant Death Syndrome is insufficient to dispel the Act's presumption of causation. *See e.g.*, Daniel Green and Sandra Green, as legal representatives of the Estate of Chad Green v. Secretary of the Department of Health and Human Services, 19 Cl. Ct. 57 (1989).

The system thus establishes standards of proof under which individuals who suffer injuries within specified intervals after being administered a vaccine benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §300aa-11(c)(1)(C)(i). *See also*, Haggerty v. Wyeth Ayerst Pharmaceutical Co., 79 F.Supp. 2d 182, 184 (E.D.N.Y. 2000).

A program claimant may not file a civil action against a vaccine manufacturer or administrator (i.e., the person or organization on behalf of whom the person administered the

- 4 -

vaccination) unless the claimant initially files a timely petition in accordance with the program's guidelines. *See* Shalala v. Whitecotton, 514 U.S. 268, 270 (1995) and 42 U.S.C. §300aa-11(2)(A), explaining that a claimant alleging an injury after the Vaccine Act's effective date must exhaust the Act's procedures . . . before filing any *de novo* civil action in state or federal court. If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the court must dismiss the action. *See* 42 U.S.C. §300aa-11(a)(2)(B). Simply put, individuals who qualify as program claimants must file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all. If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her program award, that individual may reject the award and pursue a traditional tort action in any forum. *See* 42 U.S.C. §300aa-21(a).

Under the Vaccine Act, then, a person may not sue in state or federal court for more than $1,000 for a vaccine-related injury unless that person has first filed a petition in Vaccine Court within thirty-six months of the injury. The plaintiffs herein seek to circumvent this bar by claiming (a) they need not file petitions under the Act because the statute of limitations under the Act has expired, and (b) they are not injured. To quote from the plaintiffs' surreply memorandum of law:

> "Without question, the Vaccine Act does not provide relief to the children for whom plaintiffs request medical monitoring relief. As set forth in plaintiffs' Memorandum in Opposition, this case presents a textbook example of the circumstances where medical monitoring should be awarded: *asymptomatic* children who need testing as a result of defendants' tortious conduct in order to determine the extent, if any, of damage caused by direct injection of mercury into their bodies, so early diagnosis or mitigation can occur. These children are *asymptomatic* and therefore unable to obtain relief from the Act. No amount of verbal calisthenics can change that fact."

- 5 -

Initially, and making reference to the amended complaint which is the subject matter of these proceedings, in conjunction with the foregoing assertion that "these children" are not injured and the plaintiffs' duties under the Vaccine Act, the Court's attention is inevitably drawn to the allegations in the complaint. Pages 6 and 7 of the complaint -- a class action -- name three representatives of the class. One is Madigan Ashton. She is described as "diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." The next class representative plaintiff is Samuel Kaplan, a minor child who "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." Another plaintiff, Robbie Powell, a minor, according to the complaint "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." And the fourth plaintiff, Lucinda Ashton, is described as having "achieved the neurological, social and developmental milestones anticipated for a child of her age." From pages 12 through 21 the complaint relates in detail the medical histories of each child, including their exposure to the vaccines in question. Each account of each child concludes with the statement, "In all [plaintiff] was poisoned with 237.5 micrograms of toxic mercury from the vaccines containing thimerosal." Overall, then, the Court has before it four plaintiffs, all "poisoned", three with injuries that the complaint alleges, inferentially if not directly, were caused by their thimerosal-containing vaccinations.

## DISCUSSION:

### Preliminary Objections pursuant to Pa.R.C.P. 1028(a)(1) and Pa.R.C.P. 1028(a)(4)

(a)     *This Court lacks jurisdiction under the Vaccine Act -- Plaintiffs are Qualified Claimants under the Act.*

Without reiterating the foregoing discussion, it should be plain that this Court has

- 6 -

no jurisdiction to entertain the vaccine-related claims of the plaintiffs for the following reasons. This Court holds that the plaintiffs are persons who would qualify to file original actions under the Vaccine Act because they do allege damages for vaccine-related injuries. Each plaintiff alleges that he or she was "poisoned" by the substance thimerosal added to a series of vaccines. No amount of verbal calisthenics can conceal the fact that plaintiffs do allege injuries, even if they are incubating injuries that may manifest themselves later in time. The plaintiffs Ashton, Kaplan and Powell definitely assert injuries in the form of learning disorders. And, as stated, all four plaintiffs unequivocally state they were poisoned. Being poisoned is being injured. Being injured involves the plenary jurisdiction of the Vaccine Act. Plaintiffs claims are precluded for this reason.

      (b)    *This Court lacks jurisdiction under the Vaccine Act — Thimerosal-related Injuries are "Vaccine-related".*

      Every court that has had the opportunity to rule on this issue has held that thimerosal is not an "adulterant or contaminant" of the vaccines at issue, but a preservative inherent to the production of a vaccine. *See* McDonell v. Abbott Laboratories, C.A. No. 3:02 CV 437 LN slip opinion at pp. 2-3 (S.D.Miss. August 1, 2002); and Liu v. Aventis Pasteur, Inc., 219 F.Supp. 2d 7622 (W.D.Tex. 2002). What is more, an opinion by a fellow judge of this Court, Cheskiewicz et al. v. Aventis Pasteur, Inc., et al., May Term, 2002 #0952 (DiNubile, J. December 16, 2002) analyzes the very same contention -- that thimerosal is an ingredient outside of the content of the vaccines thus enabling a separate state-related tort action to be brought against the manufacturers who use thimerosal -- and holds that thimerosal does not fall within an exception or foreign substances added to vaccines. As the defendant vaccine manufacturers correctly point it is the unanimous position of the Secretary of United States Department of

- 7 -

Health and Human Services, the Vaccine Court and the Federal District and state trial courts that

confronted the issue that thimerosal claims are covered by the Vaccine Act.

    (c)    *This Court lacks jurisdiction under the Vaccine Act -- Plaintiffs were Qualified Claimants even though untimely.*

        The plaintiffs through their lawyers support their identities as state tort plaintiffs

by claiming that they failed to file their claims "within three years from the onset of a vaccine-

related injury" and it is the latent nature of their purported injuries that caused them to do so.

For this contorted reason the plaintiffs believe they are exempted from filing a petition in the

Vaccine Court. This argument was rejected by the court in Cheskiewicz, *supra*. This Court

will re-emphasize the rejection. The Court can simply re-recite the language of Cheskiewicz to

dismiss the complaint on these grounds:

> "One cannot simply wait out the three-year limitations period and then
> file a civil tort action free from all substantive and procedural limitations
> under the Vaccine Act. It is clear that plaintiffs' attempts to commence
> this suit in District Court and subsequently this Court are to circumvent
> the requirements of the Act. If the instant suit were permitted, then
> every litigant who did not want to first assert claims in Vaccine Court
> simply could wait out the 36 month requirement if the tort actions were
> not barred by the statute of limitations and then commence their actions
> in federal or state courts. Such an approach is counter to the intent of
> Congress." *See* McDonald v. Lederle Labs, 775 A.2d 528, 532
> (N.J.Super.Ct.App.Div. 2001) (affirming the lower court's dismissal of
> the suit under circumstances similar to the instant case).

        The Vaccine Act by its terms unambiguously bars civil actions for damages for alleged

vaccine-related injury "unless a petition has been filed in accordance with §300aa-16 of this

title." That section provides that "no petition for compensation shall be filed for [a vaccine-

related] injury after the expiration of 36 months from the date of the occurrence of the first

symptom or manifestation of onset or of the significant aggravation of such injury." 42

- 8 -

U.S.C. 300aa-16(a)(2). Plaintiffs have admittedly missed filing under the foregoing provision within the acceptable period of time. Because this Court holds that only the Vaccine Court has jurisdiction over their claims, their claims must be dismissed with prejudice.

    (d)    *Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.*

        In what this Court views as largely a rhetorical instrument aimed at circumventing the requirements of the Vaccine Act, the plaintiffs base their state tort claim on a right to "medical monitoring" for injuries yet to be ascertained. The Court agrees with the defendants in holding that without an underlying tort no relief for medical monitoring can be asserted. *See* Redland Soccer Club, Inc. v. Department of the Army, 696 A.2d 137 (Pa. 1997). The Supreme Court in Redland held that proof of a defendant's negligence is a required element of a cause of action for medical monitoring. The complaint by its terms suggests no proof of the defendants' negligence. The substance at issue is a prescription drug. As the defendants point out, manufacturers of prescription drugs can be held negligent only on a failure to warn formulation. Were the manufacturers' alleged failures to warn issued to doctors insufficient then the manufacturers may be negligent. *See* Demmler v. SmithKlineBeecham, 671 A.2d 1151, 1155 (Pa. Super. 1995) allocatur denied 684 A.2d 557 (Pa. 1996). The plaintiffs are not suing the doctors who administered the vaccinations, so there is no proof that the prescribing doctors were independently aware of the risks at issue. Therefore, proximate cause is not pleaded and thus absent.

        The Court further holds that none of the attempted tort formulations the plaintiffs raise in their complaint have a basis under Pennsylvania law. For example, the plaintiffs allege the vaccine defendants negligently failed to test their vaccines and negligently designed.

manufactured and packaged them by using multi-dose vials which require thimerosal as a preservative. *See* Paragraphs 163, 165 and 195(a) and (c) of the Amended Complaint. Again, a brother jurist in this Court has held that negligent failure to test is not an independent tort under Pennsylvania law. *See* In re: Phenylpropanolamine Litigation *#0001*, September Term, 2001 (Tereshko, J.).

(e)    *Remaining Counts.*

.1.    Fraud

While it may not be necessary for this Court to address the specific counts of the complaint, having held that the Vaccine Act applies exclusively to the plaintiffs' claims, the Court will specifically dismiss all remaining claims as having no basis under the law. What is more, plaintiffs' claim for fraud is not specifically pleaded as required by Rule 1019(b) of the Pennsylvania Rules of Civil Procedure. *See* Bash v. Bell Telephone Co., 601 A.2d 825, 831 (Pa.Super. 1992). Plaintiffs' claim for loss of consortium is not actionable not only because there is some ambiguity whether or not the plaintiffs are alleging loss of filial consortium due to injury or some other cause, but because this is not a recognized cause of action in Pennsylvania. *See* Quinn v. City of Pittsburgh, A. 353 (Pa. 1914); McCaskill v. Philadelphia Housing Authority, 615 A.2d 382, 384 (Pa.Super. 1992); Jackson v. Tastykake, 648 A.2d 1214, 1217 (Pa.Super. 1994).

2.    Preliminary Objections as applied to the Vaccine suppliers

This Court specifically rejects as without authority the plaintiffs' claim that the suppliers of thimerosal occupy a separate class apart from that of the vaccine manufacturers and, therefore, regardless of the Court's ruling on the motion of the vaccine manufacturers,

should remain as defendants in this matter. The law contradicts this position. The Vaccine Court in <u>Leroy v. Secretary of HHS</u> No. 02-392V at 12 (Ct. Fed. Cl. Office of Special Masters, October 11, 2002) held that the term "vaccine" included the constituents of the vaccine and this takes in thimerosal as well. The Court agrees with the defendants thimerosal suppliers and distributors that the ingredient is interchangeable with the vaccine for the purposes of the defendants' jurisdictional defense. Thus the exclusive jurisdiction of the Vaccine Act should, this Court holds, apply to the manufacturers, suppliers and distributors of thimerosal as well.

**CONCLUSION:**

Because the class plaintiffs have not stated a cause of action cognizable under Pennsylvania law, and principally because their claims are cognizable under the exclusive jurisdiction of the federal Vaccine Act, all defendants' preliminary objections will be sustained and the plaintiffs' complaint is dismissed with prejudice.

BY THE COURT:

_GENE D. COHEN,                    J._

- 11 -



FEB. 6. 2003   3:59PM                                    NO. 4745   P. 2/25

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION

ALAN J. CHESKIEWICZ, ET AL.            :        MAY TERM, 2002
                                                NO. 0952

        VS.                            :

AVENTIS PASTEUR, INC., ET AL.          :        CONTROL NO. 100957

ORDER

AND NOW, this 16th day of December, 2002, the Defendants' Preliminary Objections are

Sustained.  This case is Discontinued pursuant to the dictates of the National Childhood Vaccine

Injury Act.

                               BY THE COURT:

                               _____
                               DiNUBILE, JR., J.

FEB. 6. 2003  4:00PM                                            NO. 4745   P. 3/25

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION

ALAN J. CHESKIEWICZ, ET AL.           :        MAY TERM, 2002
                                                NO. 0952

                        VS.                     :

AVENTIS PASTEUR, INC., ET AL.         :        CONTROL NO. 100957

MEMORANDUM OF LAW

BY: HON. VICTOR J. DiNUBILE, JR.

The issue presented in this case is whether plaintiffs' cause of action must be discontinued because of failure to exhaust remedies provided to the plaintiff under the National Childhood Vaccine Injury Act, 42 U.S.C. Secs. 300 aa-1 to 300 aa-34 (1994 & Supp. V 1999) (hereinafter referred to as the "Vaccine Act" or "Act"). This Court agrees with the defendants. Consequently, this case is Dismissed and Discontinued.

The parents of minor plaintiff primarily assert products liability claims against various drug companies for injuries arising from mercury poisoning from certain vaccines administered to him during the first 18 months of his life (May, 1994 - December, 1995). Plaintiffs' Complaint maintains that the substance Thimerosal, used as a preservative in these vaccines, contained mercury which caused an adverse reaction and injury to their son. It is not in dispute that the vaccines used by the minor child in this case come within the purview of the Vaccine Act. The Vaccine Act, enacted by Congress, provides that all such causes of action resulting in harm from the use of certain enumerated vaccines must initially be brought before a specially constituted court of the United States Court of Federal Claims (hereinafter referred to as Vaccine Court).

