United States District Court
Southern District of Texas
FILED

OCT 0 6 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VERONICA RAMIREZ, Individually, and as Next Friend of JEREMIAH S. RAMIREZ, a minor, | § § § § | |
| Plaintiff, | § § | Civil Action No. B-03-155  JURY DEMAND |
| VS. | § § § | |
| AMERICAN HOME PRODUCTS CORPORATION d/b/a WYETH, ET AL, | § § § § | |
| Defendants. | § | |

**VACCINE DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
TO VACCINE DEFENDANTS' MOTION TO DISMISS**

The Vaccine Defendants[1] file this, their reply to Plaintiff's Combined Memorandum Response to Motions to Dismiss ("Response"), and would show the Court as follows:

## I. ARGUMENT

A.  **Plaintiff's Response Misrepresents the Fifth Circuit's Holding in *Collins v. American Home Products Corporation*.**

Plaintiff's Response begins by claiming that the Fifth Circuit's recent decision in *Collins v. American Home Products Corp.*, 2003 WL 219988574 (5th Cir. Sept. 9, 2003) rejected the National Childhood Vaccine Injury Compensation Act (the "Vaccine Act") as a basis for dismissing claims like those presented in this case. *See* Response at 2. This claim is absolutely wrong. While the *Collins* decision did vacate the dismissal of the plaintiffs' claims, the Fifth Circuit did so because it reasoned (incorrectly) that the case had been improvidently removed to

---

[1]  The "Vaccine Defendants" are Abbott Laboratories (incorrectly named as Abbott Laboratories, Inc.) SmithKline Beecham Corporation d/b/a GlaxoSmithKline, Aventis Pasteur Inc., Merck & Co., Inc.,

federal district court on a fraudulent joinder theory. *See Collins*, at *1. Contrary to Plaintiff's mischaracterization of that decision, the *Collins* court did not come close to addressing whether the Vaccine Act mandated the dismissal of the plaintiffs' claims.[2] As explained in the Vaccine Defendants' Motion to Dismiss, every court that has addressed this question has held that allegations of injury attributable to the thimerosal preservative in FDA-approved vaccines are claims for "vaccine-related injury" covered by the Vaccine Act. *See* Motion to Dismiss, *passim*.

As explained in Defendants' Opposition to Remand, which is incorporated herein for all purposes, this Court has diversity jurisdiction over Plaintiff's case because her Petition fails to allege any actionable conduct on the part of the non-diverse Healthcare Defendants. *See* Opposition to Remand at 5-15. On that basis, the Fifth Circuit's recent decisions in *Smallwood v Illinois Central Railroad Co.*, 2003 WL 21805636 (5th Cir. Aug. 7, 2003) and *Collins* have no application to the case *sub judice* because the fraudulent joinder of the Healthcare Defendants is found in defenses (or deficiencies in Plaintiff's pleading) that are unique to them and not "common" to both diverse and non-diverse defendants alike. This was exactly what Judge McBryde recently held in *Chiles v. American Home Products*, No. 4:03-CV-802-A, slip. op. at 7 (N.D. Tex. Sept. 26, 2003)—a case virtually identical to this one. (The *Chiles* opinion is attached to the Opposition to Remand as Exhibit F). Accordingly, the Court need never take up the issues raised in Plaintiff's Motion to Remand (and as the first argument of her Response) concerning *Smallwood* and *Collins* for they have no application here.[3]

---

and Wyeth (incorrectly named as Wyeth Laboratories, Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines and Lederle Vaccines).

[2] For the convenience of the Court, he *Collins* decision is attached hereto as Exhibit A.

[3] The Vaccine Defendants also respectfully submit that the appellees in both *Smallwood* and *Collins* have sought an *en banc* rehearings of those appeals. Consequently, both *Collins* and *Smallwood* are neither final nor binding on this Court. *See* 5th Cir. Loc. R. 41(d)(1) ("The timely filing of a . . . petition for rehearing en banc . . . stays the mandate until the disposition of the petition . . . unless the

B.  **The Vaccine Act, Not Texas Law, Governs Plaintiff's Claims for Her Child's Medical Expenses.**

Plaintiff further contends that the Vaccine Act does not bar her individual claims for the medical expenses of her minor child because Texas law vests with parents the right to recover a minor child's medical expenses. *See* Response at 13. However, in the Vaccine Court (as in Texas state court), a minor child cannot bring a claim in his or her own name; rather, the claim is brought by the child's parents or other legal representatives. In fact, the Act authorizes "any person who has sustained a vaccine-related injury [or] *the legal representative of such person if such person is a minor or is disabled . . .* " to file a petition for vaccine-related injury. 42 U.S.C. § 300aa-11(b)(1)(A) (emphasis added).[4] And the Act's compensation provision expressly mandates that any award "shall include" all past and future (reasonable) medical, remedial, and custodial expenses incurred "*on behalf of*" the child "who suffered such injury," and thus specifically includes the relief Plaintiff seeks here. *See* 42 U.S.C. § 300aa-15(a).[5] Because compensation for the minor child's medical expenses is at the heart of the Vaccine Act's compensation scheme, it makes no difference whether the claim for medical expenses or

---

court orders otherwise."); *see also* 5th Cir. Loc. R. 41.3 ("Unless otherwise expressly provided, the granting of rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."); *see also Bliss v. Lockhart*, No. 90-2144, 1990 U.S. App. LEXIS 23152 (8th Cir. Dec. 13, 1990) ("Until the mandate issues, a party may petition for rehearing, and the court of appeals may modify or revoke its judgment.").

[4]   The term "legal representative" is specifically defined in the Vaccine Act to include the parents of a minor child. *See* 42 U.S.C. § 300aa-33(2).

