47

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 2 9 2003

Michael N. Milby
Clerk of Court

VERONICA RAMIREZ, Individually and as
Next Friend of JEREMIAH S. RAMIREZ, a
minor,

              Plaintiffs,

    v.

AMERICAN HOME PRODUCTS
CORPORATION, et al.,

              Defendants.

Civil Action No. 03-CV-155

**DEFENDANT ELI LILLY AND
COMPANY'S REPLY IN
SUPPORT OF ITS MOTION TO
DISMISS**

Plaintiffs failed in their Combined Memorandum Response ("Response") to demonstrate any reason why their claims against Lilly should not be dismissed. Plaintiffs have alleged that Eli Lilly and Company ("Lilly") manufactured vaccines, and claims against the manufacturers of vaccines or vaccine components must be dismissed pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 *et seq* (the "Vaccine Act" or "the Act"). Should this Court not dismiss this case pursuant to Fed. R. Civ. Pr. 12(b)(1), the Court should dismiss the case pursuant to 12(b)(6). Plaintiffs have failed to plead an essential element of their claims under Texas law. Specifically, Plaintiffs failed to plead that any Lilly product was ever received by the minor plaintiff. Thus, dismissal is appropriate. Lilly respectfully requests that the Court grant its Motion to Dismiss. In support of this Motion, Lilly states as follows:

1325391v1

I.  **THE ALLEGATIONS ON THE PLAIN FACE OF PLAINTIFFS' PETITION DEMONSTRATE THAT IT MUST BE DISMISSED PURSUANT TO THE VACCINE ACT**

A.  **Plaintiffs Allege Vaccine-Related Injuries Against Vaccine Manufacturers And Administrators**

The only discernable allegations in Plaintiffs' Petition involve alleged injuries from vaccines allegedly manufactured by Lilly and others, collectively referred to as the "Manufacturer Defendants." *See, e.g.,* Petition, ¶¶ 4.05, 5.01, 7.02, 9.01 (alleging injuries from the inclusion of thimerosal in the minor's "childhood vaccinations"). The identical allegations against all the "Manufacturer Defendants," including Lilly, concern the "manufacturing and/or marketing vaccines and/or products that contain Thimerosal." Petition, ¶ 3.11. The alleged injury-producing vaccines are claimed to be "designed, developed, and manufactured, with Thimerosal and/or distributed" by all "Defendants." Petition, ¶ 4.02; *see also* ¶ 3.12 (defining "Manufacturer Defendants" to include Lilly). Where a plaintiff files a civil action against a vaccine manufacturer prior to exhausting the administrative remedies of the Vaccine Act, "the court **shall dismiss the action**." 42 U.S.C. § 300aa-11(a)(2)(B) (emphasis added). This Court must dismiss "the action," rather than allow Plaintiffs to proceed in this forum against any party while simultaneously proceeding in Vaccine Court. *See Nolan v. Boeing Co.* 919 F.2d 1058, 1066 (5th Cir. 1990) (defining an action as "the entirety of a civil proceeding").[1]

B.  **Plaintiffs' New Allegations Regarding Lilly Are Outside The Pleadings And Should Not Be Considered By The Court**

Faced with the imminent dismissal of their claims, Plaintiffs attempt to avoid this inevitable result by including new allegations against Lilly in their Response. Plaintiffs now

---

[1] Furthermore, as discussed in Section II (B) *infra,* Plaintiffs do not dispute that 42 U.S.C. § 300aa-11(a)(5)(B) (forbidding the filing of a Vaccine Act petition while a civil action for the same vaccine-related injuries remains pending) precludes any claims brought on behalf of the minor from going forward in this Court, arguing only that the parents have separate claims. *See* Response, p. 9.

claim, contrary to the express language of their Petition, that they are suing Lilly for the manufacture of the vaccine component thimerosal, and have labeled Lilly for the first time as a separate "Thimerosal Manufacturer."[2]   Response, pp. 1, 7.   However, despite Plaintiffs' contentions in their Response, their Petition makes absolutely no such distinctions. *Id.* at 6-7.[3] In deciding a motion to dismiss, "a court must not look beyond the pleadings." *Sheppard v. Texas Dept. of Transportation*, 158 F.R.D. 592, 595 (E.D. Tex. 1994); *see also Miller v. Medical Center of S.W. La.*, 22 F.3d 626, 628 (5th Cir. 1994). The role of the Court is "limited to determining whether plaintiffs have alleged facts sufficient to survive" the motion. *Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir. 1992). Plaintiffs have not cited and cannot cite to any provision in their Petition that alleges Lilly is separately liable for the manufacture of thimerosal. Rather, the claims alleged by plaintiffs against Lilly are **identical** to those against the other "Manufacturer Defendants." *See* Petition, ¶¶ 3.02-3.12. Because all defendants have been alleged to be vaccine manufacturers, those claims must all be dismissed under the Act.[4]

---

[2]   As discussed, *infra*, in Section II, Plaintiffs' attempted distinction between vaccine manufacturers and vaccine component manufacturers is of no consequence, as both categories of defendants are entitled to the same protections under the Act. However, as Plaintiffs' entire argument against Lilly is premised on this distinction, it is sufficient here to note that such a distinction does not appear anywhere in Plaintiffs' Petition.

[3]   Furthermore, in terms of the injuries for which Plaintiffs can seek compensation, the Vaccine Act itself makes no such distinctions. The Vaccine Court has accepted jurisdiction over injuries allegedly caused by thimerosal in vaccines. *See* Autism General Order # 1, *In re: Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder or a Similar Neurodevelopmental Disorder*, 2002 WL 31696785 (Fed. Cl. July 3, 2002). Compensation is defined by the type of injury, rather than the type of defendant, as the Secretary of Health and Human Services is the only "defendant" in Vaccine Court. 42 U.S.C. § 300aa-12(b)(1). Plaintiffs do not allege that their claims against Lilly involve different injuries than their claims against other defendants.

[4]   Lilly's **actual** role (or lack thereof) with regard to vaccines or thimerosal is **irrelevant** for purposes of this Motion to Dismiss. Plaintiffs need to demonstrate that they have **alleged** sufficient facts in their **Petition** to avoid dismissal. Plaintiffs cannot point this Court to any specific allegations in their Petition.

- 3 -

## II.    THE NEW ALLEGATIONS IN PLAINTIFFS' RESPONSE ALSO REQUIRE THE DISMISSAL OF LILLY PURSUANT TO THE VACCINE ACT

### A.    The Manufacturers Of Vaccine Components Such As Thimerosal Are Entitled To The Same Protections As The Manufacturers Of Completed Vaccines Under The Act

Even if the Court allows Plaintiffs to make a distinction between two separate groups of defendants, vaccine manufacturers and vaccine component manufacturers, the distinction is irrelevant. Both categories of defendants are entitled to the same protections under the Act. The Act definitively states that "[n]o person may bring a civil action for damages . . . against a vaccine administrator or manufacturer" prior to pursuing their mandatory administrative remedies in Vaccine Court. 42 U.S.C. § 300aa-11(a)(2)(A). Plaintiffs argue that by labeling Lilly a "thimerosal manufacturer," they can avoid this prohibition against claims against "vaccine manufacturers." *See* Response, pp. 7-8. However, the language of the Act, as well as the reasoning of the Chief Special Master of the Vaccine Court, unambiguously confirm that **both** are "vaccine manufacturers" under the Act. *See Leroy v. Secretary of Health and Human Services*, No. 02-392V, 2002 WL 3170680 (Fed. Cl. 2002). In fact, Congress has reaffirmed this intent, indicating that adequate protection for vaccine manufacturers and "manufacturers of components or ingredients of vaccines" are equally necessary. H.R.J. Res. 2, 108th Cong. Div. L, § 102(d)(2)-(3) (Feb. 13, 2003) (**Exhibit A**).

The term "manufacturer" as used in the Act applies to a more expansive group of potential defendants than just the final end product "manufacturer." Rather, the Act broadly defines the term to include an entity which "manufactures, imports, processes, or distributes under its label any vaccine." 42 U.S.C. § 300aa-33(3). Additionally, the term "vaccine" is not defined under the Act, but the Chief Special Master in *Leroy* interpreted that term to include the thimerosal component because "a vaccine preservative is a constituent part of the vaccine."

- 4 -

*Leroy,* at *5.   Thus, "the plain meaning of 'vaccine' encompass[es] the thimerosal *component. . . .*" *Id.* at * 7 (emphasis in original). Therefore, the plain meaning of "vaccine manufacturer" under the Act, then, encompasses "the thimerosal component manufacturer." Based on the determination that the definition of "vaccine" includes its components, it logically follows that a component part of a vaccine, and its manufacturer and supplier, are entitled to the Act's protections for "vaccine-related" claims.   Various courts have followed the logic of this holding and applied it to alleged thimerosal manufacturers.[5]   For example, claims against Lilly in sixteen separate cases which were coordinated in California were dismissed pursuant to the Vaccine Act.   *See In re The Vaccine Cases*, Case No. JCCP 4246 (L.A. Sup. Ct. Sept. 25, 2003) **(Exhibit D)**.   In sustaining a demurrer to a Master Complaint in those proceedings, the court ruled that "[b]ecause the Vaccine Court has held that the terms 'vaccine' and 'thimerosal' are interchangeable for purposes of Vaccine Act jurisdiction, claims asserted against thimerosal manufacturers are also barred by the Act." *Id.* at 3.

Plaintiffs provide a few isolated opinions in support of their attempt to distinguish thimerosal component manufacturers from those who manufacture completed vaccines.[6]   These opinions are contrary to the overwhelming weight of authority on the issue for which they are cited.   The vast majority of courts nationwide, including Texas federal courts, have held that **all**

---

[5]   *See, e.g., Ashton v. Aventis Pasteur, Inc.,* July Term 2002, No. 04026 (Ct. of Common Pleas of Phila. County, Pa. May 22, 2003), at 11 (citing *Leroy* and finding that "the ingredient is interchangeable with the vaccine" for the purposes of a defense based on the Vaccine Act) **(Exhibit B)**; *Agbebaku v. Sigma Aldrich, Inc.,* No. 24-C-02-004243 (Cir. Court for Baltimore County, Md. June 19, 2003), at 14-15 (citing *Leroy* in holding that claims must be dismissed against thimerosal manufacturers pursuant to the Act) **(Exhibit C)**.

[6]   Plaintiffs' reliance on *Blackmon v. American Home Products,* 203 F. Supp.2d 748 (S.D. Tex. 2002) and *Owens v. American Home Products,* 2002 WL 992094 (S.D. Tex. 2002) is misplaced because these cases were decided before the *Leroy* decision which defined vaccines to include their components, and before the recent expressions of Congressional intent.   Motions to dismiss on these grounds are currently pending in both cases.   Furthermore, *Case v. Merck & Co.,* 2002 WL 21406178 (E.D. La. 2002) does not support Plaintiffs' argument that claims against thimerosal manufacturers are treated differently that those against the manufacturers of vaccines.   In that case, claims against all parties were allowed to proceed at first (*Id.* at *7), but all claims against all defendants were later stayed in *Case v. Merck & Co.,* 2003 WL 145427 (E.D. La. 2003).

- 5 -

vaccine-related thimerosal claims must be dismissed as to **all** Defendants, including thimerosal manufacturers and suppliers pursuant to the Vaccine Act.[7]  This majority continues to grow. Since Lilly's initial motion to dismiss, three courts have dismissed a total of eighteen cases against Lilly pursuant to the Vaccine Act. Most significantly, the Northern District of Texas has dismissed a case **identical** to the present one which was filed by the plaintiffs' counsel in this case, Ben C. Martin, pursuant to the Vaccine Act. *See Chiles v. American Home Products. Corp.*, Civil Action No. 4:03-CV-802-A (N.D. Tex. Oct. 2, 2003) (**Exhibit G**).  A similar result was reached by a federal court in Louisiana in *Benasco v. American Home Products,* Civil Action No. 02-3577 (E.D. La. Sept. 10, 2003) (**Exhibit H**).  In that case, the court held that "the court of first instance for proper jurisdiction" over claims for alleged thimerosal-related injuries is the Vaccine Court. *Id.* at 8. The court then dismissed all claims for alleged vaccine-related injuries to a minor plaintiff against both vaccine manufacturers and Lilly as an alleged thimerosal manufacturer. *Id.*

   Plaintiffs simply cannot deny that the overwhelming majority of courts have dismissed **all** vaccine-related claims against alleged vaccine and vaccine component manufacturers alike even if the opinions do not specifically address alleged distinctions between the defendants. In fact, since the Vaccine Court issued its definitive opinion in the *Leroy* case, every Texas federal court to decide the issue has dismissed claims against Lilly as an alleged thimerosal manufacturer. In a total of 85 cases, nine federal and seven state courts have

---

[7] It is significant to note that Plaintiffs have not made any attempt to distinguish the prior rulings by the Western District or Eastern District, dismissing all claims against alleged thimerosal manufacturers along with all other manufacturers pursuant to the Act. *See Liu v. Aventis Pasteur, Inc.,*  219 F. Supp. 2d 762 (W.D. Tex. 2002); *Russak v. Aventis Pasteur, Inc.,* Civil Action No. A-02-CA-480-SS (W.D. Tex. Sept. 9, 2002); *Carabine v. Aventis Pasteur, Inc.,* Civil Action No. A-02-501-SS (W.D. Tex. Oct. 8, 2002); *Young v. Aventis Pasteur, Inc.,* Civil Action No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003); *Swafford v. Aventis Pasteur, Inc.,* Civil Action No. A-03-CA-055-SS (W.D. Tex. Mar. 7, 2003) (unpublished opinions attached as **Exhibit E**); *Botter v. Aventis Pasteur, Inc.,* Civil Action No. 9:02-CV-181 (E.D. Tex. Jan. 15, 2003) (**Exhibit F**).

dismissed vaccine-related claims against alleged thimerosal manufactures along with those against the alleged manufacturers of completed vaccines. Any lack of discussion in these orders regarding alleged "distinctions" between the manufacturers of vaccines and the manufacturers of vaccine components is due to the fact that such distinctions are irrelevant. Should the Court determine to consider these distinctions which were not pled in Plaintiffs' Petition, this Court should still dismiss said Petition pursuant to the Vaccine Act.

**B.     Plaintiffs May Not Maintain An Action In This Forum Against Any Party While Claims For The Same Alleged Injuries Are Proceeding In The Vaccine Court**

The Vaccine Act explicitly states that "[i]f a Plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death." 42 U.S.C. § 300-11(a)(5)(B). According to § 300aa-11(a)(5)(B), Plaintiffs are not entitled to have two actions pending for the same vaccine-related injuries, regardless of the types of claims alleged. Plaintiffs articulate no reason why they should be allowed to proceed in this forum against Lilly for the minor's alleged injuries while they are simultaneously seeking compensation for the same injuries in Vaccine Court. Rather, Plaintiffs only argue that the parent's claims are sufficiently distinct to avoid the application of 11(a)(5)(B). *See* Response, p. 9. The Vaccine Court has already held that a plaintiff "may not maintain parallel actions for a vaccine-related injury enabling [the plaintiff] to recovery twice for the same injury." *Klahn v. Secretary of Health and Human Services*, 31 Fed. Cl. 382, 387 (Fed. Cl. 1994). In other words, the statute "prevents petitioners from maintaining actions in two fora." *Leroy*, 2002 WL 31730680 at \*9. If a plaintiff attempts to obtain multiple recoveries, as between the Vaccine Act claim and the parallel civil action, dismissal of the civil action, rather than the plaintiffs' Vaccine Act petition, "is appropriate to cure the procedural

- 7 -

situation." *Klahn*, 31 Fed. Cl. at 387. Therefore, all Plaintiffs' vaccine-related claims must be dismissed as to **all** parties, in order for them to properly file for compensation in Vaccine Court.

### III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER TEXAS LAW

Regardless of whether the Court determines to dismiss Plaintiffs' claims pursuant to the Vaccine Act, Plaintiffs have failed to state a claim as to Lilly under Texas law. Specifically, Plaintiffs have failed to allege that they received and were injured by any product manufactured by Lilly. Without any allegation of receipt of a Lilly product, Lilly owes no duty to Plaintiffs which would form the basis of a products liability claim. *See Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 615 (Tex. 1996); *Block v. Wyeth, Inc.*, No. 3:02-CV-1077, 2003 WL 20307, *2 (N.D. Tex. Jan. 28, 2003). The only allegations Plaintiffs cite in their Response, that Lilly was "in the business of manufacturing and marketing vaccines and or/products that contain thimerosal" and the minor was allegedly injured by "Thimerosal-containing products," are insufficient to state a claim under Texas law. *See* Response, p. 15. Under Texas law, the plaintiff is required to demonstrate they **received** a product manufactured or distributed **by** the specific defendant named. As stated by the Texas Supreme Court, "[i]t is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." *Firestone Steel*, 927 S.W.2d at 614. Plaintiffs have failed to allege they received a Lilly product in their Petition or Response. Moreover, Plaintiffs wholly failed to respond to or distinguish the arguments and controlling authorities cited in Lilly's motion. As such, their claims against Lilly should be dismissed with prejudice for failure to state a claim.

For the foregoing reasons, Plaintiffs' Petition should be dismissed.

Respectfully submitted,

M. SCOTT MICHELMAN
Attorney-in-Charge
Texas Bar No. 00797075
Southern District ID No. 20802
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis, Suite 1600
Houston, TX 77002-2911
Telephone:     713/227-8008
Telefax:       713/227-9508

**ATTORNEYS FOR DEFENDANT,
ELI LILLY AND COMPANY**

**OF COUNSEL:**

DEBORAH A. MOELLER
JEFFERY A. KRUSE
SHOOK, HARDY & BACON L.L.P.
One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2118
Telephone:     816/474-6550
Telefax:       816/421-5547

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Eli Lilly and Company's Reply in Support of Its Motion to Dismiss was served on all counsel of record listed on the attached List of All Counsel of Record on this the 29th day of October, 2003. Due to the voluminous nature of the exhibits attached to Eli Lilly and Company's Reply, a copy of the exhibits is being provided only to the Court and to Plaintiffs' counsel. Should other counsel require a copy of the exhibits, Lilly will provide them upon request.

M. SCOTT MICHELMAN

- 9 -

## LIST OF ALL COUNSEL OF RECORD

Ben C. Martin
Law Office of Ben C. Martin
2100 McKinney Avenue, Suite 1975
Dallas, TX 75201
*and*
Tim K. Goss
Capshaw, Goss & Bowers
3031 Allen Street, Suite 200
Dallas, TX 75204
*Attorneys for Plaintiffs*

Peter C. Neger
Bingham McCutchen
399 Park Avenue
New York, NY 10022
*Attorneys for Defendant, Evans Medical Limited*

Mitchell C. Chaney
Rodriguez, Colvin & Chaney
1201 E. Van Buren Street
Brownsville, TX 78520
*Attorneys for Defendant,*
*B.F. Ascher & Company, Inc.*

Michael R. Klatt
Clark, Thomas & Winters
Post Office Box 1148
Austin, TX 78767-1148
*Attorneys for Defendant Wyeth*
*(f/k/a American Home Products)*

James L. Ray
Daw & Ray
5718 Westheimer, Suite 1750
Houston, TX 77057
*Authorized Representative for Defendant,*
*American International Chemical, Inc.*

Bradley S. Wolff
Swift, Currie, McGhee & Hiers
1355 Peachtree Street, NE, Site 300
Atlanta, GA 30309-3238
*and*
R. Jo Reser
Davidson & Troilo
7550 IH-10 West, Suite 800
San Antonio, TX 78229-5818
*and*

Miguel D. Wise
Miguel D. Wise, P.C.
134 West 5th Street
Weslaco, TX 78596
*Attorneys for Defendant Aventis Pasteur Inc., f/k/a*
*Connaught Laboratories, Inc. f/d/b/a Pasteur Merieux*
*Connaught*

Dr. Robert Koller
Dolder
Immengasse 9
400 Basel Switzerland
*Authorized Representative for Defendant, Dolder*

Jeffrey S. Wolff
Fulbright & Jaworski LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095
*Attorneys for Defendant, Smithkline Beecham*
*Corporation d/b/a Glazosmithkline*

Richard L. Josephson/Paul R. Elliott/Douglas B. Roberson
Baker Botts LLP
910 Louisiana, Suite 3000
Houston, TX 77002
*Attorneys for Defendant, Abbott Laboratories*

Michael Losasso
3001 Aloma Avenue, Suite 220
Winter Park, FL 32792
*Authorized Representative for Defendant,*
*RPK Pharmaceuticals, Inc.*

Edmundo O. Ramirez
Ellis Koeneke & Ramirez
1101 Chicago
McAllen, TX 78501-4822
*Attorneys for Defendant, Merck & Co., Inc.*

Thomas P. Sullivan
Stinnett Thiebaud & Remington L.L.P.
4800 Fountain Place
1445 Ross Avenue
Dallas, TX 75202-2702
*Attorneys for Defendant, Oralia T. Wells, M.D.*

*Defendant*, Eloisa T. Gonzalez, M.D.
825 Lakeside Drive
Brownsville, TX 78520

- 10 -

U:\14REPT\2003\OMNICONF\DIVL.FIN

1

## DIVISION L—HOMELAND SECURITY ACT OF 2002 AMENDMENTS

SEC. 101. GENERAL.—The Homeland Security Act of 2002 (Public Law 107–296) is amended—

(1) in section 308, by striking subsections (a) through (c)(1) and inserting in lieu thereof the following:

"(a) IN GENERAL.—The Secretary, acting through the Under Secretary for Science and Technology, shall carry out the responsibilities under section 302(4) through both extramural and intramural programs.

"(b) EXTRAMURAL PROGRAMS.—

"(1) IN GENERAL.—The Secretary, acting through the Under Secretary for Science and Technology, shall operate extramural research, development, demonstration, testing, and evaluation programs so as to—

"(A) ensure that colleges, universities, private research institutes, and companies (and consortia thereof) from as many areas of the United States as practicable participate;

"(B) ensure that the research funded is of high quality, as determined through merit review processes developed under section 302(14); and

U:\14REPT\2003\OMNICONF\DIVL.FIN

2

"(C) distribute funds through grants, co-operative agreements, and contracts.

"(2) UNIVERSITY-BASED CENTERS FOR HOMELAND SECURITY.—

"(A) DESIGNATION.—The Secretary, acting through the Under Secretary for Science and Technology, shall designate a university-based center or several university-based centers for homeland security. The purpose of the center or these centers shall be to establish a coordinated, university-based system to enhance the Nation's homeland security.

"(B) CRITERIA FOR DESIGNATION.—Criteria for the designation of colleges or universities as a center for homeland security, shall include, but are not limited to, demonstrated expertise in—

"(i) The training of first responders.

"(ii) Responding to incidents involving weapons of mass destruction and biological warfare.

"(iii) Emergency and diagnostic medical services.

"(iv) Chemical, biological, radiological, and nuclear countermeasures or detection.

U:\14REPT\2003\OMNICONF\DIVL.FIN

3

"(v) Animal and plant health and diagnostics.

"(vi) Food safety.

"(vii) Water and wastewater operations.

"(viii) Port and waterway security.

"(ix) Multi-modal transportation.

"(x) Information security and information engineering.

"(xi) Engineering.

"(xii) Educational outreach and technical assistance.

"(xiii) Border transportation and security.

"(xiv) The public policy implications and public dissemination of homeland security related research and development.

"(C) DISCRETION OF SECRETARY.—To the extent that exercising such discretion is in the interest of homeland security, and with respect to the designation of any given university-based center for homeland security, the Secretary may except certain criteria as specified in section 308(b)(2)(B) and consider additional criteria beyond those specified in section 308(b)(2)(B).

U:\14REPT\2003\OMNICONF\DIVL.FIN

4

Upon designation of a university-based center for homeland security, the Secretary shall that day publish in the Federal Register the criteria that were excepted or added in the selection process and the justification for the set of criteria that were used for that designation.

"(D) REPORT TO CONGRESS.—The Secretary shall report annually, from the date of enactment, to Congress concerning the implementation of this section. That report shall indicate which center or centers have been designated and how the designation or designations enhance homeland security, as well as report any decisions to revoke or modify such designations.

"(E) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated such sums as may be necessary to carry out this paragraph.

"(c) INTRAMURAL PROGRAMS.—

"(1) CONSULTATION.—In carrying out the duties under section 302, the Secretary, acting through the Under Secretary for Science and Technology, may draw upon the expertise of any laboratory of

U:\14REPT\2003\OMNICONF\DIVL.FIN

5

the Federal Government, whether operated by a contractor or the Government."; and

(2) in subsection 835(d) by striking all after the word "security" and inserting in lieu thereof a period.

SEC. 102. NON-PREJUDICIAL REPEAL OF SECTIONS 1714 THROUGH 1717 OF THE HOMELAND SECURITY ACT OF 2002. (a) REPEAL.—In accordance with subsection (c), sections 1714 through 1717 of the Homeland Security Act of 2002 (Public Law 107–296) are repealed.

(b) APPLICATION OF THE PUBLIC HEALTH SERVICE ACT.—The Public Health Service Act (42 U.S.C. 201 et seq.) shall be applied and administered as if the sections repealed by subsection (a) had never been enacted.

(c) RULE OF CONSTRUCTION.—No inference shall be drawn from the enactment of sections 1714 through 1717 of the Homeland Security Act of 2002 (Public Law 107–296), or from this repeal, regarding the law prior to enactment of sections 1714 through 1717 of the Homeland Security Act of 2002 (Public Law 107–296). Further, no inference shall be drawn that subsection (a) or (b) affects any change in that prior law, or that Leroy v. Secretary of Health and Human Services, Office of Special Master, No. 02–392V (October 11, 2002), was incorrectly decided.

U:\14REPT\2003\OMNICONF\DIVL.FIN

6

(d) SENSE OF THE CONGRESS.—It is the sense of the Congress that—

(1) the Nation's ability to produce and develop new and effective vaccines faces significant challenges, and important steps are needed to revitalize our immunization efforts in order to ensure an adequate supply of vaccines and to encourage the development of new vaccines;

(2) these steps include ensuring that patients who have suffered vaccine-related injuries have the opportunity to seek fair and timely redress, and that vaccine manufacturers, manufacturers of components or ingredients of vaccines, and physicians and other administrators of vaccines have adequate protections;

(3) prompt action is particularly critical given that vaccines are a front line of defense against common childhood and adult diseases, as well as against current and future biological threats; and

(4) not later than 6 months after the date of enactment of this Act, the Committee on Health, Education, Labor, and Pensions of the Senate and the Committee on Energy and Commerce of the House of Representatives should report a bill ad-

U:\14REPT\2003\OMNICONF\DIVL.FIN

7

dressing the issues described in paragraphs (1) through (3).

SEC. 103. GENERAL.—The Homeland Security Act of 2002 (Public Law 107–296) is amended—

(1) in subsection 232(f), by striking the period at the end of the sentence and inserting: ": *Provided,* That any such transfer or provision of funding shall be carried out in accordance with section 605 of Public Law 107–77.";

(2) in subsection 234(b), by striking the period at the end of the sentence and inserting: ": *Provided,* That any such transfer shall be carried out in accordance with section 605 of Public Law 107–77.";

(3) in subsection 873(b)—

(A) by inserting "Except as authorized by section 2601 of title 10, United States Code, and by section 93 of title 14, United States Code," before the word "Gifts" in the second place it appears; and

(B) by striking the letter "G" and inserting in lieu thereof "g" in the word "Gifts" in the second place it appears;

(4) in subsection 1511(e)(2), after the word "development" and before the period, by inserting:

U:\14REPT\2003\OMNICONF\DIVL.FIN

8

", and to any funds provided to the Coast Guard from the Aquatic Resources Trust Fund of the Highway Trust Fund for boating safety programs"; and

(5) at the end of the Act, by adding the following new section:

"SEC. 1714. Notwithstanding any other provision of this Act, any report, notification, or consultation addressing directly or indirectly the use of appropriated funds and stipulated by this Act to be submitted to, or held with, the Congress or any Congressional committee shall also be submitted to, or held with, the Committees on Appropriations of the Senate and the House of Representatives under the same conditions and with the same restrictions as stipulated by this Act.".

