**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

NOV 1 8 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| VERONICA RAMIREZ, Individually and as Next Friend of JEREMIAH S. RAMIREZ, a minor,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOME PRODUCTS CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 03-CV-155<br><br>**DEFENDANT ELI LILLY AND COMPANY'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

The decision in *Chiles v. American Home Products. Corp.,* Civil Action No. 4:03-CV-802-A (N.D. Tex. Oct. 2, 2003) (**Exhibit A**) is one in a long line of cases presented to the Court in which courts across the country have dismissed all vaccine-related claims against all defendants to be pursued in Vaccine Court. The decision in *Chiles* is consistent with decisions which have been rendered in orders involving 84 other cases throughout the country. Moreover, the decision in *Chiles* is directly relevant because it involved the dismissal of an **identical** lawsuit filed by the same plaintiffs' counsel as in the current case.

There are two separate and equally compelling reasons for the *Chiles* court's decision to dismiss all claims against Lilly, and both of those reasons apply with equal force in the present case. First, the plain language of the petition in the *Chiles* case, as here, indicated Lilly was being sued as an alleged "vaccine manufacturer," despite plaintiffs' recent assertions to the contrary in her Response brief. Second, even in cases in which Lilly has been sued as an alleged "thimerosal manufacturer," the overwhelming majority of courts have dismissed claims against the manufacturers of vaccine components pursuant to the Act. This Court should follow the *Chiles* opinion, as well as follow the overwhelming majority of authority in Texas and across

the country, and should dismiss all vaccine-related claims against all defendants pursuant to the Vaccine Act.

## I.    Plaintiff Has Sued Lilly As An Alleged Vaccine Manufacturer

Plaintiff argues in her Response to Defendants' Notice of Supplemental Authority ("Response") that claims against Lilly as a "non-vaccine manufacturer" should not have "been lumped into the dismissal order [in *Chiles*] with the claims against the vaccine manufacturers." Response, p. 6.  However, as in this case, the plaintiffs in *Chiles* **did not make any such distinctions** between Lilly and the other defendants in their Petition.  Rather, plaintiff in this case, as in *Chiles*, defined Lilly in her Petition as a "Manufacturer Defendant" (Petition, ¶ 3.12). As such, the allegations against Lilly are **identical** to all those against all the other "Manufacturer Defendants" (Petition, ¶¶ 3.02-3.12).  Therefore, it was not error for the *Chiles* court to ignore plaintiff's belated attempt to draw distinctions between Lilly and other defendants when no such distinction exists on the face of the Petition.[1]  *See* Response, p. 7 (arguing *Chiles* incorrectly decided for failure to acknowledge plaintiffs' arguments).  Indeed, quite to the contrary, the *Chiles* court **would have** been in error had it considered evidence not presented in plaintiffs' Petition.  In deciding a motion to dismiss, "a court must not look beyond the pleadings." *Sheppard v. Tex. Dept. of Transp.*, 158 F.R.D. 592, 595 (E.D. Tex. 1994); *see also Miller v. Med. Ctr. of S.W. La.*, 22 F.3d 626, 628 (5th Cir. 1994).  Plaintiff is asking this Court to ignore the plain language of the Petition and instead analyze the new allegations made in her Response brief.  This Court should follow the *Chiles* opinion in declining to accept such an improper invitation.

---

[1]    In *Chiles*, as in the present case, plaintiffs only attempted to belatedly name Lilly as an alleged "thimerosal manufacturer" in their Response to Lilly's motion to dismiss.

**II.    Should The Court Determine That Allegations Regarding Lilly's Status As An Alleged Thimerosal Manufacturer Are Properly Before The Court, Dismissal Of Lilly Pursuant To The Vaccine Act Is Still Appropriate**

The irony behind plaintiff's belated attempt to label Lilly as an alleged "thimerosal manufacturer" in her Response brief is that even if she is successful in doing so, dismissal of Lilly pursuant to the Vaccine Act is still appropriate.   Under the Act, the manufacturers of vaccine components are entitled to the same protections as the manufacturers of completed vaccines. The *Chiles* opinion constitutes an implicit rejection of plaintiff's argument that there is a "crucial distinction" between claims against the manufacturers of vaccines, and claims against the manufacturers of the vaccine preservative thimerosal. Response, p. 7. Indeed, plaintiffs presented the *Chiles* court with the same arguments in their Response brief in that case that plaintiff in this case is making here.  In the *Chiles* Response brief, those plaintiffs argued that Lilly's alleged role as a thimerosal manufacturer put Lilly in a different category of defendants. The *Chiles* court declined to accept that argument.

While the rejection of a purported distinction between alleged manufacturers of vaccines and manufacturers of vaccine components is implicit in the *Chiles* opinion, it has been made explicit by many different courts.  Most significantly, the specially-designated court of the U.S. Court of Federal Claims charged by the Vaccine Act with administration of vaccine-related claims ("Vaccine Court") has explicitly rejected the idea that a claim for alleged injury from the vaccine component thimerosal could be distinguished from claims for injury from vaccines generally in *Leroy v. Secretary of Health and Human Services*, No. 02-392V, 2002 WL 3170680 (Fed. Cl. 2002). The Vaccine Court interpreted that term "vaccine" as used in the Act to include the thimerosal component because "a vaccine preservative is a constituent part of the vaccine." *Leroy,* at *5.  The court held that "the plain meaning of 'vaccine' encompass[es] the thimerosal

- 3 -

*component. . . ."* *Id.* at * 7 (emphasis in original). The plain meaning of the term "vaccine manufacturer" under the Act, then, necessarily encompasses the "thimerosal manufacturer." As a recent decision dismissing Lilly from 16 coordinated cases in California noted, "[b]ecause the Vaccine Court has held that the terms 'vaccine' and 'thimerosal' are interchangeable for purposes of Vaccine Act jurisdiction, claims asserted against thimerosal manufacturers are also barred by the Act." *In re The Vaccine Cases*, Case No. JCCP 4246 (L.A. Sup. Ct. Sept. 25, 2003) (**Exhibit B**).

Since the issuance of the *Leroy* decision, the U.S. District Courts for the Western[2], Eastern[3] and now Northern[4] Districts of Texas have dismissed claims against Lilly pursuant to the Act. Those dismissals have occurred in cases in which the plaintiffs have attempted to distinguish claims against Lilly as an alleged "thimerosal manufacturer" from claims against "vaccine manufacturers." The undeniable truth is that the overwhelming majority of courts, including **every** Texas federal court to have decided a case since the *Leroy* decision, have dismissed the vaccine-related injury claims against Lilly. Plaintiff's reliance on *Blackmon v. American Home Products*, 203 F. Supp. 2d 748 (S.D. Tex. 2002) and *Owens v. American Home Products*, 2002 WL 992094 (S.D. Tex. 2002) illustrates the problem with her argument. Those cases were decided **before** the court charged by the Vaccine Act with jurisdiction over "vaccine-related" claims decided, in *Leroy*, to define the term "vaccine" as used in the Act to

---

[2]   *See Liu v. Aventis Pasteur, Inc.,* 219 F. Supp. 2d 762 (W.D. Tex. 2002); *Russak v. Aventis Pasteur, Inc.,* Civil Action No. A-02-CA-480-SS (W.D. Tex. Sept. 9, 2002); *Carabine v. Aventis Pasteur, Inc.,* Civil Action No. A-02-501-SS (W.D. Tex. Oct. 8, 2002); *Young v. Aventis Pasteur, Inc.,* Civil Action No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003); *Swafford v. Aventis Pasteur, Inc.,* Civil Action No. A-03-CA-055-SS (W.D. Tex. Mar. 7, 2003) (unpublished opinions attached as **Exhibit C**).

[3]   *See Botter v. Aventis Pasteur, Inc.,* Civil Action No. 9:02-CV-181 (E.D. Tex. Jan. 15, 2003) (**Exhibit D**).

[4]   *See Chiles* (**Exhibit A**).

1339240v1

include the thimerosal component.[5]   Plaintiff's sole recent authority, *Toussaint v. Merck & Co.*, 2003 WL 21406178 (E.D. La. 2003) is not only contrary to the overwhelming majority of courts to rule on the issue, but also apparently relies on a misunderstanding of the nature of the jurisdiction of the Vaccine Court.   As cited by plaintiff, the *Toussaint* court held that "the exclusive jurisdiction of the Vaccine Act does not apply to manufacturers, suppliers, and distributors of thimerosal."   Response, p. 6 (citing *Toussaint*, 2003 WL 21406178 at *2). However, the jurisdiction of the Vaccine Act also does not apply to alleged "vaccine manufacturers."   The only defendant in Vaccine Court proceedings is the Secretary of Health and Human Services.   42 U.S.C. § 300aa-12(b)(1).   The jurisdiction of the Vaccine Court is over **plaintiffs** who assert "vaccine-related" claims, not defendants in civil suits regarding vaccines. 42 U.S.C. § 300aa-11(b)(1)(A).

Courts have rejected a similar reliance on the *Toussaint* opinion.   For example, a New Hampshire court explicitly rejected the *Toussaint* court's reasoning in favor of that of the U.S. District Court for the Western District of Texas in *Liu*, which dismissed all vaccine-related claims against all parties.   *Cyr v. Aventis Pasteur, Inc.*, 01-C-0663 (N.H. Sup. Ct. Aug. 12, 2003).   (**Exhibit E**).   That court declined to adopt *Toussaint* and instead "agree[d] with the policy decision set forth in *Liu*," which noted that it would be contrary to the purpose of the Vaccine Act for claims to proceed against Lilly "while the same suit was occurring in the administrative courts."   *Cyr*, at 6-7.   This Court should similarly decline to follow the flawed *Toussaint* analysis, and should instead adopt the position of the overwhelming majority of courts in dismissing claims against Lilly, of which the *Chiles* opinion is only the most recent.   To date,

---

[5]   As noted in Lilly's Reply in Support of its Motion to Dismiss, *Case v. Merck & Co.*, 2002 WL 21406178 (E.D. La. 2002) does not support Plaintiff's argument that claims against thimerosal manufacturers are treated differently than those against the manufacturers of vaccines.   In that case, claims against **all** parties were allowed to proceed at first (*Id.* at *7), but all claims against **all** defendants were later stayed in *Case v. Merck & Co.*, 2003 WL 145427 (E.D. La. 2003).

- 5 -

nine federal and eight state courts have dismissed vaccine-related claims against alleged thimerosal manufacturers pursuant to the Vaccine Act in a total of 85 cases. This Court should follow these decisions and similarly dismiss the claims against Lilly here.

## II.    Conclusion

Plaintiff's attempt to distinguish the *Chiles* opinion relies exclusively on an alleged distinction between types of defendants which is not present in her Petition. Nowhere in her Petition does she allege that she is bringing suit against Lilly separately as an alleged manufacturer of thimerosal. Rather, all of plaintiff's claims against all the defendants are identical. However, even if plaintiff had adequately pled such a distinction in her Petition, the distinction is irrelevant. The overwhelming majority of courts have held that the manufacturers of vaccine components are entitled to the same protections under the Vaccine Act as the manufacturers of completed vaccines. This Court should follow the *Chiles* opinion, as well as the wealth of authority presented by Lilly from courts in Texas and across the country, and dismiss all vaccine-related claims against all defendants pursuant to the Vaccine Act.

For the foregoing reasons, and for the reasons expressed in Lilly's Motion to Dismiss and Reply in support thereof, Plaintiff's Petition should be dismissed.

1339240v1

Respectfully submitted,

M. SCOTT MICHELMAN
Attorney-in-Charge
Texas Bar No. 00797075
Southern District ID No. 20802
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis, Suite 1600
Houston, TX  77002-2911
Telephone:      713/227-8008
Telefax:         713/227-9508

**ATTORNEYS FOR DEFENDANT,
ELI LILLY AND COMPANY**

**OF COUNSEL:**

DEBORAH A. MOELLER
JEFFERY A. KRUSE
SHOOK, HARDY & BACON L.L.P.
One Kansas City Place
1200 Main Street
Kansas City, MO  64105-2118
Telephone:      816/474-6550
Telefax:         816/421-5547

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Eli Lilly and Company's Reply to Plaintiff's Response to Defendants' Notice of Supplemental Authority was served on all counsel of record listed on the attached List of All Counsel of Record on this the ____ 17ᵗʰ ____ day of November, 2003. Due to the voluminous nature of the exhibits attached to Eli Lilly and Company's Reply, a copy of the exhibits is being provided only to the Court and to Plaintiff's counsel. Should other counsel require a copy of the exhibits, Lilly will provide them upon request.

M. SCOTT MICHELMAN

- 7 -

1339240v1

## LIST OF ALL COUNSEL OF RECORD

Ben C. Martin
Law Office of Ben C. Martin
2100 McKinney Avenue, Suite 1975
Dallas, TX  75201
*and*
Tim K. Goss
Capshaw, Goss & Bowers
3031 Allen Street, Suite 200
Dallas, TX  75204
*Attorneys for Plaintiffs*

Peter C. Neger/Amy DePippo
Bingham McCutchen
399 Park Avenue
New York, NY  10022
*Attorneys for Defendant, Evans Medical Limited*

Mitchell C. Chaney
Rodriguez, Colvin & Chaney
1201 E. Van Buren Street
Brownsville, TX  78520
*Attorneys for Defendant,*
*B.F. Ascher & Company, Inc.*

Michael R. Klatt
Clark, Thomas & Winters
Post Office Box 1148
Austin, TX  78767-1148
*Attorneys for Defendant Wyeth*
*(f/k/a American Home Products)*

James L. Ray
Daw & Ray
5718 Westheimer, Suite 1750
Houston, TX  77057
*Authorized Representative for Defendant,*
*American International Chemical, Inc.*

Bradley S. Wolff/M. Diane Owens
Swift, Currie, McGhee & Hiers
1355 Peachtree Street, NE, Site 300
Atlanta, GA  30309-3238
*and*
R. Jo Reser
Davidson & Troilo
7550 IH-10 West, Suite 800
San Antonio, TX  78229-5818
*and*
Miguel D. Wise
Miguel D. Wise, P.C.
134 West 5th Street
Weslaco, TX  78596
*Attorneys for Defendant Aventis Pasteur Inc., f/k/a*
*Connaught Laboratories, Inc. f/d/b/a Pasteur Merieux*
*Connaught*

Dr. Robert Koller
Dolder
Immengasse 9
400 Basel Switzerland
*Authorized Representative for Defendant, Dolder*

Jeffrey S. Wolff
Fulbright & Jaworski LLP
1301 McKinney, Suite 5100
Houston, TX  77010-3095
*and*
Stephanie A. Smith/Stacey A. Martinez
Fulbright & Jaworski LLP
600 Congress Avenue, Suite 2400
Austin, TX  78701
*Attorneys for Defendant, Smithkline Beecham*
*Corporation d/b/a Glazosmithkline*

Richard L. Josephson/Paul R. Elliott/Douglas B. Roberson
Baker Botts LLP
910 Louisiana, Suite 3000
Houston, TX  77002
*Attorneys for Defendant, Abbott Laboratories*

Michael Losasso
3001 Aloma Avenue, Suite 220
Winter Park, FL  32792
*Authorized Representative for Defendant,*
*RPK Pharmaceuticals, Inc.*

Edmundo O. Ramirez
Ellis Koeneke & Ramirez
1101 Chicago
McAllen, TX  78501-4822
*Attorneys for Defendant, Merck & Co., Inc.*

Phillipa M. Remington/Thomas P. Sullivan
Russell G. Thornton
Stinnett Thiebaud & Remington L.L.P.
4800 Fountain Place
1445 Ross Avenue
Dallas, TX  75202-2702
*Attorneys for Defendant, Oralia T. Wells, M.D.*

Sidney Murphy, Attorney at Law
5910 North Central Expressway, Suite 650
Dallas, TX  75206
*Attorney for Defendant, Eloisa T. Gonzalez, M.D.*

- 8 -

161006v1



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT – 2 2003

CLERK, U.S. DISTRICT COURT
By _____
Deputy

BENNETTA CHILES, ET AL.,      §
                              §
        Plaintiffs,           §
                              §
VS.                           §    NO. 4:03-CV-802-A
                              §
AMERICAN HOME PRODUCTS        §
CORPORATION, ET AL.,          §
                              §
        Defendants.           §

## ORDER

Came on for consideration the motion of defendants Abbott

Laboratories,[1] SmithKline Beecham Corporation, Aventis Pasteur,

Inc., Merck & Co., Inc., and Wyeth[2] (collectively "vaccine

defendants") and the motion of defendant Eli Lilly & Company

("Lilly") to dismiss. The court, having considered the motions,

the response of plaintiffs, Bennetta Chiles, individually and as

next friend of Toni Chiles, a minor; Holly Blackburn and Mark

Blackburn, each individually and as next friends of Mitchell Reed

Blackburn, a minor; Lori M. Reed, individually and as next friend

---

[1] Abbott Laboratories says that it was misnamed as "Abbott
Laboratories, Inc."

