United States District Court
Southern District of Texas
FILED

JUN 1 0 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VERONICA RAMIREZ, | § | |
| Individually, and as Next Friend of | § | |
| JEREMIAH S. RAMIREZ, a minor, | § | Civil Action No. M-03-155 |
| | § | |
| *Plaintiff,* | § | JURY DEMAND |
| | § | |
| VS. | § | |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION d/b/a WYETH, ET AL, | § | |
| | § | |
| *Defendants.* | § | |

## VACCINE DEFENDANTS' RENEWED RULE 12(b) AND 12(c) MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b) and 12(c), the Vaccine

Defendants[1] file this their Renewed Motion to Dismiss[2] the claims brought against them in this

action and would show the Court the following:

### INTRODUCTION

Plaintiff Veronica Ramirez ("parent Plaintiff") alleges that her minor child,

Jeremiah S. Ramirez ("minor Plaintiff"), has sustained neurological injuries from exposure to

FDA-approved vaccines containing the preservative thimerosal. *See* Plaintiff's Original Petition

(hereinafter "Petition") at ¶¶ 4.01-4.06, 4.09. Plaintiff's Petition asserts strict liability, breach of

warranty, Texas Deceptive Trade Practices Act ("DTPA"), and negligence causes of action

against the Vaccine Defendants. *Id.* at ¶¶ 5.01-6.02 (strict liability), ¶¶ 7.01-7.04 (breach of

warranty), ¶¶ 8.01-8.02 (negligence), & ¶¶ 9.01-9.04 (DTPA). Plaintiff's Petition seeks damages

---

[1]     The "Vaccine Defendants" are Abbott Laboratories (incorrectly named as Abbott Laboratories, Inc.)
SmithKline Beecham Corporation d/b/a GlaxoSmithKline, Aventis Pasteur Inc., Merck & Co., Inc., and Wyeth
(incorrectly named as Wyeth Laboratories, Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyeth
Lederle Vaccines and Lederle Vaccines).

[2]     This renewed motion to dismiss is being refiled in accordance with this Court's December 6, 2003, and
March 29, 2004, orders. Docket # 63, 71.

on behalf of her child for pain and suffering, mental anguish, physical impairment and disfigurement, loss of earning capacity, medical expenses, loss of companionship and society, and loss of consortium. Plaintiff's Petition also seeks damages on behalf of the Plaintiff, individually, for loss of earning capacity, mental anguish, loss of companionship and society, and loss of consortium.

The Court should dismiss these claims because the relief sought relates to a claim for "vaccine-related injury" covered by the National Childhood Vaccine Injury Compensation Act (the "Vaccine Act" or "Act"), 42 U.S.C. §§ 300aa-1 et seq.[3] That federal statute bars all civil actions seeking relief for such an injury unless the claimant has exhausted the administrative remedy the Act provides before filing suit. See 42 U.S.C. § 300aa-11(a)(2)(B). Binding Fifth Circuit law has held that claims alleging that thimerosal caused neurological injury, such as these, are "vaccine-related" and thus covered by the Vaccine Act.[4] Additionally, every one of the numerous courts that have addressed claims like Plaintiff's has held that the Vaccine Act covers claims for injuries attributed to thimerosal in childhood vaccines.[5]

---

[3]    See 42 U.S.C. § 300aa-33(5) (defining "vaccine-related injury: as "an illness, injury condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include [conditions] associated with an adulterant or contaminant intentionally added to such a vaccine") (emphasis added).

[4]    See, e.g. McDonal v. Abbott Labs, ___ F.3d ___, 2005 WL 957142, at *6 (5th Cir. Apr. 26, 2005) (holding that "the claims asserting vaccine-related injuries brought against the . . . nonresident Vaccine defendants were required to have first been brought in the Vaccine Court"); see also Moss v. Merck & Co., 381 F.3d 501, 504 (5th Cir. 2004) (characterizing as an "unremarkable proposition" that "a Thimerosal-related injury, occurring as a result of the administration of a vaccine, is a vaccine-related injury within the meaning of the Vaccine Act") (citing Leroy v. Sec'y, Dep't of Health and Human Servs., 02-392V, 2002 U.S. Claims LEXIS 284, at *18-19 (Fed. Cl. Spec. Mstr. Oct. 11, 2002)).

