IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION
2002 OC -8 AM 11:52
WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE
BY:_____
                DEPUTY

PETE CARABINE and HEIDI CARABINE,
Individually and as Next Friend of Collin
Carabine,
            Plaintiffs,

-vs-                                      Case No. A-02-CA-501-SS

AVENTIS PASTEUR, INC., et al.,
            Defendants.

### ORDER

BE IT REMEMBERED on the 8th day of October 2002 the Court reviewed the file in the above-styled cause, specifically Defendant Eli Lilly & Company's Amended Motion to Dismiss [#30], Plaintiffs' Response [#28] and Defendant's reply [#32]; Defendants Sigma-Aldrich Corporation's and Sigma-Aldrich, Inc's Motion to Dismiss [#11] and Plaintiffs' Response [#21]; Defendants' Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Alternative Motion to Stay Proceedings [#23]; Vaccine Defendants' Motion to Dismiss or Alternatively to Stay Proceedings [#25] and Plaintiffs' Response [#33]; and Defendant Reliant Energy's Motion for Summary Judgment [#31]. Having considered the motions and responses, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Pete Carabine and Heidi Carabine, are Texas residents and the parents of Collin Carabine, who is approximately six years old. *See* Petition, at ¶¶ 5; 25. They appear in this lawsuit as individuals and as next friend of Collin Carabine. *Id.* at ¶ 5. The plaintiffs contend their

OCT 1 1 2002

son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 25-27. Collin received the vaccines between November 6, 1995 and October 25, 1999.[1] *Id.* at ¶ 25. The plaintiffs further contend Collin's neurological damage was exacerbated by Defendant Houston Lighting and Power Company's ("Reliant") emission of air toxins such as mercury from power plants that burn fossil fuels near his residence. *Id.* at ¶¶ 31-38.

On July 3, 2002, the plaintiffs filed this lawsuit in the 201st Judicial District Court of Travis County, Texas, Cause No. GN202160. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil fuels. *See* Petition. The plaintiffs seek compensatory damages for expenditures necessitated by Collin's injuries, Collin's pain and suffering, Pete and Heidi Carabine's lost wages and income, Pete and Heidi Carabine's emotional distress and loss of consortium, and the lost services Pete and Heidi Carabine could have provided to each other and Collin could have provided to them. *Id.* at 20. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, ("SmithKline") removed the case to this Court on

---

[1] The petition states Collin received the vaccines through October 25, "199." Because this typographical error prevents the Court from discerning the relevant date, the Court uses the year 1999 merely as a potential correct date.

-2-

August 9, 2002 after having obtained consent of all other served defendants.[2]  See Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline, and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Collin Carabine's injuries and, therefore, cannot be held liable. Reliant moves for summary judgment on the merits.

### Analysis

I.  **The Vaccine Act's Requirements**

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-

---

[2] Defendant Reliant consented to the removal. Reliant appears to be a Texas corporation, which would defeat diversity jurisdiction. In the notice of removal, SmithKline argues the plaintiffs' addition of Reliant as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction. The removing party bears the burden of proving fraudulent joinder. Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir.), cert. denied, 498 U.S. 817 (1990). The plaintiffs' claims against Reliant are based on different facts than their vaccine-related claims against the other defendants. However, because this Court has no jurisdiction over Collin Carabine's primary causes of action, the plaintiffs have not moved to remand, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Reliant the same as the other defendants. This ruling is without prejudice to any party raising the issue or challenging this Court's jurisdiction after the stay in the case is lifted.

related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Collin Carabine's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Collin's injuries are not "vaccine-related" because they were caused not by the vaccines themselves

-4-

but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth–an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an adulterant, comports with common sense, since at the time Collin received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been

---

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

-5-

inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Collin Carabine's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Collin Carabine without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

II.     **Claims against Non-Vaccine-Manufacturers**

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines that allegedly caused Collin Carabine's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Eli Lilly's Amended Motion to Dismiss [#30], Ex. A ("Fishman Affidavit"), at 1.

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the Vaccine Manufacturers until they follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available.").

The same reasoning holds true for Reliant's motion for summary judgment, to which the plaintiffs have not responded. Reliant contends it owed no duty to Collin preventing it from exposing him to normal power plant emissions because the risk of mercury poisoning to Collin was not foreseeable. *See* Reliant's Motion for Summary Judgment [#31], at 3-6. Reliant also argues the plaintiffs cannot establish Reliant's power plants caused Collin's injuries because the power plant emissions contain very low levels of mercury and no scientific studies have linked autism to power plant emissions. *Id.* at 7-10. These arguments on the merits obviously involve complicated factual determinations that this Court cannot make before allowing the plaintiffs a period of discovery

-7-

(despite the plaintiffs' failure to respond to Reliant's motion which, under the Local Rules, entitles the Court to grant the motion as unopposed). Additionally, the Court will not rule on the merits of the plaintiffs' claims against Reliant before determining if the claims are properly before this Court as an appendage to this cause of action. Accordingly, the Court will dismiss Collin Carabine's claims against all defendants rather than allow discovery on Eli Lilly and Reliant.

### III.   Pete and Heidi Carabine's Individual Claims

Pete and Heidi Carabine bring claims individually and as next friend of Collin Carabine. Individually, they seek recovery for all past and future costs associated with Collin's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 20. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Pete and Heidi Carabine can only bring their claims as next friend of Collin, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Pete and Heidi Carabine's individual claims for damages because they are derivative of Collin's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Collin's claims in the Court of Federal Claims.[5] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court.

limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Pete and Heidi Carabine's individual causes of action against all defendants until Collin's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that Eli Lilly and Company's Motion to Dismiss [#4] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#25] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#25] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

---

42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#11] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#23] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss [#30] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and DENIED IN PART as to Pete and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Defendant Reliant Energy, Inc's Motion for Summary Judgment [#31] is DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Collin Carabine against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on June 7, 2003 informing the Court of the status of their petition, if any, filed on behalf of Collin Carabine in the Court of Federal Claims.

SIGNED this the 8th day of October 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-