OFFICE OF SPECIAL MASTERS
No. 02-819V
(Filed: December 30, 2002)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KIM STEWART, Parent of Heath  \*
Stewart, a Minor,  \*
 \*
 Petitioner, \*
 \*
v.  \*  TO BE PUBLISHED
 \*
SECRETARY OF HEALTH AND  \*
HUMAN SERVICES, \*
 \*
 Respondent. \*
 \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Ronald Homer, Boston, Massachusetts, for petitioner.
Vincent Matanoski, Department of Justice, Washington, D.C., for respondent.

### ORDER DENYING MOTION TO DISMISS

*HASTINGS, Special Master*

This is an action in which the petitioner seeks an award under the National Vaccine Injury Compensation Program (hereinafter "the Vaccine Program" or "the Program").[1] Respondent has filed a motion seeking dismissal of the petition. For reasons to be stated below, I hereby deny that motion.

I

### THE AUTISM CASES AND THE "OMNIBUS AUTISM PROCEEDING"

The respondent's dismissal motion in this case arises in the context of an unusual situation

---

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2000 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2000 ed.). I also note that I will sometimes refer to the statute that enacted the Program as the "Vaccine Act."

involving multiple cases filed under the Vaccine Program that share a common issue of medical causation. Each of these cases involves an individual who suffers from a neurodevelopmental disorder known as "autism spectrum disorder"—"autism" for short—or a similar neurodevelopmental disorder. In each case, it is alleged that such disorder was causally related to one or more vaccinations received by that individual--*i.e.*, it is alleged that the disorder was caused by measles-mumps-rubella ("MMR") vaccinations; by the "thimerosal" ingredient contained in certain diphtheria-tetanus-pertussis ("DTP"), diphtheria-tetanus-acellar pertussis ("DTaP"), hepatitis type B, and hemophilus influenza type B ("HIB") vaccinations; or by some combination of the two. To date, nearly 1,300 such cases have been filed with this court, and many more filings (perhaps several thousand) are anticipated.

To deal with this large group of cases involving a common factual issue--*i.e.*, whether these types of vaccinations can cause autism--the Office of Special Masters (OSM) conducted a number of informal meetings with attorneys who represent many of the autism petitioners and with counsel for the Secretary of Health and Human Services, who is the respondent in each of these cases. At these meetings the petitioners' representatives proposed a special procedure by which the OSM could process the autism claims as a group. They proposed that the OSM utilize a two-step procedure: first, conduct an inquiry into the *general causation issue* involved in these cases-- *i.e.*, whether the vaccinations in question can cause autism and/or similar disorders, and if so in what circumstances—and then, second, apply the outcome of that general inquiry to the individual cases. They proposed that a team of petitioners' lawyers be selected to represent the interests of the autism petitioners during the course of the general causation inquiry. They proposed that the proceeding begin with a lengthy period of discovery concerning the general causation issue, followed by a designation of experts for each side, an evidentiary hearing, and finally a ruling on the general causation issue by a special master. Then, the general causation conclusions, reached as a result of the general proceeding, would be applied to the individual cases.

As a result of the meetings discussed above, the OSM adopted a procedure generally following the format proposed by the petitioners' counsel. On July 3, 2002, the Chief Special Master, acting on behalf of the OSM, issued a document entitled Autism General Order #1.[1] That General Order sets up a proceeding known as the Omnibus Autism Proceeding (hereinafter sometimes "the Proceeding"). In that Proceeding, a group of counsel selected from attorneys representing petitioners in the autism cases are in the process of obtaining and presenting evidence concerning the *general issue* of whether these vaccines can cause autism, and, if so, in what circumstances. The results of that general inquiry will then be applied to the individual cases. (Autism General Order #1 at 3 (2002 WL 31696785 at *3).)

---

[1] The Autism General Order #1 is published at 2002 WL 31696785 (Fed. Cl. Spec. Mstr. July 3, 2002). I also note that the documents filed in the Omnibus Autism Proceeding are contained in a special file kept by the Clerk of this court, known as the "Master Autism File." That file may be viewed at the Clerk's office, or viewed on this court's Internet website at www.uscfc.uscourts.gov/osm/osmautism.htm.

