United States District Court
Southern District of Texas
FILED

JUL 2 1 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VERONICA RAMIREZ, | § | |
| Individually, and as Next Friend of | § | |
| JEREMIAH S. RAMIREZ, a minor, | § | Civil Action No. M-03-155 |
| | § | |
| *Plaintiffs,* | § | JURY DEMAND |
| | § | |
| VS. | § | |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION d/b/a WYETH, ET AL, | § | |
| | § | |
| *Defendants.* | § | |

## VACCINE DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO VACCINE DEFENDANTS' RENEWED RULE 12(b) AND 12(c) MOTION TO DISMISS

The Vaccine Defendants[1] file this their Reply to Plaintiff's Response to Vaccine Defendants' Renewed Motion to Dismiss and would show the Court the following:

## INTRODUCTION

Plaintiffs' Response is essentially a rehashing of their remand argument that this Court lacks diversity jurisdiction. Plaintiffs' sole basis for this attack is that their "parent only" claims for lost wages and for mental anguish damages under the Texas Deceptive Trade Practices Act ("DTPA") remain viable against the local Healthcare Defendants.[2] Thus, according to Plaintiffs, the presence of these local defendants strips the Court of diversity

---

[1] The "Vaccine Defendants" are Abbott Laboratories (incorrectly named as "Abbott Laboratories, Inc.") SmithKline Beecham Corporation d/b/a GlaxoSmithKline, Aventis Pasteur Inc., Merck & Co., Inc., and Wyeth (formerly known as American Home Products and incorrectly named as "American Home Products Corporation d/b/a Wyeth, Wyeth Laboratories, Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines and Lederle Laboratories).

[2] Plaintiffs do not address any other "parent only" or "stand-alone" claims in their response. Thus, Plaintiffs appear to concede that their "parent only" claims for mental anguish, emotional distress, and loss of consortium are not viable.

jurisdiction.[3]    Alternatively, Plaintiffs suggest that these remaining "parent only" claims constitute independent grounds for recovery against the Vaccine Defendants.  Neither of these claims is viable against the Vaccine Defendants or the Healthcare Defendants.

Plaintiffs have conceded that the vast majority of their claims against the Vaccine Defendants and the Healthcare Defendants are barred by the National Childhood Vaccine Injury Compensation Act (the "Vaccine Act" or "Act"), 42 U.S.C. §§ 300aa-1 *et seq*.  This concession reaches not only the minor Plaintiff's claims, but also all of the parent Plaintiff's derivative claims.  *See* Plaintiffs' Response at 5.  Thus, the only question remaining on both the remand argument and dismissal is whether Parent Plaintiff can maintain her DTPA and lost wages claims.  Neither of these claims is viable against either the Vaccine Defendants or the improperly joined Healthcare Defendants.  Thus, the Court has jurisdiction over and should dismiss all claims against the Vaccine Defendants.

## I.    The Court has jurisdiction to entertain Vaccine Defendants' Motion to Dismiss

Plaintiffs cannot maintain any claims against the Healthcare Defendants. Accordingly, these local defendants are improperly joined and should be disregarded when assessing the Court's diversity jurisdiction.  *See Smallwood*, 385 F.3d at 573.

---

[3]    As outlined in the parties' various filings on removal/remand issues, the applicable standard for determining whether a local Healthcare Defendant has been improperly joined is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. RR Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

A.    **Plaintiffs cannot maintain their vaccine-related injury claims.**[4]

Plaintiffs no longer dispute that the Vaccine Act bars civil actions for "vaccine-related injuries"[5] unless the claimant has first exhausted the Act's administrative remedies. *See* 42 U.S.C. § 300aa-11(a)(2)(B). Similarly, no dispute remains as to whether claims alleging that thimerosal caused neurological injury, such as the ones at issue here, are "vaccine-related" and thus are covered by the Act.[6]  Accordingly, parent Plaintiff was required to exhaust the administrative remedies afforded under the Act before bringing suit for vaccine-related injuries against either the Vaccine Defendants or the Healthcare Defendants.[7]

Parent Plaintiff filed the present civil action before filing for compensation in Vaccine Court. *See* Vaccine Defendants' Renewed Motion to Dismiss at 3.  Accordingly, parent Plaintiff did not exhaust her child's administrative remedies under the Vaccine Act *prior* to filing suit. *See id.*  This failure to comply with the Vaccine Act requires dismissal of all of Plaintiffs' vaccine-related injury claims. *See id.* at 4-10.

