FILED - CLERK
U.S. DISTRICT COURT

2004 FEB 17  AM 11: 16

TX EASTERN-BEAUMONT

BY _Petovia Bell_

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| MICHAEL L. JONES, and RHONDA L. JONES, EACH INDIVIDUALLY and AS NEXT FRIENDS OF KRISTIN M. JONES, A MINOR, § § § § | Case No. 1:03-CV-657 |
| V. § § | JUDGE RON CLARK |
| AMERICAN HOME PRODUCTS CORPORATION, ET AL. § § § | |

### ORDER

This case was filed in state court by plaintiffs Michael L. Jones and Rhonda L. Jones, individually and as next friends of their daughter, Kristin M. Jones. It was removed by defendants on the basis of diversity jurisdiction, and plaintiffs now move to remand claiming that diversity is destroyed by the presence of three defendants who are citizens of Texas, Dr. Nargis Kayani, Christus Health Southeast Texas d/b/a Christus St. Elizabeth Hospital, and Christus Health (sometimes referred as the "Healthcare Defendants"). The court finds that the Healthcare Defendants were fraudulently joined, and, since the remaining defendant drug manufacturers are not citizens of Texas for diversity purposes, the motion to remand is DENIED.

### BACKGROUND

Plaintiffs, citizens of Texas, sued drug manufacturers of diverse citizenship (the "Manufacturer Defendants") in state court.[1] Plaintiffs also sued Dr. Nargis Kayani, Christus Health

---

[1] Plaintiffs also named "John Does #1-200" as defendants in this suit. However, for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

1



Southeast Texas d/b/a Christus St. Elizabeth Hospital (St. Elizabeth Hospital), and Christus Health, the "Healthcare Defendants," all of whom are citizens of Texas.

Plaintiffs' petition in state court alleged that defendants designed, manufactured, produced, labeled, advertised, tested, inspected, shipped, distributed, and/or sold Thimerosal, a compound used in vaccinations, which allegedly can cause harmful effects. Plaintiffs asserted claims under a myriad of statutory and common law theories.

Defendants timely removed this case asserting that federal diversity jurisdiction is satisfied because the amount in controversy exceeds $75,000, the manufacturing defendants are not citizens of Texas for diversity purposes, and the Healthcare Defendants were fraudulently joined. Plaintiffs have moved to remand, asserting that their petition in state court stated a proper cause of action against the Healthcare Defendants under Texas law.

## STANDARD OF REVIEW

At the outset the court notes that a federal defense does not give a defendant the right to remove. *See Smallwood v. Ill. Cent. R.R. Co.*, 342 F.3d 400, 408 (5th Cir. 2003). Accordingly, defendants in this case may not rely upon a federal preemptions claim as a basis for removal. Likewise, assertions of defendants which go to the merits of the action as an entirety, and not to the joinder, will not be a basis for finding fraudulent joinder. 342 F.3d at 407. Therefore, any argument the defendants make about the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 *et seq.* ("Vaccine Act"), does not support a denial of the motion to remand.[2]

---

[2] However, plaintiffs disclaimed any cause of action under any federal law, including the Vaccine Act, so the court need not analyze whether plaintiffs have properly asserted a Federal cause of action in state court against the Healthcare Defendants.

2

To prove fraudulent joinder, defendants must show: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse part(ies) in state court. *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). There is no claim of actual fraud in this case, so the only inquiry is whether "there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." 326 F.3d at 647.

Fraudulent joinder exists where a plaintiff has failed to plead under state law any specific actionable conduct against the non-diverse defendants. *Griggs v. State Farm Lloyd*, 181 F.3d 694, 699 (5th Cir. 1999). The plaintiff cannot establish potential liability under state law by a pleading that establishes "the mere hypothetical possibility that such an action could exist." 181 F.3d at 701.

This court must determine whether there is a reasonable basis for predicting that plaintiffs might be able to establish liability of one or more of the Healthcare Defendants on the pleaded claims in the state court. *Travis*, 326 F.3d at 648. This does not mean that plaintiff can avoid removal by pointing to "a mere theoretical possibility of recovery under local law." There must arguably be a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder. *Travis*, 326 F.3d at 648.

Generally, the existence of diversity jurisdiction is determined from the record at the time the notice of removal is filed. A court may utilize a "summary judgment type procedure" to determine fraudulent joinder. *See Griggs*, 181 F.3d at 699-700. That is not necessary in this case.

## ANALYSIS OF TEXAS LAW

Whether there is a reasonable basis for predicting that plaintiffs could establish a claim against one or more of the Healthcare defendants in this case must be resolved by reference to Texas law. The fact that this is an immunization case puts it in a different category than other drug cases

3

because Texas statutes impose strict limitations on the possibility of recovery against those who immunize children in Texas.

