United States District Court
Southern District of Texas
ENTERED

SEP 1 6 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VERONICA RAMIREZ, Individually and as Next Friend of JEREMIAH S. RAMIREZ, Plaintiff | § § § § § | |
| v. | § | C.A. No. B-03-155 |
| AMERICAN HOME PRODUCTS d/b/a WYETH, ET AL., Defendants. | § § § § § | |

### OPINION AND ORDER

BE IT REMEMBERED that on September __16__, 2005, the Court **DENIED** Plaintiff's Motion to Remand; **GRANTED IN PART AND DENIED IN PART** Defendants' Motion to Dismiss, and **STAYED** the claims of the remaining Defendants.

### I. Introduction and Procedural History

Plaintiff Veronica Ramirez, individually and as next friend of Jeremiah S. Ramirez, brings this action against remaining Defendants, American Home Products d/b/a Wyeth, Wyeth Laboratories, Whyet-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyet Lederly Vaccines, and Lederle Laboratories; Abbott Laboratories, Inc.; American International Chemical, Inc.; Aventis Pasteur, Inc., Individually and as Successor in Interest to Connaught Laboratories, Inc.; Pasteur Merieux and Pasteur Merieux Connaught; B.F. Ascher & Company, Inc.[1]; Dolder; SmithKline Beecham Corp.; Merck & Co., Inc.; Eli Lilly and Company; Oralia T. Wells, M.D.; Eloisa T. Gonzalez, M.D.; and John Does #1-200, who are individuals, proprietorships, corporations or other entities whose names and identities are otherwise unknown to Plaintiff. The Court will refer to Defendant Eli Lilly and Company ("Eli Lilly") as the Thimerosal Defendant, the remaining Defendants named in the original complaint who manufactured vaccines as

---

[1] B. F. Ascher & Company, Inc. recently filed a stipulation of dismissal, which complied with Federal Rule of Civil Procedure 41(a)(1)(ii). *See* Dkt. No. 88.

the Vaccine Defendants, and the individual medical providers as the Healthcare Defendants.

Plaintiff's cause of action arises out of neurological injuries her minor child suffered after receiving vaccinations that contained a preservative called Thimerosal. Plaintiff alleges the Thimerosal contained mercury, which after multiple vaccinations cumulatively subjected her child to mercury poisoning. Plaintiff alleges the vaccines and its component parts (Thimerosal) were designed, manufactured, marketed and distributed by Defendants. Plaintiff sues Defendants under theories of strict liability, negligence, breach of warranty, fraud and misrepresentation, and civil conspiracy. *See* Pls' Original Cmplt., at pp. 4-6 (unnumbered paragraphs).

This action was originally filed in the 407th Judicial District of Cameron County, Texas. Defendant Merck & Co., Inc. ("Merck") timely removed the case to this Court on September 3, 2003, pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446 based on diversity jurisdiction and improper joinder. Merck alleged complete diversity exists, with the exception of the in-state Healthcare Defendants, and the amount in controversy exceeds $75,000. Based on this alleged improper joinder, Merck argues the citizenship of the Healthcare Defendants should be disregarded for the purpose of establishing subject matter jurisdiction. All served Defendants timely filed notices of consent to removal. *Gillis v. State of Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002) (requiring that "all served defendants must join in the removal petition."); *Getty Oil Corp. v. Ins. Co. of North Am.*, 841 F.2d 1254, 1262 n.11 (5th Cir. 1988).[2] Plaintiff is a citizen of Texas. *See* Pl's Original Cmplt., ¶ 3.01. All Defendants named in the original complaint, other than the Healthcare Defendants, are diverse and maintain principal places of business and are incorporated in states outside of Texas. *See id.* ¶¶ 3.02-3.15.