The Act unequivocally provides that parties must first exhaust their remedies under this Act before commencing suit in either state or federal court. The Act further directs the state or federal courts to dismiss actions not first pursued under the Vaccine Act. The Act, however, provides an exception to the exhaustion requirement where the vaccine(s) in question contained a "contaminant" or "adulterant".

Plaintiffs maintain suit is proper here under the exception because the preservative Thimerosal constitutes a contaminant or adulterant. This Court disagrees. All the case law contradicts the plaintiffs' position. This Court adopts the well-reasoned opinions of the Vaccine Court and federal district courts that the preservative Thimerosal, contained in the vaccines, is not a contaminant or an adulterant. Leroy v. Secretary of Department of Health and Human Services, No. 02-392V, 2002 WL 31730680 (Fed. Cl. Spec. Mstr. October 11, 2002); Blackmon v. American Home Products Corp., No. 6-02-179, slip op. (S.D. Tex. May 8, 2002); Owens v. American Home Products Corp., 203 F.Supp. 2d 748 (S.D. Tex. May 7, 2002); O'Connell v. American Home Products Corp., No. 6-02-184, slip op. (S.D. Tex. May 7, 2002). The purpose of the Act is to provide a uniform federal no-fault system with consistent venue to adjudicate claims of persons seeking redress for injuries stemming from adverse reactions from the use of the enumerated vaccines. The contaminant/adulteration exception would apply if some foreign substance, not ordinarily contained in the vaccine, found its way into the drug causing harm. But where the harm arises from an allergic reaction to non-foreign substances contained in the vaccine itself, the claim should first be heard in Vaccine Court. The above cited federal authorities, after an analysis of the purpose of the Act coupled with a medical/general dictionary review of the words "contaminant" and "adulterant", concluded that the Thimerosal preservative is not

2

encompassed in the exception since it is a component of the vaccine. This Court agrees with their rationale.

The plaintiffs also contend that in any event, even if the Court should agree with the federal authorities that the exception does not apply, plaintiff still can maintain the suit in state court because they do not "qualify" as litigants under the Act. The Act requires that all actions must be commenced by litigants within 36 months of the time in which adverse symptoms first occur. The symptoms first manifested themselves in the minor plaintiff in December of 1995. Since no action was ever brought in Vaccine Court, plaintiffs argue the Act does not apply to them and therefore can maintain the within suit in state court. This Court respectfully disagrees. One cannot simply wait out the three year limitations provision and then file a civil tort action free from all substantive and procedural limitations under the Vaccine Act. It is clear that plaintiffs' attempts to commence this suit in district court and subsequently this Court are to circumvent the requirements of the Act. If the instant suit were permitted, then every litigant who did not want to first assert claims in Vaccine Court simply could wait out the 36 month requirement if the tort actions were not barred by the statute of limitations and then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress. See McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J. Super. Ct. App. Div. 2001) (affirming the lower court's dismissal of the suit under circumstances similar to the instant case).

Plaintiffs also maintain that the requirement of first having to commence an action in the Vaccine Court is unconstitutional. No authority is cited in support of this proposition. The Vaccine Act does not preclude the bringing of a suit in federal or state Courts. It merely provides that suit must first be maintained in the special Court. If the litigant exhausts remedies there and

3

FEB. 6. 2003  4:01PM                                  NO. 4745  P. 6/25

is dissatisfied with the results, then the Act does not preclude subsequent tort actions being

brought in federal or state Courts[1]. Weighing the purpose of the Act to have claims quickly,

expeditiously and consistently resolved on a no-fault basis by first requiring litigants to proceed in

Vaccine Court, certainly does not constitute such an onerous burden as to render the Act

unconstitutional.

> The preclusive application of the Act, which prevents plaintiff in her
> representative capacity from pursing a civil action does not
> represent an "absurd or unjust result" that would permit us from
> disregarding its plain language. *United States v. Shriver*, 989 F.2d
> 898, 901 (7th Cir. 1993). It is, instead, consistent with the stated
> purpose of avoiding the public harm that would result from either a
> loss or decline in the production of necessary vaccines. Simply put,
> Congress wants victims to first try the Program with the
> expectation that its results will be accepted. Unless a petitioner is
> required to fully adjudicate a claim, pursuant to the Program's
> expedited procedures, Congress's objectives will not be realized.
> McDonald v. Lederle Labs, supra., 775 A.2d 528, 534-535.

Consequently, this case is dismissed/discontinued pursuant to the provisions of

the Vaccine Act.[2]

BY THE COURT:

DATED: December 16, 2002

DiNUBILE, JR., J.

---

[1] The Act provides the tolling of the statute of limitations during the pendency of the
action before the Vaccine Court.

[2] Plaintiffs also argue that they as parents do not qualify under the Act since they seek
medical expenses on their own behalf. They assert that this action for medical bills is not covered
under the Vaccine Act. To the contrary, the Act permits reimbursement for medical bills incurred
by or on behalf of a minor.

4



IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
GENERAL CIVIL DIVISION

DRAGAN RADULOVIC AND TATJANA
RADULOVIC, Individually and as Next Friend of
Minor, MARK RADULOVIC,                          CASE NO. 02-05033

       Plaintiffs,                              DIVISION J

vs.

AMERICAN HOME PRODUCTS d/b/a WYETH CO.,
WYETH-AYERST LABORATORIES and LEDERLE
LABORATORIES, INC.; AVENTIS PASTEUR, INC.,
Individually and as Successor-in-Interest to CONNAUGHT
LABORATORIES, INC.; BAXTER PHARMACEUTICAL
PRODUCTS, INC.; ELI LILLY AND COMPANY; GDL
INTERNATIONAL, INC.; GLAXOSMITHKLINE,
Individually and as Successor-in-Interest to SMITHKLINE
BEECHAM CORP.; GLAXOSMITHKLINE BELGIUM;
MERCK & CO., INC.; PARKE-DAVIS, through its parent
companies, WARNER-LAMBERT CO. and PFIZER INC.;
SIGMA-ALDRICH, INC.; SPECTRUM LABORATORY
PRODUCTS; GRUPO URIACH, Individually and as
Successor-in-Interest to URQUIMA, FLORIDA INFUSION
SERVICES, a Florida Corporation
JOHN DOE CORPORATE DEFENDANTS 1-10;
EDWARD T. WILLIAMS, III, M.D.; FLORIDA
POWER AND LIGHT COMPANY; TAMPA ELECTRIC
COMPANY; and FLORIDA POWER CORPORATION,

       Defendants.

_____/

**ORDER ON**
**AMENDED MOTION TO DISMISS**
**BY VACCINE-MANUFACTURER DEFENDANTS:**
**WYETH; LEDERLE; AVENTIS PASTEUR, INC.; MERCK & CO.;**
**SMITHKLINE BEECHAM; BAXTER HEALTHCARE CORP.;**
**AND FLORIDA INFUSION SERVICES**
**AND**
**MOTIONS TO DISMISS BY SPECTRUM LABORATORY PRODUCTS;**
**SIGMA-ALDRICH, INC; AND ELI LILLY AND COMPANY**

-1-

This matter having come before the Court for hearing on November 5, 2002 at 1:30 p.m., on (1) the Vaccine-Manufacturer Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.; SmithKline Beecham; Baxter Healthcare Corp.; and Florida Infusion Services' Amended Motion to Dismiss, (2) Defendant Spectrum's Motion to Dismiss, (3) Defendant, Sigma-Aldrich, Inc.'s Motion to Dismiss, and (4) Defendant Eli Lilly and Company's Motion to Dismiss Plaintiffs' Complaint, and the Court having heard argument of counsel and being otherwise fully advised in the premises,

THE COURT FINDS THAT:

The attached order by Chief Special Master Golkiewicz in *Leroy vs. Secretary of the Department of Health and Human Services,* filed October 11, 2002 in the United States Court of Federal Claims, Office of Special Masters, Case No. 02-392V, is persuasive authority and its findings and conclusions as they pertain to the initial jurisdiction of the U.S. Court of Federal Claims over claims like those made in the above-styled action and, by application, the lack of initial jurisdiction of this Court over such claims, are adopted and incorporated fully herein; and

Plaintiffs have notified this Court that they voluntarily dismiss without prejudice all claims against GlaxoSmithKline Belgium; it is therefore:

ORDERED and ADJUDGED as follows:

All claims against alleged Vaccine-Manufacturer Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.; SmithKline Beecham; Baxter Healthcare Corp.; Florida Infusion Services; and, alleged Thimerosal-Manufacturer Defendants: Spectrum Laboratory Products; Sigma-Aldrich, Inc.; and Eli Lilly and Company are dismissed without prejudice.

All claims against GlaxoSmithKline Belgium are dismissed without prejudice.

-2-

FEB. 6. 2003   4:01PM                                    NO. 4745   P. 9/25

The plaintiffs shall have 60 days from the date of this order to serve an amended

complaint to bring separate and distinct claims arising outside the administration of vaccines

against alleged Thimerosal-Manufacturer Defendants: Spectrum Laboratory Products, Sigma-

Aldrich, Inc., and Eli Lilly and Company.

DONE and ORDERED in Chambers in Hillsborough County, Florida this _____ day of

November, 2002.

ORIGINAL SIGNED

NOV 19 2002

GREGORY P. HOLDER
CIRCUIT JUDGE

_____
Gregory P. Holder
Circuit Court Judge

Copies furnished to counsel on attached service list

-3-

M

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

JOHN F. SHANAUGHY AND CANDACE
SHANAUGHY, Individually and as Next Friend of
Minor, TYLER SHANAUGHY,                           CASE NO. 02-1517 CAWS

     Plaintiffs,                                 DIVISION G

vs.

WYETH CO., WYETH, WYETH-AYERST
LABORATORIES and LEDERLE
LABORATORIES, INC. f/k/a AMERICAN HOME
PRODUCTS; AVENTIS PASTEUR, INC.,
Individually and as Successor-in-Interest to CONNAUGHT
LABORATORIES, INC.; BAXTER PHARMACEUTICAL
PRODUCTS, INC.; ELI LILLY AND COMPANY; GDL
INTERNATIONAL, INC.; GLAXOSMITHKLINE, INC.;
GLAXOSMITHKLINE BELGIUM;
MERCK & CO., INC.; PARKE-DAVIS, through its parent
companies, WARNER-LAMBERT CO. and PFIZER INC.;
SIGMA-ALDRICH, INC.; SPECTRUM LABORATORY
PRODUCTS; GRUPO URIACH, Individually and as
Successor-in-Interest to URQUIMA, FLORIDA INFUSION
SERVICES, a Florida Corporation
JOHN DOE CORPORATE DEFENDANTS 1-10;
ANTHONY R. MORELLI, M.D.; TAMPA ELECTRIC
COMPANY; and FLORIDA POWER CORPORATION,

     Defendants.

_____/

**ORDER ON**
**MOTION TO DISMISS**
**BY VACCINE DEFENDANTS:**
**WYETH; LEDERLE; AVENTIS PASTEUR, INC.; MERCK & CO.;**
**SMITHKLINE BEECHAM; BAXTER HEALTHCARE CORP.;**
**AND FLORIDA INFUSION SERVICES**
**AND**
**MOTIONS TO DISMISS BY TAMPA ELECTRIC COMPANY,**
**FLORIDA POWER CORPORATION, ANTHONY R. MORELLI, M.D.,**
**SPECTRUM LABORATORY PRODUCTS; SIGMA-ALDRICH, INC;**
**AND ELI LILLY AND COMPANY**

-1-

This matter having come before the Court for hearing on December 5, 2002 at 2:00 p.m., on motions to dismiss by (1) the Vaccine Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.; SmithKline Beecham; Baxter Healthcare Corp.; and Florida Infusion Services, (2) Defendant Tampa Electric Company, (3) Defendant Florida Power Corporation, (4) Defendant Anthony R. Morelli, (5) Defendant Spectrum Laboratory Products, (6) Defendant Sigma-Aldrich, Inc., and (7) Defendant Eli Lilly and Company, and the Court having heard argument of counsel and being otherwise fully advised in the premises,

IT IS ORDERED AND ADJUDGED THAT:

1.    The motions to dismiss by Tampa Electric Company and Florida Power Corporation are granted without prejudice.

2.    The motions to dismiss by Vaccine Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.; SmithKline Beecham; Baxter Healthcare Corp.; and Florida Infusion Service; and Spectrum, Sigma, and Eli Lilly are (a) granted without prejudice as to the plaintiff children's claims based on this Court's lack of initial jurisdiction over such claims. *See* order by Chief Special Master Golkiewicz in *Leroy vs. Secretary of the Department of Health and Human Services*, filed October 11, 2002 in the United States Court of Federal Claims, Office of Special Masters, Case No. 02-392V; (b) granted without prejudice as to the claims of negligent infliction of emotional distress and intentional infliction of emotional distress; (c) granted with prejudice as to the claims of breach of implied warranty; (d) granted without prejudice as to the plaintiff parents' claims for medical expenses; and (e) granted without prejudice as to the plaintiffs' failure to properly plead a market-share theory.