[5]   Vaccine Court precedent establishes that the Act covers all claims that seek compensation for, *or on behalf of*, a person who actually suffered a vaccine-related injury. *Cf. Black v. Sec'y of Health & Human Servs.*, 93 F.3d 781, 786 (Fed. Cir. 1996); *Salceda v. Sec'y, Dep't of Health & Human Servs.*, 30 Fed. Cl. 316, 319 (Fed. Cl. 1994); *Benedict v. Sec'y, Dep't of Health & Human Servs.*, 29 Fed. Cl. 587, 591 (Fed. Cl. 1993) ("To hold otherwise would render [the litigation bar] meaningless, as it could be easily circumvented simply by supplying a different representative in each case for an injured person").

lost earning capacity belongs to the parents in their representative or individual capacities under a particular state's law.[6]

Because parents are entitled to petition and recover medical expenses incurred on behalf of their children, they are required by the Vaccine Act to do so before filing any civil action seeking these damages. United States District Judge Kent made this very point in the *Owens, O'Connell* and *Blackmon* cases when he rejected the parent plaintiffs' argument that their claims for medical expenses could not be dismissed pursuant to the Act because Texas law recognizes the right of parents to recover the medical expenses incurred on behalf of a minor child:

> [Parent Plaintiffs] cannot recover from the Vaccine Manufacturers for such medical expenses at this time. As explained in the Court's previous Order, the Vaccine Act provides compensation for actual and un-reimbursable expenses and projected expenses (incurred by the *or* on the victim's behalf) for medical or other remedial care determined to be reasonably necessary, actual and anticipated lost earnings, actual and projected pain and suffering of the victim and reasonable attorneys' fees and costs. . . . Plaintiffs are therefore *required* to seek reimbursement for these expenses in the Vaccine Court, rather than attempting to recover damages via an action wherein they assert individual claims against the Vaccine Manufacturers. Allowing them to do so would clearly undermine the stated objectives of the Vaccine Act. This result is not in contravention of Texas law, because the Court is in no way holding that Plaintiffs' do not possess a valid claim for the medical expenses at issue. The Court is simply saying that Plaintiffs cannot seek to recover such expenses from the Vaccine Manufacturers until after they have filed a Vaccine Act Petition in accordance with the Vaccine Act.

*Owens* Clarification Order (Ex. 33 to Motion to Dismiss) at 2-3 (emphasis in original); *see also Strauss*, 208 F. Supp. 2d at 715 n.8 (same).[7]

---

[6]   *See also Abbott v. Sec'y of Health & Human Servs.*, 19 F.3d 39 (Table) No. 93-5129, 1994 WL 32656, *4 (Fed. Cir. 1994) ("The critical determination is not the identity of the parties in the state action, however, but rather the nature of the damages obtained.") (attached hereto as Ex. B). Although the *Abbott* case is not precedential, it is entirely consistent with the Act and the authorities discussed above.

C.  **Texas Law Does Not Recognize Plaintiff's Individual Claims.**

  1.  **The Texas Supreme Court has spoken: Texas law does not recognize Plaintiff's loss of consortium claim.**

The Texas Supreme Court's decision in *Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003) was released for publication on August 27, 2003, and is no longer subject to revision or withdrawal. Accordingly, the Texas Supreme Court's refusal in *Roberts* to recognize a parent's cause of action for loss of consortium with a non-fatally injured child represents the law of the State of Texas, and Plaintiff's individual claim for loss of consortium must, therefore, be dismissed.

  2.  **Plaintiff's claim for lost wages finds no support in Texas case law.**

While acknowledging that a parent's lost wages are not a proper form of recovery for medical or remedial care provided to an injured child under Texas law, Plaintiff argues that Texas law might recognize a parent's right to recover wages lost due to some other, as-yet-unidentified type of care provided to their children. *See* Response at 12. However, Plaintiff's Response is utterly devoid of any Texas authority recognizing such a form of recovery by a parent under Texas law. Instead, Plaintiff's argument relies entirely on a decision from the Eastern District of Louisiana *applying Louisiana law*. *See id.* (citing *Case v. Merck*, No. Civ. A. 02-1779, 2002 WL 31478219 (E.D. La. Nov. 5, 2002)).[8]

---

[7]  "If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, *the court shall dismiss the action*." 42 U.S.C. § 300aa-11(a)(2)(B) (emphasis added). Where a person prematurely files a civil action while a petition for compensation is still pending in Vaccine Court, dismissal of the civil action is required. *See Klahn v. Sec'y of HHS*, 31 Fed. Cl. 382, 387 (Fed. Cl. 1994) (having "passed through the gates of the Vaccine Act," a person "must complete the procedure established under the Program before bringing a civil action" and a premature civil action must be dismissed).

[8]  Plaintiff also relies on the *Case* decision to argue that a parent's lost wages are not compensable under the Vaccine Act. *See* Response at 16. However, the Vaccine Court opinion relied upon by the *Case* court—*Marston v. HHS*, No 91-0355V, 1998 WL 719493 (Cl. Ct. Sept. 29, 1998)—did not hold that a parent's lost wages due to the provision remedial or custodial care are not compensable under the

Indeed, the only Texas authorities even remotely addressing Plaintiff's claim for lost wages—*Pressey v. Patterson*, 898 F.2d 1018 (5th Cir. 1990) and *Gulf States Utils. Co. v. Reed*, 659 S.W.2d 849, 853 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)—indicate that Texas law does not recognize such a claim for recovery by the parent of an injured child. Moreover, the Texas Supreme Court has recently cautioned that "the law ordinarily denies recourse to those not directly injured by a negligent act, but whose injury is caused indirectly by the harm to another." *Roberts v. Williamson*, 2002 WL 32126137, at *4 (Tex. July 3, 2003).

Similarly, other states recognize that a parent who has no right to recover for loss of consortium with a child, and who is not dependent upon the child, has no right to recover lost wages the parent incurs in devoting extra time or care to the child. *See* authorities cited in Defendants' opening memorandum at 18; *Moore v. The Kroger Co.*, 800 F. Supp. 429, 434 (N.D. Miss. 1992) ("Because these family members are not within the group of persons who have a claim for loss of consortium and not otherwise dependent upon Moore, their attentiveness and sacrifices are in the nature of noncompensable familial obligations rather than compensable legal ones.").

Thus, Plaintiff has offered nothing that would change the result mandated by the Texas decisions previously cited, squarely holding that a parent's lost wages are not a recoverable form of damages. In any event, costs of care of any kind are recoverable under the Vaccine Act and must be pursued there first.

---

Act. Instead, the parental wages at issue in *Marston* were forfeited in order to assist in the pre-trial preparation of her child's case before Vaccine Court. *See id.* at *8. Thus, the *Marston* decision does not address a situation where a parent seeks recovery of wages lost because of increased care—of any type—provided by the parent to an injured child. The Vaccine Defendants respectfully submit that wages forfeited in order to provide medical, remedial, or custodial care to an injured child are undoubtedly costs which "directly benefit[] the victim herself." *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 5 (1st Cir. 1994).