SEC. 104. INSPECTOR GENERAL OF THE DEPARTMENT OF HOMELAND SECURITY. (a) IN GENERAL.—Section 103(b) of the Homeland Security Act of 2002 (Public Law 107–296) is amended to read as follows:

"(b) INSPECTOR GENERAL.—There shall be in the Department an Office of Inspector General and an Inspector General at the head of such office, as provided in the Inspector General Act of 1978 (5 App. U.S.C.).".

ℬ

MCCARTER & ENGLISH                                    @002

T. DAVIS

| | | |
|---|---|---|
| CHARLES R. ASHTON, III and PENNY STARR-ASHTON, parents and natural guardians of MADIGAN ASHTON and LUCINDA ASHTON, et al. | : : : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY COMMERCE PROGRAM |
| vs. | : : | |
| AVENTIS PASTEUR, INC., individually and as successor in interest to CONNAUGHT LABORATORIES, INC., PASTEUR MERIEUX, and PASTEUR MERIEUX CONNAUGHT, et al. | : : : : | JULY TERM, 2002 NO. 04026 |

Control #011926, #011965, #011982, #012004, #012017, #012035, #012036, #012044, #012045, #020310

### ORDER and MEMORANDUM

AND NOW, to wit, this 22 day of ___, 2003, upon consideration of the Preliminary Objections of the defendants and the plaintiffs' response thereto, it is hereby ORDERED and DECREED said Preliminary Objections are SUSTAINED. The plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

BY THE COURT:

GENE D. COHEN,                    J.

COPIES SENT
PURSUANT TO Pa. R.C.P. 236(b)

MAY 2 2 2003

First Judicial District of Pa.
User I.D.: JCY

08/21/2003 10:00 FAX 12159793899   MCCARTER & ENGLISH   ☐003

| | | |
|---|---|---|
| CHARLES R. ASHTON, III and PENNY | : | COURT OF COMMON PLEAS |
| STARR-ASHTON, parents and natural | : | PHILADELPHIA COUNTY |
| guardians of MADIGAN ASHTON and | : | |
| LUCINDA ASHTON, et al. | : | COMMERCE PROGRAM |
| | : | |
| vs. | : | |
| | : | |
| AVENTIS PASTEUR, INC., individually and | : | JULY TERM, 2002 |
| as successor in interest to CONNAUGHT | : | |
| LABORATORIES, INC., PASTEUR MERIEUX, | : | NO. 04026 |
| and PASTEUR MERIEUX CONNAUGHT, et al. | : | |

Control #011926, #011965,
#011982, #012004, #012017,
#012035, #012036, #012044,
#012045, #020310

## MEMORANDUM

COHEN, GENE D., J.

### INTRODUCTION:

The instant action is a class action complaint brought by class representatives who seek actual damages and damages in the form of "medical monitoring" based upon injuries they and class members either currently have or may develop. The plaintiffs allege that vaccinations containing the chemical thimerosal were the source of their current and would-be injuries. The Court now has before it preliminary objections filed by all defendants -- manufacturers of the vaccines and thimerosal -- urging this Court to dismiss the plaintiffs' complaint and hold that for several reasons the plaintiffs have no cause of action. The Court hereby sustains said preliminary objections and dismisses the plaintiffs' complaint.

### BACKGROUND:

The plaintiffs seek damages and "medical monitoring" alleging they were poisoned by the presence of the ingredient Thimerosal in childhood vaccinations they received.

Within a few years after birth most American children receive a series of vaccinations. The vaccines administered control the virulent consequences of such childhood diseases as measles, pertussis, rubella, polio, whooping cough, hepatitis, diphtheria and tetanus. These vaccines often contain either a killed bacteria or live but weakened viruses and, hence, can cause serious adverse affects. *See* O'Connell v. Shalala, 79 Fed. 3d 170, 172 (1st Cir. 1996) (citing Committee to Review the Adverse Consequences of Pertussis and Rubella Vaccines, Institute of Medicine, Adverse Affects of Pertussis and Rubella Vaccines 1 (1991)). In 1996, responding to the possibility of a socio-medical catastrophe that might arise if the victims of the adverse consequences of childhood vaccinations made use of the tort liability system, Congress enacted the National Childhood Vaccine Injury Act of 1996, Pub. L. No. 99-660, 1986 U.S.C.C.N. (100 Stat.) 3755 (Codified as amended at 42 U.S.C. §§300aa-1 to 34) (1994). The purpose of the Vaccine Act was to establish a vaccine injury compensation program that would allow claimants to petition to receive compensation for vaccine-related injuries or death. Congress in its wisdom believed that to subject such injuries and deaths to the marketplace of the tort liability system would drive up the prices of vaccines and discourage vaccine manufacturers from remaining in the marketplace as well as leaving many sufferers of vaccine-caused injuries uncompensated. To receive compensation the claimant must petition the Court of Federal Claims and demonstrate by a preponderance of the *evidence* that (1) the vaccinated child suffered an injury listed on a table or a complication or "sequela" thereof, or (2) that the vaccine caused or significantly aggravated the child's injury or condition. *See* §§300aa-11 to 13 and 14. *See also* 42 C.F.R. §100.3 (1996). The Act in pertinent part requires that a person injured directly by a vaccine first bring a Vaccine Court proceeding. Id. §300aa-11(a)(2)(A). Then the statute gives that person the choice either to accept the court's award and abandon his tort rights (which the Act transfers to the federal

- 2 -

government, Id. §§300aa-17), or to reject the judgment and retain his tort rights. Id. §§300aa-21(a); 300aa-11(a)(2)(A)(i). A claimant can also keep his tort rights by withdrawing the Vaccine Court petition if the court moves too slowly. Id. §§300aa-21(b); 300aa-11(a)(2)(A)(ii).)

This new remedial system further interacts with traditional tort law suits by limiting punitive damage awards and bifurcating trials. The Act establishes a presumption of compliance with Food and Drug Administration requirements meaning the manufacturer provided proper directions and warnings and freeing the manufacturer from liability for not providing direct warnings to an injured person or his representatives. Id. §§300aa-23(a), 23(d), 22(c), 22(b)(1). See Schaeffer v. American Cyanimide Co., 20 Fed. 3d 1, 9 to 12 (1st Cir. 1994).

Further provisions of the Vaccine Act address the real issue of concern in these cases and that is whether the vaccine in question caused injury or death. There are two ways to prove causation under the Act. The Vaccine Injury Table lists certain injuries and conditions which if found to occur within a prescribed period of time following vaccination, create a rebuttable presumption of causation. In such "on table" cases petitioners do not need to show proof of actual causation. For instance, if a petitioner proves that her child received a DPT vaccine on July 20, 1998 and that she suffered an encephalopathy within three days thereafter or anaphylactic shock within 24 hours thereafter, causation is presumed. The Act's Qualifications and Aids to Interpretation further define the compensable conditions. A petitioner is no longer burdened with the onerous task of proving that the vaccine actually caused the condition in question. In the vast majority of cases the presumption of causation does not, however, obviate expert medical testimony. A qualified witness must still attest that the victim suffered the particular medical condition for which the compensation is being sought.

- 3 -

Where the symptoms fall outside the statutory time frames the petitioner must present evidence of causation and fact. The legislative history instructs that "simple similarity to conditions or time periods listed in the table is not sufficient evidence of causation; evidence in the form of scientific studies or expert medical testimony is necessary to demonstrate causation for such a petitioner. Petitioner need not, however, prove causation to a scientific certainty. Rather the petitioner must show a "logical sequence of cause and affect".

Once the petitioner establishes a *prima facie* case, the burden then shifts to the respondent who must prove by a preponderance of the evidence that the claimed injury is attributable to some factor unrelated to the vaccine. Such factors may not include "any idiopathic, unexplained, unknown, hypothetical or undocumentable cause, factor, injury, illness, or condition". In part because of belated participation by the respondent, the precise scope of the alternate cause injury has yet to be defined. Although the alternate cause determination is usually fact specific, the claims court has held as a matter of fact that proof of Sudden Infant Death Syndrome is insufficient to dispel the Act's presumption of causation. *See e.g.,* Daniel Green and Sandra Green, as legal representatives of the Estate of Chad Green v. Secretary of the Department of Health and Human Services, 19 Cl. Ct. 57 (1989).

The system thus establishes standards of proof under which individuals who suffer injuries within specified intervals after being administered a vaccine benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §300aa-11(c)(1)(C)(i). *See also,* Haggerty v. Wyeth Ayerst Pharmceutical Co., 79 F.Supp. 2d 182, 184 (E.D.N.Y. 2000).

A program claimant may not file a civil action against a vaccine manufacturer or administrator (i.e., the person or organization on behalf of whom the person administered the

- 4 -

MCCARTER & ENGLISH    ☒007

vaccination) unless the claimant initially files a timely petition in accordance with the program's guidelines. *See* Shalala v. Whitecotton, 514 U.S. 268, 270 (1995) and 42 U.S.C. §300aa-11(2)(A), explaining that a claimant alleging an injury after the Vaccine Act's effective date must exhaust the Act's procedures . . . before filing any *de novo* civil action in state or federal court. If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the court must dismiss the action. *See* 42 U.S.C. §300aa-11(a)(2)(B). Simply put, individuals who qualify as program claimants must file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all. If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her program award, that individual may reject the award and pursue a traditional tort action in any forum. *See* 42 U.S.C. §300aa-21(a).

Under the Vaccine Act, then, a person may not sue in state or federal court for more than $1,000 for a vaccine-related injury unless that person has first filed a petition in Vaccine Court within thirty-six months of the injury. The plaintiffs herein seek to circumvent this bar by claiming (a) they need not file petitions under the Act because the statute of limitations under the Act has expired, and (b) they are not injured. To quote from the plaintiffs' surreply memorandum of law:

> "Without question, the Vaccine Act does not provide relief to the children for whom plaintiffs request medical monitoring relief. As set forth in plaintiffs' Memorandum in Opposition, this case presents a textbook example of the circumstances where medical monitoring should be awarded: *asymptomatic* children who need testing as a result of defendants' tortious conduct in order to determine the extent, if any, of damage caused by direct injection of mercury into their bodies, so early diagnosis or mitigation can occur. These children are *asymptomatic* and therefore unable to obtain relief from the Act. No amount of verbal calisthenics can change that fact."

- 5 -

05/21/2003 10:01 FAX 12109193699    MCCARTER & ENGLISH    @008

Initially, and making reference to the amended complaint which is the subject matter of these proceedings, in conjunction with the foregoing assertion that "these children" are not injured and the plaintiffs' duties under the Vaccine Act, the Court's attention is inevitably drawn to the allegations in the complaint. Pages 6 and 7 of the complaint – a class action – name three representatives of the class. One is Madigan Ashton. She is described as "diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." The next class representative plaintiff is Samuel Kaplan, a minor child who "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." Another plaintiff, Robbie Powell, a minor, according to the complaint "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." And the fourth plaintiff, Lucinda Ashton, is described as having "achieved the neurological, social and developmental milestones anticipated for a child of her age." From pages 12 through 21 the complaint relates in detail the medical histories of each child, including their exposure to the vaccines in question. Each account of each child concludes with the statement, "In all [plaintiff] was poisoned with 237.5 micrograms of toxic mercury from the vaccines containing thimerosal." Overall, then, the Court has before it four plaintiffs, all "poisoned", three with injuries that the complaint alleges, inferentially if not directly, were caused by their thimerosal-containing vaccinations.

**DISCUSSION:**

Preliminary Objections pursuant to Pa.R.C.P. 1028(a)(1) and Pa.R.C.P. 1028(a)(4)

(a)    *This Court lacks jurisdiction under the Vaccine Act – Plaintiffs are Qualified Claimants under the Act.*

Without reiterating the foregoing discussion, it should be plain that this Court has

– 6 –

05/27/2003 16:57 FAX 12159793899    MCCARTER & ENGLISH    ☒009

no jurisdiction to entertain the vaccine-related claims of the plaintiffs for the following reasons. This Court holds that the plaintiffs are persons who would qualify to file original actions under the Vaccine Act because they do allege damages for vaccine-related injuries. Each plaintiff alleges that he or she was "poisoned" by the substance thimerosal added to a series of vaccines. No amount of verbal calisthenics can conceal the fact that plaintiffs do allege injuries, even if they are incubating injuries that may manifest themselves later in time. The plaintiffs Ashton, Kaplan and Powell definitely assert injuries in the form of learning disorders. And, as stated, all four plaintiffs unequivocally state they were poisoned. Being poisoned is being injured. Being injured involves the plenary jurisdiction of the Vaccine Act. Plaintiffs claims are precluded for this reason.

> (b)    *This Court lacks jurisdiction under the Vaccine Act — Thimerosal-related Injuries are "Vaccine-related".*

Every court that has had the opportunity to rule on this issue has held that thimerosal is not an "adulterant or contaminant" of the vaccines at issue, but a preservative inherent to the production of a vaccine. *See* McDonell v. Abbott Laboratories, C.A. No. 3:02 CV 437 LN slip opinion at pp. 2-3 (S.D.Miss. August 1, 2002); and Liu v. Aventis Pasteur, Inc., 219 F.Supp. 2d 7622 (W.D.Tex. 2002). What is more, an opinion by a fellow judge of this Court, Cheskiewicz et al. v. Aventis Pasteur, Inc., et al., May Term, 2002 #0952 (DiNubile, J. December 16, 2002) analyzes the very same contention — that thimerosal is an ingredient outside of the content of the vaccines thus enabling a separate state-related tort action to be brought against the manufacturers who use thimerosal — and holds that thimerosal does not fall within an exception or foreign substances added to vaccines. As the defendant vaccine manufacturers correctly point it is the unanimous position of the Secretary of United States Department of

05/21/2003 16:57 FAX 12159793899        MCCARTER & ENGLISH                    Ø010

Health and Human Services, the Vaccine Court and the Federal District and state trial courts that confronted the issue that thimerosal claims are covered by the Vaccine Act.

    (c)    *This Court lacks jurisdiction under the Vaccine Act -- Plaintiffs were Qualified Claimants even though untimely.*

The plaintiffs through their lawyers support their identities as state tort plaintiffs by claiming that they failed to file their claims "within three years from the onset of a vaccine-related injury" and it is the latent nature of their purported injuries that caused them to do so. For this contorted reason the plaintiffs believe they are exempted from filing a petition in the Vaccine Court. This argument was rejected by the court in Cheskiewicz, *supra*. This Court will re-emphasize the rejection. The Court can simply re-recite the language of Cheskiewicz to dismiss the complaint on these grounds:

> "One cannot simply wait out the three-year limitations period and then file a civil tort action free from all substantive and procedural limitations under the Vaccine Act. It is clear that plaintiffs' attempts to commence this suit in District Court and subsequently this Court are to circumvent the requirements of the Act. If the instant suit were permitted, then every litigant who did not want to first assert claims in Vaccine Court simply could wait out the 36 month requirement if the tort actions were not barred by the statute of limitations and then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress." *See* McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J.Super.Ct.App.Div. 2001) (affirming the lower court's dismissal of the suit under circumstances similar to the instant case).

The Vaccine Act by its terms unambiguously bars civil actions for damages for alleged vaccine-related injury "unless a petition has been filed in accordance with §300aa-16 of this title." That section provides that "no petition for compensation shall be filed for [a vaccine-related] injury after the expiration of 36 months from the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42

05/27/2003 16:57 FAX 12159793899          MCCARTER & ENGLISH                    ☑011

U.S.C. 300aa-16(a)(2). Plaintiffs have admittedly missed filing under the foregoing provision within the acceptable period of time. Because this Court holds that only the Vaccine Court has jurisdiction over their claims, their claims must be dismissed with prejudice.

> (d)  *Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.*

In what this Court views as largely a rhetorical instrument aimed at circumventing the requirements of the Vaccine Act, the plaintiffs base their state tort claim on a right to "medical monitoring" for injuries yet to be ascertained. The Court agrees with the defendants in holding that without an underlying tort no relief for medical monitoring can be asserted. *See* Redland Soccer Club, Inc. v. Department of the Army, 696 A.2d 137 (Pa. 1997). The Supreme Court in Redland held that proof of a defendant's negligence is a required element of a cause of action for medical monitoring. The complaint by its terms suggests no proof of the defendants' negligence. The substance at issue is a prescription drug. As the defendants point out, manufacturers of prescription drugs can be held negligent only on a failure to warn formulation. Were the manufacturers' alleged failures to warn issued to doctors insufficient then the manufacturers may be negligent. *See* Demmler v. SmithKlineBeecham, 671 A.2d 1151, 1155 (Pa. Super. 1995) allocatur denied 684 A.2d 557 (Pa. 1996). The plaintiffs are not suing the doctors who administered the vaccinations, so there is no proof that the prescribing doctors were independently aware of the risks at issue. Therefore, proximate cause is not pleaded and thus absent.

The Court further holds that none of the attempted tort formulations the plaintiffs raise in their complaint have a basis under Pennsylvania law. For example, the plaintiffs allege the vaccine defendants negligently failed to test their vaccines and negligently designed,

- 9 -

05/21/2003 19:51 FAX 12159193599          MCCARTER & ENGLISH                    ☑012

manufactured and packaged them by using multi-dose vials which require thimerosal as a preservative. *See* Paragraphs 163, 165 and 195(a) and (c) of the Amended Complaint. Again, a brother jurist in this Court has held that negligent failure to test is not an independent tort under Pennsylvania law. *See* In re: Phenylpropanolamine Litigation #0001, September Term, 2001 (Tereshko, J.).

      (e)    *Remaining Counts.*

        . 1.    Fraud

      While it may not be necessary for this Court to address the specific counts of the complaint, having held that the Vaccine Act applies exclusively to the plaintiffs' claims, the Court will specifically dismiss all remaining claims as having no basis under the law. What is more, plaintiffs' claim for fraud is not specifically pleaded as required by Rule 1019(b) of the Pennsylvania Rules of Civil Procedure. *See* Bash v. Bell Telephone Co., 601 A.2d 825, 831 (Pa.Super. 1992). Plaintiffs' claim for loss of consortium is not actionable not only because there is some ambiguity whether or not the plaintiffs are alleging loss of filial consortium due to injury or some other cause, but because this is not a recognized cause of action in Pennsylvania. *See* Quinn v. City of Pittsburgh, A. 353 (Pa. 1914); McCaskill v. Philadelphia Housing Authority, 615 A.2d 382, 384 (Pa.Super. 1992); Jackson v. Tastykake, 648 A.2d 1214, 1217 (Pa.Super. 1994).

      2.    Preliminary Objections as applied to the Vaccine suppliers

      This Court specifically rejects as without authority the plaintiffs' claim that the suppliers of thimerosal occupy a separate class apart from that of the vaccine manufacturers and, therefore, regardless of the Court's ruling on the motion of the vaccine manufacturers,

05/27/2003 10:58 FAX 12159793899          MCCARTER & ENGLISH                    ⓶013

should remain as defendants in this matter. The law contradicts this position. The Vaccine

Court in Leroy v. Secretary of HHS No. 02-392V at 12 (Ct. Fed. Cl. Office of Special

Masters, October 11, 2002) held that the term "vaccine" included the constituents of the

vaccine and this takes in thimerosal as well. The Court agrees with the defendants thimerosal

suppliers and distributors that the ingredient is interchangeable with the vaccine for the

purposes of the defendants' jurisdictional defense. Thus the exclusive jurisdiction of the

Vaccine Act should, this Court holds, apply to the manufacturers, suppliers and distributors of

thimerosal as well.

## CONCLUSION:

Because the class plaintiffs have not stated a cause of action cognizable under

Pennsylvania law, and principally because their claims are cognizable under the exclusive

jurisdiction of the federal Vaccine Act, all defendants' preliminary objections will be sustained

and the plaintiffs' complaint is dismissed with prejudice.

BY THE COURT:

GENE D. COHEN,                    J.

- 11 -



JUN 20 2003 FRI 12:22 PM                                    FAX NO.                    P. 03

AMBROSE AGBEBAKU and MARY          *       IN THE
GILBERT, Individually, and
as Parents and Next Friends of     *       CIRCUIT COURT
ALLEN AGBEBAKU, a Minor
                                   *       FOR
       Plaintiffs
                                   *       BALTIMORE CITY
v.
                                   *       Case No: 24-C-02-004243*
SIGMA ALDRICH, INC., et al.
                                   *
       Defendants
    *    *    *    *    *    *    *    *    *    *    *    *    *

ORDER

*RELATED THIMEROSAL CASE NUMBERS:

| | | |
|---|---|---|
| 24-C-02-004175 | 24-C-02-004238 | 24-C-02-004321 |
| 24-C-02-004176 | 24-C-02-004239 | 24-C-02-004322 |
| 24-C-02-004178 | 24-C-02-004240 | 24-C-02-004323 |
| 24-C-02-004179 | 24-C-02-004241 | 24-C-02-004324 |
| 24-C-02-004180 | 24-C-02-004242 | 24-C-02-004328 |
| 24-C-02-004181 | 24-C-02-004245 | 24-C-02-004935 |
| 24-C-02-004182 | 24-C-02-004246 | 24-C-02-005122 |
| 24-C-02-004183 | 24-C-02-004247 | 24-C-02-005868 |
| 24-C-02-004184 | 24-C-02-004249 | 24-C-02-005869 |
| 24-C-02-004185 | 24-C-02-004251 | 24-C-02-005870 |
| 24-C-02-004186 | 24-C-02-004252 | 24-C-02-005871 |
| 24-C-02-004188 | 24-C-02-004253 | 24-C-02-005872 |
| 24-C-02-004189 | 24-C-02-004254 | 24-C-02-005873 |
| 24-C-02-004190 | 24-C-02-004255 | 24-C-02-005936 |
| 24-C-02-004191 | 24-C-02-004256 | 24-C-02-007224 |
| 24-C-02-004192 | 24-C-02-004257 | 24-C-02-007231 |
| 24-C-02-004194 | 24-C-02-004320 | 24-C-02-007234 |
| | | 24-C-02-007235 |

Upon consideration of the preliminary motions filed on behalf of all Defendants, as well as the Plaintiffs' Oppositions filed thereto, and the reply memoranda submitted on behalf of the Defendants, and after oral argument having been held on April 21 - 22, 2003, it is this 19th day of June 2003, by the Circuit Court for Baltimore City hereby ORDERED that, for the reasons stated in this Court's Memorandum Opinion:

1.  All claims brought by or on behalf of the minor plaintiffs and all claims brought by the parents of the minors for costs and expenses arising from the minors' alleged vaccine-related injuries against Aventis Pasteur, Inc., Baxter Healthcare Corporation, Merck & Co., Inc., SmithKline Beecham Corporation d/b/a GlaxoSmithKline and Wyeth f/k/a American Home Products Corporation (collectively the "Vaccine Defendants") and Sigma-Aldrich, Inc., American International Chemical, Inc. Spectrum Laboratory Products, Inc. and Eli Lilly and Company (collectively the "Thimerosal Defendants") and Ortho-Clinical Diagnostics, Inc. and Johnson & Johnson (collectively the "Other Defendants") be, and the same is, hereby DISMISSED without prejudice for lack of subject matter jurisdiction pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300 aa-10 et seq.; and it is further ORDERED that:

2.  Defendants' Motion to Dismiss Count 11 (Fraud) be, and the same is, hereby DENIED; and it is further ORDERED that:

3.  Defendants' Motion to Dismiss Count 13 (Fraud on the Marketplace - Fraudulent Misrepresentation/Fraudulent

2

JUN 20 2003 FRI 12:23 PM                    FAX NO.                        P. 03

Concealment) be, and the same is, hereby GRANTED; and it
is further ORDERED that:

4.   Defendants' Motion to Dismiss Count 14 (Maryland Consumer
     Protection Act) be, and the same is, hereby GRANTED; and
     it is further ORDERED that:

5.   Defendant Constellation Energy Group's Motion to Dismiss
     be, and the same, is hereby GRANTED; and it is further
     ORDERED that:

6.   Plaintiffs' Amended Complaint be, and the same is, hereby
     DISMISSED with PREJUDICE as to Defendant Constellation
     Energy Group; and it is further ORDERED that:

7.   Defendant Baltimore Gas & Electric Company's Motion to
     Dismiss be, and the same is, hereby GRANTED; and it is
     further ORDERED that:

8.   Plaintiffs' Amended Complaint be, and the same is, hereby
     DISMISSED with PREJUDICE; and it is further ORDERED that:

9.   The Clerk shall forward a copy of this Order to all
     Counsel of Record in this proceeding.

                    The Honorable Stuart R. Berger
                      The Judge's Signature Appears
                      on the Original Document Only
                                                          :y

cc:  All Counsel of Record

3

SERVICE LIST

Thomas F. Yost, Jr., Esq.
Michael A. Pulver, Esq.
341 North Calvert Street, Suite 100
Baltimore, MD 21202

D'Ana E. Johnson, Esq.
Keith M. Bonner, Esq.
Carolyn Israel Stein, Esquire
Bonner, Kiernan, Trebach & Crociata
1250 Eye Street, N.W., Suite 600
Washington, DC 20005

M. Diane Owens, Esq.
Bradley S. Wolff, Esq.
Swift, Currie, McGee & Hiers, LLP
The Peachtree
1355 Peachtree Street, N.E., Suite 300
Atlanta, GA 30309-3231

Kenneth Scott, Esq.
Wilson, Elser, Moskowitz, Edleman & Dicker, LLP
The Curtis Center, Suite 1130 East
Independence Square Est
Sixth & Walnut Streets
Philadelphia, PA 19106

Warren Lutz, Esq.
Jennifer R. Kantor, Esq.
Jackson & Campbell, P.C.
1120 20th Street, N.W.
Suite 300 South
Washington, DC 20036

Paul F. Strain, Esq.
Dino S. Sangiamo, Esq.
Stephen E. Marshall, Esq.
Venable, Baetjer and Howard, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201

Deborah M. Russell, Esq.
Janet Selph Moyers, Esq.
McGuireWoods, LLP
One James Center, 901 East Cary Street
Richmond, VA 23219-4030

JUN 20 2003 FRI 12:23 PM                    FAX NO.                         P. 01

Jonathan T. Blank, Esq.
Maguire Woods, LLP
7 St. Paul Street, Suite 1000
Baltimore, MD 21202-1671

Winston D. Carter, Jr., Esq.
Charles Jason Rother, Esq.
Fulbright & Jaworski, LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095

Stephanie A. Smith, Esq.
Stacey A. Martinez, Esq.
Fulbright & Jaworski, LLP
600 Congress Avenue, Suite 2400
Austin, TX 78701

Raymond G. Mullady, Jr., Esq.
Kenneth Y. Turnbull, Esq.
Orrick, Herrington & Sutcliffe, LLP
Washington Harbour
3050 K Street, N.W.
Washington, DC 20007

Daniel J. Thomasch, Esq.
Lauren J. Elliot, Esq.
Orrick, Herrington & Sutcliffe, LLP
665 Fifth Avenue
New York, NY 10103-0001

Paul J. Maloney, Esq.
William J. Carter, Esq.
Carr Maloney, PC
1667 K Street, N.W.
Suite 1100
Washington, DC 20006-1605

Brian S. Goodman, Esq.
Fedder and Garten, P.A.
2300 Charles Center South
36 S. Charles Street
Baltimore, MD 21201

Thomas J. Cullen, Jr., Esq.
Ericka L. Kleiman, Esq.
Goodell, Devries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202

Michelle R. Mangrum, Esq.
John H. Hsu, Esq.
Shook, Hardy & Bacon, LLP
Hamilton Square
600 14th Street, N.W.
Washington, DC 20005-2004

Deborah A. Moeller, Esq.
David W. Smith, Esq.
Chris Murphy, Esq.
Marie Woodbury, Esq.
Shook, Hardy & Bacon, LLP
One Kansas City Place
1200 Main Street
Kansas City, MO 64104-2118

Deborah E. Jennings, Esq.
Damon L. Krieger, Esq.
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, MD 21209-3600

Jonathan D. Smith, Esq.
Jennifer Wright Burke, Esq.
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, MD 21209-3600

Richard M. Barnes, Esq.
Bonnie J. Beavan, Esq.
Goodell, Devries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202

Robert C. Tucker, Esq.
Arter & Hadden, LLP
1100 Huntington Building
925 Euclid Avenue
Cleveland, OH 44115

JUN-20-2003 FRI 12:24 PM                    FAX NO.                        P. 09

| | | |
|---|---|---|
| AMBROSE AGBEBAKU and MARY GILBERT, Individually, and as Parents and Next Friends of ALLEN AGBEBAKU, a Minor | * * * | IN THE CIRCUIT COURT FOR |
| Plaintiffs | * | BALTIMORE CITY |
| v. | * | |
| SIGMA ALDRICH, INC., et al. | * | Case No: 24-C-02-004243* |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

*RELATED THIMEROSAL CASE NUMBERS:

| | | |
|---|---|---|
| 24-C-02-004175 | 24-C-02-004238 | 24-C-02-004321 |
| 24-C-02-004176 | 24-C-02-004239 | 24-C-02-004322 |
| 24-C-02-004178 | 24-C-02-004240 | 24-C-02-004323 |
| 24-C-02-004179 | 24-C-02-004241 | 24-C-02-004324 |
| 24-C-02-004180 | 24-C-02-004242 | 24-C-02-004328 |
| 24-C-02-004181 | 24-C-02-004245 | 24-C-02-004935 |
| 24-C-02-004182 | 24-C-02-004246 | 24-C-02-005122 |
| 24-C-02-004183 | 24-C-02-004247 | 24-C-02-005868 |
| 24-C-02-004184 | 24-C-02-004249 | 24-C-02-005869 |
| 24-C-02-004185 | 24-C-02-004251 | 24-C-02-005870 |
| 24-C-02-004186 | 24-C-02-004252 | 24-C-02-005871 |
| 24-C-02-004188 | 24-C-02-004253 | 24-C-02-005872 |
| 24-C-02-004189 | 24-C-02-004254 | 24-C-02-005873 |
| 24-C-02-004190 | 24-C-02-004255 | 24-C-02-005936 |
| 24-C-02-004191 | 24-C-02-004256 | 24-C-02-007224 |
| 24-C-02-004192 | 24-C-02-004257 | 24-C-02-007231 |
| 24-C-02-004194 | 24-C-02-004320 | 24-C-02-007234 |
| | | 24-C-02-007235 |

## INTRODUCTION

Plaintiffs allege that their minor children suffered an increase risk of developmental harm and specifically, autism, which were proximately caused by the administration of various childhood vaccines containing the preservative thimerosal, the composition of which contains mercury. The Plaintiffs allege that their children suffered injuries resulting from repeated exposure to thimerosal, a mercury containing preservative added to some vaccines and other pharmaceutical products. Plaintiffs further allege that their children's injuries were exacerbated by coal burning power plants owned and operated by Baltimore Gas & Electric Company and Constellation Energy Group. Plaintiffs seek relief, including compensatory and punitive damages on numerous statutory and common law theories.