[2] Wyeth says that it has been incorrectly named as Wyeth
Laboratories, Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth
Lederle, Wyeth Lederle Vaccines, and Lederle Vaccines. Mot. to
Dismiss at 1 n.1. The petition names American Home Products,
doing business as Wyeth, Wyeth Laboratories, Wyeth-Ayerst, Wyeth-
Ayerst Laboratories, Wyeth Lederle, Wyether Lederle, Wyether
Lederle Vaccines, and Lederle Laboratories. Pls.' Original Pet.
at 5, ¶ 3.05. The court considers Wyeth to be the intended
defendant.

of Ryan Joseph Reed, a minor; and Krissy Fagan and Carl Fagan,
each individually and as next friends of Bradley Kole Fagan, a
minor, the replies, the record, and applicable authorities, finds
that the motions should be granted as set forth herein.

On June 30, 2003, plaintiffs filed their original petition
in the 96th Judicial District Court of Tarrant County, Texas.
The action was removed by notice of removal filed July 21, 2003.
Plaintiffs contend that they and their minor children were
injured as a result of the children having received vaccines
containing Thimerosal.[3] They identify causes of action for
"strict liability--design defects," "strict liability--marketing
defects," breach of common law implied warranties, negligence,
violations of the Texas Deceptive Trade Practices--Consumer
Protection Act, and assault.[4] They seek compensatory and
punitive damages, including for the parent plaintiffs
compensation for medical expenses, loss of earning capacity, loss
of companionship and society, loss of consortium, and mental
anguish.

Movants urge that plaintiffs' claims are barred under the
National Childhood Vaccine Injury Compensation Act, 42 U.S.C.

---

[3] Plaintiffs' petition states:  "The minor Plaintiffs were
administered [Thimerosal] in their childhood vaccinations."
Original Pet. at 15, ¶ 9.01.

[4] Contrary to the assertion in plaintiffs' brief, they have
not pleaded a claim for fraud.  Pls.' Br. at 19-20.

2

§§ 300aa-1 to 300aa-34 (the "Vaccine Act" or "Act").  They
further argue that the claims of the parent plaintiffs are barred
by state law.

Plaintiffs bring claims individually and on behalf of their
minor children.  Despite their contention otherwise, it is clear
that all of the claims asserted on behalf of the minor plaintiffs
are for "vaccine-related injury."  Owens ex rel. Schafer v. Am.
Home Prods., 203 F. Supp. 2d 748, 754-56 (S.D. Tex. 2002).
Therefore, the claims of the minor children must be pursued in
accordance with the Vaccine Act.  42 U.S.C. § 300aa-11(a)(2)(A).
Plaintiffs admit that they have not yet met all the requirements
of the Vaccine Act to pursue the minor plaintiffs' claims here.[5]
Accordingly, the claims asserted on behalf of the minor
plaintiffs must be dismissed.  42 U.S.C. § 300aa-11(a)(2)(B).

The court recognizes that parents are liable for medical
expenses incurred during the minority of their children; thus, a
cause of action for such expenses belongs to the parents.  Walsh
v. Hershey, 472 S.W.2d 954, 957-58 (Tex. Civ. App.--Fort Worth
1971, writ ref'd n.r.e.).  However, because the Vaccine Act
provides for payment of expenses incurred on the minor child's
behalf, such as medical expenses, these claims must also be
dismissed.  See Strauss v. Am. Home Prods. Corp., 208 F. Supp. 2d

---

[5] Plaintiffs say only that certain child plaintiffs have
exhausted their administrative remedies and are eligible to opt
out of the vaccine court proceedings.  Pls.' Br. at 9.

3

711, 715 n.8 (S.D. Tex. 2002); Benedict v. Sec'y of Dep't of Health & Human Servs., 29 Fed. Cl. 587, 591 (Fed. Cl. 1993).

The Vaccine Act does not otherwise prevent the parent plaintiffs from pursuing their other claims. Owens, 203 F. Supp. 2d at 756-57. The question is whether those claims are barred under Texas law. In this regard, movants urge that the parent plaintiffs have no cognizable claims for mental anguish, emotional distress, loss of consortium, or their own lost wages.

Texas law is clear that the parent plaintiffs do not qualify as bystanders for purposes of mental anguish or emotional distress claims. They were not in a "zone of danger" and did not perceive the type of shocking accident contemplated by the bystander theory of recovery. See United Servs. Auto. Ass'n v. Keith, 970 S.W.2d 540, 542 (Tex. 1998). "Rather, [the parent plaintiffs] witnessed the routine vaccination of their children and the children's subsequent medical problems that are allegedly linked to thimerosal." Owens, 203 F. Supp. 2d at 758. Thus, the bystander theory is inapplicable. Id. And, as for the loss of consortium claim, the Texas Supreme Court has ruled that such a claim does not exist. Roberts v. Williamson, 111 S.W.3d 113 (Tex. 2003). Finally, Texas does not provide for recovery of a parent's lost earnings as a result of caring for an injured child. See Gulf States Utils. Co. v. Reed, 659 S.W.2d 849, 853 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.).

4

The court ORDERS that the motions to dismiss be, and are hereby, granted; that the claims of the minor plaintiffs, Toni Chiles, Mitchell Reed Blackburn, Ryan Joseph Reed, and Bradley Kole Fagan, as asserted through their respective next friends, against the vaccine defendants and Lilly, and the claims of Bennetta Chiles, Holly Blackburn, Mark Blackburn, Lori M. Reed, Krissy Fagan, and Carl Fagan ("adult plaintiffs"), individually, for recovery of medical expenses against the vaccine defendants and Lilly be, and are hereby, dismissed without prejudice; and, that all other claims asserted by the adult plaintiffs, individually, against the vaccine defendants and Lilly be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of these claims.

SIGNED October 2, 2003.

JOHN McBRYDE
United States District Judge

5

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/25/03 | DEPT. 324 |
| HONORABLE VICTORIA CHANEY   JUDGE | E. SABALBURO   DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #6 | |
| F. LOPEZ, CRT. ASST.   Deputy Sheriff | NONE   Reporter |

| | | | |
|---|---|---|---|
| 4:00 pm | JCCP4246 | Plaintiff Counsel | |
| | Coordination Proceeding Special Title (Rule 1550 (b)) | Defendant Counsel | |
| | The Vaccine Cases | | |
| | | NO APPEARANCES | |

**NATURE OF PROCEEDINGS:**

RULINGS ON SUBMITTED MATTERS HEARD SEPTEMBER 9, 2003

The court hereby makes its rulings pursuant to its
"1) RULING ON DEFENDANTS' DEMURRER TO FIRST AMENDED
MASTER COMPLAINT NO. 1 AND MOTION TO STRIKE PORTIONS
OF FIRST AMENDED MASTER COMPLAINT NO. 1; and
2) RULING ON DEFENDANTS' DEMURRER TO FIRST AMENDED
MASTER COMPLAINT NO. 2" as signed and filed this date.

As to demurrer to the 1st amended master complaint #1,
the demurrer is sustained without leave to amend as to
claims against vaccine manufacturers asserted by
injured Children and injured Adult Plaintiffs who have
not exhausted their remedies under the NVICP; and as
to the sixth, twelfth, thirteenth, and fourteenth
causes of action to the extent that is seeks receovery
for loss of filial consortium. The demurrer is
sustained with leave to amend as to the first, second,
third, fourth, fifth, eighth, ninth, tenth and
eleventh causes of action. The demurrer is overruled
as to the fifteenth cause of action as asserted by
spouses of Adult Injured Plaintiffs. Plaintiff has
30 days to file an amended complaint.

As to the motion to strike portions of first amended
master complaint no. 1, defendants' motion to strike
is denied as punitive damages allegations. The motion
to strike is moot as to the learned intermediary
doctrine as this issue has been addressed in the

Page   1 of   3   DEPT. 324

MINUTES ENTERED
09/25/03
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/25/03 | DEPT. 324 |
| HONORABLE VICTORIA CHANEY          JUDGE | E. SABALBURO          DEPUTY CLERK |
| HONORABLE          JUDGE PRO TEM<br>#6 | ELECTRONIC RECORDING MONITOR |
| F. LOPEZ, CRT. ASST.    Deputy Sheriff | NONE          Reporter |

| | | |
|---|---|---|
| 4:00 pm | JCCP4246 | Plaintiff<br>Counsel |
| | Coordination Proceeding Special<br>Title (Rule 1550 (b)) | Defendant<br>Counsel |
| | The Vaccine Cases | |
| | | NO APPEARANCES |

**NATURE OF PROCEEDINGS:**

ruling on defendants' demurrer.

As to the demurrer to first amended master complaint no. 2, the demurrer is sustained without leave to amend.

A copy of the court's rulings are sent to counsel Fletcher Alford via U.S. mail this date.

Counsel Fletcher Alford is ordered to serve a copy of the court's rulings to all parties forthwith.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 9-25-2003 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date: 9-25-2003

John A. Clarke, Executive Officer/Clerk

MINUTES ENTERED
09/25/03
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/25/03 | **DEPT.** 324 |
| HONORABLE VICTORIA CHANEY    JUDGE | E. SABALBURO    DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM<br>#6 | ELECTRONIC RECORDING MONITOR |
| F. LOPEZ, CRT. ASST.    Deputy Sheriff | NONE    Reporter |

| | | | |
|---|---|---|---|
| 4:00 pm | JCCP4246 | Plaintiff<br>Counsel | |
| | Coordination Proceeding Special<br>Title (Rule 1550 (b)) | Defendant<br>Counsel | |
| | The Vaccine Cases | | |
| | | NO APPEARANCES | |

NATURE OF PROCEEDINGS:

By: _____
            E. Sabalburo


Fletcher Alford
GORDON & REES
Embarcadero Center, West
275 Battery Street, Suite 2000
San Francisco, CA 94111


Page   3 of   3   DEPT. 324

**MINUTES ENTERED**
09/25/03
**COUNTY CLERK**

1

2

3

**ORIGINAL FILED**

4    SUPERIOR COURT OF CALIFORNIA

SEP 2 5 2003

5    COUNTY OF LOS ANGELES    **LOS ANGELES**

6    **SUPERIOR COURT**

7    THE VACCINE CASES    Case No: JCCP 4246

8    RULING ON DEFENDANTS'

9    DEMURRER TO FIRST AMENDED

10    MASTER COMPLAINT NO. 1 AND

11    MOTION TO STRIKE PORTIONS OF

12    FIRST AMENDED MASTER

13    COMPLAINT NO. 1

14

15    Hearing date:    9/9/03

16    Ruling date:    9/25/03

17

18    After considering the moving, opposing and reply papers and the arguments of

19    counsel at the hearing, the court now rules as follows:

20

21    **DEMURRER**

22

23    Defendant Wyeth on its own behalf and on behalf of Defendants Abbot

24    laboratories, Aventis Pasteur, Inc., individually and as successor to Connaught

25    Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught; Bergen Brunswig

26    Corporation; Eli Lilly and Company; King Pharmaceuticals, Inc.; Parkdale

27    Pharmaceuticals, Inc.; Merck & Co., Inc.; Priority Healthcare Corp.; Sigma-Aldrich

28    Corp.; Sigma-Aldrich, Inc.; Sigma Chemical Company; Aldrich Chemical Company;

Bayer Corporation; STAT Pharmaceuticals, Inc. McKesson Medical-Surgical, Inc;

1   Johnson & Johnson Consumer Companies, Inc.; Bioport Corporation; Baxter

2   Healthcare Corporation; Bergen Brunswig Corporation; Celltech Pharmaceuticals,

3   formerly known as Medeva Pharmaceuticals, Inc.; E.M. Industries, Inc.; SmithKline

4   Beecham Corporation dba GlaxoSmithKline; and Spectrum Laboratory Products, Inc.

5   (Defendants) demur to plaintiffs' Master Complaint No. 1 on the grounds that the court

6   lacks subject matter jurisdiction over each cause of action and that each cause of action

7   fails to state facts sufficient to constitute a cause of action and is uncertain.

8          A demurrer simply tests, as a matter of law, if the pleading states facts

9   sufficient to constitute a cause of action. (*La Jolla Village Homeowner's Assn. v.*

10  *Superior Court* (1989) 212 Cal.App.3d 1131, 1141.)  In addition, the court in *Trewin v.*

11  *California* (1984) 150 Cal.App.3d 975, 980, stated that a court may not consider

12  evidence outside of the pleadings, not make interpretations of the matter before it when

13  such interpretations involve resolving factual questions, which cannot be answered by

14  looking at the pleadings.  Thus, for the purpose of testing the sufficiency of a cause of

15  action, the demurrer admits the truth of all material facts properly pleaded; this does not

16  include contentions, deductions, or conclusions. (*Serrano v. Priest* (1971) 5 Cal.3d

17  584, 591.)

18          Further, the question of plaintiff's ability to prove pleaded facts is irrelevant to

19  ruling on a demurrer. (*Committee on Children's Television, Inc. v. General Foods*

20  *Corp.* (1983) 35 Cal.3d. 197, 213-14.)  A demurrer may be used only to challenge

21  defects that appear on the face of the complaint.  Neither extrinsic evidence, nor

22  contentions, deductions, or conclusions can be considered. (*Dyer v. Northbrook*

23  *Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1542-43.)