[5]    See, e.g., Liu v. Aventis Pasteur, Inc., 219 F. Supp.2d 762 (W.D. Tex. 2002); Owens v. Am. Home Prods. Corp., 203 F. Supp. 2d 748 (S.D. Tex. 2002); O'Connell v. Am. Home Prods. Corp., No. G-02-184, 2002 WL 31455729 (S.D. Tex. May 7, 2002); Wax v. Aventis Pasteur, Inc., No. CV 02-2018 (JBW) (E.D.N.Y. Oct. 28, 2002, as clarified by Order dated Dec. 16, 2002), 2002 U.S. Dist. LEXIS 25206; Mead v. Aventis Pasteur, Inc., No. 0107-07136 (Or. Cir. Ct. Nov. 5, 2002); Cheskiewicz v. Aventis Pasteur, Inc., No. 0952 (Pa. Ct. Comm. Pls. Dec. 16, 2002), aff'd, 843 A.2d 1258 (Pa. Super. 2004); Murphy v. Aventis Pasteur, Inc., 270 F. Supp. 2d 1368 (N.D. Ga. Feb. 25, 2003); Ashton v. Aventis Pasteur, Inc., No. 04026, 2003 WL 21361355 (Pa. Ct. Comm. Pls. May 22, 2003),

The Vaccine Act requires persons allegedly injured by vaccines, and in the case of a minor, their legal representatives, to file and pursue a compensation remedy available through a specially constituted court of the United States Court of Federal Claims ("Vaccine Court") *before* they can proceed to litigation. Moreover, the Vaccine Act unequivocally mandates that "[i]f a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court *must dismiss the action*." *Owens v. Am. Home Prods. Corp.*, 203 F. Supp. 2d 748, 752-53 (S.D. Tex. 2002) (emphasis added) (citing 42 U.S.C. § 300aa-11(a)(2)(B)). Plaintiff filed this civil action in Texas state court on June 27, 2003. On information and belief, and based on the CM/EMF PACER docket of the Vaccine Court, Plaintiff did not file a Vaccine Court petition until September 17, 2003, almost three months after initiating this civil action. *See Ramirez v. Sec'y of Health & Human Svcs.*, Case No.: 1:03-vv-02191-UNJ (Fed. Cl.) Docket #1 (attached hereto as Exhibit 1). Thus, although Plaintiff filed a petition in the Vaccine Court, because recovery was sought *first* in a civil action in state or federal court, this Court "shall dismiss the action." *See* 42 U.S.C. § 300aa-11(a)(2)(B).

Likewise, the claims for past and future medical expenses necessitated by the alleged injury to the child—whether asserted by parent or child—are for expenses incurred "on behalf of" the child as a result of alleged "vaccine-related" injuries and thus are also subject to the Vaccine Act's initial ban against tort suits. Similarly, the minor Plaintiff's claims under the DTPA, for loss of companionship and society, and for loss of consortium are also "vaccine-related" injuries under the Act and should be dismissed for that reason. Separately, the minor

---

*aff'd*, 851 A.2d 908 (Pa. Super. 2004). *See also* footnote 3 of Vaccine Defendants' September 10, 2003 Rule 12(b) and 12(c) Motion to Dismiss, and Exhibits 1-28 thereto (Docket #5).

Plaintiff's claims for loss of companionship and society, loss of consortium, and claims under the DTPA fail to state a claim under Texas law and should be dismissed with prejudice.

Each of Plaintiff's individual claims is independently barred by state law. The Texas Supreme Court has expressly declined to recognize a parental claim for loss of consortium with a non-fatally injured child. Nor does Texas law recognize a parental claim for income or earning capacity lost due to increased care for an injured child. Finally, because Plaintiff cannot qualify as a "bystander" under Texas law, her claim for damages for mental anguish must also be dismissed. Consequently, all of Plaintiff's claims are either barred by the Vaccine Act or are not cognizable under Texas law, or both; and the entire Petition should be dismissed as against the Vaccine Defendants.

## ARGUMENT

### I.    The Vaccine Act's Exclusive And Mandatory Remedy For Vaccine-Related Injury Claims Must Be Exhausted Before Filing Suit.

Plaintiff's claims are for vaccine-related injuries under the Vaccine Act and thus must be pursued through the Act's exclusive and mandatory compensation remedy before any civil suit may be filed. Because Plaintiff filed suit in state court *before* filing a petition in the specially-constituted Vaccine Court, this Court must dismiss all claims covered by the Act because no court but the Vaccine Court had initial subject-matter jurisdiction over those claims.

### A.    The Vaccine Act creates a new remedial system for "vaccine-related" injuries.

Congress passed the Vaccine Act in 1986, noting that "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken," H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S. Code Congressional and Administrative News ("U.S.C.C.A.N.") at 6345, and that the "[u]se of vaccines has prevented thousands of children's

deaths each year and has substantially reduced the effects resulting from disease," thereby saving billions in medical costs. *Id.* Likewise, Congress recognized that the cost of litigation initiated on behalf of children claiming injuries traceable to vaccination had resulted in a significant reduction in the number of manufacturers willing to sell childhood vaccines, and it was concerned that the costs of litigation would discourage manufacturers from continued participation in the vaccine market. *See* H.R. Rep. No. 99-908 at 4, 6-7 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 6345, 6347-48.