2

The Autism General Order #1 assigned the responsibility for presiding over the Omnibus Autism Proceeding to the undersigned special master. In addition, I have also been assigned responsibility for all of the individual Program petitions in which it is alleged that an individual suffered autism or an autistic-like disorder as a result of MMR vaccines and/or thimerosal-containing vaccines. The individual petitioners have agreed that, in general, no proceedings with respect to the *individual* petitioners will be conducted until after the conclusion of the Omnibus Autism Proceeding with respect to the *general* causation issue.[1] The OSM will then deal specifically with the individual cases.

II

### ISSUE OF THE "SHORT-FORM" AUTISM PETITIONS

As noted in the Autism General Order #1 (p. 4; 2002 WL 31696785 at *2), during the meetings of the informal advisory group, the respondent's representatives did not oppose the petitioners' general plan, as set forth above, that the OSM first conduct a general inquiry into the causation question, then apply the conclusions reached in that inquiry to the individual cases. A difference of opinion did emerge, however, on one important procedural point, a difference which ultimately resulted in the motion at issue here.

The petitioners' representatives proposed that would-be petitioners who wish to elect into the Omnibus Autism Proceeding be permitted to file their Program petitions by filing very simple short-form "opt-in" petitions. Each such short-form petition, it was proposed, would consist basically of a petition form containing the names of the injured vaccinee and that vaccinee's parents or other representatives, and an agreement to opt into the Omnibus Autism Proceeding. By using the short-form petition, each petitioner would automatically be asserting that the vaccinee had suffered autism or a similar disorder as a result of MMR vaccinations and/or thimerosal-containing vaccinations. The short-form petition would not contain a detailed account of the relevant vaccinations and the history of the vaccinee's disorder, nor would it be accompanied by the medical records of the vaccinee's injury. Respondent's representatives indicated that they could not agree to this part of the petitioners' proposal, which would allow the filing of a "short-form" petition unaccompanied by medical records. They pointed to the statutory provisions calling for a Program petition to set forth a detailed account of the injury alleged, and contended that a petition must be filed along with all relevant medical records. See § 300aa-11(c).

The OSM noted this concern of respondent in the Autism General Order #1 (p. 7, fn.4), and then analyzed the concern in detail in a document filed on July 8, 2002, entitled "Discussion of Issue of Short-Form Petitions" (hereinafter "Discussion"). Like the Autism General Order #1, this

---

[1] I note that it is up to each individual petitioner to determine whether to defer proceedings concerning his own case pending the completion of the Omnibus Autism Proceeding. If an individual petitioner has proof of causation in his own case that he wishes to put before a special master at any time, that petitioner will be allowed to do so.

3

"Discussion" document was filed by the Chief Special Master on behalf of the OSM. The Chief Special Master acknowledged that the respondent was raising serious and important concerns, but, considering all the circumstances, concluded that it was appropriate to permit use of the short-form petitions. (Discussion at 2-4.)

After publication of the Autism General Order #1, many petitioners began to file short-form petitions as a way of simultaneously filing their Program petitions and indicating their agreement to stay proceedings in their own individual cases pending the completion of the Omnibus Autism Proceeding. As of November 30, 2002, more than 1100 short-form petitions or very similar petitions[4] had been filed. The petitioner in this case, Kim Stewart, filed a short-form petition on July 18, 2002. No medical records were filed with the petition, although petitioner's counsel also filed a "Motion for Issuance of Subpoena," requesting permission to utilize court subpoenas to obtain medical records pertaining to the autistic condition of petitioner's son, Heath Stewart. I issued an Order in this case on August 7, 2002, granting the subpoena request and confirming that, at petitioner's request, I would not conduct any case-specific proceedings in this case (unless requested by a party) until the completion of the Omnibus Autism Proceeding.

On August 15, 2002, the respondent filed a "Motion to Dismiss" (hereinafter "Motion") asserting that this petition should be dismissed because it was not accompanied by medical records or affidavits describing Heath Stewart's condition. Petitioner's counsel requested extensions of time for responding to the motion, so that counsel could consult with other attorneys representing autism petitioners before filing petitioner's response. Petitioner ultimately filed her reply to the motion ("Reply") on December 2, 2002, urging that I deny the motion to dismiss. Respondent filed a response memorandum ("Response") on December 5, 2002.