---

[4]    In their Response, Plaintiffs note that the protections of the Vaccine Act do not apply to thimerosal manufacturers. *See* Plaintiffs' Response at 7. This proposition is recognized in *Moss v. Merck & Co.*, 381 F.3d 501 (5th Cir. 2004). Because the Vaccine Act does not apply to thimerosal manufacturers, it is not a common defense under *Smallwood*. *McDonal v. Abbott Labs*, ___ F.3d ___, 2005 WL 957142, at *6 (5th Cir. Apr. 26, 2005). Accordingly, the only remaining issue with regard to Plaintiffs' remand argument is whether parent Plaintiff has alleged viable "parent only" lost wages and DTPA claims that cannot be pursued in Vaccine Court.

[5]    *See* 42 U.S.C. § 300aa-33(5) (defining "vaccine-related injury: as "an illness, injury condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, *except that* the term does not include [conditions] associated with an adulterant or contaminant intentionally added to such a vaccine") (emphasis added).

[6]    *See, e.g. Moss*, 381 F.3d at 504 (5th Cir. 2004) (characterizing as an "unremarkable proposition" that "a Thimerosal-related injury, occurring as a result of the administration of a vaccine, is a vaccine-related injury within the meaning of the Vaccine Act") *citing Leroy v. Sec'y, Dep't of Health and Human Servs.*, 02-392V, 2002 U.S. Claims LEXIS 284, at *18-19 (Fed. Cl. Spec. Mstr. Oct. 11, 2002); *see also McDonal*, ___ F.3d at ___, 2005 WL 957142, at *6 (holding that "the claims asserting vaccine-related injuries brought against the . . . nonresident Vaccine defendants were required to have first been brought in the Vaccine Court").

[7]    There is no dispute that the Vaccine Act covers each Healthcare Defendant as a "vaccine administrator," as that term is defined under the Act. The Act's tort suit bar applies equally to a vaccine-related injury claim against a "vaccine administrator" as it does to a claim against a "vaccine manufacturer." *See* 42 U.S.C. § 300aa-11(a)(3).

The Vaccine Court has long held that the premature filing of a vaccine-related injury claim in a court other than the Vaccine Court strips the Vaccine Court of jurisdiction to entertain a petition until the improperly filed suit is dismissed. *See Aull v. Sec'y, Dept. of Health & Human Servs.*, 2005 U.S. Claims LEXIS 139, *21-*22 (Fed. Cl. 2005); *Flowers v. Sec'y, Dept. of Health & Human Servs.*, 49 F.3d 1558, 1562 (Fed. Cl. 1995); *Weddel v. Sec'y Dept. of Health & Human Servs.*, 23 F.3d 388, 393 (Fed. Cl. 1994). The basis for these rulings is Section 300aa-11(a)(5)(B) of the Vaccine Act, which mandates that "[i]f a plaintiff has pending a civil action [in state or federal court] for damages for a vaccine-related injury or death, such person may not file a petition [in Vaccine Court]." 42 U.S.C. § 300aa-11(a)(5)(B). Because Plaintiffs improperly filed this suit before proceeding in Vaccine Court, this provision renders their filing in and subsequent opt out from the Vaccine Court a nullity. Accordingly, Plaintiffs cannot maintain any vaccine-related injury claims.

### B.    Plaintiffs' claims against the Healthcare Defendants are governed by the MLIIA and the Texas Family Code.

#### 1.    The MLIIA and the Texas Family Code are the exclusive remedies available to Plaintiffs.

Under Texas law, the Texas Medical Liability and Insurance Improvement Act (the "MLIIA") provides the exclusive cause of action against healthcare providers for alleged personal injuries resulting from the rendition of healthcare services. The MLIIA covers:

> [any] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, *whether the patient's claim or cause of action sounds in tort or contract.*

Tex. Rev. Stat. Ann. Art. 4590i § 1.03(a)(4) (emphasis added). *See Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex. 1995) (MLIIA governs claims where challenged conduct "was an inseparable part of [the physician's] rendition of medical services").