Physicians, such as Dr. Kayani, and hospitals and other medical facilities, such as defendants St. Elizabeth Hospital and Christus Health, are not liable for damages arising from an immunization administered to a child, except for injuries resulting from the person's or facility's own acts of negligence.[3] TEX. FAM. CODE ANN. § 32.103(b)(Vernon 2002). Accordingly, the Joneses may not prevail against the Healthcare Defendants based upon some imputed theory of negligence. There will have to be an assertion of negligence on the part of one or more of the Healthcare Defendants.

There is also a limitation on the types of negligence for which a plaintiff may recover in Texas against physicians and other healthcare providers such as the defendants in this case.[4] The Texas legislature, finding there was a crisis in health care, limited claims against doctors and other healthcare providers by passing the Medical Liability and Insurance Improvement Act, Tex. Rev. Civ. Stat. Ann. art. 4590i ("MLIIA").[5] Physicians are specifically named in the MLIIA, and

---

[3]This is not a general or common defense because the statute does not apply to the Manufacturer Defendants.

[4]Again, this is a defense applicable only to the Healthcare Defendants because the Manufacturer Defendants are not covered by the statute.

[5]The MLIIA (Article 4590i) was repealed effective September 1, 2003, when the Texas Legislature rewrote Tex. Civ. Prac. & Rem. Code, Chapter 74. *See* Act of June 11, 2003, 78th Leg., R.S., ch. 204, §§ 10.09, 23.02(a), 2003 Tex. Sess. Law Serv. (repealing the MLIIA effective September 1, 2003). However, the Act repealing Article 4590i also provided that "[a]n action filed before the effective date of this Act, including an action filed before that date in which a party is joined or designated after that date, is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose." *See* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Sess. Law Serv.

St. Elizabeth Hospital and Christus Health meet the definition of "health care providers." TEX. REV. CIV. STAT. ANN. art. 4590i, § 1.03(a)(3)(Vernon Supp. 2003). The MLIIA further provides that:

> In a suit against a physician or a health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risk and hazard involved in the medical care or surgical procedure rendered by the physician or health care provider, the **only** theory on which recovery may be had is that of negligence in failing to disclose the risks or hazards **that could have influenced a reasonable person in making a decision to give or withhold consent.**

TEX. REV. CIV. STAT. ANN. art. 4590i, § 6.02 (Vernon Supp. 2003)(emphasis added). This section was added to the MLIIA in 1995, so earlier Texas cases about other potential causes of action are not on point. Therefore, under Texas law, it is not enough in a health liability case to show that there was some risk, however small, and that a defendant failed to warn of it. A plaintiff must also plead and prove that the risk was such that a reasonable person would have been influenced to withhold consent.

Reviewing plaintiffs' petition in state court in view of these specific statutory limitations on the potential liability of the three Healthcare Defendants, it appears that the petition alleges no actionable facts or theory which would arguably present a reasonable basis for predicting that state law would allow recovery against one of these defendants.

The plaintiffs' petition describes the diverse defendants, i.e., the drug companies which manufactured the vaccines in question, as the "Manufacturer Defendants." The non-diverse defendants are identified as the "Healthcare Defendants." Sometimes "Defendants" is used to refer to all of the defendants. However, this reference is frequently confusing in the petition, since it is

frequently used to refer to acts such as manufacturing the vaccines which clearly could have only been performed by the Manufacturer Defendants.

Sections IV through X of the petition set out various allegations that the "Defendants" manufactured, created, designed, labeled, sterilized, packaged, and advertised vaccines which were allegedly defective because they included Thimerosal. To accept these pleadings as "reasonable basis for predicting that state law would allow recovery" against the Healthcare Defendants in this case would be to engage in the pretense that a doctor or a local hospital manufactured, created, designed, labeled, sterilized, packaged, and advertised a vaccine with Thimerosal. Even indulging all **reasonable** inferences in favor of a plaintiff, there is not even a theoretical possibility that the Healthcare Defendants are going to be found liable for manufacturing, creating, designing, labeling, sterilizing, packaging, and advertising the vaccine.

Only one section of the petition, Section XI, specifies claims against the Healthcare Defendants. The court therefore examines Section XI, entitled "Liability of Healthcare Defendants," to determine whether the petition meets the requirements of *Griggs* and *Travis*. Paragraphs 11.02 and 11.03 state only vague, conclusory allegations that the Healthcare Defendants are liable "for their own distinct tortious conduct, separate and apart from the conduct of the Manufacturer Defendants, although they acted in concert with them," and that the conduct of the Healthcare Defendants "forms an independent basis for imposing liability on them for commission of the acts referenced above." This in no way meets the "specific actionable conduct" test set out in *Griggs*.