On September 19, 2003, Plaintiff filed a Motion to Remand. Soon thereafter, the Vaccine and Thimerosal Defendant filed Motions to Dismiss, principally arguing the National Childhood Vaccine Injury Act (the "Vaccine Act" or "the Act") divests state and

---

[2]*See* Notice of Removal, ¶ 30 [Dkt. No. 1]. Merck argues the Healthcare Defendants' consent is not required because they are fraudulently or improperly joined. *See Getty Oil Corp. v. Ins. Co. of North Am.*, 841 F.2d 1254, 1261 (5th Cir. 1988).

federal courts of jurisdiction over claims for damages arising from a "vaccine-related injury" when the claims are not first filed in a designated court within the United States Court of Federal Claims (the "Vaccine Court"). *See* 42 U.S.C. §§ 300aa-1, *et seq.*

At an initial pretrial conference held in December 2003, the Court stayed the case until the Fifth Circuit issued a final mandate in two cases relevant to the common defense theory raised in Plaintiff's Motion to Remand. Upon staying the case, the Court denied without prejudice a number of pending motions, including the motion to remand and all motions to dismiss. At that time the Court indicated the parties could notify the Court of their desire to reactivate these motions once the stay was lifted. Recently, the parties did just this, and having received supplemental briefing, notice of intervening substantive case law changes, and a renewed Motion to Dismiss, the Court is poised to render its decision on all pending motions.

## II. Legal Standard for Removal and Remand

Removal based on diversity jurisdiction requires that this Court have had original diversity jurisdiction had the case been first filed in federal court; no defendant may be a citizen of the state in which the district court resides; and diversity of citizenship must have existed when the original complaint and removal petition were filed. *See* 28 U.S.C. § 1441(b). The Court is under an obligation to remand the case if at any time prior to final judgment, it becomes evident the Court lacks subject matter jurisdiction. *See id.* § 1447(c).

Remand under 28 U.S.C. § 1447(c) may be premised on two grounds: a defect in the removal procedure or lack of subject matter jurisdiction. *See Cuellar v. Crown Life Ins. Co.*, 116 F.Supp.2d 821, 825 (S.D. Tex. 2000). "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Smallwood v. Illinois Central Railroad Co.*, 384 F.3d 568, 575 (5th Cir. 2004) (en banc) (*Smallwood III*), *cert. denied,* 2005 WL 876004 (U.S. Apr. 18, 2005); *see also Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (emphasizing the "burden of demonstrating [improper] joinder is

a heavy one"). Improper joinder, previously labeled fraudulent joinder in this Circuit, is demonstrated by showing either actual fraud in the pleading of jurisdictional facts or the inability of Plaintiff to establish a cause of action against the non-diverse defendant in state court. *Smallwood III*, 384 F.3d at 573 (citing *Travis*, 326 F.3d at 646-47).

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

*Id.*[3] "If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed fraudulent, *unless* that showing compels dismissal of *all defendants*." *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005) (emphasis in original).

"When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Smallwood III*, 384 F.3d at 575. *Smallwood III* instructs that when this so-called "common defense" rule is applicable,

> an allegation of improper joinder is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the local party. In other words, there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that "the plaintiff's case [is] ill founded as to all defendants."

*McDonal*, 408 F.3d at 183 (citing *Smallwood III*, 384 F.3d at 574 (quoting *Chesapeake & Ohio Ry. v. Cockrell*, 232 U.S. 146, 153, 34 S.Ct. 278, 58 L.Ed. 544 (1914))).

Normally, a district court will resolve the improper joinder inquiry by conducting a Rule 12(b)(6)-type analysis. Where the plaintiff has stated a claim, but "misstated or omitted discrete facts," the court has the discretion to "pierce the pleadings and conduct a summary inquiry." *Smallwood III*, 385 F.3d at 573. This kind of inquiry "is appropriate

---

[3]The Fifth Circuit adopted the term "improper joinder" in place of "fraudulent joinder" in a recent decision. *See Smallwood III*, 285 F.3d 568, 571 n.1 (5th Cir. 2004). There is no substantive difference in the terms, but "improper joinder" is now the preferred reference. *See McDonal v. Abbott Laboratories*, 408 F.3d 177, 180 n.1 (5th Cir. 2005).