3.    The motions to dismiss by Vaccine Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.; SmithKline Beecham; Baxter Healthcare Corp.; and Florida Infusion Service;

and Spectrum, Sigma, and Eli Lilly concerning the plaintiff parents' derivative claims are denied. However, their motions to stay the plaintiff parents' derivative claims are granted consistent with this Court's ruling in paragraph 6 below.

4.    The motion to dismiss by Dr. Morelli is granted without prejudice based on this Court's lack of initial jurisdiction. *See order by Chief Special Master Golkiewicz in Leroy vs. Secretary of the Department of Health and Human Services*, filed October 11, 2002 in the United States Court of Federal Claims, Office of Special Masters, Case No. 02-392V.

5.    The motions to dismiss by defendants based on plaintiffs' incorporation in each count of all the previous allegations of the complaint are granted without prejudice.

6.    This case is stayed effective as of December 5, 2002, and shall remain stayed until 30 days after the Vaccine Court relinquishes jurisdiction over claims that could be brought before it in this matter. Plaintiffs may file amended pleadings consistent with this order at the conclusion of the stay of this case.

**DONE AND ORDERED** in Chambers in Pasco County, Florida this _____ day of _____, 2003.

ORIGINAL SIGNED

ORIGINAL SIGNED

JAN 17 2003

JAN 16 2003

STANLEY R. MILLS
CIRCUIT JUDGE

STANLEY R. MILLS
CIRCUIT JUDGE

Stanley R. Mills
Circuit Court Judge

Copies furnished to counsel on Service List

-3-

N

In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS

(Filed: July 3, 2002)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
IN RE: CLAIMS FOR VACCINE INJURIES     *
RESULTING IN AUTISM SPECTRUM           *
DISORDER OR A SIMILAR                   *
NEURODEVELOPMENTAL DISORDER            *      AUTISM MASTER FILE
                                        *        To be published
VARIOUS PETITIONERS,                    *
                                        *
            v.                          *
                                        *
SECRETARY OF HEALTH AND                 *
HUMAN SERVICES,                         *
                                        *
            Respondent.                 *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

## AUTISM GENERAL ORDER #1

### A. Background

This Autism General Order #1 is being issued by the Office of Special Masters ("OSM"), to address an unusual situation facing the National Vaccine Injury Compensation Program ("Program.")[1] This situation arises out of concern in recent years that certain childhood vaccinations might be causing or contributing to an apparent increase in the diagnosis of a type of serious neurodevelopmental disorder known as "autism spectrum disorder," or "autism" for short.[2]

---

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 et seq. (2000). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. § 300aa (2000).

[2] An autism spectrum disorder is a brain disorder affecting a person's ability to communicate, form relationships, and/or respond appropriately to the environment. Such disorders sometimes result in death. The "spectrum" of such disorders includes relatively high-functioning persons with speech and language intact, as well as persons who are mentally retarded, mute, or with serious language delays. Symptoms may include, but are not limited to, avoidance of eye contact, seeming "deafness," abrupt loss of language, unawareness of environment, physical abusiveness,



Specifically, it has been alleged that cases of autism, or neurodevelopmental disorders similar to autism, may be caused by Measles-Mumps-Rubella ("MMR") vaccinations; by the "thimerosal" ingredient contained in certain Diphtheria-Tetanus-Pertussis ("DTP"), Diphtheria-Tetanus-acellar Pertussis ("DTaP"), Hepatitis B, and Hemophilus Influenza Type B ("HIB") vaccinations; or by some combination of the two.

To date, over 400 cases alleging a causal relationship between such vaccinations and autism disorders have been filed in this court; more than 300 of those cases have been filed in the past six months. Moreover, numerous civil lawsuits against vaccine manufacturers, alleging that the thimerosal ingredient caused autism, have been filed in courts around the country. One recent ruling in such a suit determined as a matter of law that such claims of vaccinees against vaccine manufacturers must be dismissed and brought to this court as Program claims. See *Owens v. American Home Products Corp.*, 2002 WL 992094 (S.D. Tex. May 7, 2002).

As a result of the influx of Program claims and the potential for many more such claims, the OSM has held a series of meetings with an informal advisory committee to address the task of dealing with these claims. This committee consisted of petitioners' counsel who represent many such current and potential Program claimants, along with legal and medical representatives of the Secretary of Health and Human Services. (*See* Ex. C for a list of the participants in that advisory committee.) The participating petitioners' counsel, who are in contact with many other petitioners' counsel, have estimated that due to the *Owens* decision, approximately 3,000 to 5,000 such Program petitions (or possibly even more) are likely to be filed with this court during the next several months.

Processing such a large number of cases will stretch thinly the resources of both the court and the bar. It is in the interests of all that the court aggressively, but fairly, manage this docket to ensure a timely presentation and resolution of the difficult medical and legal issues raised in these cases. This Autism General Order #1 and the procedure detailed herein resulted from extensive discussions with the parties' representatives, and from the special masters' experience in handling other groups of cases presenting common issues. The court is confident that this procedure, coupled with the cooperative efforts and quality advocacy of counsel, will provide the necessary information for resolving these cases, within a reasonable time frame.

During the advisory committee meetings, petitioners' representatives proposed a timetable for resolving the general causation issues involved in these cases which extended well over two years. In response, the OSM established one overriding principle governing all suggestions, proposals, and requests--the OSM's decision on the causation issues shall be rendered within two years after the filing of this General Order. The OSM's subsequently adopted procedure and schedule contained herein are designed to meet that two-year time frame.

---

inaccessibility, fixation, bizarre behavior, "flapping," repetitive and/or obsessive behavior, insensitivity to pain, social withdrawal, and extreme sensitivity to sounds, textures, tastes, smells, and light. National Institute of Mental Health, Publication 97-4023.

2



### B. Proposal of petitioners' representatives

Autism cases are not new to the court; a number have been pending for several years. However, in those pending cases, petitioners' counsel continue to request more time for the science to crystalize, to obtain experts, and in general to prepare their proof concerning the difficult medical and legal causation issues. Similarly, in the advisory committee discussions described above, petitioners' representatives have stated that they are not prepared to present their causation case at this time. Rather, petitioners request extensive discovery--documents, studies, and raw data from government agencies and possibly vaccine manufacturers--information relevant to the general causation issues, through this court's discovery process.

Accordingly, petitioners' representatives in the advisory committee meetings have proposed a general procedure by which the OSM could process the claims described above, both those already filed and those about to be filed. They propose that the OSM utilize a two-step procedure: first, conduct an inquiry into the *general causation issues* involved in those cases-- i.e., whether the vaccinations in question can cause autism and/or similar disorders, and if so in what circumstances; and then, second, apply the conclusions reached in that general inquiry to the individual cases. They propose that the OSM establish an "Autism Master File" with respect to the general causation issues, which would be *open to inspection* by any interested persons, and which would constitute an evidentiary record with respect to the general causation issues. They propose that a team of petitioners' lawyers be selected to represent the interests of all petitioners in these autism cases during the course of this general causation inquiry. They propose that the proceeding begin with a lengthy period of discovery concerning the general causation issues, followed by a designation of experts for each side, an evidentiary hearing, and a ruling on the general causation issues. Finally, the special master's determination on the general causation issues would be applied to the individual cases.

During the meetings of the informal advisory group, respondent's representatives did not oppose petitioners' general plan, as set forth above, that the OSM conduct a general inquiry into the causation question, then apply the conclusions reached in that inquiry to the individual cases.

### C. Procedure adopted by the OSM

After considering carefully the practical and thoughtful advice from petitioners' and respondent's representatives presented during the meetings of the advisory committee, the OSM responds to the challenge presented by this influx of cases with the following procedures.

First, the OSM adopts the general approach to these cases suggested by the participants in the informal advisory committee. That is, the OSM will utilize a two-step procedure: First, the OSM *will inquire* into the *general causation issues* involved in those cases--i.e., whether the vaccinations in question can cause autism and/or similar disorders, and if so in what circumstances; and then, second, the conclusions reached in that general inquiry will be applied to the individual cases. As proposed, the OSM will authorize a team of attorneys to represent the interests of all

3



petitioners in these autism cases during the course of this general causation inquiry, which is officially entitled the "Omnibus Autism Proceeding." The inquiry will proceed as generally proposed by petitioners' attorneys—i.e., a period for any court-approved discovery concerning the general causation issues, followed by a designation of experts for each side, an evidentiary hearing, and finally a special master's ruling on the general causation issues. Subsequently, the general causation conclusions will be applied to the individual cases.

The court will, as proposed, establish an "Autism Master File" with respect to the general causation issues involved in these cases. That file will be open to inspection by any interested persons, and will constitute an evidentiary record with respect to the general causation issues. All evidence relevant to the general causation issues, including transcripts of any evidentiary hearings, will be placed into that file. The first documents placed into that master file will be this Autism General Order #1 and the attachments hereto.

In accordance with § 300aa-12(d)(1), the Chief Special Master hereby designates Special Master George Hastings to preside over the Omnibus Autism Proceeding, and to make any necessary rulings on the general causation issues.

Representing the interests of petitioners in the Omnibus Autism Proceeding will be a Petitioners' Steering Committee. This committee will be comprised of counsel who are representing Program petitioners in autism cases. Currently, the vast majority of pending Program autism cases have been filed by a small number of law firms. The OSM invited attorneys from those firms to participate in the informal advisory committee described above. Those counsel have organized the initial Petitioners' Steering Committee, whose members are set forth in Ex. D to this Order. Other counsel who are interested in serving on the Steering Committee may contact the members of that committee to express their interest. The OSM believes that membership on the Steering Committee should be determined by petitioners' counsel, interacting among themselves. The Committee shall keep the presiding special master apprised, however, of changes in its membership. The Committee shall designate two attorneys as "lead counsel," authorized to sign and file documents on behalf of the Committee into the Autism Master File, and to represent the Committee at status conferences. In the unlikely event that disputes arise as to the Committee membership, the presiding special master shall be informed immediately and will resolve any issues.

Similarly, respondent shall designate two "lead counsel" for respondent in the Omnibus Autism Proceeding, who will be authorized to file documents on behalf of respondent into the Autism Master File, and to represent respondent at status conferences.

When either "party" to the Omnibus Autism Proceeding—i.e., the Petitioners' Steering Committee or respondent—files documents into the Autism Master File, if the document is less than 20 pages, the party shall file an original and two copies. For documents of 20 or more pages, an original and one copy will suffice. By rule, the Clerk of the Court will file the original in the Autism Master File and send the copy or copies to the presiding special master. Unless requested, separate mailings to the presiding special master are unnecessary. The Steering Committee will serve a copy

4

of each filed document on each of the two designated lead counsel for respondent. The respondent will serve a copy of each filed document on each member of the Steering Committee.

Attached to this General Order as Exhibit A is the "Master Autism Petition for Vaccine Compensation" ("Master Petition"). This document was drafted and presented to the OSM by the Petitioners' Steering Committee. It sets forth the general allegation that a vaccine's autistic disorder or similar disorder was caused by one or more of the MMR and thimerosal-containing vaccinations. It provides that any Program petitioner filing a "Short-Form Autism Petition for Vaccinee Compensation," in a form similar to that set forth as Exhibit B to this General Order, represents that such petitioner's claim meets the criteria set forth in the Master Petition. As will be detailed below, by filing such a short-form petition, a petitioner will elect into the Omnibus Autism Proceeding, and simultaneously opt to stay case-specific proceedings on his own petition until the conclusion of the Omnibus Autism Proceeding.

D.  The Autism Master Schedule

To meet the court's self-imposed two-year timetable for decision, the Omnibus Autism Proceeding will be conducted according to an Autism Master Schedule, appended to this General Order as Exhibit E. This schedule has been determined through cooperative discussions at the advisory committee meetings. Petitioners' representatives proposed the first draft of the schedule. They proposed a schedule covering two years, from issuance of an initial General Order (i.e., this Order) until the date of an evidentiary hearing on the general causation issues, with an additional unspecified period of time obviously needed for the presiding special master to analyze the evidence introduced at the hearing and produce a written opinion. In that proposed schedule, essentially 470 of the 730 days in the two-year period were devoted to the discovery process. The first proposal extended beyond two years and thus was rejected by the OSM. After discussion, petitioners submitted a revised schedule which shortened the discovery period to 410 days, moved the hearing date up, and built in sufficient time to decide the causation issues within the two-year period. This second proposal is adopted, with slight modifications and three observations.

First, and foremost, the OSM expects that the parties will act promptly and vigorously to *adhere* to this schedule, if not move more quickly. Because the interests of thousands of petitioners are affected, the presiding special master will be disinclined to allow the Omnibus Autism Proceeding to slip behind schedule. In fact, the OSM and the presiding special master will strictly manage these proceedings in an effort to resolve the causation issues in less than the allotted two-year time period.

Second, the OSM recognizes that two years is a relatively long time to ask petitioners to wait for a ruling on the general causation issues. Congress clearly envisioned such rulings on Program petitions rendered in a much shorter time frame. However, the short decision-making time periods provided in the Program statute were obviously based upon the assumption that most Program claims would present far different issues than those presented in these autism cases. The assumption clearly was that in most Program cases the question for the special master would simply be whether

5



petitioner's case fit within one of the "Table Injury" categories set forth at § 300aa-14(a). It was also assumed that even in those relatively few cases where no Table Injury was alleged and a petitioner attempted to prove that the vaccine "actually caused" an injury, the petitioner would file *along with his petition* all of his proof concerning the causation issue, including a report from an expert supporting the claim. In contrast, in these autism claims petitioners have requested a period of 500 days from now—almost a year-and-one-half—before filing expert reports explaining and supporting their theory of causation. These reports will follow a lengthy discovery period of a type clearly never envisioned by Congress. However, it is clear to the OSM that the reality of the difficult medical issues involved and the stringent legal standards applied to causation cases justifies petitioners' request for a reasonable discovery opportunity and the extended time for filing expert reports. Unfortunately, resolution of the general causation inquiry must await longer than Congress envisioned and the OSM would ideally wish; but it is clear to all involved that without the requested extended time frames, petitioners would be unable to prosecute their claims. In this instance, quick justice would mean no justice.