## II. CONCLUSION

For all of these reasons, the Court should dismiss Plaintiff's Petition as against the Vaccine Defendants.

Respectfully submitted,

BAKER BOTTS L.L.P.

By _____ /by permission
Richard L. Josephson                Douglas B. Roberson
Attorney-in-Charge
Federal I.D. No. 04614
State Bar No. 11031500
One Shell Plaza
910 Louisiana
Houston, TX 77002
(713) 229-1460
(713) 229-1522 (fax)
richard.josephson@bakerbotts.com

COUNSEL FOR DEFENDANT MERCK & CO., INC.

OF COUNSEL:

Paul R. Elliott
State Bar No. 06547500
Douglas B. Roberson
State Bar No. 24013409
One Shell Plaza
910 Louisiana
Houston, TX 77002
(713) 229-1226
(713) 229-1522 (fax)

### Certificate of Service

I certify that on this 3rd day of October, 2003, I served the above pleading on all counsel of record via facsimile and/or first class U.S. mail.

_____
Douglas B. Roberson

2003 WL 21998574　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
--- F.3d ----
**(Publication page references are not available for this document.)**

H

United States Court of Appeals,
Fifth Circuit.

Bryan D. COLLINS, as parent and next friend of
Zachary W. COLLINS; Allyson M.
Collins, as parent and next friend of Zachary W.
Collins; Freddie M. Anderson,
as parent and next friend of Robert Thomas-
Anderson; Georgia M. Anderson, as
parent and next friend of Robert Thomas-Anderson;
Herman R. Bernard, as parent
and next friend of Reginald L. Bernard; et al.,
Plaintiffs-Appellants,
v.
AMERICAN HOME PRODUCTS
CORPORATION, doing business as Wyeth
Laboratories Inc.;
Wyeth Lederle; Wyether Lederle; Wyether Lederle
Vaccines and Lederle
Laboratories; Abbott Laboratories; American
International Chemical Inc.;
Aventis Pasteur Inc., Individually and as Successor in
Interest to Connaught
Laboratories Inc.; Pasteur Merieux Connaught Inc.;
B.F. Ascher & Company Inc.;
Baxter International Inc., Individually and as
Successor in Interest to North
American Vaccine Inc.; Bayer Corporation; Bioport
Corporation Inc.; Bristol-
Myers Squibb and Company; Evans Medical Ltd.;
Merck and Company Inc.; RPK
Pharmaceuticals; Dolder; Eli Lilly & Company;
Smithkline Beecham Corporation;
Lisa Stone, M.D., individually and as Successor in
Interest to Children's
Medical Group, P.A.; Bert Bradford, M.D.; Gulf
Coast Pediatric Clinic; Byron's
Discount Drugs; Jeff Court, M.D., individually and as
Successor in Interest to
Children's Medical Group, P.A.; Walter E. Dawkins,
M.D.; Louisa Lawson, M.D.;
Sartin's Discount Drugs Inc.; Brian Stretch, M.D.;
Julian Lee Owen, M.D.;
Village Pharmacy; John Does; Children's Medical
Group P.A., Defendants-
Appellees.
John W. Stewart, III; Annette C. Stewart; Bryan D.
Collins; Allyson M. Collins;
Herman R. Bernard, Jr.; Carola H. Bernard; Larry D.
Blackwell; Melissa L.
McGrew; Jules J. Cousin, Jr.; Beverly L. Cousin;
John A. Gamberi; Connie J.
Gamberi; Mark A. Klinedinst; Laurie E. Klinedinst;
Terri M. Pitts; Tracy L.
Pitts; Kevin T. Samuel; Victoria Samuel; David G.
Underwood; Lauren Underwood;
Jeremy Williams; Shawanda R. Williams, Plaintiff-
Appellants,
v.
American Home Products Corporation, doing
business as Wyeth; Wyeth
Laboratories; Wyeth-Ayerst; Wyeth-Ayerst
Laboratories; Wyeth Lederle; Wyther
Lederle; Wyether Lederle Vaccines and Lederle
Laboratories; Abbott Laboratories
Inc.; American International Chemical Inc.; Aventis
Pasteur Inc., individually
and as successor in interest to Connaught
Laboratories Inc.; Pasteur Merieux &
Pasteur Merieux Connaught; B.F. Ascher &
Company Inc.; Baxter International
Inc., individually and as successor in interest to North
American Vaccine Inc.;
Bioport Corporation Inc.; Evans Medical Limited;
Dolder; Eli Lilly & Company;
Merck and Company Inc.; Smithkline Beecham
Corporation; Bert Bradford, M.D.;
Gulf Coast Pediatric Clinic; Walter E. Dawkins,
M.D.; Owen J. Lee, M.D.;
Sartin's Discount Drugs Inc.; Brian Stretch, M.D.,
doing business as The Street
Clinic; Village Pharmacy LLC; Wyeth; John Does, 1-
200, who are individuals,
proprietorships, corporations, or other entities whose
names and identities are
otherwise unknown to the plaintiffs; Jeffrey Crout,
M.D.; Children's Medical
Group P.A.; RPK Pharmaceuticals Inc., Defendants-
Appellees.

Nos. 02-60736, 02-60764.

Sept. 9, 2003.

In two separate state court actions, Mississippi residents brought products liability claims, on behalf of their minor children and themselves, against manufacturer of childhood vaccines containing preservative thimerosal, pharmacies who dispensed those vaccines, and physicians who prescribed them. Actions were removed to federal court by diverse defendants. The United States District Court for the Southern District of Mississippi, Tom S. Lee, Chief Judge, 2001 WL 34073167 and 2002 WL 32074879, denied motions to remand based on conclusion that nondiverse defendants had been fraudulently joined and dismissed claims against remaining defendants based on plaintiffs' failure to comply with National

Case 1:03-cv-00155  Document 26  Filed in TXSD on 10/06/2003  Page 10 of 19

2003 WL 21998574                                                                                                    Page 2
--- F.3d ----
(Publication page references are not available for this document.)