## PROCEDURAL HISTORY

On January 30, 2003, Judge Carol E. Smith (Judge-in-Charge of the Civil Docket for the Circuit Court for Baltimore City) issued "Maryland Thimerosal Litigation"[1] Order Number 1 in the above-captioned cases. These cases include 49 cases that were remanded to this Court from the United States District Court for the District of Maryland by Order of Judge Andre M. Davis dated December 18, 2002. Judge Smith's Order dated January 30, 2003

---

[1] For ease of reference, these cases will be described as the Maryland Thimerosal Litigation.

established a briefing schedule for the filing of "Master Briefs" as well as other preliminary motions, oppositions and replies supporting or opposing the Master Briefs.

Thereafter, four (4) additional cases were filed in the Circuit Court for Baltimore City (case numbers: 24-C-02-007224, 24-C-02-007231, 24-C-02-007234, and 24-C-02-002735). On March 21, 2003, Judge Smith executed an Order scheduling those cases along with the 49 other cases remanded from the United States District Court before this Court for a hearing on all preliminary motions on April 21 - 22, 2003.

Several preliminary motions were filed including:

1.   Vaccine Defendants'[2] Motion to Dismiss and Request for Stay (filed January 31, 2003);

2.   Thimerosal Defendants'[3] Motion to Dismiss (filed January 31, 2003);

---

[2] There are several categories of Defendants who, for ease of reference, are described as the "Vaccine Defendants," the "Thimerosal Defendants", the "Power Plant Defendants", and "Other Defendants". The Vaccine Defendants include: (1) Aventis Pasteur, Inc. (hereinafter "Aventis"); (2) Baxter Healthcare Corporation (hereinafter "Baxter"); (3) Merck & Co., Inc. (hereinafter "Merck"); (4) SmithKline Beecham Corporation d/b/a GlaxoSmithKline (hereinafter "GSK"); (5) Wyeth (formerly known aOXAmerican Home Products Corporation); and (6) Antex Biologics. On April 16, 2003, this Court granted a Stay as to Defendant Antex Biologics, Inc., and the proceedings against Antex Biologics were deferred to the Bankruptcy Court in accordance with Section 362 of Title 11 of the United States Code.

[3] The "Thimerosal Defendants" include: (1) Sigma-Aldrich, Inc.; (2) American International Chemical, Inc.; (3) Spectrum Laboratory Products, Inc. and (4)Eli Lilly and Company. For reasons unrelated to the merits of these Motions, Eli Lilly and Company filed its Motion to Dismiss separate and distinct from the Thimerosal Defendants' Motion. Nevertheless, Eli Lilly and Company will be considered with the "Thimerosal Defendants" for the purpose of the determination of all preliminary motions.

-3-

3.   Power Plant Defendants'[4] Motion to Dismiss (filed January
     31, 2003);

4.   Other Defendants'[5] Motion to Dismiss and/or for Stay of
     All Claims and Proceedings.

The Plaintiff filed its Opposition to all preliminary Motions
on February 20, 2003 and requested a hearing on the preliminary
Motions.   On April 21 and 22, 2003, this Court (Berger, J.)
conducted a hearing on the extant Motions and held its decision on
all motions sub curia.   This Memorandum Opinion addresses all of
the outstanding Motions that were ripe at the time of the hearing
on April 21, 2003.[6]

## STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a
cause of action pursuant to Md. R. 322 (b)(2), a trial court must
assume the truth of all well-pleaded relevant material facts in the

---

[4] The "Power Plant Defendants" include: (1) Baltimore Gas & Electric,
Co. (hereinafter "BG&E"); and (2) Constellation Energy Group, Inc.
(hereinafter "CEG").

[5] The "Other Defendants" include: (1) Ortho-Clinical Diagnostics, Inc.
(hereinafter "OCD"); (2) Johnson and Johnson; and (3) Human Genome Sciences,
Inc. (hereinafter "HGS").   Prior to the hearing on April 21, 2003, counsel for
the Plaintiff and Human Genome Sciences, Inc. agreed to dismiss this action
against HGS without prejudice.   This Court granted the dismissal of HGS
without prejudice by Order dated April 25, 2003.

[6] On the first day of the hearing, Plaintiffs' counsel presented the
Court with an additional pleading captioned as "Supplemental Memorandum of Law
in support of Maryland Thimerosal Plaintiffs' Opposition to Thimerosal-Laden
Product Defendants (aka Vaccine Defendants) Motion to Dismiss and Request for
Stay."   Inasmuch as said filing was not authorized by the Scheduling Orders
signed by Judge Smith, this Court neither considered the filing nor allowed
oral argument on the contents of this filing at the hearing on April 21 - 22,
2003.

-4-

Complaint and all inferences reasonably drawn therefrom. Bobo v. State, 346 Md. 706, 708 (1997); Bd. of Education of Montgomery County v. Browning, 333 Md. 281, 286 (1994)("[the court] must accept as true all well-pleaded facts and allegations in the complaint"); Stone v. Chicago Title Ins. Co., 330 Md. 329, 333 (1993); Bennett Heating & Air Conditioning v. Nations Bank, 103 Md. App. 749, 757 (1995), rev'd on other grounds, 342 Md. 169 (1996). Additionally, in the context of a motion to dismiss, it would be improper to ask a judge to make any findings of fact. Morris v. Osmore, 99 Md. App. 646, 658 (1994).

It is well settled that the facts comprising the cause of action must be pleaded with sufficient specificity. Bobo v. State, supra, 346 Md. at 708. Indeed, the Maryland Rules expressly provide that "a pleading that sets forth a claim for relief ... shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for relief sought ..." Md. Rule 2-305. "Bald assertions and conclusory statements by the pleader will not suffice." Id.; Professional Staff Nurses Assoc. v. Dimensions Health Corp., 110 Md. App. 270, 285 (1996). Thus, the "grant of a motion to dismiss is proper if the complaint does not disclose on its face a legally sufficient cause of action." Lubore v. RPM Assoc., 109 Md. App. 312, 322 (1996), cert. denied, 343 Md. 565 (1996).

Alternatively, the motion to dismiss must be denied when the

facts, if proven, would entitle Plaintiff to relief.  <u>Morris v.</u>
<u>Osmose Wood Preserving</u>, 99 Md. App. 646, 653 (1991)(citing <u>Stone v.</u>
<u>Chicago Title Ins. Co. of Md.</u>, 330 Md. 329 (1993)).  When moving to
dismiss, a Defendant is asserting that even if the allegations of
the Complaint are true, Plaintiff is not entitled to relief as a
matter of law.  <u>Lubore</u>, <u>supra</u>, 109 Md. App. at 322.

<u>SUBJECT MATTER JURISDICTION</u>

**A.    Vaccine Defendants**

Defendants argue that the Plaintiff's injuries are governed by
what is commonly referred to as the Vaccine Act.  Specifically, 42
U.S.C.S. § 300aa-11(a)(2)(A), provides that:

> No person may bring a civil action for damages in an
> amount greater than $1,000 or in an unspecified amount
> against a vaccine administrator or manufacturer in a
> State or Federal court for damages arising from a
> vaccine-related injury or death associated with the
> administration of a vaccine after the effective date of
> this part, and no such court may award damages in an
> amount greater than $1,000 in a civil action for damages
> for such a vaccine-related injury or death, unless a
> petition has been filed, in accordance with 42 U.S.C.S.
> § 300aa-16, for compensation under the Program for such
> injury or death.

Further, Defendants contend that Plaintiff's Complaint must be
dismissed because Plaintiffs failed to exhaust any and all remedies
provided by the Vaccine Act's no-fault compensation program before
they filed a civil Complaint.  Defendants maintain that before
filing a Complaint against manufacturers and distributors of a
vaccine, Plaintiffs must first file a petition for compensation in
a specially constituted court of special masters that is part of

-6-

the United States Court of Federal Claims (hereinafter the "Vaccine Court").

Plaintiffs argue that they are exempt from filing a Vaccine Act claim in the Vaccine Court for several reasons, including but not limited to: (1) there is no federal preemption of vaccine-related injury claims; (2) the Homeland Security Act makes it clear that thimerosal claims should not have been and will not in the future be handled by the Vaccine Act; (3) Defendants have not established that Plaintiffs' claims 'qualify' under the Vaccine Act; and (4) Plaintiffs have no outstanding administrative remedy within the Vaccine Act, and therefore, they are not required to exhaust it.

Initially, this Court must determine whether the thimerosal preservative in vaccines is an 'adulterant' or 'contaminant' as defined in the Vaccine Act. If the thimerosal preservative is an 'adulterant' or 'contaminant,' the Plaintiffs are exempt from filing a claim in the Vaccine Court.  The Vaccine Act defines broadly the term 'vaccine related injury' as "an illness, injury, condition, or death associated with" vaccines listed in the Act, but not a condition "associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa-33(5).

Numerous courts have ruled on this issue and have held, as a matter of law, that thimerosal is not an adulterant or contaminant and have dismissed claims, identical to those brought here by

-7-

Plaintiff, for lack of subject-matter · jurisdiction.[7]
Significantly, a Texas court held recently that the "language of
the Vaccine Act unambiguously and specifically indicates that
injuries caused by vaccine preservatives (i.e., thimerosal) are
within its scope...it is clear that Congress has spoken to the
precise question at issue." Owens v. Am. Home Prods. Corp., 203 F.
Supp. 2d 748, 756 n. 11 (S.D. Tex. 2002).

Clearly, case law issued after the Vaccine Act and rules of
statutory interpretation support the conclusion that injuries
allegedly caused by the thimerosal preservative constitute vaccine-
related injuries. Accordingly, this Court finds that the
Plaintiffs' injuries caused by the thimerosal preservative indeed
constitute vaccine-related injuries.[8]

---

[7] See Liu v. Aventis Pasteur, Inc. 219 F. Supp. 2d 762 (W.D. Tex. 2002);
Owens v. Am. Home Prods. Corp., 203 F. Supp. 2d 748 (S.D. Tex. 2002);
O'Connell v. Am. Home Prods. Corp., No. G-02-184 (S.D. Tex. May 7, 2002);
Blackmon v. Am. Home Prods. Corp., No. G-02-179 (S.D. Tex. May 8, 2002);
Collins v. Am. Home Prods. Corp., No. 3:01CV979LN (S.D. Miss. Aug. 2, 2002);
McDonald v. Abbott Labs., Inc.,3:02CV77LN (S.D. Miss. Aug. 2, 2002); Stewart v.
Am. Home Prods. Corp., No. 3:02CV427LN (S.D. Miss. Aug. 2, 2002); Greene v.
Aventis Pasteur, Inc., No. L-1228-012 (N.J. Super. Ct. Aug. 8, 2002); Colson
v. Aventis Pasteur, Inc., No. L-1351-02 (N.J. Super. Ct. Aug. 8, 2002); Russak
v. Aventis Pasteur, Inc., No. A-02-CA-480-SS (W.D. Tex. Sept. 9, 2002);
Carabine v. Aventis Pasteur, Inc., No. A-02-CA-501-SS (W.D. Tex. Oct. 8,
2002); Holder v. Abbott Labs., No. 4:02-CV-148LN (S.D. Miss. Oct. 15, 2002);
Max v. Aventis Pasteur, Inc., No. CV 02-2018 (JBW)(E.D.N.Y. Oct. 28, 2002);
Mead v. Aventis Pasteur, Inc., No. 0107-07136 (Or. Cir. Ct. Nov. 6, 2002);
Radulovic v. Am. Home Prods. Corp., No. 02-05033 (Fl. Cir. Ct. Nov. 19, 2002);
Cheskiewicz v. Aventis Pasteur, Inc., No. 0952 (Pa. C. Dec. 16, 2002); Young
v. Aventis Pasteur, Inc., No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003); Botter
v. Aventis Pasteur, Inc., No. 9:02-CV-181 (E.D. Tex. Jan. 13, 2003); Shanaughy
v. Wyeth, No. 02-1517 CAWS (Fl. Cir. Ct. Jan. 17, 2003); Murphy v. Aventis
Pasteur, Inc., No. 1:02-CV-2257-CAP (N.D. Ga. Feb. 25, 2003).

[8] Plaintiffs argue that the Act does not apply to their claims because
of the adulterant/contaminant exception of 42 U.S.C. § 300aa-33(5). Although
the terms 'adulterant' and 'contaminant' are not defined in the Act,
established principles of statutory construction mandate the conclusion
thimerosal, when used as a preservative in licensed vaccines, is a constituent

The Vaccine Act provides that:

> No person may bring a civil action for damages in an amount greater than $1,000...against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury...unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury...

42 U.S.C. § 300aa-11(a)(2)(A). It is well settled that the Court must look at the plain language of the statute when determining its meaning. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992). As long as the language of the statute is clear, the function of the court is to enforce it according to its terms. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989).

However, if the plain language is ambiguous, the Court must look to the legislative history of the statute. The Vaccine Act expressly provides that: "[n]o person may bring a civil action for damages in an amount greater than $1,000" for damages incurred from a vaccine-related injury unless a petition has been filed in the Vaccine Court. 42 U.S.C. § 300aa-11(a)(2)(A). As virtually all of the Courts interpreting the Vaccine Act have held, this Court finds that the language in the Vaccine Act is clear and unambiguous. See, e.g., Owens v. An. Home. Prods. Corp., supra, 203 F. Supp. at

---

ingredient of the vaccines and not an adulterant or contaminant. In addition, both the Vaccine Court and the Secretary of the Health and Human Services have determined that thimerosal-related claims are included within the statutory definition of "vaccine related injury" because thimerosal is not an 'adulterant' or 'contaminant.' Amendola v. Secretary of HHS, 989 F.2d 1180, 1186 (Fed. Cir. 1993); Leroy v. Secretary of HHS, No. 02-392V (Fed. Cl. Oct. 11, 2002).

-9-

756; <u>O'Connell v. Am. Home Prods. Corp.</u>, No. G-02-184 (S.D. Tex. May 7, 2002); <u>Blackmon v. Am. Home Prods. Corp.</u>, No. G-02-179 (S.D. Tex. May 8, 2002).

Although this Court need not look to the legislative history in interpreting the Act, a review of the legislative history solidifies the Act's plain meaning: "All individuals injured by a vaccine administered after the date of enactment of the legislation are required to go through the compensation program ... before other remedies may be pursued." H.R. Rep. No. 99-908, at 3, <u>reprinted in</u> 1986 U.S.C.C.A.N. at 6344.[9]  It is only <u>after</u> a claimant has exhausted the no-fault compensation system that the claimant may elect to refuse any award or compensation and file a civil action. 42 U.S.C. § 300aa-21(a). This Court finds that Plaintiffs' injuries from the thimerosal preservative constitute vaccine-related injuries within the contemplation of the Vaccine Act. Accordingly, Plaintiffs failed to exhaust their remedies in the Vaccine Court before filing their action in this Court.

Further, the express terms of the Act are instructive. Section 42 U.S.C. § 300aa-11(a)(2)(B) expressly provides that: "If a civil action which is barred under [§ 300aa-11(a)(2)] is filed in

---

[9] The effective date of the Vaccine Act is November 15, 1988. In their oral argument, Plaintiffs stated that two to three minors of the 53 minor Plaintiffs included in the Complaint were exposed to thimerosal before October 1, 1988. However, Defendants maintain that according to Plaintiffs' Complaint, only one minor plaintiff was born before Congress enacted the Act (one minor plaintiff was born November 8, 1988). However, at oral argument on April 21, 2003, the Court was advised that the one minor plaintiff did not receive any vaccinations until six weeks after his birth, thereby making the plaintiff's exposure to thimerosal a post Vaccine Act case.

a State or Federal court, the court shall dismiss the action."
Furthermore, state and federal courts have dismissed such cases for
lack of subject-matter jurisdiction to decide the merits of
vaccine-related injury claims. See Brown v. Secretary of HHS, 874
F. Supp. 238, 241 (S.D. Ind. 1994)(granting motion to dismiss for
lack of subject-matter jurisdiction on this basis), aff'd mem., 61
F.3d 905 (7th Cir. 1995), 1995 WL 395753; Greene v. Aventis Pasteur
& Colson v. Aventis Pasteur, Nos. L-1288-02, L-1351-02, slip op. at
5 (N.J. Super. Ct. Aug. 8, 2002)(dismissing thimerosal-related
claims because "Plaintiffs' alleged injuries are vaccine-related
and this Court lacks jurisdiction in these matters"). Accordingly,
inasmuch as Plaintiffs' filed their claim in State court without
first exhausting their remedies in the Vaccine Court, this Court
must dismiss the vaccine-related injury claims for lack of subject-
matter jurisdiction.

Moreover, Plaintiffs contend that the repeal of the Homeland
Security Act amendments[10] to the Vaccine Act demonstrate that
Congress did not intend to include thimerosal claims within the
Vaccine Act. However, the mere fact that Congress clarified
specific sections of the Vaccine Act and subsequently repealed

---

[10] Before its repeal, sections the Homeland Security Act ("HSA")
clarified the definition of a vaccine-related injury by adding that "an
adulterant or contaminant shall not include any component or ingredient listed
in a vaccine's product license application or product label." Homeland
Security Act of 2002, Pub. L. No. 107-296, § 1715. Section 1716 of the HSA
clarified the definition of a vaccine to include "all components and
ingredients listed in the vaccine's product license application and product
label."

those clarifications does not indicate any intention of Congress to exclude thimerosal-related claims from vaccine-related injuries. On the contrary, the clarifications confirm the holdings of courts that had addressed whether thimerosal-related injuries are covered under the Vaccine Act <u>before</u> Congress enacted the HSA amendments.[11] <u>See</u>, <u>e.g.</u>, <u>Owens v. Am. Home Prods. Corp.</u>, 203 F. Supp. 2d, 748, 755 (S.D. Tex. 2002)(holding that "because the children's injuries are allegedly linked to a vaccine ingredient, their injuries are definitely 'vaccine-related'").

This Court is not persuaded by Plaintiffs' assertion that the HSA amendments "for <u>the first time</u> include Thimerosal claims within the Vaccine Act." State and federal courts have included thimerosal claims within the Vaccine Act for at least three months before the effective date of the HSA in November, 2002.[12] Indeed, state and federal courts continue to reach the same conclusion that thimerosal claims are within the Vaccine Act <u>after</u> Congress enacted the HSA amendments without regard to those amendments.[13]

---

[11] Prior to the effective date of the HSA (November 15, 2002), numerous courts decided that vaccines include all constituent materials identified in the biological license such as preservatives (i.e. thimerosal), and injuries attributed to any such constituent are "vaccine-related" claims covered by the Vaccine Act and its administrative filing requirement. <u>See</u> <u>supra</u> note 7.

[12] <u>See</u> <u>supra</u> note 7.

[13] <u>See</u> <u>Nax v. Aventis Pasteur, Inc.</u>, No. CV 02-2018 (JBW), slip op. at 4 (E.D.N.Y. Dec. 16, 2002)(declining to consider wehther the HSA amendments apply and dismissing complaint "based on the law prior to the effective date of the amendment"); <u>Young v. Aventis Pasteur, Inc.</u>, No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003), slip op. at 6 n.3 ("Because these amendments are quite new and the Court has relied in its previous thimerosal rulings on more established authorities, the Court need not interpret these amendments in this Order.").

-12-

The repeal of the HSA amendments is identified as "non-prejudicial." Because the amendments merely clarified existing law, the repeal changes nothing. Significantly, in its repeal, Congress included the following language:

> (a) Repeal. – In accordance with subsection (c), sections 1714-1717 of the [HSA] are repealed.
>
> (b) Application of the Public health Service Act. – The Public Health Service Act (42 U.S.C. 201 et seq.) shall be applied and administered as if the sections repealed by subsection (a) had never been enacted.
>
> (c) Rule of construction. – <u>No inference shall be drawn from the enactment of sections 1714 through 1717 of the [HSA], or from this repeal, regarding the law prior to the enactment of sections 1714 through 1717 of the [HSA]. Further, no inference shall be drawn that subsection (a) or (b) affects any change in that prior law, or that Leroy v. Secretary of Health and Human Sevs., Office of Special Master, No. 02-392V (October 11, 2002)[14] was incorrectly decided.</u> (Emphasis added).

H.J. Res. 2, 108th Cong. § 102(a-c). In sum, this Court finds -- as a matter of law -- that injuries related to the preservative thimerosal are encompassed within the definition of "vaccine-related injuries" in the Vaccine Act. This conclusion is based on several independent sources, including: (1) the decisions of state and federal courts before and after Congress enacted the HSA amendments; (2) the plain language of the repeal; (3) the repeal's express language reaffirming the <u>Leroy</u> decision; and (4) the

---

[14] The Vaccine Court in <u>Leroy</u> held that the "thimerosal preservative in vaccines is not an 'adulterant' or 'contaminant' under § 33(5) of the Vaccine Act" and that "petitioners alleging an injury ... from the thimerosal preservative in vaccines are statutorily obligated to file their claims against a manufacturer ... in the Court of Federal Claims, <u>in the first instance</u>." Slip op. at 26 (emphasis in original).

legislative history of the Act. As a result, Plaintiffs must first file their claim with the Vaccine Court. Inasmuch as this Court lacks subject-matter jurisdiction to preside over Plaintiffs' primary claims for vaccine-related injuries against the Vaccine Defendants, it must dismiss such claims for vaccine-related injuries.[15]

**B.    Thimerosal Defendants**[16]

The Thimerosal Defendants have adopted and incorporated the Vaccine Defendants' arguments regarding this Court's lack of subject-matter jurisdiction. For reasons stated previously (see discussion at pp. 6 -15), this Court finds that the causes of action arising out of vaccines containing thimerosal are vaccine-related. Further, this Court holds, as the Vaccine Court held in Leroy v. Secretary of the Dept. of Health & Human Servs., No. 02-382V (Fed. Cl. Oct. 11, 2002), that the preservative thimerosal is not an adulterant or contaminant because a "preservative is not an intentionally added ingredient of the vaccine meant to make impure, inferior, or contaminate the vaccine end product." Id. at 7.

---

[15] Plaintiffs also allege that they are exempt from filing their claim in Vaccine Court because they are not qualified to do so, as they are beyond the 36-month statute of limitation time period to file a claim. This Court finds such reasoning illogical. Plaintiffs' argument, if considered valid, would allow all future vaccine-related injured plaintiffs to simply "sit on their hands" and wait for the 36-month statute of limitations to pass in order to bypass the no-fault compensation program in the Vaccine Court and go straight to state or federal court. Such an approach is "counter to the intent of Congress." See McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J. Super. Ct. App. Div. 2001).

[16] In their Complaint, Plaintiffs have alleged that the Thimerosal Defendants manufactured and marketed thimerosal.

Rather, as a vaccine preservative, thimerosal is a constituent part or component part of the vaccine, thereby further buttressing this Court's decision that thimerosal-related injuries fall within the ambit of vaccine-related injuries. Accordingly, Plaintiffs must first exhaust all administrative remedies in Vaccine Court before filing a civil action in this Court. Because Plaintiffs failed to file their claims in the Vaccine Court "in the first instance", this Court must dismiss the action against the Thimerosal Defendants for lack of subject-matter jurisdiction.

### STATE CAUSES OF ACTION - THIMEROSAL AND VACCINE DEFENDANTS

A.  Intentional Infliction of Emotional Distress - Count 16

In order to establish a prima facie case for intentional infliction of emotion distress ("IIED"), Plaintiffs must allege and prove facts showing that: 1) the conduct in question was intentional or reckless; 2) the conduct was extreme and outrageous; 3) a causal connection exists between the conduct and the emotional distress; and 4) the emotional distress was severe. Alcalde v. Deaton Specialty Hospital, Inc., 133 F. Supp. 2d 702, 712 (D. Md. 2001). A complaint that fails to allege sufficient facts in support of each element of IIED must be dismissed. Id.

Defendants assert that the Court must dismiss Plaintiffs' claims because Plaintiffs can not establish the intent or extreme and outrageous conduct elements of the tort of IIED. In that context, Defendants maintain that they manufactured and distributed

FDA-approved vaccines. Defendants further argue that Plaintiffs failed to plead the intent, severe, and extreme and outrageous conduct elements of severe emotional distress with the specificity required by Maryland law. Specifically, Defendants contend that Plaintiffs failed to allege that Defendants either desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from Defendants' conduct, or acted recklessly in deliberate disregard of a high degree of probability that the emotional distress would follow.

Plaintiffs reply that Defendant's failure to include proper warnings with the vaccine about the known adverse side effects of thimerosal, coupled with the fact that the Defendants had actual knowledge at all relevant times that thimerosal is classified as a hazardous material, constitute intentional, extreme and outrageous conduct. Plaintiffs further maintain that by alleging in their Complaint that Defendants intentionally added thimerosal to the vaccine, and widely marketed and distributed the vaccine to the public, they have satisfied the intentional conduct element of the IIED tort.

Further, Defendants assert that Plaintiffs have failed to allege the requisite evidentiary particulars necessary to sustain a claim of IIED. Specifically, Defendants allege that Plaintiffs have not stated any facts describing with specificity the nature and extent of any severe emotional distress the Plaintiffs suffered

-16-

or whether any medical or psychological treatment was needed.

Moreover, Plaintiffs argue that Defendants failure to test the cumulative effects of persons repeated exposure to thimerosal demonstrate a causal connection between the Defendants' conduct and the Plaintiffs' injuries.   Plaintiffs further allege that Defendants knowingly or intentionally exposed Plaintiffs to thimerosal, a mercury poison, which resulted in brain damage. As a result, Plaintiffs contend that they have satisfied the specificity requirement of pleading the severity element of IIED. Plaintiffs maintain that all that is necessary for them to sustain this cause of action is for them to allege that the parent Plaintiffs must care for their children, the minor Plaintiffs, who now suffer from brain damage due to Defendants' intentional and reckless conduct.