24

25  **I.     Thimerosal-related Injuries Are Subject to the Vaccine Act**

26

27          The Vaccine Act creates a federal cause of action, requiring that any claims in

28  excess of $1,000 for vaccine-related injuries be first filed in the Vaccine Court. (42

-2-

U.S.C. § 300aa-11(a)(2)(A).) A claimant must file a petition for compensation (1) under the Vaccine Compensation Program; (2) in the Vaccine Court; (3) against the Secretary of HHS; (4) where the Department of Justice responds on behalf of the government; and (5) the case is heard by a special master, who determines whether the Act covers the claim, whether a petitioner is entitled to compensation, and the amount of such compensation. (42 U.S.C. § 300aa-12(a).)

A plaintiff's exhaustion of the Vaccine Act's remedy is a condition precedent to the subject matter jurisdiction of a state or federal court to hear the merits of that plaintiff's claim for a vaccine-related injury. (42 U.S.C. § 300aa-11(a)(2)(A).) If a plaintiff fails to file a petition in Vaccine Court and exhaust the Act's remedies, a court must dismiss that plaintiff's claims. (42 U.S.C. § 300aa-11(a)(2)(B).)

The statute also prohibits joining Defendants in any civil action until plaintiffs have completed a proceeding in Vaccine Court. (42 U.S.C. § 300aa-11(a)(3).) However, the Vaccine Act only bars civil claims against "vaccine administrators" or "vaccine manufacturers." (42 U.S.C.A. § 300aa-11(a)(2)(A); *Schumacher v. Sec'y of Dep't of Health & Human Servs.* (Fed. Cir. 1993) 2 F.3d 1128, 1133.) "Manufacturer" is defined as a corporation or organization "which manufactures, imports, processes, or distributes under its label any vaccine set forth in the Vaccine Injury Table." (42 U.S.C.A. § 300aa-33(3).) Although thimerosal does not appear on the Vaccine Injury Table, it is a constituent of Table Vaccines. "[A] vaccine preservative is a constituent part or a component of the vaccine. Consequently, based upon the plain meaning of the statutory terms, any injury arising from the thimerosal preservative in vaccines is encompassed within the statutory definition of 'vaccine-related injury,' thereby granting jurisdiction over such claims to [Vaccine] court." (*Leroy v. Sec'y, Dept. of Health & Human Servs.* (Fed. Cl. Spec. Mstr. Oct. 11, 2002) 2002 US Claims LEXIS 284, *18.) Because the Vaccine Court has held that the terms "vaccine" and "thimerosal" are interchangable for purposes of Vaccine Act jurisdiction, claims asserted against thimerosal manufacturers are also barred by the Act.

- 3 -

1     Thimerosal-related injuries are vaccine-related injuries. (*Owens v. Am. Home*

2     *Prods. Corp.* (S.D.Tex. 2002) 203 F.Supp.2d 748, 756; *Leroy v. Sec'y, Dept. of Health*

3     *& Human Servs.* (Fed. Cl. Spec. Mstr. Oct. 11, 2002) 2002 US Claims LEXIS 284;

4     Defendant RJN, Exh. 1.)

5     The Children and Injured Adult Plaintiffs allege vaccine-related injuries. (See

6     Complaint, ¶ 51 ["The Children through the thimerosal-containing vaccinations

7     administered to them during the first two years of their lives, were poisoned by the

8     cumulative dosage of mercury in the thimerosal....The Injured Adult Plaintiffs, through

9     the thimerosal-containing vaccination administered to them, were poisoned by the

10     cumulative dosage of mercury in the thimerosal"].)  The claims made by the Children

11     and Adult Injured Plaintiffs, who have not exhausted remedies available under the

12     Vaccine Act, for vaccine-related injuries (including medical expenses) against any

13     Vaccine Manufacturer Defendant or Thimerosal Manufacturer Defendant are

14     dismissed.  (42 U.S.C. § 300aa-11(a)(2)(B).)  This includes any plaintiff who is

15     qualified to file a petition in the Vaccine Court, regardless of whether the statute of

16     limitations imposed by the Vaccine Act has run.

17

18     **II.    The Learned Intermediary Doctrine**

19

20     Plaintiffs' strict liability, negligence and fraud claims (the first, second, fifth,

21     eighth and eleventh causes of action) allege that defendants "should have specifically,

22     explicitly and unambiguously communicated to the consumer, end user and general

23     public" the risks allegedly associated with the vaccines.  (Complaint, ¶ 65, 78, 130,

24     143, 101, 166.)  However, prescription drug manufacturers have no duty to warn the

25     consumer, end user of the general public.  A drug manufacturer fulfills its duty to warn

26     if it provides adequate warning to the physician administering, in this case, the vaccine.

27     (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1061-1062 & fn. 9; *Fogo v. Cutter*

28     *Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 754-755.)  Plaintiffs argue that an

- 4 -

1  otherwise adequate warning may be rendered inadequate by over-promotion. (See

2  *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 65, 69.)  However, the Master

3  Complaint does not allege an over-promotion theory of liability.  Because defendants

4  had no duty as a matter of law to warn consumers or the public, the demurrer to the

5  first, second, fifth, eighth and eleventh causes of action is sustained with leave to

6  amend.

7

8  **III.    Fraud**

9

10  Plaintiffs fraud allegations assert that "Defendants ... manufactured... sold and

11  placed in the stream of commerce thimerosal and the thimerosal-containing vaccines"

12  (Complaint, ¶ 96); that  Defendants "knew of the risks associated with thimerosal" and

13  "had a duty to warn" of the risks (Complaint, ¶ 98; see also ¶ 101); and that

14  Defendants' "fraudulent concealment, deception and fraud" caused plaintiffs and

15  plaintiffs children injuries (Complaint, ¶ 106).

16  "To withstand a demurrer, the facts constituting every element of the fraud must

17  be alleged with particularity, and the claim cannot be salvaged by references to the

18  general policy favoring the liberal construction of pleadings." (*Goldrich v. Natural Y*

19  *Surgical Specialties* (1994) 25 Cal.App.4th 772, 782.)  In *Goldrich*, similar to the

20  pleadings at issue here, the plaintiff:

21      simply   contends   the   defendants'   knowledge   about   their   own

22      communications somehow relieves her of her obligation to provide any

23      factual averments at all. We disagree, and we find nothing in *Committee on*

24      *Children's Television, Inc. v. General Foods Corp.*, [1983] 35 Cal.3d 197,

25      or in any other case to support this sort of pleading. Mrs. Goldrich has done

26      nothing more than recast her negligence and products liability claims--that

27      the implants were negligently and defectively made and distributed--in the

28      traditional words of fraud, without any supporting facts. That simply is not

1    enough.

2    (*Id.* at p. 783.)

3         Because here, as in *Goldrich*, Plaintiffs' fraud allegations fail to allege facts

4    setting forth the essential elements of fraud, the demurrer to the fifth and eleventh

5    causes of action is sustained with leave to amend.

6

7    **IV.    Breach of Warranty**

8

9         The express warranty causes of action allege that defendants warranted the

10   safety of the vaccines and breached the warranty when the vaccines exposed plaintiffs

11   to mercury. (Master Complaint, ¶¶ 82, 84, 147, 149.)  The implied warranty causes of

12   action allege that Defendants warranted the vaccines to be of merchantable quality and

13   safe for their intended purposes and that the warranty was breached when the vaccines

14   exposed plaintiffs to mercury. (Master Complaint, ¶¶ 89, 91, 93, 154, 156, 158.)

15        Defendants demur based on the California Supreme Court's determination that

16   allowing an action for personal injury for breach of warranty is incompatible with its

17   conclusion that a manufacturer of prescription drugs is not strictly liable for injuries

18   caused by a design defect. (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1072;

19   *Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1108.)  In opposition, Plaintiffs argue

20   that their warranty claims are premised on a failure to warn rather than a design defect,

21   citing Master Complaint paragraphs 7, 63-65 and 73-76.  None of these cited

22   paragraphs are part of the warranty causes of action.  Rather, the warranty causes of

23   action appear to based on the design of the vaccine.  Under *Brown*, the demurrer to the

24   third, fourth, ninth and tenth causes of action is sustained with leave to amend.

25

26   **V.    Negligence per se**

27

28        The court declines to revisit the Proposition 65 issues decided in the ruling on

- 6 -

1    the demurrer to Master Complaint No. 3. For the reasons stated in that ruling and

2    incorporated here--that Defendants' warning fall within the safe harbor provision of

3    regulation 12601(b) and that federal law preempts Proposition 65's warning provision

4    in the prescription drug context--the demurrer to the negligence per se claim asserted in

5    the sixth and twelfth causes of action is sustained without leave to amend.

6

7    **VI.**    **Emotional Distress Claims**

8

9    The thirteenth cause of action for negligent infliction of emotional distress is

10    based on emotional injury sustained by Adult Plaintiffs while caring for their

11    vaccinated children. (Master Complaint, ¶ 39.) This theory was rejected in *Huggins v.*

12    *Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 132-133. The demurrer to the

13    thirteenth cause of action is sustained without leave to amend.

14    The fourteenth cause of action is a claim for "bystander" emotional distress

15    brought by the Adult Plaintiffs, who allege that they "were in close proximity to their

16    children at the times of exposure and when their children developed symptoms of

17    mercury poisoning" and as a result suffered "great emotional disturbance and shock and

18    injury to their nervous system." (Master Complaint, ¶¶ 194, 196.)

19    [A] plaintiff may recover damages for emotional distress caused by

20    observing the negligently inflicted injury of a third person if, but only if, said

21    plaintiff: (1) is closely related to the injury victim; (2) is present at the scene

22    of the injury-producing event at the time it occurs and is then aware that it

23    is causing injury to the victim; and (3) as a result suffers serious emotional

24    distress."

25    (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 667-668.)

26    While the Adult Plaintiffs satisfy the close relationship requirement, they fail to

27    meet the other two elements. The Adult Plaintiffs claim that while their children were

28    being vaccinated, the allegedly dangerous nature of the vaccine was "unbeknownst to

1    plaintiffs at that time." (Master Complaint, ¶¶ 3, 8.)  Plaintiffs cannot allege that they

2    observed the defendants' conduct--the manufacture of the vaccines--nor can they allege

3    that at that time (of the conduct) they knew that the conduct was causing the injury.

4    Alternatively, assuming that administration of the vaccines is the relevant injury

5    causing event, the complaint alleges that any injurious properties of the vaccines were

6    unknown to plaintiffs. (Master Complaint, ¶ 8.)

7        Finally, the nature of the injuries here is far-removed from the type of traumatic

8    injury contemplated in *Thing*.  The complaint alleges subtle, latent, long-term

9    developmental impairments. (Master Complaint, ¶¶ 46-52.)  Because plaintiffs did not

10   observe conduct that they also knew at the time to be harmful to their children, the

11   requirements imposed by *Thing* have not been met.  The demurrer is sustained without

12   leave to amend as to the fourteenth cause of action.

13

14   **VII.   Loss of Consortium Claims**

15

16       To the extent that the fifteenth cause of action seeks recovery for loss of filial

17   consortium, the demurrer is sustained without leave to amend. (*Burgess v. Superior*

18   *Court* (1992) 2 Cal.4th 1064, 1069.)

19       Defendants demur to the adult injured plaintiffs' cause of action for loss of

20   *spousal* consortium on the ground that there are no remaining viable causes of action

21   for tortious injury asserted by Plaintiffs.  The demurrer to the cause of action for loss of

22   consortium is overruled, as Adult Injured Plaintiffs who have exhausted their Vaccine

23   Act remedies have viable personal injury claims against all defendants and all Adult

24   Injured Plaintiffs have viable claims against thimerosal manufacturers.

25

26   **In sum:**

27       **The Demurrer is sustained without leave to amend as to claims against**

28   **vaccine manufacturers asserted by injured Children and injured Adult Plaintiffs**

- 8 -

1   who have not exhausted their remedies under the NVICP; and as to the sixth,

2   twelfth, thirteenth, and fourteenth causes of action; and as to the fifteenth cause of

3   action to the extent that it seeks recovery for loss of filial consortium.  The

4   demurrer is sustained with leave to amend as to the first, second, third, fourth,

5   fifth, eighth, ninth, tenth and eleventh causes of action.  The demurrer is overruled

6   as to the fifteenth cause of action as asserted by spouses of Adult Injured

7   Plaintiffs.  Plaintiff has 30 days to file an amended complaint.

8

9                              **MOTION TO STRIKE**

10

11         Defendants move the court for an order, pursuant to Code of Civil Procedure

12   sections 435 and 436, striking Plaintiffs' request for punitive damages and the

13   allegations of paragraphs 7, 56, 66, 68, 74, 77, 78, 98, 101, 102, 131, 133, 139, 142,

14   163, 166, and 167 of the First Amended Master Complaint No. 1 claiming that

15   defendants have a duty to directly warn plaintiffs, patients, consumers and the general

16   public.  The motion is made on the ground that these portions are not drawn in

17   conformity with California law.

18         Punitive damages are only available where defendant has been guilty of

19   oppression, fraud or malice.  (Civ. Code, § 3294.)  A mere conclusory pleading of

20   fraud, malice or oppression is insufficient to warrant an award of punitive damages.

21   (*Brousseau v. Jarrett* (1977) 73 Cal.App.3d 864, 872.)  The 1988 amendment to Civil

22   Code section 3294 added to the definition of malice and oppression that the conduct be

23   "despicable."  "Despicable conduct" is conduct which is so vile, base, contemptible,

24   miserable, wretched or loathsome that it would be looked down upon and despised by

25   ordinary decent people.  (*Mock v. Michigan Millers Mutual Insurance Co.* (1992) 4

26   Cal.App.4th 306, 331.)

27         Plaintiffs assert the following allegations of conduct done in reckless

28   disregard of plaintiffs' safety:

                                        - 9 -

- Defendants manufactured and added thimerosal to vaccines, knowing that mercury, one of its ingredients, was one of the most toxic materials known and had full knowledge of the dangerous propensities of their product. (Master Complaint, ¶¶ 2, 7.)

- Defendants knew that thimerosal was unnecessary for the safety and efficacy of the vaccines, and was only added for the purpose of allowing distribution of the vaccines in multi-dose packages, decreasing packaging costs and increasing profits. (Master Complaint, ¶ 1.)

- Despite knowledge of the dangerous propensities of their products, Defendants deliberately concealed the fact that these products could cause mercury poisoning in ordinary use. (Master Complaint, ¶ 7.)

- Defendants conduct, including acts constituting common law fraud, was "willful, malicious, intentional, oppressive and despicable, and done in willful and conscious disregard of the rights of Plaintiffs." (Master Complaint, ¶ 108.)

While the demurrer has been sustained with leave to amend as to Plaintiffs' fraud claims, the allegations cited above are sufficient to put Defendants on notice of the basis of Plaintiffs' request for punitive damages.