Because of its "real concern about the future of Federal immunization initiatives," and its desire to safeguard the national vaccine supply, Congress included in the Vaccine Act a compensation program to provide claimants a just and efficient remedy while also protecting vaccine manufacturers from excessive litigation costs. *Id.* at 4, *reprinted in* 1986 U.S.C.C.A.N. at 6345; *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 2-3 (1st Cir. 1994). That Program is a no-fault compensation system, *see, for example*, 42 U.S.C. § 300aa-10(a) (1994), *Mazur v. Merck & Co.*, 767 F. Supp. 697, 702 (E.D. Pa. 1991), *aff'd*, 964 F.2d 1348 (3d Cir. 1992), that was intended to depart from the "traditional tort system" that threatens the national vaccine supply. *O'Connell v. Shalala*, 79 F.3d 170, 173 (1st Cir. 1996). The Act "represents an effort to provide compensation to those harmed by childhood vaccines *outside the framework of traditional tort law.*" *Schafer*, 20 F.3d at 2 (emphasis added).

To achieve both congressional goals, the Vaccine Act created a federal cause of action, which requires that any claims in excess of $1,000 for vaccine-related injuries be filed *first* in the Vaccine Court. 42 U.S.C. § 300aa-11(a)(2)(A). [6]

---

[6]    At the heart of this case against the Vaccine Defendants is the allegation that Plaintiff's minor child has suffered vaccine-related injuries within the scope of the Act. *See, e.g.*, Petition at ¶ 4.09. The term "vaccine-related injury" is broadly defined in the Vaccine Act as "an illness, injury, condition, or death associated with" a vaccine identified in the Act. 42 U.S.C. § 300aa-33(5). And although it is clear that Plaintiff seeks damages for an injury

**B.   Plaintiff must *first* exhaust the remedies of the Vaccine Court, or be barred from bringing a civil action in state or federal court.**

The express language of the Vaccine Act and its legislative history establish that a plaintiff's exhaustion of the Act's statutory remedy is a condition precedent to the subject matter jurisdiction of any state or federal court to hear the merits of that plaintiff's claim for a vaccine-related injury.[7]  Specifically, the Act provides:

> *No person may bring a civil action* for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, *unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and —*
>
> > *(i)(I) the United States Court of Federal Claims has issued a judgment under section 300aa-12 of this title on such petition, and*

---

allegedly "associated with" vaccines, Plaintiff claims that her Petition makes "no claim for personal injuries arising from or associated with the administration of a vaccine as defined under the [Vaccine Act], and thus [there is] no jurisdiction over this claim by the [Vaccine Court]." Petition at ¶¶ 2.01. Plaintiff's conclusory pleading disclaimer is not legally tenable. *See Terran v. Sec'y of Health & Human Servs.*, 195 F.3d 1302, 1310 (Fed. Cir. 1999) (in order to determine jurisdiction, a court "must look to the true nature of the underlying action").

Plaintiff's argument is also incorrect as a matter of law, as the wealth of authority—from the plain language of the statute, to the governing regulations, to official determinations by the HHS Secretary and Vaccine Court, to the overwhelming weight of case-law, including binding Fifth Circuit precedent—holds that the Vaccine Act covers claims exactly like those asserted here. *See supra*, note 3. Indeed, on Vaccine Defendants' information and belief, Plaintiff has since filed a Vaccine Court petition. *See* Exhibit 1.

[7]      The Vaccine Act "is jurisdictional in nature because it defines the jurisdiction of state and federal courts with respect to civil actions against a vaccine administrator or manufacturer for vaccine-related injuries." *Gilbert v. Secretary of HHS*, 31 Fed. Cl. 379, 381 (Fed. Cl. 1994), *aff'd*, 51 F.3d 254 (Fed. Cir. 1995); *see also Brown v. Secretary of HHS*, 874 F. Supp. 238, 241 (N.D. Ind. 1994) ("[T]his Court's jurisdiction over a claim for compensation for a vaccine-related injury or death is determined by the [Vaccine Act]."), *aff'd*, 61 F.3d 905, 1995 WL 395753 (7th Cir. 1995) (unpublished opinion); *Greene v. Aventis Pasteur*, Nos. L-1288-02, L-1351-02, at 3 (N.J. Super. Aug. 8, 2002) ("[W]hether the Vaccine Act precludes Plaintiffs from pursuing their claim in this Count because the Plaintiffs failed to file a petition with the Vaccine court … is a threshold issue of jurisdiction.").