III

## THE STATUTE DOES NOT REQUIRE THAT I DISMISS THIS PETITION

I have carefully considered respondent's arguments, but I conclude that, contrary to respondent's contentions, the statute does not require that I dismiss this petition. My reasoning will follow.

Respondent bases his motion chiefly upon those portions of the Vaccine Act which state that certain documents are to be filed with a Program petition. The Vaccine Act states that a petition "shall contain * * * an affidavit, and supporting documentation, demonstrating that" the petitioner qualifies for an award under Program. § 300aa-11(c)(1). The Act further states that certain types of medical records, such as prenatal, vaccination, and physician records, shall accompany the petition.

---

[4] More than 600 petitions have been filed using the "short-form" format as set forth in the Autism General Order #1, Ex. B; no medical records were filed with most of those petitions. In addition, one law firm has filed more than 500 petitions that are only slightly more detailed than the short-form version; those petitions also were filed without medical records.

4

§ 300aa-11(c)(2). Based on these provisions, respondent seems to argue that any petition that is not accompanied at the time of filing by all the records mentioned in § 300aa-11(c)(2) must therefore automatically be dismissed, for failure to comply with the statute. I find this argument to be wholly unpersuasive.

It is true that, as respondent points out, § 300aa-11(c) of the statute contemplates that, ideally, a Program petition will set forth all details of the vaccinee's injury, and be accompanied by all relevant medical records. As respondent notes, the instruction that a petitioner file a detailed petition with all relevant medical records was obviously designed to enable the special master to promptly evaluate and rule upon the claim. Throughout the history of the Program, the special masters have strongly urged that detailed petitions accompanied by all medical records be filed whenever possible. And in situations where such complete petitions have been filed, special masters have done everything possible to speedily evaluate and rule upon such petitions.

However, the history of the Program has also shown that the ideal is not achieved in every Program case. In a great many Program cases (probably a substantial majority) petitions have been filed with some medical records, but not all of those necessary for processing the case.[5] In such cases, the processing of the claim has been delayed for at least some period of time until the additional records could be obtained. Indeed, in a substantial number of cases--usually those in which the final allowable filing date under the statutory limitations period was approaching-- petitions have been filed without *any* records at all; in some such cases the petitions have also contained very little description of the injury claimed, amounting to no more than a statement that a vaccinee was injured by a vaccination. In those situations, the processing of each case was delayed until all relevant records were obtained and the petitioner could specifically describe the alleged injury. This process sometimes has taken many months, and, in a few extreme cases in which it was very difficult to obtain medical records, even years.

Yet, in these situations, it has not been argued, by respondent or anyone else, that petitions that were not complete when filed should be summarily dismissed for that reason. In such situations, the special masters have generally urged that the necessary records be filed as soon as possible, but have afforded such petitioners the time needed to obtain and file records. Thus, for fourteen years-- the entire history of the Program--failure to file all of the relevant medical records with a petition has never been considered reason to dismiss the petition. But now, for the first time, respondent proposes a new and extremely harsh interpretation of the statute. What has generated this startling change of statutory interpretation by respondent? Respondent does not tell us.

Of course, as respondent has pointed out (Response at 4), the fact that respondent has not sought in the past to dismiss petitions that were unaccompanied by medical records does not automatically mean that respondent's current motion is without merit. The proper question, as

---

[5] For example, petitioner's counsel, whose law firm has probably handled more Program cases on petitioners' behalf than any other firm over the past fourteen years, asserts that "in practice, vaccine petitions are almost never filed with complete supporting documentation."

5

respondent points out, is whether the statute requires dismissal in this case, even if, in answering that question, I were to conclude that all parties (including respondent) have been erroneously interpreting the statute for 14 years.[6] Addressing that question, I conclude that the statute does *not* require dismissal.

Respondent's memorandum's asserts that the issue involved in this motion is whether a special master in a Program case has authority to "amend or alter" the statute, or to "waive requirements" set forth in the statute or this court's rules. (Motion at 5, 7.) Of course, a special master has no authority to "amend," "alter," or "waive" statutory requirements. The question, rather, is whether any part of the statute *requires* that a petition *automatically be dismissed* if it is filed without the medical records necessary to fully evaluate the petition. Reading the statute as a whole, I conclude that the statute does *not* so require.