The sole cause of action provided by the MLIIA is essentially one for professional negligence, requiring the plaintiff "to prove that the mode of treatment undertaken by the treating physician would not have been undertaken under the same or similar circumstances by a reasonable and prudent member of the medical community." *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 508 (Tex. App.—Fort Worth 2001, pet. denied). Accordingly, Texas courts have refused to recognize any other theory of recovery against healthcare providers where the claim is based on the rendition of healthcare services—such as the administration of childhood vaccines. *See Gomez v. Matey*, 55 S.W.3d 732, 735 (Tex. App.—Corpus Christi 2001, no pet.) (*no fraud claim* where allegations related to medical treatment); *Williams v. Walker*, 995 S.W.2d 740, 742 (Tex. App.—Eastland 1999, n.p.h.) (*no assault and battery* claim where allegations related to medical treatment); *MacGregor Medical Assoc. v. Campbell*, 985 S.W.2d 38, 39, 41 (Tex. 1998) (*no DTPA*, *breach of warranty*, or *contract* claim for a healthcare providers' alleged departure from the accepted standard of care); *Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex. 1995) (*no independent negligence or DTPA claims* against dentist based on the dentist's performance of dental surgery); *Ruiz v. Walgreen, Inc.*, 79 S.W.3d 235, 239 (Tex. App.—Houston [14th Dist.] 2002, n.p.h.) (*no breach of warranty or DTPA claims* against pharmacy where claim was based on the alleged improper filling of a prescription); *Easterly v. HSP of Texas*, 772 S.W.2d 211 (Tex. App.—Dallas 1989, no writ) (*no strict liability, breach of warranty, or DTPA claims* where defective product was inextricably related to provision of healthcare services).

The MLIIA provides that where a lawsuit based on the healthcare provider's alleged failure to warn the plaintiff of the hazards involved in a medical procedure, "*the only theory on which recovery may be obtained is that of negligence* in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." TEX. REV. STAT. ANN. ART. 4590i § 6.02 (emphasis added). Likewise, the provision of the Texas Family Code governing childhood vaccinations—Section 32.103—permits *only a claim for negligence* against the physician or medical facility responsible for administering immunizations to children:

> A person consenting to immunization of a child, a physician, nurse or other health care provider, or a public health clinic, hospital, or other medical facility *is not liable for damages arising from an immunization administered to a child* authorized under this subchapter *except for injuries resulting from the person's or facility's own acts of negligence.*

TEX. FAM. CODE § 32.103(b) (emphasis added). Thus, because parent Plaintiff alleges that her son was injured as a result of receiving routine child immunizations (Petition at ¶ 4.09), any claim against the Healthcare Defendants must be brought as a MLIIA claim alleging negligent conduct by the Healthcare Defendants—and only after 60 days written notice.[8] Indeed, it is for this reason that Judge Ron Clark of the Eastern District of Texas ruled on essentially identical pleadings filed by Plaintiffs' counsel that plaintiffs there could not maintain their claims in light of the MLIIA. *See Jones v. Amer. Home Prods. Corp.*, No. 1:03-cv-657, Order at 4 (E.D. Tex. Feb. 17, 2004) (Exhibit 1) ("Physicians ... are not liable for damages arising from an immunization administered to a child, except for injuries resulting from the person's ... own acts

---

[8]    The MLIIA requires that a plaintiff (i) provide written notice of a claim against a healthcare providers "at least 60 days before the filing of a suit in any court of this state" *and* (ii) *plead that the required notice was provided*. TEX. REV. STAT. ANN. ART. 4590i § 4.01(a)-(b).("[i]n such pleadings as are subsequently filed in any court, each party shall state that it has fully complied with the provisions of this section ").

of negligence"). Plaintiffs have failed to plead a viable claim under the MLIIA; and, thus, their

claims against the Healthcare Defendants are not viable.

2. **Plaintiffs' Petition fails to allege any negligent conduct by the Healthcare Defendants.**

Even ignoring Plaintiffs' failure to plead expressly a claim under the MLIIA,

Plaintiffs have no reasonable possibility of recovery against the Healthcare Defendants because

the Petition fails to specify *any facts* which support a potentially viable claim against them.