Paragraph 11.01 states "all of the allegations set forth above [i.e. Sections IV through X] are adopted for purposes of this paragraph." However, even a liberal examination of the referenced allegations does not establish even a theoretical possibility that plaintiffs might recover against the

6

Healthcare Defendants. As noted previously, the court is not going to indulge in the fantasy that a doctor and/or local hospital were involved in the manufacture, creation, design, labeling, sterilization, packaging, advertising, or other acts involved in the production of a modern vaccine.

A closer examination of paragraphs of the petition prior to Section XI confirm that even if they were "adopted for the purposes of this paragraph" Section XI still does not set out a cause of action against the Healthcare Defendants.

In Section V, plaintiffs allege strict liability for design defects. Given the statutes cited above, there is no reasonable possibility that the Healthcare Defendants are going to be found liable for design defects of a vaccine containing Thimerosal. *See also Easterly v. HSP of Tex., Inc.*, 772 S.W.2d 211, 213 (Tex. App. – Dallas 1989, no writ).

In Section VII, entitled "Breach of Common Law Implied Warranties," plaintiffs allege that Thimerosal was designed, manufactured, produced, advertised, tested, inspected, and/or sold when it was not fit for human consumption, and that therefore defendants breached the implied warranty of fitness for a particular purpose. Again, while these may be proper claims against the Manufacturer Defendants, in light of the Family Code and the MLIIA, they do not state a claim against the Healthcare Defendants. *See Chapman v. Wilson*, 826 S.W.2d 214, 217-218 (Tex. App. – Austin 1992, writ denied).

In Section VIII, entitled "Negligence," plaintiffs allege that "[d]efendants had a legal responsibility and duty to conform to pharmaceutical industry standards, to possess the knowledge of an expert in the industry and to foresee risks inherent with their products in the same or similar circumstances as other members of the industry." There is no basis under Texas law to hold a physician or hospital to such duties or standards. No such duty, and no negligence in failing to meet

7

such duty, can be imputed to the Healthcare Defendants in this vaccine case. TEX. FAM. CODE ANN. § 32.103(b)(Vernon 2002).

Section IX, setting out alleged violations of the Texas Deceptive Trade Practices - Consumer Protection Act ("DTPA"), does not state a cause of action against the Healthcare Defendants in light of the limitations of Tex. Fam. Code Ann. § 32.103(b) and Tex. Rev. Civ. Stat. Ann. art. 4590i, § 6.02. A claim against a physician may not be re-worded as a DTPA claim in order to avoid the limitation of the MLIIA. *Nguyen v. Kim*, 3 S.W.3d 146, 149-150 (Tex. App. – Houston [14th Dist.] 1999, no pet.); *See also* TEX. REV. CIV. STAT. ANN. art. 4590i, § 12.01 (Vernon Supp. 2003)(stating that the DTPA does not apply to claims for negligence against a physician or health care provider).

In Section X, entitled "Assault," plaintiffs allege that defendants committed an assault under Texas law by the administration of the vaccines containing Thimerosal. As discussed, the Texas Legislature has eliminated by statute that cause of action against those who administer vaccines. Case law from prior to 1995 would not be controlling.

Section VI does come close to brushing against a failure to warn pleading. In paragraph 6.01, plaintiffs allege that defendants "failed to warn or properly and adequately notify, inform, or warn **prescribers** and consumers of its dangers and defects" in a number of respects. (Emphasis added.) Not even the most liberal interpretation could result in this allegation being read as a claim for failure to warn **against a prescriber** such as Dr. Kayani, St. Elizabeth Hospital, or Christus Health. Further, neither in this paragraph nor anywhere else in the petition, do plaintiffs even hint that the risks of hazards are such that they would have "influenced a reasonable person in making a decision to give or withhold consent." *See* TEX. REV. CIV. STAT. ANN. art. 4590i, § 6.02 (Vernon Supp. 2003).

8

Alternatively, paragraph 11.01 of the petition, which is the first paragraph dealing with the alleged liability of the Healthcare Defendants, adopts all of the prior allegations in the petition. This necessarily includes the allegations in paragraph 4.06 that:

> [T]he Manufacturer Defendants deliberately or negligently misrepresented to the public the efficacy and safety of these products that contain Thimerosal. Because of their **failure in all instances, to advise doctors** or consumers that the usage of Thimerosal containing products could result in mercury poisoning, the result is that the Plaintiffs' children have experienced severe bodily injury. (Emphasis added.)