4

only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74.  Usually, when the plaintiff's claim can withstand a 12(b)(6) motion, the joinder is proper. *Id.* (footnote omitted).   Stated differently, it is necessary to remand the case to state court whenever the court, in an effort to determine the propriety of the joinder, "departs from the threshold inquiry of jurisdiction into a decision on the merits." *McDonal*, 408 F.3d at 183 (citations omitted); *see also Smallwood III*, 385 F.3d at 573.  Finally, the court's examination should not focus on whether the Plaintiff will or is likely to prevail on the merits of the claim, but whether there is any possibility that the Plaintiff might prevail. *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

### III. Analysis of Plaintiff's Motion to Remand

#### A. The Vaccine Act

The Vaccine Act was passed by Congress as a mechanism for resolving claims arising from injuries relating to childhood vaccines. *See Schafer v. Am. Cyanamid Co.*, 20 F.3d 1, 2 (1st Cir. 1994).  To promote expeditious and cost-saving resolution, under the Vaccine Act, "an individual may not bring a civil action in either state or federal court in excess of $1,000 in damages arising from a vaccine-related injury or death involving the administration of a vaccine unless a petition is first filed with [the] United States Court of Federal Claims." *McDonal*, 408 F.3d at 184-85 (internal quotations omitted); *see also* 42 U.S.C. § 300aa-11(a)(2)(A).  Civil actions that are barred under this provision of the Vaccine Act must be dismissed. 42 U.S.C.. § 300aa-11(a)(2)(B).  A "vaccine related injury or death" does not include "an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." *Id.* § 300aa-33(5).  Recently, this Circuit determined that although Thimerosal is not an adulterant or contaminant under the Act, a manufacturer of Thimerosal used in the vaccine is not considered a "vaccine manufacturer" as understood in the context of the Vaccine Act. *See Moss v. Merck & Co.*, 381 F.3d 501, 503 (5th Cir. 2004).

> The import of *Moss* is that the nonresident Thimerosal defendants in [a case], would not be insulated from liability pursuant to the jurisdictional limitations

5

embedded within the Vaccine Act –and therefore a civil action could be brought against them in either a state or federal forum.

*McDonal*, 408 F.3d at 185. Vaccine manufacturers and healthcare providers who administered the vaccines, conversely, would be insulated from liability in state and federal court until such times as the plaintiff exhausts her remedies before the Vaccine Court prior to filing suit in state or federal court. *See id.*

### B. Non-Applicability of Common Defense and *Collins* Decision

Plaintiff cites *Collins v. Am. Home Products,* for the proposition that the "common defense" rule applies to this case. *See* 343 F.3d 765 (5th Cir. 2003). A recent Fifth Circuit decision dispenses with Plaintiff's argument in the negative. Remand is only merited if "the Vaccine Act afforded the same defense to all of the defendants. Said differently, if the showing of no possibility of recovery against the local defendant applies equally to all defendants, a remand would be the appropriate disposition because the initial joinder would not have been improper." *McDonal v. Abbott Laboratories*, 408 F.3d at 184 (citations omitted). Moreover, the Fifth Circuit made clear that in applying *Smallwood*, "its central principle is implicated only when the common defense asserted would be equally dispositive as to *all* defendants." *Id.* (citing *Rainwater v. Lama Life Ins. Co.*, 391 F.3d 636, 638 (5th Cir. 2004) (emphasis in original)). "In turn, if a district court concludes that the common defense proffered would not dispose 'of every claim against every defendant, [the district court] should continue to deny remand and proceed with the proper disposition of the case.'" *Id.* (citing *Rainwater*, 391 F.3d at 638-39).

A recent Fifth Circuit opinion mandates that the Vaccine Act only divests this court of jurisdiction over claims against vaccine manufacturers, but not over claims against manufacturers or distributors of the component part Thimerosal. *See Moss*, 381 F.3d at 504. As a result, the Vaccine Act is not a common defense to all defendants. Remand, therefore, is not mandated on this basis.

6

## IV. Improper Joinder of Healthcare Defendants

Defendants first argue the joinder of in-state residents Defendants Oralia T. Wells and Eloisa T. Gonzalez, individual physicians, is improper and thus is not a bar to diversity jurisdiction. Plaintiff does not plead specific factual allegations of wrong-doing on the part of these Healthcare Defendants, except to generically allege: "[t]he Healthcare Defendants are liable for their own distinct tortious conduct, separate and apart from the conduct of the Manufacturer Defendants, although they acted in concert with them." Pl's Original Cmplt., ¶ 11.02. Plaintiff additionally alleges, "[t]he conduct of the Healthcare Defendants forms an independent basis for imposing liability on them for commission of the acts referenced above." *Id.* ¶ 11.03. In order to determine whether there is a reasonable basis for predicting Plaintiff may recover against these Healthcare Defendants, the Court must refer to Texas law.