Third, the above pages have referenced the "general causation issues." The OSM recognizes that the Omnibus Autism Proceeding is in its earliest phase. While petitioners' representatives have mentioned multiple potential theories of causation, until discovery is completed and expert reports are filed it will not be known whether one or more causation theories are at issue. As noted above, there have been suggestions that autistic disorders can be caused by (1) MMR vaccinations; (2) the thimerosal component of the DTP, DTaP, Hepatitis B, and HIB vaccinations; and/or (3) a combination of (1) and (2). Accordingly, the presiding special master, working with the parties' representatives, will decide at a later date the most efficient procedure for resolving the causation issues, depending upon the development of the causation theories put forth by Petitioners' Steering Committee.

E. Opting into, or out of, the Omnibus Autism Proceeding

All persons with pending petitions or potential Program claims involving an autistic or autistic-like disorder should assess their own cases in light of the Omnibus Autism Proceeding. Many petitioners with pending claims have already requested and have been granted stays in their own cases until the conclusion of the Omnibus Proceeding.[3] The presiding special master will conduct no case-specific proceedings in those "stayed" cases until the conclusion of the Omnibus Proceeding, unless otherwise requested by a party. The OSM will keep all petitioners or their counsel updated as to the progress of the Omnibus Proceeding. After the Omnibus Proceeding is concluded by the special master's ruling concerning the general causation issues, the individual cases will then be addressed. If the ruling on the general causation issues appears favorable to an individual petitioner's case, the petitioner will be ordered to demonstrate that his or her case qualifies for compensation under the general ruling, and proceed to a damages determination. If the general

---

[3]Such cases will be officially transferred from the docket of the originally-assigned special master to the docket of Special Master Hastings, the special master presiding over the Omnibus Autism Proceeding.

6

ruling, on the other hand, appears unfavorable to an individual petitioner's case, then the petitioner will be given the opportunity to introduce additional supportive case-specific evidence, including expert reports, or to dismiss the case for want of proof. The court will determine how to process individual cases, following the resolution of the general causation issues, only after ample time and opportunity is granted to each petitioner to review the evidence from the Omnibus Proceeding, to consult with counsel and medical experts, and then to make a reasoned choice.

Any petitioner with a *pending* autism-related claim, who has not yet requested to have proceedings in his own case stayed for the duration of the Omnibus Autism Proceeding, may do so simply by filing a Notice to Stay Proceedings, similar to that contained at Ex. F to this General Order. Once that is done, no case-specific proceedings will be held in that case until further notice, and that case will be treated as described in the previous paragraph.

Persons who have autism-related claims for which they have *not yet filed* Program petitions, and who wish to have their cases stayed during the Omnibus Autism Proceeding, may file their petitions by filing a "Short-Form Autism Petition for Vaccine Compensation" in a form similar to the one set forth as Ex. B to this General Order.[4] No medical records need be filed with such a short-form petition, though each petitioner or his counsel is encouraged to assemble, organize, and keep all relevant medical records so that they will be available for filing if, and when, the petitioner is directed to do so by the special master. Once such a short-form petition is filed, no case-specific proceedings will be held in the case during the course of the Omnibus Autism Proceeding, and the case will be treated as described above.

*One important caveat, however, is drawn to the attention of all petitioners and their counsel!* There may be cases involving autistic-like disorders which manifested following an injury defined in the Vaccine Injury Table. That is, a vaccinee may have suffered an episode involving a severe acute encephalopathy within 72 hours after a pertussis vaccination (DTP or DTaP), or 5 to 15 days after an MMR vaccination. If so, such an acute encephalopathy and any residual effects thereof would be *presumed* to be vaccine-caused pursuant to the Vaccine Injury Table.  *See* 42 C.F.R. § 100.3(a) (10-1-97 version of CFR).[5] However, this would apply only to cases falling within the current Vaccine Injury Table's definition of "acute encephalopathy," in which the vaccinee suffered a sudden, dramatic, and severe change in level of consciousness lasting at least 24 hours. 42 C.F.R. § 100.3(b)(2)(i)(A) and (D). The incident must have been "sufficiently severe so as to require hospitalization," though actual hospitalization at the time need not have occurred. 42 C.F.R. § 100.3(b)(2)(i). Autism cases involving Table injuries have been compensated under the Program. If in a particular case there exist medical records demonstrating that such a qualifying

---

[4] The OSM acknowledges that respondent opposes the use of a short-form petition. The court's reasoning on this topic will be set forth in a separate document.

[5] Note that the Vaccine Injury Table contained in the statute at § 300aa-14(a) is *not* applicable to Program petitions filed since March 10, 1995. For any petition filed on or after March 24, 1997, the applicable Vaccine Injury Table is found at 42 C.F.R. § 100.3 (1997).

"acute encephalopathy" occurred within the appropriate time frame, petitioner or counsel should bring that to the assigned special master's attention so that, if appropriate, the case can be processed without delay as a Table Injury.

Finally, petitioners should note that even after electing to have their case stayed pending the conclusion of the Omnibus Autism Proceeding, such election is not irrevocable. That is, if at a future time a petitioner determines that his own case should be separated from the Omnibus Autism Proceeding and processed separately, with the petitioner introducing case-specific proof of causation, such petitioner may request that a special master analyze his case. A special master will be assigned and the case will be processed as expeditiously as possible.

### F. Obtaining Information About the Progress of the Omnibus Autism Proceeding

As noted above, during the course of the Omnibus Autism Proceeding, the individual autism cases will be stayed, with no case-specific proceedings conducted. During that time, however, the OSM will keep the petitioners in such cases well informed as to the progress of the Omnibus Autism Proceeding, by two devices.

First, the OSM from time-to-time will issue additional Autism General Orders detailing the progress of the Omnibus Autism Proceeding. Such general orders will be sent to all counsel, or petitioners appearing *pro se*, in autism cases.

Secondly, a specific page on this court's internet website will be devoted to the Omnibus Autism Proceeding. Relevant filed documents and periodic updates regarding the proceedings will be posted on that site. This page may be accessed by logging onto this court's website at www.uscfc.uscourts.gov, then clicking on the "Special Masters" icon.

### G. Conclusion

The Office of Special Masters is determined to process these autism petitions as swiftly and efficiently as possible, while giving all interested parties a fair opportunity to present their claims and evidence. We appreciate the assistance of all petitioners, petitioners' counsel, and respondent's representatives in this challenging endeavor.

Gary J. Golkiewicz
Chief Special Master
For the Office of Special Masters

8

EXHIBIT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**

```
* * * * * * * * * * * * * * * * * * * * * * * *
IN RE: CLAIMS FOR VACCINE INJURIES      *
RESULTING IN AUTISM SPECTRUM            *
DISORDER OR A SIMILAR                    *
NEURODEVELOPMENTAL DISORDER             *   AUTISM MASTER FILE
                                        *
VARIOUS PETITIONERS,                    *
                                        *
            v.                          *
                                        *
SECRETARY OF HEALTH AND                 *
HUMAN SERVICES.                         *
                                        *
            Respondent.                 *
                                        *
* * * * * * * * * * * * * * * * * * * * * * * *
```

**MASTER AUTISM PETITION FOR VACCINE COMPENSATION**

Pursuant to the Autism General Order #1 issued by the Office of Special Masters of this Court on July 3, 2002, this Master Autism Petition for Vaccine Compensation is hereby placed into the Omnibus Autism Master File created in the Office of the Clerk of this Court. As detailed in that Autism General Order #1, any petitioner desiring that his or her Vaccine Act claim be processed along with the other "Omnibus Autism" cases may file a "Short-Form Autism Petition for Vaccine Compensation" similar to that contained at Ex. β to the Autism General Order #1. Any petitioner who files such a short-form petition will be deemed to be representing that such petitioner's own particular claim meets the following criteria:

1.    The petitioner alleges a vaccine-related injury and/or death, and requests compensation under the National Vaccine Injury Compensation Program, codified at 42 U.S.C. §§ 300aa-10 et seq. (Supp. 1996).

2.    No civil action against a vaccine manufacturer or administrator for the vaccine-related injury or death alleged by the petitioner is pending. No person has previously collected an award or settlement of a civil action for damages for the vaccine-related injury or death being claimed.

3.  As a direct result of one or more vaccinations covered under the National Vaccine Injury Compensation Program, the vaccinee in question has developed a neurodevelopmental disorder, consisting of an Autism Spectrum Disorder* or a similar disorder. This disorder was caused by a measles-mumps-rubella (MMR) vaccination; by the "thimerosal" ingredient in certain Diphtheria-Tetanus-Pertussis (DTP), Diphtheria-Tetanus-acellular Pertussis (DTaP), Hepatitis B, and Hemophilus Influenza Type B (HIB) vaccinations; or by some combination of the two.

4.  The vaccinee received the vaccination or vaccinations in question in the United States, or otherwise in compliance with 42 U.S.C. § 300aa-11(c)(1)(B).

5.  The petition is being filed within three years after the first symptom of the disorder, or within three years after the first symptom of a vaccine-caused significant aggravation of the disorder. (If the vaccine-related death is alleged, the petition is being filed within two years after the date of death and no later than 48 months after onset of the injury from which death resulted.)

6.  The vaccine-related injury either has persisted for more than six months or resulted in death.

Therefore, by filing a "Short-Form Autism Petition for Vaccine Compensation," a petitioner will be deemed to be seeking an award under the National Vaccine Injury Compensation Program. Such a petitioner will be deemed to have deferred specific compensation demands, pursuant to 42 U.S.C. § 300aa-11(c), until the issue of entitlement to compensation is determined.

---

*An autism spectrum disorder is a brain disorder affecting the petitioner's ability to communicate, form relationships, and/or respond appropriately to the environment. Such disorders sometimes result in death. The "spectrum" of such disorders includes relatively high-functioning persons with speech and language intact, as well as persons who are mentally retarded, mute, or with serious language delays. Symptoms may include, but are not limited to, avoidance of eye contact, seeming "deafness," abrupt loss of language, unawareness of environment, physical abusiveness, inaccessibility, fixation, bizarre behavior, "flapping," repetitive and/or obsessive behavior, insensitivity to pain, social withdrawal, and extreme sensitivity to sounds, textures, tastes, smells, and light. National Institute of Mental Health, Publication 97-4023.

2

EXHIBIT B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

OFFICE OF SPECIAL MASTERS

_____

parent(s) of _____

_____, a minor,

             Petitioners,

    v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

             Respondent.

No. [leave blank          ]
Special Master [leave blank     ]

### SHORT-FORM AUTISM PETITION FOR VACCINE COMPENSATION

The petitioners, on behalf of their minor child, hereby petition for compensation under the National Vaccine Injury Compensation Program, and adopt the MASTER AUTISM PETITION FOR VACCINE COMPENSATION.

_____
Date

Check One:

      Attorney ☐
      Pro Se   ☐

Sign:_____
Print Name:_____
Address:_____
City, State, Zip:_____
Phone Number:_____
Fax Number:_____

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the attached Autism Petition for Vaccine Compensation was sent by First Class or Certified Mail on _____, to:

Secretary of Health and Human Services
c/o Director, Bureau of Health Professions
5600 Fishers Lane, Suite 8-05
Rockville, MD 20857

_____
Signature of person mailing Petition

EXHIBIT C

## AUTISM ADVISORY COMMITTEE PARTICIPANTS

### Participants from the Office of Special Masters

Chief Special Master Gary Golkiewicz
Special Master George Hastings
Special Master John Edwards

### Petitioners' Counsel Participants

Clifford Shoemaker
Ghada A. Anis
SHOEMAKER & ASSOCIATES
Vienna, VA

Jeff Thompson
WILLIAMS BAILEY, L.L.P.
Houston, TX

John Kim
GALLAGHER, LEWIS, DOWNEY & KIM
Houston, TX

Ben C. Martin
LAW OFFICES OF BEN C. MARTIN,
Dallas, TX

Ronald Homer
Kevin Conway
CONWAY, HOMER & CHIN-CAPLAN, P.C.
Boston, MA

### Participants Representing Respondent

Mark Raby
Vince Matanoski
U.S. Department of Justice

Vito Caserta, M.D., Chief Medical Officer
National Vaccine Injury Compensation Program
Medical Analysis Branch
U.S. Department of Health & Human Services

Deborah Harris
Office of General Counsel, Public Health Division
U.S. Department of Health & Human Services

Vernessa Pollard, Assistant Chief Counsel
Office of the Chief Counsel
Food and Drug Administration

Ex. C, p. 2

EXHIBIT D

## AUTISM PETITIONERS' STEERING COMMITTEE

Clifford Shoemaker
cliff@attorneyaccess.net

Ghada A. Anis
ghada@attorneyaccess.net

SHOEMAKER & ASSOCIATES
Attorneys and Counselors of Law
9711 Meadowlark Road
Vienna, VA 22182
Telephone: (703) 281-6395
Fax: (703) 281-5807

Jeff Thompson
jthompson@williamsbailey.com

WILLIAMS BAILEY, L.L.P.
8441 Gulf Freeway, Suite 600
Houston TX 77017-5001
Telephone: (713) 230-2207
Fax: (713) 643-6226