Childhood Vaccine Injury Act. On appeal, the Court of Appeals, Emilio M. Garza, Circuit Judge, held that by ruling on common defense under pretense of determining fraudulent joinder, district court had impermissibly engaged in merits determination to be made by state court.

Vacated and remanded.

West Headnotes

[1] Federal Courts ⚖3.1
170Bk3.1

Subject-matter delineations must be policed by courts on their own initiative, even at the highest level. 28 U.S.C.A. § 1447(c); Fed.Rules Civ.Proc.Rule 12(h)(3), 28 U.S.C.A.

[2] Removal of Cases ⚖36
334k36

Where there are colorable claims or defenses asserted against or by diverse and nondiverse defendants alike, district court may not, based on its view of merits of those claims or defenses, find that nondiverse parties were fraudulently joined to defeat diversity jurisdiction and prevent removal; instead, that is merits determination which must be made by state court. 28 U.S.C.A. §§ 1332, 1441.

[3] Removal of Cases ⚖101.1
334k101.1

Products liability actions against childhood vaccine manufacturers, pharmacies and physicians to had to be remanded to state court from which they were removed where, in concluding that nondiverse defendants were fraudulently joined and that claims against remaining defendants had to be dismissed because of plaintiffs' noncompliance with National Childhood Vaccine Injury Act, district court had ruled on merits of defenses common to diverse and nondiverse defendants. 28 U.S.C.A. § 1447(c); Public Health Service Act, § 2101 et seq., as amended, 42 U.S.C.A. § 300aa-1 et seq.

F. Gerald Maples (argued), Scott Oliver Nelson, Maples & Lomax, Pascagoula, MS, for Plaintiffs-Appellants in both cases.

Christy D. Jones, Anita K. Modak-Truran, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Wyeth and Wyether Lederle, Wyether Lederle Vaccines and Lederle Laboratories, Wyeth Laboratories, Wyeth-Ayerst and Wyeth-Ayerst Laboratories.

Richard L. Josephson, Baker Botts, Houston, TX, George Q. Evans, Eugene Randolph Naylor, Gaye Nell Currie, Wise, Carter, Child & Caraway, Jackson, MS, for Abbott Laboratories.

Michael Verdier Cory, Jr., Reynolds, Cory & Rikard, Jackson, MS, for American Intern. Chemical, Inc.

Bradley S. Wolff (argued), Swift, Currie, McGhee & Hiers, Atlanta, GA, Richard Lee Jones, Robert L. Gibbs, Brunini, Gratham, Grower & Hewes, Jackson, MS, for Aventis Pasteur, Inc. and Pasteur Merieux Connaght, Inc.

J. Leray McNamara, Copeland, Cook, Taylor & Bush, Ridgeland, MS, for B.F. Ascher & Co., Inc.

Donna Brown Jacobs, Lee Davis Thames, Joseph Kyle Fulcher, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Baxter Intern., Inc.

Gerald Zingone, Thelen, Reid & Priest, Washington, DC, for Bioport Corp., Inc.

William F. Goodman, III, Mildred M. Morris, Susan Latham Steffey, Watkins & Eager, Jackson, MS, for Merck & Co., Inc.

William N. Reed, Baker, Donelson, Bearman & Caldwell, Jackson, MS, for Dolder.

Deborah A. Moeller (argued), Jane J. Bartley, Shook, Hardy & Bacon, Kansas City, MO, David W. Clark, Bradley, Arant, Rose & White, Jackson, MS, for Eli Lilly & Co.

Ross F. Bass, Jr., Phelps Dunbar, Jackson, MS, Barclay A. Manley, Fulbright & Jaworski, Houston, TX, Marcy Hogan Greer, Fulbright & Jaworski, Austin, TX, for Smithkline Beecham Corp.

Chris J. Walker, Rachel L. Wilson (argued), Markow, Walker & Reeves, Ridgeland, MS, for Stone, Gulf Coast Pediatric Clinic, Court, Dawkins, Lawson, Stretch, Owen and Children's Medical Group.

Jesse Lee Howell, III, Copeland, Cook, Taylor & Bush, Ridgeland, MS, for Byron's Discount Drugs.

Luke M. Dove, Dove & Chill, Jackson, MS, for

Case 1:03-cv-00155    Document 26    Filed in TXSD on 10/06/2003    Page 11 of 19

2003 WL 21998574
--- F.3d ----
(Publication page references are not available for this document.)

Page 3

Sartin's Discount Drugs, Inc.

Thomas M. Louis (argued), Wells, Marble & Hurst, Jackson, MS, for Village Pharmacy.

Appeal from the United States District Court for the Southern District of Mississippi.

Before EMILIO M. GARZA and DENNIS, Circuit Judges, and DUPLANTIER [FN*], District Judge.

EMILIO M. GARZA, Circuit Judge:

The plaintiffs in two products liability actions, all of whom are Mississippi residents, appeal the district court's denial of their motions to remand and dismissal of their state law claims against a variety of Mississippi resident and non-resident defendants. Among the defendants are manufacturers of certain childhood vaccines containing the preservative thimerosal, pharmacies who dispensed those vaccines, and physicians who prescribed them.

In *Collins v. American Home Products Corporation,* the plaintiffs brought claims on behalf of their minor children seeking to recover for injuries allegedly suffered by the children as a result of vaccinations containing thimerosal. In *Stewart v. American Home Products Corporation,* many of the same plaintiffs brought claims on their own behalf to recover for expenses and other injuries they allegedly incurred as the parents of injured children. The district court concluded that the Mississippi defendants had been fraudulently joined and that the claims against the remaining defendants must be dismissed because the plaintiffs had failed to comply with the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa-1 *et seq.*

[1][2] "[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level." *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). In a recent opinion, this Court applied the following holding from the Third Circuit's decision in *Boyer v. Snap-On Tools Corporation,* 913 F.2d 108 (3d Cir.1990):

> [W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non- diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Instead, that is a merits determination which must be made by the state court.

*Smallwood v. Ill. Cent. R.R. Co.,* No. 02-60782, --- F.3d ----, ----, 2003 WL 21805636, at *3 (5th Cir.Aug. 7, 2003)(quoting *Boyer,* 913 F.2d at 113) (alteration in original).