To meet the "intentional or reckless" criterion of the first element, Plaintiffs must allege and show with particularity that Defendants "either *desired* to inflict severe emotional distress, *knew* that such distress was *certain or substantially certain* to result from [their] conduct, or acted recklessly in deliberate disregard *of a high degree of probability* that the emotional distress will follow." Foor v. Juvenile Servs. Admin., 78 Md. App. 151, 175 (1989)(emphasis in original).  This Court finds -- as a matter of law -- that Plaintiffs have failed to demonstrate that Defendants desired to inflict severe emotional distress, or knew that such distress was certain or substantially certain to result

-17-

from their conduct. Further, Plaintiffs have failed to show that Defendants' conduct generated a "high degree of probability" that emotional distress would result.

In their Complaint, Plaintiffs allege that Defendants manufactured, distributed, supplied, promoted, labeled, packaged, licensed, designed, sold and/or profited from the sale of thimerosal-laden products. Plaintiffs also allege that Defendants had actual knowledge of the toxicity of thimerosal. However, Plaintiffs' Complaint is devoid of any allegation that Defendants intended to harm Plaintiffs.

In Walser v. Resthaven Memorial Gardens, Inc., 98 Md. App. 371 (1993), the Court of Special Appeals considered whether, in an IIED cause of action, a Complaint which merely asserted Defendant's conduct but failed to assert any motivation behind that conduct could survive a motion to dismiss. The Court held that although an act may be intentional, the consequence of inflicting emotional distress may not be intentional. In such a case, the infliction of emotional distress may be the result of conduct undertaken for a wholly different purpose. Id. at 395. Simply stated, "An actor is not liable where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Id. (internal citations omitted).

Here, Defendants undisputably intended to add thimerosal into

-18-

the vaccine; without the preservative, the vaccine could not maintain its effectiveness.   Further, the Defendants clearly intended to expose minor Plaintiffs to the vaccine.   Plaintiffs have not demonstrated that Defendants ever intended to cause severe emotional distress or to cause brain damage.   The intent here was to add thimerosal into a vaccine to maintain the effectiveness of the vaccine, a motivation and act clearly "within its legal rights".

As pointed out in Alcade v. Deaton Specialty Hospital Home, Inc., supra, 133 F. Supp. 2d at 712, a significant issue is whether Defendants desired Plaintiffs to suffer severe emotional distress or acted with the appropriate degree of recklessness.   Based on the Complaint and the written submission by the parties, Plaintiffs have failed to satisfy that Defendants' conduct was intentional or reckless.   Because Plaintiffs failed to set forth sufficient facts establishing the first element of the tort as identified in Alcade, supra, 133 F. Supp. 2d at 712, this Court need not consider whether the remaining allegations are sufficient to support a cause of action for IIED.   For the foregoing reasons, this Court grants Defendants' Motion to Dismiss Count 16 of the Amended Complaint.

B.   Fraud - Counts 11 and 13

1.   Fraud

Defendants assert that Plaintiffs Amended Complaint is grossly deficient in alleging the facts necessary to sustain a cause of

-19-

action for fraud. Defendants maintain that the Complaint merely contains "broad, general, and conclusory allegations that have been deemed insufficient to sustain a claim of fraud." Defendants' Initial Memorandum at p. 44. Specifically, Defendants contend that Plaintiffs failed to plead facts establishing that Defendants made representations or withheld information with the intent to deceive Plaintiffs.

Plaintiffs assert that although there must be sufficient facts and circumstances pled to sustain a claim of fraud, they need not specifically detail the transaction in which the fraud is predicated.

In a cause of action for fraud, the Plaintiffs must set forth the facts constituting fraud with certainty and particularity. It is well settled that "a general allegation of fraud, however strong in expression, is not sufficient unless there is an allegation of the facts and circumstances relied on as constituting the alleged fraud." Sims v. Ryland Group, Inc., 37 Md. App. 470, 473 (1977)(internal citations omitted). Merely because a plaintiff uses the word "fraudulent" does not mean that the facts are sufficiently pled. Brack v. Evans, 230 Md. 548, 553 (1963). Charges of fraud, without allegations of facts and circumstances which constitute the fraud, does not sustain a sufficient pleading of the fraud. Id. There are no strict guidelines for the Court to determine how well facts and circumstances must be pled. As long as the allegations of fraud are supported by specific facts and circumstances, the Court must deny a motion to dismiss for failure

-20-

to state a claim for the relief granted.

To establish a claim for fraud, Plaintiffs must allege that: 1) Defendants made a false representation to Plaintiffs; 2) Defendants knew of the falsity or made representations with reckless indifference to its truth; 3) Defendants made the misrepresentation for the purpose of defrauding Plaintiffs; 4) Plaintiffs relied on the misrepresentation and had the right to rely on it; and 5) Plaintiffs suffered compensable injury resulting from the misrepresentation. Environmental Trust v. Graynor, 370 Md. 89, 97 (2002); McGraw v. Loyola Ford, Inc., 124 Md. App. 560, 584-85 (1999). Plaintiffs' Amended Complaint is very detailed; indeed its length is forty pages. In their Amended Complaint, Plaintiffs allege that Defendants made a false representation about the vaccines because they failed to:

> properly label, brand and warn about the toxic mercury contained in the [vaccine]. They specifically failed to identify the quantity of mercury in their products. Their products were in violation of the Maryland Food, Drug and Cosmetic Act, Md. Code Ann., Health-General II § 21-218 (2000).

Plaintiffs' Amended Complaint, ¶ 42.

Plaintiffs also allege that Defendants knowingly concealed material facts that Defendants had a duty to disclose, such as the presence of toxic mercury in the vaccines, the risks of mercury exposure, and the amount of mercury in each dose. Plaintiffs' Amended Complaint, ¶ 124. Plaintiffs allege that Defendants concealed such information with the intent to deceive Plaintiffs and that Plaintiffs relied and had a right to rely upon the

-21-

assumption that the concealed and undisclosed facts did not exist or were not harmful. Plaintiffs' Amended Complaint, ¶¶ 125-128. Finally, Plaintiffs allege that the acts or omissions of Defendants were a proximate cause of Plaintiffs' injuries and damages. Plaintiffs' Amended Complaint, ¶ 129.

This Court finds that Plaintiffs' allegations in their Amended Complaint are sufficient to support a claim of fraud. Plaintiffs specifically allege that Defendants failed to properly label, brand or warn about the toxicity of thimerosal in the vaccines. Plaintiffs allege facts and circumstances which -- if proven -- may constitute common law fraud. Accordingly, this Court denies Defendants' motion to dismiss Count 11 for failure to state a claim upon which relief can be granted.

**2.    Fraud    on    the    Marketplace    (Fraudulent Misrepresentation/Fraudulent Concealment)**

Count 13 of Plaintiffs' Complaint alleges fraudulent misrepresentation under Section 310 of the Restatement (Second) of Torts, otherwise known as fraud on the marketplace. Section 310 provides:

> An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or third person in reliance upon the truth of the representation, if the actor
>
> (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and
>
> (b) knows
>
>     (i) that the statement is false, or

-22-

(ii) that he has not the knowledge which he professes.

The Restatement provides examples of third party liability to illustrate how Section 310 should be interpreted. One such example is as follows:

A seller of an automobile who paints over a defective wheel or axle and so conceals its dangerously defective character is liable not only to his immediate buyer who is harmed by the collapse of the wheel or axle, but also to any person to whom the immediate buyer by sale, lease, or license transfers the use of the car, and to other travelers who sustain bodily harm or whose cars are damaged when the defective car gets out of control through the collapse of the wheel or axle.

Simply stated, a plaintiff claiming fraud on the marketplace is relieved of the burden of demonstrating their personal reliance on any alleged misrepresentations. The theory of fraud on the marketplace presumes reliance, while common law fraud requires proof of actual reliance. In re Medimmune, Inc. Sec. Litig., 873 F. Supp. 953, 968 (D. Md. 1995). Maryland courts have consistently held that "under Maryland law, there is no fraudulent misrepresentation cause of action for statements made to third parties." Estate of White v. R.J. Reynolds Tobacco Co., 109 F. Supp. 2d 424, 430 (D. Md. 2000)(citing Parlette v. Parlette, 88 Md. App. 628, 635 (1991)); see also Strange v. Sofamor Danek Group, Inc., 1999 U.S. Dist. 19717, at *2 (D. Md. 1999); In re Medimmune, supra, 873 F. Supp. at 968; Cofield v. Lead Indus. Assoc., No. MJG-99-3277 (D. Md. Aug. 17, 2000).

-23-

This Court finds that Plaintiffs' claim for fraudulent misrepresentation of third parties must fail as a matter of law because such a cause of action is inconsistent with venerable Maryland case law regarding fraud.[17] A claim for fraudulent misrepresentation of third parties does not require the injured party to have relied upon the alleged misrepresentation. Maryland law requires the injured person to actually rely on the alleged misrepresentation. Accordingly, Defendants' motion to dismiss Count 13 is granted.[18]

**C.    Maryland Consumer Protection Act -- Count 14**

The Consumer Protection Act ("CPA") prohibits a person from engaging in any unfair or deceptive trade practice in connection with certain enumerated activities. MD. CODE ANN., COMM. LAW § 13-101 et seq. (2000 Repl. Vol). Among the activities subject to the CPA are the "sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services.    MD. CODE ANN., COMM. LAW § 13-303. The General Assembly enacted the CPA and set minimum standards for the protection of consumers in response to

---

[17] See supra Part B, section 1 for common law fraud under Maryland law.

[18] Further, this Court finds that no confidential or fiduciary relationship existed between the parties which would have incurred a duty on Defendants to disclose to Plaintiffs any potential risks of its product. Plaintiffs argue that such a relationship exists because Defendants, not the physicians and other practitioners, had superior knowledge of the alleged defect in its product. However, in their Memorandum, Plaintiffs note that FDA panels have conducted studies that have proven the toxic effect of thimerosal. Plaintiffs' Opposition Motion at pp. 57-59. These studies serve as notice to physicians and other practitioners that indeed, thimerosal may have harmful effects.

-24-

concerns of the lack of "public confidence in merchants offering goods, services, realty, and credit." MD. CODE ANN., COMM. LAW § 13-102(b).

In their Complaint, Plaintiffs assert that the thimerosal-laden vaccine is a consumer good. A consumer good is defined as goods sold "which are primarily for personal, household, family, or agricultural purposes." MD. CODE ANN., COMM. LAW § 13-101(d). Plaintiffs support their argument with reference to the case of T-Up Inc. v. Consumer Protection Division, 145 Md. App. 27 (2002). In the T-Up case, defendants were alleged to have marketed deceptively to the general public an aloe vera extract that would cure diseases from cancer to AIDS.

Contrary to Plaintiffs' argument, the T-Up, Inc. case is wholly distinguishable from the issues present in this case. The defendants in T-Up used the following tactics to deceive potential victims: 1)Defendants falsely claimed they had Ph.D. degrees and even carried counterfeit diplomas from Germany; 2) Defendants mailed audio tapes entitled "There is Hope" to thousands of potential victims by using a purchase list; 3) the audio tape was a staged lecture with the Defendant acting as the speaker who held a question-answer session at the end of the tape; 4) Defendants gave false hope to the recipients of the audio tapes by including at the end of the recording "You and you alone can avoid becoming another statistic;" and 5) Defendants operated their corporation by

having telephone salespersons answer questions about the aloe vera extract using a desk reference manual. _Id._, at 39-41. In the present case, Plaintiffs have not alleged that Defendants engaged in any such tactics for the purpose of profiting from the vaccine. Further, in _T-Up_, the defendants were directly dealing with the consumers and victims. Here, Defendants were never in contact with Plaintiffs, nor did they directly market its products to the Plaintiffs. Defendants are bona fide manufacturers and distributors producing and providing an FDA-approved vaccine to knowledgeable physicians who professionally administer the vaccine. This Court finds that such a claim is not actionable under the Consumer Protection Act.

In addition, section 13-104 of the CPA exempt certain professional services from the Act, including "medical or dental practitioners." MD. CODE ANN., COMM. LAW § 13-104. Vaccines are part of the medical services that physicians and other medical personnel recommend and administer to patients. Under the CPA, the physicians and other medical personnel who actually select, recommend, and administer the vaccine are exempt from liability should any injuries result. Accordingly, the manufacturer or distributor of the vaccine, an entity even more attenuated from the injured person than the medical practitioner who selected, recommended, and administered the vaccine, must also be exempt from liability under the CPA.

For the above-mentioned reasons, even if vaccines were consumer goods as defined by the CPA, any manufacturer or distributer of the vaccines would be exempt from liability under section 13-104. Accordingly, this Court grants Defendants' motion to dismiss Count 14 of Plaintiffs' Complaint.

### ORTHO-CLINICAL DIAGNOSTICS, INC. and JOHNSON & JOHNSON

During the relevant time periods, Ortho-Clinical Diagnostics, Inc. ("OCD") manufactured and distributed RhoGAM, a hemoglobin product that contains mercury-based Thimerosal. RhoGAM was injected into Rh negative mothers immediately before they gave birth, exposing their fetuses in utero to the thimerosal. RhoGAM is not considered a vaccine under the Vaccine Act.

Plaintiffs argue that they need not file any claims against OCD and Johnson & Johnson (hereinafter "J&J")in the Vaccine Court because OCD and J&J are not vaccine manufacturers within the Vaccine Act and its products are not vaccines. Therefore, according to Plaintiffs, the injuries caused by OCD's and J&J's products are not vaccine-related injures. Defendants argue that the fact that RhoGAM is not listed as a vaccine under the Vaccine Act does not relieve Plaintiffs from first exhausting all remedies against all Defendants in the Vaccine Court. Defendants maintain that all of Plaintiffs' claims are for vaccine-related injuries and expenses that must first be adjudicated in the Vaccine Court.

Plaintiffs contend that their injuries resulted from

accumulated exposure of RhoGAM and thimerosal.   This Court has already established that any thimerosal-related injury must first be addressed in the Vaccine Court.  Plaintiffs' Complaint is devoid of any allegation that maternal exposure to RhoGAM caused any minor plaintiff's injury.  On the contrary, of the three minor Plaintiffs exposed to RhoGAM, all three were born "perfectly normal and healthy."  Plaintiffs' Complaint at ¶¶ 36, 72).  Consequently, any injury could only occur from an accumulation of exposure to RhoGAM and thimerosal, thereby making injuries from exposure to RhoGAM vaccine-related injuries.    All vaccine-related injuries must first be adjudicated in Vaccine Court before being tried in state or federal court.[19]    Further, should this Court entertain Plaintiffs' cause of action against OCD and J&J for their vaccine-related injuries, the Vaccine Act would prohibit Plaintiffs from seeking compensation through the Vaccine Court.[20]

     This Court has already held that Plaintiffs must first exhaust their administrative remedies in Vaccine Court before filing any claims in state court.   Recently, in Liu v. Aventis Pasteur, Inc., 219 F. Supp. 2d 762 (W.D. Texas 2002), a Texas court dismissed the plaintiff's thimerosal-related injury claims against non-vaccine manufacturers, in addition to vaccine manufacturers, until

---

[19] See supra, pp. 6- 15.

[20] The Vaccine Act states: "If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such a person may not file a petition under subsection (b) for such injury or death."  42 U.S.C. § 300aa-11(a)(5)(B).

Plaintiff first exhausted all remedies in the Vaccine Court.  The
Texas court stated that entertaining the non-vaccine related
injuries "would be wholly inconsistent with Congress' goal of
minimizing litigation costs..." Id. at 767-68. Here, Plaintiffs'
claim against OCD and J&J is clearly related to their claims
against the Thimerosal Defendants and Vaccine Defendants.
Therefore, Plaintiffs must first exhaust their remedies against OCD
and J&J in the Vaccine Court.  Accordingly, this Court grants
Defendant OCD's and J&J's motion to dismiss.

### POWER PLANT DEFENDANTS

**A.   Constellation Energy Group**

Plaintiffs maintain that Constellation Energy Group ("CEG")
owns, operates, maintains and markets energy created in part by
fossil-fuel/coal-burning power plants.  To the contrary, CEG is a
holding company which "holds" the stock of its various subsidies,
one of which is Baltimore Gas and Electric ("BGE").  As a holding
company for various subsidies, including BGE, CEG's primary
function is to hold their stock.

CEG can only be an appropriate party if Plaintiff convinces
this Court that they should be permitted to pierce the corporate
veil.  A party may pierce the corporate veil when the corporation
or company has committed fraud.  Plaintiffs fail to set forth any
allegations in its Complaint that would necessitate piercing the
corporate veil.  Further, contrary to Plaintiffs' pursuit of this

-29-

litigation against CEG, this Court cannot - - and will not  - -
allow Plaintiffs to "discover" whether they have a viable claim
against CEG <u>after</u> filing suit CEG.  Plaintiffs must have a good
faith basis for filing suit in the first instance.  <u>Southern
Leasing Partners, Ltd. v. McMullan</u>, 801 F. 2d 783, 788 (5th Cir.
1986) ("Appellants sued Phillips without knowing how he fit into
the picture, apparently hoping that later discovery would uncover
something").   Accordingly, this Court finds that CEG is an
inappropriate party to this litigation and grants CEG's motion to
dismiss for failure to state a claim against CEG.

B.    BGE

1. Public Nuisance - Count 19

Public nuisance is defined as "an unreasonable interference
with a right common to the general public."  <u>Tadjer v. Montgomery
County</u>, 300 Md. 539, 552 (1984), citing Restatement (Second) of
Torts § 821B.  Examples of an unreasonable interference with a
public right include conduct that significantly interferes with the
public health, public safety, public peace, or public convenience.
<u>Id.</u> The individual must suffer "some special or particular damage,
different not merely in degree, but different in kind from that
experienced in common with other citizens."  <u>Hoffman v. United Iron
& Metal Co.</u>, 108 Md. App. 117, 135 (1996), citing, <u>Baltimore & O.R.
Co. v. Gilmore</u>, 125 Md. 610, 617 (1915). Further, conduct that is
prohibited by statute, ordinance, or administrative regulation also

support a finding of public nuisance.  <u>Id.</u>

Defendants are authorized to manufacture, sell, and furnish electric power in any municipal corporation or county of the State in accordance with directives and licensing proceedings implemented by the Public Service Commission.  Defendants maintain that because it operates its power plants in accordance with authorizations from several sources including the Public Service Commission, the Maryland Department of the Environment, and the United States Environmental Agency, Plaintiffs' claim for public nuisance must fail as a matter of law.   Defendants assert that the cases Plaintiffs have supplied to support their public nuisance claim are distinguishable in that all of the cited cases involve claims seeking recovery for private nuisance rather than public nuisance. Defendants further argue Plaintiffs' suffered harm different in degree, but not in kind, than the general public. This allegation, Defendants contend, is insufficient, as a matter of law, for a claim against Defendants for public nuisance.

Plaintiffs contend that "[v]irtually any conduct may amount to a nuisance so long as it would be offensive or inconvenient to the normal person."  Plaintiffs' Response to Power Plant Defendants' Motion to Dismiss, p. 20.  Plaintiffs maintain that neither the legislature nor the Maryland Code would authorize Defendants to poison the public with mercury and then cloak them with immunity for causing or contributing to mercury poisoning.  In their oral

argument, Plaintiffs contended that absent a clause exempting Defendants from liability where they complied with the statute but harm nevertheless results, Defendants remain liable for injuries incurred by the manufacturing of its products. Plaintiffs further allege that their claim of "debilitating brain damage" satisfies the public nuisance requirement that the Plaintiffs' injury is different in kind and degree from that experienced by the general public.

This Court finds, for the reasons that follow, that Plaintiffs' claim for public nuisance fails, as a matter of law. It is uncontradicted that Maryland has authorized Defendants to produce electricity by power plants that emit mercury. The Plaintiffs do not contend that Defendants have operated its power plants in contravention of such authorization and in derogation with directives and licensing proceedings implemented by the Public Service Commission. Pursuant to the Restatement (Second) of Torts § 821(B), "[a]lthough it would be a nuisance at common law, conduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability." Restatement (Second) of Torts § 821(B) at Note F (1979). Moreover, "if there has been established a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct, the courts are slow to declare an activity to be a public nuisance if it complies with the regulations." Id. Further, although this Court is cognizant of

-32-

§ 821(B) of the Restatement (Second), it does not root its decision solely on the Restatement.[21]

This Court is persuaded by Defendants' argument that Plaintiffs suffered injuries different in degree, but not in kind. In a public nuisance action, a plaintiff must allege that he or she has suffered a harm that is different in <u>kind</u> from that shared by the general public; to allege that any harm is different in <u>degree</u> is insufficient to support a public nuisance cause of action. <u>See</u>, e.g., <u>Venuto v. Owens-Corning Fiberglas Corp.</u>, 22 Cal. App. 3d 116, 125 (1971)(Court considered an allegation that the public was suffering from a general irritation to the respiratory tract but plaintiffs were suffering a more severe irritation solely indicated that plaintiffs and the public were suffering from the same kind of harm but plaintiffs suffered to a greater degree). In <u>Venuto</u>, the California Appellate Court found that such an allegation did not support an action for public nuisance. <u>See also</u>, <u>Page v. Niagra Chem. Div. of Food Mach. & Chem. Corp.</u> 68 So.2d 382, 384 (Fla. 1953)(holding that plaintiffs failed to allege that their injuries were different in kind, not merely in degree, from the injury to the public and therefore such allegations were insufficient to sustain a public nuisance claim).

Here, Plaintiffs allege that while BGE's emissions affected all people by exposing them to mercury emissions, Plaintiffs'

_____

[21] The Court notes that as of the date this Opinion is issued, Maryland has not enacted any specific regulations regarding the emission of mercury.

-33-

children suffered greater harm than the general public because of their "heightened vulnerability." Complaint at ¶ 63. According to case law, if an individual who has an ailment, allergies for example, and files a public nuisance cause of action against a manufacturing plant alleging that pollution emitted aggravates their allergies and injures the health of the public, then the Court must dismiss the action for failing allege a harm different in kind and not degree.[22] This hypothetical is analogous to the case at bar.  The same mercury omissions that Plaintiffs allege caused injury to them, allegedly caused injury to the general public in that area.  Merely because Plaintiffs might be affected to a greater degree would not, under the case law, support a claim for public nuisance.

Accordingly, for all the reasons set forth, this Court grants Defendants motion to dismiss Count 19 of Plaintiffs' Complaint.[23]

**2.    Negligence - Count 20**

Defendants contend that Plaintiffs' negligence claim should be dismissed as a matter of law because it owed no duty to Plaintiffs. Specifically, Defendants argue that the United States Environmental

---

[22] On the other hand, if an ordinary person with ordinary sensibilities brings a public nuisance claim against the same manufacturing plant and alleges that pollution emitted has injured his or her respiratory tract and the health of the public, then a cause of action for public nuisance exists.

[23] In their response to Defendants' motion to dismiss, Plaintiffs cite and discuss several cases to support their public nuisance claim.  However, the cases cited by the Plaintiffs involve causes of action for private nuisance, not public nuisance.  Therefore, this authority is distinguishable from Plaintiffs' public nuisance claim.

Protection Agency studies the emissions of metals and other substances from power plants, regulating the power plants to the extent deemed appropriate. Further, the Maryland Department of the Environment, the Maryland Public Service Commission, and the federal Clean Air Act coexist for many purposes, including to "control the type and level of emissions that Power Plant Defendants may emit from their power generating facilities." Defendants' Motion to Dismiss at p. 14. Defendants maintain that it operated its coal-fired power plant in compliance with all regulations and that it had no duty to self-impose further obligations to avoid a suit for negligence. Further, by complying with the statute and regulations, Defendant maintain that they have satisfied any duty owed to Plaintiffs.

Plaintiffs argue that the duty Defendants owe to them arises from the responsibility each person or entity has to exercise due care to avoid unreasonable risks of harm to others. Plaintiffs' Response at 17. Plaintiffs further argue that an unreasonable risk, such that would give rise to a duty, can be determined by whether a reasonable person would or should know the harm is foreseeable. Id. at 17-18. Plaintiffs maintain the Defendants knew it was emitting dangerous levels of mercury, that Defendants knew of the potential harmful effects of its conduct, and still, Defendants failed to cease such emission or reduce it to safe levels.

-35-

To sustain a cause of action for negligence, Plaintiffs must show that: 1) Defendants owed a duty to Plaintiffs; 2) Defendants breached that duty; 3) Plaintiffs suffered injury; and 4) Plaintiffs' injury was proximately caused by Defendants' breach of its duty. Valentine v. On Target, 353 Md. 544, 549 (1999). Thus, there can be no negligence when no duty is due. In negligence actions, 'duty' is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Grimes v. Kennedy Krieger Institute, Inc., 366 Md. 29, 86 (2001), citing Prosser and Keeton [on Torts] §§ 53 [(W. Keeton 5th ed. 1984)]. In order to determine whether a duty exists, a Court must consider several factors; foreseeability being arguably the most important factor. Grimes, supra, 366 Md. at 82. Whether harm is foreseeable is generally determined by asking if a reasonable person knew or should have known that the alleged conduct would constitute an unreasonable risk of harm to another. B.N. v. K.K., 312 Md. 135, 141 (1988).

The issue of foreseeability is typically a question of fact for the trier of fact to determine. Yonce v. SmithKline Beecham Clinical Lab., 111 Md. App. 124, 141 (1996). However, merely because a result could be or should be foreseeable does not necessitate a finding that a duty exists. Grimes, supra, 366 Md. at 86. A duty is created when policy considerations lead the law to say that a particular plaintiff is entitled to protection. Ashburn v. Anne Arundel County, 306 Md. 617, 627-28 (1986). Such

-36-

policy considerations include "convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, [and] the moral blame attached to the wrongdoer." Id. (internal citations omitted). When determining whether a duty exists, the Court must also look to the seriousness of the potential harm along with the probability that harm will result. Faya v. Almaraz, 329 Md. 435, 449 (1993)(holding that a surgeon with AIDS had a duty to inform his patients he was infected because it was foreseeable that the surgeon would transmit the virus to his patients during surgery). Additionally, the Court must also consider the relationship that exists between the parties. Bobo v. State, 346 Md. 706, 715 (1997). Such a relationship can arise in a number of ways: "(1) by statute or rule; (2) by contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and the third party." Id. (internal citations omitted).

There is no relationship between Plaintiffs and Defendants that arises from statute or rule or by a contractual or other private relationship. Consequently, the only relationship that could exist between Plaintiffs and Defendants is one of an indirect or implied nature. Certain parties have an implied or indirect relationship: a lifeguard and swimmers on the lifeguard's shift, parents and children, researchers and human subjects, doctors and patients, common carriers and passengers, employers and employees, owners of land and licensees or invitees, innkeepers and their

-37-

guests, and custodians and their wards. Restatement (Second) of
Torts, §§ 314A-314B (1965). There is no such relationship between
a coal-fired power plant and the general public, including
Plaintiffs.[24] Absent some special relationship, Defendants do not
have a duty to act affirmatively for the benefit of Plaintiffs.
See Diane E. Hoffmann & Karen H. Rothenberg, Whose Duty is it
Anyway?: The Kennedy Krieger Opinion and its Implications for
Public Health Research, 6 J. Health Care L. & Pol'y 109, 112
(2002), quoting Dan B. Dobbs, The Law of Torts, § 227, at 579
(2000).

Neurological injury is most certainly a serious harm; however,
this Court finds that it is not probable that such an injury would
result from Defendants' ordinary operation of coal-fired power
plants. The facts in Faya v. Almaraz, supra, provide an example of
the "seriousness of harm/high probability of resulting harm"
element of a duty. In Faya, a surgeon infected with the AIDS virus
operated on numerous patients but failed to inform his patients
that he had the virus. Faya, supra. Medical literature indicates
the seriousness of potential harm, should one contract AIDS.
Further, it is foreseeable that a surgeon might transmit the AIDS
virus to his patients during invasive surgery. The seriousness of
the potential harm, coupled with its probability, creates a duty to
prevent it.

---

[24] Moreover, Plaintiffs have never alleged that a special relationship
exists between Defendant Power Plant and Plaintiffs or the general public.