**In sum:**

**Defendants' motion to strike is DENIED as punitive damages allegations. The motion to strike is moot as to the learned intermediary doctrine as this issue has been addressed in the ruling on Defendants' demurrer.**

1    IT IS SO ORDERED.

2    Dated: 9/25/03

3

4

5

6                                    Victoria Gerrard Chaney

7                                         Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORIGINAL FILED**

SEP 2 5 2003

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

**LOS ANGELES**
**SUPERIOR COURT**

THE VACCINE CASES

CASE NO. JCCP 4246

RULING ON DEFENDANTS'
DEMURRER TO FIRST AMENDED
MASTER COMPLAINT NO. 2

Hearing date:    9/9/03

Ruling date:    9/25/03

After considering the moving, opposing, and reply papers and the arguments of counsel at the hearing, the court now rules as follows:

**Defendants' demurrer to Master Complaint No. 2. is sustained without leave to amend.**

Defendant SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline, and on behalf of Wyeth; Abbott laboratories; Aventis Pasteur Inc., individually and as successor-in-interest to Connaught Laboratories, Inc.; Bioport Corporation; Baxter Healthcare Corporation; Bergen Brunswick Corporation; Eli Lilly and Company; Merck & Co., Inc.; Priority Healthcare Corp.; Sigma-Aldrich, Inc.; Sigma Chemical Corporation; Aldrich Chemical Corporation; and Spectrum Manufacturing Corp.; Celltech Pharmaceuticals, Inc. demurs to Plaintiffs' Master Complaint No. 2 on the grounds that the court lacks

subject matter jurisdiction over this matter and that the complaint does not state facts sufficient to constitute a cause of action.

A demurrer simply tests, as a matter of law, if the pleading states facts sufficient to constitute a cause of action. (*La Jolla Village Homeowner's Assn. v. Superior Court*(1989) 212 Cal.App.3d 1131, 1141.) In addition, the court in *Trewin v. California* (1984) 150 Cal.App.3d 975, 980, stated that a court may not consider evidence outside of the pleadings, not make interpretations of the matter before it when such interpretations involve resolving factual questions, which cannot be answered by looking at the pleadings. Thus, for the purpose of testing the sufficiency of a cause of action, the demurrer admits the truth of all material facts properly pleaded; this does not include contentions, deductions, or conclusions. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)

Further, the question of plaintiff's ability to prove pleaded facts is irrelevant to ruling on a demurrer. (*Committee on Children's Television, Inc. v. General Foods Corp.*(1983) 35 Cal.3d. 197, 213-14.) A demurrer may be used only to challenge defects that appear on the face of the complaint. Neither extrinsic evidence, nor contentions, deductions, or conclusions can be considered. (*Dyer v. Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1542-43.)

This is a products liability case in which two different parents and their children allege that the minor children, while not currently manifesting any symptoms, have been subjected to an increased risk for certain neurodevelopmental problems as a result of having received vaccines containing thimerosal. Plaintiffs allege claims for negligence, negligence per se under Proposition 65, and unfair competition under Business and professions code section 17200. (Master Complaint No. 2, ¶¶ 53-58, 59-73, 74-80.) Plaintiffs request relief on behalf of a class, seeking a court-ordered and supervised medical monitoring program to be funded by defendants. (Master Complaint, ¶¶ 31, 32, Prayer for Relief.)

## I.    Vaccine Act Jurisdiction

Section 300aa-11(a)(2)(A) of the Vaccine Act prohibits any person from filing a civil action seeking damages in an unspecified amount against a vaccine manufacturer for alleged vaccine-related injuries unless a petition is first filed in the Vaccine Court. A lawsuit filed in violation of this provision must be dismissed. (42 U.S.C.A. § 300aa-119a)(20(B).) Claims relating to thimerosal fall within the definition of a vaccine-related injury as defined within the Vaccine Act. (See, e.g., *Liu v. Aventis Pasteur, Inc.* (W.D.Tex. 2002) 219 F.Supp.2d 762; *Leroy v. Sec'y, Dep't of Health and Human Servs.* (Fed.Cl.Spec.Mstr. Oct. 11, 2002) 02-392V U.S. Claims LEXIS 284.) Therefore, Plaintiffs' claims against vaccine manufacturers are subject to the jurisdiction of the Vaccine Act if they seek damages in an unspecified amount for vaccine-related injuries.

The California Supreme Court has held that medical monitoring is a form of damages. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 956, 1009; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1103.) Because the Vaccine Act's exhaustion requirement applies to "a civil action for damages" (42 U.S.C. § 300aa-11(a)(2)(A)), the remedy requested by Plaintiffs falls within the Act's jurisdiction.

The Vaccine Act defines the term "vaccine-related injury" as an "injury" or "condition." (42 U.S.C. § 300aa-33(5).) The *Potter* court, in recognizing the existence of the medical monitoring remedy, relied on the Restatement's definition of "injury" as "the invasion of any legally protected interest of another." (6 Cal.4th at p. 1007.) The distinction between this broad concept of injury and "physical injury" was critical to the holding that exposure could give rise to a compensable tort injury. (*Ibid.*) If the exposure Plaintiffs allege amounts to sufficient injury to support a cognizable claim for compensatory damages in the form of a medical monitoring class, then Plaintiffs must have an "injury" or "condition" within the meaning of the Vaccine Act, regardless of whether or not Plaintiffs are symptomatic. Therefore, this court finds that Plaintiffs' causes of action seeking a medical monitoring class constitute a civil action seeking

damages in an unspecified amount against a vaccine manufacturer for alleged vaccine-related injuries within the meaning of the Vaccine Act.

## II.    Unfair Competition Law Claims

The demurrer to plaintiffs' Unfair Competition Law claim is sustained without leave to amend to the extent that it is predicated on violation of Proposition 65, for the reasons stated in the ruling on the demurrer to Master Complaint No. 3 and incorporated here.

To the extent that the UCL cause of action seeks a medical monitoring remedy, the demurrer is sustained without leave to amend because medical monitoring is a form of damages (*Lockheed*, *supra*, 29 Cal.4th at p. 1103) and damages may not be awarded under the UCL (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 179).

Remaining are Plaintiffs' requests for restitution and disgorgement and a request for unspecified injunctive relief.  To state a claim under the UCL, a plaintiff need only show "that members of the public are likely to be deceived." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266-1267.)  The factual recital in Master Complaint No. 2 alleges no conduct which is likely to deceive the public.  Rather, the allegations of deceptive conduct are found in the boilerplate language of paragraph 77. Further, Plaintiffs' allegations are similar to those alleged in *Goldrich v. Natural Y Surgical Specialties* (1994) 25 Cal.App.4th 772, 782.)  In *Goldrich*, the plaintiff:

> simply contend[ed] the defendants' knowledge about their own communications somehow relieves her of her obligation to provide any factual averments at all. We disagree, and we find nothing in *Committee on Children's Television, Inc. v. General Foods Corp.*, [1983] 35 Cal.3d 197, or in any other case to support this sort of pleading. Mrs. Goldrich has done nothing more than recast her negligence and products liability claims--that the implants were negligently and defectively made and distributed--in the

traditional words of fraud, without any supporting facts. That simply is not enough.

(*Id.* at pp. 783.)

While plaintiffs, in the context of Business and Professions Code section 17200, need not plead fraudulent or deceptive conduct with the same particularity required in a fraud action, the concept is the same—Plaintiffs' factual allegations that the vaccines were negligently made and distributed, without more, are not deceptive.

Finally, because the court finds that Plaintiffs' damages claims are subject to Vaccine Act jurisdiction, the court abstains from entertaining relief under the UCL that would conflict with the Act. (See *Diaz v. Kay-Dix Ranch* (1970) 9 Cal.App.3d 588, 593; *Dep't of Transportation v. Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 523.) Additionally, Plaintiffs have an adequate remedy at law in the Vaccine Act, as the Vaccine Court has established a procedure and schedule for deciding whether thimerosal-containing vaccines cause autism. (See Autism General Order #1, Defendant's Exh. 30; *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1249-1250 [section 17200 claim stricken because it is subject to same equitable rules as any other claim and that plaintiff had an adequate remedy at law].)

**III.    Negligence per se**

Plaintiffs' negligence per se claim stated in the second cause of action is dismissed for the reasons stated in the ruling on the Demurrer to Master Complaint No. 3.

**In sum:**

**Defendants' demurrer to Master Complaint No. 2. is sustained without leave to amend.**

IT IS SO ORDERED.

Dated: 9/25/03

Victoria Gerrard Chaney

Judge

219 F.Supp.2d 762
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

Page 1

**c**

United States District Court,
W.D. Texas,
Austin Division.

Kevin LIU, Individually and as next friend of
Nicholas Liu; and Mache Liu,
Individually and as next friend of Nicholas Liu,
Plaintiffs,
v.
AVENTIS PASTEUR, INC., Individually and as
successor-in-interest to Connaught
Laboratories, Inc., Pasteur Merieux, and Pasteur
Merieux Connaught; et al.,
Defendants.

No. A-02-CA-395-SS.

Aug. 23, 2002.

Parents of minor who allegedly suffered injuries
from preservative used in the vaccines administered
to him during first two years of his life brought
product liability action, both as individuals and on
behalf of minor, against various vaccine
manufacturers. Vaccine manufacturers moved to
dismiss, and alternatively to stay action. The
District Court, Sparks, J., held that: (1) injuries
were vaccine-related, and thus, action was required
to be filed initially in the Court of Federal Claims;
(2) discovery was barred pending determination of
action in the Court of Federal Claims; and (3) stay
of parents' individual tort claims was warranted.

Motions granted in part, and denied in part.

West Headnotes

**[1] Health** ☞389
198Hk389 Most Cited Cases
(Formerly 198Hk402)

The purpose of the National Childhood Vaccine
Injury Act, which sets forth a scheme for
compensation for vaccine-related injuries, is to
streamline the process of seeking compensation for
vaccine-related injuries and to avoid the
inconsistency, expense and unpredictability of the
tort system. Public Health Service Act, § 2111, as
amended, 42 U.S.C.A. § 300aa-11.

**[2] Federal Courts** ☞1141
170Bk1141 Most Cited Cases

**[2] Health** ☞389
198Hk389 Most Cited Cases
(Formerly 198Hk402)

Minor child's injuries allegedly resulting from
preservative used in vaccines administered to him
were "vaccine-related," and thus, parents' action
against vaccine manufacturers to recover for child's
injuries was required to be filed initially in the
Court of Federal Claims, pursuant to the National
Childhood Vaccine Injury Act; preservative was
component of vaccines, rather than adulterant or
contaminant, as it was impossible to get the
vaccines without preservative. Public Health
Service Act, § 2111, as amended, 42 U.S.C.A. §
300aa-11.

**[3] Courts** ☞96(1)
106k96(1) Most Cited Cases

The Court of Federal Claims' acceptance of
jurisdiction and creation of procedures to handle
similar vaccine-related tort claims was not binding
on the district court when determining whether it
had jurisdiction over action brought to recover for
injuries allegedly caused by preservative used in
vaccines administered to minor child. Public
Health Service Act, § 2111, as amended, 42
U.S.C.A. § 300aa-11.

**[4] Federal Civil Procedure** ☞1264
170Ak1264 Most Cited Cases

Discovery was barred, in products liability action
brought by parents of minor child, who was
allegedly injured due to preservative in vaccines
administered to him, against vaccine manufacturers,
pending initial determination of action in the Court
of Federal Claims, as required by the National
Childhood Vaccine Injury Act. Public Health
Service Act, § 2111, as amended, 42 U.S.C.A. §
300aa-11.

**[5] Health** ☞389
198Hk389 Most Cited Cases
(Formerly 198Hk402)

Parents of minor child who allegedly suffered
injuries from preservative used in vaccines
administered to him during the first two years of his

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

219 F.Supp.2d 762
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

Page 2

life could only pursue action on behalf of minor child, and were barred from bringing individual claims for their costs, lost wages and income, emotional distress, and loss of consortium and services, under the National Childhood Vaccine Injury Act. Public Health Service Act, § 2111, as amended, 42 U.S.C.A. § 300aa-11.

**[6] Action** ☞69(5)
13k69(5) Most Cited Cases

District Court's stay of parents' individual state law tort claims for damages, arising from minor child's injuries allegedly caused by preservative used in vaccines administered to him, was warranted, where minor's claim was required to be dismissed without prejudice and filed in the Court of Federal Claims, pursuant to the National Childhood Vaccine Injury Act, and dismissal of parents' individual claims during pendency of the Court of Federal Claims jurisdiction could preclude parents from bringing their individual claims in any forum, due to statute of limitations. Public Health Service Act, § 2111, as amended, 42 U.S.C.A. § 300aa-11.

**[7] Limitation of Actions** ☞105(2)
241k105(2) Most Cited Cases

The National Childhood Vaccine Injury Act does not toll the statute of limitations for the parents' individual state law tort claims while they are representing their child in the Court of Federal Claims. Public Health Service Act, § 2111, as amended, 42 U.S.C.A. § 300aa-11.
*764 Charles S. Siegel, Waters & Kraus, LLP, Dallas, TX, Scott M. Hendler, Lowell Brickman, The Hendler Law Firm, P.C., Austin, TX, for Kevin Liu, Mache Liu, Individually and as Next Friend of Nicholas Liu, plaintiffs.

Rebecca Jo Reser, Ray, McChristian & Jeans, San Antonio, TX, Brian D. Metcalf, Ray, McChristian & Jeans, San Antonio, TX, Catherine A. Lemon, Faegre & Benson, LLP, Denver, CO, Marsha M. Piccone, Kimberley P. Cronin, Faegre & Benson, LLP, Denver, CO, for Aventis Pasteur, Inc., defendant.

John R. Gilbert, Gilbert & Gilbert, P.C., Angleton, TX, Laurence E. Boyd, Angleton, TX, Lawrence P. Hampton, Angleton, TX, for Dow Chemical Co., defendant.

Erik V. Larson, Sandra L. Phillips, Diana L. Panian , Shook Hardy & Bacon, LLP, Houston, TX, Deborah A. Moeller, Jeffery A. Kruse, Shook Hardy & Bacon, LLP, Kansas City, MI, for Eli Lilly & Co., defendant.

Marc A. Sheiness, Sheiness, Scott, Grossman & Cohn, LLP, Houston, TX, for RM Industries, Inc., defendant.

Maurice Delaney, GDL International, Inc., St. Joseph, MO, for GDL Intern., Inc.

Stephanie A. Smith, Fulbright & Jaworski, Austin, TX, Barclay A. Manley, Fulbright & Jaworsky, LLP, Houston, TX, for GlaxoSmithKline, defendant.

Richard L. Josephson, Baker & Botts, LLP, Houston, TX, Paul R. Elliott, Houston, TX, Douglas B. Roberson, Baker Botts LLP, Houston, TX, for Merck & Co., Inc., defendant.