> *(II) such person elects under section 300aa-21(a) of this title to file such an action,*[8] *or*
>
> *(ii) such person elects to withdraw such petition under section 300aa-21(b) of this title or such petition is considered withdrawn under such section.*[9]

42 U.S.C. § 300aa-11(a)(2)(A) (emphasis added).

The Act is equally plain that where a claimant failed to exhaust the remedy provided by the Vaccine Act before filing suit, any civil action for vaccine-related injuries must be dismissed: "If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, *the court shall dismiss the action.*" 42 U.S.C. § 300aa-11(a)(2)(B) (emphasis added). In such an instance, the state or federal court lacks subject matter jurisdiction to decide the merits of such claim.[10] Plaintiff's Petition alleges, as an alternative, that Plaintiff has exhausted the Vaccine Court procedures. Vaccine Defendants show, upon information and belief, and based upon the docket information available on Federal Court System's electronic database, PACER, that Plaintiff's petition for compensation in the Vaccine Court was not filed until September 17, 2003—almost three months after Plaintiff filed her Petition in a Texas state court on June 27, 2003. *See* attached Exhibit 1. Thus, because only the Vaccine Court had initial jurisdiction over Plaintiff's claims,[11] and regardless of whether Plaintiff has now made an

---

[8]  Section 300aa-21(a) allows a claimant to either accept the compensation award of the Vaccine Court or reject the award and file an civil action in state or federal court. *See* 42 U.S.C. § 300aa-21(a)(1)-(2). The claimant must file a formal election under § 300aa-21(a) within 90 days of the Vaccine Court's final judgment. *See id.*

[9]  Section 300aa-21(b) allows a claimant to withdraw his or her petition from the Vaccine Court proceedings if the Vaccine Court fails to render a decision on the petition within 240 days of the filing of the petition. *See* 42 U.S.C. § 300aa-21(b)(1). A claimant intending to withdraw from the Vaccine Court proceedings can do so only after receiving notice from the Vaccine Court that the claimant may withdraw his or her petition. *See id.*

[10]  *See Brown,* 874 F. Supp. at 241 (dismissing claim for lack of subject matter jurisdiction because plaintiffs did not first file a petition for compensation in Vaccine Court); *Greene, supra* note 7 at 5 (dismissing claims for thimerosal-related injuries because the "Court holds that the Plaintiffs' alleged injuries are vaccine-related and this Court lacks jurisdiction over those matters").

[11]  In *Leroy v. Sec'y, Dep't of Health & Human Servs.,* ---F. Supp. 2d---, 2002 WL 31730680 (Fed. Cl. Spec. Mstr. Oct. 11, 2002), the Honorable Gary J. Golkiewicz, Chief Special Master of the Vaccine Court, held that

election required by 42 U.S.C. § 300aa-21(b) to withdraw the Petition, this Court must dismiss this case for lack of subject matter jurisdiction pursuant to 42 U.S.C. § 300aa-11(a)(2)(B).

### C.   The Vaccine Act Bars Plaintiff's Claims for Her Child's Medical Expenses and Loss of Earning Capacity.

Plaintiff's claims for her child's medical expenses and alleged loss of earning capacity should be dismissed without prejudice on the same basis as the child's personal injury claims: those claims must have been *first* pursued through the Vaccine Compensation Program *before* filing suit. As shown below, Plaintiff's claims for medical expenses and loss of earnings are specifically included within the Vaccine Act's scope and, thus, within its jurisdictional ban on premature tort suits.

Under the Vaccine Act, as in state or federal court, a minor child may not bring a claim in his own name; rather, the claim is brought by his parents or other legal representatives. The Vaccine Act identifies who may bring a petition as "any person who has sustained a vaccine-related injury [or] *the legal representative of such person if such person is a minor* or is disabled . . . ." 42 U.S.C. § 300aa-11(b)(1)(A) (emphasis added). Furthermore, the Act provides that the compensation awarded "shall include" medical expenses incurred on behalf of the injured person, specifically "unreimbursable expenses" that are "incurred *by or on behalf of* the person who suffered [a vaccine-related] injury," including expenses "for *diagnosis and medical or other remedial care* determined to be reasonably necessary." 42 U.S.C. § 300aa-15(a) (emphasis added). Similarly, Section 300aa-15(a)(3)(B) of the Act provides compensation for a petitioner's anticipated loss of earnings.

---

persons alleging injuries from thimerosal in vaccines are "statutorily obligated to file their claim . . . in the Court of Federal Claims *in the first instance*." *Id.* at 26 (emphasis in original).