The short summary of my analysis is simply that there is nothing in the statute or the rules of this court indicating that when a Program petition is filed without medical records, it must *automatically* be dismissed. While the statute does state, as noted above, that the petition "shall" contain certain medical records, the statute and this court's rules are silent concerning what should happen in the event that a petition is filed without such medical records. The interpretation of the statute that has obviously been utilized by all of the special masters throughout the history of the Program is that, considering the statute as a whole, the presiding special master in each Program case has *discretion* to regulate the procedure in order to further the goals of the Program. That is, the interpretation has been that the special master has *discretion* to entertain petitions filed without all of the required documents, and to allow the petitioner to file at a later time any documents that were not filed with the petition.

The existence of such discretion is supported by the statutory description of the duties of special masters, contained at § 300aa-12(3)(B). That statutory section provides a special master presiding over a Program case with broad discretion in determining how to take evidence and to resolve the claim. It provides, *inter alia*, that the special master "may require such evidence as may be reasonable and necessary," "may require the submission of such information as may be reasonable and necessary," and "may require * * * the production of any documents as may be reasonable and necessary." § 300aa-12(d)(3)(B)(i), (ii), and (iii). The fact that this provision in general gives the special master such extremely broad discretion, in determining procedure in Program cases, provides implicit *general* support to the conclusion that Congress must have intended that a special master

---

[6] I note that in a number of *non-autism* Program cases petitions have been filed without medical records even since the date (August 15, 2002) on which respondent filed the dismissal motion in this case. In those cases, not only has respondent not filed any dismissal motions, but respondent's attorneys, to their credit, have often been helpful in such cases in assisting petitioners in obtaining and filing the necessary medical records. It is confusing to me how respondent's counsel can take the position in this case that I have no discretion to do anything but dismiss the petition, but in other cases in which petitions were filed without medical records, respondent *to this day* seems to have no objection to processing the cases.

6

have *discretion* in determining when, if ever, a petition should be dismissed for failure to supply the relevant medical records. Moreover, it is also important that the portions of § 300aa-12(d)(3)(B) quoted above *specifically* give the special master authority to "require * * * evidence," "require the submission of * * * information," and "require the production of * * * documents." These provisions, thus, *specifically* give the special master broad discretion to determine the *timing* of submission of evidence in a Program proceeding, which evidence obviously will nearly always include *medical records*. These provisions would seem to become meaningless if the statute required the immediate, automatic dismissal of any petition not accompanied by all of the records described in § 300aa-11(c).

A review of this court's *rules* also supports my conclusion that a special master has discretion whether or not to dismiss a petition that is unaccompanied by all specified medical records. This court has promulgated the "Vaccine Rules," which currently appear at Appendix B to the Rules of the United States Court of Federal Claims. Vaccine Rule 1 states that "[i]n all matters not specifically provided for by the Vaccine Rules, the special master * * * may regulate the applicable practice * * *." Vaccine Rule 3 provides that "[t]he special master shall determine the nature of the proceedings" in Program cases. Vaccine Rule 8 states that "[t]he special master in each case, based on the specific circumstances thereof, shall determine the format for taking evidence * * *." The Vaccine Rules, then, in giving the special master such extremely broad discretion over Program proceedings--*i.e.*, authority to "regulate the applicable practice," to "determine the nature of the proceedings," and to "determine the format" for taking evidence--also imply that a special master must have discretion whether or not to immediately dismiss a petition when it is filed without medical records.

Further, as petitioner has pointed out, a change in the Vaccine Rules adopted by this court seems to *specifically indicate* that a special master should not automatically dismiss a petition filed without medical records. That is, in the set of Vaccine Rules adopted by this court on January 18, 1990, Vaccine Rule 2 contained section (e)(4), which stated as follows:

> "Petitions not accompanied by all the documents required by statute and the Vaccine Rules, or an affidavit explaining why any missing required documents are unavailable, will not be filed by the Clerk."

That section (e)(4) of Rule 2, however, was, in practice, not enforced, to my knowledge. To the contrary, when for the first time a general revision of the Vaccine Rules was undertaken, section (e)(4) of Rule 2, as quoted above, was deleted. And in deleting that provision, the Rules Committee of this court explained the reason for the deletion as follows.