Instead, the section of the Petition entitled "Liability of Healthcare Defendants" makes two

vague allegations in regard to the Healthcare Defendants:

> The Healthcare Defendants are liable for their own distinct tortious conduct, separate and apart from the conduct of the Manufacturer Defendants, although they acted in concert with them.
>
> The conduct of the Healthcare Defendants forms an independent basis for imposing liability on them for commission of the acts referenced above.

Petition at ¶¶ 11.02-11.03. Such conclusory statements do not come close to alleging *facts*

supporting a claim for negligence by the Healthcare Defendants necessary to support the sole

claim allowed by the MLIIA and Texas Family Code. Rather, Plaintiffs must accompany their

legal theory of recovery against the Healthcare Defendants (had they specified one) with factual

allegations of conduct specifically attributable to the Healthcare Defendants. *See, e.g., Griggs v.*

*State Farm Lloyds*, 181 F.3d 694, 699 (affirming fraudulent joinder finding where plaintiff's

petition "allege[d] no *actionable facts* specific to [the in-state defendant]") (emphasis added);

*McIntire v. Rollins, Inc.*, 888 F.Supp. at 69 ("Where no specific *acts of negligence* are pled

against the [in-state] defendant, this Court has consistently held that the [in-state defendant] has

been fraudulently joined, and has dismissed [that defendant].") (emphasis added). *See also*

*Addison v. Allstate Ins. Co.*, 58 F.Supp.2d 729, 732 (S.D. Miss. 1999) ("[F]ailure to specify *a*

*factual basis for recovery* against a nondiverse party constitutes fraudulent joinder of that party.") (emphasis added).

The only other allegations specifically directed toward the Healthcare Defendants are found in the "Parties" section of the Petition and state only that each Healthcare Defendant "was engaged in the business of marketing, distributing and/or selling vaccines and/or products containing Thimerosal to the Plaintiff herein." Petition at ¶¶ 3.13-3.15.  Again, however, there is no allegation of any *negligent conduct* attributable to either of the Healthcare Defendants. Finding similar flaws in plaintiffs' pleadings in *Jones*, Judge Clark agreed that such vague, disjointed and conclusory allegations do not allege actionable facts or theories against the Healthcare Defendants.  *See Jones*, Order at 5 (Exhibit 1).    Thus, absent allegations of defendant-specific, actionable conduct, the Healthcare Defendants must be deemed fraudulently joined.  *See Griggs* at 699 (5th Cir. 1999) (plaintiff's "petition, which mentions [the in-state defendant] once in passing, then fails to state any specific actionable conduct on her part" is insufficient to require remand).[9]

### C.    Texas law does not recognize Parent Plaintiff's lost wages claim

Plaintiffs do not refute that under Texas law the right to recover the costs for needed medical care resides with the injured party.  Moreover, in a case involving parental provision of healthcare, there is no dispute that under Texas law the proper measure of such

---

[9]    Though Plaintiff's Motion to Remand argues that they can pursue a claim for assault and battery against the Healthcare Defendants under Texas law, Plaintiff makes no attempt to distinguish the only Texas authority addressing this question, *Williams v. Walker*, 995 S.W.2d 740 (Tex. App.—Eastland 1999, not pet.).  In *Williams*, the court of appeals held that where—as here—the alleged assault and battery is "an inseparable part of the rendition of medical services," the claim is covered by the MLIIA. *Id.* at 742.  As such, "*the only theory on which recovery may be obtained is that of negligence* in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent."  TEX. REV. STAT. ANN. ART. 4590i § 6.02 (emphasis added). The Motion to Remand also ignores the provision of the Texas Family Code governing childhood vaccinations—Section 32.103—which permits *only a claim for negligence* against the physician or medical facility responsible for administering immunizations to children.

damages is the wage rate for unlicensed medical care. *See Pressey v. Patterson*, 898 F.2d 1018 (5th Cir. 1990). Finally, Plaintiffs do not dispute that the costs of medical care are recoverable in a Vaccine Court proceeding. Together, these concessions are fatal to parent Plaintiff's claims for lost wages.