Plaintiffs' petition then goes on in paragraph 4.07 to state:

> The Manufacturer Defendants purposely downplayed and understated the health hazards and risks associated with Thimerosal. The Manufacturer Defendants through promotional literature, deceived potential users of these products by relaying positive information and manipulating statistics to suggest widespread safety, while downplaying the known adverse and serious health effects of ethyl mercury. The Manufacturer Defendants falsely and fraudulently kept relevant information from potential users and minimized user concern regarding the safety of the products that contain Thimerosal.

Paragraph 4.08 of the petition states "[t]he Manufacturer Defendants falsely and fraudulently misrepresented a number of facts regarding these products including, but not limited to, the presence of adequate testing of Thimerosal and the presence of adequate testing of any combination of Thimerosal-containing products."

Of course, a plaintiff may set out theories in the alternatives. However, the above-referenced statements are contained in Section IV of the petition entitled "Facts," which sets out background facts applicable to all of the later sections under the heading "Causes of Action."

In Section XI, plaintiffs adopt all such allegations as part of its claims against the Healthcare Defendants. If one accepts the facts set out in the petition as true, as this court must, there is no

9

theoretical possibility of recovery under Texas law against the Healthcare Defendants for failure to warn about problems which were deliberately concealed by the Manufacturer Defendants. Unlike petitions in other cases in which remand has been ordered, there is no pleading that the Healthcare Defendants here "knew or should have known" of the effects of Thimerosal, and no attempt to otherwise plead in the alternative.

## CONCLUSION

A decision on whether to remand this case depends on whether or not the Healthcare Defendants have been fraudulently joined. Under *Travis* and *Griggs* that decision depends upon whether plaintiff has plead specific facts which would arguably establish a reasonable basis for predicting that Texas law might impose liability on one or more of these defendants.

It is clear that the Texas Legislature has gone to great lengths to strictly limit liability in cases involving the administration of vaccines to children. There are any number of policy reasons for this, including the necessity to vaccinate entire populations to prevent epidemics and the need to ensure that doctors and hospitals will not stop providing such vaccinations because the amount that can be charged for vaccinations is so low and the potential liability is so high. This court cannot gainsay such policy considerations, especially in light of the fact that the United States Congress has also passed legislation establishing limitations on the recovery available to those allegedly injured by vaccines. Accordingly, plaintiffs' claims under theories of strict liability, breach of warranty, negligence, the DTPA, and assault, are barred under Texas law.

As to the failure to warn theory, plaintiffs never attempted, in the only paragraph that states claims against the Healthcare Defendants, to allege that the Healthcare Defendants failed to warn

plaintiffs.[6] Instead, plaintiffs in this case have chosen, without pleading in the alternative, to assert that the Manufacturer Defendants deliberately hid information about the effects of Thimerosal, and kept from consumers, doctors, and the public, information about the vaccines. If this is accepted as true, the Healthcare Defendants cannot be liable under Texas Law.

The Texas Legislature has clearly and decisively acted to limit the liability of those who administer vaccines to children. The Texas Supreme Court has recognized that the policy considerations for expanding the potential liability of those who manufacture and distribute products do not apply to physicians. *See Dennis v. Allison,* 698 S.W.2d 94, 94-96 (Tex. 1985), *cited with approval in Parkway Co. v. Woodruff,* 901 S.W.2d 434, 438 (Tex. 1995).

Plaintiffs have potential causes of action against solvent defendants in this case, whom plaintiffs themselves have pled hid information from the Healthcare Defendants. Congress has established a mechanism, the National Childhood Vaccine Injury Act, for resolving claims such as this. There is no arguably reasonable basis for this court to predict that Texas appellate courts are going to reverse course, ignore liability limitations set by the Texas Legislature, and approve an additional theory of recovery against these Healthcare Defendants.

The court finds that plaintiffs have not set out an arguably reasonable basis for predicting that Texas law might impose liability on the Healthcare Defendants under the facts stated.

///

///

---

[6]Even if by a tortured reading, one assumed that plaintiffs were referring to a Healthcare Defendant in paragraph VI, plaintiffs chose not to plead one of the crucial elements of a cause of action under the MLIIA, namely that the risk or hazard that was not disclosed "could have influenced a reasonable person in making a decision to give or withhold consent."

11

**IT IS THEREFORE ORDERED** that Plaintiffs' Michael L. Jones and Rhonda L. Jones, each individually and as next friends of Kristin M. Jones, a minor, Motion to Remand [Doc. #21] is **DENIED**.

Signed February 13, 2004.

Ron Clark, United States District Judge