Plaintiff's original complaint clearly does not state a medical negligence claim involving the failure to warn Plaintiff of the known dangers of vaccines containing Thimerosal. *See Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 462 (Tex. App. –Austin 2000, pet. denied). *C.f.* Tex. Fam. Code Ann. § 32.103(b) (Vernon 2002) (mandating that physicians, hospitals, and medical facilities are not liable for damages arising from immunizations, except when the injuries result from the person's or entity's own acts of negligence); Tex. Rev. Civ. Stat. Ann. art. 4590i, § 6.02 (Vernon Supp. 2003) (Medical Liability and Insurance Improvement Act ("MLIIA")) (mandating in failure to warn cases that "the only theory on which recovery may be had is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.").[4]

Instead, Plaintiff submits post-removal affidavits that for the first time raise a

---

[4] Plaintiff filed her original complaint on July 27, 2003. Article 4590i of the MLIIA was repealed effective September 1, 2003. *See* Act of June 11, 2003, 78th Leg., R.S., ch. 204, §§ 10.09, 23.02(a), 2003 Tex. Sess. Law Serv. (repealing MLIIA, effective September 1, 2003). The repealing act, however, provides that "[a]n action filed before the effective date of this Act, including an action filed before that date in which a party is joined or designated after that date, is governed by the law in effect immediately before the change in law made by this act, and that law is continued in effect for that purpose."

failure to warn claim.[5] The Court may in its discretion pierce the pleadings and conduct a summary inquiry. *Smallwood III*, 385 F.3d at 573. This discretion, however, "is appropriate only to identify discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. Thus, although the Court may pierce the pleadings to rule on an improper joinder issue, "the court should not allow the additional evidence to support causes of action that the Plaintiffs had not asserted when removal occurred." *Staples v. Merck & Co., Inc.*, 270 F.Supp.2d 833, 837 (N.D. Tex. 2003); *Sohmer v. Am. Med. Security, Inc.*, 2002 WL 31323763, at *2 (N.D. Tex. Oct. 15, 2002) ("[T]he Court cannot allow this additional evidence to breathe life into causes of action not asserted in the petition at the time of removal." (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263-64 (5th Cir. 1995))); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) ("Post-removal filings may not be considered . . . when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."). Based on Plaintiff's original complaint, she has not sufficiently pled a failure to warn cause of action against the Healthcare Defendants. Nor has Plaintiff alleged a claim of fraudulent concealment against the healthcare providers. *See e.g., Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (holding fraudulent concealment under Texas law requires the same proof as a common law fraud claim); *Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (stating the five elements of a common law fraud claim).

Moreover, even had Plaintiff sufficiently pled state claims against the Healthcare Defendants, the Court would determine the joinder was improper based on the Vaccine Act's jurisdictional bar. The Fifth Circuit's recent decision in *McDonal v. Abbott*

---

[5]*See* Pl's Reply, Ex. A (affidavit of Veronica Ramirez) [Dkt. No. 36]. Plaintiff states in her affidavit, "[d]uring the first few years of my child's life, I took my child for routine childhood examinations and for other medical care to Dr. Oralia T. Wells and Dr. Eloisa T. Gonzalez . . . As part of the medical care provided by [the doctors], my child was administered vaccinations containing the product Thimerosal. I was not informed by my child's medical care providers that the Thimerosal injected into my child could cause severe and/or permanent injury." *Id.* ¶¶ 3-5 Plaintiff further avers that she relied on the Healthcare Defendants' representations and would have refused vaccinations containing Thimerosal had she known the risks at that time. *Id.*