John Kim
jbkkimlaw@aol.com

GALLAGHER, LEWIS, DOWNEY & KIM
Bank of America Center
700 Louisiana Street, 40th Floor
Houston TX 77002
Telephone: (713) 238-7787
Fax: (713) 222-0066

Ronald Homer
rhomer@ccandh.com

Kevin Conway
kconway@ccandh.com

CONWAY, HOMER & CHIN-CAPLAN, P.C.
16 Shawmut Street
Boston, MA 02116
Telephone: (617) 695-1990
Fax: (617) 695-0880

EXHIBIT E

**OMNIBUS AUTISM PROCEEDING**

**MASTER SCHEDULING ORDER**

| | |
|---|---|
| July 3, 2002 | Autism General Order #1 |
| August 2, 2002 | Petitioners file discovery requests, setting forth the discovery sought from any party or entity subject to the control of respondent agency |
| September 3, 2002 | Respondent files response and any objections to petitioners' discovery requests |
| September 17, 2002 | Conference on discovery requests |
| October 8, 2002 | Hearing on discovery requests |
| February 3, 2003 | Petitioners file supplemental discovery requests setting forth any additional and/or third-party discovery sought |
| March 3, 2003 | Respondent and/or third parties file response and any objections to supplemental discovery requests |
| March 17, 2003 | Conference on supplemental discovery requests |
| April 3, 2003 | Hearing on supplemental discovery requests |
| August 22, 2003 | Discovery completed |
| August 22, 2003 | Petitioners designate experts for Omnibus Hearing |
| October 21, 2003 | Respondent designate experts for Omnibus Hearing |
| November 21, 2003 | Petitioners file expert reports with supporting authorities |
| January 21, 2004 | Respondent file expert reports with supporting authorities |
| February 20, 2004 | Any additional motions, objections, statements of interest, etc., must be filed |
| March 22, 2004 | Omnibus evidentiary hearing |
| May 3, 2004 | Post-hearing briefs due |
| July 3, 2004 | Decision on causation issues |



EXHIBIT F

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| — and —,<br>parents of<br>_____<br>_____ Petitioner[s], | * |
| v. | |
| SECRETARY OF HEALTH AND<br>HUMAN SERVICES, | |
| Respondent. | |

NOTICE TO DEFER PROCEEDINGS IN AUTISM CASE

     The petitioner[s] in this case believe[s] that the causation question in the case may be related to the general causation issues to be addressed in the Omnibus Autism Proceeding, and request[s] that case-specific proceedings in this case be deferred pending completion of the Omnibus Autism Proceeding.

                                     _____

                                     Counsel for Petitioner[s]

                                     [or Petitioner appearing pro se]

OFFICE OF SPECIAL MASTERS

No. 02-819V

(Filed: December 30, 2002)

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
KIM STEWART, Parent of Heath          *
Stewart, a Minor,                     *
                                      *
              Petitioner,             *
                                      *
       v.                             *        TO BE PUBLISHED
                                      *
SECRETARY OF HEALTH AND               *
HUMAN SERVICES,                       *
                                      *
              Respondent.             *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

Ronald Homer, Boston, Massachusetts, for petitioner.
Vincent Matanoski, Department of Justice, Washington, D.C., for respondent.

## ORDER DENYING MOTION TO DISMISS

*HASTINGS, Special Master*

   This is an action in which the petitioner seeks an award under the National Vaccine Injury Compensation Program (hereinafter "the Vaccine Program" or "the Program").[1] Respondent has filed a motion seeking dismissal of the petition. For reasons to be stated below, I hereby deny that motion.

I

## THE AUTISM CASES AND THE "OMNIBUS AUTISM PROCEEDING"

   The respondent's dismissal motion in this case arises in the context of an unusual situation

---

   [1]The applicable statutory provisions defining the Program are found at 42 U.S.C.§ 300aa-10 *et seq.* (2000 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2000 ed.). I also note that I will sometimes refer to the statute that enacted the Program as the "Vaccine Act."

involving multiple cases filed under the Vaccine Program that share a common issue of medical causation. Each of these cases involves an individual who suffers from a neurodevelopmental disorder known as "autism spectrum disorder"--"autism" for short--or a similar neurodevelopmental disorder. In each case, it is alleged that such disorder was causally related to one or more vaccinations received by that individual--*i.e.*, it is alleged that the disorder was caused by measles-mumps-rubella ("MMR") vaccinations; by the "thimerosal" ingredient contained in certain diphtheria-tetanus-pertussis ("DTP"), diphtheria-tetanus-acellar pertussis ("DTaP"), hepatitis type B, and hemophilus influenza type B ("HIB") vaccinations; or by some combination of the two. To date, nearly 1,300 such cases have been filed with this court, and many more filings (perhaps several thousand) are anticipated.

To deal with this large group of cases involving a common factual issue--*i.e.*, whether these types of vaccinations can cause autism--the Office of Special Masters (OSM) conducted a number of informal meetings with attorneys who represent many of the autism petitioners and with counsel for the Secretary of Health and Human Services, who is the respondent in each of these cases. At these meetings the petitioners' representatives proposed a special procedure by which the OSM could process the autism claims as a group. They proposed that the OSM utilize a two-step procedure: first, conduct an inquiry into the *general causation issue* involved in these cases-- *i.e.*, whether the vaccinations in question can cause autism and/or similar disorders, and if so in what circumstances-- and then, second, apply the outcome of that general inquiry to the individual cases. They proposed that a team of petitioners' lawyers be selected to represent the interests of the autism petitioners during the course of the general causation inquiry. They proposed that the proceeding begin with a lengthy period of discovery concerning the general causation issue, followed by a designation of experts for each side, an evidentiary hearing, and finally a ruling on the general causation issue by a special master. Then, the general causation conclusions, reached as a result of the general proceeding, would be applied to the individual cases.

As a result of the meetings discussed above, the OSM adopted a procedure generally following the format proposed by the petitioners' counsel. On July 3, 2002, the Chief Special Master, acting on behalf of the OSM, issued a document entitled Autism General Order #1.[2] That General Order sets up a proceeding known as the Omnibus Autism Proceeding (hereinafter sometimes "the Proceeding"). In that Proceeding, a group of counsel selected from attorneys representing petitioners in the autism cases are in the process of obtaining and presenting evidence concerning the *general issue* of whether these vaccines can cause autism, and, if so, in what circumstances. The results of that general inquiry will then be applied to the individual cases. (Autism General Order #1 at 3 (2002 WL 31696785 at *3).)

---

[2] The Autism General Order #1 is published at 2002 WL 31696785 (Fed. Cl. Spec. Mstr. July 3, 2002). I also note that the documents filed in the Omnibus Autism Proceeding are contained in a special file kept by the Clerk of this court, known as the "Master Autism File." That file may be viewed at the Clerk's office, or viewed on this court's Internet website at www.uscfc.uscourts.gov/osm/osmautism.htm.

2

The Autism General Order #1 assigned the responsibility for presiding over the Omnibus Autism Proceeding to the undersigned special master. In addition, I have also been assigned responsibility for all of the individual Program petitions in which it is alleged that an individual suffered autism or an autistic-like disorder as a result of MMR vaccines and/or thimerosal-containing vaccines. The individual petitioners have agreed that, in general, no proceedings with respect to the *individual* petitioners will be conducted until after the conclusion of the Omnibus Autism Proceeding with respect to the *general* causation issue.[3] The OSM will then deal specifically with the individual cases.

## II

## ISSUE OF THE "SHORT-FORM" AUTISM PETITIONS

As noted in the Autism General Order #1 (p. 4; 2002 WL 31696785 at *2), during the meetings of the informal advisory group, the respondent's representatives did not oppose the petitioners' general plan, as set forth above, that the OSM first conduct a general inquiry into the causation question, then apply the conclusions reached in that inquiry to the individual cases. A difference of opinion did emerge, however, on one important procedural point, a difference which ultimately resulted in the motion at issue here.

The petitioners' representatives proposed that would-be petitioners who wish to elect into the Omnibus Autism Proceeding be permitted to file their Program petitions by filing very simple short-form "opt-in" petitions. Each such short-form petition, it was proposed, would consist basically of a petition form containing the names of the injured vaccinee and that vaccinee's parents or other representatives, and an agreement to opt into the Omnibus Autism Proceeding. By using the short-form petition, each petitioner would automatically be asserting that the vaccinee had suffered autism or a similar disorder as a result of MMR vaccinations and/or thimerosal-containing vaccinations. The short-form petition would not contain a detailed account of the relevant vaccinations and the history of the vaccinee's disorder, nor would it be accompanied by the medical records of the vaccinee's injury. Respondent's representatives indicated that they could not agree to this part of the petitioners' proposal, which would allow the filing of a "short-form" petition unaccompanied by medical records. They pointed to the statutory provisions calling for a Program petition to set forth a detailed account of the injury alleged, and contended that a petition must be filed along with all relevant medical records. *See* § 300aa-11(c).

The OSM noted this concern of respondent in the Autism General Order #1 (p. 7, fn.4), and then analyzed the concern in detail in a document filed on July 8, 2002, entitled "Discussion of Issue of Short-Form Petitions" (hereinafter "Discussion"). Like the Autism General Order #1, this

---

[3]I note that it is up to each individual petitioner to determine whether to defer proceedings concerning his own case pending the completion of the Omnibus Autism Proceeding. If an individual petitioner has proof of causation in his own case that he wishes to put before a special master at any time, that petitioner will be allowed to do so.

"Discussion" document was filed by the Chief Special Master on behalf of the OSM. The Chief Special Master acknowledged that the respondent was raising serious and important concerns, but, considering all the circumstances, concluded that it was appropriate to permit use of the short-form petitions. (Discussion at 2-4.)

After publication of the Autism General Order #1, many petitioners began to file short-form petitions as a way of simultaneously filing their Program petitions and indicating their agreement to stay proceedings in their own individual cases pending the completion of the Omnibus Autism Proceeding. As of November 30, 2002, more than 1100 short-form petitions or very similar petitions[4] had been filed. The petitioner in this case, Kim Stewart, filed a short-form petition on July 18, 2002. No medical records were filed with the petition, although petitioner's counsel also filed a "Motion for Issuance of Subpoena," requesting permission to utilize court subpoenas to obtain medical records pertaining to the autistic condition of petitioner's son, Heath Stewart. I issued an Order in this case on August 7, 2002, granting the subpoena request and confirming that, at petitioner's request, I would not conduct any case-specific proceedings in this case (unless requested by a party) until the completion of the Omnibus Autism Proceeding.

On August 15, 2002, the respondent filed a "Motion to Dismiss" (hereinafter "Motion") asserting that this petition should be dismissed because it was not accompanied by medical records or affidavits describing Heath Stewart's condition. Petitioner's counsel requested extensions of time for responding to the motion, so that counsel could consult with other attorneys representing autism petitioners before filing petitioner's response. Petitioner ultimately filed her reply to the motion ("Reply") on December 2, 2002, urging that I deny the motion to dismiss. Respondent filed a response memorandum ("Response") on December 5, 2002.

### III

### THE STATUTE DOES NOT REQUIRE THAT I DISMISS THIS PETITION

I have carefully considered respondent's arguments, but I conclude that, contrary to respondent's contentions, the statute does not require that I dismiss this petition. My reasoning will follow.

Respondent bases his motion chiefly upon those portions of the Vaccine Act which state that certain documents are to be filed with a Program petition. The Vaccine Act states that a petition "shall contain * * * an affidavit, and supporting documentation, demonstrating that" the petitioner qualifies for an award under Program. § 300aa-11(c)(1). The Act further states that certain types of medical records, such as prenatal, vaccination, and physician records, shall accompany the petition.

---

[4]More than 600 petitions have been filed using the "short-form" format as set forth in the Autism General Order #1, Ex. B; no medical records were filed with most of those petitions. In addition, one law firm has filed more than 500 petitions that are only slightly more detailed than the short-form version; those petitions also were filed without medical records.

4

§ 300aa-11(c)(2). Based on these provisions, respondent seems to argue that any petition that is not accompanied at the time of filing by all the records mentioned in § 300aa-11(c)(2) must therefore automatically be dismissed, for failure to comply with the statute. I find this argument to be wholly unpersuasive.

It is true that, as respondent points out, § 300aa-11(c) of the statute contemplates that, ideally, a Program petition will set forth all details of the vaccinee's injury, and be accompanied by all relevant medical records. As respondent notes, the instruction that a petitioner file a detailed petition with all relevant medical records was obviously designed to enable the special master to promptly evaluate and rule upon the claim. Throughout the history of the Program, the special masters have strongly urged that detailed petitions accompanied by all medical records be filed whenever possible. And in situations where such complete petitions have been filed, special masters have done everything possible to speedily evaluate and rule upon such petitions.

However, the history of the Program has also shown that the ideal is not achieved in every Program case. In a great many Program cases (probably a substantial majority) petitions have been filed with some medical records, but not all of those necessary for processing the case.[5] In such cases, the processing of the claim has been delayed for at least some period of time until the additional records could be obtained. Indeed, in a substantial number of cases--usually those in which the final allowable filing date under the statutory limitations period was approaching-- petitions have been filed without *any* records at all; in some such cases the petitions have also contained very little description of the injury claimed, amounting to no more than a statement that a vaccinee was injured by a vaccination. In those situations, the processing of each case was delayed until all relevant records were obtained and the petitioner could specifically describe the alleged injury. This process sometimes has taken many months, and, in a few extreme cases in which it was very difficult to obtain medical records, even years.