[3] Here, the defendants successfully convinced the district court to rule on a common defense under the pretense of determining whether the Mississippi defendants had been fraudulently joined. As we stated in *Smallwood,* "[t]his use of fraudulent joinder frustrates the overarching principle of the well-pleaded complaint rule, that state courts are equally competent to decide federal defenses." *Id.* at ----, at *5; *see also id.* at ---- n. 35, at *4 n. 35 (citing *Cheskiewicz ex rel. Cheskiewicz v. Aventis Pasteur, Inc.,* No. 02-3583, 2002 WL 1880524, at *3 (E.D.Pa. Aug.15, 2002) (unpublished)). [FN1]

Accordingly, we VACATE the dismissal of the plaintiffs' claims and REMAND with instructions that both cases be remanded to the state court from which they were removed.

FN* Senior District Judge of the Eastern District of Louisiana, sitting by designation.

FN1. On appeal, the defendants argue that the district court's fraudulent joinder determination in *Stewart* was correct for the additional reason that the plaintiffs' claims fail under Mississippi law. Although it appears that Mississippi's learned intermediary doctrine bars the plaintiffs' claims against the non-diverse pharmacy defendants, *Moore ex rel. Moore v. Mem'l Hosp. of Gulfport,* 825 So.2d 658, 664-66 (Miss.2002), this defense does not preclude the possibility of relief against the other non-diverse defendants. Because the remaining defenses apply equally to the claims asserted against the diverse and non-diverse defendants, those defenses cannot, under *Smallwood,* serve as the basis for a finding of fraudulent joinder. Accordingly, we lack subject matter jurisdiction to address the merits of the plaintiffs' claims.

2003 WL 21998574, --- F.3d ----

END OF DOCUMENT

19 F.3d 39 (Table)  
**Unpublished Disposition**

Page 1

(Cite as: 19 F.3d 39, 1994 WL 32656 (Fed.Cir.))

**H**  
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTAF Rule 47.6 and FI CTAF App. V, IOP 9 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Federal Circuit.

Ruth Cosette ABBOTT, as legal representative of David Bradley White, deceased,  
Petitioners-Appellants,  
v.  
SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent-Appellee.

No. 93-5129.

Feb. 7, 1994.

27 Fed.Cl. 792.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Before NIES, Chief Judge, MAYER, and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

DECISION

**1 Ruth Cosette Abbott, on behalf of the estate of her deceased son, David Bradley White, appeals from the March 9, 1993 judgment of the United States Court of Federal Claims dismissing her petition for compensation under the National Childhood Vaccine Injury Act (Vaccine Act or Act), 42 U.S.C. §§ 300aa-1 through 300aa-34 (1988 and Supp.1992). 27 Fed.Cl. 792 (1993). The Special Master concluded that the petition was not barred under 42 U.S.C. § 300aa-11(c)(1)(E) by a previous settlement of an Arizona state court wrongful death action and awarded compensation for David's death in the amount of $250,000. The government filed a motion for review solely on the issue of whether the petition was barred under section 300aa-11(c)(1)(E). The Court of Federal Claims dismissed the petition, holding that recovery was precluded because there was an intervening cause of death such that David's death was not a "sequela" of a vaccine-related injury, as the court construed that statutory term. The court did not decide whether the petition was barred for double recovery, however.

We conclude that the petition is not barred because the settlement covered only damages for injuries to David's statutory beneficiaries and not for David's own injuries. We affirm the Court of Federal Claims' holding that the Special Master applied a legally incorrect definition of sequela based on legal notions of proximate cause, rather than determining whether the death was medically recognizable as a pathological sequence or result of a disease or injury. Because petitioner was not given the opportunity to develop an evidentiary record on the issue of causation before the Special Master, however, we hold that the Court of Federal Claims abused its discretion in dismissing the petition based on its finding on the incomplete record that David's death was not a sequela within the meaning of the Vaccine Act. Accordingly, the case is remanded for a further evidentiary hearing before the Special Master and findings on the cause and manner of death. The Court of Federal Claims' decision is therefore *affirmed-in-part, reversed-in-part,* and the case is remanded.

DISCUSSION

The facts are set forth in the opinions of the Court of Federal Claims, *Abbott v. Secretary of the Department of Health & Human Services,* 27 Fed.Cl. 792 (1993), and the Special Master, *Abbott v. Secretary of the Department of Health & Human Services,* No. 90-1637 V, slip op. (Ct.Cl.Sp.Mstr. Oct. 5, 1992). Familiarity with these opinions is presumed and only those facts necessary for our holding are recited below.

I. Background  
Ms. Abbott, as legal representative of her son David's estate, seeks recovery under the Vaccine Act for his vaccine-related death. David was diagnosed as having a residual seizure disorder resulting from vaccinations he received as an infant in 1964. As a result of his injuries, David was placed in a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

19 F.3d 39 (Table)  
**Unpublished Disposition**

Page 2

(Cite as: 19 F.3d 39, 1994 WL 32656 (Fed.Cir.))

residential care facility in Arizona. On September 5, 1987, a group home staff member was assisting David with his bath. The staff member left David alone for a few minutes, during which time David suffered a seizure in the bathtub and drowned.

**\*\*2** Ms. Abbott filed a wrongful death action in Arizona against the group home and various state agencies. The action was settled for $300,000, and Ms. Abbott dismissed the suit with prejudice on October 20, 1989.

On September 27, 1990, petitioner filed the subject petition for compensation under the Act. The government moved to dismiss on the ground that Ms. Abbott's settlement in the civil suit barred recovery under section 300aa- 11(c)(1)(E) of the Act, which provides in relevant part:

> (c) A petition for compensation under the Program for a vaccine-related injury or death shall contain--
> (1) ... an affidavit and supporting documentation, demonstrating that the person who suffered such injury or who died--
>
> \* \* \*
>
> (E) has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death,....

The Special Master discerned no bar because he concluded Arizona law recognizes a separate cause of action for injuries to the named statutory beneficiaries apart from the claims assertable on behalf of a decedent. Therefore, the Special Master concluded that under Arizona law the settlement was Ms. Abbott's recovery in her own individual capacity. Consequently, he concluded that neither David himself nor his estate had previously recovered damages for the vaccine-related death.