-38-

Here, there is no indication that the emission of mercury caused or was a substantial factor in causing the minor Plaintiffs' neurological disorders. If, in fact, emission of mercury was a cause or a substantial factor in causing the disorders, it woulXd indeed be considered a severe harm. Further, Plaintiffs have failed to allege that there is a high probability that the emission of mercury caused the neurological disorders in the minor Plaintiffs. Accordingly, Plaintiffs have not satisfied the "seriousness of harm/high probability of resulting harm" element of determining whether a duty exists on behalf of Defendants.

Maryland Courts must look to see whether the legislature has proffered various policy considerations that would dictate whether a duty exists. Grimes, supra, 366 Md. at 100. Absent any voice from the legislature, courts must look to case law. Id. Here the legislature has spoken by assigning the United States Environmental Protection Agency the responsibility of regulating and studying mercury emissions from power plants. 42 U.S.C. § 7412.[25] When determining whether a duty exists, policy considerations are taken into account in order to compensate injured parties and deter the alleged wrongdoer from undesirable or risky behavior. Hoffman & Rothenberg, supra, at 113.

These objectives arise from broader societal goals including

---

[25] Section 7412(n) provides for various studies and regulations pertaining to mercury emissions from "electric utility steam generating units, municipal waste combustion units, and other sources, including area sources." 42 U.S.C. § 7412(n).

"moral responsibility and corrective justice between parties and societal welfare." Hoffman & Rothenberg, at 113. The corrective justice goal stems from the desire to instill "personal and institutional responsibility [within persons and entities] for their harmful actions and to correct wrongs through some form of redress or compensation." Id. at 114. Because the corrective justice goal can sometimes conflict with the goal of societal welfare, courts use a cost-benefit analysis to "take into account the social utility of a particular outcome." Questions arise including whether the result is so beneficial to society as to warrant the alleged tortfeasor to continue its conduct? Id. Further, are the plaintiff's interests entitled to legal protection against the conduct of the defendant? The production of power is patently essential to our everyday lives. The legislature has taken steps to ensure Defendants operation of its power plants complies with regulations. There is no claim that Defendants have not operated their power plants in the manner authorized by the various agencies that supervise them.

Inasmuch as Plaintiffs have failed to successfully allege factors this Court must consider when determining whether a duty exists, this Court finds that the issue of foreseeability is instructive in determining whether a duty exists. Was it foreseeable that Defendants' conduct, which resulted in mercury emissions, would create an unreasonable risk of harm to others?

-40-

The concept of duty and the idea of foreseeability create a conundrum: to be charged with a duty, one must look to the foreseeable harm, yet foreseeability is an issue for the trier of fact and duty is a question of law for the Court to decide. Nonetheless, when determining whether a duty exists, Courts have consistently applied the "foreseeability of harm" test. Rosenblatt v. Exxon Co., 335 Md. 58, 77 (1994); Henley v. Prince George's County, 305 Md. 320, 333 (1986). This test is based on the concept that no duty exists for unreasonably remote consequences. The key word here is "unreasonable."

In evaluating whether harm is foreseeable, this Court must again look to the relationship between the parties. There exists no relationship or privity between Plaintiffs and Defendants which would have made it reasonably foreseeable that Defendants' acts or failure to act would result in harm to Plaintiffs.[26] The relationship between the parties here is too attenuated to charge Defendants with foreseeability and duty. To do so would hold Defendants liable to the entire general public. Plaintiffs provide no indication that the majority of the general public suffer from the wholly unfortunate disorders that afflict minor Plaintiffs. As such, minor Plaintiffs' injuries are unreasonably remote

---

[26] The Court of Appeals in Rosenblatt, supra, deferred to the foreseeability test and lack of relationship between the parties when it found that Exxon, a former occupant of land, owed no duty to Rosenblatt, a subsequent occupant of same land, when it was found that the land was contaminated.

-41-

consequences from any alleged harm that Defendants may have caused. Defendants cannot be held liable for unreasonably remote consequences.

For the foregoing reasons this Court finds that no duty exists upon Defendants for unreasonably remote consequences. Absent any finding of a duty due to Plaintiffs, Defendants could not have breached a duty to Plaintiffs. Therefore, no cause of action for negligence exists. Accordingly, Defendants' motion to dismiss Count 20 is granted.[27]

### 3.   Punitive Damages - Count 21

Inasmuch as this Court has granted Defendants' motion to dismiss the public nuisance claim, the punitive damages claim of Count 21 is dismissed as it relates to Plaintiffs' claim for public nuisance.

Plaintiffs' claim for punitive damages for Defendants' alleged negligence is also dismissed. This Court has granted Defendants' motion to dismiss Count 20, which in effect eliminates any claim for punitive damages based upon negligence. As a result, Count 21 is dismissed in its entirety.

### 4.   Battery - Count 22

On December 30, 2002, Plaintiffs amended their Complaint, and

---

[27] This Court is cognizant of Judge Andre M. Davis' Remand Order wherein Judge Davis outlined the possibility of a viable negligence claim under Maryland Law. However, after studying the plethora of filings and being fully briefed oral argument, this Court finds that Plaintiffs have failed to successfully allege a claim for negligence against Baltimore Gas & Electric Company.

-42-

thereafter, added four more Plaintiffs for a total of 53 Plaintiffs. The Plaintiffs allege that Defendant Power Plant committed a battery through its emission of mercury during the production of energy.

A battery is the intentional touching of a person without that person's consent. <u>McQuiggan v. Boy Scouts of America</u>, 73 Md. App. 705, 714 (1988). Touching includes the intentional putting into motion of anything which touches another person. <u>Id.</u> To establish a claim for battery, Plaintiffs must show that the unwanted touching is harmful or offensive. <u>Ghassemieh v. Schafer</u>, 52 Md. App. 31, 42-43 (1982).

Defendants argue that Plaintiffs cannot infer the requisite general intent. Defendants further argue that there was no offensive touching. Defendants liken Plaintiffs' argument to the average person emitting pollution while driving his car. It would be unreasonable, according to Defendants, to hold each driver liable for battery merely because the pollution emitted from the car 'touches' the general public.

Plaintiffs argue that Defendants need not intend to have harmed them, only that Defendants violated the legally protected interest of another. Plaintiffs further argue that Defendants intended to produce energy, thereby intending to emit mercury, resulting in harm that did not involve the Plaintiffs' consent.

This Court finds that no cause of action for battery exists

-43-

for the activities alleged in the Amended Complaint.  Plaintiffs
are correct in arguing that it is immaterial whether Defendants
intended to do harm.[39]  However, Plaintiffs have not inferred the
requisite general intent required to sustain a cause of action for
battery against the Defendants.  Specifically, Defendants must have
intended to unlawfully invade Plaintiffs' physical well-being
through the emission of mercury from its power plants.  See, e.g.,
Nelson v. Carroll, 355 Md. 593, 602 (1999).  This Court finds that
Defendants, through its ordinary conduct of producing energy, did
not commit a battery on the minor Plaintiffs.  As a result,
Defendants are not liable to Plaintiffs for battery.  See, e.g.,
Nelson, supra 355 Md. at 603 (recognizing that a defendant would be
liable to a plaintiff for harmful contact if the contact resulted
from a volitional act where the defendant intended to invade the
plaintiff's legally protected interests).  Accordingly, this Court
grants Defendants' motion to dismiss Count 22 of the Amended
Complaint.

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

On April 21, 2003, the morning of the first day of oral
argument, Plaintiffs introduced a supplemental memorandum alleging
the unconstitutionality of the Vaccine Act.  This Court refused to
accept or consider the supplemental memorandum at the hearing, as
it was introduced clearly at the eleventh hour.  At the hearing on

---

[39] For example, horseplay or a prank can be a battery.  Ghassemieh v.
Schafer, 52 Md. App. 31 (1982).

April 21, 2003, this Court stated that it will not entertain Plaintiffs' supplemental memorandum as it plainly does not comply with Judge Smith's Order which set forth a briefing schedule with deadlines for Defendants' Motion to Dismiss, Plaintiffs' Opposition, and Defendants' Reply.    Plaintiffs had ample opportunity in their thorough Opposition to expand on any unconstitutionality argument. Additionally, Plaintiffs' attempt to introduce the supplemental memorandum does not comply with the Maryland Rules.

Further, the unconstitutionality issues Plaintiffs raise in the supplemental memorandum are not based on new precedent that was unavailable when Plaintiffs filed their Opposition.   Neither case law nor statutory law has changed since the filing of Plaintiffs' Complaint or Opposition that would precipitate raising these issues.

In light of this Court's decision, it is unnecessary to reach the Plaintiffs' argument that the Vaccine Act is unconstitutional. Accordingly, this Court grants Defendants motion to strike Plaintiffs' supplemental memorandum.

### STAY OF REMAINING CLAIMS

The state law claim that survives this Court's ruling on the preliminary motions is Count 11, Plaintiffs' claim of fraud.   For the reasons set forth previously, this Court finds that Count 11 is viable under applicable state law.

-45-

Clearly, it is within this Court's discretion whether to grant or deny a stay.  <u>Bancroft Info. Group v. Comptroller of the Treas.</u>, 91 Md. App. 100, 107 (1992), quoting <u>Dodson v. Temple Hill Baptist Church, Inc.</u>, 254 Md. 541, 546 (1969).  A court may "stay proceedings before it pending the determination of another proceeding that may affect the issues raised," especially if "many of the factual and legal issues in [one] action are identical to or are interrelated with and dependent on factual and legal issues in the [other] action."  <u>Vaughn v. Vaughn</u>, 146 Md. App. 264, 279-81 (2002).

Courts in other thimerosal actions have consistently stayed remaining claims.  In <u>Liu v. Aventis Pasteur, Inc.</u>, 219 F. Supp. 2d 762 (W.D. Tex. 2002), the court noted that "[c]ourts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication."  <u>Id.</u> at 768 (citations omitted).  The court stayed all proceedings in the parents' individual causes of action against all defendants until their child's claims were heard in the Vaccine Court.  <u>Id.</u>; <u>see also</u>, <u>Carabine v. Aventis Pasteur, Inc.</u>, No. A-02-CA-501-SS (W.D. Tex. Oct. 8, 2002); <u>Russak v. Aventis Pasteur, Inc.</u>, No. A-02-CA-480-SS (S.D. Tex. Sept. 7, 2002).

Based on this authority, this Court will stay all remaining non-vaccine related claims against Defendants pending resolution of minor Plaintiffs' primary claims in the Vaccine Court.  As a

-46-

result, Count 11 will be stayed.  To allow Plaintiffs to conduct discovery on some Defendants during the pendency of Plaintiffs' other claims in the Vaccine Court would be "wholly inconsistent with Congress's goal of minimizing litigation costs." Liu, supra, 219 F. Supp. 2d at 767-68.  Accordingly, this Court will stay Count 11 and not permit discovery until Plaintiffs have satisfied all mandatory requirements of the Vaccine Act.

### Conclusion

Accordingly, all claims brought by or on behalf of the minor plaintiffs, and all claims brought by the parents of the minor plaintiffs for costs and expenses arising from the minors' alleged vaccine-related injuries are dismissed without prejudice for lack of subject matter jurisdiction pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300 aa - 10 et seq.  Further, Defendants' Motion to Dismiss Count 11 is denied.  Moreover, for the reasons stated in this Opinion, this Court grants Defendants' Motion to Dismiss Counts 13, 14, 19, 20, 21 and 22 with prejudice. The remaining non-vaccine related claim against Defendants will be stayed pending a resolution of the minor Plaintiffs' primary claims in the Vaccine Court.

**The Honorable Stuart R. Berger**
The Judge's Signature Appears
on the Original Document Only

cc:  All Counsel of Record

-47-



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE. 09/25/03 | | DEPT. 324 |
| HONORABLE VICTORIA CHANEY    JUDGE | E. SABALBURO | DEPUTY CLERK |
| HONORABLE #6    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| F. LOPEZ, CRT. ASST.    Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 4:00 pm | JCCP4246 | Plaintiff Counsel |
| | Coordination Proceeding Special Title (Rule 1550 (b)) | Defendant Counsel |
| | The Vaccine Cases | |
| | | NO APPEARANCES |

NATURE OF PROCEEDINGS:

RULINGS ON SUBMITTED MATTERS HEARD SEPTEMBER 9, 2003

The court hereby makes its rulings pursuant to its
"1) RULING ON DEFENDANTS' DEMURRER TO FIRST AMENDED
MASTER COMPLAINT NO. 1 AND MOTION TO STRIKE PORTIONS
OF FIRST AMENDED MASTER COMPLAINT NO. 1; and
2) RULING ON DEFENDANTS' DEMURRER TO FIRST AMENDED
MASTER COMPLAINT NO. 2" as signed and filed this date.

As to demurrer to the 1st amended master complaint #1,
the demurrer is sustained without leave to amend as to
claims against vaccine manufacturers asserted by
injured Children and injured Adult Plaintiffs who have
not exhausted their remedies under the NVICP; and as
to the sixth, twelfth, thirteenth, and fourteenth
causes of action to the extent that is seeks receovery
for loss of filial consortium.  The demurrer is
sustained with leave to amend as to the first, second,
third, fourth, fifth, eighth, ninth, tenth and
eleventh causes of action.  The demurrer is overruled
as to the fifteenth cause of action as asserted by
spouses of Adult Injured Plaintiffs.  Plaintiff has
30 days to file an amended complaint.

As to the motion to strike portions of first amended
master complaint no. 1, defendants' motion to strike
is denied as punitive damages allegations.  The motion
to strike is moot as to the learned intermediary
doctrine as this issue has been addressed in the

Page    1 of    3    DEPT. 324

**MINUTES ENTERED**
09/25/03
**COUNTY CLERK**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 09/25/03 | | | DEPT. 324 |
|---|---|---|---|
| HONORABLE VICTORIA CHANEY | JUDGE | E. SABALBURO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| F. LOPEZ, CRT. ASST. | Deputy Sheriff | NONE | Reporter |

| 4:00 pm | JCCP4246 | Plaintiff Counsel | |
|---|---|---|---|
| | Coordination Proceeding Special Title (Rule 1550 (b)) | Defendant Counsel | |
| | The Vaccine Cases | | |
| | | NO APPEARANCES | |

**NATURE OF PROCEEDINGS:**

ruling on defendants' demurrer.

As to the demurrer to first amended master complaint no. 2, the demurrer is sustained without leave to amend.

A copy of the court's rulings are sent to counsel Fletcher Alford via U.S. mail this date.

Counsel Fletcher Alford is ordered to serve a copy of the court's rulings to all parties forthwith.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 9-25-2003 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date: 9-25-2003

John A. Clarke, Executive Officer/Clerk

Page   2 of   3   DEPT. 324

MINUTES ENTERED
09/25/03
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/25/03 | DEPT. 324 |
| HONORABLE VICTORIA CHANEY            JUDGE | E. SABALBURO            DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #6 |  |
| F. LOPEZ, CRT. ASST.    Deputy Sheriff | NONE                        Reporter |

| 4:00 pm | JCCP4246 | |
|---|---|---|
| | Coordination Proceeding Special | Plaintiff Counsel |
| | Title (Rule 1550 (b)) | Defendant Counsel |
| | The Vaccine Cases | |

NO APPEARANCES

NATURE OF PROCEEDINGS:

By: _____
            E. Sabalburo

Fletcher Alford
GORDON & REES
Embarcadero Center, West
275 Battery Street, Suite 2000
San Francisco, CA 94111

Page    3 of    3    DEPT. 324

MINUTES ENTERED
09/25/03
COUNTY CLERK

ORIGINAL FILED

SEP 2 5 2003

LOS ANGELES
SUPERIOR COURT

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| THE VACCINE CASES | Case No: JCCP 4246 |
| | RULING ON DEFENDANTS' |
| | DEMURRER TO FIRST AMENDED |
| | MASTER COMPLAINT NO. 1 AND |
| | MOTION TO STRIKE PORTIONS OF |
| | FIRST AMENDED MASTER |
| | COMPLAINT NO. 1 |

Hearing date:    9/9/03

Ruling date:    9/25/03

After considering the moving, opposing and reply papers and the arguments of counsel at the hearing, the court now rules as follows:

## DEMURRER

Defendant Wyeth on its own behalf and on behalf of Defendants Abbot laboratories, Aventis Pasteur, Inc., individually and as successor to Connaught Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught; Bergen Brunswig Corporation; Eli Lilly and Company; King Pharmaceuticals, Inc.; Parkdale Pharmaceuticals, Inc.; Merck & Co., Inc.; Priority Healthcare Corp.; Sigma-Aldrich Corp.; Sigma-Aldrich, Inc.; Sigma Chemical Company; Aldrich Chemical Company; Bayer Corporation; STAT Pharmaceuticals, Inc. McKesson Medical-Surgical, Inc:

1   Johnson & Johnson Consumer Companies, Inc.; Bioport Corporation; Baxter

2   Healthcare Corporation; Bergen Brunswig Corporation; Celltech Pharmaceuticals,

3   formerly known as Medeva Pharmaceuticals, Inc.; E.M. Industries, Inc.; SmithKline

4   Beecham Corporation dba GlaxoSmithKline; and Spectrum Laboratory Products, Inc.

5   (Defendants) demur to plaintiffs' Master Complaint No. 1 on the grounds that the court

6   lacks subject matter jurisdiction over each cause of action and that each cause of action

7   fails to state facts sufficient to constitute a cause of action and is uncertain.

8            A demurrer simply tests, as a matter of law, if the pleading states facts

9   sufficient to constitute a cause of action. (*La Jolla Village Homeowner's Assn. v.*

10  *Superior Court* (1989) 212 Cal.App.3d 1131, 1141.)  In addition, the court in *Trewin v.*

11  *California* (1984) 150 Cal.App.3d 975, 980, stated that a court may not consider

12  evidence outside of the pleadings, not make interpretations of the matter before it when

13  such interpretations involve resolving factual questions, which cannot be answered by

14  looking at the pleadings.  Thus, for the purpose of testing the sufficiency of a cause of

15  action, the demurrer admits the truth of all material facts properly pleaded; this does not

16  include contentions, deductions, or conclusions. (*Serrano v. Priest* (1971) 5 Cal.3d

17  584, 591.)

18           Further, the question of plaintiff's ability to prove pleaded facts is irrelevant to

19  ruling on a demurrer. (*Committee on Children's Television, Inc. v. General Foods*

20  *Corp.* (1983) 35 Cal.3d. 197, 213-14.)  A demurrer may be used only to challenge

21  defects that appear on the face of the complaint.  Neither extrinsic evidence, nor

22  contentions, deductions, or conclusions can be considered. (*Dyer v. Northbrook*

23  *Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1542-43.)

24

25  I.       **Thimerosal-related Injuries Are Subject to the Vaccine Act**

26

27           The Vaccine Act creates a federal cause of action, requiring that any claims in

28  excess of $1,000 for vaccine-related injuries be first filed in the Vaccine Court.  (42

- 2 -

1  U.S.C. § 300aa-11(a)(2)(A).)  A claimant must file a petition for compensation (1)

2  under the Vaccine Compensation Program; (2) in the Vaccine Court; (3) against the

3  Secretary of HHS; (4) where the Department of Justice responds on behalf of the

4  government; and (5) the case is heard by a special master, who determines whether the

5  Act covers the claim, whether a petitioner is entitled to compensation, and the amount

6  of such compensation.  (42 U.S.C. § 300aa-12(a).)

7       A plaintiff's exhaustion of the Vaccine Act's remedy is a condition precedent to

8  the subject matter jurisdiction of a state or federal court to hear the merits of that

9  plaintiff's claim for a vaccine-related injury. (42 U.S.C. § 300aa-11(a)(2)(A).)  If a

10  plaintiff fails to file a petition in Vaccine Court and exhaust the Act's remedies, a court

11  must dismiss that plaintiff's claims. (42 U.S.C. § 300aa-11(a)(2)(B).)

12       The statute also prohibits joining Defendants in any civil action until plaintiffs

13  have completed a proceeding in Vaccine Court. (42 U.S.C. § 300aa-11(a)(3).)

14  However, the Vaccine Act only bars civil claims against "vaccine administrators" or

15  "vaccine manufacturers." (42 U.S.C.A. § 300aa-11(a)(2)(A); *Schumacher v. Sec'y of*

16  *Dep't of Health & Human Servs.* (Fed. Cir. 1993) 2 F.3d 1128, 1133.)  "Manufacturer"

17  is defined as a corporation or organization "which manufactures, imports, processes, or

18  distributes under its label any vaccine set forth in the Vaccine Injury Table." (42

19  U.S.C.A. § 300aa-33(3).)  Although thimerosal does not appear on the Vaccine Injury

20  Table, it is a constituent of Table Vaccines.  "[A] vaccine preservative is a constituent

21  part or a component of the vaccine. Consequently, based upon the plain meaning of the

22  statutory terms, any injury arising from the thimerosal preservative in vaccines is

23  encompassed within the statutory definition of 'vaccine-related injury,' thereby

24  granting jurisdiction over such claims to [Vaccine] court." (*Leroy v. Sec'y, Dept. of*

25  *Health & Human Servs.* (Fed. Cl. Spec. Mstr. Oct. 11, 2002) 2002 US Claims LEXIS

26  284, *18.)  Because the Vaccine Court has held that the terms "vaccine" and

27  "thimerosal" are interchangable for purposes of Vaccine Act jurisdiction, claims

28  asserted against thimerosal manufacturers are also barred by the Act.

- 3 -

1    Thimerosal-related injuries are vaccine-related injuries. (*Owens v. Am. Home*

2    *Prods. Corp.* (S.D.Tex. 2002) 203 F.Supp.2d 748, 756; *Leroy v. Sec'y, Dept. of Health*

3    *& Human Servs.* (Fed. Cl. Spec. Mstr. Oct. 11, 2002) 2002 US Claims LEXIS 284;

4    Defendant RJN, Exh. 1.)

5    The Children and Injured Adult Plaintiffs allege vaccine-related injuries. (See

6    Complaint, ¶ 51 ["The Children through the thimerosal-containing vaccinations

7    administered to them during the first two years of their lives, were poisoned by the

8    cumulative dosage of mercury in the thimerosal....The Injured Adult Plaintiffs, through

9    the thimerosal-containing vaccination administered to them, were poisoned by the

10   cumulative dosage of mercury in the thimerosal"].) The claims made by the Children

11   and Adult Injured Plaintiffs, who have not exhausted remedies available under the

12   Vaccine Act, for vaccine-related injuries (including medical expenses) against any

13   Vaccine Manufacturer Defendant or Thimerosal Manufacturer Defendant are

14   dismissed. (42 U.S.C. § 300aa-11(a)(2)(B).) This includes any plaintiff who is

15   qualified to file a petition in the Vaccine Court, regardless of whether the statute of

16   limitations imposed by the Vaccine Act has run.

17

18   **II.    The Learned Intermediary Doctrine**

19

20   Plaintiffs' strict liability, negligence and fraud claims (the first, second, fifth,

21   eighth and eleventh causes of action) allege that defendants "should have specifically,

22   explicitly and unambiguously communicated to the consumer, end user and general

23   public" the risks allegedly associated with the vaccines. (Complaint, ¶ 65, 78, 130,

24   143, 101, 166.) However, prescription drug manufacturers have no duty to warn the

25   consumer, end user of the general public. A drug manufacturer fulfills its duty to warn

26   if it provides adequate warning to the physician administering, in this case, the vaccine.

27   (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1061-1062 & fn. 9; *Fogo v. Cutter*

28   *Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 754-755.) Plaintiffs argue that an

1  otherwise adequate warning may be rendered inadequate by over-promotion. (See
2  *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 65, 69.)  However, the Master
3  Complaint does not allege an over-promotion theory of liability.  Because defendants
4  had no duty as a matter of law to warn consumers or the public, the demurrer to the
5  first, second, fifth, eighth and eleventh causes of action is sustained with leave to
6  amend.

7

8  **III.   Fraud**

9

10  Plaintiffs fraud allegations assert that "Defendants ... manufactured... sold and
11  placed in the stream of commerce thimerosal and the thimerosal-containing vaccines"
12  (Complaint, ¶ 96); that Defendants "knew of the risks associated with thimerosal" and
13  "had a duty to warn" of the risks (Complaint, ¶ 98; see also ¶ 101); and that
14  Defendants' "fraudulent concealment, deception and fraud" caused plaintiffs and
15  plaintiffs children injuries (Complaint, ¶ 106).
16  "To withstand a demurrer, the facts constituting every element of the fraud must
17  be alleged with particularity, and the claim cannot be salvaged by references to the
18  general policy favoring the liberal construction of pleadings." (*Goldrich v. Natural Y*
19  *Surgical Specialties* (1994) 25 Cal.App.4th 772, 782.)  In *Goldrich*, similar to the
20  pleadings at issue here, the plaintiff:

21  simply contends the defendants' knowledge about their own
22  communications somehow relieves her of her obligation to provide any
23  factual averments at all. We disagree, and we find nothing in *Committee on*
24  *Children's Television, Inc. v. General Foods Corp.*, [1983] 35 Cal.3d 197,
25  or in any other case to support this sort of pleading. Mrs. Goldrich has done
26  nothing more than recast her negligence and products liability claims--that
27  the implants were negligently and defectively made and distributed--in the
28  traditional words of fraud, without any supporting facts. That simply is not

- 5 -

1    enough.

2    (*Id.* at p. 783.)

3    Because here, as in *Goldrich*, Plaintiffs' fraud allegations fail to allege facts

4    setting forth the essential elements of fraud, the demurrer to the fifth and eleventh

5    causes of action is sustained with leave to amend.

6

7    **IV.    Breach of Warranty**

8

9    The express warranty causes of action allege that defendants warranted the

10    safety of the vaccines and breached the warranty when the vaccines exposed plaintiffs

11    to mercury. (Master Complaint, ¶¶ 82, 84, 147, 149.) The implied warranty causes of

12    action allege that Defendants warranted the vaccines to be of merchantable quality and

13    safe for their intended purposes and that the warranty was breached when the vaccines

14    exposed plaintiffs to mercury. (Master Complaint, ¶¶ 89, 91, 93, 154, 156, 158.)

15    Defendants demur based on the California Supreme Court's determination that

16    allowing an action for personal injury for breach of warranty is incompatible with its

17    conclusion that a manufacturer of prescription drugs is not strictly liable for injuries

18    caused by a design defect. (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1072;

19    *Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1108.) In opposition, Plaintiffs argue

20    that their warranty claims are premised on a failure to warn rather than a design defect,

21    citing Master Complaint paragraphs 7, 63-65 and 73-76. None of these cited

22    paragraphs are part of the warranty causes of action. Rather, the warranty causes of

23    action appear to based on the design of the vaccine. Under *Brown*, the demurrer to the

24    third, fourth, ninth and tenth causes of action is sustained with leave to amend.

25

26    **V.    Negligence per se**

27

28    The court declines to revisit the Proposition 65 issues decided in the ruling on

- 6 -

1    the demurrer to Master Complaint No. 3.  For the reasons stated in that ruling and

2    incorporated here--that Defendants' warning fall within the safe harbor provision of

3    regulation 12601(b) and that federal law preempts Proposition 65's warning provision

4    in the prescription drug context--the demurrer to the negligence per se claim asserted in

5    the sixth and twelfth causes of action is sustained without leave to amend.

6

7    VI.    **Emotional Distress Claims**

8

9        The thirteenth cause of action for negligent infliction of emotional distress is

10   based on emotional injury sustained by Adult Plaintiffs while caring for their

11   vaccinated children.  (Master Complaint, ¶ 39.)  This theory was rejected in *Huggins v.*

12   *Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 132-133.  The demurrer to the

13   thirteenth cause of action is sustained without leave to amend.

14       The fourteenth cause of action is a claim for "bystander" emotional distress

15   brought by the Adult Plaintiffs, who allege that they "were in close proximity to their

16   children at the times of exposure and when their children developed symptoms of

17   mercury poisoning" and as a result suffered "great emotional disturbance and shock and

18   injury to their nervous system."  (Master Complaint, ¶¶ 194, 196.)

19       [A] plaintiff may recover damages for emotional distress caused by

20       observing the negligently inflicted injury of a third person if, but only if, said

21       plaintiff: (1) is closely related to the injury victim; (2) is present at the scene

22       of the injury-producing event at the time it occurs and is then aware that it

23       is causing injury to the victim; and (3) as a result suffers serious emotional

24       distress."

25   (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 667-668.)