David M. MacDonald, McCauley, MacDonald et al., Dallas, TX, Jennifer Liebhauser, Sudie Thompson, McCauley MacDonald & Devin, Dallas, TX, for Sigma-Aldrich Corp., defendant.

John A. Scully, Cooper & Scully, Dallas, TX, Marcos A. Adrogue, Cooper & Scully, PC, Houston, TX, for Spectrum Chemical Mfg., defendant.

Michael R. Klatt, Randall L. Christian, Susan E. Burnett, Clark, Thomas & Winters, Austin, TX, Daniel J. Thomasch, Orrick, Herrington & Sutcliffe, L.L.P., New York, NY, for Wyeth, defendant.

***ORDER***

SPARKS, District Judge.

**\*\*1** BE IT REMEMBERED on the 16th day of August 2002 the Court called the above-styled cause for hearing, and the parties appeared through counsel of record. Before the Court are the Vaccine Manufacturers' 12(b) Motion to Dismiss and Alternative Motion to Stay [# 8], Plaintiffs' response in opposition thereto [# 16] and the Vaccine Manufacturers' reply [# 22]; Dow Chemical Company's Motion to Dismiss and Motion for Summary Judgment [# 41]; Spectrum Laboratory Product, Inc's Motion to Dismiss [# 10];

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Sigma-Aldrich Corporation's Motion to Dismiss [# 3] and memorandum in support thereof [# 30] and Plaintiffs' response in opposition thereto [# 14]; Sigma-Aldrich's Alternative Motion to Stay [# 31], and Eli Lilly's Amended Motion to Dismiss [# 49] and Plaintiffs' response [# 15]. Having considered the motions and responses, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

**Factual and Procedural Background**

The plaintiffs, Kevin Liu and Mache Liu, are Texas residents and the parents of Nicholas Liu, who is approximately four **\*765** years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear in this lawsuit as individuals and as next friend of Nicholas Liu. *Id.* at ¶ 5. The plaintiffs contend their son suffered neurological damage when he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him during the first two years of his life. *Id.* at ¶¶ 24-26. Nicholas received the vaccines between May 20, 1998 and July 23, 1999. *Id.* at ¶ 24.

On May 30, 2002, the plaintiffs filed this lawsuit in the 353rd Judicial District Court of Travis County, Texas. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *See* First Amended Petition. As an alternative theory of liability and causation, the plaintiffs allege Merck & Co., Inc's Measles, Mumps & Rubella ("MMR") vaccine caused their injuries. *Id.* at ¶ 72. The plaintiffs seek compensatory damages for expenditures necessitated by Nicholas Liu's injuries, Nicholas' pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress, the parents' loss of consortium, and the plaintiffs' lost services. *Id.* at 17. Defendant Aventis Pasteur Inc., having obtained consent of all other served defendants, [FN1] removed the case to this Court on June 21, 2002 on the basis of diversity and federal question jurisdiction. *See* Notice of Removal [# 1].

> FN1. The record does not include a consent form signed by defendant Taylor Medical. However, the record does not establish Taylor Medical was ever served,

and it has not filed an answer.

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Defendants Spectrum Laboratory Products, Inc. ("Spectrum") has filed a motion to dismiss on the same basis. Defendants Eli Lilly and Company ("Eli Lilly"), Dow Chemical Company ("Dow"), Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. have filed motions to dismiss and for summary judgment arguing they did not manufacture the vaccines or thimerosal that caused Nicholas Liu's injuries and, therefore, cannot be held liable.

**Analysis**
**I. The Vaccine Act's Requirements**

**\*\*2** [1] The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R.Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against **\*766** vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. §

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

219 F.Supp.2d 762
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

Page 4

300aa- 11(a)(2)(A); *see also Shalala,* 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa- 12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa- 11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Nicholas Liu's injuries are not vaccine-related. The Vaccine Act defines a "vaccine- related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Nicholas Liu's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth--an "adulterant ... intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). [FN2] The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

> FN2. The plaintiffs alternative theory of liability and causation, that Merck's Measles, Mumps and Rubella ("MMR") vaccine caused Nicholas Liu's injuries, does not involve thimerosal and is blatantly a vaccine- related claim that must first be filed in Vaccine Court.

[2] The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. [FN3] On the contrary, it appears every federal court to have ruled on the issue has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al.,* 208 F.Supp.2d 711 (S.D.Tex.2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D.Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203 F.Supp.2d 748 (S.D.Tex.2002) (same).

Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines. [FN4] Indeed, the HHS's determination that thimerosal is a component of vaccines, [FN5] not an adulterant, comports with common sense, since at *767 the time Nicholas Liu received the vaccines it was impossible to get the vaccines without thimerosal.

> FN3. The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B. As the plaintiffs note, this order was later withdrawn.

> FN4. While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, the HHS's official position holds persuasive authority.

> FN5. The HHS regulations for general biological products standards, it includes "preservatives" in the category of "constituent materials," indicating its view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

**3 [3] Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines or the MMR vaccination, or a combination of the two, caused neurodevelopmental disorders such as autism. *See* Vaccine

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Manufacturers' Reply, Ex. 1 ("Autism General Order # 1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins v. American Home Prod. Corp.,* Cause No. 3:01-CV-979LN (S.D.Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order # 1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Nicholas Liu's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Nicholas Liu without prejudice to refiling after they have exhausted the requirements under the Vaccine Act.

## II. Claims against Non-Vaccine-Manufacturers

Eli Lilly and Dow move to dismiss the plaintiffs' claims against them or, in the alternative, for summary judgment because they did not manufacture or distribute the thimerosal or vaccines that allegedly caused Nicholas Liu's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Affidavit of Scott Fishman [# 9], at 1-2. Dow states it has not manufactured vaccines since 1978 and its licenses to manufacture vaccines were revoked by that time. *See* Dow's Motion to Dismiss, at 3-4. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. also move to dismiss or, in the alternative, to stay, claiming they did not manufacture the vaccines or thimerosal at issue in this case.

[4] These defendants ask this Court to enter a no-liability judgment in their favor despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they follow the exhaustion requirements of the Vaccine Act.

The plaintiffs raise many of the same claims against these defendants as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of some defendants' substantive defenses would require a period of discovery allowing the plaintiffs to investigate the defendants' contentions. The Court will not allow the plaintiffs to conduct discovery on some defendants during the pendency of the minor's claims under the Vaccine Act against other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs **768** have complied with the Vaccine Act. *See* H.R.Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs--including attorneys' fees and court payments--are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Nicholas Liu's claims against all defendants rather than allow discovery on some defendants.

## III. Kevin Liu and Mache Liu's Individual Claims

**4** [5] Kevin and Mache Liu bring claims individually and as next friend of Nicholas Liu. Individually, they seek recovery for all past and future costs associated with Nicholas' injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Kevin and Mache Liu can only bring their claims as next friend of Nicholas, not their individual claims, in the Court of Federal Claims.

[6][7] The defendants move to dismiss Kevin and Mache Liu's individual claims for damages because they are derivative of Nicholas Liu's claims, are

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

219 F.Supp.2d 762                                                                                                    Page 6
(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))

duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Nicholas' claims in the Court of Federal Claims. [FN6] Tex. Civ. Prac. & Rem. Code § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir.2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir.1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Kevin and Mache Liu's individual causes of action against all defendants until Nicholas' claims have been administered in the Court of Federal Claims under the Vaccine Act.

> FN6. The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* Tex. Civ. Prac. & Rem. Code § 16.001.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [# 8] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [# 8] is *769

GRANTED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [# 3] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [# 31] is GRANTED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

**5 IT IS FURTHER ORDERED that Spectrum Laboratories' Motion to Dismiss [# 10] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss [# 49] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that The Dow Chemical Company's Motion to Dismiss [# 41] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that the Defendants' Unopposed Motion for Stay of Scheduling Order, Initial Disclosures, and Discovery Pending Resolution of Defendants' Motion to Dismiss [# 40] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Nicholas Liu against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on April 23, 2003 informing the Court of the status of their petition, if any, filed on behalf of Nicholas Liu in the Court of Federal Claims.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

219 F.Supp.2d 762
**(Cite as: 219 F.Supp.2d 762, 2002 WL 31007709 (W.D.Tex.))**

Page 7

219   F.Supp.2d   762,   2002   WL   31007709
(W.D.Tex.)

**END OF DOCUMENT**

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

FILED
· HST·DIVISION

2002 SP -9 AM 9:54

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
                    DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

RON RUSSAK and KARLA RUSSAK,
Individually and as Next Friend of JORDAN
RUSSAK,

**Plaintiffs,**

-vs-                                           Case No. A-02-CA-480-SS

AVENTIS PASTEUR, INC., Individually and as
Successor-in-Interest to Connaught Laboratories,
Inc., Pasteur Merieux, and Pasteur Merieux
Connaught; *et al.,*

**Defendants.**

## O R D E R

BE IT REMEMBERED on the $7\underline{th}$ day of September 2002 the Court reviewed the file in

the above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#5] and

Plaintiffs' response thereto [#15]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s

Motion to Dismiss [#3] and Plaintiffs' response thereto [#8]; the Vaccine Manufacturers' 12(b)

Motion to Dismiss and Alternative Motion to Stay [#6] and Plaintiffs' response [attached to #24];

and Defendant Austin Energy's Motion to Dismiss [#9], which was filed on August 13, 2002 and

to which the Plaintiffs have not responded. Having considered the motions, responses, the case file

as a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Ron Russak and Karla Russak, are Texas residents and the parents of Jordan

Russak, who is approximately five years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear

32

in this lawsuit as individuals and as next friend of Jordan Russak. *Id.* at ¶ 5. The plaintiffs contend

their son suffered and continues to suffer neurological damage because he was poisoned by mercury

contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 24-26. Jordan

received the vaccines between October 2, 1996 and August 2, 2001. *Id.* at ¶ 24. The plaintiffs

further contend Jordan's neurological damage was exacerbated by Austin Energy's emission of air

toxins such as mercury from fossil-fuel-burning utilities near his residence. *Id.* at ¶¶ 33-34.

On May 30, 2002, the plaintiffs filed this lawsuit in the 53rd Judicial District Court of Travis

County, Texas, Cause No. GN201793. The plaintiffs raise causes of actions for strict liability;

negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products;

gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of

thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil

fuels. *See* First Amended Petition. The plaintiffs seek compensatory damages for expenditures

necessitated by Jordan's injuries, Ron and Karla Russak's lost wages and income, Ron and Karla

Russak's emotional distress and loss of consortium, and the lost services Ron and Karla Russak

could have provided to each other and Jordan could have provided to them. *Id.* at 19. The plaintiffs

also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as

American Home Products Corporation, removed the case to this Court on July 29, 2002 after having

obtained consent of all other served defendants except Austin Energy.[1] *See* Notice of Removal [#1].

---

[1] In its motion to dismiss, Austin Energy states it did not learn of the removal until after the fact. In the notice of removal, Wyeth argues it did not need Austin Energy's consent because the plaintiffs' addition of Austin Energy as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction. The removing party bears the burden of proving fraudulent joinder. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990). The plaintiffs' claims against Austin Energy are based on different facts than their vaccine-related claims against the other defendants. However, because this Court has no jurisdiction over Jordan

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Jordan Russak's injuries and, therefore, cannot be held liable. Austin Energy moves to dismiss for lack of subject matter jurisdiction and failure to state a claim.

### Analysis

**I.     The Vaccine Act's Requirements**

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of

---

Russak's primary causes of action, the plaintiffs have not moved to remand the case for improper removal, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Austin Energy the same as the other defendants. This ruling is without prejudice to any party raising the issue after the stay in the case is lifted.

recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Jordan Russak's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Jordan's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

-4-

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal.[2]  On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203 F.Supp.2d 748 (S.D. Tex. 2002) (same).   Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[3]  Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an adulterant, comports with common sense, since at the time Jordan Russak received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases.  The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental

---

[2] The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B.  As the plaintiffs note, this order was later withdrawn.

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837 (1984).  However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants.  21 C.F.R. § 610.15.

-5-

disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Jordan Russak's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Jordan Russak without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

**II.      Claims against Non-Vaccine-Manufacturers**

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines that allegedly caused Jordan Russak's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Eli Lilly's Motion to Dismiss [#5], Ex. A ("Fishman Affidavit"), at 1-2.

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they

follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Jordan Russak's claims against all defendants rather than allow discovery on Eli Lilly.

**III.    Ron Russak and Karla Russak's Individual Claims**

Ron and Karla Russak bring claims individually and as next friend of Jordan Russak. Individually, they seek recovery for all past and future costs associated with Jordan's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42

-7-

U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A).  Thus, Ron and Karla Russak can only bring their claims as next friend of Jordan, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Ron and Karla Russak's individual claims for damages because they are derivative of Jordan's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law.  However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Jordan's claims in the Court of Federal Claims.[5]  TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases).  The Court has discretion to stay proceedings.  *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000).  Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication.  *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.").  The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims.  Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum.  Accordingly, the Court will stay all proceedings in Ron and Karla Russak's individual causes of action against all defendants until Jordan's claims have been administered in the Court of Federal Claims under the Vaccine Act.

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims.  The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court.  42 U.S.C. § 300aa-16(c).  For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority.  *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#9] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion for Leave to File its Amended Motion to Dismiss [#28] is DENIED;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#5] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Jordan Russak against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on **May 9, 2003** informing the Court of the status of their petition, if any, filed on behalf of Jordan Russak in the Court of Federal Claims.

SIGNED this the _7th_ day of September 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**
AUSTIN DIVISION

2002 OC -8 AM 11: 52

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
                    DEPUTY

PETE CARABINE and HEIDI CARABINE,
Individually and as Next Friend of Collin
Carabine,

Plaintiffs,

-vs-

Case No. A-02-CA-501-SS

AVENTIS PASTEUR, INC., et al.,
Defendants.

## O R D E R

BE IT REMEMBERED on the ___8th___ day of October 2002 the Court reviewed the file in the above-styled cause, specifically Defendant Eli Lilly & Company's Amended Motion to Dismiss [#30], Plaintiffs' Response [#28] and Defendant's reply [#32]; Defendants Sigma-Aldrich Corporation's and Sigma-Aldrich, Inc's Motion to Dismiss [#11] and Plaintiffs' Response [#21]; Defendants' Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Alternative Motion to Stay Proceedings [#23]; Vaccine Defendants' Motion to Dismiss or Alternatively to Stay Proceedings [#25] and Plaintiffs' Response [#33]; and Defendant Reliant Energy's Motion for Summary Judgment [#31]. Having considered the motions and responses, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Pete Carabine and Heidi Carabine, are Texas residents and the parents of Collin Carabine, who is approximately six years old. *See* Petition, at ¶¶ 5; 25. They appear in this lawsuit as individuals and as next friend of Collin Carabine. *Id.* at ¶ 5. The plaintiffs contend their

*file*

son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 25-27. Collin received the vaccines between November 6, 1995 and October 25, 1999.[1] *Id.* at ¶ 25. The plaintiffs further contend Collin's neurological damage was exacerbated by Defendant Houston Lighting and Power Company's ("Reliant") emission of air toxins such as mercury from power plants that burn fossil fuels near his residence. *Id.* at ¶¶ 31-38.