Because the Vaccine Act provides for—and indeed mandates—compensation for medical expenses and loss of earning capacity incurred by or on behalf of the child making a claim, the Act governs the claims by a plaintiff for these alleged items of damages and requires that these claims be dismissed without prejudice. That was the exact holding of the United States District Court for the Southern District of Texas in the case of *Strauss v. American Home Products Corp.*, 208 F. Supp. 2d 711 (S.D. Tex. June 11, 2002). As Judge Kent explained:

> [A]lthough Plaintiffs are not barred outright by the Vaccine Act from seeking individual damages (*i.e.*, loss of consortium) from the Vaccine Manufacturers, *they cannot recover from the Vaccine Manufacturers for any expenses that they have incurred on [the minor child's] behalf.* As explained above, the Vaccine Act provides compensation for actual and un-reimbursable expenses and projected expenses (incurred by the victim or on the victim's behalf) for medical or other remedial care determined to be reasonably necessary, actual and *anticipated lost earnings*, actual and projected pain and suffering of the victim and reasonable attorneys' fees and costs. *The covered expenses include those costs which "have been or will be incurred by or on behalf of the [victim]* . . . for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and services expenses, and the facilities determined to be reasonably necessary."

*Id.* at 715 n.8 (emphasis added) (quoting 42 U.S.C. § 300aa-15(a)(1)).

Additionally, also before Judge Kent in similar cases alleging thimerosal caused neurological injury, the plaintiffs in *Owens, O'Connell* and *Blackmon* argued that state law recognizes the right of parents to recover the medical expenses incurred on behalf of a minor child, and, on that basis, moved for clarification of the Court's decisions dismissing (but not discussing) the parents' claims for reimbursement of medical expenses. *Owens v. Am. Home Prods. Corp.,* F.Supp.2d 748 (S.D. Tex 2002); *O'Connell v. Am. Home Prods. Corp.,* No. G-02-184, 2002 WL 314 55729 (S.D. Tex. May 7, 2002); *Blackmon v. Am. Home Prods. Corp.,*;

No. G-02-179 (S.D. Tex. Feb. 8, 2002).  Rejecting the plaintiffs' argument, the Court clarified its

order as follows:

> The Court acknowledges that in Texas, "[i]t is well settled law that
> because the parent is primarily liable for a minor's medical
> expenses incurred during minority, any cause of action for medical
> expenses incurred up the age of 18 belongs to such parent."
> [citation omitted]  Nevertheless, although Plaintiffs are not barred
> outright by the Vaccine Act from seeking individual damages (i.e.,
> loss of consortium) from the Vaccine Manufacturers, *they cannot
> recover from the Vaccine Manufacturers for such medical
> expenses at this time. . . . Plaintiffs are therefore <u>required</u> to seek
> reimbursement for these expenses in the Vaccine Court, rather
> than attempting to recover damages via an action wherein they
> assert individual claims against the Vaccine Manufacturers.
> Allowing them to do so would clearly undermine the stated
> objectives of the Vaccine Act.*  This result is not in contravention of
> Texas law, because the Court is in no way holding that Plaintiffs
> do not possess a valid claim for the medical expenses at issue. *The
> Court is simply stating that Plaintiffs cannot seek to recover such
> expenses from the Vaccine Manufacturers until after they have
> filed a Vaccine Act petition in accordance with the Vaccine Act.*

*Owens* Clarification Order (Exhibit 33) at 2-3 (emphasis added and in original).

Judge Kent's decisions on this issue are well supported by a line of authority in

the Vaccine Court which establishes that the Act covers all claims that seek compensation for, *or

on behalf of*, a person who actually suffered a vaccine-related injury.  *Cf. Black v. Sec'y of

Health & Human Servs.*, 93 F.3d 781, 786 (Fed. Cir. 1996) (holding, as to analogous Vaccine

Act provision, that, "[i]n the case of injured minors, . . . the statutory reference to expenses

'incurred' by the injured person was plainly meant to refer to expenses incurred on behalf of the

victim by his legal representatives"); *Salceda v. Sec'y, Dep't of Health & Human Servs.*, 30 Fed.

Cl. 316, 319 (Fed. Cl. 1994) (holding, in analogous context of the section 11(a)(6) bar to Vaccine

Act claims brought in courts prior to 1988, that "person" means the individual "who sustained

the vaccine-related injury or death and not . . . the individual who happens to represent the

interests of that person in the litigation"); *Benedict v. Sec'y, Dep't of Health & Human Servs.*, 29

Fed. Cl. 587, 591 (Fed. Cl. 1993) ("To hold otherwise would render [the litigation bar] meaningless, as it could be easily circumvented simply by supplying a different representative in each case for an injured person.").

Indeed, allowing claims that are compensable under the Act to go forward in a judicial forum—simply because they are alleged by the parent rather than the child—"would clearly undermine the stated objectives of the Vaccine Act." *Strauss* at 715 n.8. Plaintiff, as the legal representative of her child, could have—and should have—first filed a petition in the Vaccine Court to recover on these claims for medical, residential, and custodial expenses as well as anticipated lost earnings before filing a state court petition. Her claims for any and all medical, residential, and custodial expenses necessitated by the minor Plaintiff's condition, as well as the claim for the child's loss of earning capacity, are compensable under the Vaccine Act, and thus fall squarely within the Act's tort suit ban, and should be dismissed along with claims for the minor Plaintiff, without prejudice.