> The actual practice has been for the clerk to file any document that purports to be a petition, and then the respondent and/or the special master notifies petitioner if all

7

required records were not submitted. This approach is preferable to having the clerk reject petitions, which might result in missing the limitations period.[1]

Thus, the judges of this court acting collectively, in revising this court's rules, have explicitly rejected an interpretation of the Vaccine Act that would require rejection of a Program petition merely because it was not accompanied by medical records. This action by the judges of this court clearly offers support to the interpretation of the statute that I am adopting here.

I note further that the interpretation of the statute that I am adopting here does not disregard or ignore the provisions of § 300aa-11(c), described above, with regard to the filing of medical records and other supporting documentation. As respondent points out, the instruction contained in § 300aa-11(c), that a petitioner file a detailed petition accompanied by all relevant medical records, was obviously designed to enable the special master to promptly evaluate and rule upon the claim. And it seems likely that Congress expected that in most Program cases, the petitioner would be able to file the relevant records with the petition, and thereafter would be able to promptly present petitioner's theory of entitlement to the special master. However, Congress must have understood that in at least *some* cases the relevant medical records could not be filed along with the petition, and/or the petitioner would not be immediately ready to present the petitioner's proof of entitlement to the special master. Certainly Congress must have intended that in such cases the special master would have discretion to supervise the filing of evidence and the processing of the case in an orderly fashion appropriate to the circumstances. There is nothing in the statute or the legislative history to indicate that Congress intended that the special master would be required to *automatically dismiss* any case in which all relevant documents could not be filed with the petition. Therefore, I do not believe that my interpretation of the statute conflicts with the directives concerning the filing of affidavits and medical records contained in § 300aa-11(c).

Further, I am *not* claiming, as respondent suggests, the authority to "waive" or "amend" the requirement that the petitioner file the materials described in § 300aa-11(c). Of course, I would not purport to *resolve* this case without those materials. I conclude merely that a special master has discretion to *defer* the filing of such materials *to a later time*, in situations in which the overall circumstances of the case make such deferral seem appropriate.

Further, as petitioner has argued, respondent's interpretation of the statute, as requiring automatic dismissal of this petition, seems to be grossly inconsistent with the very purposes of the Program. Congress enacted the Program chiefly for the twin purposes of reducing tort litigation against vaccine manufacturers and administrators, as well as compensating individuals who may have been harmed by vaccinations. (See, e.g., H.R. Rept. No. 99-908, 99th Cong., 2d Sess., pp. 3-7 (reprinted at 1986 U.S. Code Cong. & Admin. News 6344-6348).) Further, the Vaccine Act clearly seems to require that, as respondent himself agrees, all claims of the sort involved in the Omnibus

---

[1]"Notice of Proposed Changes to Appendix J of the Rules of Procedure (Vaccine Rules)," May 16, 2000, Page 4, Rules Committee Note to Rule 2(e)(4).

8

Autism Proceeding *must* be filed in the Vaccine Program.⁸ *Leroy v. Secretary of HHS*, No. 02-392V, 2002 WL 31730680 (Fed. Cl. Spec. Mstr. Oct. 11, 2002). Given that the Vaccine Act *required* the autism petitioners to bring their claims to this court as Program petitions, how would it further the purposes behind the Program if I interpreted the statute to require that I immediately *dismiss* most of those petitions because they were not filed along with complete medical records? To the contrary, such an interpretation would clearly seem to *frustrate* the clear Congressional intent that these claims be adjudicated under the Program, and that such petitioners be given a chance in Program proceedings to demonstrate the merits of their claims.