Parent Plaintiff is asking for something that a Texas court would never award her, the "delta" between what she could have earned in the workforce and the value of the medical care she provided her child. Contrary to Plaintiffs' assertions, the *Pressey* Court is clear that the right to recover healthcare costs resides with the injured party and that the measure of those damages is the value of the services alone. *See id.* at 1026. Thus, to believe that parent Plaintiff has an additional stand-alone claim for wages she allegedly lost while providing medical care to her child would require the Court both to reject *Pressey* and to create a new tort under Texas law.[10] Such fanciful conjecture does not form a "reasonable basis" upon which this Court can conclude that parent Plaintiff might recover.

In evaluating similar parental claims for healthcare costs, Judge Samuel B. Kent has unequivocally ruled that parent Plaintiffs "cannot state a valid claim to recover damages for medical expenses incurred on behalf of the Minor Plaintiffs." *See Blackmon v. Amer. Home Prods. Corp.*, 328 F.Supp.2d 647, 659 (S.D. Tex. 2004). Judge Kent's reasoning was based on the broad sweep of the Vaccine Act, which fully compensates injured parties and their representatives for such healthcare costs. *See id.* (*quoting Strauss v. Amer. Home Prods. Corp.*, 208 F.Supp.2d 711, 715 n. 8 (S.D. Tex. 2002)). Moreover, Judge Kent reasoned, as Vaccine Defendants contend, that "[t]o permit [parent] Plaintiffs to pursue claims for such expenses when

---

[10]    Not only is there no basis for such an action in Texas law, but the creation of such a cause of action runs contrary to the rule in other jurisdictions. *See* Vaccine Defendants' Renewed Motion to Dismiss at 14-5. Plaintiffs do not cite a single case recognizing such a tort or refuting this general rule.

they failed to do so in the Vaccine Court would undermine the stated objectives of the Vaccine Act." *Id.* Judge Kent dismissed with prejudice all of the parent Plaintiffs' claims, including those for healthcare-related lost wages. *See id.* Similarly, Judge John McBryde has ruled in yet another case brought by Plaintiffs' counsel that Texas law does not recognize a parent's claim for wages allegedly lost while providing healthcare services to an injured child. *See Chiles v. Amer. Home Prods. Corp.*, No. 4:03-cv-802-A, Order at 4 (Oct. 2, 2003) (Exhibit 2). This Court should likewise dismiss all of parent Plaintiff's claims so that they may be pursued properly, if at all, in the Vaccine Court.

### D.    Parent Plaintiff's DTPA Claims Fail as a Matter of Law.

Plaintiffs' DTPA arguments are an exercise in revisionist history. Plaintiffs do not dispute that the text of the DTPA and controlling case law prohibit them from maintaining DTPA claims arising from alleged personal injuries. Rather, Plaintiffs attempt to argue around this inconvenient DTPA provision and case law by suggesting that parent Plaintiff has pleaded a separate DTPA claim for her mental anguish. This novel, creative recasting of the pleadings is unsupportable.

#### 1.    Parent Plaintiff has not pleaded a stand-alone DTPA claim for mental anguish.

Section 9.04 of the Petition outlines the scope of Plaintiff's DTPA claims. This Section reads, in relevant part, "[p]laintiff has sustained severe and permanent physical injuries and other damages." *See* Petition at ¶ 9.04. Parent Plaintiff clearly has not alleged that she personally suffered physical injuries as a result of her child receiving vaccines, so this pleading can only apply to the minor Plaintiff—the only Plaintiff alleged to have suffered both "physical injuries *and* other damages." *See id.* (emphasis added).

In the Petition, the term "Plaintiff" was defined to mean both the minor Plaintiff and the parent Plaintiff.[11] In this instance, however, a plain reading of the Petition suggests that Plaintiff meant to state a DTPA claim only for the minor Plaintiff, as he is the only Plaintiff alleged to have suffered both "physical injuries *and* other damages." *See* Petition at ¶ 9.04 (emphasis added). If this reading is correct, then only the minor Plaintiff has a DTPA claim and it fails as a matter of law for the reasons discussed above. Alternatively, were one to apply Plaintiff's broader definition of the term "Plaintiff" as set out in the Petition, then Section 9.04 alleges that *both* individuals sustained "physical injuries *and* other damages," and therefore both parent and minor Plaintiffs' DTPA claims fail. There is no other plausible way to read this pleading. Accordingly, the Petition fails to state a DTPA claim upon which relief can be granted.