*Laboratories* guides this court. The Plaintiffs in *McDonal* brought similar claims against the manufacturers of vaccines, manufacturers of Thimerosal, and two physicians and a hospital ("Healthcare Defendants"). The theories of liability were similar to those presented in the case before this Court. After removal, the district court denied remand, determining the Healthcare Defendants were improperly joined because there was no reasonable probability the claims were cognizable without first exhausting the claims in the Vaccine Court prior to filing suit in state or federal court. *McDonal*, 408 F.3d at 183. The Fifth Circuit held:

> [t]he import of *Moss* is that the nonresident Thimerosal defendants in the instant case, would not be insulated from liability pursuant to the jurisdictional limitations embedded within the Vaccine Act –and therefore a civil action could be brought against them in either a state or federal forum. Conversely, we also find that the claims asserting vaccine-related injuries brought against the resident Healthcare defendants and the nonresident Vaccine defendants were required to have first been brought in the Vaccine Court. As such, the common defense corollary to the improper joinder doctrine as articulated in *Smallwood* is inapplicable to the present case and therefore, remanding this case to the Mississippi state trial court from which this case was removed would be unwarranted. See *Rainwater*, 391 F.3d at 638-39.

*Id.* at 185.

Based on this holding, the Vaccine Act mandates dismissal of the Vaccine Defendants and the Healthcare Defendants, but not the Thimerosal Defendant. Moreover, because dismissal is required for Drs. Wells and Gonzalez, their joinder is improper. Finally, because the Court determines the Vaccine Act's jurisdictional bar applies to some, but not all of the Defendants in this case, the common defense theory does not mandate remand.

## V. Dismissal Based on the Vaccine Act

Having determined remand is not warranted, the Court must now determine which claims must be dismissed based on the Vaccine Act's mandate.

### A. Plaintiff's Representative Claims

The jurisdictional requirements under the Vaccine Act, discussed *supra*, only applies to "a person who has sustained a vaccine-related injury or death and who is

qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). A qualified petitioner is generally "any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table . . ." *Id.* § 300aa-11(b)(1)(A).

In this case Plaintiff brings representative claims on behalf of her minor child who sustained vaccine-related injuries against vaccine manufacturers for damages. Plaintiff has not, however, exhausted her remedies under the Vaccine Act before the Vaccine Court. The Court, therefore, is required to **dismiss without prejudice** all the representative claims against the Vaccine Manufacturer Defendants.[6]

The Court, however, does not dismiss those representative claims brought against the Thimerosal Defendant Eli Lilly. *See Moss*, 381 F.3d at 503 (determining a manufacturer of Thimerosal used in the vaccine is not considered a "vaccine manufacturer" as understood in the context of the Vaccine Act). The Court **stays** these claims pending the exhaustion of Plaintiff's administrative remedies against the Vaccine Defendants as required by the Vaccine Act.

### B. Plaintiff's Individual Claims

The Vaccine Act does not bar Plaintiffs from filing individual claims with state or federal courts because parents individually are not qualified petitioners under the Act and have not suffered an injury after receiving a vaccine. *See* 42 U.S.C. §§ 300aa-11(b)(1)(A), 300aa-11(c)(1)(A); *see also Schafer v. Am. Cyanamid Co.*, 20 F.3d 1, 7 (1st Cir. 1994) (stating that unless an individual received a vaccine or is the legal representative of someone who received a vaccine, that individual cannot file a petition in the Vaccine Court). Thus, Plaintiff's loss of consortium, loss of companionship, loss of services, and mental anguish claims are not barred in state or federal courts by the

---

[6]The Court would also be required to dismiss without prejudice all representative claims against the healthcare defendants, if any remained, because these defendants are vaccine administrators and vaccine-related claims against them must be brought before the Vaccine Court prior to filing suit in state or federal court.

10

Vaccine Act. These claims, however, are barred under Texas law.

    A claim for loss of consortium is not available to parents of children who have been seriously injured, but have not died of their injuries. *See Roberts v. Williamson*, 111 S.W.3d 113, 119-20 (Tex. 2003). Similarly, the loss of "pecuniary value of [a] child's services" is not available because it "is based on an antiquated concept of the child as an economic asset." *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex. 1983). The Court **dismisses with prejudice** the parent's individual claims for loss of consortium, loss of companionship, and loss of services against all Defendants.