Yet, in these situations, it has not been argued, by respondent or anyone else, that petitions that were not complete when filed should be summarily dismissed for that reason. In such situations, the special masters have generally urged that the necessary records be filed as soon as possible, but have afforded such petitioners the time needed to obtain and file records. Thus, for fourteen years-- the entire history of the Program--failure to file all of the relevant medical records with a petition has never been considered reason to dismiss the petition. But now, for the first time, respondent proposes a new and extremely harsh interpretation of the statute. What has generated this startling change of statutory interpretation by respondent? Respondent does not tell us.

Of course, as respondent has pointed out (Response at 4), the fact that respondent has not sought in the past to dismiss petitions that were unaccompanied by medical records does not automatically mean that respondent's current motion is without merit. The proper question, as

---

[5] For example, petitioner's counsel, whose law firm has probably handled more Program cases on petitioners' behalf than any other firm over the past fourteen years, asserts that "in practice, vaccine petitions are almost never filed with complete supporting documentation."

respondent points out, is whether the statute requires dismissal in this case, even if, in answering that question, I were to conclude that all parties (including respondent) have been erroneously interpreting the statute for 14 years.[6] Addressing that question, I conclude that the statute does *not* require dismissal.

Respondent's memorandum's asserts that the issue involved in this motion is whether a special master in a Program case has authority to "amend or alter" the statute, or to "waive requirements" set forth in the statute or this court's rules. (Motion at 5, 7.) Of course, a special master has no authority to "amend," "alter," or "waive" statutory requirements. The question, rather, is whether any part of the statute *requires* that a petition *automatically be dismissed* if it is filed without the medical records necessary to fully evaluate the petition. Reading the statute as a whole, I conclude that the statute does *not* so require.

The short summary of my analysis is simply that there is nothing in the statute or the rules of this court indicating that when a Program petition is filed without medical records, it must *automatically* be dismissed. While the statute does state, as noted above, that the petition "shall" contain certain medical records, the statute and this court's rules are silent concerning what should happen in the event that a petition is filed without such medical records. The interpretation of the statute that has obviously been utilized by all of the special masters throughout the history of the Program is that, considering the statute as a whole, the presiding special master in each Program case has *discretion* to regulate the procedure in order to further the goals of the Program. That is, the interpretation has been that the special master has *discretion* to entertain petitions filed without all of the required documents, and to allow the petitioner to file at a later time any documents that were not filed with the petition.

The existence of such discretion is supported by the statutory description of the duties of special masters, contained at § 300aa-12(3)(B). That statutory section provides a special master presiding over a Program case with broad discretion in determining how to take evidence and to resolve the claim. It provides, *inter alia*, that the special master "may require such evidence as may be reasonable and necessary," "may require the submission of such information as may be reasonable and necessary," and "may require * * * the production of any documents as may be reasonable and necessary." § 300aa-12(d)(3)(B)(i), (ii), and (iii). The fact that this provision in general gives the special master such extremely broad discretion, in determining procedure in Program cases, provides implicit *general* support to the conclusion that Congress must have intended that a special master

---

[6] I note that in a number of *non-autism* Program cases petitions have been filed without medical records even since the date (August 15, 2002) on which respondent filed the dismissal motion in this case. In those cases, not only has respondent not filed any dismissal motions, but respondent's attorneys, to their credit, have often been helpful in such cases in assisting petitioners in obtaining and filing the necessary medical records. It is confusing to me how respondent's counsel can take the position in this case that I have no discretion to do anything but dismiss the petition, but in other cases in which petitions were filed without medical records, respondent *to this day* seems to have no objection to processing the cases.

have *discretion* in determining when, if ever, a petition should be dismissed for failure to supply the relevant medical records. Moreover, it is also important that the portions of § 300aa-12(d)(3)(B) quoted above *specifically* give the special master authority to "require * * * evidence," "require the submission of * * * information," and "require the production of * * * documents." These provisions, thus, *specifically* give the special master broad discretion to determine the *timing* of submission of evidence in a Program proceeding, which evidence obviously will nearly always include *medical records*. These provisions would seem to become meaningless if the statute required the immediate, automatic dismissal of any petition not accompanied by all of the records described in § 300aa-11(c).

A review of this court's *rules* also supports my conclusion that a special master has discretion whether or not to dismiss a petition that is unaccompanied by all specified medical records. This court has promulgated the "Vaccine Rules," which currently appear at Appendix B to the Rules of the United States Court of Federal Claims. Vaccine Rule 1 states that "[i]n all matters not specifically provided for by the Vaccine Rules, the special master * * * may regulate the applicable practice * * *." Vaccine Rule 3 provides that "[t]he special master shall determine the nature of the proceedings" in Program cases. Vaccine Rule 8 states that "[t]he special master in each case, based on the specific circumstances thereof, shall determine the format for taking evidence * * *." The Vaccine Rules, then, in giving the special master such extremely broad discretion over Program proceedings—*i.e.*, authority to "regulate the applicable practice," to "determine the nature of the proceedings," and to "determine the format" for taking evidence--also imply that a special master must have discretion whether or not to immediately dismiss a petition when it is filed without medical records.

Further, as petitioner has pointed out, a change in the Vaccine Rules adopted by this court seems to *specifically indicate* that a special master should not automatically dismiss a petition filed without medical records. That is, in the set of Vaccine Rules adopted by this court on January 18, 1990, Vaccine Rule 2 contained section (e)(4), which stated as follows:

> "Petitions not accompanied by all the documents required by statute and the Vaccine Rules, or an affidavit explaining why any missing required documents are unavailable, will not be filed by the Clerk."

That section (e)(4) of Rule 2, however, was, in practice, not enforced, to my knowledge. To the contrary, when for the first time a general revision of the Vaccine Rules was undertaken, section (e)(4) of Rule 2, as quoted above, was deleted. And in deleting that provision, the Rules Committee of this court explained the reason for the deletion as follows.

> The actual practice has been for the clerk to file any document that purports to be a petition, and then the respondent and/or the special master notifies petitioner if all

7

required records were not submitted.  This approach is preferable to having the clerk reject petitions, which might result in missing the limitations period.[7]

Thus, the judges of this court acting collectively, in revising this court's rules, have explicitly rejected an interpretation of the Vaccine Act that would require rejection of a Program petition merely because it was not accompanied by medical records.  This action by the judges of this court clearly offers support to the interpretation of the statute that I am adopting here.

I note further that the interpretation of the statute that I am adopting here does not disregard or ignore the provisions of § 300aa-11(c), described above, with regard to the filing of medical records and other supporting documentation.  As respondent points out, the instruction contained in § 300aa-11(c), that a petitioner file a detailed petition accompanied by all relevant medical records, was obviously designed to enable the special master to promptly evaluate and rule upon the claim. And it seems likely that Congress expected that in most Program cases, the petitioner would be able to file the relevant records with the petition, and thereafter would be able to promptly present petitioner's theory of entitlement to the special master.  However, Congress must have understood that in at least *some* cases the relevant medical records could not be filed along with the petition, and/or the petitioner would not be immediately ready to present the petitioner's proof of entitlement to the special master.  Certainly Congress must have intended that in such cases the special master would have discretion to supervise the filing of evidence and the processing of the case in an orderly fashion appropriate to the circumstances.  There is nothing in the statute or the legislative history to indicate that Congress intended that the special master would be required to *automatically dismiss* any case in which all relevant documents could not be filed with the petition.  Therefore, I do not believe that my interpretation of the statute conflicts with the directives concerning the filing of affidavits and medical records contained in § 300aa-11(c).

Further, I am *not* claiming, as respondent suggests, the authority to "waive" or "amend" the requirement that the petitioner file the materials described in § 300aa-11(c).  Of course, I would not purport to *resolve* this case without those materials.  I conclude merely that a special master has discretion to *defer* the filing of such materials *to a later time*, in situations in which the overall circumstances of the case make such deferral seem appropriate.

Further, as petitioner has argued, respondent's interpretation of the statute, as requiring automatic dismissal of this petition, seems to be grossly inconsistent with the very purposes of the Program.  Congress enacted the Program chiefly for the twin purposes of reducing tort litigation against vaccine manufacturers and administrators, as well as compensating individuals who may have been harmed by vaccinations. (See, *e.g.*, H.R. Rept. No. 99-908, 99th Cong., 2d Sess., pp. 3-7 (reprinted at 1986 U.S. Code Cong. & Admin. News 6344-6348).)  Further, the Vaccine Act clearly seems to require that, as respondent himself agrees, all claims of the sort involved in the Omnibus

_____

[7]"Notice of Proposed Changes to Appendix J of the Rules of Procedure (Vaccine Rules)," May 16, 2000, Page 4, Rules Committee Note to Rule 2(e)(4).

Autism Proceeding *must* be filed in the Vaccine Program.[1] *Leroy v. Secretary of HHS*, No. 02-392V, 2002 WL 31730680 (Fed. Cl. Spec. Mstr. Oct. 11, 2002). Given that the Vaccine Act *required* the autism petitioners to bring their claims to this court as Program petitions, how would it further the purposes behind the Program if I interpreted the statute to require that I immediately *dismiss* most of those petitions because they were not filed along with complete medical records? To the contrary, such an interpretation would clearly seem to *frustrate* the clear Congressional intent that these claims be adjudicated under the Program, and that such petitioners be given a chance in Program proceedings to demonstrate the merits of their claims.

In short, for all the reasons stated above, I must reject the respondent's argument that the Vaccine Act requires the automatic dismissal of this petition, or of any petition filed under the Program, merely because such petition was not accompanied by all of the materials listed at § 300aaa-11(c). Rather, I conclude that the statute, viewed as a whole, affords the special master with broad *discretion* to determine *when* a petitioner must file the required documents. I conclude that in an appropriate situation--for example, if the special master has repeatedly instructed a petitioner to supply documents but that petitioner has refused or failed to do so--a special master may dismiss a Program petition for failure to file the records mentioned at § 300aa-11(c). But the respondent's argument that the statute *requires* automatic dismissal *whenever* a petition is filed without those records is, in my view, without merit.[2]

## IV

## EXERCISE OF DISCRETION

As noted above, I conclude that I have *discretion* whether to dismiss this case. Of course, I will exercise that discretion in favor of *denying* respondent's motion to dismiss. The petitioner in this case submitted her petition in reliance on the statement in the Autism General Order #1 (p. 7; 2002 WL 31696785 at *6) authorizing the use of short-form petitions in autism cases. Further, the fact that no records have been filed as yet in this case certainly is not delaying resolution of the case in any way, since the petitioner and her counsel have elected to defer proceedings in this case

---

[1] Under the Vaccine Act, a claimant alleging injury from a thimerosal-containing vaccination or MMR vaccination may not sue a vaccine administrator or manufacturer without first bringing a Program claim. See *Leroy v. Secretary of HHS, supra*; § 300aa-11(a)(2).

[2] Respondent has also stated that the short-form petitions "raise a significant question regarding whether they are legally adequate to stop the running of the Vaccine Act's statute of limitations." (Motion at 5, fn.1.) I do not understand why there would be such a question. By filing the short-form petition, the petitioner is clearly naming a particular vaccinee, alleging that such vaccinee suffered autism or an autism-like disorder as a result of MMR vaccines and/or thimerosal-containing vaccines, and certifying that the petition is being timely filed. (See Autism General Order #1 at Exhibits A and B (2002 WL 31696785 at *7-8).) I do not understand how such a petition might fail to stop the running of the Vaccine Act's statute of limitations.

pending the completion of the Omnibus Autism Proceeding. I see no reason whatsoever to dismiss this petition.

V

I WILL NOT REQUIRE THE FILING OF RECORDS AT THIS TIME

As set forth above, I see no merit in the idea that I should dismiss the petition in this case. Indeed, the dismissal of this petition would seem to be such a harsh and unwarranted result that it is hard for me to believe that what respondent actually desires is that the petition be dismissed. I note that during the informal discussions that led to the Omnibus Autism Proceeding, discussions in which I participated, respondent's representatives argued that autism petitioners should be required to file detailed petitions accompanied by all medical records relevant to the vaccinee's condition. Perhaps what respondent's counsel actually wish me to do in this case—and in all of the autism cases involving short-form petitions or similar petitions—is not to *dismiss* the petition, but to order the petitioner to *supplement* the petition *at this time* with a detailed statement concerning the vaccinee's condition and copies of all related medical records. If that is actually what respondent seeks, then that request would strike me as a more reasonable request than respondent's stated assertion that I should *dismiss* the petition. Nevertheless, after careful consideration, I conclude that the Chief Special Master was correct when he determined, after consultation with other special masters, that it is appropriate to allow the autism petitions to be filed via short-form petitions, and to permit the filing of medical records in these cases to be deferred pending the completion of the Omnibus Autism Proceeding.

Initially, I acknowledge that the use of the short-form petitions in the autism cases has created a situation which is somewhat different from many situations in which, in the past, Program petitions have been filed without medical records. That is, in many cases over the history of the Program when incomplete petitions were filed, it was expected that the petitioners would move *expeditiously* to fill in the gaps in their petitions by supplying additional details and/or medical records. The procedure now being adopted in these autism cases, thus, is different, because the adopted procedure in the autism cases contemplates that in most of these cases the petitioners will not be required to supplement their petitions for many months, perhaps as much as two years. But this procedure is not wholly unprecedented. In late 1990 and early 1991, the Program was inundated with several thousand petitions filed at the end of the deadline for the so-called "pre-Act" cases involving vaccinations occurring prior to October 1, 1988. The system was unable to promptly and simultaneously process all those cases, and thus the cases were processed in a staggered fashion. At that time, the OSM did instruct many petitioners, whose cases could not be processed immediately, to delay filing their medical records until notified to so do. (*See* unnumbered General Order filed November 1, 1991.) As far as I am aware, neither the respondent nor anyone else argued at the time that that procedure, necessitated by a deluge of case filings in a short time period, was objectionable.