On the merits, the Special Master found David's estate was entitled to an award of $250,000 based on a preponderance of evidence that the death was the direct consequence of the presumptively vaccine-related residual seizure disorder. *Abbott*, No. 90-1637 V, slip op. at 7. The Special Master specifically acknowledged that "he offered to issue a decision on entitlement, allowing respondent to seek review of the legal issue [of the statutory bar] immediately without conceding liability." *Id.* at 7 n. 9. The Special Master further stated that he realized "that respondent has not obtained a medical report in this case, has not filed a Rule 4 report in this case, and has not had an opportunity to present evidence that David's seizures and death were due to factors unrelated to the administration of the October 7, 1964 DPT vaccine." *Id.*

The government filed a motion for review in the Court of Federal Claims on the sole issue of whether the petition was barred by the prior settlement. The court disposed of the case on a different ground, however, holding as a matter of law that there could be no recovery because David's death was not a sequela of the residual seizure disorder due to intervening cause of drowning. The court also held that the Special Master applied a legally incorrect definition of sequela as being merely a subsequent link in a chain of related events. The court concluded that the proper definition of "sequela" under the statute refers to "somatic conditions or events recognizable as the pathological sequence or result of an existing disease or disorder or as an independent accompaniment of such a disease or disorder." 27 Fed.Cl. at 794.

**\*\*3** The court then found that, based on the wording of one line in the autopsy report, David's death was caused by bath water in his lungs, not aspiration of vomit from the seizure. Judgment was entered setting aside the decision of the Special Master and dismissing the petition.

II. Issues on Appeal

On appeal, petitioner first argues that the court abused its discretion by ruling on a matter that was not raised in the motion for review. Therefore, petitioner asserts that the dismissal should be set aside, the Special Master's conclusion of law that recovery is not barred by section 300aa-11(c)(1)(E) and finding that petitioner was entitled to recover reinstated, and judgment entered on the Master's decision. Alternatively, petitioner asks that the decision of the Court of Federal Claims be reversed and that the case be remanded to the Special Master for an evidentiary hearing on entitlement. Finally, petitioner asks this court to hold as a matter of law that the petition is not barred under section 300aa-11(c)(1)(E) by the prior settlement of the wrongful death action.

The government asserts, as it did in its motion for review, that compensation is barred under section 300aa-11(c)(1)(E) by the previous wrongful death settlement. The first issue then is whether a bar

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

(Cite as: 19 F.3d 39, 1994 WL 32656 (Fed.Cir.))

arises from the settlement. Additionally, the government argues that it was not error for the Court of Federal Claims to consider the legal definition of "sequela" as applied by the Special Master, or to find on the merits that petitioner had not established entitlement under the Vaccine Act. The second issue is whether the judge's dismissal based on his fact finding on sequela may stand.

We will address both issues raised on appeal, beginning with the threshold issue of the statutory bar under the Vaccine Act.

### III. The Bar
### A. The Vaccine Act

Under section 300aa-11(c)(1)(E) of the Vaccine Program, a petitioner must prove that the "person who suffered the injury or who died ... has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death." [FN1] "Vaccine-related injury or death" is defined in the statute as "an illness, injury, condition, or death *associated with* one or more of the vaccines set forth in the Vaccine Injury Table,...." 42 U.S.C. § 300aa-33(5) (1988) (emphasis added). In the Arizona wrongful death action, Ms. Abbott obtained a settlement for damages based on David's death which was associated with such a vaccine whether or not, as found by the Court of Federal Claims judge, the chain of proximate causation was broken by the negligence of the staff at the home where David died. [FN2] Therefore, Ms. Abbott can petition and David's estate can recover under the Vaccine Act if petitioner can show that the wrongful death settlement did not include any compensation for David's own injuries, as opposed to hers.

### B. Arizona Law

Petitioner insists that she recovered only for her own injuries (here essentially financial and emotional injuries resulting from David's death) [FN3] in the Arizona settlement because she brought the action in an individual capacity and David's estate was not a party. In support, she cites Arizona's Wrongful Death Act, Ariz.Rev.Stat.Ann. § 12-611 *et seq.* (1992), which provides that a parent may maintain an action for the death of the child and that an action may instead be brought in the name of the decedent's estate *only* if no husband or wife, children or parents survive. Ariz.Rev.Stat.Ann. § 12-612(A)-(C) (1992). Ms. Abbott argues that David's estate did not make a prior recovery so as to bar the petition under section 300aa-11(c)(1)(E).

**4 Under section 12-612(A) of the Arizona wrongful death statute, such an action "shall be brought by and *in the name of the* surviving husband or wife or *personal representative* of the deceased person for and *on behalf of the surviving* husband or wife, children or *parents,* or if none of these survive, on behalf of the decedent's estate." Ariz.Rev.Stat. § 12-612(A) (emphasis added). Additionally, under Section 12-612(B), "[e]ither parent may maintain the action for death of a child...." Ariz.Rev.Stat. § 12-612(B). Plainly, Ms. Abbott could not sue for and on behalf of the estate. Ariz.Rev.Stat.Ann. § 12-612(A).

Because the statute further provides in section 12-612(C) that any recovery "shall be distributed to the parties provided for in subsection A in proportion to their damages," however, Ms. Abbott clearly could not maintain a wrongful death action *exclusively* for her own personal damages. [FN4] Rather, she maintained the action on behalf of and as statutory trustee for all the statutory beneficiaries of David, here apparently herself and David's father. *Summerfield v. Superior Court of the State of Arizona, et al.,* 144 Ariz. 467, 698 P.2d 712 (1985); *In re Estate of Milliman,* 101 Ariz. 54, 415 P.2d 877 (1966).

The critical determination is not the identity of the parties in the state action, however, but rather the nature of the damages obtained. That is, whether the recovery was solely for the injuries of the named statutory beneficiaries, or whether there was also a recovery for injuries of the deceased as well. [FN5] The next section of the Arizona Wrongful Death Act removes any doubt as to whose injuries are being compensated.