26       While the Adult Plaintiffs satisfy the close relationship requirement, they fail to

27   meet the other two elements.  The Adult Plaintiffs claim that while their children were

28   being vaccinated, the allegedly dangerous nature of the vaccine was "unbeknownst to

- 7 -

1    plaintiffs at that time." (Master Complaint, ¶¶ 3, 8.) Plaintiffs cannot allege that they

2    observed the defendants' conduct--the manufacture of the vaccines--nor can they allege

3    that at that time (of the conduct) they knew that the conduct was causing the injury.

4    Alternatively, assuming that administration of the vaccines is the relevant injury

5    causing event, the complaint alleges that any injurious properties of the vaccines were

6    unknown to plaintiffs. (Master Complaint, ¶ 8.)

7        Finally, the nature of the injuries here is far-removed from the type of traumatic

8    injury contemplated in *Thing*. The complaint alleges subtle, latent, long-term

9    developmental impairments. (Master Complaint, ¶¶ 46-52.) Because plaintiffs did not

10    observe conduct that they also knew at the time to be harmful to their children, the

11    requirements imposed by *Thing* have not been met. The demurrer is sustained without

12    leave to amend as to the fourteenth cause of action.

13

14    **VII.**    **Loss of Consortium Claims**

15

16        To the extent that the fifteenth cause of action seeks recovery for loss of filial

17    consortium, the demurrer is sustained without leave to amend. (*Burgess v. Superior*

18    *Court* (1992) 2 Cal.4th 1064, 1069.)

19        Defendants demur to the adult injured plaintiffs' cause of action for loss of

20    *spousal* consortium on the ground that there are no remaining viable causes of action

21    for tortious injury asserted by Plaintiffs. The demurrer to the cause of action for loss of

22    consortium is overruled, as Adult Injured Plaintiffs who have exhausted their Vaccine

23    Act remedies have viable personal injury claims against all defendants and all Adult

24    Injured Plaintiffs have viable claims against thimerosal manufacturers.

25

26    **In sum:**

27        **The Demurrer is sustained without leave to amend as to claims against**

28    **vaccine manufacturers asserted by injured Children and injured Adult Plaintiffs**

1   who have not exhausted their remedies under the NVICP; and as to the sixth,

2   twelfth, thirteenth, and fourteenth causes of action; and as to the fifteenth cause of

3   action to the extent that it seeks recovery for loss of filial consortium. The

4   demurrer is sustained with leave to amend as to the first, second, third, fourth,

5   fifth, eighth, ninth, tenth and eleventh causes of action. The demurrer is overruled

6   as to the fifteenth cause of action as asserted by spouses of Adult Injured

7   Plaintiffs. Plaintiff has 30 days to file an amended complaint.

8

9                **MOTION TO STRIKE**

10

11       Defendants move the court for an order, pursuant to Code of Civil Procedure

12   sections 435 and 436, striking Plaintiffs' request for punitive damages and the

13   allegations of paragraphs 7, 56, 66, 68, 74, 77, 78, 98, 101, 102, 131, 133, 139, 142,

14   163, 166, and 167 of the First Amended Master Complaint No. 1 claiming that

15   defendants have a duty to directly warn plaintiffs, patients, consumers and the general

16   public. The motion is made on the ground that these portions are not drawn in

17   conformity with California law.

18       Punitive damages are only available where defendant has been guilty of

19   oppression, fraud or malice. (Civ. Code, § 3294.) A mere conclusory pleading of

20   fraud, malice or oppression is insufficient to warrant an award of punitive damages.

21   (*Brousseau v. Jarrett* (1977) 73 Cal.App.3d 864, 872.) The 1988 amendment to Civil

22   Code section 3294 added to the definition of malice and oppression that the conduct be

23   "despicable." "Despicable conduct" is conduct which is so vile, base, contemptible,

24   miserable, wretched or loathsome that it would be looked down upon and despised by

25   ordinary decent people. (*Mock v. Michigan Millers Mutual Insurance Co.* (1992) 4

26   Cal.App.4th 306, 331.)

27       Plaintiffs assert the following allegations of conduct done in reckless

28   disregard of plaintiffs' safety:

1        •    Defendants manufactured and added thimerosal to vaccines, knowing that

2            mercury, one of its ingredients, was one of the most toxic materials

3            known and had full knowledge of the dangerous propensities of their

4            product. (Master Complaint, ¶¶ 2, 7.)

5        •    Defendants knew that thimerosal was unnecessary for the safety and

6            efficacy of the vaccines, and was only added for the purpose of allowing

7            distribution of the vaccines in multi-dose packages, decreasing packaging

8            costs and increasing profits. (Master Complaint, ¶ 1.)

9        •    Despite knowledge of the dangerous propensities of their products,

10          Defendants deliberately concealed the fact that these products could cause

11          mercury poisoning in ordinary use. (Master Complaint, ¶ 7.)

12       •    Defendants conduct, including acts constituting common law fraud, was

13          "willful, malicious, intentional, oppressive and despicable, and done in

14          willful and conscious disregard of the rights of Plaintiffs." (Master

15          Complaint, ¶ 108.)

16      While the demurrer has been sustained with leave to amend as to Plaintiffs'

17   fraud claims, the allegations cited above are sufficient to put Defendants on notice of

18   the basis of Plaintiffs' request for punitive damages.

19

20   **In sum:**

21      **Defendants' motion to strike is DENIED as punitive damages allegations.**

22   **The motion to strike is moot as to the learned intermediary doctrine as this issue**

23   **has been addressed in the ruling on Defendants' demurrer.**

24

25

26

27

28

1   IT IS SO ORDERED.

2   Dated: 9/25/03

3

4

5

6                                                Victoria Gerrard Chaney

7                                                       Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -

**ORIGINAL FILED**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

SEP 2 5 2003

LOS ANGELES
SUPERIOR COURT

THE VACCINE CASES

CASE NO. JCCP 4246

RULING ON DEFENDANTS'
DEMURRER TO FIRST AMENDED
MASTER COMPLAINT NO. 2

Hearing date:    9/9/03

Ruling date:    9/25/03

After considering the moving, opposing, and reply papers and the arguments of counsel at the hearing, the court now rules as follows:

**Defendants' demurrer to Master Complaint No. 2. is sustained without leave to amend.**

Defendant SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline, and on behalf of Wyeth; Abbott laboratories; Aventis Pasteur Inc., individually and as successor-in-interest to Connaught Laboratories, Inc.; Bioport Corporation; Baxter Healthcare Corporation; Bergen Brunswick Corporation; Eli Lilly and Company; Merck & Co., Inc.; Priority Healthcare Corp.; Sigma-Aldrich, Inc.; Sigma Chemical Corporation; Aldrich Chemical Corporation; and Spectrum Manufacturing Corp.; Celltech Pharmaceuticals, Inc. demurs to Plaintiffs' Master Complaint No. 2 on the grounds that the court lacks

-1-

1  subject matter jurisdiction over this matter and that the complaint does not state facts
2  sufficient to constitute a cause of action.

3      A demurrer simply tests, as a matter of law, if the pleading states facts sufficient to
4  constitute a cause of action. (*La Jolla Village Homeowner's Assn. v. Superior*
5  *Court*(1989) 212 Cal.App.3d 1131, 1141.) In addition, the court in *Trewin v. California*
6  (1984) 150 Cal.App.3d 975, 980, stated that a court may not consider evidence outside of
7  the pleadings, not make interpretations of the matter before it when such interpretations
8  involve resolving factual questions, which cannot be answered by looking at the
9  pleadings. Thus, for the purpose of testing the sufficiency of a cause of action, the
10  demurrer admits the truth of all material facts properly pleaded; this does not include
11  contentions, deductions, or conclusions. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)

12      Further, the question of plaintiff's ability to prove pleaded facts is irrelevant to
13  ruling on a demurrer. (*Committee on Children's Television, Inc. v. General Foods*
14  *Corp.*(1983) 35 Cal.3d. 197, 213-14.) A demurrer may be used only to challenge defects
15  that appear on the face of the complaint. Neither extrinsic evidence, nor contentions,
16  deductions, or conclusions can be considered. (*Dyer v. Northbrook Property & Casualty*
17  *Ins. Co.* (1989) 210 Cal.App.3d 1540, 1542-43.)

18      This is a products liability case in which two different parents and their children
19  allege that the minor children, while not currently manifesting any symptoms, have been
20  subjected to an increased risk for certain neurodevelopmental problems as a result of
21  having received vaccines containing thimerosal. Plaintiffs allege claims for negligence,
22  negligence per se under Proposition 65, and unfair competition under Business and
23  professions code section 17200. (Master Complaint No. 2, ¶¶ 53-58, 59-73, 74-80.)
24  Plaintiffs request relief on behalf of a class, seeking a court-ordered and supervised
25  medical monitoring program to be funded by defendants. (Master Complaint, ¶¶ 31, 32,
26  Prayer for Relief.)

27
28

I.    **Vaccine Act Jurisdiction**

Section 300aa-11(a)(2)(A) of the Vaccine Act prohibits any person from filing a civil action seeking damages in an unspecified amount against a vaccine manufacturer for alleged vaccine-related injuries unless a petition is first filed in the Vaccine Court. A lawsuit filed in violation of this provision must be dismissed. (42 U.S.C.A. § 300aa-119a)(20(B).) Claims relating to thimerosal fall within the definition of a vaccine-related injury as defined within the Vaccine Act. (See, e.g., *Liu v. Aventis Pasteur, Inc.* (W.D.Tex. 2002) 219 F.Supp.2d 762; *Leroy v. Sec'y, Dep't of Health and Human Servs.* (Fed.Cl.Spec.Mstr. Oct. 11, 2002) 02-392V U.S. Claims LEXIS 284.) Therefore, Plaintiffs' claims against vaccine manufacturers are subject to the jurisdiction of the Vaccine Act if they seek damages in an unspecified amount for vaccine-related injuries.

The California Supreme Court has held that medical monitoring is a form of damages. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 956, 1009; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1103.) Because the Vaccine Act's exhaustion requirement applies to "a civil action for damages" (42 U.S.C. § 300aa-11(a)(2)(A)), the remedy requested by Plaintiffs falls within the Act's jurisdiction.

The Vaccine Act defines the term "vaccine-related injury" as an "injury" or "condition." (42 U.S.C. § 300aa-33(5).) The *Potter* court, in recognizing the existence of the medical monitoring remedy, relied on the Restatement's definition of "injury" as "the invasion of any legally protected interest of another." (6 Cal.4th at p. 1007.) The distinction between this broad concept of injury and "physical injury" was critical to the holding that exposure could give rise to a compensable tort injury. (*Ibid.*) If the exposure Plaintiffs allege amounts to sufficient injury to support a cognizable claim for compensatory damages in the form of a medical monitoring class, then Plaintiffs must have an "injury" or "condition" within the meaning of the Vaccine Act, regardless of whether or not Plaintiffs are symptomatic. Therefore, this court finds that Plaintiffs' causes of action seeking a medical monitoring class constitute a civil action seeking

1   damages in an unspecified amount against a vaccine manufacturer for alleged vaccine-
2   related injuries within the meaning of the Vaccine Act.

3

4   **II.    Unfair Competition Law Claims**

5

6           The demurrer to plaintiffs' Unfair Competition Law claim is sustained without
7   leave to amend to the extent that it is predicated on violation of Proposition 65, for the
8   reasons stated in the ruling on the demurrer to Master Complaint No. 3 and incorporated
9   here.

10          To the extent that the UCL cause of action seeks a medical monitoring remedy, the
11  demurrer is sustained without leave to amend because medical monitoring is a form of
12  damages (*Lockheed, supra*, 29 Cal.4th at p. 1103) and damages may not be awarded
13  under the UCL (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999)
14  20 Cal.4th 163, 179).

15          Remaining are Plaintiffs' requests for restitution and disgorgement and a request
16  for unspecified injunctive relief.  To state a claim under the UCL, a plaintiff need only
17  show "that members of the public are likely to be deceived." (*Bank of the West v.*
18  *Superior Court* (1992) 2 Cal.4th 1254, 1266-1267.)  The factual recital in Master
19  Complaint No. 2 alleges no conduct which is likely to deceive the public.  Rather, the
20  allegations of deceptive conduct are found in the boilerplate language of paragraph 77.
21  Further, Plaintiffs' allegations are similar to those alleged in *Goldrich v. Natural Y*
22  *Surgical Specialties* (1994) 25 Cal.App.4th 772, 782.)  In *Goldrich*, the plaintiff:

23          simply   contend[ed]   the   defendants'   knowledge   about   their   own
24          communications somehow relieves her of her obligation to provide any
25          factual averments at all. We disagree, and we find nothing in *Committee on*
26          *Children's Television, Inc. v. General Foods Corp.*, [1983] 35 Cal.3d 197,
27          or in any other case to support this sort of pleading. Mrs. Goldrich has done
28          nothing more than recast her negligence and products liability claims--that
            the implants were negligently and defectively made and distributed--in the

-4-

1    traditional words of fraud, without any supporting facts. That simply is not
2    enough.
3    (*Id.* at pp. 783.)
4    While plaintiffs, in the context of Business and Professions Code section 17200, need not
5    plead fraudulent or deceptive conduct with the same particularity required in a fraud
6    action, the concept is the same—Plaintiffs' factual allegations that the vaccines were
7    negligently made and distributed, without more, are not deceptive.
8         Finally, because the court finds that Plaintiffs' damages claims are subject to
9    Vaccine Act jurisdiction, the court abstains from entertaining relief under the UCL that
10   would conflict with the Act.  (See *Diaz v. Kay-Dix Ranch* (1970) 9 Cal.App.3d 588, 593;
11   *Dep't of Transportation v. Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 523.)
12   Additionally, Plaintiffs have an adequate remedy at law in the Vaccine Act, as the
13   Vaccine Court has established a procedure and schedule for deciding whether thimerosal-
14   containing vaccines cause autism.  (See Autism General Order #1, Defendant's Exh. 30;
15   *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1249-
16   1250 [section 17200 claim stricken because it is subject to same equitable rules as any
17   other claim and that plaintiff had an adequate remedy at law].)
18
19   **III.    Negligence per se**
20
21        Plaintiffs' negligence per se claim stated in the second cause of action is dismissed
22   for the reasons stated in the ruling on the Demurrer to Master Complaint No. 3.
23
24   **In sum:**
25        **Defendants' demurrer to Master Complaint No. 2. is sustained without leave**
26   **to amend.**
27
28

IT IS SO ORDERED.

Dated: 9/25/03



Victoria Gerrard Chaney

Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

AUG 2 9 2002
FILED
AUSTIN DIVISION

2002 AU 23 PM 3: 25

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
DEPUTY

KEVIN LIU, Individually and as next friend of
Nicholas Liu; and MACHE LIU, Individually and
as next friend of Nicholas Liu,
                              Plaintiffs,

-vs-                                                          Case No. A-02-CA-395-SS

AVENTIS PASTEUR, INC., Individually and as
successor-in-interest to Connaught Laboratories,
Inc., Pasteur Merieux, and Pasteur Merieux
Connaught; et al.,
                              Defendants.

---

## O R D E R

BE IT REMEMBERED on the 16th day of August 2002 the Court called the above-styled

cause for hearing, and the parties appeared through counsel of record.  Before the Court are the

Vaccine Manufacturers' 12(b) Motion to Dismiss and Alternative Motion to Stay [#8], Plaintiffs'

response in opposition thereto [#16] and the Vaccine Manufacturers' reply [#22]; Dow Chemical

Company's Motion to Dismiss and Motion for Summary Judgment [#41]; Spectrum Laboratory

Product, Inc's Motion to Dismiss [#10]; Sigma-Aldrich Corporation's Motion to Dismiss [#3] and

memorandum in support thereof [#30] and Plaintiffs' response in opposition thereto [#14]; Sigma-

Aldrich's Alternative Motion to Stay [#31]; and Eli Lilly's Amended Motion to Dismiss [#49] and

Plaintiffs' response [#15].  Having considered the motions and responses, the case file as a whole

and the applicable law, the Court enters the following opinion and orders.

51

### Factual and Procedural Background

The plaintiffs, Kevin Liu and Mache Liu, are Texas residents and the parents of Nicholas Liu, who is approximately four years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear in this lawsuit as individuals and as next friend of Nicholas Liu. *Id.* at ¶ 5. The plaintiffs contend their son suffered neurological damage when he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him during the first two years of his life. *Id.* at ¶¶ 24-26. Nicholas received the vaccines between May 20, 1998 and July 23, 1999. *Id.* at ¶ 24.

On May 30, 2002, the plaintiffs filed this lawsuit in the 353rd Judicial District Court of Travis County, Texas. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *See* First Amended Petition. As an alternative theory of liability and causation, the plaintiffs allege Merck & Co., Inc's Measles, Mumps & Rubella ("MMR") vaccine caused their injuries. *Id.* at ¶ 72. The plaintiffs seek compensatory damages for expenditures necessitated by Nicholas Liu's injuries, Nicholas' pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress, the parents' loss of consortium, and the plaintiffs' lost services. *Id.* at 17. Defendant Aventis Pasteur Inc., having obtained consent of all other served defendants,[1] removed the case to this Court on June 21, 2002 on the basis of diversity and federal question jurisdiction. *See* Notice of Removal [#1].

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move

---

[1] The record does not include a consent form signed by defendant Taylor Medical. However, the record does not establish Taylor Medical was ever served, and it has not filed an answer.

-2-

to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim

in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C.

§ 300aa-11(a)(2)(A). Defendants Spectrum Laboratory Products, Inc. ("Spectrum") has filed a

motion to dismiss on the same basis. Defendants Eli Lilly and Company ("Eli Lilly"), Dow

Chemical Company ("Dow"), Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. have filed

motions to dismiss and for summary judgment arguing they did not manufacture the vaccines or

thimerosal that caused Nicholas Liu's injuries and, therefore, cannot be held liable.

## Analysis

### I.   The Vaccine Act's Requirements

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because

the plaintiffs did not first file in the United States Court of Federal Claims. The National Childhood

Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-

related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the

process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense

and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477,

1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of

recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No.

99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines,

"the opportunities for redress and restitution are limited, time-consuming, expensive, and often

unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine

administrators or manufacturers in state or federal court for unspecified amounts of damages

resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal

-3-

Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala,* 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Nicholas Liu's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Nicholas Liu's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth – an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5).[2] The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal.[3] On the contrary, it appears every federal court to have

_____

[2] The plaintiffs alternative theory of liability and causation, that Merck's Measles, Mumps and Rubella ("MMR") vaccine caused Nicholas Liu's injuries, does not involve thimerosal and is blatantly a vaccine-related claim that must first be filed in Vaccine Court.

[3] The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B. As the plaintiffs note, this order was later withdrawn.

ruled on the issue has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[4] Indeed, the HHS's determination that thimerosal is a component of vaccines,[5] not an adulterant, comports with common sense, since at the time Nicholas Liu received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines or the MMR vaccination, or a combination of the two, caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of

---

[4] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[5] The HHS regulations for general biological products standards, it includes "preservatives" in the category of "constituent materials," indicating its view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Nicholas Liu's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Nicholas Liu without prejudice to refiling after they have exhausted the requirements under the Vaccine Act.

## II.    Claims against Non-Vaccine-Manufacturers

Eli Lilly and Dow move to dismiss the plaintiffs' claims against them or, in the alternative, for summary judgment because they did not manufacture or distribute the thimerosal or vaccines that allegedly caused Nicholas Liu's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Affidavit of Scott Fishman [#9], at 1-2. Dow states it has not manufactured vaccines since 1978 and its licenses to manufacture vaccines were revoked by that time. *See* Dow's Motion to Dismiss, at 3-4. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. also move to dismiss or, in the alternative, to stay, claiming they did not manufacture the vaccines or thimerosal at issue in this case.

These defendants ask this Court to enter a no-liability judgment in their favor despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they

-6-

follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against these defendants as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of some defendants' substantive defenses would require a period of discovery allowing the plaintiffs to investigate the defendants' contentions. The Court will not allow the plaintiffs to conduct discovery on some defendants during the pendency of the minor's claims under the Vaccine Act against other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Nicholas Liu's claims against all defendants rather than allow discovery on some defendants.

III.    **Kevin Liu and Mache Liu's Individual Claims**

Kevin and Mache Liu bring claims individually and as next friend of Nicholas Liu. Individually, they seek recovery for all past and future costs associated with Nicholas' injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42

-7-

U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Kevin and Mache Liu can only bring their claims as next friend of Nicholas, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Kevin and Mache Liu's individual claims for damages because they are derivative of Nicholas Liu's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Nicholas' claims in the Court of Federal Claims.[6] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Kevin and Mache Liu's individual causes of action against all defendants until Nicholas' claims have been administered in the Court of Federal Claims under the Vaccine Act.

---

[6] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [#8] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#8] is GRANTED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#3] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#31] is GRANTED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratories' Motion to Dismiss [#10] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss [#49] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that The Dow Chemical Company's Motion to Dismiss [#41] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that the Defendants' Unopposed Motion for Stay of Scheduling Order, Initial Disclosures, and Discovery Pending Resolution of Defendants' Motion to Dismiss [#40] is DISMISSED AS MOOT;

-9-

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Nicholas Liu against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on April 23, 2003 informing the Court of the status of their petition, if any, filed on behalf of Nicholas Liu in the Court of Federal Claims.

SIGNED this the 2 3ʳᵈ day of August 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
* US-1 N DIVISION

2002 SP -9 AM 9: 54

WESTERN DISTRICT OF ...
U.S. CLERK'S OFFICE

BY:_____
DEPUTY

RON RUSSAK and KARLA RUSSAK,
Individually and as Next Friend of JORDAN
RUSSAK,

Plaintiffs,

-vs-                                                    Case No. A-02-CA-480-SS

AVENTIS PASTEUR, INC., Individually and as
Successor-in-Interest to Connaught Laboratories,
Inc., Pasteur Merieux, and Pasteur Merieux
Connaught; et al.,

Defendants.

## O R D E R

BE IT REMEMBERED on the _7th_ day of September 2002 the Court reviewed the file in

the above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#5] and

Plaintiffs' response thereto [#15]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s

Motion to Dismiss [#3] and Plaintiffs' response thereto [#8]; the Vaccine Manufacturers' 12(b)

Motion to Dismiss and Alternative Motion to Stay [#6] and Plaintiffs' response [attached to #24];

and Defendant Austin Energy's Motion to Dismiss [#9], which was filed on August 13, 2002 and

to which the Plaintiffs have not responded. Having considered the motions, responses, the case file

as a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Ron Russak and Karla Russak, are Texas residents and the parents of Jordan

Russak, who is approximately five years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear

32

ʋ

in this lawsuit as individuals and as next friend of Jordan Russak. *Id.* at ¶ 5. The plaintiffs contend

their son suffered and continues to suffer neurological damage because he was poisoned by mercury

contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 24-26. Jordan

received the vaccines between October 2, 1996 and August 2, 2001. *Id.* at ¶ 24. The plaintiffs

further contend Jordan's neurological damage was exacerbated by Austin Energy's emission of air

toxins such as mercury from fossil-fuel-burning utilities near his residence. *Id.* at ¶¶ 33-34.

On May 30, 2002, the plaintiffs filed this lawsuit in the 53rd Judicial District Court of Travis

County, Texas, Cause No. GN201793. The plaintiffs raise causes of actions for strict liability;

negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products;

gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of

thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil

fuels. *See* First Amended Petition. The plaintiffs seek compensatory damages for expenditures

necessitated by Jordan's injuries, Ron and Karla Russak's lost wages and income, Ron and Karla

Russak's emotional distress and loss of consortium, and the lost services Ron and Karla Russak

could have provided to each other and Jordan could have provided to them. *Id.* at 19. The plaintiffs

also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as

American Home Products Corporation, removed the case to this Court on July 29, 2002 after having

obtained consent of all other served defendants except Austin Energy.[1] *See* Notice of Removal [#1].

---

[1] In its motion to dismiss, Austin Energy states it did not learn of the removal until after the
fact. In the notice of removal, Wyeth argues it did not need Austin Energy's consent because the
plaintiffs' addition of Austin Energy as a defendant was a fraudulent joinder for the sole purpose of
defeating diversity jurisdiction. The removing party bears the burden of proving fraudulent joinder.
*Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990).
The plaintiffs' claims against Austin Energy are based on different facts than their vaccine-related
claims against the other defendants. However, because this Court has no jurisdiction over Jordan

-2-

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Jordan Russak's injuries and, therefore, cannot be held liable. Austin Energy moves to dismiss for lack of subject matter jurisdiction and failure to state a claim.

## Analysis

### I.    The Vaccine Act's Requirements

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of

Russak's primary causes of action, the plaintiffs have not moved to remand the case for improper removal, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Austin Energy the same as the other defendants. This ruling is without prejudice to any party raising the issue after the stay in the case is lifted.

recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Jordan Russak's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Jordan's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth-- an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

-4-

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal.[2] On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g.*, *Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an adulterant, comports with common sense, since at the time Jordan Russak received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental

---

[2] The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B. As the plaintiffs note, this order was later withdrawn.

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"),

at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal

Claims. The Office of Special Masters within that court recently established procedures to

accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal

Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it

indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within

the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases.

*See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1,

2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable

possibility that the plaintiffs have stated a currently cognizable claim against the resident

defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act

and, thus, Jordan Russak's alleged injuries are vaccine-related. Accordingly, the Vaccine Act

requires the Court to dismiss the parents' claims brought on behalf of Jordan Russak without

prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

**II.    Claims against Non-Vaccine-Manufacturers**

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon

which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines

that allegedly caused Jordan Russak's injuries. Eli Lilly contends it stopped distributing childhood

vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See*

Eli Lilly's Motion to Dismiss [#5], Ex. A ("Fishman Affidavit"), at 1-2.

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the

Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they

-6-

follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Jordan Russak's claims against all defendants rather than allow discovery on Eli Lilly.

**III.    Ron Russak and Karla Russak's Individual Claims**

Ron and Karla Russak bring claims individually and as next friend of Jordan Russak. Individually, they seek recovery for all past and future costs associated with Jordan's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42

-7-

U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Ron and Karla Russak can only bring their claims as next friend of Jordan, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Ron and Karla Russak's individual claims for damages because they are derivative of Jordan's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Jordan's claims in the Court of Federal Claims.[5] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Ron and Karla Russak's individual causes of action against all defendants until Jordan's claims have been administered in the Court of Federal Claims under the Vaccine Act.

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#3] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion for Leave to File its Amended Motion to Dismiss [#28] is DENIED;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#5] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Jordan Russak against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on May 9, 2003 informing the Court of the status of their petition, if any, filed on behalf of Jordan Russak in the Court of Federal Claims.

-9-

SIGNED this the _7th_ day of September 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION

2002 OCT -8  AM 11: 52

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
                    DEPUTY

PETE CARABINE and HEIDI CARABINE,
Individually and as Next Friend of Collin
Carabine,

                    Plaintiffs,

-vs-                                                    Case No. A-02-CA-501-SS

AVENTIS PASTEUR, INC., et al.,
                    Defendants.

---

## ORDER

BE IT REMEMBERED on the _8th_ day of October 2002 the Court reviewed the file in the

above-styled cause, specifically Defendant Eli Lilly & Company's Amended Motion to Dismiss

[#30], Plaintiffs' Response [#28] and Defendant's reply [#32]; Defendants Sigma-Aldrich

Corporation's and Sigma-Aldrich, Inc's Motion to Dismiss [#11] and Plaintiffs' Response [#21];

Defendants' Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Alternative Motion to Stay

Proceedings [#23]; Vaccine Defendants' Motion to Dismiss or Alternatively to Stay Proceedings

[#25] and Plaintiffs' Response [#33]; and Defendant Reliant Energy's Motion for Summary

Judgment [#31]. Having considered the motions and responses, the case file as a whole and the

applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Pete Carabine and Heidi Carabine, are Texas residents and the parents of

Collin Carabine, who is approximately six years old. *See* Petition, at ¶¶ 5; 25. They appear in this

lawsuit as individuals and as next friend of Collin Carabine. *Id.* at ¶ 5. The plaintiffs contend their

OCT 1 1 2002

son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 25-27. Collin received the vaccines between November 6, 1995 and October 25, 1999.[1] *Id.* at ¶ 25. The plaintiffs further contend Collin's neurological damage was exacerbated by Defendant Houston Lighting and Power Company's ("Reliant") emission of air toxins such as mercury from power plants that burn fossil fuels near his residence. *Id.* at ¶¶ 31-38.