On July 3, 2002, the plaintiffs filed this lawsuit in the 201st Judicial District Court of Travis County, Texas, Cause No. GN202160. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil fuels. *See* Petition. The plaintiffs seek compensatory damages for expenditures necessitated by Collin's injuries, Collin's pain and suffering, Pete and Heidi Carabine's lost wages and income, Pete and Heidi Carabine's emotional distress and loss of consortium, and the lost services Pete and Heidi Carabine could have provided to each other and Collin could have provided to them. *Id.* at 20. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, ("SmithKline") removed the case to this Court on

---

[1] The petition states Collin received the vaccines through October 25, "199." Because this typographical error prevents the Court from discerning the relevant date, the Court uses the year 1999 merely as a potential correct date.

August 9, 2002 after having obtained consent of all other served defendants.[2]  *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline, and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A).  Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Collin Carabine's injuries and, therefore, cannot be held liable.  Reliant moves for summary judgment on the merits.

## Analysis

### I.    The Vaccine Act's Requirements

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims.  Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis.  The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-

---

[2] Defendant Reliant consented to the removal.  Reliant appears to be a Texas corporation, which would defeat diversity jurisdiction.  In the notice of removal, SmithKline argues the plaintiffs' addition of Reliant as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction.  The removing party bears the burden of proving fraudulent joinder.  *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990).  The plaintiffs' claims against Reliant are based on different facts than their vaccine-related claims against the other defendants.  However, because this Court has no jurisdiction over Collin Carabine's primary causes of action, the plaintiffs have not moved to remand, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Reliant the same as the other defendants.  This ruling is without prejudice to any party raising the issue or challenging this Court's jurisdiction after the stay in the case is lifted.

related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Collin Carabine's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Collin's injuries are not "vaccine-related" because they were caused not by the vaccines themselves

-4-

but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth–
an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms
"adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of
the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have
ruled on the issue, including this one, has held injuries resulting from thimerosal contained in
vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home
Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal
are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause
No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203
F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human
Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of
vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an
adulterant, comports with common sense, since at the time Collin received the vaccines it was
impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act
claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been

---

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has
taken the position in court papers, it is not a regulation or other agency action entitled to judicial
deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,*
467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in
the category of "constituent materials," indicating the agency's view that preservatives are
components of vaccines, not adulterants. 21 C.F.R. § 610.15.

inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Collin Carabine's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Collin Carabine without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

## II.    Claims against Non-Vaccine-Manufacturers

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines that allegedly caused Collin Carabine's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Eli Lilly's Amended Motion to Dismiss [#30], Ex. A ("Fishman Affidavit"), at 1.

-6-

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the Vaccine Manufacturers until they follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available.").

The same reasoning holds true for Reliant's motion for summary judgment, to which the plaintiffs have not responded. Reliant contends it owed no duty to Collin preventing it from exposing him to normal power plant emissions because the risk of mercury poisoning to Collin was not foreseeable. *See* Reliant's Motion for Summary Judgment [#31], at 3-6. Reliant also argues the plaintiffs cannot establish Reliant's power plants caused Collin's injuries because the power plant emissions contain very low levels of mercury and no scientific studies have linked autism to power plant emissions. *Id.* at 7-10. These arguments on the merits obviously involve complicated factual determinations that this Court cannot make before allowing the plaintiffs a period of discovery

(despite the plaintiffs' failure to respond to Reliant's motion which, under the Local Rules, entitles the Court to grant the motion as unopposed). Additionally, the Court will not rule on the merits of the plaintiffs' claims against Reliant before determining if the claims are properly before this Court as an appendage to this cause of action. Accordingly, the Court will dismiss Collin Carabine's claims against all defendants rather than allow discovery on Eli Lilly and Reliant.

**III.    Pete and Heidi Carabine's Individual Claims**

Pete and Heidi Carabine bring claims individually and as next friend of Collin Carabine. Individually, they seek recovery for all past and future costs associated with Collin's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 20. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Pete and Heidi Carabine can only bring their claims as next friend of Collin, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Pete and Heidi Carabine's individual claims for damages because they are derivative of Collin's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Collin's claims in the Court of Federal Claims.[5] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court.

-8-

limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Pete and Heidi Carabine's individual causes of action against all defendants until Collin's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that Eli Lilly and Company's Motion to Dismiss [#4] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#25] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#25] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

---

42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

-9-

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#11] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#23] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss [#30] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and DENIED IN PART as to Pete and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Defendant Reliant Energy, Inc's Motion for Summary Judgment [#31] is DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Collin Carabine against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on **June 7, 2003** informing the Court of the status of their petition, if any, filed on behalf of Collin Carabine in the Court of Federal Claims.

SIGNED this the _8th_ day of October 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION

2003 JA -6  PM 4: 07

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
DEPUTY

LESLIE YOUNG and LAURIE YOUNG,
Individually and Next Friend of Leslie Martin
Young,

**Plaintiffs,**

-vs-

Case No. A-02-CA-734-SS

AVENTIS PASTEUR, INC., et al,

**Defendants.**

## O R D E R

BE IT REMEMBERED on the 6ᵗʰ day of January 2003, the Court reviewed the file in the above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#14] and Plaintiffs' response thereto [#20]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Motion to Dismiss [#4] and Alternative Motion to Stay [#5] and Plaintiffs' response thereto [#9]; the Vaccine Manufacturers' Motion to Dismiss or Alternatively to Stay [#6], Plaintiffs' response [#13] and Defendants' reply [#19]; Defendant Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] and Plaintiffs' response thereto [#10]; and Defendant The Dow Chemical Company's Rule 12(b)(6) Motion to Dismiss and for Summary Judgment [#11] and Motion to Dismiss or, Alternatively, to Stay [#12] and Plaintiffs' Response thereto [#18]. Having considered the motions, responses, the case file as a whole and the applicable law, the Court enters the following opinion and orders.



### Factual and Procedural Background

The plaintiffs, Leslie and Laurie Young, are Texas residents and the parents of Leslie Martin Young, who is approximately four years old. *See* Petition, at ¶¶ 5, 23. They appear in this lawsuit as individuals and as next friend of Leslie Martin Young. *Id.* at ¶ 5. The plaintiffs contend their son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 23-25. Leslie received the vaccines between September 15, 1998 and approximately September 10, 1999. *Id.* at ¶ 23.

On October 22, 2002, the plaintiffs filed this lawsuit in the 345ᵗʰ Judicial District Court of Travis County, Texas, Cause No. GN203822. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *Id.* at ¶¶ 29-69. The plaintiffs seek compensatory damages for expenditures necessitated by Leslie Martin Young's injuries, Leslie Martin Young's pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress and loss of consortium, and the lost services the plaintiffs could have provided to each other. *Id.* at 17. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on November 15, 2002 after having obtained consent of all other defendants. *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C.

§ 300aa-11(a)(2)(A).    Defendants Sigma-Aldrich Corporation, Sigma-Aldrich, Inc., Spectrum Laboratory Products, Inc. ("Spectrum") and Eli Lilly and Company ("Eli Lilly") move to dismiss or alternatively to stay on the same basis. The Dow Chemical Company ("Dow") moves to dismiss and for summary judgment arguing it did not manufacture or sell the vaccines or thimerosal that caused Leslie Martin Young's injuries and, therefore, cannot be held liable. Dow has also filed a motion to dismiss or, alternatively, to stay based on the plaintiffs' failure to raise their claims first in the Court of Federal Claims.

**Analysis**

### I.    The Vaccine Act's Requirements

The defendants move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal

-3-

Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Leslie Martin Young's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Leslie's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203

-4-

F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[1] Indeed, the HHS's determination that thimerosal is a component of vaccines,[2] not an adulterant, comports with common sense, since at the time Leslie Martin Young received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Motion to Dismiss, Ex. 3 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any

---

[1] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[2] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Leslie Martin Young's alleged injuries are vaccine-related.[3] Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Leslie Martin Young without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

**II.    Claims against Non-Vaccine-Manufacturers**

Dow moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted and moves for summary judgment because it did not manufacture or sell the thimerosal or vaccines that allegedly caused Leslie Martin Young's injuries. Dow contends it has not had a license to manufacture vaccines since 1978.

Dow asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until the plaintiffs follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise the same claims against Dow as against the vaccine manufacturer defendants. To rule on the merits of Dow's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. In fact, the plaintiffs have moved for a continuance to allow them to conduct discovery

---

[3] Eli Lilly also relies on the Homeland Security Act of 2002 Congress recently passed, which amends the definition of "manufacturer" in the Vaccine Act to include manufacturers of "any component or ingredient" of any vaccine, and the definition of "vaccine" to include "a preparation or suspension containing an attenuated or inactive microorganism or subunit thereof or toxin" and "all components and ingredients listed in the vaccines's [sic] product license application and product label." H.R. 5005 (attached as Ex. D to Eli Lilly's Motion to Dismiss). The Homeland Security Act states it applies to all actions pending on the date of its adoption on November 19, 2002. Because these amendments are quite new and the Court has relied in its previous thimerosal rulings on more established authorities, the Court need not interpret these amendments in this Order. However, the Court does not preclude the defendants from raising the Homeland Security Act in future motions.

before the Court rules on the summary judgment motion. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Leslie Martin Young's claims against all defendants rather than allow discovery on Dow.

**III.    Leslie Young and Laurie Young's Individual Claims**

Leslie and Laurie Young bring claims individually and as next friend of Leslie Martin Young. Individually, they seek recovery for all past and future costs associated with their son's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Leslie and Laurie Young can only bring their claims as next friend of Leslie, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Leslie and Laurie Young's individual claims for damages because they are derivative of Leslie's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents'

-7-

claims, their statutes of limitations could expire while the parents are representing their son's claims in the Court of Federal Claims.[4] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Leslie and Laurie Young's individual causes of action against all defendants until their son's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and

---

[4] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

their Alternative Motion to Stay [#6] is GRANTED IN PART as to Leslie and Laurie Young's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#4] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#5] is GRANTED IN PART as to Leslie and Laurie Young's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#14] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and DENIED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and DENIED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Defendant The Dow Chemical Company's Motion to Dismiss [#12] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and its Alternative Motion to Stay [#12] is GRANTED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Defendant The Dow Chemical Company's 12(b)(6) Motion to Dismiss and Motion for Summary Judgment [#11] are DENIED without prejudice to refiling;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Continuance [#18] is DENIED;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation's Motion for Leave to File Supplemental Memorandum in Support of Their Motion to Dismiss [#16] is GRANTED;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Leslie Martin Young against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on September 8, 2003 informing the Court of the status of their petition, if any, filed on behalf of Leslie Martin Young in the Court of Federal Claims.

SIGNED this the _6_ day of January 2003.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION

2003 MAR 10  AM 9: 48

CLERK U.S. DISTRICT COURT
U.S. CLERK OFFICE

BY: _____
DEPUTY

DARON SWAFFORD AND TINA SWAFFORD,
Individually and as Next Friend of JOEY
SWAFFORD,

        **Plaintiffs,**

-vs-

        Case No.  A-03-CA-055-SS

AVENTIS PASTEUR, INC., et al.,

        **Defendants.**

---

## ORDER

BE IT REMEMBERED on the _7th_ day of March 2003 the Court reviewed the file in the

above-styled cause, specifically Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Motion to

Dismiss [#4] and alternative Motion to Stay [#5], the response [#21] and reply [#30]; the Vaccine

Defendants' Motion to Dismiss or Alternatively to Stay [#6] (to which no response has been filed);

Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] and the response thereto [#22]; and

Eli Lilly and Company's Motion to Dismiss and/or to Stay [#23] and supplemental memorandum

thereto [#24] and Plaintiffs' response [#26]. Having considered the motions, responses, case file as

a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Daron and Tina Swafford, are Texas residents and the parents of Joey

Swafford, who is approximately three years old. *See* Petition, at ¶¶ 5, 23.  They appear in this

lawsuit as individuals and as next friend of Joey Swafford. *Id.* at ¶ 5. The plaintiffs contend their

son suffered and continues to suffer neurological damage because he was poisoned by mercury

34

contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 23-25. Joey received the vaccines between September 1, 1999 and approximately January 5, 2001. *Id.* at ¶ 5.

On December 31, 2002, the plaintiffs filed this lawsuit in the 345th Judicial District Court of Travis County, Texas, Cause No. GN204657. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *Id.* at ¶¶ 29-69. The plaintiffs seek compensatory damages for expenditures necessitated by Joey Swafford's injuries, Joey Swafford's pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress and loss of consortium, and the lost services the plaintiffs could have provided to each other. *Id.* at 16. The plaintiffs also seek punitive damages for certain causes of action. *Id.* at 17. Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on January 30, 2003 after having obtained consent of all other defendants. *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Defendants Sigma-Aldrich Corporation, Sigma-Aldrich, Inc., Spectrum Laboratory Products, Inc. ("Spectrum") and Eli Lilly and Company ("Eli Lilly") move to dismiss or alternatively to stay on the same basis.

-2-

### Analysis

**I.     The Vaccine Act's Requirements**

The defendants move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Joey Swafford's injuries are not vaccine-related.

-3-

The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Joey's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act. Similarly, the plaintiffs argue their claims are not against "vaccine administrators" or "vaccine manufacturers" as defined under the Vaccine Act, because the defendants are manufacturers, distributors, designers and/or promoters of thimerosal itself, not a vaccine. 42 U.S.C. § 300aa-11(a)(2)(A).

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of

-4-

vaccines.[1] Indeed, the HHS's determination that thimerosal is a component of vaccines,[2] not an adulterant, comports with common sense, since at the time Joey Swafford received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Motion to Dismiss, Ex. 3 ("Autism General Order #1"), at 1-2; Ex. 1 ("Ruling on Jurisdiction"). The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *See* Autism General Order #1. While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court

---

[1] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[2] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

-5-

holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Joey Swafford's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Joey Swafford without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.[3]

## II.    Daron Swafford and Tina Swafford's Individual Claims

Daron and Tina Swafford bring claims individually and as next friend of their son, Joey Swafford. Individually, they seek recovery for all past and future costs associated with their son's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 16. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Daron and Tina Swafford can only bring their claims as next friend of Joey, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Daron and Tina Swafford's individual claims for damages because they are derivative of Joey's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while they are representing their son's claims in the Court

---

[3] To the extent the plaintiffs sued defendants that allegedly did not manufacture the thimerosal at issue in this case, the Court dismisses their claims on behalf of Joey Swafford against those defendants as well in the interest of judicial economy.

of Federal Claims.[4] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Daron and Tina Swafford's individual causes of action against all defendants until their son's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

---

[4] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#4] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#5] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#23] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and its Alternative Motion to Stay [#23] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and DENIED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Joey Swafford against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on November 7, 2003 informing the Court of the status of their petition, if any, filed on behalf of Joey Swafford in the Court of Federal Claims.

SIGNED this the ___7th___ day of March 2003.