## II.   Plaintiff Has No Cognizable Claim For Mental Anguish, Emotional Distress, Loss of Consortium, or Her Own Lost Wages, and Thus the Remaining Parental Claims Must Be Dismissed With Prejudice

The Vaccine Act is intended to prevent a vaccine manufacturer from being made a party—"either by impleader, cross-claim, or *separate suit or any other practice*"—to *any* vaccine-related "civil action brought by a person [who was allegedly injured by a vaccine after the enactment of the legislation] *before that person has completed a compensation proceeding*." H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S. Code Cong. and Ad. News, 6344, 6355 (emphasis added); *see also* 42 U.S.C. § 300aa-11(a)(3). On this basis alone, the Vaccine Defendants should be entirely dismissed from the lawsuit.

Alternatively, parent Plaintiff's individual state law claims for mental anguish, emotional distress, loss of consortium, and lost wages are fatally defective as a matter of Texas law and must be dismissed.

### A.    Plaintiff does not qualify as a "bystander" under Texas law and therefore may not recover damages for mental anguish or emotional distress.

Family members of a non-fatally injured Plaintiff can only recover mental anguish damages as a result of being "bystanders" to the occurrence of a traumatic event. *See Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003). To recover as a bystander, a Plaintiff must show that: (1) the Plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the Plaintiff suffered shock as result of a direct emotional impact upon the Plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the Plaintiff and the victim were closely related. *United Services Automobile Assoc. v. Keith*, 970 S.W.2d 540, 541-42 (Tex. 1998).

The allegations of Plaintiff's Petition eliminate any possibility of establishing the first two elements. Plaintiff does not qualify as a "bystander" under Texas law for purposes of a mental anguish or emotional distress claim because the alleged injury occurred over time, not as the result of a single traumatic event, and she necessarily learned of her child's alleged injury from others (presumably physicians) well after her child's vaccines were administered. *See Keith*, 970 S.W.2d at 542 (requiring that bystander plaintiff "suffer shock as a result of a direct emotional impact . . . from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence"). Thus, Plaintiff's bystander claim for emotional distress fails as a matter of law. The routine administration of childhood vaccines is not an accident causing immediate trauma and shock in a bystander.

In *Owens v. American Home Products Corporation,* 203 F. Supp. 2d 748 (S.D. Tex. 2002), Judge Kent addressed this very issue under Texas law, and rejected the bystander claims of parents who alleged their children's autism was caused by thimerosal in childhood vaccines:

> Here, Plaintiffs clearly did not witness and perceive the type of shocking accident contemplated by the bystander theory of recovery. Rather, Plaintiffs witnessed the routine vaccination of their children and the children's subsequent medical problems that are allegedly linked to thimerosal. Moreover, Plaintiffs did not even learn of the children's alleged mercury poisoning until the children's neurological problems were diagnosed by a physician, well after the suspect vaccines were administered. However anguishing these belated circumstances may have been, the bystander theory is inapplicable to the facts of this case, as a matter of Texas law.

*Owens,* 203 F. Supp. 2d at 758. The same analysis applies here. These circumstances do not meet the standards for bystander recovery.

Even if Plaintiff were a "bystander" for purposes of such a claim, she could not recover unless her injured child could also recover. *See Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 79 (Tex. 1997). ("'[B]efore a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary victim.'") (quoting *Boyles v. Kerr,* 855 S.W.2d 593, 598 (Tex. 1993)). Thus, because Plaintiff's child cannot yet state a claim upon which relief can be granted *and* Plaintiff does not qualify as a bystander under Texas law, *all claims* for damages for mental anguish and emotional distress must also be dismissed.

**B.    Texas does not recognize a parent's cause of action for loss of consortium with a non-fatally injured child.**

In *Roberts v. Williamson,* 111 S.W.3d 113 (Tex. 2003), the Texas Supreme Court expressly held that parents may not recover loss of consortium damages for a non-fatal injury to

their minor child. *Roberts*, 111 S.W.3d at 119 ("We . . . decline to extend a claim for loss of consortium to parents of children who have been seriously injured.")  The Court found that "no compelling social policy impels us to recognize a parent's right to damages for the loss of filial consortium," and disapproved of cases in the Texas courts of appeals that allowed such damages. *Id.* at 120.  Under *Roberts*, Plaintiff's loss of consortium claim fails as a matter of law, and must be dismissed with prejudice.