In short, for all the reasons stated above, I must reject the respondent's argument that the Vaccine Act requires the automatic dismissal of this petition, or of any petition filed under the Program, merely because such petition was not accompanied by all of the materials listed at § 300aa-11(c). Rather, I conclude that the statute, viewed as a whole, affords the special master with broad *discretion* to determine *when* a petitioner must file the required documents. I conclude that in an appropriate situation—for example, if the special master has repeatedly instructed a petitioner to supply documents but that petitioner has refused or failed to do so—a special master may dismiss a Program petition for failure to file the records mentioned at § 300aa-11(c). But the respondent's argument that the statute *requires* automatic dismissal *whenever* a petition is filed without those records is, in my view, without merit.⁹

IV

## EXERCISE OF DISCRETION

As noted above, I conclude that I have *discretion* whether to dismiss this case. Of course, I will exercise that discretion in favor of *denying* respondent's motion to dismiss. The petitioner in this case submitted her petition in reliance on the statement in the Autism General Order #1 (p. 7; 2002 WL 31696785 at *6) authorizing the use of short-form petitions in autism cases. Further, the fact that no records have been filed as yet in this case certainly is not delaying resolution of the case in any way, since the petitioner and her counsel have elected to defer proceedings in this case

---

⁸Under the Vaccine Act, a claimant alleging injury from a thimerosal-containing vaccination or MMR vaccination may not sue a vaccine administrator or manufacturer without first bringing a Program claim. See *Leroy v. Secretary of HHS, supra*; § 300aa-11(a)(2).

⁹Respondent has also stated that the short-form petitions "raise a significant question regarding whether they are legally adequate to stop the running of the Vaccine Act's statute of limitations." (Motion at 5, fn.1.) I do not understand why there would be such a question. By filing the short-form petition, the petitioner is clearly naming a particular vaccinee, alleging that such vaccinee suffered autism or an autism-like disorder as a result of MMR vaccines and/or thimerosal-containing vaccines, and certifying that the petition is being timely filed. (See Autism General Order #1 at Exhibits A and B (2002 WL 31696785 at *7-8).) I do not understand how such a petition might fail to stop the running of the Vaccine Act's statute of limitations.

9

pending the completion of the Omnibus Autism Proceeding. I see no reason whatsoever to dismiss this petition.

V

**I WILL NOT REQUIRE THE FILING OF RECORDS AT THIS TIME**

As set forth above, I see no merit in the idea that I should dismiss the petition in this case. Indeed, the dismissal of this petition would seem to be such a harsh and unwarranted result that it is hard for me to believe that what respondent actually desires is that the petition be dismissed. I note that during the informal discussions that led to the Omnibus Autism Proceeding, discussions in which I participated, respondent's representatives argued that autism petitioners should be required to file detailed petitions accompanied by all medical records relevant to the vaccinee's condition. Perhaps what respondent's counsel actually wish me to do in this case—and in all of the autism cases involving short-form petitions or similar petitions—is not to *dismiss* the petition, but to order the petitioner to *supplement* the petition *at this time* with a detailed statement concerning the vaccinee's condition and copies of all related medical records. If that is actually what respondent seeks, then that request would strike me as a more reasonable request than respondent's stated assertion that I should *dismiss* the petition. Nevertheless, after careful consideration, I conclude that the Chief Special Master was correct when he determined, after consultation with other special masters, that it is appropriate to allow the autism petitions to be filed via short-form petitions, and to permit the filing of medical records in these cases to be deferred pending the completion of the Omnibus Autism Proceeding.

Initially, I acknowledge that the use of the short-form petitions in the autism cases has created a situation which is somewhat different from many situations in which, in the past, Program petitions have been filed without medical records. That is, in many cases over the history of the Program when incomplete petitions were filed, it was expected that the petitioners would move *expeditiously* to fill in the gaps in their petitions by supplying additional details and/or medical records. The procedure now being adopted in these autism cases, thus, is different, because the adopted procedure in the autism cases contemplates that in most of these cases the petitioners will not be required to supplement their petitions for many months, perhaps as much as two years. But this procedure is not wholly unprecedented. In late 1990 and early 1991, the Program was inundated with several thousand petitions filed at the end of the deadline for the so-called "pre-Act" cases involving vaccinations occurring prior to October 1, 1988. The system was unable to promptly and simultaneously process all those cases, and thus the cases were processed in a staggered fashion. At that time, the OSM did instruct many petitioners, whose cases could not be processed immediately, to delay filing their medical records until notified to so do. (*See* unnumbered General Order filed November 1, 1991.) As far as I am aware, neither the respondent nor anyone else argued at the time that that procedure, necessitated by a deluge of case filings in a short time period, was objectionable.