    2.      **Plaintiffs' Petition neither names a "Parent Plaintiff" nor alleges that any such "Parent Plaintiff" sought or acquired goods or services as required to have standing under DTPA as a "Consumer."**

Not only has the parent Plaintiff failed to allege a separate claim for mental anguish under the DTPA, the Petition does not adequately allege that "Parent Plaintiff" is a "Consumer," as the DTPA requires. To recover under the DTPA, one must be a "Consumer," as defined by that statute:

> (4) "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

---

[11]    *See* Plaintiff's Petition at ¶ 3.01 ("As used herein, the term 'Plaintiff' shall refer to both the parent and minor child.")

Tex. BUS. & COM. CODE § 17.45 (4) (Vernon 2004). Moreover, to qualify as a "Consumer," the Plaintiff must (1) either seek or acquire goods or services by purchase or lease, and (2) the goods or services purchased or leased formed the basis of the Plaintiff's Petition. *See Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 14 (Tex. 1987). Whether a Plaintiff qualifies as a "Consumer" is a question of law to be determined by the court, unless there is a dispute concerning factual issues that create consumer status. *Mendoza v. American Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.—San Antonio 1996, no writ).

Although it is clear that thimerosal-containing pediatric vaccines form the basis of the Petition, it was never alleged that "Parent Plaintiff" "[sought]" or "acquire[d]" the pediatric thimerosal-containing vaccines at issue in the case "by purchase or lease."[12] In fact, as previously discussed, the Petition did not allege any DTPA cause of action by a "Parent Plaintiff" standing separate and apart from those of the minor Plaintiff. The Petition's allegations either related to harm sustained by the "Plaintiff," which included the parent Plaintiff, Veronica Ramirez, and the minor Plaintiff, Jeremiah Ramirez, or only the "minor Plaintiff."[13] *See, e.g.* Petition at ¶¶ 4.09, 5.02, 6.02, 7.04, 8.02, 9.02 - 9.04 & 10.03 ("Plaintiff"); *id* at ¶¶ 5.01, 7.02, 9.01, 10.01, & 10.02 ("minor Plaintiff"). The Petition also does not allege the facts sufficient to qualify any newly identified "Parent Plaintiff" as a "Consumer" under the DTPA. Because the DTPA does not apply to personal injury claims such as those pleaded here, and no

---

[12] Plaintiffs' allegation that "Minor Plaintiff was administered such compound in his childhood vaccinations," see Petition at ¶¶ 7.02, 9.01 & 10.03, is insufficient to plead that "Parent Plaintiff" is a "Consumer." All claims of the minor Plaintiff are based on personal injury. Thus, Plaintiffs cannot maintain a suit under the DTPA. *See* Discussion *supra*.

[13] There are only two instances in the Petition in which "Plaintiff" seems to refer to the parent only, but neither are in the section stating causes of action against the defendants and both contradict the plain language of Plaintiffs' own definition of the term. *See* Petition at ¶ 4.06 ("[T]he result is that the Plaintiff's child has experienced severe bodily injury."); *id.* at ¶ 3.01 ("Plaintiff, **VERONICA RAMIREZ**, is the parent of **JEREMIAH S. RAMIREZ**. . . ."). The Petition's definition plainly states "the term 'Plaintiff' shall refer to both the parent and minor child." *Id.* at ¶ 3.01.

cognizable mental anguish claim under the DTPA was pleaded, Plaintiffs' DTPA claims should also be dismissed.

### 3. Plaintiff cannot recast an MLIIA-regulated claim as a DTPA claim.

As Judge Clark noted in *Jones*, Texas law specifically prohibits the "re-wording" of a MLIIA claim as a DTPA claim. *See Jones* Order at 8 (*citing Nguyen v. Kim*, 3 S.W.3d 146, 149-50 (Tex. App.--Houston [14th Dist.] 1999, no pet.) *and* TEX. REV. CIV. STAT. ANN. art. 4590i, § 12.01 (Vernon Supp. 2003)(stating that the DTPA does not apply to claims for negligence against a physician or healthcare provider)) (Exhibit 1). Accordingly, Plaintiffs cannot avoid the limitations of the MLIIA by creatively recasting their claims as ones under the DTPA. Thus, all of Plaintiffs' DTPA claims fail as to the Healthcare Defendants.