    Plaintiff also seeks compensatory damages for mental anguish. The law in Texas concerning an individual's recovery for damages for emotional distress or mental anguish for a close family member's serious injury is extremely circumscribed. *See City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997). Bystanders, for example, may recover if: (1) they were near the scene of the accident; (2) they suffered shock resulting from the direct emotional impact of a sensory and contemporaneous observance of the accident, and not from learning of the accident from others after it occurred; and (3) they and the victim were closely related. *See United States Automobile Ass'n v. Keith*, 970 S.W.2d 540, 541-42 (Tex. 1998). Plaintiff parent does not allege she suffered "shock as a result of a direct emotional impact upon [her] from a sensory and contemporaneous observance of an accident." The allegations simply allege the administration of routine vaccinations. As a result, the Court **dismisses with prejudice** the individual claims of mental anguish against all defendants.

    The Vaccine Act does, however, bar Plaintiff from seeking in this Court compensation for actual and un-reimbursable expenses and projected expenses for medical or remedial care determined reasonably necessary, actual and anticipated lost earnings, actual and projected pain and suffering of the victim and reasonable attorneys' fees and costs. Costs that "have been or will be incurred by or on behalf of the [victim] . . . for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and services expenses, and facilities determined to be reasonably necessary" are covered expenses. 42 U.S.C. §

300aa-15(a)(1). Plaintiff must, therefore, first file a petition with the Vaccine Court instead of filing a claim for these expenses in state or federal court. As a result, the Court **dismisses** Plaintiff's claims for medical expenses and loss of income **without prejudice**. Plaintiff may, however, continue to pursue her claim against the Thimerosal Defendant for medical expenses without first filing a petition in the Vaccine Court, subject to any limitations under Texas law. See *Pressy v. Patterson*, 898 F.2d 1018, 1026 (5th Cir. 1990) (holding that under Texas law, an injured plaintiff may recover for the nursing care provided by his parent at the wage rate for unlicensed medical care); *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983) (holding parent has right to recover medical costs incurred on behalf of a minor). But see *Easter v. Aventis Pasteur, Inc.*, 2004 WL 3104610, at *8 (E.D. Tex. Feb. 11, 2004) (holding parent may not recover own lost wages incurred while caring for minor child).

## VI. Dismissal Based on Failure to State a Claim: Eli Lilly's Motion to Dismiss

A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 365 (5th Cir. 2000); see also *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. See *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); see also *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); see also *Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

### A. Product Liability Claims

12

Eli Lilly moves to dismiss Plaintiff's claims because it argues Plaintiff has not sufficiently alleged Eli Lilly actually manufactured, sold, distributed, or supplied the Thimerosal that caused the injury to Plaintiff's child or that the Thimerosal was defective when it left Eli Lilly's possession. Eli Lilly also argues Plaintiff fails to allege it had any duty to Plaintiff or that it specifically failed to conform to the pharmaceutical industry standard. See Eli Lilly's Motion to Dismiss, at pp. 14-16 [Dkt. No. 6].

Plaintiff will need to prove both general and specific causation as an essential element of her product liability case under any theory of recovery–strict liability, negligence, or breach of warranty. See, e.g., Mission Petroleum Carriers, Inc. v. Solomon, 106 S.W.3d 705, 710 (Tex. 2003) (holding that regardless of recovery theory, causation is essential); Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 714 (Tex. 1997) (noting there are two types of causation); Doddy v. Oxy USA, Inc., 101 F.3d 448, 463 (5th Cir. 1996) (noting Plaintiff must provide evidence of both specific and general causation). Thus, Plaintiff will need to demonstrate the Thimerosal in vaccines caused the minor Plaintiff's injuries. Although Plaintiff has much evidence to present on both general and specific causation, the Court must take the complaint on a motion to dismiss in the light most favorable to the Plaintiff. Plaintiff's pleading meets this threshold requirement. Whether Plaintiff's product liability claim against an alleged manufacturer of Thimerosal can survive the summary judgment stage must await discovery and further briefing. See, e.g., Owens v. Am. Home Products Corp., 2005 WL 1657036, at *2 (S.D. Tex. July 12, 2005); Blackmon v. Am. Home Products Corp., 2005 WL 1503547, at *2 (S.D. Tex. June 8, 2005). Similarly, whether Eli Lilly owed Plaintiff's minor child a duty to conform to the pharmaceutical industry standards and whether Eli Lilly breached any implied warranties are dependent on whether Eli Lilly manufactured any of the Thimerosal to which Plaintiff's child was exposed. This determination too will await discovery and motions for summary judgment, if submitted.