The Program now faces an influx of petitions that seems likely to rival, in numbers, the 1990-91 case filings. And as now constituted (six special masters currently in active service, a maximum

10

of eight authorized by statute), the OSM could not immediately analyze voluminous medical records in thousands of cases, even if requested to do so by petitioners. Moreover, the crucial factor is that the OSM is *not being requested* by petitioners to individually analyze the factual records in each of these cases at this time. The autism petitioners have requested, rather, that the OSM first conduct an inquiry into the *general causation issues*, and only *then* analyze the individual records if appropriate. In such circumstances--*i.e.*, petitioners do not want the OSM to analyze the individual case records at this time; the OSM does not currently have sufficient personnel to analyze the individual case records; the office of the Clerk of this court would be strained to accept and file the individual case records; and the individual records do not bear on the general causation issues to be decided in the Omnibus Autism Proceeding--I see no practical reason to require petitioners to file voluminous stacks of records in each individual case at this time.[10]

In this regard, respondent has stated that by permitting petitioners to refrain from initially filing medical records with their petitions, the OSM is guilty of "virtually guarantee[ing] that no statutory time goals will be realized in any of these cases." (Motion at 4.) This assertion is certainly misplaced. It is true, of course, that the statute states a time goal of 240 days for resolution of a Program claim (§ 300aa-12(d)(3)(A)(ii)), and that for the currently-filed autism cases that goal obviously will not be met. But, as respondent is well aware, the fact that we will not be able to meet the time goal in these cases clearly has nothing to do with the OSM's decision to allow short-form petitions. Rather, the delay is due to the fact that the *autism petitioners themselves* have requested an extended procedure in which we first engage in extensive discovery procedures, next explore the general causation issue, and only thereafter turn our attention to the individual cases. The goal of speedy resolution of Program petitions was obviously intended to benefit *petitioners*, not respondent. If the autism petitioners wish to utilize a relatively time-consuming procedure in order to give themselves the best chance of proving their cases, I see nothing wrong with that. And it should be quite clear that any delay in final resolution of these autism cases will result from the *petitioners' own choices* concerning how to pursue their cases, not from the OSM's decision to permit short-form petitions.

Respondent has also suggested that a reason for requiring more detailed petitions, and requiring medical records to be promptly filed in each autism case, would be to enable respondent's counsel to analyze each individual case to see whether the petition was *timely filed*, pursuant to § 300aa-16, which provides the deadlines for timely filing petitions. Respondent seems to suggest that in the event that the general causation issue is ultimately resolved in a way that would be favorable to some of the autism cases, then the processing of individual cases at that time might be speedier if the files in each case were already complete, and if the respondent had already been able to review each case to see if it was timely filed.

Again, there is some merit in the respondent's argument, but again, viewing the entire situation with an eye toward practicality, I agree with the decision reached by the Chief Special

---

[10]As petitioner's counsel points out (Reply at 7), in autism cases the medical and developmental records are likely to be quite voluminous.

11

Master, on behalf of the OSM, that there is no need for a rush to supply medical records in each case for this purpose. I agree with the reasoning of the Chief Special Master (see Discussion at 3-4) that it would make no sense for the OSM to begin a huge expenditure of time and effort toward determining whether individual autism cases were timely filed, prior to the completion of the Omnibus Autism Proceeding. There are several reasons for this conclusion.

First, the issue of whether any individual autism case was timely filed may very well prove to be *completely moot.* That is, if the Omnibus Autism Proceeding does not produce valid proof of causation that would apply to a particular case, and that particular petitioner is otherwise unable to demonstrate a causal link between the particular vaccinee's condition and a vaccination, then, as far as qualifying for compensation for the injury, it would be a moot point whether the petition was timely filed. Of course, the issue of timely filing might prove to be relevant to the issue of whether the petitioner would be entitled to an award for *attorneys' fees.*[11] However, in a particular case a petitioner might *never* seek an award for attorneys' fees. Therefore, any time spent by the parties or the special masters in autism cases concerning timeliness issues, prior to resolution of the general causation issues,[12] may prove to be a complete waste of time.

A second reason, in my view, involves the fact that there are currently pending before Congress proposals to modify § 300aa-16(a), which defines the period for timely filing a Program petition. Respondent's own representatives, I understand, have endorsed one such proposal, which would extend the filing period specified in § 300aa-16(a)(2) from 36 months after the onset of symptoms to 72 months after onset. Other pending proposals would provide an even lengthier time period for filing. Further, as I understand it, it appears not only possible, but *very likely,* that *some* kind of change in the limitations period will be enacted by the incoming Congress. Therefore, in this unusual situation in which a change to the applicable statutory provision is not only possible, but *seems likely,* it would seem to be an unfortunate waste of resources to expend extensive attorney and

---

[11]Under the Program a petitioner who fails to demonstrate entitlement to an award for an injury may nevertheless be granted compensation for attorneys' fees, if the petition was filed in good faith and with a reasonable basis in fact. (§ 300aa-15(e)(1).) However, it has been held that if the petition was not *timely filed,* the petitioner is ineligible even for an attorneys' fee award. See, *e.g., Jessup v. Secretary of HHS,* 26 Cl. Ct. 350 (1992).

[12]To be sure, in many court proceedings, including Program cases, it is common to resolve "timely filing" issues *prior* to addressing the substantive merits of the case. But that procedure makes sense in many proceedings because resolving the timeliness issue in such a case may prevent the need for a lengthy trial concerning the substantive merits of the case. With respect to the autism cases, on the other hand, we will need to explore the *general* causation issues *in any event,* even if many individual cases were to be dismissed on timeliness grounds. Therefore, in terms of conserving the resources of both the parties and the OSM, it seems to make sense to delay spending time on individual timeliness issues, since the resolution of the general causation issue may make the timeliness issues moot.

12

special master time in grappling with timeliness issues in large numbers of autism cases, pursuant to a provision that is likely to be changed.

Third, I note that "timely filing" issues in autism cases have the potential to be far more complicated than timeliness issues in other types of cases, in or out of the Program. For example, autism seems to be a disorder with no dramatic and obvious onset, so that determining what was the "first symptom" of an autistic disorder is a question of fact that might be quite complex in many cases. Further, the causation theory in the autism cases seems to be that the vaccinee is injured by a *combined effect* of a number of different vaccinations. If that is so, then the statute-of-limitations issues become even more complex. For example, if a vaccinee was injured by a combination of vaccination A and vaccination B, then it may turn out that such vaccinee's petition was *not* timely filed with respect to the first symptom of the injury caused by vaccination A, but *was* timely filed with respect to the first symptom of the *additional injury* caused by the later-administered vaccination B. In other words, in the autism cases the issues of *timely filing* may be inextricably intertwined with resolving the *causation* issues. Therefore, this potential complexity of the timeliness issues with respect to the autism cases adds, in my view, another very strong reason for deferral of timeliness issues until the completion of the Omnibus Autism Proceeding.

Fourth, petitioner's counsel are still estimating that several thousand more autism cases are likely to be filed with this court in the coming months. If this occurs, and if I were to require detailed records to be provided with each petition at this time, it seems doubtful that respondent would have sufficient personnel available to analyze each case for potential timeliness issues. Further, even if respondent were able to analyze each case, and raised timeliness issues in a substantial number of cases, it would not be possible or desirable for the special masters to spend time resolving such timeliness issues. Recognizing the constraints of time and resources, I agree with the Chief Special Master that the special masters' efforts would best be dedicated to (1) resolving the general causation issues in the Omnibus Autism Proceeding, and (2) processing the many non-autism cases on each special master's docket. The parties' time and resources are likewise best allocated to those two tasks, rather than to addressing timeliness issues in autism cases that may prove to be moot.

In short, although I have given full consideration to the concerns raised by respondent, in the very unusual circumstances presented by these autism cases, with the likelihood of thousands of case filings in the upcoming months, I find it appropriate to continue to allow the filing of short-form autism petitions, and to allow the autism petitioners, if they wish,[13] to defer the filing of medical records to a later time.

## VI

## CONCLUSION

For the reasons stated above, the respondent's motion to dismiss this petition is hereby

---

[13]An autism petitioner, of course, may file a more detailed petition, and medical records, if the petitioner wishes to do so.

13

denied. As previously noted, at petitioner's request I will continue to refrain from conducting case-specific proceedings in this case, pending the outcome of the Omnibus Autism Proceeding.

George L. Hastings, Jr.
Special Master

14



### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

03 FEB 27  AM 10: 07

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JIMMY CARR and SUSAN CARR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CV 02-J-3096-NE |
| | ) | |
| AVENTIS PASTEUR, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ENTERED**

FEB 2 7 2003

### ORDER

Pending before the court are defendant Eli Lilly Company's motion to dismiss (doc. 9), defendant Sigma Aldrich Inc.'s motion to dismiss, or in the alternative, motion to stay (doc. 11), and defendants Aventis Pasteur Inc., SmithKline Beecham Corporation d/b/a GlaxoSmithKline, Merck & Co., Inc., and Wyeth's motion to dismiss (doc. 7).

Plaintiffs Jimmy and Susan Carr have brought this action to recover damages for loss of consortium and services on the basis of defendants' negligence, wantonness, fraud, conspiracy and a violation of the Alabama Extended Manufacturers Liability Doctrine (AEMLD), which plaintiffs allege caused injury to their child, Daniel Carr. Daniel Carr allegedly suffers from an autism-like disorder as a result of taking a childhood vaccine containing thimerosal, a chemical compound containing mercury, which is used as a preservative in vaccines thereby enabling the manufacturers to supply vaccines in multi-dose batches rather than in single units.

Defendants asserts that plaintiffs' claims are due to be dismissed pursuant to the

32

Vaccine Act. 42 U.S.C. § 300aa. The Vaccine Act provides a compensation system for injuries resulting from the administration of a childhood vaccine. *Id.* The intent behind this act was to limit litigation expenses for vaccine manufacturers thereby encouraging vaccine development. *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 2 (1st Cir. 1994). Where an individual alleges vaccine related injuries he may bring a claim before a special master appointed by the United States Court of Federal Claims. An individual solely must prove that the vaccine caused his injuries in order to obtain a recovery. Subsequently, this individual may reject any recovery that he obtained and file a civil lawsuit against the manufacturers. 42 U.S.C. § 300aa-21.

Defendants assert that plaintiffs' claims are due to be dismissed because they have failed to first file a petition for relief before the special master/vaccine court. When an individual sustains vaccine-related injuries and files a civil lawsuit against a vaccine manufacturer alleging damages in excess of $1,000, he or she must first file a petition with the special master/vaccine court. 42 U.S.C. § 300aa-11(a)(2)(A); *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995). The court is required to dismiss any action by a plaintiff who fails to file a petition before filing a civil lawsuit. 42 U.S.C. § 300aa-11(a)(2)(B). However, only the claims of individuals (or the legal representatives of those individuals) who have sustained vaccine-related injuries are barred by this requirement. 42 U.S.C. § 300aa-11a(9) and 11b(1)(A).

This action is not due to be dismissed on these grounds. Parents bringing a civil

2

action, on their own behalf, for damages to themselves, arising from injuries to their child, need not first file a petition before the vaccine court. *Schafer*, 20 F.3d at 6; *Owens v. American Home Products*, 203 F.Supp.2d 748, 756 (S.D. Tex. 2002). Parents, suing for their own injuries, are not even eligible to file a petition before the vaccine court. *Id.*; 42 U.S.C. § 300aa-11(a)(9).

The court finds that plaintiffs may have viable claims for fraud, conspiracy, loss of services of the child and AEMLD. Therefore, defendants' motions to dismiss those claims are DENIED. Plaintiffs' claim for negligence/wantonness merges into the claim for AEMLD as both are premised upon the same underlying allegations and theory. *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1310 (11th Cir. 2000). In essence, under the facts here, plaintiffs' claim for negligence/wantonness is the same as that for AEMLD. *Id.* Defendants' motions as to plaintiffs' claim for negligence/wantonness are GRANTED and the claim is DISMISSED WITH PREJUDICE.

Plaintiffs' claim for loss of consortium is dismissed by this court as no cause of action exists under Alabama law for that type of claim. The Alabama Supreme Court has specifically found that the "loss of the society of a child...cannot form the element of recoverable damages." *Hannon v. Duncan*, 594 So.2d 85, 93 (Ala. 1992). Defendants' motions as to plaintiffs' claim for loss of consortium are GRANTED and that claim is DISMISSED WITH PREJUDICE.

A parent's claim for loss of services is derivative of the child's claim for personal

3

injury under Alabama law. *Owens v. Lucas*, 604 So.2d 389 (Ala. 1992). As this is a derivative claim, it may not proceed at this juncture because Daniel Carr's injury is currently being adjudicated in the Vaccine Court. Upon the disposition of the child's claim, the parents' claim for loss of services may proceed.