Under Ariz.Rev.Stat.Ann. § 12-613, "the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death *to the surviving parties.*" (emphasis added). In a wrongful death action *not* brought in the name of the estate, the Arizona courts have interpreted this provision to provide damages only for the injuries suffered by the statutory beneficiaries themselves, not for the injuries suffered by the deceased. *Summerfield,* 144 Ariz. at 476, 698 P.2d at 721 ("[I]n enacting the Wrongful Death Statute of 1887, ..., the Legislature explicitly recognized the *legal right of the survivors* to be compensated for *their* loss resulting from the victim's

**(Cite as: 19 F.3d 39, 1994 WL 32656 (Fed.Cir.))**

death.") (emphasis added); *Nunez v. Nunez*, 25 Ariz.App. 558, 545 P.2d 69 (1976) (the jury must specifically find the amount of damages sustained by each beneficiary); *Huebner v. Deuchle*, 109 Ariz. 549, 550, 514 P.2d 470, 471 (1971) (the statute "confers an original and distinct claim for the damages sustained by named statutory beneficiaries. It is not derived from nor is it a continuation of claims which formerly existed in the decedent."). Therefore, recovery in an Arizona wrongful death action where any statutory beneficiaries survive the deceased is for the damages of the statutory survivors, not for the deceased's own damages or for his estate. [FN6]

**\*\*5** Consequently, petitioner has established that no prior recovery was made in this case on behalf of David as the injured person.

The government argues, however, that Congress clearly intended only one recovery per vaccine-related death or injury. According to the government, this intent is manifested not only by the prohibition against prior recovery in section 300aa-11(c)(1)(E), but also by three other provisions which make the vaccine fund the recovery source of last resort and the subrogee of petitioner. *See* 42 U.S.C. § 300aa-15(g) (prohibiting compensation for "any item or service to the extent that payment has been made or can reasonably be expected to be made" otherwise); 42 U.S.C. § 300aa-15(h) (prohibiting any entity providing health benefits from making its payment secondary to payment under the program.); 42 U.S.C. § 300aa-17 (providing for subrogation when program money is paid). The government asserts that the interplay of these four provisions precludes later recovery for the same injury or death.

Therefore, the government argues, allowing Ms. Abbott to recover would subvert the clear intent of Congress, because of a prior recovery based on David's vaccine-related death.

While the government is correct that double recovery for the child is expressly barred, its argument for a "one recovery per vaccine-related death" rule is fundamentally flawed. The defect lies in the government's failure to consider if the prior recovery was by or on behalf of "the person who suffered such injury or who died." 42 U.S.C. § 300aa-11(c)(1)(E). That alone is what triggers subsection (E) which controls here. In order to be a "double recovery," the previous recovery must compensate the child for its injury or death. Where, as here, the prior recovery, although based on the child's vaccine-related death, was exclusively for injuries to his mother, there was no compensation for injuries covered by the Vaccine Act. Therefore, there was no double recovery.

Therefore, we conclude as a matter of law that under section 300aa-11(c)(1)(E) a claim on behalf of the estate is allowable despite the settlement of Ms. Abbott's claim under the Arizona civil wrongful death action.

IV. The Finding on Sequela

In order to prevail, petitioner must still establish entitlement to recovery under the Vaccine Act, however.

A. The Court's Authority

First, petitioner argues that the Special Master's decision on entitlement should be reinstated because the Court of Federal Claims erred by ruling on entitlement where the matter was conceded by the government and not raised in the motion for review.

The Vaccine Act requires a party to file a motion for review in order to invoke the jurisdiction of the Court of Federal Claims to review the Special Master's decision, and also provides that a response to the motion shall be filed. 42 U.S.C. § 300aa-12(e)(1). Therefore, the Act contemplates normal procedures, applicable at both trial and appellate levels, that issues not raised are waived and that a tribunal may not force litigation of an issue that was waived, with limited exceptions not applicable here such as questions of jurisdiction. A party controls its own case, including the decision to appeal any or all issues, and "[a] case is decided on the issues formally advanced by the parties in their briefs." *Howell v. Merit Sys. Protection Bd.*, 785 F.2d 282, 285 (Fed.Cir.1986) (Where the government asserted that the only issue before the court was jurisdiction, it thereby conceded the merits and the court had no alternative but to rule against the government.); *see also North American Vaccine v. American Cyanamid Co.*, 7 F.3d 1571, 1578 (Fed.Cir.1993) (Petitioner is bound by counsel's concession at oral argument that it did not contest a portion of the district court's ruling. "Whatever [petitioner's] reasons, we do not review what it chooses to accept."). If the government conceded the issue of entitlement, the

19 F.3d 39 (Table)  
**Unpublished Disposition**

Page 5

(Cite as: 19 F.3d 39, 1994 WL 32656 (Fed.Cir.))

Court of Federal Claims should not have reached it.

**6 However, in this case it is not sufficiently clear that the government waived or conceded the issue of causation. Although the government did not raise the issue of causation as a separate assignment of error, the government noted that it continued to dispute the finding that David's death was a sequela of his seizure disorder. Moreover, the Special Master noted in his decision that his determination on entitlement was being issued on a partial record so that the government could "seek review of the legal issue immediately *without conceding liability.*" *Abbott*, No. 90-1637 V, slip op. at 8 n. 9.

Therefore, the court's consideration of the entitlement issue was not per se erroneous.

B. Legal Definition of Sequela

Petitioner also asserts that the Court of Federal Claims committed reversible error because it applied a highly technical and narrow reading to the word "sequela," contrary to the spirit of the Vaccine Act. Petitioner contends that the decisions of the court have consistently applied liberal construction to the Vaccine Act to favor compensation, particularly for table injuries. *See McClendon v. Secretary of the Dep't of Health & Human Servs.*, 23 Cl.Ct. 191, 195 n. 8 (1991) ("The legislative history [of the Vaccine Act] seems to suggest that the petitioner's assertions of a table injury should be judged in a most favorable manner."). Therefore, petitioner contends that the Court of Federal Claims' interpretation is unduly restrictive and legally erroneous.

"Sequela" is nowhere defined in the Vaccine Act. The Court of Federal Claims noted, however, that the term "sequela" is used in the statute in a table of vaccine-related injuries for which compensation may be awarded. 42 U.S.C. § 300aa-14. In this context, the court determined that sequela was not used in an ordinary sense of the word, but as a term of art in the specialized vocabulary of the medical field. *Abbott*, 27 Fed.Cl. at 794. Therefore, the court concluded that "Congress intended this statute to be understood--and to be applied--as it would be by a medical professional." *Id.*

The court therefore construed the term "sequela" as it was defined in several well known medical dictionaries as "a pathological sequence or result of an existing disease or disorder." *Id.* (relying on Stedman's Medical Dictionary (25th ed. 1990) and Dorland's Illustrated Medical Dictionary (27th ed. 1988)). Notably, this is virtually the same definition that was affirmed by this court in *Munn v. Secretary of the Department of Health & Human Services*, 970 F.2d 863, 867, 872 (Fed.Cir.1992) (affirming definition of sequela as "a pathological condition resulting from a disease").