On July 3, 2002, the plaintiffs filed this lawsuit in the 201st Judicial District Court of Travis County, Texas, Cause No. GN202160. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil fuels. *See* Petition. The plaintiffs seek compensatory damages for expenditures necessitated by Collin's injuries, Collin's pain and suffering, Pete and Heidi Carabine's lost wages and income, Pete and Heidi Carabine's emotional distress and loss of consortium, and the lost services Pete and Heidi Carabine could have provided to each other and Collin could have provided to them. *Id.* at 20. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, ("SmithKline") removed the case to this Court on

---

[1] The petition states Collin received the vaccines through October 25, "199." Because this typographical error prevents the Court from discerning the relevant date, the Court uses the year 1999 merely as a potential correct date.

August 9, 2002 after having obtained consent of all other served defendants.[2]  *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline, and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A).  Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis.  Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Collin Carabine's injuries and, therefore, cannot be held liable.  Reliant moves for summary judgment on the merits.

· **Analysis**

**I.    The Vaccine Act's Requirements**

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims.  Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis.  The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-

---

[2] Defendant Reliant consented to the removal.  Reliant appears to be a Texas corporation, which would defeat diversity jurisdiction.  In the notice of removal, SmithKline argues the plaintiffs' addition of Reliant as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction.  The removing party bears the burden of proving fraudulent joinder.  *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990).  The plaintiffs' claims against Reliant are based on different facts than their vaccine-related claims against the other defendants.  However, because this Court has no jurisdiction over Collin Carabine's primary causes of action, the plaintiffs have not moved to remand, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Reliant the same as the other defendants.  This ruling is without prejudice to any party raising the issue or challenging this Court's jurisdiction after the stay in the case is lifted.

-3-

related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Collin Carabine's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Collin's injuries are not "vaccine-related" because they were caused not by the vaccines themselves

-4-

but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an adulterant, comports with common sense, since at the time Collin received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been

---

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Collin Carabine's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Collin Carabine without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

## II.  Claims against Non-Vaccine-Manufacturers

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines that allegedly caused Collin Carabine's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Eli Lilly's Amended Motion to Dismiss [#30], Ex. A ("Fishman Affidavit"), at 1.

-6-

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the Vaccine Manufacturers until they follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. See H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available.").

The same reasoning holds true for Reliant's motion for summary judgment, to which the plaintiffs have not responded. Reliant contends it owed no duty to Collin preventing it from exposing him to normal power plant emissions because the risk of mercury poisoning to Collin was not foreseeable. *See* Reliant's Motion for Summary Judgment [#31], at 3-6. Reliant also argues the plaintiffs cannot establish Reliant's power plants caused Collin's injuries because the power plant emissions contain very low levels of mercury and no scientific studies have linked autism to power plant emissions. *Id.* at 7-10. These arguments on the merits obviously involve complicated factual determinations that this Court cannot make before allowing the plaintiffs a period of discovery

-7-

(despite the plaintiffs' failure to respond to Reliant's motion which, under the Local Rules, entitles the Court to grant the motion as unopposed). Additionally, the Court will not rule on the merits of the plaintiffs' claims against Reliant before determining if the claims are properly before this Court as an appendage to this cause of action. Accordingly, the Court will dismiss Collin Carabine's claims against all defendants rather than allow discovery on Eli Lilly and Reliant.

### III.    Pete and Heidi Carabine's Individual Claims

Pete and Heidi Carabine bring claims individually and as next friend of Collin Carabine. Individually, they seek recovery for all past and future costs associated with Collin's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 20. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Pete and Heidi Carabine can only bring their claims as next friend of Collin, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Pete and Heidi Carabine's individual claims for damages because they are derivative of Collin's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Collin's claims in the Court of Federal Claims.[5] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court.

-8-

limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Pete and Heidi Carabine's individual causes of action against all defendants until Collin's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that Eli Lilly and Company's Motion to Dismiss [#4] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#25] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#25] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

---

42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#11] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#23] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss [#30] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and DENIED IN PART as to Pete and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Defendant Reliant Energy, Inc's Motion for Summary Judgment [#31] is DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Collin Carabine against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on June 7, 2003 informing the Court of the status of their petition, if any, filed on behalf of Collin Carabine in the Court of Federal Claims.

SIGNED this the _8_ day of October 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED
AUSTIN DIVISION

2003 JA -6  PM 4: 07

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
                        DEPUTY

**LESLIE YOUNG and LAURIE YOUNG,**
**Individually and Next Friend of Leslie Martin**
**Young,**

                    **Plaintiffs,**

-vs-                             **Case No. A-02-CA-734-SS**

**AVENTIS PASTEUR, INC., et al.,**

                    **Defendants.**

**O R D E R**

BE IT REMEMBERED on the 6th day of January 2003, the Court reviewed the file in the

above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#14] and

Plaintiffs' response thereto [#20]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s

Motion to Dismiss [#4] and Alternative Motion to Stay [#5] and Plaintiffs' response thereto [#9];

the Vaccine Manufacturers' Motion to Dismiss or Alternatively to Stay [#6], Plaintiffs' response

[#13] and Defendants' reply [#19]; Defendant Spectrum Laboratory Products, Inc.'s Motion to

Dismiss [#7] and Plaintiffs' response thereto [#10]; and Defendant The Dow Chemical Company's

Rule 12(b)(6) Motion to Dismiss and for Summary Judgment [#11] and Motion to Dismiss or,

Alternatively, to Stay [#12] and Plaintiffs' Response thereto [#18]. Having considered the motions,

responses, the case file as a whole and the applicable law, the Court enters the following opinion and

orders.





**Factual and Procedural Background**

The plaintiffs, Leslie and Laurie Young, are Texas residents and the parents of Leslie Martin Young, who is approximately four years old. *See* Petition, at ¶¶ 5, 23. They appear in this lawsuit as individuals and as next friend of Leslie Martin Young. *Id.* at ¶ 5. The plaintiffs contend their son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 23-25. Leslie received the vaccines between September 15, 1998 and approximately September 10, 1999. *Id.* at ¶ 23.

On October 22, 2002, the plaintiffs filed this lawsuit in the 345th Judicial District Court of Travis County, Texas, Cause No. GN203822. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *Id.* at ¶¶ 29-69. The plaintiffs seek compensatory damages for expenditures necessitated by Leslie Martin Young's injuries, Leslie Martin Young's pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress and loss of consortium, and the lost services the plaintiffs could have provided to each other. *Id.* at 17. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on November 15, 2002 after having obtained consent of all other defendants. *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C.

y 300aa-11(a)(2)(A). Defendants Sigma-Aldrich Corporation, Sigma-Aldrich, Inc., Spectrum

Laboratory Products, Inc. ("Spectrum") and Eli Lilly and Company ("Eli Lilly") move to dismiss or

alternatively to stay on the same basis. The Dow Chemical Company ("Dow") moves to dismiss and

for summary judgment arguing it did not manufacture or sell the vaccines or thimerosal that caused

Leslie Martin Young's injuries and, therefore, cannot be held liable. Dow has also filed a motion

to dismiss or, alternatively, to stay based on the plaintiffs' failure to raise their claims first in the

Court of Federal Claims.

## Analysis

### I.    The Vaccine Act's Requirements

The defendants move to dismiss or, in the alternative, to stay the case because the plaintiffs

did not first file a petition in the United States Court of Federal Claims. The National Childhood

Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-

related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the

process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense

and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477,

1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of

recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No.

99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines,

"the opportunities for redress and restitution are limited, time-consuming, expensive, and often

unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine

administrators or manufacturers in state or federal court for unspecified amounts of damages

resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal

-3-

Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Leslie Martin Young's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Leslie's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203

-4-

F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[1] Indeed, the HHS's determination that thimerosal is a component of vaccines,[2] not an adulterant, comports with common sense, since at the time Leslie Martin Young received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Motion to Dismiss, Ex. 3 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any

---

[1] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[2] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Leslie Martin Young's alleged injuries are vaccine-related.[3] Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Leslie Martin Young without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

## II.   Claims against Non-Vaccine-Manufacturers

Dow moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted and moves for summary judgment because it did not manufacture or sell the thimerosal or vaccines that allegedly caused Leslie Martin Young's injuries. Dow contends it has not had a license to manufacture vaccines since 1978.

Dow asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until the plaintiffs follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise the same claims against Dow as against the vaccine manufacturer defendants. To rule on the merits of Dow's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. In fact, the plaintiffs have moved for a continuance to allow them to conduct discovery

_____

[3] Eli Lilly also relies on the Homeland Security Act of 2002 Congress recently passed, which amends the definition of "manufacturer" in the Vaccine Act to include manufacturers of "any component or ingredient" of any vaccine, and the definition of "vaccine" to include "a preparation or suspension containing an attenuated or inactive microorganism or subunit thereof or toxin" and "all components and ingredients listed in the vaccines's [sic] product license application and product label." H.R. 5005 (attached as Ex. D to Eli Lilly's Motion to Dismiss). The Homeland Security Act states it applies to all actions pending on the date of its adoption on November 19, 2002. Because these amendments are quite new and the Court has relied in its previous thimerosal rulings on more established authorities, the Court need not interpret these amendments in this Order. However, the Court does not preclude the defendants from raising the Homeland Security Act in future motions.

before the Court rules on the summary judgment motion. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Leslie Martin Young's claims against all defendants rather than allow discovery on Dow.

**III.     Leslie Young and Laurie Young's Individual Claims**

Leslie and Laurie Young bring claims individually and as next friend of Leslie Martin Young. Individually, they seek recovery for all past and future costs associated with their son's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Leslie and Laurie Young can only bring their claims as next friend of Leslie, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Leslie and Laurie Young's individual claims for damages because they are derivative of Leslie's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents'

-7-

claims, their statutes of limitations could expire while the parents are representing their son's claims in the Court of Federal Claims.[4] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Leslie and Laurie Young's individual causes of action against all defendants until their son's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and

---

[4] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

their Alternative Motion to Stay [#6] is GRANTED IN PART as to Leslie and Laurie Young's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#4] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#5] is GRANTED IN PART as to Leslie and Laurie Young's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#14] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and DENIED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and DENIED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Defendant The Dow Chemical Company's Motion to Dismiss [#12] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and its Alternative Motion to Stay [#12] is GRANTED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Defendant The Dow Chemical Company's 12(b)(6) Motion to Dismiss and Motion for Summary Judgment [#11] are DENIED without prejudice to refiling;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Continuance [#18] is DENIED;

-9-

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation's Motion for Leave to File Supplemental Memorandum in Support of Their Motion to Dismiss [#16] is GRANTED;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Leslie Martin Young against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on September 8, 2003 informing the Court of the status of their petition, if any, filed on behalf of Leslie Martin Young in the Court of Federal Claims.

SIGNED this the _6th_ day of January 2003.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



FILED

2003 MAR 10  AM 9: 48

U.S. CLERK OFFICE

BY: _____

DARON SWAFFORD AND TINA SWAFFORD,
Individually and as Next Friend of JOEY
SWAFFORD,
                              Plaintiffs,

-vs-                                                    Case No. A-03-CA-055-SS

AVENTIS PASTEUR, INC., et al.,
                              Defendants.

## ORDER

BE IT REMEMBERED on the 7th day of March 2003 the Court reviewed the file in the

above-styled cause, specifically Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Motion to

Dismiss [#4] and alternative Motion to Stay [#5], the response [#21] and reply [#30]; the Vaccine

Defendants' Motion to Dismiss or Alternatively to Stay [#6] (to which no response has been filed);

Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] and the response thereto [#22]; and

Eli Lilly and Company's Motion to Dismiss and/or to Stay [#23] and supplemental memorandum

thereto [#24] and Plaintiffs' response [#26]. Having considered the motions, responses, case file as

a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Daron and Tina Swafford, are Texas residents and the parents of Joey

Swafford, who is approximately three years old. *See* Petition, at ¶¶ 5, 23. They appear in this

lawsuit as individuals and as next friend of Joey Swafford. *Id.* at ¶ 5. The plaintiffs contend their

son suffered and continues to suffer neurological damage because he was poisoned by mercury

34

contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 23-25. Joey received the vaccines between September 1, 1999 and approximately January 5, 2001. *Id.* at ¶ 5.

On December 31, 2002, the plaintiffs filed this lawsuit in the 345th Judicial District Court of Travis County, Texas, Cause No. GN204657. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *Id.* at ¶¶ 29-69. The plaintiffs seek compensatory damages for expenditures necessitated by Joey Swafford's injuries, Joey Swafford's pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress and loss of consortium, and the lost services the plaintiffs could have provided to each other. *Id.* at 16. The plaintiffs also seek punitive damages for certain causes of action. *Id.* at 17. Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on January 30, 2003 after having obtained consent of all other defendants. *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Defendants Sigma-Aldrich Corporation, Sigma-Aldrich, Inc., Spectrum Laboratory Products, Inc. ("Spectrum") and Eli Lilly and Company ("Eli Lilly") move to dismiss or alternatively to stay on the same basis.

**Analysis**

I.    **The Vaccine Act's Requirements**

The defendants move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Joey Swafford's injuries are not vaccine-related.

-3-

The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Joey's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act. Similarly, the plaintiffs argue their claims are not against "vaccine administrators" or "vaccine manufacturers" as defined under the Vaccine Act, because the defendants are manufacturers, distributors, designers and/or promoters of thimerosal itself, not a vaccine. 42 U.S.C. § 300aa-11(a)(2)(A).

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of

-4-

vaccines.[1] Indeed, the HHS's determination that thimerosal is a component of vaccines,[2] not an adulterant, comports with common sense, since at the time Joey Swafford received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Motion to Dismiss, Ex. 3 ("Autism General Order #1"), at 1-2; Ex. 1 ("Ruling on Jurisdiction"). The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *See* Autism General Order #1. While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court

---

[1] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[2] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Joey Swafford's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Joey Swafford without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.[3]

## II.    Daron Swafford and Tina Swafford's Individual Claims

Daron and Tina Swafford bring claims individually and as next friend of their son, Joey Swafford. Individually, they seek recovery for all past and future costs associated with their son's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 16. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Daron and Tina Swafford can only bring their claims as next friend of Joey, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Daron and Tina Swafford's individual claims for damages because they are derivative of Joey's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while they are representing their son's claims in the Court

---

[3] To the extent the plaintiffs sued defendants that allegedly did not manufacture the thimerosal at issue in this case, the Court dismisses their claims on behalf of Joey Swafford against those defendants as well in the interest of judicial economy.

of Federal Claims.[4] Tex. Civ. Prac. & Rem. Code § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Daron and Tina Swafford's individual causes of action against all defendants until their son's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

---

[4] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* Tex. Civ. Prac. & Rem. Code § 16.001.

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#4] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#5] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#23] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and its Alternative Motion to Stay [#23] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and DENIED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Joey Swafford against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on November 7, 2003 informing the Court of the status of their petition, if any, filed on behalf of Joey Swafford in the Court of Federal Claims.

SIGNED this the 7ᵗʰ day of March 2003.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-8-



IN THE UNITED STATES DISTRICT COURT

FILED - CLERK
U DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

2003 JAN 15 AM 8:04
TX EASTERN - LUFKIN

LUFKIN DIVISION

BY_____ DH

KIRK BOTTER and DARLA BOTTER §
Individually and as Next Friend of
CODY WYATT BOTTER                §

VS.                              § CIVIL ACTION NO. 9:02 CV 181

AVENTIS PASTEUR, INC.,           §
Individually and as Successor-in-Interest
to CONNAUGHT LABORATORIES,       §
INC., et. al.

## ORDER

Plaintiffs Kirk Botter and Darla Botter bring this suit, individually and as legal

representative of their minor child, Cody Wyatt Botter, pursuant to Texas state law,

against Defendants Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories

f/d/b/a Pasteur Merieux Connaught; Sigma Aldrich, Inc. and Sigma Aldrich

Corporation ("Sigma Inc."); the Dow Chemical Company ("Dow"); Eli Lilly and

Company ("Eli Lilly"); GDL International, Inc. ("GDL"); GlaxoSmithKline,

Individually and as Successor-in-Interest to Smith Kline Beecham Corporation

("Smith Kline"); Merck and Company, Inc. ("Merck"); EM Industries, Inc. ("EM");[1]

Taylor Medical; and Wyeth ("Wyeth") d/b/a Wyeth, Inc., Wyeth Laboratories,

_____

[1]Plaintiffs have dismissed their claims against EM Industries, Inc.



1

Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines, and Lederle Laboratories, and f/k/a American Home Products, Corp.  Plaintiffs' complaint alleges the following causes of action: strict liability, negligence, gross negligence, fraud & conspiracy, and negligence in marketing.  In their prayer for relief, the parents seek damages for loss of consortium of their child, Cody Wyatt.

Before the Court are the Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. # 12) brought by Aventis Pasteur, Merck, Wyeth, and Smith Kline; Eli Lilly and Co.'s Motion to Dismiss or Stay Proceedings (doc. # 4) and its Amended Motion to Dismiss (doc. # 31); Sigma-Aldrich Inc.'s Motion to Dismiss (doc. # 6), its Alternative Motion to Stay Proceedings (doc. #33), its Supplemental Motion to Dismiss (doc. # 34),  and its second Supplemental Motion to Dismiss (doc. # 60); Aventis Pasteur Inc.'s Motion to Dismiss (doc. # 12); and Dow Chemical's Motion to Dismiss or Stay Proceedings and for Summary Judgment (docs. # 38 and # 39).  After due consideration of the briefing and oral arguments of the parties and the relevant law, the Court finds that the motions are well taken in part and should be **GRANTED IN PART.**

### BACKGROUND

Plaintiffs claim their son, Cody Wyatt, was exposed to harmful levels of mercury received through injections of routine childhood vaccinations administered

2

to him by his pediatrician during the first eighteen months of his life, from April 16, 1998 through December 10, 1999. Plaintiffs allege that Cody now suffers, and in the future will continue to suffer, the toxic neurological effects of mercury poisoning as a result of certain Defendants'[2] negligent use of thimerosal preservative, containing mercury, in their vaccines. The Complaint, filed originally in the District Court of Angelina County, Texas, states that in the 1980's, the FDA proposed a regulation requiring the removal of thimerosal from all over-the-counter products and that in July of 1999 the American Academy of Pediatrics advised its members to use thimerosal-free vaccines due to concern regarding mercury poisoning.

Defendants removed the case from Angelina County claiming this Court has diversity and federal question jurisdiction under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1, *et seq.*

Defendants assert the affirmative defense that the National Childhood Vaccine Injury Act ("The Act") prohibits a civil suit against a vaccine manufacturer or administrator for damages greater than $1,000 if the damages arise from a vaccine related injury or death and urge the Court to dismiss the case because Plaintiffs have not filed first with the U.S. Court of Federal Claims ("Vaccine Court") as required by the Act. In the alternative, Defendants request that we stay proceedings pending the

---

[2]The Complaint does not specify which of the Defendants to which it refers.

3

outcome of the suit before the Vaccine Court.[3]

## DISCUSSION

<u>Claims Against Vaccine Manufacturers</u>:

The National Childhood Vaccine Injury Act of 1986 sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11 (1988 ed., as amended 2002). Congress recognized that the "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken. Use of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. However, while most children enjoy measurable benefit from immunization programs, "a small but significant number of have been gravely injured." *Knudsen v. Secretary of HHS*, 35 F.3d 543, 549 (Fed. Cir. 1994) (quoting H.R.Rep. No. 99-908, at 3, *reprinted in* 1986 U.S.C.C.A.N. 6344).

Congress, therefore, enacted the Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense, and unpredictability of the tort system. *Shalala v. Whitecotton,* 514 U.S. 268, 269,

---

[3]While some Defendants state additional grounds for their motions to dismiss, pending motions use the Vaccine Act provisions as a main basis for their motions to dismiss or to stay.

4

115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). The program established by the Act is designed to "ensure that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345- 6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby ... keep[s] manufacturers in the market." *Schafer v. Am. Cyanamid Co.*, 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires vaccine-related claims to be initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. *See Whitecotton*, 514 U.S. at 270, 115 S.Ct. at 1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; *Haggerty v. Wyeth Ayerst Pharm.*, 79 F.Supp.2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[4] *See* 42 U.S.C.

---

[4]A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

§ 300aa-11(2)(A); *Whitecotton,* 514 U.S. at 270, 115 S.Ct. at 1478 (explaining that

a claimant alleging an injury after the Vaccine Act's effective date "must exhaust

the Act's procedures ...before filing any de novo civil action in state or federal

court."). If a claimant seeks compensation in a state or federal court for

vaccine-related injuries prior to exhausting his or her remedies under the Vaccine

Act, the Court must dismiss the action. *See* 42 U.S.C. § 300aa-11(a)(2)(B). Simply

put, individuals who qualify as Program claimants must file petitions in the

Vaccine Court in order to pursue any vaccine-related claims at all.[5] If an individual

who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program

award, that individual may reject the award and pursue a traditional tort action in

any forum[6]. *See* 42 U.S.C. § 300aa-21(a).

---

[5] De minimis claims for less than $1,000, however, may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(a)(2)(A). The Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages be filed under the Program. *Id.*

[6] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith and that a reasonable basis for asserting the claim existed. See 42 U.S.C. § 300aa-15(c). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, see 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). See 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. See 42 U.S.C. § 300aa-23(d).

6

At the time of institution of this lawsuit the Plaintiffs had not filed a petition in the Court of Federal Claims.  Plaintiffs' initial position was that they were not required to file originally in the Vaccine Court because the Vaccine Act does not require such a filing when the injury involved is not "vaccine-related." Plaintiffs have since informed the Court that they have filed a claim before the Vaccine Court in mid-December, 2002.

The term vaccine-related injury "does not include an illness, injury, condition or death associated with an adulterant or contaminant intentionally added to a vaccine." 42 U.S.C. § 300aa-33(5). Plaintiffs asserted that Cody's injuries were cause by thimerosal, which they claim is an "adulterant or contaminant" intentionally added to a vaccine and that, therefore, this lawsuit does not involve a "vaccine- related" injury as defined by the Vaccine Act. The Defendants, however, contend that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines.  In the face of overwhelming authority holding that thimerosal is a constituent material of the vaccines in question and is not an

_____

7

adulterant or contaminant, Plaintiffs have all but abandoned their position.[7] The

following cases have found injuries from thimerosal are "vaccine-related" under

the Vaccine Act: *Liu v. Aventis Pasteur*, 219 F.Supp.2d 762 (W.D.Tex. 2002);

*Owens v. Am. Home Prods. Corp.*, 203 F.Supp.2d 748 (S.D.Tex. 2002); *McDonald*

*v. Abbott Labs*, 02-77 (S.D.Miss. Aug. 1, 2002); *Collins v. Am. Home Prods.*

*Corp.*, 01-979 (S.D.Miss. Aug. 1, 2002); *Stewart v. Am. Home Prods. Corp.*,

02-427 (S.D.Miss. Aug. 1, 2002); *Strauss v. American Home Prod. Corp.*, 208

F.Supp.2d 711 (S.D.Tex. 2002); *Blackmon v. American Home Prod. Corp.*, Cause

No. G-02- 179 (S.D.Tex. May 8, 2002); *O'Connell v. American Home Products*

*Corp.*, 2002 WL 31455729 (S.D. Tex. May 7, 2002); *Wax v. Aventis Pasteur Inc.*,

__ F. Supp.2d. __, 2002 WL 31444878 (E.D.N.Y. Oct. 30, 2002); *Bertrand v.*

*Aventis Pasteur Laboratories, Inc.*, 226 F.Supp.2d 1206 (D. Ariz. 2002); *Leroy v.*

*Secretary of Dept. of Health and Human Services*, 2002 WL 31730680 (Fed. Cl.

Oct. 11, 2002).

Additionally, the Department of Health and Human Services has taken the

position that thimerosal is not an adulterant or contaminant of vaccines. See

"Statement of Interest" in *King ex rel King v. Aventis Pasteur, Inc.*, 210 F. Supp.2d

1201 (D. Or. 2002).

---

[7] See statement of Plaintiffs' counsel at the October 28, 2002 hearing held on motions, transcript of hearing at page 24.

8

Since the institution of this lawsuit and the filing of the motions under
consideration here, Congress passed the Homeland Security Act of 2002 ("HSA"),
which was enacted on November 25, 2002. The Homeland Security Act contains
certain clarifying amendments to the Vaccine Act.  According to § 1717 of the its
provisions, the clarifying provisions became effective on the date of enactment and
govern this case.[8]

The first amendment which directly affects this case is the clarification of
the term "vaccine." This term is amended to include "all components and
ingredients listed in the vaccine's product license application and product label."
42 U.S.C. §300aa-33(7) as clarified by § 1716 of the HSA.[9]  It is clear that this
definition would include thimerosal, if it was a component or ingredient listed in
the vaccine's product application and product label. While the Court has no

---

[8]"The amendments made by sections 1714, 1715, and 1716 shall apply to all actions or
proceedings pending on or after the date of enactment of this Act, unless a court of competent
jurisdiction has entered judgment (regardless of whether the time for appeal has expired) in such
action or proceeding disposing of the entire action or proceeding."

[9]§ 1716. CLARIFICATION OF DEFINITION OF VACCINE.

Section 2133 of the Public Health Service Act (42 U.S.C.§ 300aa-33) is amended by adding at
the end the following:
   "(7) The term 'vaccine' means any preparation or suspension, including but not limited to a
preparation or suspension containing an attenuated or inactive microorganism or subunit thereof
or toxin, developed or administered to produce or enhance the body's immune response to a
disease or diseases and includes all components and ingredients listed in the vaccines's product
license application and product label."

9

evidence of what was listed on the product application or label, given the fact that

the FDA had apparently widely approved the use of thimerosal as a vaccine

preservative since the 1930's, and required that preservatives be added to vaccines

distributed in multi-use vials,[10] it seems logical to assume that thimerosal was

listed on either the product application or label of the vaccines used in this case.

Even if this is not the case, in light of the overwhelming case law and the

HHS's interpretation  holding that thimerosal is not an "adulterant or contaminant,"

but rather, a "constituent material" of vaccines, the Court finds that the claims of

Cody Wyatt Botter  against the Vaccine Manufacturers[11] concern a "vaccine related

injury" and are covered by the provisions of the Vaccine Act.

<u>Claims Against Non-Manufacturers:</u>

Because of the recent enactment of the Homeland Security Act of 2002,

Defendants Sigma-Aldrich and Eli Lilly join in the motion of the Vaccine

Manufacturers. They do so based upon the  second amendment to the Vaccine Act

---

[10] *See* C.F.R. § 610.15(a) and C.F.R. § 610.15.

[11] While Plaintiffs' Complaint does not specify which of the Defendants are "Vaccine Manufacturers," the following Defendants have identified themselves as such by their motion "Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. 12)":Merck and Company, Inc. ("Merck"); Wyeth ("Wyeth") f/k/a American Home Products, Corp.;Aventis Pasteur, Inc. ("Aventis"); Smith Kline Beecham Corporation ("Smith Kline").

which clarifies the term "manufacturer."[12] This amendment shows that it is

Congress' intention that the protections of the Vaccine Act cover distributors of

components of vaccines. Section 1714 amends 42 U.S.C. §300aa-33(3) to define

"manufacturer" to include any corporation, organization, or institution which

manufactures, imports, processes, or distributes any vaccine set forth in the

Vaccine Injury table, including any component or ingredient of any such vaccine....

The term "manufacture" means to manufacture, import, process or distribute a

vaccine, including any component or ingredient of any such vaccine.

In addition Eli Lilly and Dow move to dismiss the Plaintiffs' claims against

them, or in the alternative, for stay of the proceedings until the termination of the

action before the Vaccine Court.[13] Dow also moves for summary Judgment. Both

Lilly and Dow claim they did not manufacture or distribute the thimerosal or

vaccines that allegedly caused Cody Botter's injuries. Eli Lilly contends it stopped

distributing childhood vaccines prior to 1980, and all vaccines in 1985, and

---

[12]SEC. 1714. CLARIFICATION OF DEFINITION OF MANUFACTURER.
Section 2133(3) of the Public Health Service Act (42 U.S.C. 300aa-33(3)) is amended--
(1) in the first sentence, by striking "under its label any vaccine set forth in the Vaccine Injury
Table" and inserting "any vaccine set forth in the Vaccine Injury table, including any component
or ingredient of any such vaccine"; and
(2) in the second sentence, by inserting "including any component or
ingredient of any such vaccine" before the period.