_(signature)_

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-8-

E&?
1-15-03

IN THE UNITED STATES DISTRICT COURT

FILED - CLERK
U.S. DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

2003 JAN 15  AM 8: 04
TX EASTERN - LUFKIN

LUFKIN DIVISION          BY_____ DH

KIRK BOTTER and DARLA BOTTER §
Individually and as Next Friend of
CODY WYATT BOTTER            §

VS.                          § CIVIL ACTION NO. 9:02 CV 181

AVENTIS PASTEUR, INC.,       §
Individually and as Successor-in-Interest
to CONNAUGHT LABORATORIES,   §
INC., et. al.

## ORDER

Plaintiffs Kirk Botter and Darla Botter bring this suit, individually and as legal

representative of their minor child, Cody Wyatt Botter, pursuant to Texas state law,

against Defendants Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories

f/d/b/a Pasteur Merieux Connaught; Sigma Aldrich, Inc. and Sigma Aldrich

Corporation ("Sigma Inc."); the Dow Chemical Company ("Dow"); Eli Lilly and

Company ("Eli Lilly"); GDL International, Inc. ("GDL"); GlaxoSmithKline,

Individually and as Successor-in-Interest to  Smith Kline Beecham Corporation

("Smith Kline"); Merck and Company, Inc. ("Merck");  EM Industries, Inc. ("EM");[1]

Taylor Medical;  and Wyeth ("Wyeth") d/b/a Wyeth, Inc., Wyeth Laboratories,

---

[1]Plaintiffs have dismissed their claims against EM Industries, Inc.



1

Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines, and Lederle Laboratories, and f/k/a American Home Products, Corp. Plaintiffs' complaint alleges the following causes of action: strict liability, negligence, gross negligence, fraud & conspiracy, and negligence in marketing. In their prayer for relief, the parents seek damages for loss of consortium of their child, Cody Wyatt.

Before the Court are the Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. # 12) brought by Aventis Pasteur, Merck, Wyeth, and Smith Kline; Eli Lilly and Co.'s Motion to Dismiss or Stay Proceedings (doc. # 4) and its Amended Motion to Dismiss (doc. # 31); Sigma-Aldrich Inc.'s Motion to Dismiss (doc. # 6), its Alternative Motion to Stay Proceedings (doc. #33), its Supplemental Motion to Dismiss (doc. # 34), and its second Supplemental Motion to Dismiss (doc. # 60); Aventis Pasteur Inc.'s Motion to Dismiss (doc. # 12); and Dow Chemical's Motion to Dismiss or Stay Proceedings and for Summary Judgment (docs. # 38 and # 39). After due consideration of the briefing and oral arguments of the parties and the relevant law, the Court finds that the motions are well taken in part and should be GRANTED IN PART.

## BACKGROUND

Plaintiffs claim their son, Cody Wyatt, was exposed to harmful levels of mercury received through injections of routine childhood vaccinations administered

2

to him by his pediatrician during the first eighteen months of his life, from April 16, 1998 through December 10, 1999. Plaintiffs allege that Cody now suffers, and in the future will continue to suffer, the toxic neurological effects of mercury poisoning as a result of certain Defendants'[2] negligent use of thimerosal preservative, containing mercury, in their vaccines. The Complaint, filed originally in the District Court of Angelina County, Texas, states that in the 1980's, the FDA proposed a regulation requiring the removal of thimerosal from all over-the-counter products and that in July of 1999 the American Academy of Pediatrics advised its members to use thimerosal-free vaccines due to concern regarding mercury poisoning.

Defendants removed the case from Angelina County claiming this Court has diversity and federal question jurisdiction under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1, *et seq.*

Defendants assert the affirmative defense that the National Childhood Vaccine Injury Act ("The Act") prohibits a civil suit against a vaccine manufacturer or administrator for damages greater than $1,000 if the damages arise from a vaccine related injury or death and urge the Court to dismiss the case because Plaintiffs have not filed first with the U.S. Court of Federal Claims ("Vaccine Court") as required by the Act. In the alternative, Defendants request that we stay proceedings pending the

---

[2]The Complaint does not specify which of the Defendants to which it refers.

3

outcome of the suit before the Vaccine Court.[3]

## DISCUSSION

<u>Claims Against Vaccine Manufacturers:</u>

The National Childhood Vaccine Injury Act of 1986 sets forth a scheme for

compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11

(1988 ed., as amended 2002). Congress recognized that the "[v]accination of

children against deadly, disabling, but preventable infectious diseases has been one

of the most spectacularly effective public health initiatives this country has ever

undertaken. Use of vaccines has prevented thousands of children's deaths each year

and has substantially reduced the effects resulting from disease." H.R. Rep. No.

99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. However, while

most children enjoy measurable benefit from immunization programs, "a small but

significant number of have been gravely injured." *Knudsen v. Secretary of HHS,*

35 F.3d 543, 549 (Fed. Cir. 1994) (quoting H.R.Rep. No. 99-908, at 3, *reprinted in*

1986 U.S.C.C.A.N. 6344).

Congress, therefore, enacted the Act to streamline the process of seeking

compensation for vaccine-related injuries and to avoid the inconsistency, expense,

and unpredictability of the tort system. *Shalala v. Whitecotton,* 514 U.S. 268, 269,

---

[3]While some Defendants state additional grounds for their motions to dismiss, pending motions use the Vaccine Act provisions as a main basis for their motions to dismiss or to stay.

4

115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). The program established by the Act is designed to "ensure that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345- 6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby ... keep[s] manufacturers in the market." *Schafer v. Am. Cyanamid Co.*, 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires vaccine-related claims to be initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. *See Whitecotton*, 514 U.S. at 270, 115 S.Ct. at 1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; *Haggerty v. Wyeth Ayerst Pharm.*, 79 F.Supp.2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[4] *See* 42 U.S.C.

---

[4]A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

§ 300aa-11(2)(A); *Whitecotton,* 514 U.S. at 270, 115 S.Ct. at 1478 (explaining that

a claimant alleging an injury after the Vaccine Act's effective date "must exhaust

the Act's procedures ...before filing any de novo civil action in state or federal

court."). If a claimant seeks compensation in a state or federal court for

vaccine-related injuries prior to exhausting his or her remedies under the Vaccine

Act, the Court must dismiss the action. *See* 42 U.S.C. § 300aa-11(a)(2)(B). Simply

put, individuals who qualify as Program claimants must file petitions in the

Vaccine Court in order to pursue any vaccine-related claims at all.[5] If an individual

who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program

award, that individual may reject the award and pursue a traditional tort action in

any forum[6]. *See* 42 U.S.C. § 300aa-21(a).

---

[5] De minimis claims for less than $1,000, however, may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(2)(A). The Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages be filed under the Program. *Id.*

[6] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith and that a reasonable basis for asserting the claim existed. See 42 U.S.C. § 300aa-15(c). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, see 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). See 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. See 42 U.S.C. § 300aa-23(d).

6

At the time of institution of this lawsuit the Plaintiffs had not filed a petition in the Court of Federal Claims. Plaintiffs' initial position was that they were not required to file originally in the Vaccine Court because the Vaccine Act does not require such a filing when the injury involved is not "vaccine-related." Plaintiffs have since informed the Court that they have filed a claim before the Vaccine Court in mid-December, 2002.

The term vaccine-related injury "does not include an illness, injury, condition or death associated with an adulterant or contaminant intentionally added to a vaccine." 42 U.S.C. § 300aa-33(5). Plaintiffs asserted that Cody's injuries were cause by thimerosal, which they claim is an "adulterant or contaminant" intentionally added to a vaccine and that, therefore, this lawsuit does not involve a "vaccine- related" injury as defined by the Vaccine Act. The Defendants, however, contend that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines. In the face of overwhelming authority holding that thimerosal is a constituent material of the vaccines in question and is not an

---

7

adulterant or contaminant, Plaintiffs have all but abandoned their position.[7] The

following cases have found   injuries from thimerosal are "vaccine-related" under

the Vaccine Act: *Liu v. Aventis Pasteur,* 219 F.Supp.2d 762 (W.D.Tex. 2002);

*Owens v. Am. Home Prods. Corp.,* 203 F.Supp.2d 748 (S.D.Tex. 2002); *McDonald*

*v. Abbott Labs,* 02-77 (S.D.Miss. Aug. 1, 2002); *Collins v. Am. Home Prods.*

*Corp.,* 01-979 (S.D.Miss. Aug. 1, 2002); *Stewart v. Am. Home Prods. Corp.,*

02-427 (S.D.Miss. Aug. 1, 2002);  *Strauss v. American Home Prod. Corp.,* 208

F.Supp.2d 711 (S.D.Tex. 2002); *Blackmon v. American Home Prod. Corp.,* Cause

No. G-02- 179 (S.D.Tex. May 8, 2002); *O'Connell v. American Home Products*

*Corp.,* 2002 WL 31455729 (S.D. Tex. May 7, 2002); *Wax v. Aventis Pasteur Inc.,*

__ F. Supp.2d. __, 2002 WL 31444878 (E.D.N.Y. Oct. 30, 2002); *Bertrand v.*

*Aventis Pasteur Laboratories, Inc.,* 226 F.Supp.2d 1206 (D. Ariz. 2002); *Leroy v.*

*Secretary of Dept. of Health and Human Services,* 2002 WL 31730680 (Fed. Cl.

Oct. 11, 2002).

Additionally, the Department of Health and Human Services has taken the

position that thimerosal is not an adulterant or contaminant of vaccines.  See

"Statement of Interest" in *King ex rel King v. Aventis Pasteur, Inc.,* 210 F. Supp.2d

1201 (D. Or. 2002).

---

[7]See statement of Plaintiffs' counsel at the October 28, 2002 hearing held on motions,
transcript of hearing at page 24.

8

Since the institution of this lawsuit and the filing of the motions under

consideration here, Congress passed the Homeland Security Act of 2002 ("HSA"),

which was enacted on November 25, 2002. The Homeland Security Act contains

certain clarifying amendments to the Vaccine Act.  According to § 1717 of the its

provisions, the clarifying provisions became effective on the date of enactment and

govern this case.[8]

The first amendment which directly affects this case is the clarification of

the term "vaccine." This term is amended to include "all components and

ingredients listed in the vaccine's product license application and product label."

42 U.S.C. §300aa-33(7) as clarified by § 1716 of the HSA.[9]  It is clear that this

definition would include thimerosal, if it was a component or ingredient listed in

the vaccine's product application and product label. While the Court has no

_____

[8]"The amendments made by sections 1714, 1715, and 1716 shall apply to all actions or
proceedings pending on or after the date of enactment of this Act, unless a court of competent
jurisdiction has entered judgment (regardless of whether the time for appeal has expired) in such
action or proceeding disposing of the entire action or proceeding."

[9]§ 1716. CLARIFICATION OF DEFINITION OF VACCINE.

 Section 2133 of the Public Health Service Act (42 U.S.C.§ 300aa-33) is amended by adding at
the end the following:
 "(7) The term 'vaccine' means any preparation or suspension, including but not limited to a
preparation or suspension containing an attenuated or inactive microorganism or subunit thereof
or toxin, developed or administered to produce or enhance the body's immune response to a
disease or diseases and includes all components and ingredients listed in the vaccines's product
license application and product label."

9

evidence of what was listed on the product application or label, given the fact that

the FDA had apparently widely approved the use of thimerosal as a vaccine

preservative since the 1930's, and required that preservatives be added to vaccines

distributed in multi-use vials,[10] it seems logical to assume that thimerosal was

listed on either the product application or label of the vaccines used in this case.

Even if this is not the case, in light of the overwhelming case law and the

HHS's interpretation holding that thimerosal is not an "adulterant or contaminant,"

but rather, a "constituent material" of vaccines, the Court finds that the claims of

Cody Wyatt Botter against the Vaccine Manufacturers[11] concern a "vaccine related

injury" and are covered by the provisions of the Vaccine Act.

<u>Claims Against Non-Manufacturers:</u>

Because of the recent enactment of the Homeland Security Act of 2002,

Defendants Sigma-Aldrich and Eli Lilly join in the motion of the Vaccine

Manufacturers. They do so based upon the second amendment to the Vaccine Act

---

[10] *See* C.F.R. § 610.15(a) and C.F.R. § 610.15.

[11] While Plaintiffs' Complaint does not specify which of the Defendants are "Vaccine Manufacturers," the following Defendants have identified themselves as such by their motion "Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. 12)":Merck and Company, Inc. ("Merck"); Wyeth ("Wyeth") f/k/a American Home Products, Corp.;Aventis Pasteur, Inc. ("Aventis"); Smith Kline Beecham Corporation ("Smith Kline").

which clarifies the term "manufacturer."[12] This amendment shows that it is Congress' intention that the protections of the Vaccine Act cover distributors of components of vaccines. Section 1714 amends 42 U.S.C. §300aa-33(3) to define "manufacturer" to include any corporation, organization, or institution which manufactures, imports, processes, or distributes any vaccine set forth in the Vaccine Injury table, including any component or ingredient of any such vaccine.... The term "manufacture" means to manufacture, import, process or distribute a vaccine, including any component or ingredient of any such vaccine.

In addition Eli Lilly and Dow move to dismiss the Plaintiffs' claims against them, or in the alternative, for stay of the proceedings until the termination of the action before the Vaccine Court.[13] Dow also moves for summary Judgment. Both Lilly and Dow claim they did not manufacture or distribute the thimerosal or vaccines that allegedly caused Cody Botter's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and

---

[12]SEC. 1714. CLARIFICATION OF DEFINITION OF MANUFACTURER. Section 2133(3) of the Public Health Service Act (42 U.S.C. 300aa-33(3)) is amended--
(1) in the first sentence, by striking "under its label any vaccine set forth in the Vaccine Injury Table" and inserting "any vaccine set forth in the Vaccine Injury table, including any component or ingredient of any such vaccine"; and
(2) in the second sentence, by inserting "including any component or ingredient of any such vaccine" before the period.

[13]While Lilly's motion is titled a Motion to Dismiss, it is converted to a motion for summary judgment under Rule 56 by the addition of evidence beyond the pleadings. Fed. R. Civ. P. 12(c).

11

stopped distributing thimerosal by 1992. *See* Affidavit of Scott Fishman, Exhibit "A" to Lilly's motion. Dow states it has not manufactured vaccines or been licensed to do so since 1978. See Dow's Motion to Dismiss, at page 3.

Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. also move to dismiss or, in the alternative, to stay, claiming they did not manufacture the vaccines or thimerosal at issue in this case.

These Defendants ask this Court to enter a no-liability judgment in their favor despite the Court's need to dismiss or stay the Plaintiffs' claims against the vaccine manufacturers until the Plaintiffs follow the exhaustion requirements of the Vaccine Act. In the alternative, these Defendants seek a dismissal of the claims against them or a stay of proceedings under the same posture as the vaccine manufacturers. Plaintiffs raise many of the same claims against these Defendants as against the vaccine manufacturer Defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy, and loss of consortium. To rule on the merits of some Defendants' substantive defenses would require a period of discovery allowing the Plaintiffs to investigate the Defendants' contentions. To allow the Plaintiffs to conduct discovery on some Defendants during the pendency of the minor's claims under the Vaccine Act against other

12

Defendants is inconsistent with Congress's goal of minimizing litigation costs. Therefore, the Court will stay any discovery until the termination of Plaintiffs' action before the Vaccine Court rather than allow discovery on some Defendants.