C.     **Plaintiff may not recover her own lost wages incurred in caring for her child.**

The right to recover for necessary services rendered because of injury to a third person belongs to the injury party, not the provider of the services.  Moreover, the measure of damages for such services is the reasonable value of the care, not the earnings or wages earned by the care-giver in other employment. *See, e.g., Pressey v. Patterson*, 898 F.2d 1018 (5th Cir. 1990 (finding that under Texas law, an injured plaintiff may recover for the nursing care provided by his mother at the wage rate for unlicensed medical care); *Gulf States Utils. Co. v. Reed*, 659 S.W.2d 849, 853 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (Texas law does not permit a parent to recover his or her own lost earnings as a result of caring for an injured child).

These rules are consistent with the general rule in other jurisdictions:

The general rule is that *one who has been injured by tortious conduct is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury,* even if those services were furnished gratuitously, and this rule applies when the services are furnished by a family member.  The amount of the defendant's liability is the amount for which reasonably competent nursing and attendance by others could have been obtained.  *A corollary of this rule is that what the person rendering the services has earned in the past or could earn in a different employment cannot be considered, it being immaterial to the reasonable value of the services,* even if the relative leaves his or her regular employment to render such services.

22 Am.Jur. 2d Damages, Section 209 (footnotes omitted) (emphasis added). *See also Jackson v. United States*, 526 F. Supp. 1149, 1154 (E.D. Ark. 1981), *aff'd without op.*, 696 F.2d 999 (8th Cir. 1982); *Heritage v. Pioneer Brokerage and Sales, Inc.*, 604 P.2d 1059, 1064-65 (Alaska); *Rodriguez v. Bethlehem Steel Corporation*, 12 Cal.3d 382, 409, 115 Cal. Rptr. 765, 525 P.2d 669, 687; *Burns v. Stauder*, No. CV 9970421S, 1999 WL 989412, *3 (Super. Conn. Oct. 13, 1999), *Polio v. Derby Center CVS., Inc.*, No. CV 950372045, 1996 WL 521133, *3 (Super. Conn. Sept. 6, 1996); *Harris v. Hardman*, 133 Ga. App. 941, 947-48, 212 S.E.2d 883 (1975); *Kotsiris v. Ling*, 451 S.W.2d 411, 412 (Ky. 1970); *Scanlon v. Kansas City*, 336 Mo. 1058, 81 S.W.2d 939, 942 (1935); *Redepenning v. Dore*, 56 Wis. 2d 129, 136, 201 N.W.2d 580 (1972).

Thus, as an element of care furnished to the child because of his alleged injury, the recovery, if any, for the services provided by Plaintiff belongs to the child and must first be pursued through the Vaccine Compensation Program. Therefore, Plaintiff's claim for these "costs," which are part of the child's claim, is barred by Texas law and should be dismissed.

**III.    Regardless Of The Vaccine Act, The Minor Plaintiff's Claims For Loss Of Companionship And Society, For Loss Of Consortium, And For Damages Under The DTPA Fail To State A Cognizable Claim And Must Be Dismissed With Prejudice.**

**A.    The Court should dismiss the minor Plaintiff's loss of companionship and society and loss of consortium claims.**

"Love, affection, protection, emotional support, services, companionship, care and society" are encompassed by a child's claim for loss of parental consortium. *See Reagan v. Vaughn*, 804 S.W.2d 463 (Tex. 1991). Although the Plaintiff has styled her minor child's claim as one for "loss of companionship and society," Petition at ¶ 12.01(b.)(3.), Plaintiff is simply asserting a claim for loss of parental consortium. *Id.* at ¶ 12.01(b.)(4.). Texas law limits a child's claim for loss of consortium to circumstances in which a third party causes serious, permanent, and disabling injuries to the child's parents:

> In order to successfully maintain a claim for loss of parental
> consortium resulting from injury to the parent-child relationship,
> the plaintiff must show that the defendant physically injured the
> child's parent in a manner that would subject the defendant to
> liability.

*Reagan*, 804 S.W.2d at 467. With his parent alive and well, the minor Plaintiff cannot state a

claim for loss of companionship and society with his parent and the Court should therefore

dismiss these claims with prejudice.

**B.     Plaintiff's DTPA claims must be dismissed under Texas law because the
        DTPA does not apply to claims for "bodily injuries" such as those allegedly
        sustained by the minor Plaintiff.**

The sole DTPA claim stated in the Petition is one for physical injuries and mental

anguish allegedly suffered by the minor Plaintiff. Plaintiff's DTPA claims are invalid on their

face because personal injury claims have been excluded from DTPA coverage since 1995. *See*

TEX. BUS. & COM. CODE § 17.50(b); *Bivins, et al., The 1995 Revisions to the DTPA: Altering the*

*Landscape,* 27 TEX. TECH. L. REV. 1441, 1448, & 1449 n.7 (1996). As a result of the 1995

amendments, the DTPA no longer applies to cases involving "bodily injury,"[12] such as the

"severe and permanent physical injuries" alleged to have been sustained by the minor Plaintiff.