The Program now faces an influx of petitions that seems likely to rival, in numbers, the 1990-91 case filings. And as now constituted (six special masters currently in active service, a maximum

of eight authorized by statute), the OSM could not immediately analyze voluminous medical records in thousands of cases, even if requested to do so by petitioners. Moreover, the crucial factor is that the OSM is *not being requested* by petitioners to individually analyze the factual records in each of these cases at this time. The autism petitioners have requested, rather, that the OSM first conduct an inquiry into the *general causation issues*, and only *then* analyze the individual records if appropriate. In such circumstances--*i.e.*, petitioners do not want the OSM to analyze the individual case records at this time; the OSM does not currently have sufficient personnel to analyze the individual case records; the office of the Clerk of this court would be strained to accept and file the individual case records; and the individual records do not bear on the general causation issues to be decided in the Omnibus Autism Proceeding--I see no practical reason to require petitioners to file voluminous stacks of records in each individual case at this time.[14]

In this regard, respondent has stated that by permitting petitioners to refrain from initially filing medical records with their petitions, the OSM is guilty of "virtually guarantee[ing] that no statutory time goals will be realized in any of these cases." (Motion at 4.) This assertion is certainly misplaced. It is true, of course, that the statute states a time goal of 240 days for resolution of a Program claim (§ 300aa-12(d)(3)(A)(ii)), and that for the currently-filed autism cases that goal obviously will not be met. But, as respondent is well aware, the fact that we will not be able to meet the time goal in these cases clearly has nothing to do with the OSM's decision to allow short-form petitions. Rather, the delay is due to the fact that the *autism petitioners themselves* have requested an extended procedure in which we first engage in extensive discovery procedures, next explore the general causation issue, and only thereafter turn our attention to the individual cases. The goal of speedy resolution of Program petitions was obviously intended to benefit *petitioners*, not respondent. If the autism petitioners wish to utilize a relatively time-consuming procedure in order to give themselves the best chance of proving their cases, I see nothing wrong with that. And it should be quite clear that any delay in final resolution of these autism cases will result from the *petitioners' own choices* concerning how to pursue their cases, not from the OSM's decision to permit short-form petitions.

Respondent has also suggested that a reason for requiring more detailed petitions, and requiring medical records to be promptly filed in each autism case, would be to enable respondent's counsel to analyze each individual case to see whether the petition was *timely filed*, pursuant to § 300aa-16, which provides the deadlines for timely filing petitions. Respondent seems to suggest that in the event that the general causation issue is ultimately resolved in a way that would be favorable to some of the autism cases, then the processing of individual cases at that time might be speedier if the files in each case were already complete, and if the respondent had already been able to review each case to see if it was timely filed.

Again, there is some merit in the respondent's argument, but again, viewing the entire situation with an eye toward practicality, I agree with the decision reached by the Chief Special

---

[14] As petitioner's counsel points out (Reply at 7), in autism cases the medical and developmental records are likely to be quite voluminous.

11

Master, on behalf of the OSM, that there is no need for a rush to supply medical records in each case for this purpose. I agree with the reasoning of the Chief Special Master (see Discussion at 3-4) that it would make no sense for the OSM to begin a huge expenditure of time and effort toward determining whether individual autism cases were timely filed, prior to the completion of the Omnibus Autism Proceeding. There are several reasons for this conclusion.

First, the issue of whether any individual autism case was timely filed may very well prove to be *completely moot*. That is, if the Omnibus Autism Proceeding does not produce valid proof of causation that would apply to a particular case, and that particular petitioner is otherwise unable to demonstrate a causal link between the particular vaccinee's condition and a vaccination, then, as far as qualifying for compensation for the injury, it would be a moot point whether the petition was timely filed. Of course, the issue of timely filing might prove to be relevant to the issue of whether the petitioner would be entitled to an award for *attorneys' fees*.[10] However, in a particular case a petitioner might *never* seek an award for attorneys' fees. Therefore, any time spent by the parties or the special masters in autism cases concerning timeliness issues, prior to resolution of the general causation issues,[11] may prove to be a complete waste of time.