## II. Plaintiffs' claims against the Vaccine Defendants must be dismissed.

Plaintiffs' claims against the Vaccine Defendants fail for many of the same reasons that their claims against the Healthcare Defendants fail. Plaintiffs have conceded that their vaccine-related injury claims must be brought in Vaccine Court. Thus, Plaintiffs' failure to invoke properly and to exhaust their Vaccine Court remedy is therefore fatal to the vast majority of their claims. *See* Discussion at 1.A. *supra*. This leaves only parent Plaintiff's lost wages and DTPA claims at issue. *See id.*

Parent Plaintiff cannot maintain a lost wages claim. Texas law does not recognize such a claim. *See* Discussion at 1.C. *supra*. Moreover, the damages sought are recognized as costs of care and are recoverable in the Vaccine Court. *See id.* Similarly, parent Plaintiff has not pleaded and cannot maintain a DTPA claim for personal injuries to her child. *See* Discussion at 1.D. *supra*. In the end, Plaintiffs cannot maintain any of their claims against the Vaccine Defendants.

## CONCLUSION

Because parent Plaintiff has failed to comply with the Vaccine Act, this Court must dismiss her claims and those of her minor child. These include the claims for medical expenses expended "on behalf of" her child and the alleged loss of earning capacity of her child. The remainder of parent Plaintiff's individual claims must be dismissed because they are not cognizable under Texas law. Accordingly, Plaintiffs have no reasonable basis of recovery against the Healthcare Defendants. For all of these reasons, the Court should dismiss Plaintiff's Petition as against the Vaccine Defendants. The Vaccine Defendants request such other and further relief as the Court deems appropriate.

Respectfully submitted,

Richard L. Josephson
Attorney-in-Charge
State Bar No. 11031500
Federal ID No. 04614
One Shell Plaza
910 Louisiana
Houston, TX 77002
(713) 229-1460
(713) 229-1522 (fax)
richard.josephson@bakerbotts.com

COUNSEL FOR DEFENDANT MERCK & CO., INC. AND
DEFENDANT ABBOTT LABORATORIES

OF COUNSEL:

BAKER BOTTS L.L.P.

Paul R. Elliott
State Bar No. 06547500
Federal ID No. 12867
Scott Janoe
State Bar No. 24012897

Federal ID No. 27577
One Shell Plaza
910 Louisiana
Houston, TX 77002
(713) 229-1460
(713) 229-1522 (fax)

By: _____

    Michael R. Klatt
    Attorney-in-Charge
    State Bar No. 11554200
    Federal ID No. 13004
    P. O. Box 1148
    Austin, TX 78767
    (512) 472-8800
    (512) 474-1129 (fax)

COUNSEL FOR WYETH F/K/A AMERICAN
HOME PRODUCTS

OF COUNSEL

CLARK, THOMAS & WINTERS

Susan E. Burnett
State Bar No. 20648050
Federal ID No. 18604
P. O. Box 1148
Austin, TX 78767
(512) 472-8800
(512) 474-1129 (fax)

By: _____

    Gray H. Miller
    Attorney-in-Charge
    State Bar No. 21865900
    Federal ID No. 801
    1301 McKinney, Suite 5100
    Houston, TX 77010-3095
    (713) 651-5151
    (512) 651-5246 (fax)

COUNSEL FOR SMITHKLINE BEECHAM
CORPORATION D/B/A GLAXOSMITHKLINE

OF COUNSEL:

FULBRIGHT & JAWORSKI L.L.P.

By: _Bradley S. Wolff_
    Bradley S. Wolff
    Attorney-in-Charge
    Federal ID # 35532
    1355 Peachtree St., N.E., Suite 300
    Atlanta, GA 30309
    404.888.6123
    404.888.6199 (Fax)

COUNSEL FOR AVENTIS PASTEUR INC.

## Certificate of Service

I certify that on July 19, 2005, the above pleading was served on all counsel of record via electronic filing, facsimile, First Class U.S. Mail, and/or certified mail, return receipt requested.

_J. Scott Janoe_
J. Scott Janoe