### B. Deceptive Trade Practice Act Claims

Eli Lilly argues Plaintiff's claim under the Texas Deceptive Trade Practices Act ("DTPA") should be dismissed because Plaintiff does not specify which Defendants are responsible for which violations of the Act, and Plaintiff failed to provide Eli Lilly with

notice of the alleged violations prior to filing suit. The elements of a DTPA claim are: (1) Plaintiff is a consumer who seeks or acquires goods or services by purchase or lease; (2) Defendant engaged in false, misleading, or deceptive acts; and (3) the acts constituted a producing cause of the consumer's damages. See Tex. Bus. & Com. Code Ann. §§ 17.45(4), 17.50(a) (Vernon 2002); Gill v. Boyd Distribution Ctr., 64 S.W.3d 601, 604 (Tex. App.–Texarkana 2001, review denied).

As Eli Lilly contends, the notice requirement of the DTPA is mandatory. See Hines v. Hash, 843 S.W.2d 464, 467 (Tex. 1992). When notice is not provided, however, dismissal is not automatically warranted. See Oppenheimer v. Prudential Sec., Inc., 94 F.3d 189, 194 (5th Cir. 1996). Rather, when Defendant timely requests an abatement, the trial court must abate the proceedings for 60 days, allowing Plaintiff an opportunity to cure this defect. See Hines, 843 S.W.2d at 467 (citing Tex. Bus. & Com. Code art. 17.505(a)). Although Plaintiff does not directly concede it failed to give Eli Lilly notice of this claim pursuant to the Act, in her response, Plaintiff does not argue she provided notice, and instead states she must be given an opportunity to cure the deficiency. If the plaintiff fails to give notice while the action is abated for that purpose, then the Court should dismiss the action. See id. (citing Miller v. Kossey, 802 S.W.2d 873, 876-77 (Tex. App. –Amarillo 1991, writ denied). Plaintiff has the burden to plead that she gave notice to Defendant. See id. A request for abatement must be made "while the purpose of notice –settlement and avoidance of litigation expense–remains viable. Thus, Defendant must request an abatement with the filing of an answer or very soon thereafter." Id. at 469.

Claims alleging violations of the DTPA are subject to the requirements of Federal Rule of Civil Procedure 9(b). See Patel v. Holiday Hospitality Franchising, Inc., 172 F.Supp.2d 821, 825 (N.D. Tex. 2001) (citing Frith v. Guardian Life Ins. Co. of Am., 9 F.Supp.2d 734, 742 (S.D. Tex. 1998)). Rule 9(b) provides, "all averments of fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Thus, allegations of fraud must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8." Sushany v. Allwaste, Inc., 992 F.2d 517, 521 (5th Cir. 1993).

Plaintiff's general allegations under the DTPA do not meet this heightened

14

standard. Plaintiff has not pled that she gave Eli Lilly notice of this action, nor has she pled that an exception to this rule applies. *See* Tex. Bus. & Com. Code § 17.505(b). The Court considers Eli Lilly's raising of the notice requirement in a motion to dismiss, prior to the filing of an answer, to be a timely objection to Plaintiff's failure to comply with the notice requirement. As a result, the Court is compelled to hold this action in abeyance until Plaintiff complies with the DTPA's notice requirements. *See America Online, Inc. v. Williams*, 958 S.W.2d 268, 272 (Tex. App. –Houston [14th Dist.] 1997, no writ) (noting an "abatement is a present suspension of all proceedings in a suit" and it "precludes the trial court and the parties from going forward on a case.") (citations omitted).