Additionally, plaintiffs may not recover any damages for their child's medical expenses resulting from the alleged injuries from the vaccine. Plaintiffs cannot make a double recovery for damages. Daniel Carr has already made a claim before the Vaccine Court for his medical expenses. Daniel Carr may file a civil action following the adjudication of his claims in Vaccine Court if he is unsatisfied with any recovery obtained. Plaintiffs' attempt to recover medical expenses through this action is nothing more than an attempt to circumvent the bar put in place by the Vaccine Act requiring a child to first seek recovery from the Vaccine Court for injuries related to a vaccine.

However, it is this court's opinion, that the plaintiffs' remaining claims before this court are due to be stayed. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936). However, the court's power to stay an action should not be abused and any stay should be narrowly tailored so as not to unduly prejudice the parties. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985).

4

There are several factors which support the imposition of a stay in this action. In order to recover on their claims, plaintiffs must establish that defendants caused the injuries sustained by their son. The general issue of whether thimerosal causes autism-like disorders is currently pending before the vaccine court. Autism General Order #1, United States Court of Federal Claims, Office of Special Masters, July 3, 2002. If it is found to cause autism or autism-like disorders, it will then be determined if this conclusion can be applied to individual cases before the Vaccine Court, including Daniel Carr's. *Id.* at 3. To reach this conclusion, a number of experts will be retained. In essence, the parties will be required "to conduct a parallel inquiry, on a different timetable, to determine plaintiffs' right to recover." *Case v. Merck & Company*, CV-02-1779, 2003 U.S. Dist. Lexis 770 (E.D. La. Jan. 17, 2003). This would be duplicative, wasteful and inefficient.

Finally, this court notes that the evidence does not demonstrate that a stay of limited duration will cause undue prejudice to the plaintiffs in this action. Therefore, a stay in this action is due to be granted in the interest of justice. In analogous situations to that present before this court, other courts have similarly ordered the implementation of stays. *Case v. Merck, et al.*, No. 02-1779, 2003 U.S. Dist. Lexis 770 (E.D. La. Jan. 17, 2003); *Russak v. Aventis Pasteur*, No. A-02-CA-480-SS, at 8 (W.D. Tex. Sept. 9, 2002); *Owens v. American Home Products Corporation*, No. G-02-185, at 1 (S.D. Tex. July 12, 2002).

5

Based upon the foregoing rationale, defendants' motion to stay is **GRANTED**. It is further **ORDERED** that plaintiffs shall file a status report with this court every six months from the date of this order informing the court of the status of Daniel Carr's petition in the vaccine court. This action is **STAYED** pending the outcome of the Vaccine Court proceedings.

**DONE** and **ORDERED** this the _27_ day of February, 2003.

Inge P. Johnson
U.S. District Judge

6



**THE STATE OF NEW HAMPSHIRE**
**Northern District of Hillsborough County**
300 Chestnut Street
Manchester, NH 03101 2490
603 669-7410

AUG 1 2 2003

DEBRA W FORD ESQ
DEVINE MILLIMET & BRANCH
P O BOX 974
NORTH HAMPTON NH 03862

- 01-C-0663 Mark Cyr, et al.  v.  Aventis Pasteur, Inc., et als

        You are hereby notified that on August 8, 2003
the following was entered in the above matter:

RE: ORDER OF COURT:

        Copy of order enclosed.

|  |  |
|---|---|
| 8/11/2003 | /s/ John Safford |
| Date | Clerk of Court |

cc:  D. Michael Noonan, Esq.          Bruce W Felmly, Esq.
     James Q Shirley, Esq.            Lisa Snow Wade, Esq.
     Ronald J Lajoie, Esq.           Karen F Wolf, Esq.
     William D Pandolph, Esq.        Frank W. Beckstein, III, Esq.
     Kenneth G Bouchard, Esq.        Sarah B. Knowlton, Esq.
     Michael J. Connolly, Esq.       Daniel J. Thomasch, Esq.
     Richard W. Mark, Esq.           Lauren J. Elliot, Esq.
     Christopher H.M. Carter, Esq.

AOC Form SUP150 (Rev. 05/09/2001)

STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS                                    SUPERIOR COURT
NORTHERN DISTRICT                                  2003

Docket No. 01-C-663

Mark and Julie Cyr *et al.*

v.

Aventis Pasteur *et al.*

### ORDER

The defendants, Aventis Pasteur *et al.*, filed this motion to dismiss pursuant to

section 300aa-11 (a)(2)(B) of the National Childhood Vaccine Injury Act ("Vaccine

Act"). The plaintiffs, Mark and Julie Cyr, object to the motion. For the following

reasons the defendants' motion to dismiss is GRANTED and the court will stay the

proceedings until all administrative remedies are exhausted.

The plaintiffs first filed this case in Hillsborough County Superior Court in

October 2001. On November 14, 2001 the defendants removed the case to Federal

District Court arguing that the National Vaccine Injury Compensation Program ("NVIC")

conferred federal question jurisdiction. The New Hampshire Federal judges recused

themselves and the case was subsequently transferred to the District of Rhode Island.

After oral argument, the case was remanded back to Hillsborough County Superior Court.

The plaintiffs are now before this court with this class action suit seeking compensation

for injuries allegedly sustained as a result of thimerosal poisoning and the defendants

have moved to dismiss.

The defendants argue that the plaintiffs' claims must be dismissed because the plaintiffs have failed to pursue their claims to conclusion through the NVIC and obtain a compensation award or other equitable judgment under the Vaccine Court as required by the Vaccine Act. The plaintiffs argue that their claims are not subject to the Vaccine Act because the toxic exposures at issue are not vaccine related. The plaintiffs allege that thimerosal is not a vaccine but instead is an "adulterant or contaminant" added to the vaccines and injuries caused by "adulterant or contaminants" do not fall within the NVIC. Next, the plaintiffs argue that due to the jurisdictional minimum and the statute of limitations, they are not qualified to bring the claim under the Vaccine Act. Finally, the plaintiffs argue that the manufacturers of thimerosal do not come within the strict confines of the NVIC and, therefore, the manufacturers should not be dismissed from the state case.

The Vaccine Act states in pertinent part,

> A proceeding for compensation under the Program for a vaccine-related injury or death shall be initiated by service upon the Secretary and the filing of a petition containing the matter prescribed by subsection (c) of this section with the United States Court of Federal Claims.

> No person may bring a civil action for damages in an amount greater that $1000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988...

42 U.S.C. § 300aa-11(a)(1), (2).

The court will first consider whether the alleged injuries from thimerosal are vaccine related and fall within the jurisdiction of NVIC. The same issues and arguments presented here have been fully litigated and rejected by a number of courts. See Leroy v.

2

Secretary of the Department of Health and Human Services, 2002 WL 31730680 (2002) (citations omitted).  In Leroy the plaintiff alleged that thimerosal is an adulterant or contaminant and is not a constituent material as defined by the Federal Regulations.  See Leroy, at *1.  The court in Leroy, similar to many other courts, relied on the reasoning set forth in Owens v. American Home Products Corp., 203 F. Supp.2d. 748 (S.D. Tex. 2002) as well as its own review of the legislative history and statutory interpretation, and determined that thimerosal is a vaccine-related injury and therefore falls within the jurisdiction of the NVIC.[1]  Id.  In this case the plaintiffs have failed to assert any new arguments or distinguish this case from the number of other cases which hold that thimerosal related injuries fall within the NVIC.  Accordingly, the court finds that the type of injury alleged in this case is within the jurisdiction of the Vaccine Act.

Next, the plaintiffs assert that their claim in not within the Vaccine Act since they are requesting equitable relief and do not meet the NVIC $1000 minimum damages requirement.  The defendants disagree and assert that the plaintiffs seek monetary relief in many areas and therefore must comply with the procedure set forth in Vaccine Act.

In their writ the plaintiffs request for relief states in part:

> The court submits an order directing that a court controlled fund be created from payments from Defendants that would provide for epidemiological, toxicological and clinical studies to be conducted on this group of mercury overdosed babies, to be designed and conducted by scientists selected for their independence from pharmaceutical industry control; ongoing medical care, evaluation, testing, diagnosis and treatment for the mercury overdosed babies,

---

[1]Other Federal courts have applied the same reasoning or found the same conclusion as that in Owens.  See Liu v. Aventis Pasteur 2002 WL 31007709; Cheskiwwicz v. Aventis Pasteur, Inc., 2002 WL 1880524; Collins v. American Home Products Corp., No. 01-979 (2002); McDonald v. Abbots Laboratories, No. 02-77 (2002); Stewart v. American Home Products, 02-427 (2002), Holder v. Abbott Laboratories, Slip Op. 02-148 (2002)

as the court determines appropriate after hearing from
experts for all parties.

See Pl. Writ ¶140 (C).  The plaintiffs also state in the writ that "this lawsuit may also
seek money damages, at some future point, for the class members injured by the
injections of toxic mercury, and a prayer for economic and non-economic damages."  See
id. at ¶3.

This court finds it is evident that the plaintiffs relief requires a monetary payment
that exceeds that $1000 jurisdictional requirement of the Vaccine Statute.  "In order to
bring a negligence action, the plaintiff must allege damages."  See 5 N.H. Practice § 94.
"Without damages a *prima facie* case of negligence does not exist."  See id.  The term
'damages' is "the sum of money which the law awards or imposes as pecuniary,
compensation, recompense, or satisfaction for an injury done or a wrong sustained as a
consequence a tortuous act."  See 22 Am. Jur. 2d Damages, § 1.  The plaintiffs filed a
negligence civil action, not an equitable action, against the defendants, the plaintiffs,
therefore, must request monetary damages in order to have a cause of action in the state
court.

Here, the plaintiffs attempt to mask the monetary relief sought as equitable relief,
however, the plaintiffs' case could not go forward in state court if the relief sought was
not monetary in nature.  The court finds that the request for damages in the form of a
"fund" requires the court to award a monetary sum well over the $1000 minimum.
Accordingly, the court holds that the plaintiffs' have pled the jurisdictional minimum
amount and meet the Vaccine Act requirements in that regard.

The plaintiffs argue, in the alternative, that even if the court finds that this cause
of action falls with the NVIC, the plaintiffs are not qualified to file a petition under the

4

Act. Specifically, the plaintiffs allege that they are barred by the Act's statute of limitations and, therefore, the Vaccine Act permits the plaintiffs to proceed in state or federal court. The defendants argue that the issue of whether the statute of limitations applies to this case is a decision for the Vaccine Court, not this court.

This court agrees that the issue of whether the statute of limitation applies is an issue for the vaccine court. To rule on the merits of whether the statute of limitations applies would require an evidentiary hearing and time for discovery allowing the parties to investigate medical issues and review medical records. This additional hearing would cause unneeded litigation and additional costs therefore, the court will not allow the plaintiffs to conduct discovery in the state court until the parties have complied with the Vaccine Act. See Liu v. Aventis Pasteur, Inc., 219 F. Supp. 2d 762, 767.

Next, plaintiffs allege that manufacturers such as defendant Eli Lilly ("Lilly"), do not come within the confines of NVIC and therefore claims against Lilly should not be dismissed. Specifically, the plaintiffs argue that Lilly is a thimerosal manufacturer, not a vaccine manufacturer, therefore under a plain reading of the statute, the Vaccine Act does not apply to Lilly and the action is not barred. See Toussaint v. Merck, 2003 WL 21406178. Lilly argues that courts across the country have analyzed similar claims and have extended the protections of the Vaccine Act to claims against thimerosal manufacturers and suppliers.

The plaintiffs' argument relies on the plain language of the statute and the decision in Toussaint. The Vaccine Act states:

> No person may bring a civil action for damages in an amount greater that $1000 or in an unspecified amount **against a vaccine administrator or manufacturer** in a State or Federal Court...

5

See 42 U.S.C. § 300aa (a) (2)(A). In Toussaint, all of the claims against the vaccine manufacturers were dismissed without prejudice for lack of jurisdiction. Eli Lilly, the thimerosal manufacturer defendant was required to remain a defendant in the state case. See id. The court stated,

> Eli Lilly (as manufacturer of thimerosal) is not a vaccine "manufacturer" as that term is defined by the Vaccine Act...the tort ban set forth in the Vaccine Act is inapplicable to the Minor plaintiff's claims asserted against Eli Lilly in this lawsuit.

See id.

On the other hand, the defendants rely on a number of state and federal courts which have dismissed cases against all defendants, including thimerosal manufacturers, and hold that the NVIC has jurisdiction over the entire case. See Def. Memo Exh B. The court is aware that many of the decisions cited by the defendants do not conduct an analysis of the issue of whether thimerosal manufacturer should be barred from state or federal claims under the Vaccine Act. See Def. Memo Exh. B. However, in Lui, although the court did not decide whether thimerosal manufacturers were included under the Vaccine Act, the court conducted a separate analysis addressing claims against non-vaccine manufacturers. See Lui v. Aventis Pasteur, Inc., 219 F. Supp2d. 762, 768. The Lui court decided that to allow a separate case against non-vaccine manufacturers to go forward during the pendency of claims in the Vaccine Court "would be wholly inconsistent with Congress's goal of minimizing litigation costs..." as a result that, the court dismissed the claims against the thimerosal manufacturers. See id.

This court agrees with the policy decision set forth in Lui. It would be an inefficient use of the courts resources and would not promote judicial economy if the

6

state court were to proceed on an action against the non-vaccine manufacturers while the same suit was occurring in the administrative courts.

Accordingly, the defendants' motion to dismiss is GRANTED and the court will stay the proceedings until the parties have exhausted all of the administrative remedies required under the Vaccine Act.

So Ordered.

Date: August, 2003

James J. Barry, Jr.
Presiding Justice

7