Consequently, the court concluded that the Special Master's application of the term sequela in a strictly temporal sense was legally erroneous. We discern no error in the Court of Federal Claims' definition of sequela or in its determination that the Special Master erred.

C. Finding on Sequela

**7 Finally, petitioner asserts that the Court of Federal Claims abused its discretion in finding that David's death was caused by drowning in water, and therefore was not a sequela of his seizure disorder, because there had been no hearing or opportunity for petitioner to enter evidence on that issue. In fact, petitioner notes that medical causation was never an issue before the Special Master, and therefore, no factual record was made on this point. Petitioner argues that she should be permitted to establish a factual record to support her contention that David "drowned" on his own gastric content while in the throes of a seizure and his death therefore was a sequela of the vaccine-related seizure disorder.

The Court of Federal Claims found that David's death was "the result of a suffocation brought on by an external force--the filling of his lungs with water." 27 Fed.Cl. at 794. In making this finding, the court relied on the autopsy report which listed the cause of death as "drowning with aspiration of gastric content...." *Id.* This finding assumes that use of the word "drowning" in the autopsy report necessarily establishes that the actual cause of death was filling of the lungs with water. Although this is one understanding of the term, we note that this is not the only acceptable definition of drowning. Drowning also commonly means suffocation in some liquid other than water such as "to suffocate because of excess of body fluid that interferes with the passage of oxygen from the lung to the tissues...." Webster's Third New International Dictionary of the English Language Unabridged (1976). The autopsy report nowhere defines what is meant by the term "drowning." Therefore, the court's assumption based

19 F.3d 39 (Table)  
**Unpublished Disposition**

Page 6

(Cite as: 19 F.3d 39, 1994 WL 32656 (Fed.Cir.))

solely on the use of the word "drowning" is unwarranted, especially where the report after using "drowned" refers to aspiration not of bath water, but gastric content, where the report also indicates that gastric content was found in the lungs but says nothing about water, and where no factual record exists on this point.

In view of the fact that the causation issue was never litigated before the Special Master and that petitioner has had no opportunity to factually address this issue, we conclude that in this instance it was an abuse of discretion for the court to rule on the causation of David's death. Therefore, we remand the case for a further evidentiary hearing before the Special Master and findings on the cause and manner of death.

COSTS  
Each party shall bear its own costs.

FN1. We have previously held that this provision applies to recovery in a civil action against any party for a vaccine-related injury or death, not only against a vaccine administrator or manufacturer. *Schumacher v. Secretary of the Dep't of Health & Human Servs., 2 F.3d 1128, 1132 (Fed.Cir.1993); Massing v. Secretary of the Dep't of Health & Human Servs., 926 F.2d 1133, 1135 (Fed.Cir.1991).*

FN2. In her response to the government's motion to dismiss before the Special Master, petitioner initially argued that the Arizona action was only based on negligence and that David's death "was contributed to by a third party and was totally unrelated to the administration of the vaccine." This argument has not been renewed, however, because as petitioner herself realizes, the *same* death cannot be considered to be unrelated to the vaccine for purposes of a state action, but vaccine- related for purposes of a later petition under the Act.

FN3. In her complaint, Ms. Abbott sought damages for "loss of consortium, emotional distress, pain and suffering, pecuniary and non-pecuniary damages and further damages compensable pursuant to Ariz.Rev.Stat. § 1[2]-611 *et seq.*"

FN4. In the case of no surviving statutory beneficiaries, section 12-612(C) provides that "if recovery is on behalf of the decedent's estate the amount shall be an asset of the estate." Ariz.Rev.Stat. § 12-612(C).

FN5. If the estate had been a party to the wrongful death action, a petition under the Vaccine Act would clearly be barred. That Ms. Abbott filed both the state action and federal petition is not determinative, however. A prior recovery by a different party in a civil action would bar a petition brought by *any* legal representative under the Vaccine Act if the prior recovery included compensation for David's vaccine-related injury or death.

FN6. Clearly, the types of damages which are recoverable under the Arizona wrongful death action are different from the injuries which are compensated for under the Vaccine Act. In the event of a vaccine-related death, the Vaccine Act provides for "an award of $250,000 for the estate of the deceased." 42 U.S.C. § 300aa-15(a)(2). In the case of survival, however, the Vaccine Act provides compensation for the costs incurred by or on behalf of the injured party due to the vaccine-related injury, including "diagnosis and medical or other remedial care determined to be reasonably necessary, ... rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary." 42 U.S.C. § 300aa-15(a)(1)(iii)(I) and (II). All of these injuries are those of the child, whether costs are actually incurred by the child or by someone else on behalf of the child.  
By contrast, where a statutory survivor, as opposed to the estate, recovers compensation under the Arizona Wrongful

19 F.3d 39 (Table)  
**Unpublished Disposition**

Page 7

(Cite as: 19 F.3d 39, 1994 WL 32656 (Fed.Cir.))

Death Act, the types of injuries compensated for are limited to injuries of the survivors themselves. *See* Ariz.Rev.Stat. § 12-613; *Huebner v. Deuchle,* 109 Ariz. 549, 550, 514 P.2d 470, 471 (1973) (survivors maintain a separate action for recovery apart from any action formerly assertable by the deceased). These injuries are typically loss of consortium and other emotional losses of the survivor and loss of future financial support to the survivor. *See Katz v. Filandro,* 153 Ariz. 601, 739 P.2d 822 (Ariz.App.1987) (damages for loss of support were limited to the amount that the deceased's mother could have received from decedent during the two years between the decedent's death and the mother's own death); *Sedillo v. City of Flagstaff,* 153 Ariz. 478, 737 P.2d 1377 (Ariz.App.1987) (damages allowed included compensation for loss of companionship, comfort and guidance).

Therefore, in this case, there was clearly no overlap which would preclude the petition, because the injuries compensated in each case were entirely distinct.

19 F.3d 39 (Table), 1994 WL 32656 (Fed.Cir.), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works