[13]While Lilly's motion is titled a Motion to Dismiss, it is converted to a motion for
summary judgment under Rule 56 by the addition of evidence beyond the pleadings. Fed. R. Civ.
P. 12(c).

11

stopped distributing thimerosal by 1992. *See* Affidavit of Scott Fishman, Exhibit

"A" to Lilly's motion. Dow states it has not manufactured vaccines or been

licensed to do so since 1978. See Dow's Motion to Dismiss, at page 3.

   Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. also move to dismiss

or, in the alternative, to stay, claiming they did not manufacture the vaccines or

thimerosal at issue in this case.

   These Defendants ask this Court to enter a no-liability judgment in their

favor despite the Court's need to dismiss or stay the Plaintiffs' claims against the

vaccine manufacturers until the Plaintiffs follow the exhaustion requirements of

the Vaccine Act.  In the alternative, these Defendants seek a dismissal of the

claims against them or a stay of proceedings under the same posture as the vaccine

manufacturers. Plaintiffs raise many of the same claims against these Defendants

as against the vaccine manufacturer Defendants, including strict liability,

negligence in the manufacture, marketing and/or sale of mercury contained in

vaccine products, gross negligence, and fraud and conspiracy, and loss of

consortium. To rule on the merits of some Defendants' substantive defenses would

require a period of discovery allowing the Plaintiffs to investigate the Defendants'

contentions. To allow the Plaintiffs to conduct discovery on some Defendants

during the pendency of the minor's claims under the Vaccine Act against other

12

Defendants is inconsistent with Congress's goal of minimizing litigation costs. Therefore, the Court will stay any discovery until the termination of Plaintiffs' action before the Vaccine Court rather than allow discovery on some Defendants.

<u>Kirk and Darla Botters' Individual Claims:</u>

Kirk and Darla Botter bring claims individually and as next friend of their son. Individually, they seek recovery for all past and future costs associated with Cody's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled," may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Kirk and Darla Botter can only bring their claims as next friend of Cody, not their individual claims, in the Court of Federal Claims.

The Defendants move to dismiss the Botter's individual claims for damages because they are derivative of Cody's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while

13

the parents are representing Cody's' claims in the Court of Federal Claims.[14]

The Plaintiffs seek to proceed upon their individual claims during the

pendency of their case before the Vaccine Court.  It is clear that all of the

individual claims of Kirk and Darla Botter, including the loss of consortium claim,

are derivative of the claim of Cody Wyatt Botter. *Reagan v. Vaughn*, 804 S.W.2d

463, 466 (Tex. 1990);  *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978);

*Harris County v. White*, 823 S.W.2d 385, 388 (Tex.App.--Texarkana 1992, *no*

*writ*); *Nash v. Selinko*, 14 S.W.3d 315, 317 (Tex.App.--Houston [14th Dist.] 1999,

*pet. denied*). Since the underlying claim  must proceed first in the Vaccine Court,

judicial economy and concern for consistent results suggests the prudent course of

action  would be to allow the underlying cause before the Vaccine Court  to

terminate before proceeding with these individual claims.

The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United*

*Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings

to avoid interference with related proceedings in another forum and to avoid the

waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751

---

[14]Tex. Civ. Prac. & Rem. Code § 16.003 (two-year statute of limitations in personal
injury cases). The Vaccine Act does not toll the statute of limitations for the parents' claims
while they are representing their child in the Court of Federal Claims. The Vaccine Act does,
however, toll the statute of limitations for the minor's state law claims while his petition is
pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the Defendants
who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches
the age of majority. Tex. Civ. Prac. & Rem. Code § 16.001.

14

F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Kirk and Darla Botters' individual causes of action against all Defendants until Cody Wyatt Botter's claims have been administered in the Court of Federal Claims under the Vaccine Act.

CONCLUSION

For the foregoing reasons, IT IS ORDERED that

the Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. # 12) brought by Aventis Pasteur, Merck, Wyeth, and Smith Kline is GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Eli Lilly and Co.'s Motion to Dismiss (doc. # 4) and its Amended Motion to Dismiss (doc. # 31) are GRANTED IN PART as to the claims of Cody Wyatt

15

Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Sigma-Aldrich Inc.'s Motion to Dismiss (doc. # 6), its Supplemental Motion to Dismiss (doc. # 34), and its second Supplemental Motion to Dismiss (doc. # 60) are GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and its Alternative Motion to Stay Proceedings (doc. #33) is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Dow Chemical's Motion to Dismiss or Stay Proceedings (docs. # 38) is GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action. Dow's Motion for Summary Judgment (doc. # 39) is DENIED without prejudice to refiling upon a change of status of the case.

IT IS FURTHER ORDERED that Cody Wyatt Botter's claims against all Defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that Plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

16

IT IS FURTHER ORDERED that the Plaintiffs shall file a status report with this Court every six months from the date of this Order, informing the Court of the status of their petition filed on behalf of Cody Wyatt Botter in the Court of Federal Claims.

IT IS FURTHER ORDERED that this case be administratively closed pending the outcome of the Vaccine Court proceedings.

IT IS FINALLY ORDERED that any party may move for a lifting of the stay or other relief upon a change of circumstances.

SIGNED this ___13th___ day of January, 2003.

JOHN HANNAH, JR.
UNITED STATES DISTRICT JUDGE

17



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
      FILED

   ΟCT - 2 2003

CLERK, U.S. DISTRICT COURT
By _____
          Deputy
```

BENNETTA CHILES, ET AL., §
§
        Plaintiffs, §
§
VS. §   NO. 4:03-CV-802-A
§
AMERICAN HOME PRODUCTS §
CORPORATION, ET AL., §
§
        Defendants. §

<u>ORDER</u>

Came on for consideration the motion of defendants Abbott
Laboratories,[1] SmithKline Beecham Corporation, Aventis Pasteur,
Inc., Merck & Co., Inc., and Wyeth[2] (collectively "vaccine
defendants") and the motion of defendant Eli Lilly & Company
("Lilly") to dismiss.  The court, having considered the motions,
the response of plaintiffs, Bennetta Chiles, individually and as
next friend of Toni Chiles, a minor; Holly Blackburn and Mark
Blackburn, each individually and as next friends of Mitchell Reed
Blackburn, a minor; Lori M. Reed, individually and as next friend

_____

[1] Abbott Laboratories says that it was misnamed as "Abbott
Laboratories, Inc."

[2] Wyeth says that it has been incorrectly named as Wyeth
Laboratories, Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth
Lederle, Wyeth Lederle Vaccines, and Lederle Vaccines.  Mot. to
Dismiss at 1 n.1.  The petition names American Home Products,
doing business as Wyeth, Wyeth Laboratories, Wyeth-Ayerst, Wyeth-
Ayerst Laboratories, Wyeth Lederle, Wyether Lederle, Wyether
Lederle Vaccines, and Lederle Laboratories.  Pls.' Original Pet.
at 5, ¶ 3.05.  The court considers Wyeth to be the intended
defendant.

of Ryan Joseph Reed, a minor; and Krissy Fagan and Carl Fagan,
each individually and as next friends of Bradley Kole Fagan, a
minor, the replies, the record, and applicable authorities, finds
that the motions should be granted as set forth herein.

On June 30, 2003, plaintiffs filed their original petition
in the 96th Judicial District Court of Tarrant County, Texas.
The action was removed by notice of removal filed July 21, 2003.
Plaintiffs contend that they and their minor children were
injured as a result of the children having received vaccines
containing Thimerosal.[3] They identify causes of action for
"strict liability--design defects," "strict liability--marketing
defects," breach of common law implied warranties, negligence,
violations of the Texas Deceptive Trade Practices--Consumer
Protection Act, and assault.[4] They seek compensatory and
punitive damages, including for the parent plaintiffs
compensation for medical expenses, loss of earning capacity, loss
of companionship and society, loss of consortium, and mental
anguish.

Movants urge that plaintiffs' claims are barred under the
National Childhood Vaccine Injury Compensation Act, 42 U.S.C.

---

[3] Plaintiffs' petition states:  "The minor Plaintiffs were
administered [Thimerosal] in their childhood vaccinations."
Original Pet. at 15, ¶ 9.01.

[4] Contrary to the assertion in plaintiffs' brief, they have
not pleaded a claim for fraud.  Pls.' Br. at 19-20.

2

§§ 300aa-1 to 300aa-34 (the "Vaccine Act" or "Act").  They

further argue that the claims of the parent plaintiffs are barred

by state law.

Plaintiffs bring claims individually and on behalf of their

minor children.  Despite their contention otherwise, it is clear

that all of the claims asserted on behalf of the minor plaintiffs

are for "vaccine-related injury."  Owens ex rel. Schafer v. Am.

Home Prods., 203 F. Supp. 2d 748, 754-56 (S.D. Tex. 2002).

Therefore, the claims of the minor children must be pursued in

accordance with the Vaccine Act.  42 U.S.C. § 300aa-11(a)(2)(A).

Plaintiffs admit that they have not yet met all the requirements

of the Vaccine Act to pursue the minor plaintiffs' claims here.[5]

Accordingly, the claims asserted on behalf of the minor

plaintiffs must be dismissed.  42 U.S.C. § 300aa-11(a)(2)(B).

The court recognizes that parents are liable for medical

expenses incurred during the minority of their children; thus, a

cause of action for such expenses belongs to the parents.  Walsh

v. Hershey, 472 S.W.2d 954, 957-58 (Tex. Civ. App.--Fort Worth

1971, writ ref'd n.r.e.).  However, because the Vaccine Act

provides for payment of expenses incurred on the minor child's

behalf, such as medical expenses, these claims must also be

dismissed.  See Strauss v. Am. Home Prods. Corp., 208 F. Supp. 2d

--------------------

[5] Plaintiffs say only that certain child plaintiffs have
exhausted their administrative remedies and are eligible to opt
out of the vaccine court proceedings.  Pls.' Br. at 9.

3

711, 715 n.8 (S.D. Tex. 2002); Benedict v. Sec'y of Dep't of Health & Human Servs., 29 Fed. Cl. 587, 591 (Fed. Cl. 1993).

The Vaccine Act does not otherwise prevent the parent plaintiffs from pursuing their other claims.  Owens, 203 F. Supp. 2d at 756-57.  The question is whether those claims are barred under Texas law.  In this regard, movants urge that the parent plaintiffs have no cognizable claims for mental anguish, emotional distress, loss of consortium, or their own lost wages.

Texas law is clear that the parent plaintiffs do not qualify as bystanders for purposes of mental anguish or emotional distress claims.  They were not in a "zone of danger" and did not perceive the type of shocking accident contemplated by the bystander theory of recovery.  See United Servs. Auto. Ass'n v. Keith, 970 S.W.2d 540, 542 (Tex. 1998).  "Rather, [the parent plaintiffs] witnessed the routine vaccination of their children and the children's subsequent medical problems that are allegedly linked to thimerosal." Owens, 203 F. Supp. 2d at 758.  Thus, the bystander theory is inapplicable.  Id.  And, as for the loss of consortium claim, the Texas Supreme Court has ruled that such a claim does not exist.  Roberts v. Williamson, 111 S.W.3d 113 (Tex. 2003).  Finally, Texas does not provide for recovery of a parent's lost earnings as a result of caring for an injured child.  See Gulf States Utils. Co. v. Reed, 659 S.W.2d 849, 853 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.).

4

The court ORDERS that the motions to dismiss be, and are hereby, granted; that the claims of the minor plaintiffs, Toni Chiles, Mitchell Reed Blackburn, Ryan Joseph Reed, and Bradley Kole Fagan, as asserted through their respective next friends, against the vaccine defendants and Lilly, and the claims of Bennetta Chiles, Holly Blackburn, Mark Blackburn, Lori M. Reed, Krissy Fagan, and Carl Fagan ("adult plaintiffs"), individually, for recovery of medical expenses against the vaccine defendants and Lilly be, and are hereby, dismissed without prejudice; and, that all other claims asserted by the adult plaintiffs, individually, against the vaccine defendants and Lilly be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of these claims.

SIGNED October 2, 2003.

JOHN McBRYDE
United States District Judge

5



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 SEP 10  PM 1: 46

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS BENASCO, individually and                CIVIL ACTION
on behalf of Anthony Benasco;
and Joanne Benasco

VERSUS                                          No. 02-3577

AMERICAN HOME PRODUCTS, ET AL.                  SECT. 'T'

## ORDER

Before the Court is a Motion to Dismiss and Alternatively Stay any Remaining Parental

Claims [doc. 10], filed by the Defendant, Eli Lilly, as well as a Motion to Dismiss [doc. 15],

filed by the Vaccine Defendants. Plaintiffs filed opposition memoranda to each motion, and the

respective movants followed with reply briefs. On June 4, 2003, the Court held oral arguments

on each motion. Having considered the briefs filed by the parties, the law, the record, and the

considerable volume of jurisprudence, this Court is now ready to rule.

I.      **Background and Procedure**

Plaintiffs filed the instant suit in the 22nd J.D.C. in St. Tammany on November 7, 2002,

alleging damages arising from the mercury poisoning of their autistic son, Anthony Benasco.

Plaintiff parents ['Thomas and Joanne'] are seeking damages from American Home Products,

1



DATE OF ENTRY

SEP 1 1 2003

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc No_____

now known as Wyeth ['Vaccine Defendants'], on their own behalf, not in the capacity of the legal representative of their minor son. Specifically, the Plaintiffs have alleged that beginning as a newborn, Anthony was repeatedly poisoned with injections containing ethyl mercury, a known neurotoxin, which was needlessly and inexplicably added to vaccine products manufactured by the Vaccine Defendants. The mercury product that poisoned Anthony is known as Thimerosal, a chemical compound roughly 50 percent mercury by weight. Due to the claimed mercury poisoning of their son, the Parent Plaintiffs have alleged damages against the Vaccine Defendant, including loss of consortium for the care and comfort and society of their child, hedonic damages [past and future], emotional distress [past and future], judicial interest from the date of the judicial demand, all costs incurred as a result of the prosecution of the case, and any and all damages as allowed by law. In addition, Thomas Benasco, individually, and on behalf of Anthony Benasco, and Joanne Benasco, have alleged damages against, Eli Lilly, as producer of Thimerosal, for loss of consortium including the care and comfort and society of their child, hedonic damages [past and future], emotional distress [past and future], judicial interest from the date of the judicial demand, all costs incurred as a result of the prosecution of the case, recovery of all past and future costs and expenditures necessitated by the alleged mercury poisoning, and any and all damages as allowed by law. Eli Lilly removed this case to federal court.

## II.     Law and Analysis

The issue is whether plaintiffs' claims are barred by the Vaccine Injury Act of 1986 ('The Act'). 42 U.S.C. §300 aa-11-34. The Act is a federal statute that provides a no-fault compensation system for injuries caused by the administration of childhood vaccines, and

2

thereby streamlines the process of seeking compensation for vaccine-related injuries and to avoid

the inconsistency, expense and unpredictability of the tort system. *Young v. Aventis Pasteur*, No.

A-02-734 (W.D.Tx) (Sparks, J.); *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477,

1478 (1975). The Act, which establishes a procedure for the adjudication of these claims before

a special master appointed by the United States Court of Federal Claims, requires that before an

individual who sustained vaccine-related injuries (or the legal representatives of such an

individual) may file a lawsuit against a vaccine manufacturer for damages greater than $1,000,

he must first file a petition in the Vaccine Court for the alleged injury. 42 U.S.C. §300 aa-

11(a)(2)(A); 300aa-(11)(a)(1); & 300aa-12(d). Petitioners need only prove causation, no

negligence, in order to obtain a recovery that is paid out of the federal purse. Petitioners may

reject the recovery that is offered by the Vaccine Court, and then file a civil lawsuit against the

vaccine manufacturer. The purpose of the Act was to encourage vaccine development by sparing

vaccine manufacturers of certain litigation expenses, as well as the insurance premiums that are

associated with such costs. If a plaintiff fails to file a petition under the Act prior to suing in

state or federal court, the court is required to dismiss the action. Plaintiffs did not file a petition

under the Act because they assert that the Act covers claims brought by the individuals who

suffer vaccine-related injuries but not claims brought by the parents of such individuals.

The Act provides in part, "no person may bring a civil action...for damages arising from

vaccine related injury...unless a petition has been filed in accord with the Vaccine Act." 42

U.S.C. §300 aa-11(a)(2)(B). The Act defines a "vaccine-related injury" as "an illness, injury,

condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury

Table, except that the term does not include an illness, injury, condition, or death associated with

an adulterant or contaminant intentionally added to such vaccines." 42 U.S.C. §300 aa-33(5). Thus to the extent that parents file suit as a legal representative of their child to recover the child's damages, such a suit is covered by the Act as long as the source of the suit comes from the vaccine itself and not from a contaminant or an adulterant. This is one of the key issues in the present matter. It is this Court's opinion that in keeping with a certain line of cases, each injury allegedly resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Act. *Young v. Aventis Pasteur*, No. A-02-734 (W.D.Tx) (Sparks, J.); *Strauss v. American Home Prod. Corp, et al.*, Cause No. G-02-226 (S.D. Tex. June 11, 2002); *Blackmon, et al., v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002). DHHS has stated that Thimerosal is not a contaminant nor an adulterant of vaccines; it is a component part of the vaccine, since at the time, it was impossible to receive the vaccine without Thimerosal.[1] Furthermore, the Chief Special Master of the Vaccine Court has already concluded that the claims alleging injuries from thimerosal are vaccine-related and are covered by the Vaccine Act. *Leroy v. Secretary of HHS,* 2002 WL 31730680 (Fed. Cl. Oct. 11, 2002.); *See also, Collins v. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D.Miss. Aug 1, 2002); *Cheskiewicz v. Aventis Pasteur*, May Term 2002, Case No. 0952 (Pa. C. Ct. 12/16/2002). This Court holds that thimerosal is not an adulterant nor a contaminant under the Act, and thus, Anthony Benasco's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires this Court to dismiss all claims brought by the Parent Plaintiffs on behalf of Anthony Benasco without prejudice to refiling after they have exhausted the requirements of the Act.

---

[1]"While the HHS's position is official, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron, U.S.A., Inc., v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority." *Young v. Aventis Pasteur*, No. A-02-734 (W.D.Tx) (Sparks, J.), FN 1.

4

The Plaintiffs argue that they are barred from going before the Vaccine Court due to the 36-month peremptory period which exists in the statute. 42 U.S.C. §300aa-11(a)(2)(B). However, this Court disagrees with the Plaintiffs assertions, as the Plaintiffs must not only bring their claims before the Vaccine Court, they must exhaust their remedies while before the Court of Special Masters. "If the instant suit were permitted, then every litigant who did not want to first assert the claims in the Vaccine Court could simply wait out the 36 month period if the tort actions were not banned by the statute then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress." *Cheskiewicz v. Aventis Pasteur*, May Term 2002, Case No. 0952, Order No. 100957 (Pa. C. Ct. 12/16/2002), p.3. Plaintiffs have failed to comply with the procedural mandate as the child has failed to file a petition with the Vaccine Court, and as far as the parents are concerned, they have not exhausted their administrative remedies either. Parent Plaintiffs, seeking redress on behalf of the child, must proceed to the Vaccine Court, where, if there are any, the timeliness issues will be handled there. This is what the office of special masters has stated. *Stewart v. Secretary of HHS*, (Dec. 30, 2002). Recently, on March 19, 2003, the Oregon circuit court issued a ruling that despite plaintiffs claims that they are barred by the 36 month limitation time period, the child's claims must proceed before the Vaccine Court. *See. Neiltsen et al., v. Wyeth*, (Ore. C.Ct. 3/19/03)( "42 U.S.C. 300aa-11(a)(2)(B) directs this Court to dismiss this action.").

This Court has discretion to stay proceedings. *Black Sea Inv. Ltd., v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass.n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985). Accordingly,

the Court stays all proceedings in the Parent Plaintiffs' individual causes of action against all

defendants until their son's claims have been exhausted in the Vaccine Court.

### A.   Law on Motion to Dismiss pursuant to Rule 12(b)(1):

Rule 12 of the Federal Rules of Civil Procedure governs the manner in which defenses

and objections to the pleadings are to be brought by defendants in federal civil actions.

> Every defense, in law or in fact, to a claim for relief in any
> pleading, whether a claim, counterclaim, cross-claim, or third-
> party claim, shall be asserted in the responsive pleading thereto if
> one is required, except that the following defenses may at the
> option of the pleader be made by motion: (1) lack of jurisdiction
> over the subject matter,...Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) requires that a defendant file a Motion to Dismiss the action if the court lacks

jurisdiction.  Without jurisdiction over the subject matter, the nature of the case, and the relief

sought, a court is powerless to render a ruling on the conduct of persons or the status of the

proceeding.

### B.   Law on Motion to Dismiss pursuant to Rule 12(b)(6):

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

courts have found that dismissal pursuant to this provision "is viewed with disfavor and is rarely

granted." *Lowery v. Texas A&M University System,* 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser*

*Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir. 1982).  The

complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the

original complaint must be taken as true. *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir.2002);

*Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1980).  A district court may not

dismiss a complaint under FRCP 12(b)(6) "unless it appears beyond doubt that the plaintiff can

6

prove no set of facts in support of his claim which would entitle him to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001)(quoting *Conley, supra*), *cert. denied*, ____ U.S. ____, 122 S.Ct. 2665, 153 L.Ed.2d 838 (2002); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The Fifth Circuit defines this strict standard as, "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey*, 117 F.3d at 247, *citing* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969). "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges the plaintiff's rights to relief based upon those facts,...[w]hen considering a Rule 12 (b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Ramming*, 281 F.3d at 161-62.

### C.    Eli Lilly's Motion to Dismiss Plaintiff's Vaccine Related Claims and in the Alternative, Stay any Remaining Parental Claims

Parent Plaintiffs have brought claims in their individual capacity as well as in a capacity as representative for their child, against Eli Lilly, seeking loss of consortium including the care and comfort and society of their child, hedonic damages [past and future], emotional distress [past and future], judicial interest from the date of the judicial demand, all costs incurred as a result of the prosecution of the case, recovery of all past and future costs and expenditures necessitated by the alleged mercury poisoning, and any and all damages as allowed by law.

As stated previously in this Order and Reasons, the Vaccine Act unequivocally states that "no person may bring a civil action...for damages arising from vaccine related injury...unless a petition has been filed in accord with the Vaccine Act." 42 U.S.C. §300 aa-11(a)(2)(B). Parent

7

Plaintiffs' claims on Anthony Benasco's behalf must be dismissed because such claims sought are for 'vaccine-related' injuries that must first be adjudicated in the Vaccine Court. As such, the court of first instance for proper jurisdiction as to the claims filed on behalf of the Anthony Benasco by the parent plaintiffs is the Vaccine Court. Plaintiff s have failed to bring the claims on behalf of Anthony Benasco in the Vaccine Court; hence, pursuant to the Vaccine Act, claims brought by the Parent Plaintiffs on behalf of the Anthony Benasco are **DISMISSED WITHOUT PREJUDICE**.

As for the claims of the Parent Plaintiffs brought in an individual capacity, this Court finds, that while the respective claims are not covered by the Vaccine Act, to allow the remaining claims not covered by the Vaccine Act to remain open to active litigation would frustrate the goals of the Vaccine Act. While not all of the claims of the Parent Plaintiffs are compensable under the Vaccine Act, some are. Under 42 U.S.C. § 300aa-15(a)(1)(A)(ii), the Act lists the areas of possible compensation due, and said compensation includes expenses which will be incurred by or on behalf of the person who suffered such injury. In addition, § (4) includes a provision for actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00. *Moss, et al., v. Merck & Co., et al.,* CA No. 03-0334 (W.D.La. June 19, 2003)(Doherty, J). The Defendant moves to dismiss the individual claims of the Parent Plaintiffs because they are derivative of the representee's claims or are not cognizable under Louisiana law. Without addressing the viability or sufficiency of the claims before the Court, this Court finds that any claims brought by the Parent Plaintiffs, in their individual capacity, which are covered by the Act are hereby **DISMISSED WITHOUT PREJUDICE**; any remaining claims not covered by the Act, brought on behalf of the Parent

8

Plaintiffs, in their individual capacity, are hereby **STAYED** pending exhaustion of the claims of Anthony Benasco in the Vaccine Court.[2]  The Plaintiffs state the case exactly when they state in their Opposition Brief to the Motion to Dismiss filed by the Vaccine Defendants, "...the real issue before the Court is not whether the Parent Plaintiffs can exercise rights against vaccine manufacturers, but when these rights may be exercised." *Id.* at 9.  As this Court has determined that Anthony Benasco is not barred by the 36-month peremptory period thereby placing jurisdiction with the Vaccine Court, the Court declines to hear any claims brought by the Parent Plaintiffs until the claims in this civil action, of Anthony Benasco, are adjudicated before the Vaccine Court.

**D.       Vaccine Defendants' Motion to Dismiss**

Likewise, Parent Plaintiffs claim similar damages, only in an individual capacity, against the Vaccine Defendants.  Under their claims, the Parent Plaintiffs have alleged damages, against the Vaccine Defendant, including loss of consortium for the care and comfort and society of their child, hedonic damages [past and future], emotional distress [past and future], judicial interest from the date of the judicial demand, all costs incurred as a result of the prosecution of the case, and any and all damages as allowed by law.  The Vaccine Defendant now moves for a dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction over the subject matter, and pursuant to Fed. R. Civ.P. 12(b)(6) for failure to state a claim.

This Court finds that any claims brought by the Parent Plaintiffs, in their individual

---

[2]"Whether the claims made by the Parent Plaintiffs are merely claims for damages which are solely derivative of the minor child's cause of action, and thus, must be addressed within the minor child's cause of action or are causes of action owned by the parents themselves, and thus, can stand alone, is a question which this Court need not address at this time." *Moss, et al., v. Merck & Co., et al.,* CA No. 03-0334, at p.9-10 (W.D La. June 19, 2003)(Doherty, J).

9

capacity, which are covered by the Act are hereby **DISMISSED WITHOUT PREJUDICE**; any remaining claims not covered by the Act, brought on behalf of the Parent Plaintiffs, in their individual capacity, are hereby **STAYED** pending exhaustion of the claims of Anthony Benasco in the Vaccine Court.

10

Accordingly,

IT IS ORDERED that the defendant Vaccine Manufacturer's Motion to Dismiss [Doc. 10] is **GRANTED IN PART AND DENIED IN PART**. Any claims brought by the Parent Plaintiffs, in their individual capacity, which are covered by the Act are hereby **DISMISSED WITHOUT PREJUDICE**. Any remaining claims not covered by the Act, brought on behalf of the Parent Plaintiffs in their individual capacity, are hereby **STAYED** pending exhaustion of the claims of Anthony Benasco in the Vaccine Court;

IT IS FURTHER ORDERED that the defendant Eli Lilly's Motion to Dismiss [Doc. 15] is **GRANTED.** Any claims brought on behalf of Anthony Benasco by Parent Plaintiffs are hereby **DISMISSED WITHOUT PREJUDICE** as to lack of jurisdiction. Any claims brought by the Parent Plaintiffs, in their individual capacity, which are covered by the Act are hereby **DISMISSED WITHOUT PREJUDICE**. Any remaining claims not covered by the Act, brought on behalf of the Parent Plaintiffs, in their individual capacity, are hereby **STAYED** pending exhaustion of the claims of Anthony Benasco in the Vaccine Court;

IT IS FURTHER ORDERED that the remaining Parent Plaintiff claims in the above-captioned matter be stayed until Monday, April 5, 2004;

IT IS FURTHER ORDERED that request of Plaintiff for leave to amend the petition to plead an amount of $1,000.00 is **DENIED**;

IT IS FURTHER ORDERED that the Clerk of Court mark this action closed for statistical purposes **ONLY**;

IT IS FURTHER ORDERED that the Court shall retain jurisdiction and that the case shall be restored to the trial docket and shall be reset by order of this Court upon motion of a

11

party if circumstances change, so that the case may proceed to final disposition. This order shall

not prejudice the rights of the parties to this litigation.

New Orleans, Louisiana, this _____ day of September, 2003.

_____
G. THOMAS PORTEOUS, JR.
UNITED STATES DISTRICT JUDGE

12