Kirk and Darla Botters' Individual Claims:

Kirk and Darla Botter bring claims individually and as next friend of their son. Individually, they seek recovery for all past and future costs associated with Cody's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled," may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Kirk and Darla Botter can only bring their claims as next friend of Cody, not their individual claims, in the Court of Federal Claims.

The Defendants move to dismiss the Botter's individual claims for damages because they are derivative of Cody's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while

13

the parents are representing Cody's' claims in the Court of Federal Claims.[14]

The Plaintiffs seek to proceed upon their individual claims during the pendency of their case before the Vaccine Court. It is clear that all of the individual claims of Kirk and Darla Botter, including the loss of consortium claim, are derivative of the claim of Cody Wyatt Botter. *Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex. 1990); *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978); *Harris County v. White*, 823 S.W.2d 385, 388 (Tex.App.--Texarkana 1992, *no writ*); *Nash v. Selinko*, 14 S.W.3d 315, 317 (Tex.App.--Houston [14th Dist.] 1999, *pet. denied*). Since the underlying claim must proceed first in the Vaccine Court, judicial economy and concern for consistent results suggests the prudent course of action would be to allow the underlying cause before the Vaccine Court to terminate before proceeding with these individual claims.

The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751

---

[14]Tex. Civ. Prac. & Rem. Code § 16.003 (two-year statute of limitations in personal injury cases). The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the Defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. Tex. Civ. Prac. & Rem. Code § 16.001.

14

F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of

duplication, to avoid rulings which may trench upon the authority of sister courts,

and to avoid piecemeal resolution of issues that call for a uniform result."). The

parents' claims brought on behalf of their minor son must first be heard in the

Court of Federal Claims. Dismissing the parents' individual claims during the

pendency of that court's jurisdiction might preclude the parents from bringing their

claims in any forum. Accordingly, the Court will stay all proceedings in Kirk and

Darla Botters' individual causes of action against all Defendants until Cody Wyatt

Botter's claims have been administered in the Court of Federal Claims under the

Vaccine Act.

CONCLUSION

For the foregoing reasons, IT IS ORDERED that

the Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss

(doc. # 12) brought by Aventis Pasteur, Merck, Wyeth, and Smith Kline is

GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the

Court of Federal Claims, and their Alternative Motion to Stay is GRANTED IN

PART as to Kirk and Darla Botter's individual causes of action;

Eli Lilly and Co.'s Motion to Dismiss (doc. # 4) and its Amended Motion to

Dismiss (doc. # 31) are GRANTED IN PART as to the claims of Cody Wyatt

15

Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Sigma-Aldrich Inc.'s Motion to Dismiss (doc. # 6), its Supplemental Motion to Dismiss (doc. # 34), and its second Supplemental Motion to Dismiss (doc. # 60) are GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and its Alternative Motion to Stay Proceedings (doc. #33) is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Dow Chemical's Motion to Dismiss or Stay Proceedings (docs. # 38) is GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action. Dow's Motion for Summary Judgment (doc. # 39) is DENIED without prejudice to refiling upon a change of status of the case.

IT IS FURTHER ORDERED that Cody Wyatt Botter's claims against all Defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that Plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

16

IT IS FURTHER ORDERED that the Plaintiffs shall file a status report with this Court every six months from the date of this Order, informing the Court of the status of their petition filed on behalf of Cody Wyatt Botter in the Court of Federal Claims.

IT IS FURTHER ORDERED that this case be administratively closed pending the outcome of the Vaccine Court proceedings.

IT IS FINALLY ORDERED that any party may move for a lifting of the stay or other relief upon a change of circumstances.

SIGNED this ___13th___ day of January, 2003.

JOHN HANNAH, JR.
UNITED STATES DISTRICT JUDGE

17

# THE STATE OF NEW HAMPSHIRE
## Northern District of Hillsborough County
### 300 Chestnut Street
### Manchester, NH 03101 2490
### 603 669-7410

AUG 1 2 2003

DEBRA W FORD ESQ
DEVINE MILLIMET & BRANCH
P O BOX 974
NORTH HAMPTON NH 03862

- 01-C-0663 Mark Cyr, et al.  v.  Aventis Pasteur, Inc., et als

      You are hereby notified that on August 8, 2003
the following was entered in the above matter:

RE: ORDER OF COURT:

       Copy of order enclosed.

      8/11/2003                 /s/ John Safford
        Date                      Clerk of Court

cc:  D. Michael Noonan, Esq.        Bruce W Felmly, Esq.
     James Q Shirley, Esq.          Lisa Snow Wade, Esq.
     Ronald J Lajoie, Esq.          Karen F Wolf, Esq.
     William D Pandolph, Esq.       Frank W. Beckstein, III, Esq.
     Kenneth G Bouchard, Esq.       Sarah B. Knowlton, Esq.
     Michael J. Connolly, Esq.      Daniel J. Thomasch, Esq.
     Richard W. Mark, Esq.          Lauren J. Elliot, Esq.
     Christopher H.M. Carter, Esq.

AOC Form SUP150 (Rev. 05/09/2001)

STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS                                      SUPERIOR COURT
NORTHERN DISTRICT                                    2003

Docket No. 01-C-663

Mark and Julie Cyr *et al.*

v.

Aventis Pasteur *et al.*

## ORDER

The defendants, Aventis Pasteur *et al.*, filed this motion to dismiss pursuant to section 300aa-11 (a)(2)(B) of the National Childhood Vaccine Injury Act ("Vaccine Act"). The plaintiffs, Mark and Julie Cyr, object to the motion. For the following reasons the defendants' motion to dismiss is GRANTED and the court will stay the proceedings until all administrative remedies are exhausted.

The plaintiffs first filed this case in Hillsborough County Superior Court in October 2001. On November 14, 2001 the defendants removed the case to Federal District Court arguing that the National Vaccine Injury Compensation Program ("NVIC") conferred federal question jurisdiction. The New Hampshire Federal judges recused themselves and the case was subsequently transferred to the District of Rhode Island. After oral argument, the case was remanded back to Hillsborough County Superior Court. The plaintiffs are now before this court with this class action suit seeking compensation for injuries allegedly sustained as a result of thimerosal poisoning and the defendants have moved to dismiss.

The defendants argue that the plaintiffs' claims must be dismissed because the plaintiffs have failed to pursue their claims to conclusion through the NVIC and obtain a compensation award or other equitable judgment under the Vaccine Court as required by the Vaccine Act. The plaintiffs argue that their claims are not subject to the Vaccine Act because the toxic exposures at issue are not vaccine related. The plaintiffs allege that thimerosal is not a vaccine but instead is an "adulterant or contaminant" added to the vaccines and injuries caused by "adulterant or contaminants" do not fall within the NVIC. Next, the plaintiffs argue that due to the jurisdictional minimum and the statute of limitations, they are not qualified to bring the claim under the Vaccine Act. Finally, the plaintiffs argue that the manufacturers of thimerosal do not come within the strict confines of the NVIC and, therefore, the manufacturers should not be dismissed from the state case.

The Vaccine Act states in pertinent part,

> A proceeding for compensation under the Program for a vaccine-related injury or death shall be initiated by service upon the Secretary and the filing of a petition containing the matter prescribed by subsection (c) of this section with the United States Court of Federal Claims.

> No person may bring a civil action for damages in an amount greater that $1000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988...

42 U.S.C. § 300aa-11(a)(1), (2).

The court will first consider whether the alleged injuries from thimerosal are vaccine related and fall within the jurisdiction of NVIC. The same issues and arguments presented here have been fully litigated and rejected by a number of courts. See Leroy v.

2

Secretary of the Department of Health and Human Services, 2002 WL 31730680 (2002)

(citations omitted). In Leroy the plaintiff alleged that thimerosal is an adulterant or

contaminant and is not a constituent material as defined by the Federal Regulations. See

Leroy, at *1. The court in Leroy, similar to many other courts, relied on the reasoning set

forth in Owens v. American Home Products Corp., 203 F. Supp.2d. 748 (S.D. Tex. 2002)

as well as its own review of the legislative history and statutory interpretation, and

determined that thimerosal is a vaccine-related injury and therefore falls within the

jurisdiction of the NVIC. [1] Id. In this case the plaintiffs have failed to assert any new

arguments or distinguish this case from the number of other cases which hold that

thimerosal related injuries fall within the NVIC. Accordingly, the court finds that the

type of injury alleged in this case is within the jurisdiction of the Vaccine Act.

Next, the plaintiffs assert that their claim in not within the Vaccine Act since they

are requesting equitable relief and do not meet the NVIC $1000 minimum damages

requirement. The defendants disagree and assert that the plaintiffs seek monetary relief

in many areas and therefore must comply with the procedure set forth in Vaccine Act.

In their writ the plaintiffs request for relief states in part:

> The court submits an order directing that a court controlled
> fund be created from payments from Defendants that would
> provide for epidemiological, toxicological and clinical
> studies to be conducted on this group of mercury overdosed
> babies, to be designed and conducted by scientists selected
> for their independence from pharmaceutical industry
> control; ongoing medical care, evaluation, testing,
> diagnosis and treatment for the mercury overdosed babies,

---

[1] Other Federal courts have applied the same reasoning or found the same conclusion as that in Owens. See Liu v. Aventis Pasteur 2002 WL 31007709; Cheskiwwicz v. Aventis Pasteur, Inc., 2002 WL 1880524; Collins v. American Home Products Corp., No. 01-979 (2002); McDonald v. Abbots Laboratories, No. 02-77 (2002); Stewart v. American Home Products, 02-427 (2002), Holder v. Abbott Laboratories, Slip Op. 02-148 (2002)

as the court determines appropriate after hearing from
experts for all parties.

See Pl. Writ ¶140 (C). The plaintiffs also state in the writ that "this lawsuit may also

seek money damages, at some future point, for the class members injured by the

injections of toxic mercury, and a prayer for economic and non-economic damages." See

id. at ¶3.

This court finds it is evident that the plaintiffs relief requires a monetary payment

that exceeds that $1000 jurisdictional requirement of the Vaccine Statute. "In order to

bring a negligence action, the plaintiff must allege damages." See 5 N.H. Practice § 94.

"Without damages a *prima facie* case of negligence does not exist." See id. The term

'damages' is "the sum of money which the law awards or imposes as pecuniary,

compensation, recompense, or satisfaction for an injury done or a wrong sustained as a

consequence a tortuous act." See 22 Am. Jur. 2d Damages, § 1. The plaintiffs filed a

negligence civil action, not an equitable action, against the defendants, the plaintiffs,

therefore, must request monetary damages in order to have a cause of action in the state

court.

Here, the plaintiffs attempt to mask the monetary relief sought as equitable relief;

however, the plaintiffs' case could not go forward in state court if the relief sought was

not monetary in nature. The court finds that the request for damages in the form of a

"fund" requires the court to award a monetary sum well over the $1000 minimum.

Accordingly, the court holds that the plaintiffs' have pled the jurisdictional minimum

amount and meet the Vaccine Act requirements in that regard.

The plaintiffs argue, in the alternative, that even if the court finds that this cause

of action falls with the NVIC, the plaintiffs are not qualified to file a petition under the

Act. Specifically, the plaintiffs allege that they are barred by the Act's statute of limitations and, therefore, the Vaccine Act permits the plaintiffs to proceed in state or federal court. The defendants argue that the issue of whether the statute of limitations applies to this case is a decision for the Vaccine Court, not this court.

This court agrees that the issue of whether the statute of limitation applies is an issue for the vaccine court. To rule on the merits of whether the statute of limitations applies would require an evidentiary hearing and time for discovery allowing the parties to investigate medical issues and review medical records. This additional hearing would cause unneeded litigation and additional costs therefore, the court will not allow the plaintiffs to conduct discovery in the state court until the parties have complied with the Vaccine Act. See Liu v. Aventis Pasteur, Inc., 219 F. Supp. 2d 762, 767.

Next, plaintiffs allege that manufacturers such as defendant Eli Lilly ("Lilly"), do not come within the confines of NVIC and therefore claims against Lilly should not be dismissed. Specifically, the plaintiffs argue that Lilly is a thimerosal manufacturer, not a vaccine manufacturer, therefore under a plain reading of the statute, the Vaccine Act does not apply to Lilly and the action is not barred. See Toussaint v. Merck, 2003 WL 21406178. Lilly argues that courts across the country have analyzed similar claims and have extended the protections of the Vaccine Act to claims against thimerosal manufacturers and suppliers.

The plaintiffs' argument relies on the plain language of the statute and the decision in Toussaint. The Vaccine Act states:

> No person may bring a civil action for damages in an amount greater that $1000 or in an unspecified amount **against a vaccine administrator or manufacturer** in a State or Federal Court...

5

See 42 U.S.C. § 300aa (a) (2)(A). In Toussaint, all of the claims against the vaccine manufacturers were dismissed without prejudice for lack of jurisdiction. Eli Lilly, the thimerosal manufacturer defendant was required to remain a defendant in the state case. See id. The court stated,

> Eli Lilly (as manufacturer of thimerosal) is not a vaccine "manufacturer" as that term is defined by the Vaccine Act…the tort ban set forth in the Vaccine Act is inapplicable to the Minor plaintiff's claims asserted against Eli Lilly in this lawsuit.

See id.

On the other hand, the defendants rely on a number of state and federal courts which have dismissed cases against all defendants, including thimerosal manufacturers, and hold that the NVIC has jurisdiction over the entire case. See Def. Memo Exh B. The court is aware that many of the decisions cited by the defendants do not conduct an analysis of the issue of whether thimerosal manufacturer should be barred from state or federal claims under the Vaccine Act. See Def. Memo Exh. B. However, in Lui, although the court did not decide whether thimerosal manufacturers were included under the Vaccine Act, the court conducted a separate analysis addressing claims against non-vaccine manufacturers. See Lui v. Aventis Pasteur, Inc., 219 F. Supp2d. 762, 768. The Lui court decided that to allow a separate case against non-vaccine manufacturers to go forward during the pendency of claims in the Vaccine Court "would be wholly inconsistent with Congress's goal of minimizing litigation costs…" as a result that, the court dismissed the claims against the thimerosal manufacturers. See id.

This court agrees with the policy decision set forth in Lui. It would be an inefficient use of the courts resources and would not promote judicial economy if the

6

state court were to proceed on an action against the non-vaccine manufacturers while the same suit was occurring in the administrative courts.

Accordingly, the defendants' motion to dismiss is GRANTED and the court will stay the proceedings until the parties have exhausted all of the administrative remedies required under the Vaccine Act.

So Ordered.

Date: August, 2003

James J. Barry, Jr.
Presiding Justice