*See* Petition at ¶ 9.04. By its own terms, the DTPA excludes from its ambit personal injury

cases:

> (e) Except as specifically provided by subsections (b) and (h),
> Section 17.50, nothing in this subchapter shall apply to a cause of

---

[12]    The legislative history of Section 17.49 (e) supports that the DTPA was not meant to encompass causes of
action for personal injury. Although originally drafted to exclude DTPA claims from personal injury lawsuits, the
bill that came out of the House of Representatives **did not** exclude the DTPA from personal injury lawsuits.
*Cf.* Tex. H.B. 668, 74th Leg., R.S. (1995) ("Introduced Version") *with* Tex. H.B. 668, 74th Leg., R.S. (1995)
("House Committee Report"). The Senate received H.B. 668—without the personal injury exclusion—and referred
it to the Economic Development Committee, which added the language that currently exists in Section 17.49(e)
precluding application of the DTPA in cases involving personal injury. *See* Tex. H.B. 668, 74th Leg., R.S. (1995)
(Senate Committee Report). The Senate Committee and Senate Research Center each drafted a "Bill Analysis" for
H.B. 668, which provided a "Section by Section Analysis," explaining that Section 17.49(e) excludes the DTPA
from personal injury lawsuits. *See* SENATE COMM. ON ECONOMIC DEVELOPMENT, BILL ANALYSIS, TEX. H.B. 668,
74th Leg., R.S. (1995); SENATE RESEARCH CENTER, BILL ANALYSIS, TEX. H.B. 668, 74th Leg., R.S. (1995).

> action for bodily injury or death or for the infliction of mental
> anguish.

TEX. BUS. & COM. CODE ANN. § 17.49(e) (Vernon 2004).    Accordingly, all of the minor

Plaintiff's DTPA claims necessarily fail and should be dismissed with prejudice.

## CONCLUSION

Because Plaintiff failed to comply with the Vaccine Act by exhausting the

mandatory compensation remedy before filing this lawsuit, this Court must dismiss her claims

and those of her minor child.   These include all of the claims asserted by or on behalf of the

minor whether asserted here by the child or the parent.   The remainder of Plaintiff's "individual"

claims must be dismissed with prejudice because they are not cognizable under Texas law.

Similarly, regardless of the Vaccine Act, the claims asserted for the minor for loss of parental

consortium and for damages under the DTPA fail to state a cognizable claim and must be

dismissed with prejudice.   For all of these reasons, the Court should dismiss Plaintiff's Petition

as against the Vaccine Defendants.   The Vaccine Defendants request such other and further relief

as the Court deems appropriate.

Respectfully submitted,

Richard L. Josephson
Attorney-in-Charge
State Bar No. 11031500
One Shell Plaza
910 Louisiana
Houston, TX 77002
(713) 229-1460
(713) 229-1522 (fax)
richard.josephson@bakerbotts.com

COUNSEL FOR DEFENDANT MERCK & CO., INC. AND
DEFENDANT ABBOTT LABORATORIES

OF COUNSEL:

BAKER BOTTS L.L.P.

Paul R. Elliott
State Bar No. 06547500
Scott Janoe
State Bar No. 24012897
One Shell Plaza
910 Louisiana
Houston, TX 77002
(713) 229-1460
(713) 229-1522 (fax)

By: *Michael R. Klatt /by per PCL*
Michael R. Klatt
Attorney-in-Charge
State Bar No. 11554200
P. O. Box 1148
Austin, TX 78767
(512) 472-8800
(512) 474-1129 (fax)

COUNSEL FOR WYETH F/K/A AMERICAN
HOME PRODUCTS

OF COUNSEL

CLARK, THOMAS & WINTERS

Susan E. Burnett
P. O. Box 1148
Austin, TX 78767
(512) 472-8800
(512) 474-1129 (fax)

By: *Jeffrey S. Wolff /by per PCL*
Jeffrey S. Wolff
Attorney-in-Charge
State Bar No. 21865900
1301 McKinney, Suite 5100
Houston, TX 77010-3095
(713) 651-5151
(512) 651-5246 (fax)

COUNSEL FOR SMITHKLINE BEECHAM
CORPORATION D/B/A GLAXOSMITHKLINE

OF COUNSEL:

FULBRIGHT & JAWORSKI L.L.P.

By:  *Miguel D. Wise/by per PRE*

Miguel D. Wise
Attorney at Law
134 W. 5th Street
Weslaco, Texas  78596
(956) 968-6898
(965) 380-0504 (fax)

COUNSEL    FOR    DEFENDANT    AVENTIS
PASTEUR INC.

## Certificate of Service

I certify that on June 9th, 2005, the above pleading was served on all counsel of record via electronic filing, facsimile, First Class U.S. Mail, and/or certified mail, return receipt requested.

*Paul R. Elliott/by per PRE*

Paul R. Elliott