A second reason, in my view, involves the fact that there are currently pending before Congress proposals to modify § 300aa-16(a), which defines the period for timely filing a Program petition. Respondent's own representatives, I understand, have endorsed one such proposal, which would extend the filing period specified in § 300aa-16(a)(2) from 36 months after the onset of symptoms to 72 months after onset. Other pending proposals would provide an even lengthier time period for filing. Further, as I understand it, it appears not only possible, but *very likely*, that *some* kind of change in the limitations period will be enacted by the incoming Congress. Therefore, in this unusual situation in which a change to the applicable statutory provision is not only possible, but *seems likely*, it would seem to be an unfortunate waste of resources to expend extensive attorney and

---

[10] Under the Program a petitioner who fails to demonstrate entitlement to an award for an injury may nevertheless be granted compensation for attorneys' fees, if the petition was filed in good faith and with a reasonable basis in fact. (§ 300aa-15(e)(1).) However, it has been held that if the petition was not *timely filed*, the petitioner is ineligible even for an attorneys' fee award. See, e.g., *Jessup v. Secretary of HHS*, 26 Cl. Ct. 350 (1992).

[11] To be sure, in many court proceedings, including Program cases, it is common to resolve "timely filing" issues *prior* to addressing the substantive merits of the case. But that procedure makes sense in many proceedings because resolving the timeliness issue in such a case may prevent the need for a lengthy trial concerning the substantive merits of the case. With respect to the autism cases, on the other hand, we will need to explore the *general* causation issues *in any event*, even if many individual cases were to be dismissed on timeliness grounds. Therefore, in terms of conserving the resources of both the parties and the OSM, it seems to make sense to delay spending time on individual timeliness issues, since the resolution of the general causation issue may make the timeliness issues moot.

12

special master time in grappling with timeliness issues in large numbers of autism cases, pursuant to a provision that is likely to be changed.

Third, I note that "timely filing" issues in autism cases have the potential to be far more complicated than timeliness issues in other types of cases, in or out of the Program. For example, autism seems to be a disorder with no dramatic and obvious onset, so that determining what was the "first symptom" of an autistic disorder is a question of fact that might be quite complex in many cases. Further, the causation theory in the autism cases seems to be that the vaccinee is injured by a *combined effect* of a number of different vaccinations. If that is so, then the statute-of-limitations issues become even more complex. For example, if a vaccinee was injured by a combination of vaccination A and vaccination B, then it may turn out that such vaccinee's petition was *not* timely filed with respect to the first symptom of the injury caused by vaccination A, but *was* timely filed with respect to the first symptom of the *additional injury* caused by the later-administered vaccination B. In other words, in the autism cases the issues of *timely filing* may be inextricably intertwined with resolving the *causation* issues. Therefore, this potential complexity of the timeliness issues with respect to the autism cases adds, in my view, another very strong reason for deferral of timeliness issues until the completion of the Omnibus Autism Proceeding.

Fourth, petitioner's counsel are still estimating that several thousand more autism cases are likely to be filed with this court in the coming months. If this occurs, and if I were to require detailed records to be provided with each petition at this time, it seems doubtful that respondent would have sufficient personnel available to analyze each case for potential timeliness issues. Further, even if respondent were able to analyze each case, and raised timeliness issues in a substantial number of cases, it would not be possible or desirable for the special masters to spend time resolving such timeliness issues. Recognizing the constraints of time and resources, I agree with the Chief Special Master that the special masters' efforts would best be dedicated to (1) resolving the general causation issues in the Omnibus Autism Proceeding, and (2) processing the many non-autism cases on each special master's docket. The parties' time and resources are likewise best allocated to those two tasks, rather than to addressing timeliness issues in autism cases that may prove to be moot.

In short, although I have given full consideration to the concerns raised by respondent, in the very unusual circumstances presented by these autism cases, with the likelihood of thousands of case filings in the upcoming months, I find it appropriate to continue to allow the filing of short-form autism petitions, and to allow the autism petitioners, if they wish,[11] to defer the filing of medical records to a later time.

VI

CONCLUSION

For the reasons stated above, the respondent's motion to dismiss this petition is hereby

---

[11] An autism petitioner, of course, may file a more detailed petition, and medical records, if the petitioner wishes to do so.

13

denied. As previously noted, at petitioner's request I will continue to refrain from conducting case-specific proceedings in this case, pending the outcome of the Omnibus Autism Proceeding.

_____
George L. Hastings, Jr.
Special Master