As a result, this case is **abated** until Plaintiff has complied with the notice requirements **and** filed an amended complaint that satisfies the heightened pleading requirements of Rule 9(b).

### C. Assault Claims

Eli Lilly argues Plaintiff has failed to state a claim against it for assault because as a matter of law a defendant cannot be liable for assault or battery based on the sale and distribution of a product. Common law actions for assault and battery are addressed as assault. *See* Tex. Pen. Code Ann. § 22.01(a) (Vernon 2003). The elements for assault are the same in both criminal and civil cases. *See Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 523 (Tex. App.–San Antonio 1996, writ denied). Assault occurs when a person "intentionally, knowingly, or recklessly causes bodily injury to another . . . ." Tex. Pen. Code Ann. § 22.01(a)(1). In the healthcare context, a plaintiff may allege a doctor performed acts on a patient without consent. *See Roberts v. Southwest Tex. Methodist Hosp.*, 811 S.W.2d 141, 144 (Tex. App.–San Antonio 1991, writ denied). Furthermore, recovery for battery relies on an injurious contact between the parties. *See ONI, Inc. v. Swift*, 90 S.W.2d 500, 503 (Tex. App. –Austin 1999, no pet.).

In Plaintiff's response, she does not cite any case law whereby a defendant was liable for assault based on the sale or distribution of a product. Nor, has Plaintiff alleged injurious contact between the parties. The Court, therefore, **dismisses**

15

Plaintiff's assault claim **without prejudice**. Should Plaintiff wish to re-plead this cause of action with appropriate detail, the Court will entertain a motion for leave to amend at that time.

### VII. Conclusion

After lifting the stay in this case the Court rules on the following reactivated motions: **GRANTS** Vaccine Defendants' Motion to Dismiss [Dkt. No. 5]; **GRANTS IN PART AND DENIES IN PART** Defendant Eli Lilly's Motion Dismiss [Dkt. No. 6]; **DENIES** Plaintiff's Motion to Remand [Dkt. No. 16]; **DENIES AS MOOT** Defendant Oralia T. Wells's Motion to Dismiss [Dkt. No. 23]; **GRANTS** Defendant American International Chemical's Motion to Dismiss [Dkt. No. 48]; **GRANTS** Vaccine Defendants' Renewed Motion to Dismiss [Dkt. No. 80]; **GRANTS IN PART AND DENIES IN PART** Defendant Eli Lilly's Renewed Motion to Dismiss [Dkt. No. 82]; and **DENIES AS MOOT** Defendant Oralia T. Wells's Renewed Motion to Dismiss [Dkt. No. 85]. The Court considered all replies and supplemental memoranda of law, and thus **GRANTS** all requests for leave to file these additional documents [Dkt. Nos. 31-1, 37-1, 40-1, 44-1, 46-1].

The Court **DISMISSES WITHOUT PREJUDICE** all of Plaintiff's representative claims on behalf of her child against all Vaccine Defendants pending the exhaustion of Plaintiff's remedies before the Vaccine Act; and **DISMISSES WITH PREJUDICE** Plaintiff's individual claims for loss of consortium, loss of companionship, loss of services, emotional distress, and mental anguish. The Court **STAYS** the remainder of Plaintiff's claims, including those against the Thimerosal Defendant, pending the exhaustion of Plaintiff's remedies against the Vaccine Defendants before the Vaccine Court.

As other courts have done, the Court will stay this case in its discretion. The issue of whether Thimerosal caused the injuries to Plaintiff's minor child will proceed before the Vaccine Court. The Vaccine Court will conduct an inquiry first into whether Thimerosal causes certain disorders and second whether Thimerosal caused the specific injuries at issue in this case. Requiring the parties to conduct independent, but

simultaneous discovery when experts and documents will be relevant to both cases is duplicative and wasteful. The Court, therefore, in its discretion, **STAYS** all remaining claims in this case until the Vaccine Court renders a decision or the parties submit briefing that convinces the Court otherwise. *See generally, Case v. Merck & Co.*, 2003 WL 145427, at *2-3 (E.D. La. Jan. 17, 2003).

DONE this 16 day of September, 2005, at Brownsville, Texas.

_____
Hilda G. Tagle
United States District Judge